**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS**

KIM FRACHEY, NANCY MALONEY, )
SOCORRO NIETO, CHAD FLOLO, )
NATALIE FLOLO, CHARLES )
AMANING, and FOX VALLEY )
FAMILIES AGAINST PLANNED )
PARENTHOOD, an Unincorporated )
Association, )
　　　　　Plaintiffs, ) TRIAL BY JURY IS DEMANDED
 )
 )
　　v. ) No.
 ) 2008MR000261
 ) Status Date: 08/12/08
PLANNED PARENTHOOD/CHICAGO ) JURY
AREA, an Illinois Not-For-Profit ) Assigned To: 2007
Corporation, STEVEN TROMBLEY, )
GEMINI OFFICE DEVELOPMENT, LLC, )
An Illinois Limited Liability Corporation, )
21ST CENTURY OFFICE )
DEVELOPMENT LLC, an Illinois Limited )
Liability Corporation, CITY OF AURORA, )
A Home-Rule Municipal Corporation, )
ZONING BOARD OF APPEALS FOR )
THE CITY OF AURORA, ED SIEBEN, )
THOMAS WEISNER, )
HERMAN BENEKE, )
PLANNING & DEVELOPMENT )
COMMITTEE OF THE CITY OF )
AURORA, PLANNING COMMISSION )
OF THE CITY OF AURORA, and )
BUILDING CODE BOARD OF APPEALS )
OF AURORA, )
　　　　　Defendants. )

**08 C 1148**

**JUDGE NORGLE
MAGISTRATE JUDGE DENLOW**

FILED
Feb 13 2008 - 15:32 PM

_Chris Kachiroubas_

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## COMPLAINT FOR ADMINISTRATIVE REVIEW AND OTHER RELIEF

　　Plaintiffs, by their attorneys, complain of defendants as follows:

## I. NATURE OF THE CASE, JURISDICTION, AND VENUE

　　1. Plaintiffs, neighboring landowners and other aggrieved citizens of

Aurora and nearby communities, including taxpayers in DuPage County taxing districts,

bring this lawsuit to redress and abate the fraudulent and illegal development,

1



**EXHIBIT**

_A_

construction, and operation of a charitable, educational, health-related non-pecuniary facility by the lead defendant herein, Planned Parenthood/Chicago Area, its chief executive, and subsidiaries and/or affiliates, in breach of Aurora's zoning laws, and other Illinois and federal laws. Certain plaintiffs further appeal from administrative decisions by Aurora zoning authorities and other officials who failed or refused to enforce Aurora and other applicable laws against this land use.

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants, all of whom either reside or do business within DuPage County, Illinois. Venue in DuPage County is proper under 735 ILCS 5/3-104, as 3051 E. New York St., Aurora, Illinois, ("the property" or "subject property") is situated in DuPage County and the zoning violations began and persist on the property in DuPage County.

## II. PARTIES

3. Plaintiffs Kim Frachey, Nancy Maloney, Socorro Nieto, Chad Flolo, Natalie Flolo, and Charles Amaning are owners of land adjacent to and within 250 feet of the subject property. Plaintiffs are substantially and especially harmed, suffering a gross infringement of their legal rights and property value by reason of defendants' gross misconduct and dereliction of official duties. Plaintiff Fox Valley Families Against Planned Parenthood is an unincorporated association and grassroots coalition of citizens who have opposed the recent opening and operation of the Planned Parenthood facility on the subject property. Fox Valley Families comprises citizens who reside and work near the facility who are harmed in their properties, persons, and through increased tax burden

caused by the non-profit development of the subject property. All said individual plaintiffs but Amaning are plaintiffs in administrative review.

4. Defendant Planned Parenthood/Chicago Area ("Planned Parenthood") is an Illinois Not-For-Profit Corporation and tenant and/or equitable owner of the subject property in DuPage County. It is the sole member of 21st Century Office Development LLC ("21st Century").

5. Defendant Steven Trombley, on information and belief, is the Chief Executive Officer of defendant Planned Parenthood, who has exercised direction and control over Planned Parenthood, as alleged in this complaint.

6. Defendant Gemini Office Development LLC ("Gemini") is the permit applicant and developer-of-record for the subject property. Gemini is the record owner of the property.

7. Defendant 21st Century is the sole member of Gemini.

8. Defendant City of Aurora is a home-rule municipal corporation whose zoning authority arises under Article VII, §6(a) of the Illinois Constitution.

9. Defendant Zoning Board of Appeals for the City of Aurora is established and governed by section 10.4 of the Aurora Zoning Ordinance ("AZO" or "Zoning Ordinance") and the Rules and Regulations of the Zoning Board of Appeals.

10. Defendant Ed Sieben is Aurora's Zoning Administrator. The Zoning Administrator is responsible for the enforcement of the Zoning Ordinance under AZO 10.1-1 and Aurora Mun. Code 12-1. Under the Rules and Regulations of the Zoning Board of Appeals, the Zoning Administrator serves as Executive Secretary of that body.

3

11. Defendant Thomas Weisner is the elected Mayor of the City of Aurora. He is the chief executive officer of the City under Aurora Mun. Code 2-42 and an officer of the City under Aurora Mun. Code 2-156.

12. Defendant Herman Beneke is the Building Official of the City of Aurora. He is responsible for the enforcement of the Aurora Building Code under Aurora Building Code 103 and 104.

13. Defendant Planning & Development Committee of the City of Aurora is a standing committee of the City Council of the City of Aurora having powers designated by Aurora Mun. Code 2-121, 2-123, and 2-125, AZO 10, and other sections.

14. Defendant Planning Commission of the City of Aurora is an appointed commission of the City of Aurora established by Aurora Mun. Code 34-16 and having powers under 65 ILCS 5/11-12, AZO 10 & 11, and other sections.

15. Defendant Building Code Board of Appeals is the party to whom the City sought to transfer the Zoning Board of Appeals appeal detailed below.

### III. PLAINTIFFS' RIGHTS HAVE BEEN VIOLATED

16. Plaintiffs Kim Frachey, Nancy Maloney, Socorro Nieto, Chad Flolo, Natalie Flolo, and Charles Amaning own property located within 250 feet of the property at issue in this matter. Accordingly, each of said plaintiffs has had an enforceable liberty and property interest in ensuring Planned Parenthood's compliance with all provisions of the Zoning Ordinance and other laws. As detailed below, by means of a willful and deliberate scheme of deception and falsehood, Planned Parenthood developed, built, and currently operates a charitable, educational, health-related non-pecuniary facility which in breach of an entire litany of provisions in the Aurora Zoning Ordinance. Each plaintiff

has been and continues to be substantially and adversely affected in his/her property interests by these violations and deprived of precious liberties owing to defendants' misconduct and derelictions of duty.

17. Plaintiffs were deprived of legally required notice and an opportunity to be heard at a meaningful time and in a meaningful manner in opposition to an illegal development in their neighborhood and environs. Their tax base is threatened with substantial and illegal erosion in defiance of the applicable law. Their civic officials have failed and/or refused to enforce the applicable laws against this illicit development, construction, and tax-exempt operation on the same terms as they enforce those laws against all other similarly-situated citizens of Aurora and DuPage County.

18. As is more fully alleged below, the Aurora Zoning Ordinance required that affected citizens receive timely notice of this development and enjoy the opportunity to be heard, either personally or through their civic representatives, in opposition to it at one or more public hearings. Through fraud and subterfuge Planned Parenthood caused plaintiffs to be deprived of their right to be heard in opposition to the zoning use and development sought by Planned Parenthood.

19. Further, the Zoning Ordinance required consideration of Planned Parenthood's proposed use and development before the Planning Commission and Planning & Development Committee. Through fraud and subterfuge, Planned Parenthood prevented these bodies from hearing, let alone passing on, the actual proposed use and development of the property. Planned Parenthood thereby denied them the ability to carry out their respective duties to defend and protect the legitimate zoning interests of Aurora and the neighboring community, including the plaintiffs.

20. Finally, as described below, the Aurora Zoning Ordinance required that there be at least two votes by plaintiffs' elected representatives, the Aurora City Council, in which each alderman would be required to vote publicly on the propriety of Planned Parenthood's proposed use and development of the property. Planned Parenthood's fraud and subterfuge short-circuited the legislative process and the protection it afforded the plaintiffs.

## IV.  BACKGROUND FACTS

### A. The Subject Property Is Situated in a "B-B Business Boulevard District", Which Prohibits Planned Parenthood's Use

21. The 2007 Aurora Zoning Map governs the zoning for the property. The zoning map indicates the subject property is in a Planned Development District ("PDD"). The current zoning for the subject property was approved and adopted by the Aurora City Council via PDD Ordinance O93-124 on December 7, 1993.

22. Pursuant to Ordinance O93-124, the Aurora City Council placed a number of restrictions on the use and development of the subject property, including:

a. Only the uses that are permitted uses...in a **B-B Business Boulevard District** of the Zoning Ordinance shall be permitted uses on the subject property. (O93-124, Part One, Section II, 1. & Part Three, Section II).

b. The standards applicable from time to time to lands in B-B Business Boulevard Districts shall apply to the subject property. (O93-124, Part One, Section III, 1. & Part Three, Section II).

c. Preliminary Plans shall be submitted for approval prior to December 7, 2000. Final Plans for all portions of the Region shall be submitted for approval prior to December 7, 2003. (O93-124, Part One, Section V, 3).

23. Pursuant to the Zoning Ordinance, the Aurora City Council placed additional restrictions on the use and development of the property.

6

24. Under the Zoning Ordinance in effect on July 27, 2006, any Aurora land use by "Social service agencies, charitable organizations, health-related facilities, meeting halls and similar uses when not operated for pecuniary profit" was deemed a special use. This is as provided in the Aurora Zoning Ordinance at that time, section 4.3-1.1.FFF.

25. An amendment to the Zoning Ordinance effective December 12, 2006, deleted the use "[s]ocial service agencies, charitable organizations, health-related facilities, meeting halls and similar uses when not operated for pecuniary profit" from the special uses appropriate in the B-B Business Boulevard District, but left the use as a special use in almost all of the other use districts in the City.

26. Under the Aurora Zoning Ordinance, section 8.6-4.4: "All uses other than those expressly permitted in the B-B Business-Boulevard District are expressly prohibited within the district."

27. Accordingly, after December 12, 2006, Social service agencies, charitable organizations, health-related facilities, meeting halls and similar uses when not operated for pecuniary profit were not allowed in a B-B Boulevard District.

28. On the other hand, in a B-B Business Boulevard District, the land use category "Offices, business and professional, including medical clinics" was a permitted use under the Aurora Zoning Ordinance, section 8.6-4.1.LLL, in effect on July 27, 2006, and on January 12, 2007.

29. With respect to interpretation of overlapping or apparently contradictory provisions, the Aurora Zoning Ordinance and Aurora Municipal Code prescribe as follows:

a. Where this [zoning] ordinance imposes a greater restriction upon the use of land, buildings or premises or upon the height of buildings, or requires larger open spaces than are imposed or required by...other ordinances or such other easements, covenants or agreements, the provisions of this ordinance shall control. (AZO 12.1-1).

b. Where any provision of the Code imposes greater restrictions upon the subject matter than the general provision imposed by the Code, the provision imposing the greater restriction or regulation shall be deemed to be controlling. (Mun. Code Sec. 1-2).

c. In interpreting and applying the provisions of this [zoning] ordinance, they shall be held to be the minimum requirements for the promotion of safety, health, convenience, comfort, prosperity, and general welfare. (AZO 12.1-1).

**B. At All Relevant Times Planned Parenthood Knew the Property Was Zoned B-B and Subject to Multiple Restrictions on Use and Development Prohibiting the Present Use**

30. At all times material, Planned Parenthood was the real party in interest and the intended owner and occupier of the subject property, although it used intermediaries and alter egos, as well as deception and subterfuge, to hide its involvement in the development and intended land use of the subject property.

31. Planned Parenthood used two subsidiary or affiliated LLCs to act as its undisclosed agents in purchasing and developing the property.

32. On May 13, 2005, Planned Parenthood caused Gemini to be formed, according to the Gemini Office Development LLC Articles of Organization. The sole member of Gemini is 21st Century, and the sole member of 21st Century is Planned Parenthood.

33. Theresa Huyck serves as President of Gemini, and Huyck is also Chief Operating Officer of Planned Parenthood.

34. Throughout the plan, building, and development process, and with intent to deceive plaintiff citizens and/or Aurora as to its true identity, Planned Parenthood acted through Gemini in its dealings with the City.

35. Through its intermediaries or alter egos as described above, Planned Parenthood purchased the subject property on March 23, 2006. The Warranty Deed for the property was recorded on April 10, 2006, as Document No. R2006-064928.

36. The Warranty Deed imposes—as "Exceptions" to the ownership rights of Planned Parenthood—the "TERMS AND CONDITIONS CONTAINED IN TRUSTEE'S DEED RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166187 AND WARRANTY DEED RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166188," as recorded April 10, 2006, as Document No. R2006-064928, "Exceptions", No. 9.

37. These deed restrictions, which "run with the real estate…for thirty-five (35) years from the date hereof," notify any grantee, specifically and explicitly, and require that "[s]uch real estate cannot be developed …until such time as a Final Plan - as defined and described in the zoning ordinance - has been submitted to and approved by the City." Said restrictions appear in Trustee's Deed R2001-166187 Exhibit B and Warranty Deed R2001-166188 Exhibit A, both executed July 18, 2001, and recorded August 8, 2001, No. 3 & 8.

38. Moreover, the deed restrictions notify and require that the "real estate… shall be developed only as a 'Business Area'…under the Plan Description Modification which…may only be used for the uses permitted in a B-B Business Boulevard District…." Again, so much is recited in plain words appearing in the

Trustee's Deed R2001-166187 Exhibit B and Warranty Deed R2001-166188 Exhibit A, both executed July 18, 2001, and recorded August 8, 2001, No. 4.

39. Finally, the deed restrictions notify and require that the purchaser "shall…obtain the City's approval for a Preliminary Plan and…a Final Plan for the real estate…which shall designate such real estate as a 'Business Area'…." This, too, appears in Trustee's Deed R2001-166187 Exhibit B and Warranty Deed R2001-166188 Exhibit A, both executed July 18, 2001, and recorded August 8, 2001, No. 4.

40. Even before Planned Parenthood purchased the property, it was thus plainly aware of the restrictions on its use and development of the subject property. Planned Parenthood secured an A.T.L.A./A.C.S.M. survey of the property, completed December 8, 2005, and later submitted the survey to the City. The survey includes a "Notes" section that informed Planned Parenthood, in pertinent part:

    a. 3. Building lines are shown only where they are so recorded on the maps. Refer to your deed or abstract for additional zoning restrictions….

    b. 5e. Property subject to terms & conditions contained in Trustee's Deed recorded as Doc. R2001-166187 & R2001-166188.

41. Accordingly, from March 23, 2006—and even before purchase— Planned Parenthood was aware of all the limitations on use and development identified above. It was fully aware, therefore, that it was not legally permitted to use or develop the land, as it proceeded to do and as it exists today in defiance of law.

**C. Planned Parenthood's Deceptive and Fraudulent Scheme Harmed Plaintiffs and Impeded Aurora's Enforcement of Its Zoning Ordinance and Applicable Law**

42. Planned Parenthood has sought a location for a large, regional abortion facility in the suburbs of Chicago for many years, and at least since 2002.

43. Faced with the fact that its intended use and development of the subject property was illegal under the Aurora Zoning Ordinance, Planned Parenthood conceived, developed, and implemented an elaborate, fraudulent scheme by which to deceive the plaintiffs and, on information and belief, certain officials of the City of Aurora, to build and operate its charitable, educational, health-related non-pecuniary facility under the guise of an ordinary for-profit taxpaying medical office building.

44. Planned Parenthood is an Illinois Not-For-Profit Corporation that sought and received recognition by the Internal Revenue Service as a 42 USC §501(c)(3) public charity, "organized and operated exclusively for…charitable, scientific, …or educational purposes,…no part of the net earnings of which inures to the benefit of any private shareholder or individual…."

45. Planned Parenthood secured the issuance of $8.05 million in tax-free §501(c)(3) bonds to finance its facility, pursuant to a Loan Agreement that it negotiated and entered into with the State of Illinois Finance Authority.

46. By the terms of said issuance of tax-free bonds, Planned Parenthood's Aurora facility must be owned and occupied by a §501(c)(3) non-profit tax-exempt organization, in compliance with 26 USC §145, and the facility must be operated for purposes substantially related to the charitable and educational purposes that provide the basis for Planned Parenthood's tax-exemption, as required by 26 USC §501(c)(3), 26 USC §145, 26 USC §513(a), and 26 USC §145(b).

47. In its Illinois Finance Authority application for the said tax-free bonds, Attachment 7, Planned Parenthood stated that it intended to build a "full service

center....This new site will give us an opportunity to truly become a *regional* presence" (italics in original).

48. This "full service center" was further described not only as a provider of medical care, but also as an educational and charitable facility that would "serve as a voice in the community...and engage the public in dialogue that will further the rights of women," and "expand our community education presence in the suburbs for teen[s], parents, and clergy."

49. Well knowing that the former Aurora Zoning Ordinance, section 4.3-1.1.FFF, in force at the time of filing, required that, as a charitable organization, Planned Parenthood obtain a special use permit to build and operate its charitable, educational, health-related non-pecuniary facility and that section 8.6-4.4, in force at the time of building permit issuance, prohibited the planned use for the same reason, Planned Parenthood suppressed and concealed the truth from the City that its building was being built for use by a charitable organization in its operation of a charitable, educational, health-related non-pecuniary facility.

50. Instead, Planned Parenthood misrepresented to the City through its subsidiary Gemini that it intended to build a for-profit, "Medical Office Building" on the property, which was permitted under AZO 8.6-4.1.LLL.

51. Planned Parenthood also suppressed and concealed from one or more City officials and from plaintiffs that it planned to build a "regional" abortion facility, which would attract a large number of people, presumably from surrounding communities, and counties, and even from other states.

52. Instead, Planned Parenthood misrepresented to the City that it planned to build an ordinary, local, "Medical Office Building," to be occupied by one or more physicians, dentists, and/or pharmacists, thus materially misstating the truth as to the actual character of its intended land use and the deleterious effects the facility would have on the neighborhood.

53. In furtherance of its scheme, Gemini filed a COMN Commercial New Construction Application, a Land Use Petition, A.T.L.A. Survey, and drawings on or about July 27, 2006, and supplemented its Land Use Petition with a required "Qualifying Statement" on August 2, 2006. The plans and specifications for the facility located bullet-proof glass and walls in the entryway of the facility, but nothing was said to affected neighbors about any feared violence arising from this proposed land use.

54. Gemini's submission included no request for variations or exceptions to zoning requirements. This was despite the fact that Aurora zoning law both 1) prohibited the proposed use due to the fact that Planned Parenthood was a charitable organization building a non-profit health-related facility and 2) imposed more stringent setback, parking, and safety requirements than were reflected on the Planned Parenthood plans.

55. Acting for Planned Parenthood, Gemini President Huyck authorized Thomas Lehman, P.E., to make the Land Use Petition on behalf of Planned Parenthood.

56. The signature panel of the Land Use Petition contains the false affirmation that "all information and exhibits herewith submitted are true and correct to the best of my knowledge."

57. The Qualifying Statement attached to the Petition falsely stated that, "[t]he proposed project meets all of the current zoning requirements as set forth by the City of Aurora. The intended use as a Medical Office Building will help to serve the public health and general welfare of the community."

58. In furthering the false representation that this was to be a simple, local "Medical Office Building," Gemini falsely contended in its Land Use Petition-Qualifying Statement, given by Planned Parenthood to Aurora on 8/2/06, that "[a]ccess to the site will be via the existing access road from Oakhurst leading to Dominick's and will have minimum impact to the traffic in the area."

59. Moreover, on the drawings submitted with the Petition, front-yard setback requirements and parking requirements under the B-B zoning governing the property were misstated.

60. The COMN Application required tenant information for the facility, and Gemini listed "Gemini Office Development" as the tenant instead of the true tenant, Planned Parenthood.

61. The "GENERAL DESCRIPTION OF PROPOSED WORK" is falsely described as "Medical Office Building."

62. In order to obtain a building permit, the Aurora Building Code, at section 105.3(1) & (7), requires that a developer must "file an application...on a form furnished...for that purpose. Such application shall: 1. Identify and describe the work....7. Give such other data and information as required by the building official."

63. Planned Parenthood agent Lehman signed the COMN Application as the "Owner" under the "Certification" stating that "the applicant agrees to conform to all

applicable laws of the City of Aurora….I understand that the approval of this application and issuance of a permit does not obviate the need to comply with all applicable laws and ordinances. I agree to hold harmless and indemnify the City of Aurora for any claim…."

64. At the end of the COMN Application, David Dastur, architect for Gemini, signed with the false representation that "I hereby certify that these plans were prepared by me or under my supervision, and to the best of my knowledge, comply with all codes."

65. The building permit eventually issued to "Tenant" "Gemini Office Development" as an "Envelope permit"—a building permit for a development not being built for a specific tenant and not resulting in a certificate of occupancy.

66. Throughout the five-month period that its plans and application were considered, Planned Parenthood acting under cover of Gemini actively concealed and suppressed the truth that the building was intended for use as a Planned Parenthood charitable, educational, health-related non-pecuniary facility, as well as a facility for performance for surgical abortions for the entire Northern Illinois region—even including twelve surgical recovery rooms, as many as Aurora's only non-sectarian hospital and qualifying as, on information and belief, the largest surgical abortion facility in the country.

67. Moreover, even as Planned Parenthood occupies the facility under a purported certificate of occupancy, it never filed the COMR Application required by ordinance to receive such an occupancy permit, as required by the Aurora Building Code, at section 105.3, and the Aurora Zoning Ordinance, at section 10.3-2.

68. Acting under cover of Gemini, Planned Parenthood later filed four additional applications for various permits with differing tenant information, including a foundation permit for "Gemini Medical Office", a trailer permit for "Gemini Office Development", a sign permit for "Unknown at this time", and a fire suppression permit for "Gemini Office".

69. Not until the alarm permit was requested on August 20, 2007 were any documents filed with the City listing Planned Parenthood as the owner, tenant, or user of the facility.

**D. Planned Parenthood Deceived the Aurora Planning Commission and the Aurora Planning & Development Committee**

70. Planned Parenthood's final plan for the property was presented and approved at the Planning Commission on November 1, 2006, and at the Planning & Development Committee on November 16, 2006.

71. At the Planning & Development Committee meeting, Alderman Lynda Elmore asked the Gemini representative, "[i]s this building being built specifically for a client?"

72. Gemini, at the behest of its principal and alter ego, Planned Parenthood, perpetuated Planned Parenthood's misstatements by answering, "[w]e're in negotiations with a tenant; we do not currently have a lease but we still want to move ahead," as set forth in the transcript of the Planning & Development Committee meeting held November 16, 2006, page 3. Alderman Elmore indicated that she was surprised by and unaware of the preliminary planning for the development, observing that "This, apparently….I think the preliminary on this must have happened prior to this getting moved into my ward [laughs] because this is a little bit of a surprise to me…."

16

73. Having been deceived by Planned Parenthood, Alderman Elmore indicated that she believed that the development would be "quiet" and "a nice buffer" between the neighbors and the retail center, as reported in the Planning & Development Committee transcript, page 6.

74. No mention is made in the Planning & Development Committee transcript—or in the Planning Council or Planning Commission minutes—of any comparison between the Final Plans for the property and any purported Preliminary Plans, as required by the Aurora Zoning Ordinance, sections 10.7-9 and 10.7-12.2. On information and belief, no such comparison ever occurred.

75. Nor do any records or transcripts show that variations, modifications, or exceptions to the Zoning Ordinance were ever considered or approved by the Planning & Development Committee or Planning Commission.

76. Finally, the resolution passed by the Planning & Development Committee did not indicate that the Committee had granted any variations, modifications, or exceptions to the Zoning Ordinance or compared the final plan to any purported preliminary plans.

### E. Planned Parenthood Violated a Litany of Zoning Ordinance Requirements in Pursuance and as Part of its Scheme to Deceive

77. Planned Parenthood never presented Preliminary Plans for the property to the City Council, as its deed of purchase required.

78. City Council approval of Preliminary Plans is required by the Zoning Ordinance to develop any property in a PDD:

   a. Preliminary plans for all or specified phases of a planned development district shall be submitted by the developer to the City clerk on the City of Aurora's petition for approval of a planned development district-

preliminary plan....the City council shall either approve or disapprove the preliminary plan. (AZO 10.7-12.1).

    b.  A preliminary plan shall include or be accompanied by the following:...A time schedule of the proposed development of the area covered by such preliminary plan. (AZO 10.7-7.5).

79. Without Preliminary Plan approval by the City Council, further approvals and permits based on Preliminary Plans are void.

80. Planned Parenthood also failed to obtain the required City Council approval to file plans after the deadlines imposed by the Planned Development District ordinance expired.

81. The Zoning Ordinance provides:

...preliminary plans covering all of the district shall be submitted to the City council within such period of time as shall have been prescribed in the approval of the application for establishment of the planned development district... upon request in writing of the developer, the City council may at any time and from time to time, by resolution duly adopted at any meeting of the City council, extend the period of time for submission of preliminary plans covering all of the district. (AZO 10.7-8).

82. As noted above in Paragraph 22 (c), Preliminary Plans for the subject property were required under Ordinance O93-124 to be submitted prior to December 7, 2000.

83. On information and belief, City Council approval was neither sought nor granted to extend the time for submission of Preliminary Plans for the subject property.

84. Without approval by the City Council to extend the time for submission, further approvals and permits based on Preliminary Plans are void.

85. Planned Parenthood further violated the Zoning Ordinance in filing its final plans late as well. Final Plans for the subject property were required under Ordinance O93-124 to be submitted prior to December 7, 2003.

86. The Zoning Ordinance provides:

a. Final plans covering all of the planned development district shall be submitted...within such period of time as shall have been prescribed in the approval of the application for establishment of the planned development district...upon request in writing of the developer, the City council may at any time and from time to time, by resolution duly adopted at any meeting of the City council, extend the period of time for submission of final plans covering all of the district. (AZO 10.7-11)

b. A planned development district shall be developed only according to approved final plans. (AZO 10.7-13.6).

87. On information and belief, City Council approval was neither sought nor granted to extend the time for submission of Final Plans for the subject property, rendering any approvals of plans or development void.

88. Planned Parenthood further violated the Zoning Ordinance by failing to request and receive variations or exceptions from the Zoning Ordinance provisions needed to excuse its prohibited use and development of the property, and numerous violations of zoning standards.

89. In the plan approval process for a property in a Planned Development District in the City of Aurora, the Planning Commission may recommend "modifications and exceptions from any provisions of this [zoning] ordinance." (AZO 10.7-13.5).

90. Such recommendations and approvals for variations or exceptions of Zoning Ordinance requirements must be obtained, before building, occupancy, and other permits may be issued for a property:

a. Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance. (AZO 10.2-1).

91. Moreover, without reviewing a preliminary plan for the property, it was not possible for the Planning Commission and the Planning & Development Committee to evaluate or approve "changes":

92. Further, the Planning Commission is required to give notice and an opportunity to be heard to neighbors prior to recommending approval of a special/prohibited use for the property or for substantially altering the open space guaranteed by the front-yard setback, as these would be "major changes" under the Zoning Ordinance, which provides:

a. The planning commission and the planning council shall review the final plan and if major changes are proposed by the developer, the planning commission pursuant to this section shall hold a public hearing... (AZO 10.7-12.2).

b. A major change shall be a change which substantially alters the proposed uses (including open space)...or the intent and purpose of the plan description or the approved preliminary plan for the area covered by such final plan. (AZO 10.7-9)

93. Finally, at least one Aurora alderman would have appealed the decision of the Planning & Development Committee, if not for the deception of Planned Parenthood. Such an appeal would have required consideration before the City Council for a vote with respect to the proposed use and development of the property.

94. Moreover, Planned Parenthood's deceptions, concealments, and omissions in the plan approval process were specifically forbidden by the Zoning Ordinance and City procedure. A Final Plan must be submitted via a City of Aurora petition and approved prior to the issuance of building permits for a facility. (AZO 10.7-

15, 10.7-12.2). The process for petition requirements for this petition are provided by the "REVIEW PROCEDURES: Final Plans", which state that:

    a.  A petition shall be deemed complete if it includes:...A "FINAL PLAN" of the subject property indicating all required information pursuant to those items indicated on the Checklist for Final Plans, form P-4. (REVIEW PROCEDURES: Final Plans, No. 2, Part C).

95. Planned Parenthood's zoning and permit applications, as submitted by Gemini, also misrepresented or withheld numerous material facts required by the City's "Final Plan Review Checklist." In particular, Planned Parenthood omitted any listing of "[e]xceptions or variations to City Zoning or Subdivision Ordinances being requested as part of the final plan including the specific section of the ordinance," which must be included in the petition, according to the Final Plan Review Checklist, Form P-4, Section One, 1.d.

96. Planned Parenthood was aware and well knew that, without requesting and obtaining approval for the necessary variations and permissions, it could not have erected and occupied its facility, as its plans and intended use did not indicate conformity with the requirements of the Zoning Ordinance, sections 10.2-1, 3.2-6.1, and 3.2-5.1.

97. Further, Planned Parenthood was required to provide the "Number of parking spaces required by Zoning Ordinance," "dimensioned building setbacks," and "existing and proposed vehicular and pedestrian circulation systems, indicating there [sic] inter-relationship and proposed treatments of points of conflict," also according to the Final Plan Review Checklist, Form P-4, Section Two, 4.g, Section Three, 2 & 4.

98. Instead, Planned Parenthood misstated and violated the parking space requirement for the office and medical uses of its facility, misstated and violated the front-yard building setback for the property, and constructed a facility that greatly

increased foot and vehicle traffic without providing adequate traffic flow measures, such as a sidewalk along the access road leading to the Dominick's shopping center or a separate parking lot entrance from the already heavily-trafficked access road.

99. Planned Parenthood certainly knew the foot and vehicle traffic issues its facility would generate, based on past experience with its own large abortion facility in the City of Chicago and the past experience of other Planned Parenthood affiliates around the country. Providing all of this critical information is the responsibility of the developer, Planned Parenthood, not City staff, the Planning Commission, or Planning & Development Committee.

100. Planned Parenthood had no right to plan approvals, based on its misstatement and omission of critical information that it knew or should have known—critical information that Planned Parenthood was in the best position to know, based on its own chain of title.

101. Moreover, the land use application is required to include, "A statement of planning objectives to be achieved by the plan," according to the Final Plan Review Checklist, Form P-4, Section One, 1.a.

102. Planned Parenthood stated in Attachment 7 of its submission to the Illinois Finance Authority, in securing its $8.05 million of tax-free bonds, this "full service center" was intended to be a "regional presence" to provide medical care, to "serve as a voice in the community...and engage the public in dialogue that will further the rights of women," and that it would "expand our community education presence in the suburbs for teen [sic] parents, and clergy."

103. Yet, Planned Parenthood told Aurora the opposite, namely that it was constructing a generic white envelope "Medical Office Building." That is to say, that its new construction was to be a "shell" whose interior configuration would be built to the specifications of the tenants to whom it would lease professional office space.

104. Plaintiffs, as well as their representatives and civil servants, were entitled to know the true objectives of the facility as a regional presence and charitable, educational, health-related, non-pecuniary facility for Planned Parenthood.

105. At all times Planned Parenthood knew that, by withholding and misrepresenting material and required information from Plaintiffs, civil servants, the Planning Commission, and the Planning & Development Committee, it was disregarding and flouting the requirements of Aurora's Zoning Ordinance.

106. Planned Parenthood's construction, development, and operation of the subject property also violated numerous other provisions of Aurora's Zoning Ordinance, including the following:

    a. The building has been erected and the building and subject land are being used for purposes other than is permitted in the district in which the building and land are located, in violation of AZO 3.2-5.1.

    b. Permits have been issued by City departments which purportedly authorize the use of the subject land and building contrary to the provisions of the Zoning Ordinance and the purported erection and occupancy of the building, although it is designed and intended to be used for a purpose or in a manner contrary to the provisions of the Zoning Ordinance, in violation of AZO 3.2-6.1.

c.  Neither the plans nor the improvement provide for the required 35 foot front yard set back, and part of the front yard set back is covered with impervious surfaces, in violation of AZO 8.6-5.1.B.i.a & c and 5.4-4.1.A.iii.

d.  No adequate landscape plan was provided, in violation of AZO 5.4-3 & 8.6-5.1.E.iv.

e.  The non-handicapped parking spaces are too small and there is insufficient back-up space, in violation of AZO 8.6-5.1.G.ii.

f.  Only 71 parking spaces are provided when B-B zoning standards require 96, in violation of AZO 8.6-5.2.E.ix.; AZO 8.6-5.2.E.xvi.

g.  Numerous fence violations persist on the property including: i. no permit or approval has been issued for the fence currently on the property, in violation of AZO 4.2-4.1.A; ii. the fence extends beyond the property line in violation of AZO 4.2-4.3; iii. the fence is made of improper materials in violation of AZO 4.2-4.9.A; iv. the fence extends into a public right-of-way, in violation of AZO 4.2-4.19; and v. the fence obstructs pedestrian and driver visibility, in violation of AZO 8.6-5.1.G.iii.

h.  The thick evergreen trees planted on the northeast corner of the property currently obstruct pedestrian and driver visibility, in violation of AZO 8.6-5.1.G.iii.

i.  No zoning permit for the facility has been issued, in violation of AZO 10.2-1 and 10.7-15, and supporting documentation has not been provided, in violation of AZO 10.2-2.

j.  Permits have been issued purportedly for erection and occupancy of the building and use of premises where the plans and intended use do not indicate conformity in all respects to the provisions of this Zoning Ordinance, in violation of AZO 10.2-1.

k.  No certificate of occupancy has been properly applied for or issued, in violation of AZO 10.3-1, 10.3-1.1, and 10.3-2.

l.  The final plans as filed do not meet the requirement of accurately providing a calculated and dimensioned development plat indicating dimensioned setback lines and the proposed use of each building site, in violation of AZO 10.7-10.1.B.

**F.  Proceedings Before the Aurora Zoning Board of Appeals**

107.  On August 16, 2007, Aurora issued a temporary certificate of occupancy to Gemini, which was to last until September 17, 2007.

108.  On August 31, 2007, Aurora notified Gemini that it was restricting the temporary certificate of occupancy to prevent Gemini from opening for business until further notice.

109.  On October 1, 2007, Aurora issued a temporary certificate of occupancy to Planned Parenthood.

110.  On October 2, 2007, prior to the grand opening of the Planned Parenthood facility, plaintiffs brought an appeal to the Aurora Zoning Board of Appeals ("Zoning Board of Appeals") challenging Planned Parenthood's use and occupancy of the subject property.

111. By written order served on January 9, 2008, the Zoning Board of Appeals dismissed the appeal, finding that it lacked jurisdiction. A copy of the decision of the Zoning Board of Appeals, which is appealed herein, is attached as Exhibit A.

112. The Zoning Board of Appeals ruled that it did not have jurisdiction over the appeal because the October, 2006, decision of the Zoning Administrator was not timely filed. However, proper posting of the building permit, required to start the time for appeal, was never proven. On information and belief, said posting never occurred. The building permit itself could not provide notice of violations because it was false on its face. For this and other reasons, the plaintiffs had no legally-sufficient notice of the zoning decisions and violations on the property.

113. The Zoning Board of Appeals ruled that it could only review specific decisions of the Zoning Administrator, defendant Ed Sieben, and that Mr. Sieben made only one decision throughout the entire development process for the property. This was error, as zoning decisions had been made throughout the development process. If not made by the Zoning Administrator himself, these decisions were made by other administrative officials under the delegated authority of the Zoning Administrator or under some other legally-provided grant of zoning enforcement authority. The action was properly and timely appealed, as the Illinois Municipal Code, at section 65 ILCS 5/11-13-3(f), provides that "...the board of appeals shall hear and decide appeals from...an administrative official charged with the enforcement of any [zoning] ordinance," whether or not that official was himself the Zoning Administrator. The Zoning Board of Appeals also ruled that the appeal only sought "review of all decisions leading up to and the issuance of a building permit and a certificate of occupancy."

However, Plaintiffs specifically sought relief regarding "the zoning permit", which the City later admitted was never issued. They appealed also the inaction of the Zoning Administrator, who was derelict in his duty under AZO 14.1-2, "to prevent, enjoin, abate or remove such [zoning] violation[s]." Plaintiffs also specifically sought relief from any and all decisions "to approve plans, applications, or other intermediate actions predicate to obtaining permit application approval[] and...predicate to issuing the relevant permits."

       114. Plaintiffs made a number of proper requests of the Zoning Board of Appeals which the Board refused to allow, including:

    a. Staying effectiveness and further issuance of temporary occupancy permits to Planned Parenthood, in accord with the automatic stay of "all proceedings in furtherance of the action appealed from" imposed by 65 ILCS 5/11-13-12 and Aurora Zoning Board of Appeals Rules and Regulations.

    b. Allowing additional documents into the administrative record, in accord with the command of 65 ILCS 5/11-13-12 that, "The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken" and the command of the Aurora Zoning Board of Appeals Rules and Regulations that "(e) The Zoning Administrator shall make all papers constituting the records upon which the action appealed form [sic] was taken a matter of public record."

c.  Providing for expedited discovery, in accord with Zoning Board of
Appeals ruling and other applicable laws.

d.  Addressing and adjudicating the arguments set forth in the filings before
the Zoning Board of Appeals, finding and declaring all permits and
approvals invalid, null, void, unenforceable, and revoked, and ordering a
cessation of occupancy and use, along with removal of the illegal
improvements.

## V. CAUSES OF ACTION

### COUNT I
### ADMINISTRATIVE REVIEW
### UNDER THE ADMINISTRATIVE REVIEW ACT

115.  Plaintiffs Frachey, Maloney, Nieto, Flolo, Flolo, and Fox Valley
Families reallege ¶¶ 1-114.

116.  Said plaintiffs were parties of record before the Aurora Zoning
Board of Appeals proceedings, as were defendants Planned Parenthood, Gemini, and the
City of Aurora.  This count is brought against defendants Zoning Board of Appeals,
Planned Parenthood, Gemini, and the City of Aurora.

117.  Plaintiffs are aggrieved and harmed in their persons and properties
by the violations alleged and appealed, as noted herein, and by the decision rendered by
the Zoning Board of Appeals attached as Exhibit A.

118.  The Illinois Municipal Code at 65 ILCS 5/11-13-12 provides for
review of decisions of municipal Zoning Boards of Appeal under the provisions of the
Illinois Administrative Review Act, 735 ILCS 5/3-101, *et seq.*

119.  The decision of the Aurora Zoning Board of Appeals was mailed to the plaintiffs on January 9, 2008.  Plaintiffs timely appeal within thirty-five (35) days of that mailing.

120.  Plaintiffs seek review of the matters set forth above in § IV.F., including the decision attached as Exhibit A.  Plaintiffs specify that all documents in the transcript of evidence before the Zoning Board of Appeals—including those documents ordered to be placed into the transcript of evidence by the Zoning Board of Appeals—be included as part of the record to be furnished with the Answer of the Zoning Board of Appeals to this Complaint.

WHEREFORE, plaintiffs request that the Court:

A. Reverse the decision of the Aurora Zoning Board of Appeals dismissing the action and find that jurisdiction rests with the Aurora Zoning Board of Appeals;

B.  Until the rendering of a final decision by the Aurora Zoning Board of Appeals, stay the effectiveness of any current and the issuance of any future certificate of occupancy, temporary or permanent, to Planned Parenthood/Chicago Area;

C.  Reverse the decisions of the Aurora Zoning Board of Appeals refusing (1) to allow additional documents into the administrative record, (2) to provide for expedited discovery, and (3) to address and adjudicate the arguments set forth in the filings before it; and

D.  Grant other just relief.

**COUNT II**
**COMMON LAW ADMINISTRATIVE REVIEW**
**UPON A WRIT OF CERTIORARI**

121. Plaintiffs reallege ¶¶ 1-114.

122. As detailed above, Planned Parenthood's deceit caused such confusion that plaintiffs are unaware of the 2006 action of the Zoning Administrator to which the Zoning Board of Appeals made reference in dismissing the action, and had no notice of the action. It also appears that other Aurora officials and/or agencies may have made ultimate decisions regarding Planned Parenthood's use and development of the subject property, including the approving of plans and granting of building and occupancy permits. These officials and/or agencies include the defendants listed above in ¶¶ 11-15:

    a. Mayor Thomas Weisner.

    b. Building Official Herman Beneke.

    c. The Planning & Development Committee of the City of Aurora.

    d. The Planning Commission of the City of Aurora.

    e. The Building Code Board of Appeals.

123. Plaintiffs seek common law administrative review of all ultimate decisions by Aurora officials and/or agencies other than those decisions listed in Count I.

WHEREFORE, plaintiffs request that the Court:

A. Reverse the decisions of the Aurora officials and/or agencies making ultimate decisions, and find that the decisions were *ultra vires* and void *ab initio*;

B. Stay the issuance of the temporary occupancy permit to Planned Parenthood/Chicago Area;

C. Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the

offending improvements and return the subject property to its condition prior to the

initiation of the Aurora development process; and

E.  Grant other just relief.

## COUNT III
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE
## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## AGAINST THE CITY OF AURORA

124.  Plaintiffs reallege ¶¶ 1-114.

125.  The Supremacy Clause of Article VI of the Unites States

Constitution provides:

> This Constitution and the Laws of the United States
> which shall be made in Pursuance thereof; and all
> Treaties made, or which shall be made, under the
> Authority of the United States, shall be the supreme
> Law of the Land; and the Judges in every State shall
> be bound thereby, any Thing in the Constitution or
> Laws of any State to the Contrary notwithstanding.

126.  The Due Process Clause of the Fourteenth Amendment to the United

States Constitution provides, in relevant part: "No State shall … deprive any person of

life, liberty or property, without due process of law … ."

127.  As detailed above, Aurora's approval of the certificate of occupancy

for Planned Parenthood, and all underlying decisions, were illegal, *ultra vires*, and void,

made without due process of law, and has deprived plaintiffs of liberty and property

interests, in violation of 42 U.S.C. § 1983.

WHEREFORE, plaintiffs request that the Court:

A.  Enter an order finding that the decisions of Aurora officials and/or

agencies as described above were illegal, *ultra vires*, and void;

31

B.  Enter an order requiring the City of Aurora to withdraw the temporary occupancy permit issued to Planned Parenthood/Chicago Area;

C.  Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the offending improvements and return the subject property to its condition prior to the initiation of the Aurora development process;

E.  Award appropriate damages, reasonable attorney's fees, expenses and costs to plaintiffs; and

F.  Grant other just relief.

**COUNT IV**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE**
**ILLINOIS CONSTITUTION**
**AGAINST THE CITY OF AURORA**

128.  Plaintiffs reallege ¶¶ 1-114.

129.  The Due Process Clause of § 2 the Illinois Constitution provides, in relevant part: "No person shall be deprived of life, liberty or property, without due process of law".

130.  As detailed above, Aurora's approval of the certificate of occupancy for Planned Parenthood, and all underlying decisions, were illegal, *ultra vires*, and void, made without due process of law, and has deprived plaintiffs of liberty and property interests.

WHEREFORE, plaintiffs request that the Court:

A.  Enter an order finding that the decisions of Aurora officials and/or agencies as described above were illegal, *ultra vires*, and void;

B.  Enter an order requiring the City of Aurora to withdraw the temporary occupancy permit issued to Planned Parenthood/Chicago Area;

C.  Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the offending improvements and return the subject property to its condition prior to the initiation of the Aurora development process;

E.  Award appropriate damages, reasonable attorney's fees, expenses and costs to plaintiffs; and

F.  Grant other just relief.

### COUNT V
### VIOLATION OF DUE PROCESS
### UNDER THE ILLINOIS MUNICIPAL CODE
### AGAINST THE CITY OF AURORA

131.  Plaintiffs reallege ¶¶ 1-114.

132.  Section 5/11-13-25(b) of the Illinois Municipal Code, 65 ILCS 5/11-13-25(b) provides: "The principles of substantive and procedural due process apply at all stages of the decision-making process and review of all zoning decisions."

133.  As detailed above, Aurora's approval of the certificate of occupancy for Planned Parenthood, and all underlying decisions, were illegal, *ultra vires*, and void, made without due process of law, and has deprived plaintiffs of liberty and property interests.

WHEREFORE, plaintiffs request that the Court:

A.  Enter an order finding that the decisions of Aurora officials and/or agencies as described above were illegal, *ultra vires*, and void;

33

B.  Enter an order requiring the City of Aurora to withdraw the temporary

occupancy permit issued to Planned Parenthood/Chicago Area;

C.  Enjoin Planned Parenthood/Chicago Area from using or occupying the

subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the

offending improvements and return the subject property to its condition prior to the

initiation of the Aurora development process;

E.  Award appropriate damages, reasonable attorney's fees, expenses and

costs to plaintiffs; and

F.  Grant other just relief.

## COUNT VI
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## AGAINST THE CITY OF AURORA

134.  Plaintiffs reallege ¶¶ 1-114.

135.  The Supremacy Clause of Article VI of the Unites States

Constitution provides:

> This Constitution and the Laws of the United States
> which shall be made in Pursuance thereof; and all
> Treaties made, or which shall be made, under the
> Authority of the United States, shall be the supreme
> Law of the Land; and the Judges in every State shall
> be bound thereby, any Thing in the Constitution or
> Laws of any State to the Contrary notwithstanding.

136.  The Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution provides, in relevant part: "No State shall … deny to any

person within its jurisdiction the equal protection of the laws."

34

137.  As detailed above, Aurora's actions in approving the certificate of occupancy for Planned Parenthood, and all underlying decisions, were illegal, *ultra vires*, and void, and deprived plaintiffs of the equal protection of the laws, in violation of 42 U.S.C. § 1983.

WHEREFORE, plaintiffs request that the Court:

A.  Enter an order finding that the decisions of Aurora officials and/or agencies as described above were illegal, *ultra vires*, and void;

B.  Enter an order requiring the City of Aurora to withdraw the temporary occupancy permit issued to Planned Parenthood/Chicago Area;

C.  Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the offending improvements and return the subject property to its condition prior to the initiation of the Aurora development process;

E.  Award appropriate damages, reasonable attorney's fees, expenses and costs to plaintiffs; and

F.  Grant other just relief.

## COUNT VII
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE ILLINOIS CONSTITUTION
## AGAINST THE CITY OF AURORA

138.  Plaintiffs reallege ¶¶ 1-114.

139.  The Equal Protection Clause of § 2 of the Illinois Constitution provides: "No person shall be deprived of … the equal protection of the laws."

35

140. As detailed above, Aurora's actions in approving the certificate of occupancy for Planned Parenthood, and all underlying decisions, were illegal, *ultra vires*, and void, and deprived plaintiffs of the equal protection of the laws, in violation of 42 U.S.C. § 1983.

WHEREFORE, plaintiffs request that the Court:

A. Enter an order finding that the decisions of Aurora officials and/or agencies as described above were illegal, *ultra vires*, and void;

B. Enter an order requiring the City of Aurora to withdraw the temporary occupancy permit issued to Planned Parenthood/Chicago Area;

C. Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D. Order Planned Parenthood/Chicago Area to remove and abate the offending improvements and return the subject property to its condition prior to the initiation of the Aurora development process;

E. Award appropriate damages, reasonable attorney's fees, expenses and costs to plaintiffs; and

F. Grant other just relief.

## COUNT VIII
### VIOLATION OF SECTION 5/11-13-15 OF THE ILLINOIS MUNICIPAL CODE AND SECTION 14.1-2 OF THE AURORA ZONING ORDINANCE AGAINST PLANNED PARENTHOOD/CHICAGO AREA, STEVEN TROMBLEY, GEMINI OFFICE DEVELOPMENT, LLC, AND 21ST CENTURY OFFICE DEVELOPMENT, LLC

141. Plaintiffs reallege ¶¶ 1-114.

142. Plaintiffs Frachey, Maloney, Nieto, Fiolo, and Amaning live within 250 feet of the subject property and members of plaintiff Fox Valley Families Against

Planned Parenthood have been and continue to be especially damaged and substantially affected in their persons and property by the violations of the Zoning Ordinance and Aurora Building Code as detailed above.

143.  Plaintiffs have either exhausted or are appealing available administrative remedies in this Complaint, or administrative remedies were not reasonably available, would have been futile to pursue, or could not have remedied the asserted violations.

144.  As detailed above, one or more of the above-listed defendants owns the subject property and facility which have been or are being erected, constructed, altered, maintained, used, and occupied in violation of the Illinois Municipal Code, 65 ILCS 5/11-13-15, and AZO 14.1-2.  In addition, Planned Parenthood which is controlled by Steven Trombley occupies the building in violation of the same code section.

WHEREFORE, plaintiffs request that the Court:

A.  Enter an order finding that the decisions of Aurora officials and/or agencies as described above were *ultra vires* and void *ab initio*;

B.  Enter an order requiring the City of Aurora to withdraw the temporary occupancy permit issued to Planned Parenthood/Chicago Area;

C.  Enjoin Planned Parenthood/Chicago Area from using or occupying the subject property on a preliminary and permanent basis;

D.  Order Planned Parenthood/Chicago Area to remove and abate the offending improvements and return the subject property to its condition prior to the initiation of the Aurora development process;

E.  Award reasonable attorney's fees, expenses and costs to plaintiffs; and

F.  Grant other just relief.

Respectfully submitted,

_____

One of plaintiffs' attorneys

Peter Breen DuPage #225827
Thomas Brejcha
Of Counsel,
Thomas More Society,
A public interest law firm
29 S LaSalle St, Ste 440
Chicago, IL 60603
(312) 782-1680 (Phone)
(312) 782-1887 (Fax)

John W. Mauck
Richard C. Baker
Andy Norman
Noel W. Sterett
MAUCK & BAKER DuPage #28815
Suite 600
One North LaSalle Street
Chicago, Illinois 60602
(312) 726-1243

# MICKEY, WILSON, WEILER, RENZI & ANDERSSON, P.C.
### ATTORNEYS AT LAW
2111 W. PLUM STREET, SUITE 201
AURORA, ILLINOIS 60506
www.mickeywilson.com

GARY K. MICKEY
PETER K. WILSON, JR.
BERNARD K. WEILER
CONSTANCE BURNETT RENZI
STEVEN A. ANDERSSON
DEAN M. FRIEDERS
LINDA K. LEASK

MAILING ADDRESS:   P.O. BOX 787
AURORA, ILLINOIS  60507-0787

TELEPHONE: (630) 801-9699
FAX: (630) 801-9715
WRITER'S E-MAIL: pkw@mickeywilson.com

January 9, 2008

Mr. Peter C. Breen
Thomas More Society
29 South LaSalle St. Suite 440
Chicago, IL 60603

Mr. Christopher B. Wilson
Perkins, Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Ms. Alayne Weingartz
Corporation Counsel, City of Aurora
5 E. Downer Place, Suite F
Aurora, IL 60507

$Exhibit$
$A$

     Re:    Frachey, et al. Appeal to Zoning Board of Appeals No. 07 ZBA 001

Dear Counsel:

As a follow-up to my e-mail of January 9, 2008, enclosed please find a copy of the Written Decision of the Zoning Board of Appeals dismissing the appeal in the above-referenced matter.  Please contact me should you have any questions.

                      Very truly yours,

                      Peter K. Wilson, Jr.

PKW:mar
Enclosure
cc:   Margaret Truax, Chairperson, Zoning Board of Appeals, City of Aurora
R:\Municipal\Aurora\Zoning Board of Appeals\Correspondence\Written decision letter to attorneys 010908.doc

# ZONING BOARD OF APPEALS
## CITY OF AURORA
### 44 East Downer Place
### Aurora, IL 60507

**WRITTEN DECISION OF THE ZONING BOARD OF APPEALS:**

On January 7, 2008 the Zoning Board of Appeals met in Executive Session pursuant to Section 2 (c)(4) of the Illinois Open Meetings Act to deliberate on the Motion to Dismiss and Transfer filed by the City of Aurora. In those deliberations the Board considered the Motion as filed, the briefs filed by the parties in support of or in opposition to the Motion, the oral arguments of counsel, and applicable law. In addition, the Board had received the record in this matter consisting of 1749 pages.

Our review of the foregoing established that the City of Aurora has adopted a zoning ordinance (which would be an adoption in accordance with Division 13 of the Municipal Code) and, in Section 10.4-1, established the Zoning Board of Appeals. At Section 10.4-2, the Zoning Ordinance establishes the Board's jurisdiction and provides as follows:

> 10.4-2. Jurisdiction. The Zoning Board of Appeals is hereby vested with the following jurisdiction and authority:
>
> 10.4-2.1    To hear and decide appeals from any order, requirement, decision or determination made by the **zoning administrator** under this ordinance; [emphasis added]
>
> 10.4-2.2    To hear and pass upon applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein;
>
> 10.4-2.3    To hear and decide all matters referred to it or upon which it is required to pass under this zoning ordinance as prescribed by statute.

In addition, under the Illinois Municipal Code, the board "shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any [zoning] ordinance ...." The board also hears and decides all matters "... referred to it or upon which it is required to pass under such an ordinance." In this case that is, again, the Zoning Administrator.

In reaching our decision here it was important to keep in mind that the law does not give the Zoning Board of Appeals any implied authority. In other words, it only has the specific power or authority granted to it by statute or ordinance, and no other. In this case, the Zoning Board of Appeals may legally only review decisions or determinations made by the Zoning Administrator.

The appeal filed by the Appellants seeks the review of numerous decisions, documents, or permits made or issued by various persons or departments of the City. The argument made is that many of these decisions, documents, or permits are not proper if the original zoning determination was not proper or if a current use of the property exceeds a zoning restriction. That argument, however, would give the Zoning Board of Appeals extremely broad and extensive powers to review decisions by other officials, which power is not found in the law.

The Zoning Board of Appeals is an appointed administrative body established by the elected officials of the City. It can only have the powers and authority given to it by a statute or the City ordinance. While one could argue the City could have delegated authority to the Zoning Board of Appeals consistent with that urged by the Appellants, it clearly did not do so.

Both the state statute and the City ordinance limit the Zoning Board of Appeals' authority to a review of specific decisions or orders of the Zoning Administrator. In the documents filed as part of the record herein it appears that the Zoning Administrator reviewed the initial proposed building and made a recommendation dated in October 2006 to the Plan Commission, on November 1, 2006, and to the Planning and Development Committee, on November 16, 2006, that the proposed building was in accordance with the existing zoning on the property. Nowhere is there any contention that a variance was sought by the Petitioner, which would be the only other area of review by the Board.

The City ordinance does not establish a time in which an appeal must be filed. The state statute, however (in Section 11-13-12), provides that an appeal must be taken within 45 days of the action from which the appeal is taken. While the Board's Rules and Regulations provide for an appeal to be taken within 20 days, that is not a time limit contained within the City ordinance, and the adoption of that time limit solely by the Zoning Board of Appeals would therefore not be effective to alter the state statute and the 45 day time limit would be applicable. Here, however, the appeal was clearly filed more than 45 days after the action of the Zoning Administrator.

The City further requests in its Motion that the Zoning Board of Appeals transfer this appeal to the Building Code Board of Appeals. The authority of the Zoning Board of Appeals, however, is again limited by statute and ordinance. If there is a decision or order properly before the Board, its authority is to reverse, affirm, or modify the order from which the appeal is taken. In that context it only has the same authority as the zoning administrator whose decision is appealed. No authority is given to it, however, to determine what forum might be the correct one for an issue over which it does not have jurisdiction, or to transfer the matter to any other entity.

Despite what is urged here, the Zoning Board of Appeals has very limited authority. It is an administrative review process over the actions of one administrative official. The Zoning Board of Appeals is not a body entitled to make unlimited zoning decisions on behalf of the City.

We believe that under the applicable law the Board may only review decisions of the Zoning Administrator, and not decisions of other officers, boards, committees, or even the City Council, even though they may relate to zoning. In addition, the Board may only review the decisions of the Zoning Administrator covered by the Notice of Appeal. Here, the Notice of Appeal relates to decisions leading up to, and therefore prior to, the issuance of a building permit and a certificate

of occupancy.  The only action of the Zoning Administrator that would fit within the scope of the Notice of Appeal occurred in 2006.  For these reasons the Board determined that it did not have jurisdiction to hear the present appeal.

Upon reconvening in open session the following motion was made, seconded and unanimously approved:

> I move that the Zoning Board of Appeals grant that portion of the Motion of the City of Aurora to dismiss the current appeal on the following grounds:

>> 1.  That under the Illinois Municipal Code and the City of Aurora Zoning Ordinance the Zoning Board of Appeals' jurisdiction is limited to a review of decisions of the Zoning Administrator.
>> 2.  That the Notice of Appeal herein seeks a review of all decisions leading up to and the issuance of a building permit and a certificate of occupancy.
>> 3.  The record before us shows that the only relevant decision of the Zoning Administrator prior to the issuance of a building permit or occupancy certificate was in October 2006.
>> 4.  Neither the building permit nor the occupancy permit were issued by the Zoning Administrator.
>> 5.  Pursuant to the Illinois Municipal Code an appeal must be filed within 45 days of the date of the decision from which the appeal is taken.
>> 6.  The appeal herein was filed on October 2, 2007, more than 45 days after the last relevant action of the Zoning Administrator.

> I further move that the Zoning Board of Appeals deny that portion of the Motion of the City of Aurora to transfer this matter to the Building Code Board of Appeals for the reason that the Zoning Board of Appeals does not have the authority to determine the appropriate forum for claims which are not subject to its jurisdiction and does not have the authority to transfer any matter to any other governmental body or entity.

> I further move that the Chair of the Zoning Board of Appeals be authorized to sign and deliver a written order setting forth and consistent with this decision of the Zoning Board of Appeals.

Dated as of the 7th day of January, 2008.

*Margaret Truax*

Margaret Truax, Chair
Zoning Board of Appeals

Feb. 22. 2008  1:08PM   COA LAW                                    No. 2495   P. 2

CIRCUIT COURT SUMMONS-ADMINISTRATIVE REVIEW                      3133 (Rev. 12/04)

UNITED STATES OF AMERICA

**STATE OF ILLINOIS**                                      **COUNTY OF DU PAGE**

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS

Kim Frachey, et al.

          PLAINTIFF

VS.

Planned Parenthood/Chicago Area, et al.

          DEFENDANT

**CASE NUMBER**
**2008MR000261**

### SUMMONS IN ADMINSTRATIVE REVIEW

To each of the above named Defendants:

YOU ARE HEREBY SUMMONED and required to file an answer in this case or otherwise file your appearance in the office of the Clerk of this Court, located at 505 North County Farm Road, Wheaton, Illinois, within 35 days after the date of this summons.

This summons is served upon you by registered or certified mail pursuant to the provisions of the Administrative Review Law.

             WITNESS:

Name: Peter Breen      ☐ PRO SE

DuPage Attorney Number 225827

Attorney for: Plaintiffs

Address: 29 S LaSalle St, Ste 440

City/State/Zip: Chicago, IL 60603

Telephone: 312-782-1680

**CHRIS KACHIROUBAS**, Clerk of the Eighteenth Judicial Circuit Court, and the seal thereof, at Wheaton, Illinois.

FEB 13 2008

Dated CHRIS KACHIROUBAS Circuit Court Clerk

_____
Clerk of the Circuit Court

### CERTIFICATE OF MAILING

On February 13, 2008 , I sent by registered mail a copy of this summons to each defendant addressed as follows:
   MONTH  DAY  YEAR

DEFENDANT                     ADDRESS

See Attached Service List

Dated February 13, 2008

_____
Clerk of the 18th Judicial Circuit Court

**CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60189-0707**

SERVICE LIST

KIM FRACHEY, ET AL.

V. PLANNED PARENTHOOD,

CHICAGO AREA, ET AL.

Planned Parenthood/Chicago Area
18 S. Michigan Ave., 6th Floor
Chicago, IL 60603

Gemini Office Development LLC
1 S. Wacker Dr., Ste. 800
Chicago, IL 60606

21st Century Office Development LLC
18 S. Michigan Ave.
Chicago, IL 60603

Steven Trombley
CEO of Planned Parenthood/Chicago Area
18 S. Michigan Ave., 6th Floor
Chicago, IL 60603

City of Aurora
44 E. Downer Place
Aurora, IL 60507

Zoning Board of Appeals
City of Aurora
44 E. Downer Place
Aurora, IL 60507

Mr. Ed Sieben, Zoning Administrator
1 South Broadway
Aurora, Illinois 60507

Hon. Thomas Weisner, Mayor
44 E. Downer Place
Aurora, IL 60507

Mr. Herman Beneke, Building Official
65 Water Street
Aurora, Illinois 60507

Planning & Development Committee
City of Aurora
44 E. Downer Place
Aurora, IL 60507

PG 1 of 2

Feb. 22. 2008  1:08PM    COA LAW                                    No. 2495   P. 4

SERVICE LIST

KIM FRALHEY, ET AL.

V. PLANNED PARENTHOOD/
CHICAGO AREA, ET AL

Planning Commission
City of Aurora
44 E. Downer Place
Aurora, IL 60507

Building Code Board of Appeals
City of Aurora
44 E. Downer Place
Aurora, IL 60507

PG 2 OF 2