# BEFORE THE ZONING BOARD OF APPEALS
# AURORA, ILLINOIS

Kim Frachey, Nancy Maloney,  )
*et al.*, and Fox Valley Families  )
Against Planned Parenthood,  )
                   )
              Appellants,  )
                   )
vs.  )     07 ZBA 001
                   )
City of Aurora,  )
A Municipal Corporation,  )
                   )
              Appellee.  )

## NOTICE OF FILING

TO:    Attorney Peter C. Breen, Attorney for Appellant
        Thomas More Society
        29 South LaSalle Street—Suite 440
        Chicago, Illinois 60603

        Attorney Christopher B. Wilson, Attorney for Applicant
        Perkins Cole LLP
        131 South Dearborn Street—Suite 1700
        Chicago, Illinois 60603

        Attorney Peter K. Wilson, Attorney for Zoning Board of Appeals
        Mickey, Wilson, Weiler, Renzi & Andersson, PC
        2111 Plum Street—Suite 201
        Aurora, Illinois 60506

     **PLEASE TAKE NOTICE** that on November 15, 2007, we mailed to the Chairman of the Zoning Board of Appeals of the City of Aurora, the Record for the above recited appeal, together with a Motion to Dismiss/Transfer Appeal, a copy of which is attached.

                     CITY OF AURORA,
                     A Municipal Corporation

           By:     _____
                     Alayne M. Weingartz
                     Corporation Counsel
                     Attorney for Appellee

000001

State of Illinois          )
                           )SS
County of Kane             )

The undersigned, being first duly sworn, upon oath states that she served the above Notice, attached Record documents and Motion to Dismiss/Transfer Appeal, upon each of the persons or firms therein addressed, by depositing copies thereof with Federal Express next day delivery, enclosed in envelopes plainly addressed, as above shown, on the 15th day of November, 2007.

SUBSCRIBED AND SWORN to
Before me this 15th day of November, 2007.

_____
Notary Public

OFFICIAL SEAL
LAURA A. SCHINDEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-5-2009

City of Aurora
Law Department
44 East Downer Place
Aurora, Illinois 60507
Phone: (630) 844-4777
Fax: (630) 844-4737

2

NOV 16 2007

<u>**INDEX**</u>

**NOTICE OF APPEAL & AMENDMENT OF APPEAL**

**MOTION TO DISMISS/TRANSFER APPEAL**

**LAND USE PETITION & PROPERTY PERMIT APPLICATIONS**

**& FINAL PLAN DOCUMENT**

**1793 ANNEXATION & PLAN DEVELOPMENT ORDINANCES**

**1993 ANNEXATION & PLAN DEVELOPMENT ORDINANCES**

**ZONING ORDINANCE**

**BUILDING CODE**

# MOTION TO DISMISS/
# TRANSFER APPEAL

## BEFORE THE ZONING BOARD OF APPEALS
## AURORA, ILLINOIS

Kim Frachey, Nancy Maloney,  )
*et al.*, and Fox Valley Families  )
Against Planned Parenthood,  )
          )
      Appellants,  )
          )
vs.          )  07 ZBA 001
          )
City of Aurora,      )
A Municipal Corporation,   )
          )
      Appellee.  )

### Motion to Dismiss And/Or Transfer Appeal to the Building Code Board Of Appeals for Lack of Subject Matter Jurisdiction

NOW COMES the City of Aurora, Appellee, by and through its attorney, Alayne M. Weingartz, Corporation Counsel, and for its Motion to Dismiss and/or Transfer Appeal, states and alleges as follows:

Appellants state **"by this letter the undersigned hereby appeal…the orders, requirements, decisions and determinations announced on Monday, October 1, 2007, culminating in the grant of an occupancy permit** for the Gemini/Planned Parenthood facility at 3051 E. New York Street, Aurora, Illinois." Appellants go on to identify their appeal as inclusive of **"(1) the decisions, orders, and/or determinations to approve every relevant permit application**—particularly the zoning permit and the occupancy certificate applications—submitted by Gemini/Planned Parenthood, along with relevant decisions, orders, and/or determinations to approve plans, applications, or other intermediate actions predicate to obtaining permit application approval, and (2) **the decisions, orders, and/or determinations to issue every relevant permit**—particularly the zoning permit and the occupancy certificate—obtained for the subject property, along with relevant decisions, orders, and/or determinations to approve plans, applications, or other intermediate actions predicate to issuing the relevant permits." (Emphasis added)

000005

Appellants cite several sections of the Illinois Municipal Code and the Aurora Zoning Ordinance with respect to their appeal regarding this property, located at 3051 E. New York Street (hereinafter "the subject property").

## LACK OF SUBJECT MATTER JURISDICTION

The first statutory section cited by Appellants is 65 ILCS 5/11-13-12 of the Municipal Code, which provides that "an appeal to the board of appeals may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality. The appeal shall be taken within 45 days of the action complained of by filing, with the officer from whom the appeal is taken and with the board of appeals a notice of appeal, specifying the grounds thereof."

The zoning for the subject property was approved and adopted by the City Council of the City of Aurora via Ordinance 093-124 on December 7, 1993. The Zoning Administrator approved the use to be made of the subject property as submitted in the final plan document as being in accordance with the previously adopted zoning for the subject property in a staff report dated October 27, 2006, which report was published to the Planning Commission at a public meeting on November 1, 2006, and to the Planning and Development Committee at a public meeting on November 16, 2006.  Therefore and according to 65 ILCS 5/11-13-12 which Appellants cite as authority, it has been more than 45 days since any zoning determination by the Zoning Administrator was made for the subject property.

Further, the City of Aurora Zoning Ordinance provides, in Section 10.4-2 of that Ordinance, that "the zoning board of appeals is hereby vested with the following jurisdiction and authority: 10.4-2.1 To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance…" As well, the "Rules and Regulations For Aurora Zoning Board of Appeals" states, in the "Procedures on Appeals" section at page 3 of such Rules, that "an appeal for an interpretation of the Zoning Administrator's decision may be taken by any person aggrieved, or officer, department or bureau head of the municipality affected by the Zoning Administrator's decision. An appeal shall be filed with the Zoning Administrator

000006

within twenty (20) days from the date that the decision appealed form (sic) is published.
(a) a decision shall be deem (sic) published when the ruling is made known to the party
requesting it…"

In this case, the Zoning Administrator did not issue any "order, requirement,
decision or determination" on October 1, 2007. His determination of the appropriate
zoning for the subject property was "published" in 2006, when the property was the
subject of a public meeting before the Planning Commission and, at the latest, when the
matter was heard, again at a public meeting, before the Planning and Development
Committee on November 16, 2006. More than twenty days have passed since the Zoning
Administrator published his determination of the appropriate zoning and use for the
subject property.

Appellants may argue that the recent investigation into the review process
involving the subject property somehow invites this appeal, but this argument would be
without legal merit. The Zoning Administrator's determination did not change as a result
of the investigation, and all that resulted from said investigation was decisions by outside
attorneys that the Zoning Administrator's original determination in 2006 and the
Ordinance adopted in 1993 were in fact correct interpretations of the City's zoning
requirements as applied to the subject property. This review does not then rise to the level
of a new publication of the Zoning Administrator's determination, and cannot be used for
purposes of determining the time allowed for an appeal to be filed.

Therefore, under any legal authority cited by Appellants, whether it be the
Municipal Code Section 11-13-12 or the City of Aurora Zoning Ordinance, or the Rules
and Regulations of the Zoning Board of Appeals, the time has expired for an appeal to be
brought before the Zoning Board of Appeals, and therefore, the Zoning Board of Appeals
lacks subject matter jurisdiction of this issue, and the Appeal should therefore be
dismissed.

Appellants also cite 65 ILCS 5/11-13-15, which provides property owners within
1200 feet in any direction of the property on which a building claimed to be in violation
of a zoning ordinance the right to institute any appropriate action or proceeding to
remedy the alleged unlawful condition. Appellants' reliance on this Section of the
Illinois Municipal Code is incorrect. Section 11-13-15 provides an owner or tenant of

3

C00007

real property situated within the requisite distance of the subject property the ability to bring an action in state court – this statute does not provide for an appeal of an alleged zoning violation to a municipal board of appeal.

Section 11-13-15 expressly provides both municipalities and private land owners the power to file a cause of action against an adjoining private land owner who is in violation of the zoning code. *Herrey v. Berke*, 179 Ill App 3d 927, 933-35 (1st Dist. 1989); *City of Aurora v. Navar*, 210 Ill App 3d, 126 (2nd Dist. 1991). Here, judicial action under Section 11-13-15 would be against Planned Parenthood as the owner of the property, not against the City. "Although the terms of the statute provide that either the city or an adjacent landowner may institute proceedings against private landowners who violate zoning ordinances, **the language of the statute does not provide a cause of action against the city by a landowner.**" (*Heerey* at page 1281-emphasis added). The extent of involvement by the City would be receipt of notice of the action from the plaintiffs "[W]hen any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality, no such action may be maintained until such notice has been given."

Therefore, any reliance on Section 11-13-15 of the Municipal Code is, likewise, not well taken before the Zoning Board of Appeals. The Board is lacking in subject matter jurisdiction, and the Appeal should therefore be dismissed.

## TRANSFER OF THIS APPEAL TO THE
## BUILDING CODE BOARD OF APPEALS

The only action that can be timely appealed by Appellants is the October 2007 issuance of the certificate of occupancy for the subject property.

Section 104.1 of the City of Aurora Building Code adopted in Section 12-16 of Chapter 12 of the City of Aurora Code of Ordinances provides "the building official is hereby authorized and directed to enforce the provisions of this code." Section 110 of the Building Code so adopted provides for certificates of occupancy, and specifically, at Section 110.1, "No building or structure shall be used or occupied, and no change in the

4

000008

existing occupancy classification of a building or structure or portion thereof shall be made until the building official has issued a certificate of occupancy therefore as provided herein." Section 110.4 provides "the building official is authorized to issue a temporary certificate of occupancy before the completion of the entire work covered by the permit, provided that such portion or portions shall be occupied safely." The issuance of the certificate of occupancy was therefore the responsibility solely of the City of Aurora Building Official, an official of the City of Aurora Building and Permits Division, in compliance with Chapter 12 of the City of Aurora Code of Ordinances and the Building Code as amended and adopted from time to time.

The City acknowledges that in prior years, the City of Aurora had one person performing the role of both Zoning Administrator and Director of Permits. However these two roles became separate divisions and distinct jobs in approximately March of 1999, when the separate divisions of "Land Use and Zoning" and "Building and Permits" were created. Since approximately April of 1999, only the Building Official has been responsible for, and authorized to, issue certificates of occupancy in accordance with the Building Code as adopted and amended by the City of Aurora from time to time. This practice has been continuous since 1999 without exception. The Building Official seeks input from the land use and zoning and engineering divisions of the City prior to his issuance of any permit; however, the determination to issue same is solely his own and in accordance with the Building Code. While there exists still certain provisions within the Zoning Ordinance that are cited by Appellants as authority in this matter, those code provisions are and have not been relied upon or utilized since 1999 when the function of issuing occupancy permits became distinct and separate from the land use and zoning division, and therefore, are of no legal consequence or authority for purposes of this appeal.

Therefore, because the issuance of the certificate of occupancy was solely within the authority of and acted upon by the Building Official, and not by the Zoning Administrator, Section 11-13-12 does not provide Appellants with a statutory basis for appealing a decision made by the Building Official to the Zoning Board of Appeals. Rather, according to the Building Code that authorizes certificates of occupancy, an appeal of the Building Official's determination on this issue is well taken only to the

000008

Building Code Board of Appeals. Moreover, Appellants state in their appeal as noted above, that they seek review of "determinations to approve every relevant permit application." Again, the authority for issuance of permits lies with the Building Official, not with the Zoning Administrator, and thus the appeal is not well taken to the Zoning Board of Appeals.

WHEREFORE, the City of Aurora respectfully prays that the Zoning Board of Appeals enter an Order as follows:

1) That this Appeal as it might apply to this Zoning Board of Appeals is not timely filed and therefore, this Board lacks jurisdiction of this cause in its entirety; and

2) That this Appeal cannot be brought pursuant to Section 11-13-15 of the Municipal Code, and that portion of the Appeal brought pursuant thereto is hereby dismissed; and

3) That this Appeal shall be transferred to the Building Code Board of Appeals for further action consistent with its jurisdiction and its own rules and procedures.

Respectfully submitted,

Alayne M. Weingartz
Corporation Counsel

6

000010

# PLANNING & DEVELOPMENT COMMITTEE
## MEETING MINUTES
### November 16, 2006

## COMMITTEE PRESENT

Alderman Michael B. Saville, Chairman, Present
Alderman Lynda Elmore, Present
Alderman John S. "Whitey" Peters, Present
Alderman Chris Beykirch, Alternate, Not Needed

## CITY OF AURORA PRESENT

Janell Roehlk, Land Use & Zoning
Stephane Phifer, Planning Dept.
Tim Macholl, Land Use & Zoning
Mike Kamon, Neighborhood Redevelopment
Ed Sieben, Land Use & Zoning
Bill Wiet, Community Development
Stephane Phifer, Planning Department
Bill Spaeth, Planning Department
Peter Boutsikakis, Planning Department
Christiana Pascavage, Planning Department
Jennie Grobe, Historic Preservation
Karen Christensen, Downtown Development
Alayne Weingartz, Legal Department
John Banbury, Legal Department
Chuck Nelson, Mayor's Office

## OTHERS PRESENT

Bruce Goldsmith, Attorney, Dykema Law Firm
Ken Kearns, 2626 Ogden Ave
Tracey Ciciora, 1114 Marseillaise Pl
Kevin Kane, 214 LeGrande Blvd
Alan Kato, Anderson Mikos
Frank Ferguson, Rush-Copley
Tom Verive, 2563 Adamsway, (Cypress)
Ed Schneider, McDonald's Corp
Hank Stillwell, 300 E Roosevelt Rd, Wheaton
Nan Theotold 2260 E New York
Tom Lehman, Gemini Office Development
Bernie Wilhelmsen, 888 S Edgelawn, LDA
Jim Bibby, 324 W State St
Sharon Gorrell, Realtor Association
Kristos Tsogas, 240 N Oakhurst

Bill Wiet, Director of Community Development is present for the items that are on the agenda.

**CALL TO ORDER**

Chairman Saville called the meeting to order at 4:07 p.m.

18.     **Agenda Item 18: A RESOLUTION APPROVING THE FINAL PLAN ON 3.24 ACRES FOR A 21,750 SQUARE FOOT MEDICAL OFFICE BUILDING LOCATED NEAR THE SWC OF OAKHURST DRIVE AND NEW YORK STREET (Gemini Office Development - NA20/3-06.390-Fpn – TM/JHS) (Appealable)**

Tim Macholl from Land Use and Zoning and Kristos Tsogas were present for this item.

Chairman Saville:  Number 18 then, is a resolution accepting, approving a final plan for a medical office facility at Oakhurst and New York.

Tim Macholl:  As was stated, it's a fairly large medical office building that's going there at the corner – or it's basically just south of the corner – of Oakhurst and New York.  Pretty straightforward.  I think it's a two-story building.

Kristos Tsogas:  Single story.

Tim Macholl:  That one's only a single story; I'm sorry, I'm confusing … everything's melting [laughs].  Basically there's residential to the east and south and they will be providing landscaping and screening for all that appropriately.

Alderman Elmore:  What type of screening and landscaping?

Tim Macholl:  There is, currently to the south there is an existing berm and there is landscaping on it and they will be adding a considerable amount of landscaping to that berm to help…

Ed Sieben:  Tim, can you pull out the plans, please, and show her?

Tim Macholl:  Yeah, sorry.  Let's see…

Alderman Elmore:  I can see why he thought this was two stories.  It has the look of it.  If you're looking at this…

Kristos Tsogas:  Yeah, there's a little raised section in front but it's a single story building.

Tim Macholl:  I'm kind of mixing cases.

Alderman Elmore:  Is this building being built specifically for a client?

Unidentified Gentleman:  We're in negotiations with a tenant; we do not currently have a lease but we still want to move ahead.

Tim Macholl:  As I was saying, there's currently an existing berm here and about half of this plant material is currently installed.  They will be installing the other half extensively…

Alderman Elmore: Do you know, in looking at your guide down there – and you may even know – whether the existing plant material is deciduous, whether it's evergreen, what are we adding to it, because that makes your four-season coverage.

Tim Macholl: It's a mix. Currently there's a mix of both deciduous and evergreen, and we did take that into account when we were reviewing it and they are providing more of the same mix – it's all mixed. You're going to have year-round screening as opposed to all deciduous and it's, you know, in the middle of the winter when the leaves are all gone.

Alderman Elmore: It's all dying out and you have nothing [laughs]. That's why I ask those questions; if you don't have enough of the evergreen mixes then in the winter it becomes very open to the people behind you, especially in this part of the country. It goes away [laughs].

Kristos Tsogas: There is an existing six-foot berm in this area that pretty much covers the first story of the housing behind it, and there's a couple openings in between the existing landscaping and we're filling that up so we're filling that up so it'll be pretty screened, even on the second story.

Alderman Elmore: I know your entry will come in off of Oakhurst. North of you is more business property? Did we develop some cross-access in there or is it separated totally from that area?

(People talk over each other)

Alderman Elmore: They've actually put plans through but they haven't decided to move on it. And I don't know whether they will or they won't but I was just kind of curious, with most of that in there we have some cross…

Bill Wiet: Ed would know.

Alderman Elmore: Ed might know?

Bill Wiet: Accessing then from the proposed Dominick's…

Alderman Elmore: I don't know that we want it or don't want it; my question is, where they're located they're tying into an area that is, as you know, all business, retail oriented…

Ed Sieben: Right. There is a… I think this is the gas station site here.

Alderman Elmore: Yeah, north of them.

Ed Sieben: So this is a cross-access through this drive through here, I believe. This is already existing here?

Kristos Tsogas: Yes. This is a private drive.

Alderman Elmore:  That's the one that comes in off of Oakhurst?

Ed Sieben:  That's already, yeah.  Yes.  That's already existing.  So that will remain.

Alderman Elmore:  And so this will connect... their parking lot will connect into...

Ed Sieben:  Correct.  The curb cut comes up off of their drive...

Alderman Elmore:  It actually might be to your benefit but... because it would give people coming from other directions a way to get into the facility if you decide to move in that direction.

Chairman Saville:  And there's sidewalks along Oakhurst?

Kristos Tsogas:  Yes.

Tim Macholl:  Right there.

Chairman Saville:  Anything more to add, gentlemen?  Any questions or discussion for the P&D Committee?

Alderman Elmore:  I think that's the bulk of it.

Chairman Saville:  Ok.

Alderman Elmore:  This, apparently... I think the preliminary on this must have happened prior to this getting moved into my ward [laughs] because this is a little bit of a surprise to me, but...

Ed Sieben:  I think the neighbors thought this was Chris's ward too, before, because I've talked to the gentleman in the townhomes on different issues...

Alderman Elmore:  And that actually got moved over into mine, yeah.  And the townhomes there are pretty nice people; I don't... have not presented this to them so they're not aware of it but I think they are aware that the property would be developed.

Ed Sieben:  Yes.

Alderman Elmore:  And the fact that it's an office rather than commercial, they should be very happy.

Ed Sieben:  Yes.

Alderman Elmore:  It's a much more...

Tim Macholl:  Yeah, they're not getting a strip mall.

Alderman Elmore:  It's a nice buffer between them and the retail center, and these usually are pretty quiet because they usually function in the daytime and that makes it nice.  I'd be interested to know who your client is, when you can release that.

Gentleman:  Ok.

Chairman Saville:  Is there a motion?

Alderman Elmore:  So moved.

Alderman Peters:  (inaudible) I've got a couple spots in the 5th Ward; we could use a couple (inaudible).

Alderman Elmore:  Yeah, it's a nice looking building.  I like the way it's laid out.

Alderman Peters:  It's beautiful.  I second.

Chairman Saville:  Second?  Motion been made and second for approval on Item 18; any further discussion?  All in favor say "Aye."

Alderman Peters:  Aye.

Alderman Elmore:  Aye.

Chairman Saville:  Aye.  Opposed?  Motion carried 3-0.

Motion to approve by Alderman Elmore. Seconded by Alderman Peters. Motion carried 3-0.



# City of Aurora

Division of Building and Permits - 65 Water Street - Aurora, Illinois 60505-3305 - Phone: (630) 892-8088 - Fax: (630) 892-8112

## DEPARTMENT OF COMMUNITY DEVELOPMENT
### DIVISION OF BUILDING AND PERMITS

## CERTIFICATE OF OCCUPANCY AND COMPLIANCE
### T E M P O R A R Y

```
Issue Date  . . . . . .    8/16/07
Expiration Date . . . .    9/17/07

Parcel Number . . . . .    07-20-302-081
Property Address  . . .    3051 E NEW YORK ST
                           AURORA              IL 60504
Subdivision Name  . . .
Legal Description . . .    OLD ADDRESS WAS
                           240 N OAKHURST DR
                           VACANT LOT ON THE WEST SIDE OF
                           N OAKHURST DR SOUTH OF
Property Zoning . . . .    PLANNED DEVELOP DIST

Owner . . . . . . . . .    GEMINI OFFICE DEVELOPMENT

Contractor  . . . . . .    KRAHL CONSTRUCTION
                           31 264-8980

Application number  . .    06-00003529 000 000
Description of Work  . .    COM - BUSINESS OFFICES
Construction type . . .    NONCOMBUSTIBLE 1 HOUR
Occupancy type  . . . .    BUSINESS OFFICE
Flood Zone  . . . . . .    PLS. VERIFY W/ FEMA MAP
Special conditions  . .
             GEMINI OFFICE DEVELOPMENT, 3051 E. NEW YORK ST.
             TEMP. C.O. IS CONTINGENT UPON THE FOLLOWING ITEMS:
             ENGINEERING; OK FOR TCO UNTIL COMPLETION OF ALL ENGINEERING
                FINAL APPROVAL REQUIREMENTS.
             ZONING; OK FOR TCO UNTIL SITE IMPROVEMENTS INSPECTED AND
                APPROVED.
             BUILDING; COMPLETE THE FOLLOWING: 1) INSTALL PERMANENT EXIT
                DIRECTIONAL SIGNAGE AND ADD EXIT SIGN AT CONFERENCE ROOM
                110 WEST EXIT DOOR, 2) INSTALL GLASS AT SERVICE COUNTERS
                OR PROVIDE ARCHITECT REVISION TO DELETE GLASS PARTITIONS
```

```
Approved  . . . . . . .    _____
                                Building Official
```

### VOID UNLESS SIGNED BY BUILDING OFFICIAL

JLRCO



# City of Aurora

Division of Building and Permits - 65 Water Street - Aurora, Illinois 60505-3305 - Phone: (630) 892-8088 - Fax: (630) 892-8112

## DEPARTMENT OF COMMUNITY DEVELOPMENT
### DIVISION OF BUILDING AND PERMITS

## CERTIFICATE OF OCCUPANCY AND COMPLIANCE
### T E M P O R A R Y

```
Issue Date  . . . . .   10/01/07
Expiration Date . . . .  10/08/07

Parcel Number . . . . .  07-20-302-081
Property Address  . . .  3051 E NEW YORK ST
                         AURORA          IL 60504
Subdivision Name  . . .
Legal Description . . .  OLD ADDRESS WAS
                         240 N OAKHURST DR
                         VACANT LOT ON THE WEST SIDE OF
                         N OAKHURST DR SOUTH OF
Property Zoning . . . .  PLANNED DEVELOP DIST

Owner . . . . . . . .    GEMINI OFFICE DEVELOPMENT

Contractor  . . . . . .  KRAHL CONSTRUCTION
                         312 735-6397

Application number  . .  06-00003529 000 000
Description of Work . .  COM - BUSINESS OFFICES
Construction type . . .  NONCOMBUSTIBLE 1 HOUR
Occupancy type  . . . .  BUSINESS OFFICE
Flood Zone  . . . . . .  PLS. VERIFY W/ FEMA MAP
Special conditions  . .
           TEMP. C.O. IS CONTINGENT UPON THE FOLLOWING ITEMS:
           ENGINEERING; OK FOR TCO UNTIL COMPLETION OF ALL ENGINEERING
               FINAL APPROVAL REQUIREMENTS.
           Plan Examiner; complete the following:
           Complete the installation of emergency lighting per NEC.
           Areas required to have this lighting shall not be used
           until the emergency lighting is installed, inspected and
           approved by the City of Aurora.

Approved  . . . . . . .  _____
                              Building Official
```

### VOID UNLESS SIGNED BY BUILDING OFFICIAL

AURCO



# City of Aurora

Division of Building and Permits - 65 Water Street - Aurora, Illinois 60505-3305 - Phone: (630) 892-8088 - Fax: (630) 892-8112

## DEPARTMENT OF COMMUNITY DEVELOPMENT
## DIVISION OF BUILDING AND PERMITS

### CERTIFICATE OF OCCUPANCY AND COMPLIANCE
### T E M P O R A R Y

```
Issue Date  . . . . . .   10/01/07
Expiration Date . . . .   11/02/07

Parcel Number . . . . .   07-20-302-081
Property Address  . . .   3051 E NEW YORK ST
                          AURORA              IL 60504
Subdivision Name
Legal Description . . .   OLD ADDRESS WAS
                          240 N OAKHURST DR
                          VACANT LOT ON THE WEST SIDE OF
                          N OAKHURST DR SOUTH OF
Property Zoning . . . .   PLANNED DEVELOP DIST

Owner . . . . . . . .     GEMINI OFFICE DEVELOPMENT

Contractor  . . . . . .   KRAHL CONSTRUCTION
                          312 735-6397

Application number  . .   06-00003529 000 000
Description of Work  . .  COM - BUSINESS OFFICES
Construction type . . .   NONCOMBUSTIBLE 1 HOUR
Occupancy type  . . . .   BUSINESS OFFICE
Flood Zone  . . . . . .   PLS. VERIFY W/ FEMA MAP
Special conditions  . .
                    TEMP. C.O. IS CONTINGENT UPON THE FOLLOWING ITEMS:
                    ENGINEERING; OK FOR TCO UNTIL COMPLETION OF ALL ENGINEERING
                    FINAL APPROVAL REQUIREMENTS.

Approved  . . . . . . .   _____
                                    Building Official

        VOID UNLESS SIGNED BY BUILDING OFFICIAL
```

AURCO

crime, the stimuli which motivate his conduct, and, as was said in *People v. Popescue* [1931], (345 Ill. 142 [177 N.E. 739]), the judge should know something of the life, family, occupation and record of the person about to be sentenced." 41 Ill.2d at 300–301, 242 N.E.2d 258.

In addition, the *LaPointe* court quoted the U.S. Supreme Court's "fundamental sentencing principle" as articulated in *U.S. v. Tucker* (1972), 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592: "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." 404 U.S. at 446, 92 S.Ct. at 591.

The trial judge in the instant case stated:

"The Court has considered the presentence report in this case, the arguments of counsel, the statements of defendants, the evidence heard during the trial of the case, the prior history of criminal delinquency, or lack thereof, of each defendant and the rehabilitative potential of each defendant."

[13] Although the trial court never specifically determined whether the statement testified to by Vana was taken in violation of Boone's constitutional rights, we do not find that determination to be necessary for we find no evidence in the record that the trial judge relied on Officer Vana's testimony in determining Boone's sentence. "Absent any indication that incompetent evidence was actually considered in sentencing defendant, it must be presumed that the court disregarded it unless the record discloses evidence to the contrary." *People v. Strait* (1983), 116 Ill.App.3d 110, 114, 71 Ill.Dec. 663, 451 N.E.2d 631.

[14] Further, neither our Constitution, nor our case law, nor our statutes require a judge to detail for the record the thought process by which he concludes that the penalty he imposes is appropriate. *People v. LaPointe*, (1981), 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344; *People v. Ruskey* (1986), 149 Ill.App.3d 482, 103 Ill.Dec. 125, 501 N.E.2d 146. Besides, given Boone's previous convictions for theft, armed robbery, battery, unlawful use of weapons,

and bribery, a 14 year sentence would seem to be amply justified without the court's having considered any aggravating factors.

In sum, we find no basis in the record or in any of these cases upon which any of the defendants' assignments of error on the part of the trial court can be sustained.

AFFIRMED.

HARTMAN, P.J., and BILANDIC, J., concur.



179 Ill.App.3d 927
128 Ill.Dec. 672

**Bernard A. HEEREY,
Plaintiff–Appellant,**

**v.**

**Joseph BERKE, Benitta Berke, Louis
Wolf, The Bank of Ravenswood, as
Trustee under Trust No. 25–5879, Barry
L. Newdelman, Urban Construction,
Ltd., Architects, a Partnership, Commercial Management, The North Shore
Plumbing and Heating Company, S.M.
Bradford, J & R Construction Company, The City of Chicago and Unknown
Defendants, Defendants–Appellees.**

No. 87–2624.

Appellate Court of Illinois,
First District, First Division.

Feb. 14, 1989.

Landowner sued city, adjacent landowners, and others, seeking to enjoin construction of three buildings on adjoining property. The Circuit Court, Cook County, Joseph M. Wosik, J., granted defendants' motions to dismiss, and landowner appealed. The Appellate Court, O'Connor, J., held that: (1) landowner did not have a cause of action against city under the Adjacent Landowners Act; (2) landowner did not have a cause of action against city under the lakefront protection ordinance;

ⁱ 000020

and (3) landowner was not entitled to an injunction.

    Affirmed.

### 1. Municipal Corporations ⟐735

    Adjacent Landowners Act does not provide cause of action against city by landowner, even if action is based on city's alleged failure to enforce Act. S.H.A. ch. 24, ¶ 11–13–15.

### 2. Municipal Corporations ⟐723

    Landowner contesting construction of buildings on adjacent land had no cause of action against city under Protection of Adjacent Landowners Act. S.H.A. ch. 111½, ¶ 3301.

### 3. Municipal Corporations ⟐723

    Landowner contesting construction of buildings on adjacent land had no cause of action against city under lakefront protection ordinance.

### 4. Adjoining Landowners ⟐6

    Property owner's notice of intent to excavate, given to adjoining property owner, was sufficient under Protection of Adjacent Landowners Act, despite adjacent landowner's argument that it failed to state precise depth of excavation, and that therefore controversy existed as to who had duty to protect adjacent property owner's property from damage; adjacent landowner was given notice that landowner intended to excavate, landowner sought permission to enter adjacent landowner's land to protect his property, and adjacent landowner unequivocally denied such permission in writing. S.H.A. ch. 111½, ¶ 3301, subds. 1, 5.

### 5. Zoning and Planning ⟐382, 568

    Landowner could not obtain injunction to enjoin adjacent landowner from constructing buildings, despite landowner's argument that subsequent to plan commission's approval of project, changes were made in design of building; plan commission only determines whether lakefront ordinance is being violated and lacks authority to impose conditions upon building permit.

### 6. Zoning and Planning ⟐568

    Landowner was not entitled to injunction under Protection of Adjacent Landowners Act to enjoin adjacent landowner from constructing buildings, despite landowner's argument that he would be irreparably harmed if injunction did not issue; landowner had adequate remedy at law for damages against adjacent landowners under Act. S.H.A. ch. 111½, ¶ 3301.

### 7. Venue ⟐49(1)

    Petition for change of venue in nonjury case will normally be granted where it is based upon belief that trial judge is prejudiced against party or his attorney; however, it is not purpose of Venue Act to grant plaintiff power to pick and choose among judges. S.H.A. ch. 110, ¶ 2–101 et seq.

### 8. Venue ⟐68

    In regard to plaintiff's motion for change of venue, court's dismissal of plaintiff's petition for temporary restraining order, and its ruling on defendants' motions to strike and dismiss, were rulings on substantial issues; thus, in order to secure change of venue, plaintiff had burden of proving actual prejudice by a trial court. S.H.A. ch. 110, ¶ 2–101 et seq.

---

    Nathaniel I. Grey, P.C., Chicago, Ill. (Kimberly Anderson Fortcamp, of counsel), for appellant, Bernard Heerey.

    Judson H. Miner, Corp. Counsel, City of Chicago, Chicago, Ill. (Ruth M. Moscovitch, Joanne Simboli Hodge, of counsel), for City of Chicago.

    Steven R. Dobrofsky, Chicago, Ill., of counsel for appellees Newdelman, BK of Ravenswood, Wolf, Urban Const.

    Justice O'CONNOR delivered the opinion of the court:

    This is an appeal from a dismissal of a complaint under the Adjacent Landowners Act (Ill.Rev.Stat.1985, ch. 24, par. 11–13–15) and the Lake Michigan and Chicago Lakefront Protection Ordinance (the Lakefront Protection Ordinance) (Chicago Municipal Code, § 194B–1 *et seq.* (1988)). The

**HEEREY v. BERKE**                                                   Ill. **1279**
Cite as 534 N.E.2d 1277 (Ill.App. 1 Dist. 1989)

issues raised on appeal are as follows: (1) whether the trial court erred in dismissing plaintiff's amended complaint; (2) whether the trial court erred in granting defendants' motion for a protective order; and (3) whether the trial court erred in denying plaintiff's petition for change of venue. We affirm.

Plaintiff Bernard Heerey is the owner of property at 1159 North State Street in Chicago. The adjacent property at 1163–67 North State is held by defendants Louis Wolf, Joseph and Benitta Berke and the Bank of Ravenswood as trustee (the private defendants). Bennita Berke was never sued and is not a party to this appeal. Defendant Barry Newdelman is the architect for the private defendants' property. Urban Construction, Ltd., was named by plaintiff as Newdelman's alleged employer. The remaining defendants include the City of Chicago and various subcontractors. Both of the properties at issue here lie within the private use zone governed by the Lake Michigan and Chicago Lakefront Protection Ordinance. (Chicago Municipal Code § 194B–1 *et seq.* (1988)).

On August 26, 1985, Benitta Berke, who was the record title owner of the parcel immediately adjacent to plaintiff's property, sent a letter to Heerey by certified return receipt mail advising him of anticipated construction on her property and requesting written permission to enter his property for the purpose of protecting his property from any damage that might be caused by excavation. In reply, Heerey acknowledged that the letter was sent pursuant to the provisions of the Protection of Adjacent Landowners Act (Ill.Rev.Stat. 1987, ch. 111½, par. 3301), but alleged that the letter was inadequate under the Act. Berke then replied, stating that she had been denied the necessary license to enter upon Heerey's property and informed him that it was his responsibility to protect his land and all the structures that were on it.

On September 16, 1985, Benitta Berke and Louis Wolf submitted an application to the Chicago Plan Commission for consideration under the Lakefront Protection Ordinance. Defendants sought permission to construct a three-story commercial building. That application was withdrawn without prejudice on November 25, 1985, and no formal order of the Plan Commission was ever entered.

On December 16, 1985, Berke and Wolf submitted a second application to the Plan Commission in which they sought permission to construct three separate, three-story commercial buildings at 1163–67 North State. On January 9, 1986, after a public hearing on the matter, the Commission approved the application. The Commission's resolution stated that the Commissioner of the Department of Planning, Elizabeth Hollander, had reviewed the application, received reports from various city agencies involved and concluded that the application was in substantial conformance with the Lakefront Ordinance.

The private defendants then applied for a building permit for the center lot (1165 North State Street). The application contained an affidavit from defendant Newdelman that he would apply for permits for the other two lots (1163 and 1167 N. State) no later than April 10, 1986. On the basis of this affidavit, Commissioner Hollander advised the Department of Zoning that the permit application had been approved as conforming to the Lakefront Protection Ordinance provided that the additional permit applications were filed for 1163 and 1167 North State. On April 11, 1986, the Department of Zoning approved defendants' permit applications for 1163 and 1167 North State. On April 17, 1986, Commissioner Hollander approved the two additional permit applications as also conforming to the Lakefront Ordinance.

On May 28, 1986, Berke and Wolf entered into a "Foundation Agreement" expressing their interest to lay a common foundation for the construction of the three buildings. When the construction began, plaintiff's attorney contacted the city's Department of Inspectional Services complaining about the construction. Construction was ordered stopped at 1167 and 1163 North State on August 15, 1986. On August 21, the department ordered all work stopped at 1165 North State and the permit

000022

revoked as the work was not proceeding in accordance with the permits and drawings. A redesign of the foundation was submitted and approved and new permits for 1163 and 1167 were issued on September 26, 1986, for three three-story buildings. On December 3, 1986, plaintiff filed a complaint against the private defendants seeking injunctive relief, a declaration of the "real and actual owner" of the 1163–67 site, a halt to alleged "unlawful construction," restoration of lateral and subjacent support to his property and a permanent injunction against further construction. In the complaint plaintiff also alleged that the City of Chicago had allowed unlawful construction due to the city's failure to enforce the conditions and requirements in its own municipal permits, and that as a result of the city's acquiescence in the unlawful construction, the lateral and subjacent support of plaintiff's property was damaged. Plaintiff sought preliminary and permanent injunctions to stop the city from issuing permits until defendants complied with the various permits. Plaintiff further alleged that the private defendants as well as the city had intentionally and maliciously constructed the buildings in violation of court orders, statutes and permits and sought $50,000 actual damages, $500,000 in punitive damages and attorney fees and costs.

The court granted defendants' motions to strike and dismiss and gave plaintiff 30 days to file an amended complaint. Plaintiff filed an amended complaint in which he alleged that defendants had violated the Lakefront Protection Ordinance and sections 43–4, 43–10, and 43–11 of the Municipal Code of Chicago. The plaintiff also alleged that he was entitled to relief under Ill.Rev.Stat.1985, ch. 24, par. 11–13–15 relating to adjacent landowners.

On February 18, 1987, plaintiff filed a petition for change of venue. Following a hearing on February 26, 1987, the petition was denied on the basis that the petition was untimely, coming after rulings on substantial issues and lacked a showing of prejudice. At the same time, the court sustained defendant Newdelman's motion for a protective order as to discovery. Both the private defendants and the city

again filed motions to dismiss. Those motions were granted and plaintiff now brings this appeal.

We first address the plaintiff's claim that the trial court erred in dismissing his claims against the city brought under the Adjacent Landowners Act (Ill.Rev.Stat. 1987, ch. 24, par. 11–13–15) and under the Lake Michigan and Chicago Lakefront Protection Ordinance. Municipal Code of Chicago, ch. 194B, par. 1, art. I–IX.

The plaintiff claims that his original and amended complaints stated a cause of action against the city for injunctive relief and damages pursuant to the Adjacent Landowners Act (Ill.Rev.Stat.1987, ch. 24, par. 11–13–15) and that he was entitled to the entry of a temporary restraining order under the Act. He contends that he satisfied the requirements of the Act in that he alleged that the private defendants' construction violated the January 9, 1986, order of the Chicago Plan Commission and also that he alleged both damage to the lateral and subjacent support to the foundation and building on his property and the threat of future damage arising from defendants' excavation on their property.

**[1]** The Adjacent Landowners Act (Ill. Rev.Stat.1987, ch. 24, par. 11–13–15) falls within Division 13 of the Municipal Code regulating zoning. The particular provision of Division 13 upon which plaintiff relies states:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, *the proper local authorities of the municipality, or any owner* or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the al-

HEEREY v. BERKE
Cite as 534 N.E.2d 1277 (Ill.App. 1 Dist. 1989)
Ill. **1281**

leged violation, in addition to other reme-dies, *may institute any appropriate ac-tion or proceeding* (1) to prevent the unlawful construction, reconstruction, al-teration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, busi-ness, or use in or about the premises, or (4) to restrain, correct, or abate the viola-tion. *When any such action is institut-ed by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the munici-pality, no such action may be maintained until such notice has been given.*"

Ill.Rev.Stat.1987, ch. 24, par. 11–13–15. (Emphasis added.)

The purpose of section 11–13–15 is to pre-vent zoning violations. (See *Bull v. Amer-ican National Bank & Trust Co.* (1969), 112 Ill.App.2d 32, 36, 250 N.E.2d 839), and both section 11–13–15 and its predecessor (Ill.Rev.Stat.1941, ch. 24, par. 73–9) have empowered the city to file complaints against private landowners for municipal code violations. (See *e.g., City of Chicago v. Exchange National Bank* (1972), 51 Ill.2d 543, 283 N.E.2d 878; *City of Chicago v. Southgate Corp.* (1980), 86 Ill.App.3d 56, 58, 41 Ill.Dec. 383, 407 N.E.2d 881.) Sec-tion 11–13–15 also gives the adjacent land-owner a private right of action against the alleged private violator. (*Parsons v. Guild Grain Co.* (1970), 125 Ill.App.2d 59, 62–63, 259 N.E.2d 806.) Although the terms of the statute provide that either the city or an adjacent landowner may institute pro-ceedings against private landowners who violate zoning ordinances, the language of the statute does not provide a cause of action against the city by a landowner. Plaintiff's argument that section 11–13–15 permits a cause of action against the city since it does not preclude it is contrary both to the language of the statute and to the rules of statutory construction, which provide that the plain and obvious meaning of a statute may not be enlarged by the court. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill.2d 75, 84, 256 N.E.2d 758.)

Similarly, there is no merit to plaintiff's argument, unsupported by any authority, that the city has a duty to enforce this ordinance and as it failed to do so, public policy mandates that the affected adjoining landowner has a cause of action against the city. By its plain and obvious terms, sec-tion 11–13–15 states that a municipality "may institute any appropriate action or proceeding...." In the same manner an adjacent landowner "may institute any ap-propriate action or proceeding" to prevent unlawful construction. The term "may" in the statute is clearly discretionary and not mandatory, thus we conclude that although both the city and the plaintiff arguably could have instituted an action to abate an alleged violation on the part of the private defendants, the city's failure to do so does not create an alternative and essentially retaliatory cause of action against the city by the plaintiff.

[2] Plaintiff also sought injunctive re-lief and damages against the city based upon Ill.Rev.Stat.1987, ch. 111½, par. 3301. Section 3301 is part of a legislative scheme for public health and safety, which empow-ers municipalities to regulate the duties and responsibilities of adjacent landowners. Section 3301 provides in part as follows:

"Each adjacent owner is entitled to the continuous lateral and subjacent support which his land receives from the adjoin-ing land, subject to the right of the own-er of the adjoining land to make proper and usual excavations on the same for purposes of construction or improve-ments under the following condi-tions...."

Section 3301(1) then sets out the require-ments that any owner intending to permit excavation must give notice in writing to the adjacent owner and give the adjacent owner license to enter onto the land where the excavation is to take place for the pur-pose of protecting his own land. Failure to comply with the notice requirement or to allow the adjoining landowner to take mea-sures to protect his land and its support opens the owner or possessor of land where the excavation is being made to lia-bility for any damage to the adjacent land.

000024

(Ill.Rev.Stat.1987, ch. 111½, pars. 3301(1), 3301(5).) This statute, on its face, provides a cause of action only against an adjoining landowner and not against a municipality, therefore the trial court properly dismissed plaintiff's suit against the city to the extent that it was based upon this statutory provision.

[3] Plaintiff also contends that the trial court erred in dismissing his action against the city under the Lakefront Protection Ordinance. The main thrust of his argument is that the city has a duty to enforce its own ordinances, among them the Lakefront Protection Ordinance, and that the city breached its duty to do so by failing to follow the procedures the city set out for itself in Commissioner Hollander's letter of April 7, 1986. Plaintiff points out that Commissioner Hollander, in that letter, approved the permit application for 1165 North State Street only upon the condition that Berke and Wolf submit applications for the 1163 and 1167 North State properties by April 10, 1986. Plaintiff claims that as the applications and plans for those properties were not submitted by that date, the permit issued for the 1165 North State property was improvidently granted and therefore construction at that site commenced without a legally granted permit. Plaintiff also claims that the city breached its duties under the Lakefront Protection Ordinance by rescinding a stop work order without requiring the private defendants to correct problems related to the foundation and the separation of the buildings and by permitting the inclusion of a basement in the structure at 1163 North State Street which was not included in the plan initially submitted to the Chicago Plan Commission.

We reject plaintiff's argument as we find he does not possess a private right of action under the Lakefront Protection Ordinance. (See *Alschuler v. Department of Housing & Urban Development* (7th Cir. 1982), 686 F.2d 472; *Clement v. O'Malley* (1981), 95 Ill.App.3d 824, 51 Ill.Dec. 119, 420 N.E.2d 533, *aff'd*, 96 Ill.2d 26, 70 Ill. Dec. 207, 449 N.E.2d 81.) In *Alschuler v. Department of Housing & Urban Development* (7th Cir.1982) 686 F.2d 472 adja-

cent landowners brought suit against the Department of Housing and Urban Development and various private defendants alleging that developers of a challenged low-income housing project had violated the Lakefront Protection Ordinance by failing to obtain prior approval for the project from the Chicago Plan Commission. The plaintiffs in *Alschuler* attempted to bring a private claim for violation of the Lakefront Protection Ordinance premised upon the right to bring private actions under the Adjacent Landowners Act (Ill.Rev.Stat. 1981, ch. 24, par. 11–13–15.) The court in *Alschuler* noted that by its terms, section 11–13–15 provides for private enforcement only for violations of ordinances adopted under Divisions 13, 31 or 31.1 of the Illinois Municipal Code. (*Alschuler*, 686 F.2d 472, 487.) The court then rejected the private plaintiff's claims on the basis that the Lakefront Protection Ordinance is not the type of zoning ordinance contemplated by section 11–13–15, rather "[it] is more appropriately characterized as an ordinance under Division 48.2 of the Illinois Municipal Code, entitled 'Preservation of Historical and Other Special Areas' (Ill.Rev.Stat. ch. 24, §§ 11–48.2-1 *et seq.*)" (*Alschuler*, 686 F.2d 472, 488; see also *Clement v. O'Malley* (1981), 95 Ill.App.3d 824, 51 Ill.Dec. 119, 420 N.E.2d 533, *aff'd*, 96 Ill.2d 26, 70 Ill. Dec. 207, 449 N.E.2d 81.) The court noted that Division 48.2 "grants broad powers to designate by ordinance areas having, among other things, 'special historical, community, or aesthetic interest or value,' and 'to provide special conditions, to impose regulations governing construction, alteration, demolition and use,.... of the area ... [and that] [t]he declaration of interests to the Lakefront Protection Ordinance closely tracks the language of the Division 48.2 declaration of policy and grant of power.'" (*Alschuler*, 686 F.2d 472, 488–89.) The court pointed out that unlike Division 13 zoning ordinances, which envision detailed standards and minimal discretion, Division 48.2 ordinances permit the delegations of power guided only by broad general statements of policy. We agree with the *Alschuler* court's reasoning in reaching the determination that the Lakefront Protec-

tion Ordinance is not a Division 13 zoning ordinance. We therefore affirm the trial court's dismissal of plaintiff's claim against the defendant city under the Lakefront Protection Ordinance. As we have determined that plaintiff has no cause of action against the city, we need not address his arguments as to procedural errors or damages as they apply to defendant city.

With respect to defendants Barry L. Newdelman, Louis Wolf, the Bank of Ravenswood and Urban Construction, Ltd., plaintiff contends that the trial court erred in failing to grant a declaratory judgment as to the real and actual owner of the subject property. Heerey also sought a declaratory judgment to determine that the owners of the three parcels owed an absolute duty to cause no damage to the party wall foundation and to the subjacent and lateral support.

The essential requirements of a declaratory judgment action are: "(1) A plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of such interests." (*Griffin v. County of Cook* (1938), 369 Ill. 380, 398, 16 N.E.2d 906.) Mere speculation as to future events does not satisfy the requirement that an actual controversy must exist. (*Spalding v. City of Granite City* (1953), 415 Ill. 274, 283, 113 N.E.2d 567.) The granting or denying of a request for declaratory relief is a matter for the sound discretion of the trial court and absent a showing of abuse of that discretion its determination will not be disturbed on appeal. (*Aetna Insurance Co. v. Janson* (1978), 60 Ill.App.3d 957, 18 Ill.Dec. 143, 377 N.E.2d 296.) Furthermore, dismissal of the complaint is an appropriate method of declining to grant declaratory relief. *Coles–Moultrie Electric Cooperative v. City of Charleston* (1972), 8 Ill.App.3d 441, 444, 289 N.E.2d 491.

Initially we note that defendants Newdelman and Urban Construction, Ltd. are not proper parties to this suit as they have no interest opposing that of plaintiff nor is there an actual controversy between Heer-

ey and Newdelman or Urban Construction. Newdelman was served in the name of Urban Construction, Ltd., his alleged employer, but, affidavits submitted to the trial court established that Newdelman had never been employed by Urban Construction, was neither an equitable nor legal owner of the adjacent property, and was not in charge of any of the construction being carried on at 1163–1167 North State Street.

In his complaint, the plaintiff acknowledged that at the time relevant to this litigation, record title to the parcel adjacent to the Heerey property at 1159 North State Street was in the name of Benitta Berke. Prior to beginning excavation on that property at 1163 North State, Berke notified Heerey in writing of the anticipated excavation on her parcel and sought permission to go onto Heerey's land for purposes of protecting his property from any damage. In response, Heerey acknowledged that the letter was sent pursuant to the Protection of Adjacent Landowners Act and in essence denied her request. The record also reflects that defendants the Bank of Ravenswood, as the trustee under Trust No. 25–5879, and Louis Wolf were the respective legal and equitable owners of the middle parcel of the three which was not adjacent to plaintiff's property. Insofar as the middle parcel is not adjacent to plaintiff's land, there can be no actual controversy as to the ownership of that parcel. The plaintiff cannot now seriously contend that a declaratory judgment as to the ownership of the 1163–1167 North State Street properties was requisite to protecting his own property under the Adjacent Landowners Act.

[4] Similarly, we find no abuse of discretion in failing to grant a declaratory judgment as to the type of structure that could be built on the 1163–1167 North State Street properties or as to the private defendants' duty to not cause damage to the subjacent and lateral support to plaintiff's building. The private defendants were proceeding according to building permits issued by the Department of Inspectional Services. Although there were apparently some procedural irregularities in the permit granting procedure, plaintiff has failed to

show that he suffered any injury as a result of these irregularities. Nor does he state any actual damage to the party wall foundation or to the lateral support to the building located on his property. Ill.Rev. Stat.1987, ch. 111½, par. 3301(3) provides:

"In making any excavation, reasonable care and precautions shall be taken to sustain the adjoining land as such, *without regard to any building or other structure which may be thereon,* and there is no liability for damage done to any building or other structure by reason of the excavation except as herein provided or otherwise provided or allowed by law."

Subparagraph 5 of the statute provides in pertinent part:

"If the excavation is intended to be or is deeper than the standard depth of foundations as herein defined, then the owner of the land on which the excavation is being made, *if given the necessary license to enter on adjoining land, and not otherwise,* shall protect the said adjoining land and any building or other structure thereon...." (Emphasis added.)

Plaintiff's contention that the notice of intent to excavate given by Benitta Berke was insufficient under the statute as it failed to state the precise depth of excavation and therefore a controversy exists as to who has a duty to protect the Heerey property from damage is not well founded. Plaintiff was given notice that defendant Berke intended to excavate, she sought permission to enter Heerey's land to protect his property and he unequivocally denied her permission to do so in writing. This was a sufficient basis for the trial court to determine that there was no actual controversy as to who had a duty to protect plaintiff's property from damage.

[5] Plaintiff has also failed to state a cause of action for temporary or permanent injunctive relief as to the private defendants. In order to establish that he had a right to a temporary restraining order or a preliminary injunction, plaintiff had the burden of demonstrating that (1) he had a protectible right; (2) he would suffer irrep-

arable injury if injunctive relief was not granted; (3) his recovery at law was inadequate; and (4) there was a likelihood that he would succeed on the merits. (See *Houseknecht v. Zagel* (1983), 112 Ill.App.3d 284, 291–92, 67 Ill.Dec. 922, 445 N.E.2d 402.) A complaint for injunctive relief must contain on its face a clear right to relief and state facts which establish the right to such relief in a positive, certain and precise manner. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill.App.3d 400, 406, 2 Ill.Dec. 234, 357 N.E. 2d 211.) Conclusion, opinion or allegations on information and belief are not sufficient to support a claim for injunctive relief. (*Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill.App.2d 100, 104, 192 N.E.2d 572.) Examining plaintiffs amended complaint in light of these principles, we find that the trial court did not err in denying plaintiff's petition for injunctive relief.

Plaintiff sought injunctive relief based upon Ill.Rev.Stat.1985, ch. 24, par. 11–13– 15, which provides that an aggrieved property owner may sue for injunctive relief based upon illegal construction carried on by a neighboring landowner. The main thrust of plaintiff's argument is that architect Barry Newdelman made certain statements regarding the planned construction before the Chicago Plan Commission, that the Plan Commission approved the project based on Newdelman's statements and that the Plan Commission's recommendations under the Lakefront Ordinance are binding. The charges of illegality stem from the fact that subsequent to the Plan Commission's approval of the project, certain changes were made in the design of the building. Despite the later issuance of permits and affidavits by the city chief construction inspector verifying that the permits were being complied with, the plaintiff argues that the permits were void and an injunction should have been issued. We disagree.

For the reasons stated previously with regard to defendant City of Chicago, we find that defendant has no private right of action under the Lakefront Protection Ordi-

nance. We note, however, that plaintiff has mischaracterized the role of the Plan Commission in administering that ordinance. The duties of the Plan Commission are set forth in the Municipal Code of Chicago, chapter 194B–6.1. One of the Commission's duties is to review and approve any planned construction that falls within the Lakefront Protection District. The focus of the Commission is to insure that property is developed consistent with certain aesthetic, environmental and public health goals. While determinations of the Plan Commission are final and binding insofar as they determine that a proposed project either is or is not consistent with the overall purposes of the ordinance, proceedings before the Commission are not conclusive with respect to the issuance of building permits regulating the manner of construction. Chapter 194B–3(j) provides that with respect to the land in issue, the Chicago Zoning Ordinance, chapter 194A of the Municipal Code, shall govern except where such provisions are in substantial conflict with the purposes of the Lakefront Protection Ordinance.

Plaintiff here has not alleged that the construction violates the zoning ordinance or other provisions of the Building Code. Plaintiff has instead attacked certain representations made before the Plan Commission, but as the Plan Commission only determines whether the Lakefront Ordinance is being violated and lacks the authority to impose conditions upon a building permit, the challenged proceedings before the Plan Commission do not provide a basis for injunctive relief.

[6] Plaintiff's claim against the private defendants for injunctive relief under the Protection of Adjacent Landowners Act (Ill. Rev.Stat.1987, ch. 111½, par. 3301 *et seq.*) was also properly dismissed. The purpose of section 3301 is to provide adjacent landowners with a cause of action where the continuous lateral and subjacent support of their land is damaged by an adjoining landowner's excavations. The statute requires that an owner or possessor of land who intends to excavate on his land must give

due and reasonable notice in writing to adjoining landowners.

Depending on the depth of the planned excavation, either subsection 1 or subsection 5 of the Act will apply. (Ill.Rev.Stat. 1987, ch. 111½, par. 3301(1, 5).) If the anticipated depth is not more than the standard 8 foot depth of foundations, subsection 1 of the Act applies and the adjoining landowner, if given notice, will have no less than 30 days to shore up his own property. If the excavation is intended to be deeper than the standard depth, subsection 5 applies and an excavating landowner, if given necessary license, shall enter the adjoining landowner's property and take the necessary precautions to protect the adjoining landowner's property. The reason for the notice as to depth is that unless the notice specifies the depth of the excavations, an adjoining landowner is unable to determine whether he or the excavating landowner has the duty to shore up the property since the depth of the excavation is determinative. *Smith v. Roberts* (1977), 54 Ill.App. 3d 910, 914, 12 Ill.Dec. 648, 370 N.E.2d 271.

As previously noted, notice of intent to excavate was given by defendant Benitta Berke in 1985 and excavation commenced some time in 1986. Although the notice failed to specify the exact depth of the anticipated excavation, the letter requested permission to enter onto Heerey's land for the purpose of protecting his property as required by Ill.Rev.Stat.1987, ch. 111½, par. 3301(5) where excavations are intended to be deeper than the standard depth of excavation. Benitta Berke substantially complied with the requirement of section 3301(5) by providing Heerey with due and reasonable notice of the anticipated excavation and requesting permission to enter Heerey's property for the purpose of protecting his land.

As a threshold matter, plaintiff did not establish that he would be irreparably harmed if an injunction did not issue. The purpose of injunctive relief is to either relieve the plaintiff of severe and irreparable injury or to preserve the status quo so that a meaningful decision can be rendered at a later time. Injunctive relief is warranted

only where the threatened injury is actual and imminent. *(Baal v. McDonald's Corp.* (1981), 97 Ill.App.3d 495, 499–500, 52 Ill. Dec. 957, 422 N.E.2d 1166.) Moreover, monetary damages must be incapable of redressing any injury caused by the alleged wrongdoing. *Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill.2d 506, 510–11, 108 Ill.Dec. 476, 508 N.E.2d 1053.

Plaintiff's conclusory allegation that he would be irreparably harmed if the injunction does not issue is unconvincing. While plaintiff is seeking injunctive relief as well as money damages, we believe that if any damage does occur, plaintiff has an adequate remedy at law for damages against the private defendants under the Protection of Adjacent Landowners Act, Ill.Rev. Stat.1987, ch. 111½, par. 3301.

We also reject plaintiff's contention that the trial court erred in granting defendant Newdelman's motion for a protective order barring discovery by plaintiff until all defendants had been served and all defendants' motions to strike and dismiss plaintiff's amended complaint had been disposed of.

Illinois Supreme Court Rule 201(d) (107 Ill.2d R. 201(d)), provides as follows:

"(d) *Time Discovery May be Initiated.* Prior to the time all defendants have appeared or are required to appear, no deposition or other discovery procedure shall be noticed or otherwise initiated without leave of court granted upon good cause shown."

Pursuant to Supreme Court Rule 201(c) (107 Ill.2d R. 201(c)), the court may "make a protective order ... regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." The trial court had been advised that the owner of the adjacent parcel, Benitta Berke, had not been served. Summons was apparently sent to an address in Florida despite the fact that all of the applications before the Plan Commission and other relevant documents established that she was in Chicago. Under the circumstances here, we believe the trial court did not abuse its discretion in barring discovery by Heerey until all defendants had

been served and the pending motions to strike and dismiss had been disposed of.

*In re Estate of Watson* (1984), 127 Ill. App.3d 186, 82 Ill.Dec. 289, 468 N.E.2d 836, relied on by plaintiff, does not require us to hold otherwise. *Watson* involved a will contest in which the appellate court held that the trial court had abused its discretion by denying the petitioner's right to commence discovery prior to hearing a motion to dismiss but after all the necessary parties had been served and had appeared. The petitioner was seeking information relating to the physical and mental condition of the decedent at the time the will was executed. Here, the record holder of the adjacent parcel of land had not been served and plaintiff had shown no good cause why discovery should have been allowed prior to doing so.

We next address plaintiff's claim that it was prejudicial error for the court to deny his motion for a change of venue. Plaintiff contends that a change of venue should have been granted as a matter of right as the trial court had not yet ruled on any substantial issue. In the alternative, he argues that the trial court had prejudiced his right to a full and fair hearing by ignoring or cutting off the arguments of his counsel, by refusing to allow his counsel to respond to the issues of damages and timeliness raised by the court and by defendants' motions and by denying his motion for a temporary restraining order without permitting his counsel to respond.

[7] The Venue Act (Ill.Rev.Stat.1987, ch. 110, par. 2–101 *et seq.*) provides for one automatic change of venue prior to any substantive ruling in the case provided the statutory requirements are satisfied. *(United Nuclear Corp. v. Energy Conversion Devices, Inc.* (1982), 110 Ill.App.3d 88, 111–12, 65 Ill.Dec. 649, 441 N.E.2d 1163.) The Act is intended to be applied liberally to promote, rather than defeat a change of venue. *(Stambaugh v. International Harvester Co.* (1984), 102 Ill.2d 250, 261, 80 Ill.Dec. 28, 464 N.E.2d 1011.) A petition for change of venue in a nonjury case will normally be granted where it is based upon a belief that the trial judge is prejudiced

against a party or his attorney. (*L.W. Paul Supply Co. v. Meyer* (1975), 27 Ill. App.3d 526, 327 N.E.2d 101.) However, it is not the purpose of the Venue Act to grant a plaintiff the power to pick and choose among judges. *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 253, 311 N.E.2d 673.

[8] Here, after lengthy hearings, the trial court had dismissed plaintiff's petition for a temporary restraining order stating that there was no emergency and no irreparable harm and ruled on defendants' motions to strike and dismiss. These were clearly rulings on substantial issues, and therefore in order to secure a change of venue, plaintiff had the burden of proving actual prejudice by the trial court. (See *American State Bank v. County of Woodford* (1977), 55 Ill.App.3d 123, 128, 13 Ill. Dec. 515, 371 N.E.2d 232.) Contrary to plaintiff's assertions, a review of the record shows that plaintiff has mischaracterized certain statements of the trial court by misquoting the transcript and that the trial court gave plaintiff adequate opportunity to present his case to the court. Plaintiff has failed to demonstrate any prejudice of the trial court that would have warranted a change of venue following ruling on motions to dismiss and accordingly we find that the trial court did not err in denying plaintiff's motion for a change of venue.

Plaintiff's motion to strike certain matters in the brief of the private defendants has no merit. All of the matters to which plaintiff now objects were before the trial court and are part of the record on appeal. Accordingly, that motion is denied.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

JUDGMENT AFFIRMED.

BUCKLEY and QUINLAN, JJ., concur.



180 Ill.App.3d 158
128 Ill.Dec. 682
**The PEOPLE of the State of Illinois, Plaintiff–Appellee,**

v.

**Tracy STOFER, Defendant–Appellant.**

No. 86–3244.

Appellate Court of Illinois, First District, Third Division.

Feb. 15, 1989.

Defendant was convicted in the Circuit Court of Cook County, Matthew J. Moran, J., of two counts of murder, and he appealed. The Appellate Court, McNamara, J., held that: (1) there was not probable cause to arrest defendant, and (2) defendant's confession was not sufficiently attenuated from his illegal arrest nine hours earlier for confession to be admissible.

Reversed and remanded.

**1. Arrest** ⬩68(3)

Defendant was arrested when police took him from his home, announcing that they were taking him to the station to be questioned specifically about a murder.

**2. Arrest** ⬩68(3)

Arrest occurs when police inform defendant of a violation, defendant submits to their control, and it is clear that police intend to arrest defendant and that defendant understands he is being arrested.

**3. Arrest** ⬩68(4)

Test for whether person has been "seized" within meaning of Fourth Amendment is whether, in view of all circumstances surrounding the incident, reasonable person would have believed that he was not free to leave. U.S.C.A. Const.Amend. 4.
  See publication Words and Phrases for other judicial constructions and definitions.

**4. Arrest** ⬩63.5(9)

Police may not detain suspects for station house questioning absent probable cause to arrest.

he was to vacate the property in favor of the plaintiff.

Therefore, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT and GEIGER, JJ., concur.



210 Ill.App.3d 126

154 Ill.Dec. 757

The CITY OF AURORA, Plaintiff and Counterdefendant–Appellant,

v.

Juventino NAVAR, Defendant and Counterplaintiff–Appellee.

No. 2–90–0657.

Appellate Court of Illinois, Second District.

March 8, 1991.

City filed complaint against owner of automobile repair garage for violation of noise nuisance ordinance, and owner counterclaimed, seeking declaratory judgment that noise ordinance was unconstitutional. The Circuit Court, Kane County, Melvin E. Dunn, J., permanently enjoined city from enforcing noise ordinance and awarded attorney fees to owner. City appealed. The Appellate Court, Bowman, J., held that: (1) municipal noise nuisance ordinance declaring to be a nuisance any commercial activity audible from adjacent premises is so vague and uncertain as to violate state and federal due process provisions, but (2) provision of Municipal Code permitting award of attorney fees to successful plaintiff in action brought to prevent illegal activity on property involved did not authorize award of fees to owner.

Affirmed in part and reversed in part.

**1. Municipal Corporations ⊜122(2)**

State failed to establish that trial court erroneously ignored presumption of validity of city ordinance in declaring unconstitutional city's noise nuisance ordinance; city raised presumption in response to motion for temporary restraining order and in memorandum of law submitted in opposition to motion for permanent injunction, and trial court explicitly stated that it had reviewed memoranda and pleadings.

**2. Appeal and Error ⊜170(2)**

Inquiry on appeal from trial court's determination that city noise nuisance ordinance was unconstitutional would be limited to constitutionality of noise nuisance ordinance, rather than considering offensive conditions provision of nuisance ordinance, which was not altered by amendment adding noise nuisance provisions; record indicated that only portion of ordinance that was in real controversy was language regarding noise from commercial activity, although party challenging noise ordinance also attacked on appeal, and trial court addressed language of offensive conditions ordinance.

**3. Constitutional Law ⊜251.4**
   **Nuisance ⊜60**

Municipal noise nuisance ordinance declaring to be a nuisance any commercial activity audible from adjacent premises is so vague and uncertain as to violate state and federal due process provisions; ordinance does not define or delineate any sort of measurement as to when commercial activity is or becomes "audible." U.S.C.A. Const.Amend. 14; S.H.A. Const. Art. 1, § 2.

**4. Constitutional Law ⊜251.4**

Due process is violated if law is so vague and devoid of standards as to leave public unsure of what is and is not prohibited, or if it fails to supply adequate guidelines to administrative body which must enforce it. U.S.C.A. Const.Amend. 14; S.H.A. Const. Art. 1, § 2.

**5. Municipal Corporations ⊜594(2)**

Language of municipal ordinance must convey sufficiently definite warning and fair notice of what conduct is proscribed,

and whether notice is adequate is measured by common understanding and practices. U.S.C.A. Const.Amend. 14; S.H.A. Const. Art. 1, § 2.

**6. Nuisance ⇐1**

"Nuisance" at common law is something which unlawfully annoys or does damage to another.

> See publication Words and Phrases for other judicial constructions and definitions.

**7. Constitutional Law ⇐251.4**
    **Municipal Corporations ⇐594(2)**

Like statutes, municipal ordinance violates due process guarantees when its terms are so incomplete, vague, indefinite, and uncertain that persons of ordinary intelligence must necessarily guess at meaning of terms and differ as to their application. U.S.C.A. Const.Amend. 14; S.H.A. Const. Art. 1, § 2.

**8. Municipal Corporations ⇐605**

City has no power to declare that to be nuisance which is not nuisance in fact.

**9. Civil Rights ⇐262**

Claim by city that trial court granted injunctive relief to business owner restraining enforcement of city's nuisance ordinance as a result of court's own bias and prejudice, rather than careful consideration of evidence and law, was unsupported by record; trial court's oral comments and written findings both indicated that it considered very carefully facts presented to it and law relied upon by counsel, although it could be inferred from trial court's comments that judge was disturbed by city's attempt to enforce nonexistent ordinance and apparent personal motivation for selective and vigorous enforcement against business owner.

**10. Municipal Corporations ⇐1040**

Provision of Municipal Code permitting award of attorney fees to successful plaintiff in action brought to prevent illegal activity on property did not authorize award of fees to business owner who successfully brought suit challenging city's attempt to enforce nonexistent noise ordinance and attempt to prosecute business owner under ordinance without giving prior notice to abate alleged nuisance; owner was not attempting to secure compliance with any building or zoning ordinance by private violator. S.H.A. ch. 24, ¶¶ 1–1–1 et seq., 11–13–15.

**11. Zoning and Planning ⇐729**

Statute extending municipality's authority to enforce zoning and building ordinances to adjacent landowners was intended to give owners legal tool to attack detrimental neighborhood ordinance violators when municipality has not done so, but, absent ordinance violation, there is no purpose for imposing sanction of attorney fee award. S.H.A. ch. 24, ¶¶ 1–1–1 et seq., 11–13–15.

**12. Zoning and Planning ⇐764**

Statute extending municipality's authority to enforce zoning and building ordinances to adjacent landowners does not provide landowners with cause of action to ensure city's compliance with its own ordinances. S.H.A. ch. 24, ¶¶ 1–1–1 et seq., 11–13–15.

**13. Civil Rights ⇐296**

Business owner, who prevailed on his claim that city noise nuisance ordinance was unconstitutionally vague, but who never argued that he was seeking relief under any federal civil rights statute, was not entitled to award of attorney fees under federal civil rights attorney fees statute merely because he prevailed on his constitutional challenge. S.H.A. ch. 24, ¶¶ 1–1–1 et seq., 11–13–15; 42 U.S.C.A. §§ 1983, 1988.

**14. Civil Rights ⇐293**

Federal civil rights attorney fees statute does not in any way create cause of action, nor does it imply that it awards fees for actions brought to enforce specific constitutional provisions; rather, it relates directly to causes of action which arise under civil rights sections named within statute, so that plaintiff seeking fees must in some way evoke civil rights statute. 42 U.S.C.A. §§ 1983, 1988.

000032

Valerie D. Brown, City Atty. (argued), Ronald R. Moses, Corp. Counsel, Aurora, for City of Aurora.

Patrick M. Kinnally (argued), Murphy, Hupp, Foote, Mielke & Kinnally, Aurora, for Juventino Navar.

Justice BOWMAN delivered the opinion of the court:

Plaintiff and counterdefendant, the City of Aurora (Aurora or City), appeals from orders of the circuit court of Kane County which permanently enjoined the City from enforcing its noise nuisance ordinance and awarded attorney fees to defendant and counterplaintiff, Juventino Navar (Navar).

Navar is the owner of Navar's Auto Service, an auto repair garage, in the City of Aurora. Navar's business is a permitted use under Aurora's zoning ordinance. On September 25, 1989, Navar was contacted by Mark Anderson, the director of the division of inspections and permits for the City, and told to close the garage because it was after 9 p.m. and a City ordinance required that his business be closed after 9 p.m.

Either later in September or early in October 1989 Anderson came to Navar's garage accompanied by two police officers. Jesus Navar, Juventino's uncle, was there, watching over the business while his nephew was out on the tow truck. Anderson told Jesus that the garage would have to be closed for the evening since it was in violation of the 9 p.m. closing time mandated by the City ordinance.

On November 7, 1989, the Aurora City Council amended section 21–20 of its nuisance ordinance (Aurora, Ill., Code of Ordinances ch. 21, § 21–20 (1969)) by adding a noise nuisance. (Aurora, Ill., Ordinance 89–108 (November 7, 1989).) Navar received a copy of the amended ordinance from Anderson around the fourth or fifth of December 1989.

Aurora filed a complaint against Navar on December 11, 1989, alleging that on November 29, 1989, he had operated his auto repair shop in such a manner as to constitute a noise nuisance in violation of section 21–20 of the City's nuisance ordinance. Navar did not answer but filed affirmative defenses and a counterclaim. In his counterclaim Navar sought a declaratory judgment that ordinance 89–108, the noise ordinance, was unconstitutional, both on its face and as applied to him, under the due process clauses of both the Illinois and United States Constitutions. (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV.) Navar attacked the ordinance on grounds that it was so vague and/or overly broad as to deny him due process of law. He also requested that the City be enjoined from prosecuting him under the challenged ordinance and that he be awarded attorney fees and costs.

At the hearing on Navar's subsequent motion for a permanent injunction both parties presented evidence. With regard to the incidents which occurred *before* the City amended its nuisance ordinance, Navar testified that on September 25, 1989, Anderson first telephoned him at home while he was preparing to eat supper. Upon Anderson's insistence that the garage had to be closed immediately because it was after 9 p.m., Navar returned to his shop. Later that evening Anderson made repeated calls to Navar at the shop to verify that Navar was closing. According to Navar, Anderson ultimately threatened him with arrest if he did not comply. When Navar asked about the closing time law, Anderson told him it was a new ordinance and indicated that he would send Navar a copy of it. Jesus Navar testified that during the incident when he was at the garage, Anderson also told him he had to close the business or be arrested.

Anderson, testifying for Aurora, indicated that he had been a City zoning enforcement officer for almost two years prior to becoming director of the City's division of inspections and permits in 1986. Anderson's testimony deviated slightly from Navar's in regard to the dates of the incidents which Navar had described. However, Anderson admitted making repeated calls to Navar at his place of business on one occasion and to being accompanied by two police officers when he confronted Jesus Navar. He denied ever