by twenty-five percent if a station stop
of a public surface transportation system
is located no more than one thousand feet
from the nearest point of such building.
Such approval by the City Council may be
given as part of the approval of any
Preliminary or Final Plan."

41.  Subsection 10.6-19 shall be modified to
read as follows:

"10.6-19.  The parking facilities required for
mixed uses shall be the sum of the requirements
for the various individual uses computed
separately in accordance with this Section,
and parking facilities for one use may be
considered as providing the required parking
facilities for another use if a time diversity
factor is shown."

42.  Except for the incorporation of permitted
use descriptions in Section II hereof, Sections 11, 12 and
13 shall be inapplicable.  For the purpose of such incor-
porated permitted use descriptions Subsection 12.2-1.1
shall be modified to read as follows:

"12.2-1.1.  Dwelling units, provided that they
are located above the ground floor and that
the zoning lot area coverage and floor area
ratio limitations provided for in Subsection A.
5.b. of Section III hereof are complied with."

-62-

000170

43.  Clause (a) of Subsection 14.7-6 shall be modified to read as follows:

"(a)  Within such time periods as are prescribed in Subsection 14.7-8, Preliminary Plans for all or specified development phases of the District shall be submitted for approval in accordance with the procedures set forth in Subsection 14.7-12.  Approval of Preliminary Plans may not be withheld for reasons that would be inconsistent with the approved Plan Description.  Preliminary Plans may contain reasonable variations from the approved Plan Description.  In approving a Preliminary Plan, the City Council may, without further public hearing, also approve changes from the Plan Description which exceed the scope of such reasonable variations, provided that no such change is a 'major change' as defined in clause (b) of Subsection 14.7-6, below."

44.  Subsection 14.7-15 shall be modified to read as follows:

"14.7-15.  PERMITS.  Building, zoning and occupancy permits shall be required for each structure in the District.  No building permit relating to any part of the District shall be issued prior to the approval of a Final Plan for such part of the District in accordance with the provisions of this Subsection 14.7;

000171

provided that, subject to the approval of the
City Engineer, mass grading and excavation
operations may be carried on prior to the
approval of such Final Plan; and, provided
further, that if authorized by the City Council
and subject to such conditions as may be
prescribed in such authorization, building
permits relating to any part of the District
may be issued prior to the approval of a
Final Plan for such part of the District."

B.   Subdivision Control Ordinance Modifications and
Exceptions.

The District shall not be subject to those pro-
visions of the Subdivision Control Ordinance listed below
and described as inapplicable.  With respect to those pro-
visions of the Subdivision Control Ordinance listed below
and shown in modified form, the District shall be subject
thereto only as so modified.  With respect to Subsection 1.
below, the Subdivision Control Ordinance, in its applica-
tion to the District, shall be deemed generally modified
in accordance therewith.

1.  The words "improvement", "improvements",
"public improvements" and "street improvements", wherever
used in the Subdivision Control Ordinance, shall be deemed
to mean only those land improvements which are required

-64-

000172

to be dedicated to the City or to the State of Illinois
or a unit of local government (hereinafter called "other
public body") pursuant to the provisions of said Ordinance
as modified by this Plan Description, and the design
standards set forth in Sections 43-59, 43-60 and 43-61
of the Subdivision Control Ordinance, as modified by this
Plan Description, shall be applicable only to such required
land improvements.

    2.  Section 43-5 shall be modified to read
as follows:

    "Sec. 43-5.  EFFECT OF CONFLICTS.

    Where the conditions imposed upon the
use of land by any provision of this chapter
are either more restrictive or less restrictive
than comparable conditions imposed by any other
provision of this chapter, the regulations
which are more restrictive or which impose
higher standards or requirements shall govern;
provided, that where the conditions imposed
upon the use of land by any provision of
this chapter which have been modified by
this Plan Description are either more restric-
tive or less restrictive than comparable con-
ditions imposed by any other provision of
this chapter, the conditions imposed by the
provisions of this chapter which have been
so modified shall govern.  Where the conditions
imposed upon the use of land by any provision

-65-

C00173

of this chapter, as modified by this Plan
Description, are either more restrictive or
less restrictive than comparable conditions
imposed by any other law, ordinance, rule or
regulation of any kind, the conditions imposed
by the provisions of this chapter, as modified
by this Plan Description, shall govern."

3. Section 43-11 shall be modified to read as
follows:

"Sec. 43-11. COMPLIANCE PREREQUISITE TO
BUILDING PERMIT.

   No building permit shall be issued by
any governing official for the construction
of any building, structure or improvement
to the land or any lot within a subdivision
as defined herein, which has been approved
for platting or replatting, until all require-
ments of this chapter have been fully com-
plied with; provided that with the approval of
the City Engineer, mass grading and excavation
operations may be carried on in areas covered
by a preliminary plat approved pursuant to the
provisions of this ordinance or in areas covered
by a Preliminary Plan approved pursuant to
Subsection 14.7 of the Zoning Ordinance."

4. Section 43-12 shall be modified to read
as follows:

C00174

"Sec. 43-12.　PREREQUISITE TO OCCUPANCY PERMITS.

No occupancy permit shall be granted by any governing official for the use of any structure within a subdivision approved for platting or replatting until required utility facilities have been installed and made ready to service the property, and until roadways providing access to the subject lot or lots have been constructed or are in the course of construction; provided, that an occupancy permit may be granted if the City Engineer has approved the use of temporary utility facilities and roadways pending comple- tion of the required permanent utility facilities and roadways."

5.　Subsection (a) of Section 43-16 shall be modified to read as follows:

"(a)　No land shall be subdivided, nor any street laid out, nor any improvements made to the natural land; provided that with the approval of the City Engineer, mass grading and excavation operations may be carried on in areas covered by a prelimin- ary plat approved pursuant to the provisions of this ordinance or in areas covered by a Prelimin- ary Plan approved pursuant to Subsection 14.7 of the Zoning Ordinance."

000175

6.    Subsection (c) of Section 43-16 shall be
modified to read as follows:

"(c)   Unless authorized by the City Engineer,
no improvements, such as sidewalks, water
supply, storm water drainage, sanitary sewerage
facilities, gas service, electric service,
lighting, grading, paving, or surfacing of
streets, shall hereafter be made by any owner
or owners or his or their agent, or by any
public service corporation at the request of
such owner or owners or his or their agent."

7.    Subsection (C) of Section 43-31 shall be
modified to read as follows:

"(C)  OTHER PRELIMINARY PLANS.  When required by
the Plan Commission, the preliminary plat shall
be accompanied by profiles showing existing
ground surface and proposed street grades, in-
cluding extensions within the District for a
reasonable distance beyond the limits of the
proposed subdivision and extensions outside
of the District for such a reasonable distance
where such new streets connect with existing
streets outside of the District; typical cross
sections of the proposed grading, roadway, and
sidewalks; and preliminary plan of proposed
sanitary and storm water sewers with grades

-68-

000176

and sizes indicated.  All elevations shall be based on the city datum plane or the USGS datum plane."

8.  Subsection (D) of Section 43-31 shall be inapplicable.

9.  Subsection (b) of Section 43-32 shall be modified to read as follows:

"(b)  Typical cross sections and profiles of streets showing grades approved by the City Engineer.  The profiles shall be drawn to city standard scales and elevations and shall be based on the city datum plane or the USGS datum plane."

10.  Subsection (a) of Section 43-45 shall be modified to read as follows:

"(a)  The subdivider shall cause to be pre-prepared a preliminary plat, together with improvement plans and other supplementary material as specified below.  Thirty copies of the preliminary plat and supplementary material specified shall be submitted to the City Clerk, on forms provided by the City Clerk, with written application for approval.  The preliminary plat and fee, as required by this chapter, shall be submitted

000177

to the City Clerk at least thirty days prior
to the regular meeting of the Plan Commission
to receive action thereon at that meeting."

11. Subsection (d)(3) of Section 43-45 shall be
modified to read as follows:

"(3) Approval of the preliminary plat shall
be effective until the expiration of the
eighteen-year period following the approval
date (as defined in Subsection A.1. of Sec-
tion II hereof) unless, upon application of
the subdivider, the City Council grants an
extension. The application for said exten-
sion shall not require an additional filing
fee, or the submittal of additional copies
of the plat of subdivision."

12. Subsection (c) of Section 43-46 shall be
modified to read as follows:

"(c) A final plat for all or a portion of the
area covered by any approved preliminary plat,
prepared as specified in Article II, shall be
submitted to the City Clerk for approval prior
to the expiration of the eighteen-year period
following the approval date (as defined in Sub-
section A.1. of Section II hereof) unless, upon
application of the subdivider, the City Council
grants an extension. Such an application shall

-70-

not require an additional fee or filing of additional copies of the plat.  Every final plat submitted for approval shall be submitted in thirty counterparts."

13.  Subsection (f)(3) of Section 43-46 shall be modified to read as follows:

"(3)  Upon approval by the City Council, the subdivider shall record the plat with the county recorder of the county or counties in which the property is located within six months or such longer period as may be approved by the City Council.  If not recorded within such time, the approval shall be null and void.  Immediately after recording, the original tracing or a duly certified cloth or mylar reproducible copy shall be filed with the City Engineer."

14.  Subsection (a) of Section 43-47 shall be modified to read as follows:

"(a)  The final plat shall be approved by the City Council before recording and such approval shall not be given until the subdivider has complied with the requirements of this Section. No building permit may be issued until the final plat has been recorded; provided that with the approval of the City Engineer, mass grading and excavation operations may be carried on in areas

-71-

000179

covered by a preliminary plat approved pursuant
to the provisions of this ordinance or in areas
covered by a Preliminary Plan approved pursuant
to Subsection 14.7 of the Zoning Ordinance."

15.  Subsection (a)(1) of Section 43-47 shall be
modified to read as follows:

"(1)  After approval of the preliminary plat
the subdivider may present plans and specifica-
tions for all improvements to the City Engineer
for approval.  Upon approval by the City Engineer,
and by all other pertinent authorities, the
subdivider may construct and install all such
improvements.  On approval and certification of
completion of such improvements by the City
Engineer, the final plat shall be submitted as
herein provided for approval, and, upon approval,
may be recorded.  If engineering plans require
substantial changes from the preliminary plat,
as approved, the subdivider shall, prior to
constructing the improvements, revise and resubmit
the preliminary plat for reapproval, and such
resubmission shall not require the payment of
additional fees."

16.  Subsection (a)(2) of Section 43-47 shall be
modified to read as follows:

000180

"(2)  In lieu of actual construction of the
improvements, as provided in (1) above, the
subdivider may post with the City Clerk,
cash, negotiable securities, an irrevocable
letter of credit issued by a bank authorized
to do business in the State of Illinois, or a
surety bond running to the City with sureties
acceptable to the City Council or with sureties
whose surety bonds for similar improvements are
acceptable to the State of Illinois, in any case,
in an amount sufficient to cover the full list
of said improvements in such amounts as shall
have been approved by the City Engineer and
conditioned on the completion and acceptance
by the City Engineer of all improvements within
two years from the approval of the final plat.
Upon acceptance of such cash, negotiable securi-
ties, irrevocable letter of credit or surety
bond, approval of plans and specifications for
all improvements by the City Engineer and
approval of the final plat by the City Council,
such plat may be recorded."

17.  Subsection (a)(3) of Section 43-47 shall be
modified to read as follows:

"(3)  In lieu of the provisions of (1) or (2)
above, the subdivider may submit with his
final plat his plans and specifications for
all improvements and evidence of a binding

000181

agreement with a responsible contractor for
the installation of all such improvements within
two years after the approval of the final plat,
together with a performance bond running to the
City with sureties acceptable to the City
Council or with sureties whose performance bonds
for similar improvements are acceptable to the
State of Illinois.  Upon approval of the plans
and specifications by the City Engineer and
other interested agencies and of the agreement,
bond and final plat by the City Council, such plat
may be recorded."

18.  Subsection (b) of Section 43-47 shall be
modified to read as follows:

"(b)  Upon acceptance of the improvements or any
substantial portion thereof by the City, any cash,
negotiable securities, letter of credit, or bond
posted with the City with respect to such improve-
ments or such portion pursuant to Subsections (a)(2)
or (a)(3) above shall promptly be returned to the
subdivider.  The subdivider shall in the case of
improvements installed pursuant to Subsections
(a)(1), (a)(2) or (a)(3) of this Section 43-47,
as modified by this Plan Description, be respon-
sible for defects in construction of all improve-
ments for one year following their acceptance by
the City, and shall guarantee the correction
of any such defects by posting cash, negotiable

C00182

securities, an irrevocable letter of credit
issued by a bank authorized to do business in
the State of Illinois, or a surety bond with
sureties approved by the City Council or with
sureties whose surety bonds for similar improve-
ments are acceptable to the State of Illinois
in the amount of twenty percent of the cost of
such improvements.  The fulfillment of this
requirement is a condition to approval of the
final plat, and is in addition to the require-
ments of Subsection (a) of this Section.  Unless
there is a pending unresolved claim by the City
with respect to any defects in construction of
such improvements, such cash, negotiable securi-
ties, letter of credit or bond shall promptly be
returned to the subdivider at the end of such one-
year period."

19.   Section 43-48 of the Subdivision Control
Ordinance shall be inapplicable and in lieu thereof the follow-
ing provisions shall govern the open space, park, recreation
land and school site land reservation and dedication obliga-
tions which shall apply to the District:

a.   Open Space, Park and Recreation Land.
Land shall be reserved in each Region of the
District for public open space, park and recrea-
tion areas.  The amount of land to be so reserved
shall be five and one-half acres for each one
thousand persons estimated to be included in the
total residential population of such Region, using for

-75-

000183

the purpose of such estimate the Table of Estimated
Ultimate Population set forth in Subsection D of Section
43-48 of the Subdivision Control Ordinance (hereinafter
called "Table of Estimated Population"). As a condition
to the approval by the City Council of any Final Plan for
a development phase of a Region of the District pursuant
to Subsection 14.7 of the Zoning Ordinance, which Final
Plan includes land reserved for public open space, park
and recreational areas, the City Council shall require
(i) a dedication of the reserved land to the City or to
another public body approved by the developer and the
City Council, or (ii) a contractual commitment from
the developer obligating the developer to dedicate
the reserved land to the City or such other public
body within such time period as may be specified by
the City Council, which time period shall not, with-
out the developer's approval, be longer than one
year commencing with the date of such Final Plan
approval; provided, that:

    (1)  Such dedication obligation
shall, at the request of the developer be
conditioned upon the execution, prior to such
dedication, of a legally binding agreement
between the developer and the City, or between
the developer and such other public body to
which such land is to be dedicated, which
agreement shall provide, among other matters,
that:

-76-

C00184

(a)   An equitable portion of the
tax revenues attributable to the land in
the Region which shall have been or shall
thereafter be received by the City or by
such other public body during the period
commencing with the date of annexation of
the District to the City and ending three
years after the date of approval of a Final
Plan for the last development phase of the
Region, pursuant to levies made by the
City or by such other public body for open
space, park or recreational purposes, shall
be expended for the installation, purchase,
maintenance or operation of improvements
to or recreational programs conducted in
such dedicated land or other land in the
Region theretofore or thereafter dedicated
pursuant to the provisions of this Sub-
section B.19.a.; provided, that the impro-
vements referred to in this Subsection B.19.a.
shall not include the improvements to be
provided by the developer pursuant to the
provisions of Subsection B.19.c.(1) hereof,
but shall include the purchase and mainten-
ance of landscaping, recreational equipment,
tennis courts, ball fields, and similar park
and recreation facilities (hereinafter called
"recreational improvements"); and provided

000185

further, that in determining an equitable portion of such tax revenues, the following factors shall be given consideration: (i) the need and desirability of adequate open space, park and recreational improvement expenditures during the development period of the Region; (ii) expenditures by the City or such other public body for the installation, purchase, maintenance or operation of improvements to or recreational programs conducted in areas in such Region which improvements and programs are reasonably available to persons residing outside such Region; and (iii) the general administrative costs of the City or such other public body related to open space, park or recreational purposes; and

(b)  The City or such other public body which is to make the purchase of or payment for recreational improvements to be purchased with or paid for from tax revenues pursuant to the terms of such agreement shall, prior to the determination of the type of recreational improvements which are to be so purchased or paid for, consult with the developer and give consideration to the developer's views as to the type of recreational improvements which would be appropriate for the area in which they are to be installed or constructed; and

000186

(c)  Agreed upon recreational improvements may be made or paid for by the developer in advance of the time when tax revenues are available for their purchase, subject to arrangements for subsequent re-payment to the developer, out of future tax revenues, of the agreed upon cost thereof to the developer plus agreed upon interest charges; and

(d)  The City or such other public body agrees to accept such dedicated land and to assume responsibility for the main-tenance thereof; and

(e)  The land to be so dedicated will at all times after such dedication be maintained in a manner adequate to prevent such land from being a detraction to the value and use of other property in the Dis-trict; provided, that the cost of such maintenance shall, for the purpose of Sub-section B.19.a.(1)(a) above, be treated as a cost of maintaining a recreational improvement as such term is defined in such Subsection; and

(f)  The City or such other public body will use its best efforts to obtain federal or state funds or grants which may be available for the purchase and maintenance of recreational improvements to the land so

000187

dedicated and will utilize any such funds or grants which are obtained for such purchase and maintenance; and

(g)  The City or such other public body will, in the planning for any public open space, park or recreation area adjacent to a reserved school site, cooperate with the school district for which such school site has been reserved so as to maximize the utility of the public open space, park or recreation area for the needs of the educational facilities for which the reserved school site is to be used.

(2)  If the developer and the City or the developer and such other public body to which land is to be dedicated are unable to agree upon the terms of such an agreement, the City, such other public body or the developer may at any time request that the areas of disagreement be submitted to arbitration in accordance with the rules then obtaining of the American Arbitration Association, and the arbitrators shall be selected as follows:  on ten days' written notice by either party to the other, each of them shall designate an arbitrator, and a third arbitrator shall be selected within twenty days thereafter by the two arbitrators so designated.  The award under such arbitration shall, if accepted by the City or such other public body, be binding upon the

000188

developer. If the City or such other public body
does not accept such award, within thirty days
after its determination, the developer shall be
relieved from the land dedication obligation to
which the agreement was a condition, and if the
City or such other public body to which the land
was to be dedicated does not, within ninety days
from the date of the determination of such award,
acquire such land by purchase or commence pro-
ceedings to acquire such land by condemnation,
the developer shall be relieved from any reserva-
tion obligation with respect to such land. Such
land may then be developed and used in any manner
permitted by Subsections A., B. and C. of
Section II hereof.

(3) Land devoted to private open space,
park and recreation areas (including swimming clubs,
tennis clubs and golf courses) may be deducted from
the land reservation and dedication obligation for
public open space, park and recreation areas;
provided, that:

(a) Subject to Subsection (b)
below, such deductions may not, without the
approval of the City Council, exceed twenty
percent of such public open space, park and
recreation area, land reservation and dedi-
cation obligation;

(b) Such deductions may, without
approval of the City Council, exceed twenty

000189

but not forty percent of such obligation to
the extent that such excess percentage of
land is devoted to private open space, park
and recreational uses, such as swimming clubs,
tennis clubs and golf courses which are designed
to serve and open to membership from or avail-
able for use by all residents of the City;

(c)  Plans for such private open
space, park and recreation areas, including
specifications of facilities to be in-
stalled, must be approved by the City;

(d)  Appropriate arrangements
shall be required to provide for the
continuing protection and maintenance of
such private open space, park and recrea-
tion areas;

(e)  Private open space, park and
recreation areas shall be areas devoted
exclusively to the scenic, landscaping,
recreational or leisure uses of the occupants
of dwelling units for whose use the private
open space areas are intended and shall be
accessible and available to all such occu-
pants.  Private open space areas shall not
include public rights-of-way or areas covered
by buildings, parking structures or accessory
structures excepting where such buildings or
structures are used solely for the purposes

000190

of recreational and leisure activities.
Well-designed decks or plazas which are
used for recreational or leisure purposes
and which are located upon buildings, park-
ing structures or accessory buildings not
solely used for recreational purposes may,
subject to the approval of the City Coun-
cil, be included as private open space;

(f)  Any areas of private open
space to be credited against public open
space requirements shall be not less than
twenty-four hundred square feet in area
excepting for corridors of not less than
twenty feet in width created to connect
lots or buildings with larger private or
public open space areas, in which case
areas less than twenty-four hundred square
feet shall be credited.  Such private open
space shall also be in addition to zoning
lot land area requirements as contained in
this Plan Description unless otherwise
approved by the City Council; and

(g)  Any approvals by the City
Council provided for in this Subsec-
tion B.19.a.(3) may be given as part of the
approval of a Preliminary or Final Plan.

(4)  Prior to the preparation of
Preliminary Plans for successive development

-83-

C00191

phases of the Region, the developer will consult
with appropriate representatives of the City, or
other public body for which land for public open
space, park and recreation areas is to be
reserved or dedicated, with respect to the loca-
tion of such areas. The proposed location of
such public open space, park and recreation areas
shall be in accordance with the open space, park
and recreation land development plans as shown
on the developer's General Development Plans and
Preliminary Plans for successive development
phases of the Region submitted for approval in
accordance with Subsection 14.7 of the Zoning
Ordinance. Plans for public open space, park
and recreation areas shall reasonably conform to
the Goals and Standards for Parks and Open Space
included in the Comprehensive Plan for Parks and
Recreation of the Fox River Valley Pleasure Drive-
way and Park District, Southern Kane County
Sector dated December, 1972 (hereinafter called
the "Park District Plan"). Whenever reasonably
possible, a park site of at least four acres in
size shall be located adjacent to each elemen-
tary school site.

(5) Subject to the requirements of
Subsection B.19.c.(1) below, the areas used for
the storm water retention and runoff facilities
described in Subsection C. of Section V hereof

000192

and areas zoned as flood plain by the City may be included as land reserved to meet the public open space, park and recreation area land reservation obligations of this Plan Description, and it shall be a condition to all of a developer's obligations under this Subsection B.19.a. that at the developer's request, the City or another public body approved by the developer and by the City Council shall accept the conveyance or dedication of such land and shall assume responsibility for the maintenance thereof; provided, that it may not be made a condition of a developer's obligations under this Subsection B.19.a. that responsibility for the cost of constructing such storm water retention and runoff facilities be assumed by the City or such other public body. Such storm water retention facilities shall be designed and constructed in a manner which shall have utilized generally accepted and economically feasible engineering methods to minimize the silting of such storm water retention facilities.

(6) The developers of each Region will make land available for purchase by the City or other public body for which land for public open space, park and recreation areas is to be reserved or dedicated, subject to the following limitations:

000193

(a)  Such purchased land must
be used for the enlargement, by the addi-
tion of contiguous purchased land, of a
site already reserved or dedicated for a
tot lot, neighborhood park, neighborhood
playground, or community playfield, as such
terms are defined on pages 11 and 12 of the
Park District Plan, and the purpose of such
enlargement must be to conform such site to
the size standards set forth on said
pages 11 and 12.

(b)  The purchase price for any
such purchased land shall be computed at
$15,000 per acre plus a sum equal to the
interest that would have been earned on the
amount of the purchase price between July 1,
1973 and the date when any such purchase of
land is closed if such interest were com-
puted at the rate of one percent above the
prime rate from time to time being charged
by The First National Bank of Chicago to
its large corporate borrowers.

(c)  The maximum amount of land
in each Region of the District which shall
be subject to purchase pursuant to this
Subsection a.(6) shall be fifteen percent
of the amount of land required to be

C00194

reserved and dedicated in such Region for
public open space, park and recreation
areas.

(d)  It shall be a condition to
the obligation of the developers to make
land available for purchase pursuant to
this Subsection a.(6) that the location
of such land is consistent and compatible
with the developer's Land Use Plan, General
Development Plans and Preliminary Plans,
if any, for the area in which the land to
be purchased is located.

(e)  No land need be made avail-
able for purchase pursuant to these pro-
visions if such land is covered by an
approved Preliminary Plan.

(f)  No land need be made available
for purchase pursuant to these provisions if
such land shall have been conveyed pursuant
to Subsection V L. of this Plan Description,
and no provision for such purchase shall have
been made in the deed or other document
deposited with the Department of City Planning;
provided, that prior to any such conveyance of
land located in a Residental Area of the
District, the developers shall have consulted
with the City or other public body for which

-87-

000195

land for public open space, park and recrea-
tion areas is to be reserved or dedicated
as to the intended use of such conveyed land
and shall have given good faith considera-
tion to any request by the City or such other
public body that a provision for such purchase
be made in such deed or other document.

b.  School Sites.

(1)  Land shall be reserved in Region I
of the District for school sites for elementary
schools and junior high schools to serve such
Region, the number of elementary and junior high
schools to be determined by the school classi-
fication criteria set forth in Subsection (B)(1)
of Section 43-48 of the Subdivision Control
Ordinance (hereinafter called the "Site Size
Criteria") and by the Table of Estimated Popula-
tion.  No reservation of land for a high school
site shall be required in Region I.

(2)  Land shall be reserved in Region II
of the District for school sites for elementary
schools and junior high schools to serve such
Region, the number of elementary and junior high
schools to be determined by the Table of Estimated
Population and the Site Size Criteria.  Land shall
be reserved in Region II for school sites for high

000196

schools to serve the District, the number of high schools to be determined by the Table of Estimated Population and the Site Size Criteria.

(3)   In any case where the Table of Estimated Population requires the dedication of a fractional school site which is fifty percent or more of a required school site in accordance with the Site Size Criteria, the developers shall reserve additional land at such fractional site as required to meet the Site Size Criteria.  Such additional land shall be subject to the purchase requirements provided for in Subsection B.19.b.(5) below.

(4)   As a condition to the approval by the City Council of any Final Plan for a development phase of a Region of the District pursuant to Subsection 14.7 of the Zoning Ordinance, which Final Plan includes land reserved for one or more school sites, the City Council shall require (i) a dedication to the appropriate school district of all or that part of the reserved land which is required to be dedicated in accordance with the Table of Estimated Population and the Site Size Criteria, or (ii) a contractual commitment from the developer obligating the developer to dedicate all or such part of the reserved land to the appropriate school district within such time period as may be specified by the City Council,

C00197

which time period shall not, without the developer's approval, be longer than one year commencing with the date of such Final Plan approval; provided, that such dedication obligation shall, at the request of the developer, be conditioned upon the receipt by the developer, prior to such dedication, of legally binding contractual undertakings from such school district to the effect that (a) such school district will co-operate with the City or other public body to which any land adjacent to the reserved school site is to be dedicated for public open space, park and recreational areas, so as to maximize the utility of the public open space, park or recreational land for the needs of the educational facilities for which the reserved school site is to be used, and (b) the land to be dedicated will, within a reasonably prompt period of time, be improved with a building or buildings and other educa-tional facilities adequate, in accordance with generally accepted standards, to meet the edu-cational needs of the residents of the District which such dedicated land is intended to serve. The contractual undertakings which may be re-quired from a school district as a condition to a land dedication obligation shall take into consideration the financial resources of such

000198

000199

school district and the legal requirements that
such district must meet in order to provide
buildings and other educational facilities on
the reserved land to which such dedication
obligation is applicable.

(5)  If, in accordance with the Table of
Estimated Population and the Site Size Criteria,
a fraction of a reserved school site is required
to be dedicated, the developer may be required to
sell and, in such event the school district shall
be required to purchase, at the time of or prior
to the dedication of such fractional site, the
additional land reserved in order that such site
comply with the Site Size Criteria.  The purchase
price of such additional land shall be $12,000
per acre.  In the alternative, such school district
may elect to substitute a cash contribution for
the developer's dedicated obligation with respect
to such fractional site, in which event the cash
contribution provisions of Subsection B.19.b.(6)
below shall be applicable, and the developer
shall be relieved from any reservation or dedication
obligation with respect to such fractional site and
any reservation obligation with respect to such
additional land.

(6)  If a school district chooses the
cash contribution election provided for in Sub-
section B.19.b.(5) above in lieu of land dedi-
cation with respect to a fractional school site,

-91-

000200

the City Council shall, as a condition to the approval of the Final Plan for the development phase of the Region which includes the reserved site with respect to which the cash contribution election shall have been made, require the developer to make a cash contribution or a cash contribution contractual commitment in lieu of a land dedication or a land dedication contractual commitment.  The City Council shall also require from the developer of Region I, as a condition to the approval of any Final Plan for a development phase of that Region which would require land dedications or land dedication contractual commitments for a high school site, a cash contribution or cash contribution contractual commitment in lieu of such land dedication or land dedication contractual commitment.  All cash contributions and cash contribution commitments shall be computed by multiplying $12,000 by the number of acres or fraction thereof that would have been required to be dedicated pursuant to the dedication requirement for which the cash contribution is a substitute.  A developer's obligation to make any cash contribution shall, at the request of the developer, be conditioned upon the receipt by the developer, prior to the time when such cash contribution is required to be made, of legally binding contractual undertakings from

000201

the school district which has the responsibility
for providing the education facilities for which
such cash contribution is intended, to provide,
within a reasonably prompt period of time, educa-
tional facilities adequate, in accordance with
generally accepted standards, to meet the educa-
tion needs of the residents of the development
phase for which such cash contribution is made.
All cash contributions shall be held in trust by
the City, or another public body, person, firm or
corporation approved by the City and the developer,
solely for use in the acquisition of land for
a school site to serve the immediate or future
needs of children from the development phase with
respect to which such cash contribution shall
have been made or for the improvement to an
existing school site or buildings which already
serve such needs.  If any portion of such cash
contribution is not expended for the purposes set
forth herein during such time period as may be
specified in any contractual undertaking of an
affected school district made pursuant to the
provisions hereof, or, in the absence of a speci-
fied time period in a contractual undertaking,
within seven years from the date of receipt, it
shall be refunded to the developer.

(7)  If the developer and any school
district are unable to agree upon the contrac-
tual undertakings which may be requested by the

C00202

developer pursuant to Subsections B.19.b.(4) or
B.19.b.(6) above, such school district or the
developer may at any time request that the areas
of disagreement be submitted to arbitration in
accordance with the rules then obtaining of the
American Arbitration Association, and the arbitra-
tors shall be selected as follows:  on ten days'
written notice by either party to the other, each
of them shall designate an arbitrator, and a third
arbitrator shall be selected within twenty days
thereafter by the two arbitrators so designated.
The award under such arbitration shall, if accepted
by such school district, be binding upon the
developer.  If the school district does not accept
such award within thirty days after its deter-
mination, the developer shall be relieved from
the land dedication or cash contribution obliga-
tion to which the contractual undertakings were
a condition.  In the case of an arbitration con-
cerning a contractual undertaking which is a
condition to a land dedication obligation of the
developer, if the award in such arbitration
is not accepted by the school district and the
school district does not, within ninety days from
the date of determination of such award, acquire
the land which is the subject of the developer's
dedication obligation by purchase or commence
proceedings to acquire such land by condemnation,
the developer shall be relieved from any reserva-
tion obligation with respect to such land.  Such

C00203