E.  Time Limitations for Submission of Preliminary
and Final Plans.

Within twelve months after the approval date
Preliminary Plans for not less than forty acres of the
District (hereinafter called the "Required First Prelimi-
nary Plans") shall be submitted for approval.  Final Plans
for not less than forty acres of the area covered by the
Required First Preliminary Plans (hereinafter called
"Required First Final Plans") shall be submitted for
approval within three years after approval by the City
Council of the Required First Preliminary Plans.  Pre-
liminary Plans for development phases of the District not
included in the Required First Preliminary Plans may be
submitted for approval from time to time after the
approval date within the fifteen-year period following
the approval date.  Final Plans for development phases of
the District not included in the Required First Final
Plans may be submitted for approval from time to time
after the approval date within the eighteen-year period
following the approval date.

The developer may, with respect to any area of
the District, without having obtained approval of a Pre-
liminary Plan covering such area, submit for approval,
in accordance with the procedures prescribed in Subsec-
tion 14.7-12 of the Zoning Ordinance and within the time

000238

period prescribed for submission of a Preliminary Plan for such area, one or more Final Plans for such area.

On the approval date the developers of the District will have entered into certain agreements with the City which will obligate the City to install and construct certain water facilities in the District on or before certain dates as specified in such agreements. After the approval date the developers of the District contemplate entering into an agreement with the Aurora Sanitary District which will obligate the Aurora Sanitary District to install and construct certain sewerage facilities in the District on or before certain dates as specified in such agreement. By approving the application for establishment of the District, the City agrees that any delays in constructing and installing such water facilities or sewerage facilities in accordance with such specified dates will, to the extent of such delays, be recognized as proper grounds for granting (in accordance with the procedures prescribed in Subsections 14.7-8 and 17.7-11 of the Zoning Ordinance) extensions to the time periods for submission of Preliminary Plans and Final Plans covering all of the District.

F.   Deletion of Land from the Proposed District.

At any time prior to the approval date the developers shall have the right to delete one or more

000239

parcels of land from the District as proposed in the Plan
Description originally filed with the application for
establishment of the District and to amend the legal
description of the District and the maps showing boundaries
of the District to reflect such deletions; provided, that
(i) not more than ten percent of the acreage of the Dis-
trict as described in the Plan Description as originally
filed may be so deleted, and (ii) no such deletion may be
made which would affect the contiguity of the property in
the District as required by Subsection 14.7-2 of the
Zoning Ordinance.

G.  Consent of Owners.

The application for establishment of the District
has been made by Urban Investment and Development Co., a
Delaware corporation, acting as agent for the owners of all
of the land in the District.  Prior to the approval date,
this Plan Description shall be made part of an Annexation
Agreement executed by the owners of record of all of the
land in the District.  Such Annexation Agreement shall
contain a provision by which said owners of record consent
to the establishment of the District in accordance with the
terms of this Plan Description.

H.  Obligation to Develop.

With respect to each parcel of land in the
District included in a Final Plan approved by the City

C00240

Council pursuant to Subsection 14.7 of the Zoning Ordin-
ance, the obligation to develop said parcel in accordance
with the provisions of such approved Final Plan, and the
obligation to make the improvements and land reservations
and dedications with respect to such parcel provided for
in such approved Final Plan shall be solely a requirement
of the development of such parcel of land in accordance
with the provisions of such Final Plan, and no obligation
with respect thereto shall attach to other land in the
District.

I.   <u>Land Use Plans</u>.

1.   <u>Submission of Land Use Plan Included in
Plan Description</u>.  There is included in Part Three of this
Plan Description as map number VI a land use plan for the
District which sets forth the present plans of the
developers of the District with respect to the future
development of the District into the three types of land
use Areas described in Subsections A., B. and C. of Sec-
tion II hereof and the location of such land use Areas in
the District.

2.   <u>Submission of Updated Land Use Plans</u>.

a.   <u>Submission with Preliminary Plans</u>.  At
any time and from time to time when a Preliminary
Plan for a development phase of a Region of the

000241

District is submitted for approval, it shall be an
obligation of the developer of such development phase
to cause the developers of such Region to prepare and
submit to the City with such Preliminary Plan an
updated land use plan for those areas in the Region
for which Preliminary Plans shall not then have been
submitted for approval.

b.  <u>Submission by Developers</u>.  At any time
and from time to time any one or more developers of
each Region of the District may prepare and submit
to the City an updated land use plan for any area in
such Region for which Preliminary Plans shall not
then have been submitted for approval which land
use plan shall meet the requirements of this
Subsection V I.

c.  <u>Annual Submissions</u>.  When no updated
land use plan for the District shall have been pre-
pared for one year, the developers of each Region
of the District shall, unless the City waives such
obligation, prepare and submit to the City a land
use plan for those areas in such Region for which
Preliminary Plans shall not then have been submitted
for approval which land use plans shall meet the
requirements of this Subsection V I.

3.  <u>Land Use Plans to Reflect Developers' Best</u>
<u>Intentions</u>.  The land use plan included in Part Three of

C00242

this Plan Description, and each updated land use plan sub-
sequently prepared and submitted in accordance with this
Subsection V I. shall, as of its date, reflect the best
intentions of the developers of the District with respect
to the future development of the District into land use
Areas and the location of such land use Areas in the
District.

    4.  <u>Changes in Land Use Plans Requiring City
Council Approval</u>.  Changes in the land use plan included
in Part Three of this Plan Description or in any updated
land use plan prepared and submitted in accordance with
this Subsection V I. which involve the relocation of a
land use Area in the District or the establishment of a
new land use Area in the District shall require the
approval of the City Council, which approval may be
obtained in accordance with the procedures set forth in
Subsection A.9. of Section III hereof; provided, that
the following changes in any such land use plan shall
not require the approval of the City Council:

    a.  The establishment or relocation of one
or more neighborhood shopping center Business Areas
each of which contains no more than fifteen acres
or the establishment or relocation of no more than
three Business Areas each of which contains no more
than twenty-five acres; and

    b.  The enlargement of a land use Area,
into property contiguous to such land use Area

C00243

prior to such enlargement, the contraction of a
land use Area, or the elimination of a land use
Area; provided that a neighborhood shopping center
Business Area or a Business Area containing no more
than twenty-five acres established or relocated pur-
suant to Subsection 4.a. of this Subsection V I. may
not, without the approval of the City Council, be
enlarged to a size greater than fifteen acres or
twenty-five acres respectively; and, provided fur-
ther, that properties separated by highways, streets,
public ways or railroad or public utility rights-of-
way shall be deemed contiguous for the purpose of
this Subsection V I.4.b.; and

c.  Any changes in any such land use plan
involving land designated for open space, park,
recreation or school site purposes; and

d.  Any changes in such land use plan
which are deemed necessary or desirable by the
developers of those areas of a Region of the Dis-
trict for which Preliminary Plans shall not have
been submitted for approval because of any of the
following events and which are reasonably attribu-
table to such event or events:

(1)  A change in the zoning
classification of property adjacent
to but outside the boundaries of
the District, unless such property is

-135-

C00244

owned or controlled by a developer of
the District and such change in zoning
shall have been made with such developer's
consent or approval; or

(2)  A change in the location
of the Fox Valley Freeway or other new
arterial roads described in Subsection D.
of this Section V as shown on the land use
plan included in Part Three of this Plan
Description or on any updated land use
plan prepared and submitted in accordance
with this Subsection V I., provided, that
a substantial change or substantial
changes in such land use plan occasioned
by the abandonment of plans for the Fox
Valley Freeway shall require approval of
the City Council unless such change or
changes are otherwise permitted to be
made without City Council approval pur-
suant to the provisions of this
Subsection I.; or

(3)  The future location or
elimination of major public transportation
facilities or routes designed, in whole
or in part, to serve the District; or

(4)  The enactment of any
municipal, state or federal ordinance

000245

or law or the issuance of any executive
or judicial ordinance or decree.

5.  Preliminary Plans and General Development
Plans to Conform to Land Use Plan.  Each Preliminary Plan
for a development phase of the District which is submitted
for approval and each General Development Plan submitted
pursuant to Subsection J. of this Section V shall conform
to the land use plan included in Part Three of this Plan
Description or the most recent updated land use plan sub-
sequently prepared and submitted in accordance with this
Subsection V I., and if those portions of any such updated
land use plan to which any such Preliminary Plan conforms
involve land use plan changes requiring the approval of
the City Council pursuant to the provisions of this
Subsection V I., such approval by the City Council shall
be a condition to the approval of such Preliminary Plan.

J.   General Development Plans.

1.  Each Preliminary Plan submitted for approval
in accordance with Subsection 14.7-12 of the Zoning
Ordinance shall (unless the Plan Commission waives the
requirement) either be accompanied by a General Develop-
ment Plan for the area in which the property covered by
such Preliminary Plan is located, or cover property
included within a General Development Plan previously
submitted to the City.  Such General Development Plan
shall cover, or shall have covered, a sufficient area

-137-

C00046

beyond the borders of the property covered by such Pre-
liminary Plan ("Preliminary Plan property") to show the
relationship of the proposed land uses for surrounding
property which may reasonably be affected by or may
reasonably have an affect upon the Preliminary Plan
property.

2.  A General Development Plan shall include no
less than one hundred and twenty acres of land (unless the
Plan Commission shall approve a smaller acreage) and shall
be at a scale of one inch equals two hundred feet and shall
show proposed rights-of-way for primary and secondary roads,
preliminary locations of open space and school sites, if any,
and proposed land uses.

3.  In each General Development Plan and in
each Preliminary Plan the location of Business, Manufac-
turing and Residential Areas will be planned so that the
locations of such Areas are in a compatible relationship
to each other and Business Areas of the District shall
not be developed in such a manner that they would be
generally regarded as undesirable strip commercial
developments.

4.  A developer shall have the right to make
revisions to any General Development Plan to the extent
that such revisions will not impair the compatible rela-
tionship of land uses to each other or to the abutting
land uses of previously approved Preliminary Plans.

5.  Each Preliminary Plan which must be sub-
mitted with an accompanying General Development Plan,

-138-

000247

or which covers property included with a previously sub-
mitted General Development Plan, shall be consistent with
such accompanying or previously submitted General Develop-
ment Plan.


K.  Development Pursuant to Final Plans.


Each development phase of the District shall be
developed only according to an approved Final Plan for
such development phase, and in such development phase no
site may be used nor structure erected except as provided
for in such Final Plan or as provided for in changes made
in an approved Final Plan pursuant to Subsection O. of
this Section V.


L.  Conveyances of Property Not Included in an
Approved Final Plan.


When and if any property in Region I or Region II
not included in a Final Plan approved by the City Council
pursuant to Subsection 14.7 of the Zoning Ordinance shall
be conveyed to a person other than one of the developers
of the District on the approval date, the deed of convey-
ance or another appropriate document which will bind such
party and any subsequent owner of the property shall con-
tain provisions specifying the land use Areas into which
such property may be developed, the residential density
which will be permitted in the development of such prop-
erty, the open space, park, recreation land and school

C00248

site land reservation and dedication or sale obligations
which will apply to such property and such other restric-
tions and limitations as shall be deemed necessary and
relevant.  A copy of such deed or other document shall be
deposited with the Department of City Planning.

   M.  <u>Transfers of Property Between Regions</u>.

      The developers of the District may agree that
property described in this Plan Description as part of
either Region of the District may be transferred to the
other Region of the District; provided, that such trans-
fer shall not become effective until written notice
thereof has been given to the Department of City Plan-
ning.  Such notice shall specifiy (i) the changes in the
permitted average residential density in each Region of
the District which will result from such transfer, which
changes may not result in an increase in the average
residential density for the District permitted by this
Plan Description, and (ii) the changes in the percentage
limitations on permitted uses in each Region of the Dis-
trict which will result from such transfer, which
percentage changes may not result in an increase in the
maximum number of acres in the District which are per-
mitted to be devoted to each of the three land use Areas
pursuant to Section II hereof or a decrease in the mini-
mum number of acres in the District which are required to
be devoted to each of said land use Areas pursuant to said
Section II.

000249

N. Changes in Plan Description.

At any time or from time to time prior to the approval of Final Plans for all of the District, the developers of those areas of the District for which Final Plans shall not have been approved may request approval of changes in this Plan Description by filing a written application for such approval with the City Clerk. The procedure for obtaining such approval shall be the same as the procedure set forth in Subsection 14.7-12 of the Zoning Ordinance for obtaining approval of Preliminary and Final Plans for all or specified phases of a planned development district; provided, that if any of such requested changes involves a major change from this Plan Description, as such term is defined in clause (b) of Subsection 14.7-6 of the Zoning Ordinance, such change shall not be made without consideration thereof at a public hearing held in accordance with the provisions of Section 15 of the Zoning Ordinance as in the case of an application for establishment of a planned development district. If changes in this Plan Description are approved by the City Council in accordance with this Subsection N., ten complete copies of a new Plan Description, incorporating such changes, with all accompanying materials and data shall be prepared at the expense of the developers of the District requesting such changes and deposited with the Department of City Planning.

000050

O.  Changes in Approved Final Plans.

1.  Prior to Completion of Development Phase.
After approval by the City Council of any Final Plan for
any development phase of the District and prior to the
completion of such development phase in accordance with
such approved Final Plan, the developer of the uncom-
pleted portion of such development phase may request
approval of changes in such approved Final Plan by filing
a written application for such approval with the City
Clerk.  The procedure for obtaining such approval shall
be the same as the procedure set forth in Subsection 14.7-12
of the Zoning Ordinance for obtaining approval of Pre-
liminary and Final Plans for all or specified phases of a
planned development district, and the provisions of Sub-
section 14.7-9 of the Zoning Ordinance shall be applicable
to the approval of requested changes in an approved Final
Plan.  If changes in an approved Final Plan are approved
by the City Council, ten complete copies of a new Final
Plan, incorporating such changes, with all accompanying
materials and data, shall be prepared at such developer's
expense and desposited with the Department of City
Planning.

2.  After Completion of Development Phase.
After completion of construction of a development phase
in accordance with an approved Final Plan, the record
owner of any property included in such development phase

C00C51

may request approval of changes in such approved Final Plan by filing a written application for such approval with the City Clerk. The procedure for obtaining such approval shall be the same as the procedure set forth in Subsection 14.7-12 of the Zoning Ordinance for obtaining approval of Preliminary and Final Plans for all or specified phases of a planned development district, and the provisions of Subsection 14.7-9 of the Zoning Ordinance shall be applicable to the approval of requested changes in an approved Final Plan; provided, that (i) prior to approving any such requested changes, the City shall give notice to the owners or occupants of other properties which may be affected by such changes as determined by the Plan Commission, and, at the written request of any of such owners or occupants, made within five days after the date on which such notice is given, such changes shall not be made without consideration thereof at a public hearing held in accordance with the provisions of Section 15 of the Zoning Ordinance as in the case of an application for establishment of a planned development district; and (ii) until such time as Final Plans shall have been approved for all of the Region in which such property is located, such changes shall require the approval of the developers of those areas of the Region for which Final Plans shall not have been approved. If changes in an approved Final Plan are approved by the City Council, ten complete copies of a new Final Plan or the part thereof affected by such changes, incorporating such changes, with all accompanying materials and data, shall be prepared at such record

000052

owner's expenses and deposited with the Department of
City Planning.

P.  Reliance by Developers.

If the property included in the District is
annexed to the City and is approved as a planned develop-
ment district in accordance with the provisions of Sub-
section 14.7 of the Zoning Ordinance and in accordance
with the provisions of this Plan Description, such approval
shall be given with the recognition by the City and the
Corporate Authorities thereof that the developers of the
District:

1.  Regard both Regions and all development
phases of the District as a unified undertaking with a
single goal of creating a single community of integrated
residential, business, manufacturing and related municipal
and public uses of the property included in the District.

2.  Would not commence the development of the
District and would not undertake the obligations provided
for in the Principal Annexation Agreement to which this
Plan Description is an Exhibit were it not for the assur-
ance given to them by the City and the Corporate Autho-
rities thereof that they will have the opportunity to
complete the development of the District in accordance
with the provisions of this Plan Description, subject to
its limitations and requirements and the limitations and

000253

requirements of the Zoning Ordinance as in effect on the
approval date.

Q.  Developer.

As used in this Plan Description the terms
"developer" and "developers" as applied to the District
or a Region of the District shall mean the record owner
or record owners of property located within the District
or the Region on the approval date.  A developer shall
have the right to assign some or all of its rights, sub-
ject to some or all of its duties and obligations, which
the developer may have under this Plan Description.  The
developer, or its assignee, shall have the right to appoint
an agent or representative to act for it with respect to
the Plan Description.  If the record owner of property in
the District is a Land Trust, then either the beneficiary
of such Land Trust or the Land Trust Trustee shall have
the right to appoint and designate a duly authorized agent
or representative for the owner of record.

000254

*Exhibit A II*

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

PLAN DESCRIPTION

PART TWO

Legal Description of the Property to Be
Included in the Proposed District

Following hereafter is the legal description of
the property to be included in the District and specifically
identified as Region I and Region II, respectively:

REGION I

That part of Sections 20, 21,   28 and 29, Township
38 North, Range 9 East of the Third Principal Meridian,
described as follows: Beginning at the southwest cor-
ner of Lot 7 in Walter S. Otto's Assessment Plat of
part of Sections 17 and 20, recorded in the Recorder's
Office of DuPage County, October 10, 1947 as Document
531314 and re-recorded on January 13, 1948 as document
537648; thence southerly along the easterly line of
the right of way of the Elgin, Joliet and Eastern Rail-
road Company 1404.69 feet to the center line of
Illinois State Route No. 65; thence South 2°11' West
along the easterly line of the right of way of said
Elgin, Joliet and Eastern Railroad Company 1863.06
feet to an angle in said right of way line; thence
South 89°05'01" East along said right of way line 30.0
feet to an angle in said right of way line; thence South
2°11' West along said right of way line 1100.0 feet to
an angle in said right of way line; thence North 89°05'
01" West along said right of way line 30.0 feet to an
angle in said right of way line; thence South 2°11' West
along the easterly line of the right of way of said
Elgin, Joliet and Eastern Railroad Company 2622.65 feet
to the center line of U.S. Route No. 34; thence North
68°19'26" East along the center line of said U.S. Route
No. 34, 885.24 feet to the west line of the East Half
of the Southeast Quarter of said Section 29; thence
North 1°06'18" East along the west line of the East Half
of the Southeast Quarter of said Section 29, 422.20 feet
to the south line of the Northeast Quarter of said Section
29; thence South 87°26'57" East along the south line of
the Northeast Quarter of said Section 29, 353.31 feet to
a line drawn North 1°30' East from a point on the center
line of said U.S. Route No. 34 that is 733.26 feet South
68°19'26" West of the point of intersection of the south
line of the Northeast Quarter of said Section 29 with
the center line of said U.S. Route No. 34; thence North
1°30' East 1859.69 feet; thence South 89° West 396.0 feet
to the division line; thence North 1°11'04" East along
the division line 895.01 feet to the north line of said

Section 29; thence South 89°08'30" East along the north
line of said Section 29, 1318.53 feet to the northeast
corner of said Section 29; thence South 2°22'01" West
along the east line of said Section 29, 2543.72 feet to
the center line of said U.S. Route No. 34; thence North
68°19'26" East along the center line of said U.S. Route
No. 34, 1137.09 feet to a point of curvature; thence
continuing northeasterly along a curve to the right having
a radius of 114,589.16 feet, 999.99 feet to a point of
tangency; thence North 68°49'26" East along the center
line of said U.S. Route No. 34, 3079.88 feet to a point
in the west line of the John Erb property as described
in Document 535635 Recorded December 18, 1947; thence
northerly along the west line of said John Erb property
forming an angle of 105°17'30" with the last described
course (measured clockwise therefrom) 82.94 feet to a
point that is 80.0 feet northwesterly of the center line
(measured at right angles thereto) of said U.S. Route No.
34; thence North 68°49'26" East parallel with the center
line of said U.S. Route No. 34, 224.57 feet to the west
line of property conveyed to Trustee of Schools by Doc-
ument 151990; thence North 7°32' West along the west
line and west line extended of said Trustee of Schools
property 465.18 feet to a point on the south line of
property conveyed to LaVerne W. Jackson and Clara .
Jackson by Document 747981 recorded March 2, 1955, being
North 88°48' West of the southeast corner of said Section
21; thence North 88°48' West along the south line of said
Jackson property 220.80 feet to the southwest corner of
said Jackson property; thence North 7°58' West along the
westerly line of said Jackson property 148.10 feet to the
northwest corner of said Jackson property; thence South
88°48' East along the north line of said Jackson property
605.50 feet to the east line of said Section 21; thence
North 2°03' East along the east line of said Section 21,
2604.40 feet to the southeast corner of part B of parcel
No. 0004 acquired by the Department of Public Works and
Buildings of the State of Illinois under condemnation
proceeding filed July 9, 1969 as Case No. 369-789 of the
Circuit Court of DuPage County; thence westerly along a
southerly line of part B of said parcel No. 0004 forming
an angle of 90° with the center line of Illinois State
Route No. 59, 50.3 feet more or less to a southwesterly
corner of part B of said Parcel No. 0004; thence north-
westerly along a southwesterly line of part B of said
Parcel No. 0004 forming an angle of 129°04'44" with the
last described course (measured counter-clockwise there-
from) 40.72 feet to an angle in the southwesterly line
of part B of said Parcel No. 0004; thence northwesterly

-2-

along the southwesterly line of part 8 of said Parcel
No. 0004 forming an angle of 30°53'10" with the prolonga-
tion of the last described course (measured counter-clock-
wise therefrom) 43.83 feet to the most westerly south-
west corner of part 8 of said Parcel No. 0004; thence
northerly along the west line of part 8 of said Parcel No.
0004 forming an angle of 62°50'54" with the prolongation
of the last described course (measured clockwise there-
from) 50.0 feet to the northwest corner of part 8 of said
Parcel No. 0004, being on the center line of said Illinois
State Route No. 65; thence South 84°53'26" West along the
center line of said Illinois State Route No. 65, 235.70
feet more or less to a point that is 360.0 feet South 84°
53'26" West of the east line of said Section 21; thence
South 2°02' West parallel with the west line of Lot 1 of
Scheffler's Plat of Survey recorded October 27, 1954 as
Document 735032, 122.92 feet; thence South 83°35' West along a line
forming an angle of 81°33' with the prolongation of the
last described course (measured clockwise therefrom)
130.41 feet to the southeast corner of property conveyed
to State of Illinois, Department of Public Works and
Buildings as part B of Document R69-51831 recorded December
3, 1969; thence South 83°33'10" West along the southerly
line of part B of said Document R69-51831, 214.75 feet to
an angle in the southerly line of part B of said Document
R69-51831; thence South 78°52'52" West 95.52 feet to a
point that is 140.0 feet southerly of the center line
(measured at right angles thereto) of said Illinois State
Route No. 65; thence South 84°53'26" West parallel with
the centerline of said Illinois State Route No. 65, 30.0
feet; thence North 60°06'56" West 61.03 feet to a point
105.0 feet southerly of the center line (measured at right
angles thereto) of said Illinois State Route No. 65; thence
North 25°39'55" West 42.72 feet to a point that is 65.0
feet southerly of the center line (measured at right angles
thereto) of said Illinois State Route No. 65; thence South
87°03'06" West 265.19 feet to the most westerly southwest
corner of part B of said Document R69-51831; thence North
5°06'34" West along the westerly line of part 8 of said
Document R69-51831, which forms an angle of 90°00' with
the center line of said Illinois State Route No. 65, 55.0
feet to the northwest corner of part B of said Document
R69-51831, being on the center line of said Illinois State
Route No. 65; thence South 84°53'26" West along the center
line of said Illinois State Route No. 65, 3851.21 feet;
thence South 85°32'10" West along the center line of said
Illinois State Route No. 65, 1362.60 feet to the southwest
corner of the tract of land conveyed to George J. Walder
and Hazel G. Walder by Document 429914 recorded October
14, 1941; thence North 5°31' West along the west line of
said Walder tract to a

C00057

line drawn North 84°45' East of the point of beginning;
thence South 84°45' West to the point of beginning, except-
ing therefrom that part of the Southeast Quarter of said
Section 21, described as follows:  Commencing at the in-
tersection of the center line of said Illinois State Route
No. 65 and the center line of Illinois State Route No.
59; thence South 2°00'26" West along the center line of
said Illinois State Route No. 59, 1066.61 feet; thence
North 87°59'34" West at right angles to the last described
course 50.0 feet to a point on the west right of way line
of said Illinois State Route No. 59 for a point of begin-
ning; thence continuing North 87°59'34" West along the
prolongation of the last described course 34.0 feet; thence
North 2°00'26" East parallel with the center line of said
Illinois State Route No. 59, 566.15 feet to the south
line of Lot 1 of said Scheffler's Plat of Survey; thence
North 84°53'26" East along the south line of said Schef-
fler's Plat of Survey 34.26 feet to a point that is 50.0
feet westerly of the center line (measured at right
angles thereto) of said Illinois State Route No. 59;
thence South 2°00'26" West parallel with the center line
of said Illinois State Route No. 59 to the point of
beginning, all in Naperville Township, DuPage County,
Illinois.

002058

REGION II

That part of the Southwest Quarter of Section 19
and part of the North Half of Section 30, Township 38
North, Range 9 East of the Third Principal Meridian,
described as follows: Commencing at the northwest
corner of said Southwest Quarter; thence North 88°21'
East along the north line of said Quarter 1758.10 feet;
thence South 0°36' East 567.0 feet to the center of the
Aurora and Naperville Road; thence North 73°15' West
along said Road 904.90 feet; thence North 86°15' West
along said Road 171.0 feet; thence South 0°43' East
1027.80 feet; thence South 88°24' West 182.0 feet for
a point of beginning; thence North 88°24' East 545.70
feet; thence South 0°11' West 1092.0 feet to an old
claim line; thence South 88°19' East along said claim
line to a point that is 899.82 feet westerly of the
center line of Vaughan Road (measured along said claim
line); thence southwesterly parallel with the center
line of said Vaughan Road 486.10 feet; thence southeast-
erly along a line forming an angle of 69°20' with the
last described course (measured clockwise therefrom)
847.11 feet to an iron pipe stake on the center line
of said Vaughan Road that is 613.0 feet southwesterly
of the point of intersection of said claim line and
the center line of said Vaughan Road; thence southwest-
erly along the center line of said Vaughan Road 100.0
feet to an iron stake; thence northwesterly along a
line forming an angle of 110°40' with the last described
course (measured counter-clockwise therefrom) 652.0 feet;
thence southwesterly along a line forming an angle of
101°28' with the last described course (measured clock-
wise therefrom) 413.02 feet to the southerly line of
property described in document No. 456037; thence north-
westerly along said southerly line 1397.21 feet to the
west line of said Section 30; thence northerly along
the west line of said Sections 30 and 19, 2689.49 feet
to the center line of said Aurora and Naperville Road;
thence easterly along the center line of said Aurora
and Naperville Road 537.61 feet to a line drawn North
0°43' West from the point of beginning; thence South
0°43' East 1044.7 feet to the point of beginning, in
Naperville Township, DuPage County, Illinois and
also that part of the South Half of Section 17, part
of Section 18, part of the East Half of Section 19,
part of Sections 20, 29, 30, 31, 32, Township 38 North,
Range 9 East of the Third Principal Meridian and part
of the East Half of Section 13, and part of Section
36, Township 38 North, Range 8 East of the Third Prin-
cipal Meridian, described as follows: Commencing at
a point on the west line of the Southwest Quarter of
said Section 18 that is 61.60 feet south of the north-
west corner of the Southwest Quarter of said Section
18; thence South along the west line of the Southwest

-5-

000259

Quarter of said Section 18, 876.0 feet to the northerly
line of property owned by the Chicago, Burlington and
Quincy Railroad Co.; thence North 79°14.5' East along the
northerly line of said Railroad 2545.40 feet to the center
line of Vaughn Road; thence continuing North 79°14.5' East
along said northerly line 400.0 feet; thence South 2°32.7'
West to the southerly line of the right of way of said Rail-
road as established by document 152991 for a point of begin-
ning; thence North 2°32.7' East along the last described
course to the northerly line of the right of way of said
Railroad; thence North 79°14.5' East along the northerly
line of said Railroad 543.80 feet to an iron stake in a fence
corner; thence North 2°32.7' East to an iron stake on
the center line of Knight Street; thence South 63°04.7'
West along the center line of said Knight Street 463.8
feet to an iron stake; thence North 2°32.7' East
1373.85 feet to an iron stake in an old fence corner;
thence North 89°07.2' West along an old fence line
1809.85 feet to an iron stake in an old occupation
line; thence South along said old occupation line
1307.4 feet to the center line of said Knight Street;
thence South 89°54' West along the center line of
said Knight Street 668 feet to the extension of a
monumented line; thence South alongsaid extension and said
line 427 feet to an iron stake; thence South 89°54'
West along an old fence line 256.0 feet to an iron
stake; thence southerly along an old fence line 454.7
feet to an iron stake; thence South 89°46' West along
an old fence line 396.0 feet to a point on the west
line of the Southwest Quarter of said Section 18 that is
61.6 feet south of the northwest corner of the Southwest
Quarter of said Section 18; thence northerly along the west
line of said Section 18 and along the east line of said Sec-
tion 13 to the southeast corner of Schwartz Subdivision, Unit
No. 1, Township of Aurora, Kane County, Illinois; thence
South 89°10' West along the south line of said Unit No. 1,
50.0 feet; thence South 0°51' West parallel with the east line
of said Section 13, 190 feet; thence South 89°12' West 217.35
feet to the east line extended southerly of Unit Two of Schwartz
Subdivision, Aurora, Kane County, Illinois; thence North 0°53'
East 188.1 feet to the southeast corner of Unit Two of Schwartz
Subdivision, Aurora, Kane County, Illinois; thence westerly
along the southerly line of said Unit Two, 338.96 feet to the
southeast corner of Lot 4 in said Unit Two; thence North 0°53'
East along the east line of said Lot 4, 181.87 feet to the north-
east corner of said Lot 4; thence North 89°10' West along the
north line of said Lot 4, 66.0 feet to the northwest corner of
said Lot 4; thence South 0°53' West along the west line of said
Lot 4 and the east line of Lot 7, in said Unit No. 1, 181.85
feet to the south line of said Unit No. 1; thence South 89°10'
West along the south line of said Unit No. 1, 621.40 feet to
the southwest corner of Lot 12 of said Unit No. 1; thence South
parallel with the most easterly east line of Fichter's Subdivision,
Township of Aurora, Kane County, Illinois to the southerly line

000060

extended easterly of Stephen Street; thence westerly along the
southerly line extended of said Stephen Street to a line drawn
North 1°30' East from a point on the south line of the Northeast
Quarter of said Section 13 that is 1320 feet South 89°01'25"
West of the southeast corner of the Northeast Quarter of said
Section 13; thence South 1°30' West to the south line of the
Northeast Quarter of said Section 13; thence North 89°01'25"
East along the south line of the Northeast Quarter of said
Section 13 to a line drawn North 0°51' East from a point on
the northerly line of premises conveyed to the Chicago, Burling-
ton and Quincy Railroad Company by Document 129699 that is 694.32
feet South 79°48'27" West of the east line of said Section 13;
thence South 0°51' West 1030.1 feet to the northerly line of
said Chicago, Burlington and Quincy Railroad Company; thence
easterly along the northerly line of said Chicago, Burlington
and Quincy Railroad Company to the east line of Vaughn
Road; thence southerly along the east line of said Vaughn
Road to the southerly line of the Railroad right of way
as established by said Document 152991; thence South 79°14.5'
West along the southerly line of said Document 152991 to
the northeast corner of premises conveyed to said Chicago,
Burlington and Quincy Railroad Company by Document 155615;
thence southerly along the easterly line of said Railroad
123.58 feet to the most easterly corner of premises conveyed
to said Chicago, Burlington and Quincy Railroad Company by
Document 156238; thence westerly along the southerly line of
premises conveyed by said Document 156238, 590 feet to an angle
in the southerly line of said Railroad; thence westerly along
the southerly line of said Railroad 1897.60 feet to the west
line of said Section 18; thence southerly along the
west line of said Section 18, 656.43 feet to the south-
west corner of said Section 18; thence easterly along
the south line of said Section 18, 2492.55 feet to the
center line of said Vaughn Road; thence South 6°53' East
1060.6 feet to the center line of the Aurora-Warrenville
Road; thence South 81°59' West along the center line of
said Aurora-Warrenville Road 392.47 feet to the north-
east corner of Ballco Assessment Plat recorded as Document
R62-22490; thence South 0°34' East along the easterly line and
easterly line extended of said Ballco Assessment plat to the south line of
the Northeast Quarter of said Section 19; thence North
88°21' East along the south line of the Northeast Quarter
of said Section 19 to the west line of the East Half
of the Northeast Quarter of said Section 19; thence North
0°34' West along the west line of the East Half of the
the Northeast Quarter of said Section 19 to a point that
is 462 feet South 0°34' East of a line drawn westerly
parallel with the north line of said Sections 19 and 20
from a point on the east line of Eola Road that is 972.18
feet northerly (measured along the easterly line of
said Eola Road) of the south line of the Northwest
Quarter of said Section 20; thence North 87°49' East
parallel with the north line of said Sections 19 and 20,
1834.80 feet more or less to the easterly line of said
Eola Road; thence northerly along the easterly line of
said Eola Road to the southwest corner of Lot 1 of Stubb's
Assessment Plat recorded as Document 549994; thence

-7-

000061

easterly along the south line of said Lot 1 and along
a southerly line of Lot 6 of said Stubb's Assessment
Plat 1042.70 feet to an angle in the southerly line of
said Lot 6; thence southerly along a westerly line of
Lot 6 of Stubb's Assessment Plat 1390.70 feet to the
center line of Illinois State Route No. 65; thence
westerly along the center line of said Illinois State
Route No. 65 and along the center line of Ogden Avenue
to the northeast corner of a tract of land conveyed to
Ellsworth Honeycutt by warranty deed recorded as Document
154079; thence southerly along the east line of said
Honeycutt tract 660.0 feet to the southeast corner of
said Honeycutt tract; thence westerly along the south-
erly line of said Honeycutt tract being parallel with
the center line of the old Aurora-Naperville Road 132.0
feet to the southwest corner of said Honeycutt tract;
thence continuing westerly parallel with the center
line of said Aurora-Naperville Road 132.0 feet; thence
North 2°45' East to a line drawn parallel with and 30.0
feet southerly of the center line of said Aurora-Naper-
ville Road (measured at right angles to the center line
of said Aurora-Naperville Road); thence westerly parallel
with the center line of said Aurora-Naperville Road to
the west line of the Southwest Quarter of said Section
20; thence northerly along the west line of the South-
west Quarter of said Section 20 to a line drawn parallel
with and 30.0 feet northerly of the center line of said
Aurora-Naperville Road (measured at right angles to the
center line of said Aurora-Naperville Road);

                thence easterly parallel with the center
line of said Aurora-Naperville Road to a line drawn
South 2°00' West from a point on the north line of the
Southwest Quarter of said Section 20 that is 7.58 chains
easterly of the northwest corner of the Southwest Quarter
of said Section 20; thence North 2°00" East to a point
that is 5.43 chains South 2°00' West of the north line
of the Southwest Quarter of said Section 20; thence
westerly parallel with the north line of the Southwest
Quarter of said Section 20 and north line of the South-
east Quarter of said Section 19 to a                line
drawn South 2°10' West from a point on the north line
of the Southeast Quarter of said Section 19 that is
5.32 chains westerly of the northeast corner of the
Southeast Quarter of said Section 19; thence South 2°10' West
to the center line of said Illinois State Route No. 65;
thence westerly along the center line of said Illinois
State Route No. 65, 582.36 feet to a point that is 83.0
feet easterly of the northwest corner of Vaughn's Sub-
division, recorded April 18, 1956 as Document 796951;
thence southerly parallel with the easterly line of
said Vaughn's Subdivision 349.85 feet to the southerly
line extended easterly of said Vaughn's Subdivision;
thence westerly along the extended southerly line and
the southerly line of said Vaughn's Subdivision 305.26

-8-

feet; thence southerly along a line forming an angle
of 81°48'28" with the prolongation of the last described
course (measured counter-clockwise therefrom) 534.19
feet to the northerly line extended easterly of Lot 7
of Vaughn's Assessment Plat of part of the South Half
of said Section 19; thence westerly along the extended
northerly line and the northerly line of said Lot 7 to
the northwest corner of said Lot 7, being on the center
line of Vaughn Road; thence South 11°55'37" West along
the westerly line of Lots 7 and 8 of said Vaughn's As-
sessment Plat to the southwest corner of said Lot 8;
thence South 29°57'34" West along the center line of
said Vaughn Road 224.51 feet to the south line of the
Southeast Quarter of said Section 19; thence North
88°36'31" East along the south line of the Southeast
Quarter of said Section 19, 2354.16 feet to the north-
east corner of the Northeast Quarter of said Section 30;
thence southerly along the east line of the Northeast
Quarter of said Section 30, 12.66 chains (835.55 feet);
thence South 89½° West 2856.11 feet to the center line
of said Vaughn Road; thence North 72°00' West to the
west line of the Northwest Fractional Quarter of said
Section 30; thence southerly along the west line of
the Northwest Fractional Quarter of said Section 30 to
a point on the west line of said Section 30 that is 311.0
feet North 0°19'33" East of the southwest corner of the
Northwest Fractional Quarter of said Section 30; thence
North 89°28'47" East parallel with the south line of
the Northwest Fractional Quarter of said Section 30,
927.07 feet to the center line of said Vaughn Road;
thence South 32°03'45" West along the center line of
said Vaughn Road 369.05 feet to the south line of the
Northwest Fractional Quarter of said Section 30; thence
South 89°28'47" West along the south line of the North-
west Fractional Quarter of said Section 30, 732.92 feet
to the southwest corner of the Northwest Fractional
Quarter of said Section 30; thence South 0°19'15" West
along the west line of the Southwest Fractional Quarter
of said Section 30, 2651.78 feet to the northeast corner
of said Section 36; thence southerly along the east line
of said Section 36, 566.78 feet; thence southwesterly
along a line forming an angle of 72°30' with the east
line (measured clockwise therefrom) of said Section 36,
1391.07 feet to the east line of the West Half of the
Northeast Quarter of said Section 36; thence northerly
along the east line of the West Half of the Northeast
Quarter of said Section 36, forming an angle of 107°
34'37" with the prolongation of the last described course
(measured clockwise therefrom) 221.10 feet; thence west-
erly forming an angle of 89°43'16" with said last de-
scribed course (measured clockwise therefrom) 306.63
feet; thence southerly along a line forming an angle of
91°36'46" with the last described course (measured clock-
wise therefrom) 1682.43 feet to the center line of

-9-

000363

Waubonsie Creek; thence southwesterly along the center line of said Creek, forming an angle of 114°30'12" with the last described course (measured counter-clockwise therefrom) 1665.0 feet; thence southwesterly along the center line of said Creek forming an angle of 177°40' with the last described course (measured clockwise therefrom) 496.0 feet; thence southwesterly along the center line of said Creek forming an angle of 134°13' with the last described course (measured clockwise therefrom) 220.0 feet; thence southwesterly along the center line of said Creek forming an angle of 203°22' with the last described course (measured clockwise therefrom) 200.0 feet; thence southwesterly along the center line of said Creek forming an angle of 198°54' with the last described course (measured clockwise therefrom) 150.37 feet to a point on the west line of the East Half of the Southwest Quarter of said Section 36 that is 614.30 feet northerly (measured along said west line) of the north line of lands formerly owned by A.H. Albee; thence southerly along the west line of the East Half of the Southwest Quarter of said Section 36 forming an angle of 119°11'12" with the last described course (measured clockwise therefrom) 614.30 feet to the north line of lands formerly owned by A.H. Albee; thence easterly along said Albee line, forming an angle of 81°01'42" with the last described course (measured clockwise therefrom) 248.72 feet to the center line of U.S. Route No. 34; thence northeasterly along the center line of said U.S. Route No. 34, 2495.34 feet to the south line of the North-east Quarter of said Section 36; thence easterly along the south line of the Northeast Quarter of said Section 36, 74.76 feet to the southeasterly line of said U.S. Route No. 34; thence southwesterly along the southeasterly line of said U.S. Route No. 34, 2289.91 feet to a line drawn parallel with the east line of the Southeast Quarter of said Section 36 that is 1716.0 feet westerly (measured along the south line of the Southeast Quarter of said Section 36) of the east line of the Southeast Quarter of said Section 36; thence southerly parallel with the east line of the Southeast Quarter of said Section 36, 1127.76 feet to the south line of the Southeast Quarter of said Section 36; thence easterly along the south line of the Southeast Quarter of said Section 36, 1716.0 feet to the southeast corner of said Section 36; thence easterly along the south line of the Southwest Fractional Quarter of said Section 31, 1958.35 feet to the southeast corner of the Southwest Fractional Quarter of said Section 31; thence northerly along the west line of the Southeast Quarter of said Section 31, 848.35 feet to the northwest corner of the south 40.0 acres of the west 125.0 acres of the Southeast Quarter of said Section 31; thence easterly along the north line of said South 40.0 acres 1054.11 feet to the northeast corner of said south 40.0 acres; thence northerly along the east

000264

line of said west 125.0 acres 1805.30 feet to the north
line of the Southeast Quarter of said Section 31; thence
westerly along the north line of the Southeast Quarter of
said Section 31, 1274.19 feet to a point that is 780.0 feet
easterly of the northwest corner of the Southeast Quarter
of said Section 31; thence southerly at right angles to
the last described course 1210.0 feet; thence westerly at
right angles to the last described course 180.0 feet; thence
northerly at right angles to the last described course
1210.0 feet to the north line of the Southeast Quarter of
said Section 31; thence westerly along the north line of
the Southeast Quarter of said Section 31, 600.0 feet to the
southeast corner of the Northwest Fractional Quarter of
said Section 31; thence northerly along the east line of
the Northwest Fractional Quarter of said Section 31, 2655.35
feet to the northeast corner of the Northwest Fractional
Quarter of said Section 31; thence northerly along the west
line of the Southeast Quarter of said Section 30 to a point
that is 15.15 chains (999.90 feet) South of the northwest
corner of the Southeast Quarter of said Section 30; thence
due East 2.97 chains (196.02 feet); thence South parallel
with the west line of the Southeast Quarter of said Section
30 and the west line of the Northeast Quarter of said Section
31, 35.10 chains (2316.60 feet) to the center line of U. S.
Route No. 34; thence North 62°10' East along the center line
of said U.S. Route No. 34 to a line drawn parallel with and
935.49 feet easterly of the west line of the Northeast
Quarter of said Section 31 (measured along the north
line of Fry's Copenhagen Colony, a Subdivision recorded
as Instrument No. 866-16855); thence southerly parallel
with the west line of the Northeast Quarter of said Section
31, 1371.10 feet to a point that is 260.70 feet northerly
of the north line of said Fry's Copenhagen Colony (measured
along a line drawn parallel with the west line of the
Northeast Quarter of said Section 31); thence easterly
parallel with the north line of said Fry's Copenhagen
Colony 48.57 feet; thence southerly parallel with the
west line of the Northeast Quarter of said Section 31,
260.70 feet to the north line of said Fry's Copenhagen
Colony; thence easterly along the north line of said
Fry's Copenhagen Colony 1360.48 feet to the northeast
corner of said Subdivision; thence southerly along the
east line of said Subdivision 745.80 feet to the southeast
corner of said Subdivision; thence easterly along the
south line of the Northeast Quarter of said Section 31,
330.0 feet to the northwest corner of the Southwest Quarter
of said Section 32; thence southerly along the west line
of the Southwest Quarter of said Section 32, 1514.35
feet to the northwest corner of the South 69.56 rods
(1147.74 feet) of the West Half of the Southwest Quarter
of said Section 32; thence easterly along the north line
of said south 69.56 rods, 1322.9 feet to the west line
of the Southeast Quarter of the Southwest Quarter of said
Section 32; thence southerly along the west line of the

000265

Southeast Quarter of the Southwest Quarter of said Section
32, 1147.74 feet to the south line of the Southwest Quarter
of said Section 32; thence easterly along the south line
of the Southwest Quarter of said Section 32, 1011.82 feet
to the west line of premises conveyed to Public Service
Company of Northern Illinois by warranty deed recorded
June 28, 1927 as Document 238574; thence northerly along
the west line of said premises 85.33 feet to an angle in
said west line; thence northeasterly along the west line of
said premises 3090.15 feet to the west line of the Southwest
Quarter of the Northeast Quarter of said Section 32; thence
northerly along the west line of the Southwest Quarter of
the Northeast Quarter of said Section 32, 841.11 feet to
the northwest corner of the Southwest Quarter of the Northeast
Quarter of said Section 32; thence South 89°56'43" East
along the south line of the Northwest Quarter of the Northeast
Quarter of said Section 32, 86.13 feet to the westerly line of
the right of way of Commonwealth Edison Company; thence north-
erly along the westerly line of said right of way 3137.98 feet
to the center line of U.S. Route No. 34; thence continuing
northerly along the westerly line of said Commonwealth Edison
Company right of way 1050.0 feet; thence westerly at right angles
to the last described course 300.0 feet; thence northerly at
right angles to the last described course 300.0 feet; thence east-
erly at right angles to the last described course 300.0 feet to the
westerly line of said Commonwealth Edison Company right of way;
thence northerly along the westerly line of said Commonwealth
Edison Company right of way 3889.0 feet to a point that is 340.0
feet southerly of the southerly line of the right of way of
Illinois State Route No. 65 as dedicated by Document 310934;
thence westerly parallel with the southerly line of the right
of way of said Illinois State Route No. 65 forming an angle
of 87°57' with the last described course (measured clockwise
therefrom) 650.0 feet; thence northerly parallel with the west
line of said Commonwealth Edison Company right of way forming an
angle of 87°57' with the last described course (measured counter-
clockwise therefrom) 343.10 feet to the southerly line of the
right of way of said Illi-
nois State Route No. 65; thence easterly along the southerly
line of the right of way of said Illinois State Route No.
65, 67.1 feet to the westerly line of property dedicated
by said Document 310934; thence southerly 5 feet along
said westerly line; thence easterly along the south
line of said property dedicated by Document 310934, 582.3 feet
to the west line of said Commonwealth Edison Company
right of    way; thence northerly along the west line
of said Commonwealth Edison Company right of way 85.20
feet to the centerline of said Illinois State Route No.
65; thence westerly along the center line of said Illi-
nois State Route No. 65 and along the center line of said
Ogden Avenue to the southeast corner of Lot 6 of said
Stubb's Assessment Plat; thence northerly along the east-
erly line of said Lot 6, 1574.70 feet to the south line
of Lot 10 of Walter S. Otto's Assessment Plat, recorded

-12-

000266

as Document 531314; thence easterly along the southerly line of said Lot 10 to the southeast corner of said Lot 10; thence northerly along the easterly line of said Lot 10 to the northeast corner of said Lot 10 (being on the center line of Claim Street); thence westerly along the center line of said Claim Street 660 feet to the northwest corner of the easterly half of Lot 11 of said Walter S. Otto's Assessment Plat; thence southerly along a line midway between the east and west lines of said Lot 11, 1075.54 feet to the south line of said Lot 11; thence westerly along the south line of said Walter S. Otto's Assessment Plat to the east line of Eola Road; thence northerly along the easterly line of said Eola Road to a point that is 972.18 feet northerly of the south line of the Northwest Quarter of said Section 20; thence westerly parallel with the north line of said Section 20 to the west line of the Northwest Quarter of said Section 20; thence northerly along the west line of the Northwest Quarter of said Section 20 to the center line of said Aurora-Warrenville Road; thence North 82°03'38" East 544.83 feet to the center line of said Eola Road; thence North 0°47'33" East 1155.7 feet to a line drawn North 89°42' East from a point on the west line of the Southwest Quarter of said Section 17 that is 422.4 feet North 0°04'38" East of the southwest corner of the Southwest Quarter of said Section 17; thence North 89°42' East 715.30 feet; thence North 0°25'11" East 339.95 feet; thence South 89°24'30" East 1428.00 feet; thence North 0°35'30" East 917.93 feet to the southerly right of way line of said Chicago, Burlington and Quincy Railroad Company, (now Burlington Northern Inc.); thence northwesterly along a curve to the left having a radius of 1860.08 feet a distance of 1534.65 feet, said curve being the southerly right of way line of said Chicago, Burlington and Quincy Railroad Company; thence South 78°21'33" West along the right of way of said Chicago, Burlington and Quincy Railroad Company 792.59 feet to the center line of said Eola Road; thence South 0°47'33" West along the center line of said Eola Road 526.45 feet to a line drawn South 89°12'27" East from a point on the west line of the Southwest Quarter of said Section 17 that is 1605.55 feet northerly of the southwest corner of the Southwest Quarter of said Section 17 (measured along the west line of the Southwest Quarter of said Section 17); thence North 89°12'27" West 582.00 feet to the west line of the Southwest Quarter of said Section 17; thence northerly along the west line of the Southwest Quarter of said Section 17 to the southerly line of premises conveyed to said Chicago, Burlington and Quincy Railroad Company by       Document 152991; thence westerly along the southerly line of said Chicago, Burlington and Quincy Railroad Company to the point of beginning, (excepting therefrom that part of the Southwest Fractional Quarter of said Section 31, described as follows:   Commencing

000067

at the southwest corner of the Southwest Fractional
Quarter of said Section 31; thence easterly along the
south line of the Southwest Fractional Quarter of said
Section 31, 1095.60 feet for a point of beginning;
thence westerly along the last described course 949.74
feet; thence northerly 276.54 feet to a point on the
center line of a public road that is 990.0 feet north-
westerly of the point of beginning; thence southeasterly
990.0 feet to the point of beginning;    also excepting
that part of the Southwest Quarter of said Section 29
conveyed to A. Everett Patton by warranty deed recorded
January 15, 1954 as Document 705583, being a parcel of
land situated in Section 29, Township 38 North, Range
9 East of the Third Principal Meridian, beginning at
the southwest corner of Section 29; thence North along
the west section line of said Section 29, a distance of
551.3 feet to a point, said point being the intersection
of the center line of U.S. Highway No. 34 and the west
line of Section 29; thence northeasterly along the center
line of U.S. Highway No. 34 a distance of 2196.6 feet to
the point of beginning; thence South at an angle of 116°
30' turned from East to South, a distance of 217.3 feet
to a point; thence East at an angle of 86°43' turned
from North to East, a distance of 200 feet to a point;
thence North at an angle of 93°17' turned from West
to North, a distance of 305.1 feet to a point on the
center line of U.S. Highway No. 34; thence southwesterly
along the center line of U.S. Highway No. 34 at an angle
of 63°30' turned from South to West a distance of approx-
imately 223.11 feet to the point of beginning; also excepting
therefrom thatpart of the Southeast Quarter of said Section
18, Township 38 North, Range 9 East of the Third Principal
Meridian, described by beginning at the southeast corner of
said Section 18 and running thence West along the south line
of said Section ( being     also the south line of vacated
Belt City) 682.0 feet to the center line of West Seventh Street
in said vacated Belt City; thence northerly parallel with the
east line of said Section 18 and along the center line of said
Seventh Street, 660.0 feet to the center line of Pike Street
in said vacated Belt City; thence East parallel with the south
line of said Section 18 and along the center line of said Pike
Street 326.0 feet to the center line of West 6th Street in said
vacated Belt City; thence northerly along said center line and
parallel with the east line of said Section 18, 660.0 feet to
the center line of Crane Street in said Belt City; thence East
along said center line 356.0 feet to the east line of said
Section 18; thence South along the east line of said Section
18, 1320.0 feet to the point of beginning; and also excepting
therefrom thatpart of the Southeast Quarter of Section 18
lying within the right of way of the Chicago, Burlington and
Quincy Railroad) and also that part of the North Half of Section
30, Township 38 North, Range 9 East of the Third Principa

C00068

Meridian, described by beginning at the northeast corner of said
Section; thence South on the east line of said Section 30, 12.66
chains; thence South 89½° West 43.18 chains to the center of
Vaughan Road; thence northeasterly along the center of said
Vaughan Road to the north line of said Section 30; thence East
on    Section line to the point of beginning (except that part
of the North Half of said Section 30, described as follows:
Beginning at the intersection of the center line of Vaughan
Road and the north line of Section 30, aforesaid; thence easterly
along said north line of Section 30, 520.0 feet; thence southerly
at right angles to said north line of Section 30, 250.0 feet;
thence westerly at right angles and parallel with said north
line of Section 30 to the center of Vaughan Road; thence north-
easterly along the center of Vaughan Road to the point of begin-
ning); also excepting the westerly 367.0 feet of the easterly 400.0
feet of the northerly 250.0 feet of the southerly 550.0 feet of
that part of the Southwest Quarter of Section 17, Township 38
North, Range 9 East of the Third Principal Meridian, described as
follows: Beginning at a point on the west line of said Southwest
Quarter which is 422.4 feet north of the southwest corner of said
Southwest Quarter; thence North 0°20'36" West along the west line
of said Southwest Quarter 1183.15 feet; thence South 89°12'27"
East 582.20 feet to the center line of Eola Road; thence South
0°47'33" West along said center line 1172.26 feet to a line drawn
North 89°42' East from the point of beginning; thence South 89°42'
West 558.84 feet to the point of beginning, all in Naperville Town-
ship, DuPage County, Illinois.


ALSO

000269

That part of the Northwest Fractional Quarter of Section 18, Township 38 North, Range 9 East of the Third Principal Meridian, described by commencing at the northwest corner of said Quarter; thence South 0°11'49" East along the west line of said Quarter 27.72 feet to the northeast corner of Section 13, Township 38 North, Range 8 East of the Third Principal Meridian; thence South 0°11'11" East along the west line of the Northwest Fractional Quarter of said Section 18, 483.78 feet for a point of beginning; thence South 89°04'55" East 1320.00 feet; thence South 0°11'11" East parallel with the west line of said Northwest Fractional Quarter of said Section 18, 1307.46 feet, being in the center line of Sheffer Road; thence South 89°43'38" West along said center line 1319.76 feet to a point on the west line of said Northwest Fractional Quarter which is 841.50 feet North 0°11'11" West from the southeast corner of the Northeast Quarter of Section 13, Township 38 North, Range 8 East of the Third Principal Meridian; thence North 0°11'11" West along the west line of said Northwest Fractional Quarter, 1334.90 feet to the point of beginning, all in DuPage County, Illinois.

ALSO

000270

That part of the South Half of Section 8 and part of
the North Half of Section 17, Township 38 North, Range 9
East of the Third Principal Meridian, described as follows:
Commencing at the point of intersection of the center line
of Eola Road and the South line of Lot 1 in Schellings
Assessment Plat; thence South 3°31'18" West along said
center line 85.80 feet to Crance's North line for a point
of beginning; thence North 89°36'30" East along said north
line 2005.01 feet to a point that is 12.95 chains South
89°36'30" West of the east line of the right of way of the
Elgin, Joliet and Eastern Railway Company extended from
the north; thence South 0°15'30" East 1330.12 feet to a
point on the center line of North Aurora Road that is
435.50 feet South 89°38'37" West of the west line of the
right of way of Public Service Company as established by
Document 222293; thence South 89°38'37" West along the
center line of said North Aurora Road 2092.82 feet to
the center line of said Eola Road; thence North 3°31'18"
East along the center line of said Eola Road 1331.94 feet
to the point of beginning, and also that part of the Southeast
Quarter of Section 7, part of the Southwest Quarter of
Section 8, part of the Northwest Quarter of Section 17 and
part of the North Half of Section 18, Township 38 North,
Range 9 East of the Third Principal Meridian, described as
follows:  Commencing at the northwest corner of said Section
18; thence southerly along the west line of said Section 18,
511.50 feet; thence South 89°57'43" East along a line forming
an angle of 88°53'44" with said west line (measured counter-
clockwise therefrom) 1210.44 feet for a point of beginning;
thence continuing South 89°57'43" East along the prolongation
of the last described course 111.79 feet to a point that is
1322.23 feet South 89°57'43" East of the west line of said
Section 18; thence North 89°52'53" East along a line forming
an angle of 180°09'24" with the last described course
(measured counter-clockwise therefrom) 1809.85 feet; thence
North 89°31'17" East along a line forming an angle of 180°
21'36" with the last described course (measured counter-
clockwise therefrom) 2412.94 feet to the center line of
Eola Road; thence North 3°31'18" East along said center line
1331.94 feet to a point that is 85.80 feet South 3°31'18"
West of the point of intersection of said center line with
the south line of Lot 1 in Schelling's Assessment Plat;
thence South 89°38' West along Crance's north line 3444.26
feet to the west line of the Southeast Quarter of said
Section7;  thence South 0°29'16" East along the west line of
said Southeast Quarter 733.86 feet to the southwest corner
of said Southeast Quarter; thence South 87°46'53" West along
the north line of the North Half of said Section 18, 983.40
feet; thence South 0°26'24" East 559.33 feet to the point of
beginning, excepting therefrom that part of the Southeast Quarter
of Section 7 and part of the Southwest Quarter of Section 8,
described as follows:  Commencing at the point of intersecti

-17-

000271