B. No fabric or other coverings such as those made of vinyl, nylon, or canvas; untreated or unpainted wood; or other non-traditional building materials shall be used in the construction of garages and sheds.

4.4-6.3. Location and Setbacks. Garages shall be permitted in side and rear yards, while sheds shall be permitted in rear yards only. No garage or shed shall be located within any public utility easement, whether platted or implied.

4.4-6.4. Distance from Principal Structures. Detached garages and sheds shall not be closer than six (6) feet from the nearest principal building wall, however if the accessory structure is properly fire rated it may be located closer to the principal building per building code requirements.

4.4-6.5. Garage Regulations

A. Conversions. When constructing a new detached garage on a residential lot currently containing an attached garage, any pavement leading to the existing garage not being used for the sole purpose if ingress and egress to the new garage shall be removed and landscaped, and any overhead garage door must be removed upon completion of the new garage. Upon completion of the conversion, the formerly attached garage shall be considered a habitable space subject to a certificate of occupancy.

B. Size and Footprint.

i. Size
No private detached garage structure shall exceed seven hundred sixty eight (768) square feet. The maximum length of any one wall shall not exceed 36'.



ii. Footprint. A private detached garage shall not exceed seventy-five percent (75%) of the foundation area of the principal building.

Footprint Calculation:
Accessory Garage Foundation Area = (Principal building foundation area) * (0.75)

Example to the right:
1,000 SF x 0.75 = 750 SF



C. Height and Bulk. Height shall be measured to the top (peak) of the structure. A private detached garage shall not exceed the height of the principal building or

54

21', whichever is less, and shall not contain vertical sidewalls exceeding 9 feet in height. The storage space above the main or first story shall not contain more than 50% of the cubic volume of the first floor.

D. Garage Door Height. The height of a garage door shall not exceed eight (8') feet.

E. Roof Type. Only flat, hip or gable roofs shall be permitted on detached garage structures, provided that gambrel or mansard roofs may be permitted if the principle structure has a gambrel or mansard roof. A maximum 4/12-roof pitch shall be permitted on a garage structure if the principal building contains a flat or low-slope roof. (Illustrations of roof types can be found in the definition section of Chapter A, under roof types.)

F. Garage in Multi-Family Districts. For buildings containing two or more units, not more than two (2) cars per dwelling unit shall be housed in a detached garage with a maximum area of five-hundred twenty eight (528) square feet per dwelling unit.

4.4-6.6. Sheds.

A. Height. A private shed shall not exceed fourteen (14) feet in height. Height shall be measured to the top (peak) of the structure.

B. Size. Sheds shall not exceed one hundred sixty (160) square feet in area, nor shall they exceed eight (8) feet in vertical wall height. The maximum length of any one wall shall not exceed sixteen (16) feet.

C. Sheds shall not contain a driveway separate from that of the residential garage.

4.4-6.7. Carports. Carports shall be prohibited in residential districts except if a carport is an integral part of the architectural design for an existing or proposed principal structure, including but not limited to design, trim, siding and roof materials of the said building. A carport shall meet all applicable regulations applicable to the principal building.

4.4-6.8. On Site Mobile Storage Containers. On site mobile storage containers, intended for loading or unloading of household or business items may not be stored on any public street. Said mobile storage containers are temporary in nature and may not be used for long-term storage of goods, therefore may remain at a residence for a time frame not to exceed fifteen (15) consecutive days. This time frame may reasonably be extended by the zoning administrator to accommodate additional loading or unloading needs.

4.4-7. Federally licensed amateur radio station, citizens band radio operator and receive-only antenna structures in residential districts.

4.4-7.1. The provisions of the R-1 One Family Dwelling District shall apply in determining height, yard areas and setbacks hereunder. Such structures shall require a permit and be erected in accordance with the provisions of the Aurora Building Code.

4.4-7.2. Emission Levels. Emission levels should comply with the Federal Communication Commission's (FCC) Office of Engineering and Technology (OET) recommendations. Refer to OET Bulletin 65, Edition 97-01 entitled "Evaluating Compliance with FCC Guidelines for Human Exposure to Radiofrequency

000425

Electromagnetic Fields" for information on emission levels. Future revisions and supplements may be issued and shall apply.

    4.4-7.3. The permit application for the proposed structure shall include the following items:

        A. A location plan, drawn to scale.

        B. Manufacturer's specifications and details of footings, guys and braces.

        C. A copy of the applicant's homeowner's or renter's insurance policy.

4.4-8. Exterior pay telephone structures in office, business, manufacturing, research and development and office, research and light industrial districts.

    4.4-8.1. General provisions. The provisions of the Bulk Restrictions Section and the setback requirements of each district shall apply in determining location. Such structures shall not be located within required exterior yards. Such structures shall require a building permit and be established in accordance with the provisions of the Aurora Building Code.

    4.4-8.2. The permit application for the proposed structure shall include the following items:

        A. A plat of survey or location plan, drawn to scale, showing the proposed structure location.

        B. Specifications and details of footings.

        C. Number. Each lot developed for business purposes under the same ownership and control shall be permitted to have no more than one (1) exterior pay telephone structure. The exception is for places of assembly such as public parking lots with two hundred (200) or more parking spaces, auditoriums, stadiums and other facilities designed for public assembly having a capacity of more than five hundred (500) persons which may be entitled to additional exterior pay telephone structures. Additional exterior pay telephone structures may be established on the basis of one (1) additional structure for each portion of the parking lot containing two hundred (200) or more parking spaces.

        D. Function. All exterior pay telephone structures shall be restricted to making outgoing calls.

        E. Retroactivity. All property with existing exterior pay telephone structures that do not comply with the setback, location, function and number requirements as contained herein shall be provided with a time frame of sixty (60) days in which to comply with said requirements after proper service of notice. Exterior pay telephone structures that are relocated shall require a permit.

        F. Prohibition for residences. No property developed solely for residential purposes shall be permitted to have an exterior pay telephone structure.

        G. Property zoned DC Downtown Core and DF Downtown Fringe. Exterior pay telephone structures within these districts may be established only after the issuance of a certificate of appropriateness at designated areas as determined to be appropriate by the Foxwalk Design Review Committee.

000426

H. Public right-of-way. No pay telephone structure shall be located within any public right-of-way, which includes sidewalks and parkways, unless the appropriate approvals are obtained form the Public Works and Public Property Departments.

I. Variations. Application for variation from the provisions of the Use Regulations Section may be made pursuant to the Administration Section.

## SECTION 5. BULK RESTRICTIONS

### 5.1. Building, Dwelling & Structure Standards

Shall be pursuant to district specific regulations, if any.

### 5.2. Floor Area Ratio

Shall be pursuant to district specific regulations, if any.

### 5.3. Height, bulk and lot coverage

5.3-1. No building shall be erected, reconstructed, relocated or structurally altered so as to have a greater height or bulk, a higher percentage of lot coverage or smaller open space about it than permissible under the limitations set forth herein for the district in which such building is located, except that parapet walls, chimneys, cooling towers, elevators, bulkheads, fire towers, stacks, stage towers or scenery lofts, and necessary mechanical appurtenances shall be permitted to exceed the maximum height provision when erected in accordance with all other ordinances of the City of Aurora.

5.3-2. No space allocated to a building or dwelling group for the purpose of complying with the side, rear or front yard, or court, or other open space, or lot area requirements of this ordinance shall thereafter, by reason of a change in ownership or for any other reason, be used to satisfy the yard, court, open space or lot area requirements of any other building or dwelling group.

5.3-3. No usable open space or off-street parking space or loading space existing or provided hereafter for any building shall be reduced below the minimum requirements hereinafter set forth for such usable open space, parking space or loading space, nor further reduced if already less than said minimum requirements.

### 5.4. Landscaping

5.4-1. Purpose and Intent.

5.4-1.1. These landscape standards are hereby established to create and maintain an aesthetically appealing community character that minimizes the negative impacts of vehicular traffic, parking lots, etc., and which incorporates human scale into the visual perception of the City. Specifically, these requirements are intended to beautify the public way; to increase the compatibility of adjacent uses by requiring a buffer or screening between uses; to minimize the adverse impact of noise, dust and headlight glare; to reduce topsoil erosion and storm water runoff; and to re-establish a canopy cover over the built environment to mitigate the effects of sun and wind so as to moderate extremes of temperature, provide shade, reduce wind velocity and conserve energy resources.

5.4-2. Applicability.

5.4-2.1. The landscape standards set forth herein shall be applied to all approved landscape plans; special use planned developments and Planned Development

57

Districts through the final plan review procedures; special use petitions; rezoning petitions; conditional use petitions; all variation petitions; final plat of subdivision petitions; and each use district as specifically required through the site plan review process.

5.4-3. Required Landscape Plan.

    5.4-3.1. The landscape plan shall be drawn to an accurate engineering scale, and include a scale, north arrow, location map, original and revision dates, name and address of owner and site plan designer. Plans shall show all landscape areas and their uses, the number of plantings by type, the size of plantings at installation, the on-center spacing for hedges, the caliper size of all trees at installation, existing vegetation and plantings, and proposed berming and fencing. Also included shall be all proposed/existing structures and other improvements, including but not limited to paved areas, berms, lighting, retention/detention areas and planting material. The landscape plan shall be sealed by a state registered Landscape Architect unless waived by the Zoning Administrator.

5.4-4. Landscape and Screening provisions.

    5.4-4.1. The following provisions shall be deemed as the minimum requirements for the landscape plan. Additionally, a variety of planting material is desired and must be reflected in the landscape plan.

        A. Requirements for all parcels. The following requirements shall apply to all parcels and are cumulative:

            i. Stormwater facility requirement. Whenever possible such facilities should be designed as natural features, implementing native deep-rooted shoreline plantings that stabilize the soil, slow runoff, facilitate infiltration and decrease erosion, subject to specific approval by the City. The criteria for City approval will be whether the proposed natural treatment provides and aesthetic and screening benefit to surrounding properties.

                a. Lake facilities. Provide three canopy tree equivalents per each 100 feet of high water line.

                b. Detention facilities. Provide five canopy tree equivalents per 100 feet of high water line. A minimum of 25% of the required canopy tree equivalent shall be non-canopy tree planting material.

           ii. Street tree requirement. Provide three canopy trees per 100 feet of right-of-way frontage, in the parkway on each side of each public street, pursuant to Section 6 of the City of Aurora Arboricultural Specifications Manual. If it is not possible to locate these trees in the parkway, place them within the exterior yards next to the parkway pursuant to the required count. When located below power lines, however, street trees must be understory trees pursuant to Section 6 of Arboricultural Specifications Manual.

            iii. Setback area requirement. All required setback areas excluding driveways, access lanes, sidewalks, walkways shall be planted in turf or other acceptable living groundcover.

        B. Requirements for non-single family detached parcels. The following requirements shall apply to all non-single family detached parcels and are cumulative in addition to the requirements listed under Requirements for All Parcels in the Landscaping and Screening Provisions:

C00428

i. Perimeter Yard Requirement. Provide three canopy tree equivalents per 100 feet of lot perimeter, which may be clustered.

ii. Buffer Yard Requirement. Enhance the boundaries between adjacent non-residential uses and residential uses, and between adjacent single family detached residential uses and non-single family detached residential uses to provide an aesthetic screening treatment by planting two canopy tree equivalents per one hundred feet of lot line, of which fifty percent (50%) shall be non-canopy tree planting material. Alternatively, a wall or fence may satisfy the requirement as determined by the City.

iii. Parking Lot Internal Requirement. A 9' by 19' landscaped island protected by a six inch raised concrete curb shall be established for every 20 parking spaces. Said islands shall be planted with 1.5 canopy tree equivalents with the preferred planting material mix including one canopy tree. Said islands shall be located to organize and direct traffic flow within the parking lot, and may be clustered.

iv. Foundation planting requirement. Provide one canopy tree equivalent per 100 lineal feet of building foundation to effectively relate the structure to the landscape, of which 100% of the requirement shall be non canopy tree planting material.

v. Dwelling unit requirement. Provide 1 canopy tree equivalent per dwelling unit located around and/or adjacent to the structure.

C. Provisions applicable to all non-single family detached parcels. The following provisions shall apply to all non-single family detached parcels and any planting material utilized shall be credited toward the Requirements for All Parcels and Requirements for Non-Single Family Detached Parcels:

i. Parking Lot Screening Provisions. Screen parking lots within 50 feet of public rights-of-way with compact hedging, berming, decorative fencing, decorative masonry, or a combination of these techniques, to a height of two and a half feet (2.5').

ii. Miscellaneous Screening Provisions. Screen to 100 percent opacity dumpsters, trash enclosures, HVAC and utility facilities with a combination of plant material and decorative fencing, decorative masonry, building structural extensions, or other similar elements.

iii. Storage Area Screening Provisions. All exterior storage for business, wholesale and manufacturing uses shall be screened as provided herein. Screening shall be to an opacity of not less than seventy-five (75) percent, be a minimum of six (6) feet above grade, and not exceed eight (8) feet in height. Screening may be accomplished by berming, landscaping at seven canopy tree equivalents per 100 feet of storage perimeter, neutral colored fencing with triple slatting, or wall construction. Lighting of the facility shall be directed away from surrounding properties.

Such screening shall be required when one or more of the following conditions are present:

a. When any exterior yard of the property is located along a public right-of-way and storage is two hundred (200) feet or less from the right-of-way.

b. When any exterior yard of the property is located across a street from property that is zoned or developed solely for residential or public park purposes regardless of the distance from the residential or park property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

000429

      c. When any exterior yard of the property is located across an alley from property that is zoned or developed solely for residential or public park purposes and the storage is two hundred (200) feet or less from the residential property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

      d. When the property is located contiguous to the yard of property that is zoned or developed solely for residential or public park purposes and the storage is two hundred (200) feet or less from the residential property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

      e. When such storage areas were in existence as of July 9, 1996, screening shall be in conformance with the above requirements no later than one (1) year from the date of notification, but within five (5) years following said date.

      f. This provision is not intended to allow outdoor storage where it is prohibited by the provisions of the underlying zoning district.

  D. Requirements for newly established single family developments. The following requirements shall apply to all newly established single family detached developments and are cumulative in addition to the requirements listed under the section Requirements for All Parcels in the Landscaping and Screening Provisions:

    i. Neighborhood border requirement. Provide subdivision neighborhoods with landscape borders, in which planting material, entry monuments and features, grade changes and the like are located. These borders shall be a minimum of 20 feet wide and shall be located along all public streets where single family detached lots do not front on such streets. Said border areas shall be planted at four (4) canopy tree equivalents per one hundred (100) feet of right of way frontage, of which fifty percent (50%) shall be non canopy tree planting material.

    ii. Dwelling unit requirement. One canopy tree or equivalent shall be planted for each interior lot, and two trees for each corner lot. Said trees shall be planted in the required exterior yards of each street frontage.

5.4-4.2. Credit for existing trees. In addition to new planting material, the City may recognize and give one canopy tree equivalent credit for each twelve (12) inches of caliper of healthy existing material that is in desirable condition and properly located as determined by the City.

5.4-4.3. Credit for trees installed larger than required minimums. The City may give credit for canopy tree equivalents that are planted at a size greater than the required minimum size. Such credit may satisfy up to 10 percent of the total canopy tree equivalent requirement, exclusive of the street tree requirement. The following shall be a basis for the credit:

  i. Canopy tree or understory tree. For each inch of caliper greater than the minimum required, an inch of credit shall be applied.

  ii. Evergreen tree or multi-stemmed tree. For each foot in height greater than the minimum required, a foot of credit shall be applied.

  iii. Deciduous or evergreen shrubs. For each two feet in height greater than the minimum required, a foot of credit shall be applied.

C00450

5.4-4.4. Planting material specifications. The specifications for all required planting material shall be pursuant to Section 6 of the City of Aurora Arboricultural Specifications Manual.

   A. Size requirements. The minimum size of the material at time of planting shall be as follows:

   i. Canopy tree at 2.5 inch caliper. Note: caliper shall be measured 12 inches from the base of the tree.



   ii. Evergreen tree at 6 foot in height, or understory tree at 2.5 inch caliper, or multi-stemmed tree at 8 foot in height.

   iii. Deciduous or evergreen shrubs at 18 inches in height.

   B. Planting Material Variety. In order to allow for flexibility while maintaining minimum planting levels, many of the above provisions specify "canopy equivalents" instead of canopy trees. A canopy equivalent is one canopy tree, or three evergreen/ understory/ multi-stemmed trees, or twenty shrubs. These equivalent amounts are allowed to substitute for a canopy tree since the approximate coverage area at maturity of each of the equivalent amounts is comparable to the approximate coverage area at maturity of one canopy tree.

   C. Acceptable and unacceptable tree species. Acceptable and unacceptable tree species shall be pursuant to Section 4 of the Arboricultural Specifications Manual.

   D. Prohibited Plant Species. The following plant species are prohibited.

   i. Noxious Weeds. Due to plant characteristics, noxious plants have been deemed injurious to public health, crops, livestock, land or other property. Refer to the Illinois Noxious Weed Law (505 ILCS 100/) for a list of species designated and declared as noxious weeds.

   ii. Exotic Weeds. Refer to the Illinois Exotic Weed Act (525 ILCS 10/) for a list of species designated as exotic weeds.

5.4-4.5. Naturalized Planting Areas. The use of naturalized prairie style landscaping shall be encouraged adjacent to and within stormwater detention facilities, wetland, low-lying and inactive open space areas. These areas must meet the following criteria in addition to the City of Aurora's Wetland and Naturalized Planting Standards in order to remove said areas from the above stated requirements.

   A. A detailed species list and management plan shall be prepared by a reputable consultant to be submitted by the Developer with the proposed Landscape Plan. This report shall include specifications on seed mix and amounts of seeds per square foot to be planted.

   B. These areas shall not be subject to Section PM-302.4 of the City of Aurora Property Standard Ordinance if maintained pursuant to said management plan.

CC0431

C. Installation and maintenance. Refer to the City of Aurora's Wetland and Naturalized Planting Standards for installation and maintenance guidelines.

5.4-4.6. Minor amendments and deviations. Subsequent to the review of said landscape plan, and issuance of the building permit, the City may allow through a staff review of said plan, minor deviations which do not substantially alter the plan, and which do not substantially diminish the intended benefits of said plan.

5.4-4.7. Cost limitations. The City shall recognize that the cost of planting material required by the Landscape section of the Bulk Restrictions must be proportionate to the cost of the balance of work being proposed, and shall not exceed 20% of the total project costs, exclusive of sod and seeding costs, as supported by two written bids by recognized contractors.

5.4-4.8. Planting Material Installation and Maintenance. Planting material shall be installed prior to the end of the first available planting season prior to the issuance of an Occupancy Permit. Said planting materials shall be maintained and kept in a healthy condition, and any required planting material that dies shall be replaced prior to the end of the next available planting season. An irrevocable Letter of Credit shall be required as deemed necessary by the Zoning Administrator to guarantee installation of improvements required by the approved landscape plan prior to the issuance of a permit. The amount of said Letter of Credit shall be based on written bids from contractors covering the installation of all elements of the landscape plan including but not limited to all planting material, fencing, screen walls and pavers. Said Letter of Credit may be required where there are extensive elements required by the approved landscape plan as determined by the Zoning Administrator.

5.4-4.9. Timing extension for installation. If construction work is completed during the off-planting season, with the City agreeing that plantings installed at that time would likely die, then a temporary certificate of occupancy shall be issued for the property which shall specify that all planting material as required by this Section be installed prior to the end of the next planting season.

## 5.5. Lot Size

Shall be pursuant to district specific regulations, if any.

## 5.6. Lot Coverage

Shall be pursuant to district specific regulations, if any.

## 5.7. Monotony Standards

5.7-1. A newly-constructed single family detached home may not be located next to, across the street from, or cater-corner from another such newly-constructed or existing residential structure which has the same front elevation or the same configuration of building materials or the same colors facing the public street.

## 5.8. Nonconformity

5.8-1. Purpose and intent.

5.8-1.1. The Aurora Zoning Ordinance establishes separate districts, each of which is an appropriate area for the location of the zoning lot configurations, structures, and uses that are permitted in that district. Nonconforming zoning lots, structures, and uses may be created when the application of a specific zoning district to a property

C00432

changes, or when a zoning regulation otherwise changes. As a result of such changes, then-existing zoning lot configurations, structures, or uses may no longer be allowed or are otherwise limited. It is necessary and consistent with the establishment of those zoning districts that all zoning lot configurations, structures, and uses that are nonconforming therewith be strictly regulated and properly controlled.

It is the purpose of this section to provide for the regulation of nonconforming zoning lots, structures, and uses in the various zoning districts, recognizing that a zoning ordinance change is not enacted to require all nonconforming situations to be immediately brought into conformance, but rather to guide them and future zoning lot configurations, structures, and uses in a new direction consistent with current city policy. It is the intent of this section is to protect the character of each zoning district by reducing the negative impacts from nonconforming situations, to assure that revised zoning regulations will not cause inappropriate or unnecessary burdens on individual property, and to permit under limited conditions, but not encourage the survival of these nonconformities by specifying those circumstances under which they shall be allowed to continue.

5.8-2. Applicability.

    5.8-2.1. The provisions of this section shall apply to all zoning districts when any of the following circumstances exist:

        A. Nonconforming zoning lot. A zoning lot, as defined in the Rules and Definitions Section, made up of one (1) or more parcels configured such that it does not comply with the minimum required lot width or area of the zoning district for the zoning lot.

        B. Nonconforming structure. A structure that does not comply with the zoning provisions then currently applicable to the zoning lot on which said structure is located, or a structure originally designed for a use not permitted within the zoning district for the zoning lot, with such determination being made by the zoning administrator.

        C. Nonconforming use. A use on a zoning lot that does not comply with the zoning district provisions then currently applicable to the zoning lot on which said use is located, including a use not allowed in the zoning district for such zoning lot.

5.8-3. Continuance of a nonconforming zoning lot, structure, or use.

    5.8-3.1. Any lawfully established zoning lot, structure, or use that existed prior to the effective date of the Aurora Zoning Ordinance, or of applicable amendments hereto and currently subject to one (1) or more of the circumstances described in the Applicability subsection of this Nonconformity Section, shall be deemed legal nonconforming and may be continued subject to the provisions of this section.

5.8-4. Permitted changes to legal nonconforming zoning lots, structures and uses.

    5.8-4.1. Changes to legal nonconforming zoning lots, structures, and uses permitted to continue pursuant to this section shall be permitted in accordance with the following sections, with the most restrictive subsection being enforced in case of multiple applicability. (Legal nonconforming zoning lot and the structures thereon section contains the least restrictive provisions, Legal nonconforming structure section

C00433

contains more restrictive provisions, and Legal nonconforming uses and the structures related thereto section contains the most restrictive provisions.)

5.8-4.2. Legal nonconforming zoning lot and the structures thereon.

A. Conformance. Any legal nonconforming zoning lot may obtain conforming status pursuant to the following:

i. A zoning lot may be modified, altered or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance.

ii. A zoning lot within the R-5 district may be issued a Mitigation Certificate pursuant to the Bulk Restrictions Section hereof.

B. Repair and maintenance. Normal and customary repair and maintenance of a structure located on a legal nonconforming zoning lot is permitted.

C. Alterations. The following shall be the only circumstances where an alteration is allowed for a structure on a legal nonconforming zoning lot:

i. When the alteration is otherwise required by law.

ii. When the alteration provides an exterior improvement to the appearance of the structure such as but not limited to a new storefront.

iii. When a structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

iv. When a structure containing a religious use is internally altered in a way to improve its function.

v. When such a structure containing a use that complies with the zoning district provisions then currently applicable to that zoning lot is internally altered in a way that accommodates said use.

D. Additions and enlargements. A structure located on a legal nonconforming zoning lot may be added onto, enlarged or extended only if the entire structure is thereafter devoted to a conforming use and said addition, enlargement or extension conforms to all of the then current regulations of the zoning district in which it is located.

E. Use of a vacant legal nonconforming zoning lot. Any vacant zoning lot made up of one (1) or more parcels that does not meet the minimum lot width or area according to the then current Aurora Zoning Ordinance, may be utilized for an otherwise permitted use, provided that both the lot width and area are not less than eighty (80) percent of the minimum width and area required.

F. Reconstruction of a damaged or destroyed structure.

i. A structure located on a legal nonconforming zoning lot which is damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Bulk Restrictions Section, may be reconstructed and the use of said structure which existed at the time of such partial destruction may be continued, provided that the restoration or repair of the structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending insurance settlements, or other lawful considerations. The Aurora City Council may

grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

    ii. A structure located on a legal nonconforming zoning lot which is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Bulk Restrictions Section, may be reconstructed and the use of said structure which existed at the time of such destruction may be continued, provided that the width and area of said zoning lot are each not less than eighty (80) percent of the minimum required width and area.

    iii. A structure in the form of a single-family detached dwelling upon a legal nonconforming zoning lot located within a residential zoning district, that is damaged or destroyed partially or in totality, may only be rebuilt in conformance with the structure's dimensions and height as existed prior to such damage or destruction.

5.8-4.3. Legal nonconforming structure.

    A. Conformance. Any legal nonconforming structure may be modified, altered, rebuilt or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance either partially or in totality.

    B. Repair and maintenance. Normal and customary repair and maintenance of a legal nonconforming structure is permitted.

    C. Alterations. The following shall be the only conditions where an alteration is allowed for a legal nonconforming structure:

      i. When the alteration is otherwise required by law.

      ii. When the alteration provides an exterior improvement to the appearance of a legal nonconforming structure such as but not limited to a new storefront.

      iii. When a legal nonconforming structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

      iv. When a legal nonconforming structure containing a religious use is internally altered in a way to improve its function.

      v. When such a legal nonconforming structure containing a use that complies with the zoning district provisions then currently applicable to that zoning lot is internally altered in a way that accommodates said use.

      vi. When the alteration does not involve in any way the exterior portion of the structure that is the cause for such structure having legal nonconforming status.

    D. Additions and enlargements. A legal nonconforming structure may be added onto, enlarged or extended only if the entire structure is thereafter devoted to a conforming use and said addition, enlargement or extension conforms to all the then current regulations of the zoning district in which it is located.

    E. Use of a legal nonconforming structure. A legal nonconforming structure shall only be occupied by a use that conforms to all then current regulations of the zoning district in which it is located, or by a legal nonconforming use.

    F. Reconstruction of a damaged or destroyed legal nonconforming structure.

      i. A legal nonconforming structure damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this

003435

   Nonconformity Section, may be reconstructed and the use of said structure which existed at the time of such partial destruction may be continued, provided that the restoration or repair of the legal nonconforming structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending insurance settlements, or other lawful considerations. The Aurora City Council may grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

  ii. Notwithstanding the previous regulation, a legal nonconforming structure in the form of a single-family detached dwelling, located within a residential zoning district, that is damaged or destroyed partially or in totality, may only be rebuilt in conformance with the structure's dimensions and height as it existed prior to such damage or destruction, provided that the restoration or repair of the legal nonconforming structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending insurance settlements, or other lawful considerations. The Aurora City Council may grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

5.8-4.4. Legal nonconforming uses and the structures related thereto.

 A. Conformance. Any legal nonconforming use may be modified, altered or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance. A legal nonconforming use may be changed to a use of the same, or of a more restricted character, but may not thereafter be changed to any less restricted use.

 B. Repair and maintenance. Normal and customary repair and maintenance of a structure is permitted.

 C. Alterations. The following shall be the only conditions where an alteration is allowed for a structure:

  i. When the alteration is otherwise required by law.

  ii. When the alteration provides an exterior improvement to the appearance of a structure such as but not limited to a new storefront.

  iii. When a structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

  iv. When a structure containing a religious use is internally altered in a way to improve its function.

 D. Additions and enlargements. A structure wholly or partially occupied by a legal nonconforming use is not allowed to be expanded and/or enlarged in any way.

 E. Reconstruction of a damaged or destroyed structure involving a legal nonconforming use. A structure damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this

000406

Nonconformity Section may only be rebuilt in conformance with applicable, then current zoning district provisions.

5.8-5. Previously issued permits.

5.8-5.1. Any structure for which a permit has been lawfully issued prior to the effective date of this Aurora Zoning Ordinance or of amendments hereto, may be completed in accordance with the approved plans for which said permit was issued provided construction is started within six (6) months after the date of the permit issuance and diligently pursued to completion within two (2) years from such date. Such structure shall thereafter be deemed a legal nonconforming structure, if it is then subject to one (1) or more of the following circumstances described in the Applicability subsection of the Nonconformity Section.

5.8-6. Discontinuance of legal nonconforming status for zoning lots, structures, or uses.

5.8-6.1. Any legal nonconforming zoning lot, structure, or use that has been brought into conformance with the zoning district provisions then currently applicable to the zoning lot, shall not thereafter be classified as legal nonconforming. Said legal nonconforming status shall also be terminated in the following circumstances, and such properties shall thereafter fully comply with the zoning district provisions then currently applicable to the zoning lot:

5.8-6.2. Legal nonconforming zoning lot.

A. When any zoning lot made up of one (1) or more parcels owned or controlled by the same individual or group of individuals and taxed as one (1) tax parcel, conforms to either the minimum lot width or area required for that zoning lot, or both, said parcels that make up the zoning lot shall not qualify separately as legal nonconforming zoning lots.

B. When a structure on a legal nonconforming zoning lot is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, and either the width or area of said zoning lot is less than eighty (80) percent of the minimum width and area required, except as provided in the Reconstruction of a damaged or destroyed structure subsection provision (iii) of this Nonconformity Section.

5.8-6.3. Legal nonconforming structure.

A. When a structure is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, except as provided in Reconstruction of a damaged or destroyed structure subsection provision (ii) of this Nonconformity Section.

B. When a structure is damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, but has not met the timing requirements of the Reconstruction of a damaged or destroyed structure subsection provision (i) of this Nonconformity Section.

C. When a legal nonconforming structure in the form of a single-family detached dwelling, located within a residential zoning district, is damaged or destroyed

000437

partially or in totality, and has not met the timing requirements of the Reconstruction of a damaged or destroyed structure subsection provision (ii) of this Nonconformity Section.

- 5.8-6.4. Legal nonconforming use.
    - A. When a legal nonconforming use has been discontinued for a period of six (6) consecutive months, and said use occupied a structure originally built in such a way as to be specifically designed for a residential use, with such determination being made by the zoning administrator.
    - B. When a legal nonconforming use has been discontinued for a period of fifteen (15) consecutive months, where said use occupies a structure originally built in such a way as to be specifically designed for a nonresidential use, with such determination being made by the zoning administrator.
    - C. When a legal nonconforming use has been discontinued for a period of three (3) consecutive months, where said use does not primarily involve an on-site enclosed structure, with such determination being made by the zoning administrator.
    - D. When there is evident to the city a clear intent on the part of the property or business owner to abandon a legal nonconforming use, with such determination being made by the zoning administrator.
- 5.8-7. Evaluation of a damaged or destroyed structure.
    - 5.8-7.1. In the event that a structure is damaged or destroyed by any means, said structure shall be evaluated by the Zoning Administrator for purposes of estimating the extent of said damage or destruction. Said evaluation shall estimate the replacement value of said structure and compare it to the estimated value of the structure just prior to its damage or destruction. The Zoning Administrator shall set forth in written form the percentage of damage within the evaluation, which shall be made available to the owner of said structure or representative thereof. Said evaluation may be appealed by the owner of said structure to the Zoning Board of Appeals as set forth in the Administration Section for appeals.
- 5.8-8. Unauthorized zoning lot, structure, or use.
    - 5.8-8.1. Any zoning lot, structure, or use not authorized by the provisions of this Aurora Zoning Ordinance and which does not qualify as legal nonconforming pursuant to the Continuance of a nonconforming zoning lot, structure, or use subsection of this Nonconformity Section, shall be discontinued and not reestablished.
- 5.8-9. Mitigation Certificate.
    - 5.8-9.1. A property owner may obtain conforming status for their property through the issuance of a Mitigation Certificate pursuant to the following:
    - 5.8-9.2. Qualifications. A property shall be eligible for a Mitigation Certificate if all of the following conditions are met or exist:
        - A. The zoning lot is zoned R-5.
        - B. The zoning lot is legal nonconforming.

    C. The owner/manager of said zoning lot has maintained a Waiver of License as defined by the Aurora Property Maintenance Code for a minimum period of four (4) consecutive years just prior to the application for a Mitigation Certificate, and said owner/manager agrees to maintain said waiver as a condition of the granting of a Mitigation Certificate.

    D. The owner/manager of said zoning lot has maintained a level of Police Incidents (as defined by the Rules and Definitions Section of this Aurora Zoning Ordinance) for the subject property no higher than an amount which is ten (10) percent of the number of units, for a minimum period of four (4) consecutive years just prior to the application for a Mitigation Certificate, and said owner/manager agrees to maintain said level as a condition of the granting of a Mitigation Certificate.

    E. The owner of said zoning lot has entered into an Enforcement Agreement with the City of Aurora for the subject property in lieu of a Property Management Agreement as defined within the R-5 Multiple Family Dwelling District Section of this Aurora Zoning Ordinance (AZO), which Enforcement Agreement states that Owner agrees to perform at then current standards with regard to inspections and police incidents under the Bulk Restrictions Section of the AZO. In the event that the performance of Owner falls below current standards for police incidents and inspection waivers as provided by the AZO, Owner agrees to enter into and to abide by a Property Management Agreement with the City for the purpose of correcting the out-of-compliance status. The Property Management Agreement may specify management standards and practices as well as the criteria by which these standards shall apply to the subject property, including qualification criteria, occupancy standards, causes for eviction, property maintenance and police activity, all as provided under the R-5 Multiple Family Dwelling District Section.

  5.8-9.3. Certificate Issuance. A property owner shall apply to the Zoning Administrator for a Mitigation Certificate, providing evidence indicating compliance with the Qualifications subsection of this Mitigation Certificate Section hereof, along with an accurate survey and legal description of the subject property. The Zoning Administrator shall determine if the subject property is eligible for a Mitigation Certificate, and shall issue it with all supportive documentation attached thereto. Said certificate shall be executed by the Zoning Administrator and subject property owner, and shall be recorded on the subject property by the Zoning Administrator.

  5.8-9.4. Zoning Violation. All executed and recorded Mitigation Certificates shall be binding on the subject property owner, and said owner is required to abide by all conditions under which said certificate was issued. In the event that the Zoning Administrator determines that any provision of said certificate, or the subject properties eligibility, is no longer being complied with, said property owner shall be subject to enforcement thereof pursuant to the Penalties Section of this Aurora Zoning Ordinance.

**5.9. Obstructions**

  5.7-2. Permitted obstructions for E, R1, R2 and R3 single-family residential districts are identified in <u>Table Four: Permitted Structures and Obstructions.</u>

  5.9-1. Permitted obstructions in districts other than E, R1, R2 and R3.

C00439

5.9-1.1. The following shall not be considered to be obstructions when located in the required yards specified:

A. In all yards.
   i. Open terraces not over four (4) feet above the average level of the adjoining ground but not including a permanently roofed-over terrace or porch;
   ii. Awnings and canopies;
   iii. Steps, four (4) feet or less above grade, which are necessary for access to a permitted building, or for access to a zoning lot from a street or alley;
   iv. Chimneys projecting twenty-four (24) inches or less into the yard;
   v. Recreational and laundry-drying equipment;
   vi. Arbors and trellises;
   vii. Flag poles.

B. In front yards.
   i. One-story bay windows projecting three (3) feet or less into the yard;
   ii. Overhanging eaves and gutters projecting three (3) feet or less into the yard;
   iii. Fences and walls, with the following exception:
      a. When located in O, B1, B2, B3, M1 and M2 zoning districts fences and walls are not permitted between the lot line bordering any public right-of-way, and the required setback line.

C. In rear yards.
   i. Enclosed, attached, or detached off-street parking spaces
   ii. Open off-street parking spaces
   iii. Accessory sheds, tool rooms, and similar buildings or structures for domestic or agricultural storage
   iv. Balconies
   v. Breezeways and open porches
   vi. One-story bay windows projecting three (3) feet or less into the yard;
   vii. Overhanging eaves and gutters projecting three (3) feet or less into the yard;
   viii. Fences and walls.

D. In side yards.
   i. Overhanging eaves and gutters projecting into the yard for a distance not exceeding ten (10) percent of the required yard width but in no case, exceeding eighteen (18) inches;
   ii. Fences and walls.

5.9-2. Use of exterior yards.

5.9-2.1. In the O, BI, B2, B3, M1 and M2 districts there shall be no structure of any kind (except for lights and permitted signs), open storage of materials or equipment, or the parking of vehicles in the area between the lot line bordering any public right-of-way, and the required setback line. Lights for the purpose of illuminating parking

000440

areas are not permitted in such exterior yards. Such yards shall contain no paving except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other drives or auto maneuvering areas are permitted in the exterior yards.

5.9-2.2. Screening of storage areas. Storage areas shall be screened according to the provisions of the Landscaping Section in the Bulk Restrictions.

**5.10. Performance Standards**

5.10-1. All outdoor lighting fixtures shall be designed, shielded, aimed, located and maintained to shield adjacent properties and not to produce glare onto adjacent properties or roadways.

**5.11. Setbacks**

5.11-1. Setbacks for all buildings, structures and uses of land shall be set forth under each zoning district.

5.11-2. Front yard, side yard and building line setbacks on existing or anticipated four-lane highways or streets.

5.11-2.1. Provisions as to front or side yards abutting upon existing four-lane or anticipated four-lane highways or streets, and front setback lines on such property, shall, notwithstanding other provisions in this ordinance, be changed by a two-thirds vote of all the members voting of the city council to provide for a future eighty (80) feet to one hundred (100) feet right-of-way.

**5.12. Signs**

5.12-1. Sign regulations.

5.12-1.1. All sign regulations shall be subject to the City of Aurora sign ordinance, except that all signage erected in the BB district shall be governed by the applicable provisions of the BB Business-Boulevard District, and in addition thereto, the following regulation shall apply:

**5.13. Off-Street Parking And Loading**

5.13-1. Intent and Purpose.

5.13-1.1. The intent and purpose of this section of the zoning ordinance is to alleviate or prevent congestion of the public streets, and so promote the safety and welfare of the public, by establishing minimum requirements for the off-street parking and loading and unloading of motor vehicles in accordance with the use to which property is put.

5.13-2. General provisions.

5.13-2.1. Procedure. An application to be filed by the owner, lessee or designated agent thereof for a building permit for a new or enlarged building, structure, or use, shall include therewith a plot plan, drawn to scale, and fully dimensioned showing any parking or loading facilities to be provided in compliance with the requirements of this ordinance.

5.13-2.2. Extent of control. The off-street parking, driveway and loading requirements of this ordinance shall apply as follows:

CC0441