(0) for a maximum of fifty (50) percent of the depth of the lot measured from the front setback line to the rear setback line when the structure meets the following conditions:

- The sidewall of the structure is completely masonry or concrete construction;

- The sidewall of the structure is free of all windows, doors, openings, vents, appurtenances and signs;

- The roof of the structure within twenty-five (25) feet of the side property line is free of all appurtenances, such as chimneys, vents, pipes, mechanical equipment, and other appurtenances except when screened behind a parapet wall of at least the same height of the highest appurtenance built on all outside walls of the structure located within twenty-five (25) feet of the property line; and

- The part of the structure within twenty-five (25) feet of the side property line including any parapet wall line is limited to twenty (20) feet in height.

- The side lot line between the front setback line and the rear property line shall be screened and properly maintained with dense planting of shrubs and trees or by a decorative five-foot-high masonry wall, except in the instance where a building is built on the side property line. This planting and screening area shall have a maturity height of not less than five (5) feet.

   c. Side yard on corner lots: Exterior side setback shall be twenty (20) feet. The exterior side setback area shall be landscaped and properly maintained. There shall be no structure of any kind, open storage of materials or equipment, or the parking of vehicles in the exterior side yard. Lights for the purpose of illuminating parking areas are not permitted in such exterior side yards. Such yards shall contain no paving except for accessways perpendicular to the street or sidewalks across the lot. Unless an additional lane for egress is approved by the city, accessways shall not exceed twenty-five (25) feet in width per approved access point, with an ingress and egress radius of thirty-five (35) feet to the street curbline. Additional width will be allowed for a center landscaped median of six (6) feet minimum.

  iii. Rear yard:

    a. Rear yard adjacent to an office, business or manufacturing district:

- There shall be a minimum rear yard requirement of twenty (20) feet.

    b. Rear yards adjacent to a residential or farming district:

- The rear yard for any part of a lot adjacent to property zoned residential or farming shall be twenty-five (25) feet except in the case wherein the adjoining property has frontage on the major street and is zoned farming or residential under the jurisdiction of the county in which case the rear yard shall be twenty (20) feet.

- The rear yard shall be planted so as to beautify and screen activities of the site. Such plantings shall be properly maintained.

- Screening at the rear property line may not be required when both the lot facing the major street and the lot adjacent to its rear lot line are designed and developed as a single planned unit and such plan is approved by the planning commission.

C. Building, Dwelling and Structure Standards

  i. Distance between buildings; standards for buildings in business areas: Where more than one (1) nonresidential building is placed in a business area, the minimum distance between buildings shall be as follows:

140

CC0510

ii. The distance between a nonresidential building having a height above forty (40) feet but not over fifty (50) feet and any other nonresidential building shall be at least forty (40) feet.

iii. The distance between a nonresidential building having a height above thirty (30) feet but not over forty (40) feet and any other nonresidential building shall be at least thirty (30) feet.

iv. The distance between a nonresidential building having a height above twenty (20) feet but not over thirty (30) feet and any other nonresidential building shall be at least twenty-five (25) feet.

v. The distance between a nonresidential building having a height up to twenty (20) feet and any other nonresidential building shall be at least twenty (20) feet.

vi. The planning commission may recommend and the city council may approve a site plan for business development showing buildings closer together than set out as above in accordance with the Administration Section.

D. Signs (Business area)

i. The following regulations and standards are applicable to all signage in business areas (Note: Additional general regulations and standards that are applicable to business areas are set forth in the Bulk Restrictions Subsection of the B-B Business-Boulevard District, General sign regulations):

ii. Freestanding signs:

a. No more than one (1) freestanding sign not exceeding areas set out below shall be permitted on each lot:

| MAJOR STREET FRONTAGE | SQUARE FEET |
|---|---|
| Up To 100 Feet | 30 |
| 100 Feet - 500 Feet | 40 |
| Over 500 Feet | 50 |

b. Freestanding signs may be erected in the front yard but their maximum height shall be related to the distance from the front property line as set out below:

| DISTANCE FROM THE FRONT PROPERTY LINE OF THE CLOSEST EDGE OF THE SIGN (FEET) | MAXIMUM HEIGHT OF SIGN FROM EXISTING CURB LEVEL (FEET) |
|---|---|
| 0-15 | 6 |
| 15-20 | 8 |
| 25-25 | 10 |
| 25-30 | 12 |
| 30-35 | 14 |
| 35 and behind the front yard | 16 |

iii.    Wall signs:

141

000511

a. A wall sign may be placed on any face of a building oriented to either the major street or the main parking lot of the parcel except as indicated below:

- Wall signs shall not be oriented to a rear lot line except where building on the side intervenes.

- Wall signs shall not be oriented to a side lot line except where building on the site intervenes and the wall sign is primarily oriented to a major street or a main parking area on the site.

b. A wall sign may not project above the roof line or beyond the building on which it is mounted.

c. The height limit for any wall sign shall be twenty (20) feet.

d. Wall signs shall be mounted flat against the surface of the building and shall not project more than twelve (12) inches therefrom.

e. A wall sign may be a bar wall sign or a nonbar wall sign.

f. Each building shall be limited to either one (1) nonbar wall sign or to one (1) bar wall sign limited to a square footage as set out in paragraphs (7) and (8) below.

g. Bar wall sign standards:

- Bar wall signs shall be limited to a square footage equal to the total length of the wall of the building (buildings) on which wall signs are permitted.

- Bar wall signs shall be limited to a vertical dimension of two (2) feet.

h. Nonbar wall sign standards:

- Nonbar wall signs shall be limited to an area equal to five (5) percent of the area of the wall on which it is placed except that the vertical dimension used in computing the area of the wall shall not exceed thirty (30) feet.

- Nonbar wall signs are limited to a maximum of one (1) per zoning lot.

E. Parking and Loading (Business Area)

i. Parking facilities shall be provided on the same lot where the uses permitted in this ordinance are developed in accordance with the following standards:

ii. For mixed uses--The parking facilities required shall be the sum of the requirements for the various individual uses, computed separately in accordance with this section; parking facilities for one (1) use shall not be considered as providing the required parking facilities for any other use in the same building or on the same lot.

iii. For hotels and motels--One and five-hundredths (1.05) parking spaces for each guestroom.

iv. For private clubs or lodges (without sleeping rooms)--One (1) parking space for each three hundred (300) square feet of floor area.

v. For private clubs or lodges with sleeping room area--One (1) parking space for each three (3) guest accommodations.

vi. For dormitories--One (1) space for each two (2) living accommodations.

vii. For hospitals--One (1) parking space for each two (2) hospital beds, plus one (1) space for each staff and/or visiting doctor.

000512

    viii. For sanitariums, convalescent homes, nursing homes or homes for the aged--One (1) space for each four (4) patient beds, plus one (1) space for staff and/or visiting doctor.

    ix. For medical or dental clinics--Six (6) parking spaces per doctor engaged at clinic.

    x. For mortuaries or funeral parlors--Ten (10) parking spaces for each room used as a chapel or parlor.

    xi. For bowling alleys--Four (4) parking spaces for each alley.

    xii. For convention halls, dance halls, skating rinks, assembly halls, exhibition halls or other places of assembly--One (1) parking space for each seventy-five (75) square feet of floor area used for assembly.

    xiii. Stadium, sports arena, auditorium and gymnasium (other than incidental to a school)--One (1) parking space for each four (4) seats.

    xiv. For theatres:

        a. Indoor--One (1) parking space for each five (5) seats.

        b. Outdoor--Employee parking equal to ten (10) percent of the capacity.

    xv. For bus terminals, railroad passenger stations or other passenger terminal facilities (special uses)--Such parking space as the city council, subject to the recommendations of the zoning board of appeals, shall deem to be adequate for employees, passengers, spectators, visitors and others.

    xvi. For banks, business or professional offices or public administration buildings--One (1) parking space for each three hundred (300) square feet of floor area.

    xvii. For establishments handling the sale and consumption on the premises of alcoholic beverages, food or refreshment--One (1) parking space for each one hundred (100) square feet of floor area.

    xviii. For retail stores and service shops (individual or in groups)--One (1) parking space for each two hundred (200) square feet of floor area.

    xix. For furniture and appliance stores, motor vehicle sales, wholesale stores, household equipment or furniture repair shops, or machinery sales (individual stores or groups of stores in one building)--One (1) parking space for each four hundred (400) square feet of floor area.

    xx. For manufacturing and industrial uses, research and testing laboratories, laundry and dry-cleaning plants, printing, binding, publishing and issuing of newspapers, periodicals, books and other reading matter, telephone exchanges, warehouses and storage buildings, engraving shops, assembly of materials and products, and other similar uses--One (1) parking space for each three (3) employees, based upon the maximum number of persons to be employed at any one work period during the day or night, plus such additional parking facilities as shall be required for all vehicles used in the conduct of enterprise.

F. Business area off-street loading: Off-street loading and unloading facilities shall be provided and constructed in accordance with the Bulk Restrictions Section of the Aurora Zoning Ordinance.

8.6-5.3. Standards for residential development.

A. Standards for single-family conventional development:

CC0513

i. Standards for single-family development shall be in accordance with the R-3 One-Family Dwelling District and those provisions of the subdivision control ordinance regulating single-family residential development.

B. Standards for multiple-family development:

i. Height and density standards for multiple-family development: Multiple-family residential units shall not be permitted except as set out below. Height and density standards for Categories I, II and III shall be as follows:

a. Category I: For the first two hundred (200) feet distance from the major street, buildings of fifty (50) feet maximum may be erected and a maximum of eight (8) dwelling units per acre shall be permitted.

b. Category II: For the area between two hundred (200) feet and four hundred (400) feet distance from the major street, buildings of thirty (30) feet maximum may be erected and a maximum of six and one-half (6 1/2) dwelling units per acre shall be permitted.

c. Category III: For the area between four hundred (400) feet and greater distance from the major street, buildings of twenty (20) feet maximum may be erected and a maximum of five and one-half (5 1/2) dwelling units per acre shall be permitted.

d. Off-street parking, required by the total number of dwelling units within each category shall be located completely within the confines of the same said category.

e. There shall be a minimum category yard requirement of fifteen (15) feet on each side of the category line.

f. The planning commission may recommend and the city council may approve a planned unit development site plan for residential development without regard to the standards and categories in this subsection in accordance with the Residential Planned Unit Development Subsection of the B-B Business-Boulevard District.

C. Setbacks (Multiple-Family Development)

i. Front yard: There shall be a front yard having a depth of not less than thirty-five (35) feet.

ii. Interior side yard: There shall be a minimum interior side yard requirement of twenty-five (25) feet.

iii. Rear yard: There shall be a minimum rear yard requirement of thirty-five (35) feet.

iv. Corner: A minimum of thirty-five (35) feet corner side yard shall be provided along the side street of a corner lot.

v. The planning commission may recommend and the city council may approve a site plan for multiple-residential development in accordance with the Residential Planned Unit Development Subsection of the B-B Business-Boulevard District having lesser yard requirements.

D. Building, Dwelling And Structure Standards (Multiple-Family Development)

i. Where more than one (1) building containing dwelling units is placed in a residential area, the minimum distance between buildings shall be as follows:

000514

    ii. The distance between a residential building having a height above forty (40) feet but not over fifty (50) feet and any other residential building shall be at least seventy-five (75) feet.

    iii. The distance between a residential building having a height above thirty (30) feet but not over forty (40) feet and any other residential building shall be at least sixty (60) feet.

    iv. The distance between a residential building having a height above twenty (20) feet but not over thirty (30) feet and any other residential building shall be at least forty-five (45) feet.

    v. The distance between a residential building having a height up to twenty (20) feet and any other residential building shall be at least thirty (30) feet.

    vi. The planning commission may recommend and the city council may approve a site plan for residential development showing buildings closer together than set out above in accordance with the Residential Planned Unit Development Subsection of the B-B Business-Boulevard District.

E. Standards for green space areas in multiple-family development:

    i. A minimum green space area shall be required as part of each multiple-family unit development. Said minimum green space area shall be provided as set out below:

| CATEGORY | PERCENT OF AREA IN GREEN SPACE USE |
|:---:|:---:|
| I | 30 |
| II | 40 |
| III | 50 |

    ii. Green space areas are defined as being lands devoted one hundred (100) percent to living ornamental plants and other uses set out below:

        a. Green space uses shall consist of planted areas, formal gardens, trees and woods, lawns, parks, ponds (except required retention and detention unless specifically accepted as open space by the city council), natural areas and outdoor recreational activity areas of noncommercial nature or noncommercial recreation buildings associated with group housing development.

    iii. All open spaces in the project area, except walks, driveways and parking spaces shall be planted and shall be maintained at all times.

    iv. The planning commission may recommend and the city council may approve a site plan for residential development showing different arrangements of green space percentages than set out above in accordance with the Residential Planned Unit Development Subsection of the B-B Business-Boulevard District.

F. Signs (Residential Development)

    i. The following regulations and standards are applicable to all signage in residential areas (Note: Additional general regulations and standards that are applicable to residential areas are set out in the Bulk Restrictions Subsection of the B-B Business-Boulevard District).

        a. Signs shall be permitted and limited as set out below:

CC9515

- Only freestanding signs and traffic directional signs shall be permitted in a residential development.

- No more than one freestanding sign stating only the name of the residential development, its address and a telephone number and a statement relating to rental or sales of the dwelling units on the site expressed in letters no taller than five (5) inches.

- The maximum area of a freestanding sign shall be related to the frontage on the major street of the parcel on which the housing it advertises is located and shall be limited in accordance with the following chart:

| MAJOR STREET FRONTAGE | SQUARE FEET |
|---|---|
| Up To 100 Feet | 15 |
| 100 Feet - 500 Feet | 20 |
| Over 500 Feet | 25 |

b. Signs in accordance with area requirements and restrictions set out in above, may be erected in the front yard but their height shall be related to the distance from the front property line as set out below:

| DISTANCE FROM THE FRONT PROPERTY LINE TO THE CLOSEST EDGE OF THE SIGN (FEET) | MAXIMUM HEIGHT OF THE SIGN FROM EXISTING CURB LEVEL (FEET) |
|---|---|
| 0-15 | 6 |
| 15-20 | 8 |
| 20-25 | 10 |
| 25-30 | 12 |
| 30-35 | 14 |
| 35 and behind the front yard | 16 |

G. Parking And Loading (Dwelling Units)

i. Parking facilities shall be provided on the same zoning lot where the uses permitted in this ordinance are developed in close proximity to the dwelling units the parking spaces serve in accordance with the following standards:

ii. In a residential development containing two (2) or more dwelling units off-street parking shall be provided in the amount of two (2) car spaces for each dwelling unit.

iii. In a residential development:

a. No required open off-street parking space shall be permitted nearer than twenty-five (25) feet to any residential building.

b. All parking spaces shall be separated from the rear lot line by a buffer strip not less than six (6) feet in width. This buffer strip shall be screened and properly maintained with dense planting of shrubs and trees of not less than five (5) feet in height.

146

CC9516

c. No parking may be permitted in a required front yard, a side yard or category yard.

H. Building, Dwelling and Structure Standards

i. Exterior construction standards for multiple-family construction. All Use Group R-2 structures, except for multiple-single family dwelling units, as defined in the Aurora Building Code, shall have exterior walls of brick, decorative precast or a decorative masonry surface.

8.6-5.4. Standards for combined commercial and multiple-family development.

A. Commercial and residential land uses may not be developed on a single zoning lot except under the following conditions:

i. In the event that residential and commercial land uses are developed on a single zoning lot a land use division line shall be established. The location of the land use division line shall be determined by the location of the commercial structure or parking place or facility that serves said commercial structure that is most distant from the major street. The land use division line shall be at least twenty-five (25) feet farther from the major street than said commercial structure or parking place or facility that serves said commercial structure.

ii. No commercial development shall be permitted farther from the major street than the land use division line and no residential development shall be permitted closer to the major street than the land use division line.

iii. No parcel may be used or created for commercial development if it is placed so that any residential development exists directly between it and the major street.

iv. No parcel may be used or created for residential development if it is situated so that commercial development exists farther from the major street.

v. No structure may be built within twenty-five (25) feet of the land use division line.

vi. The planning commission may recommend and the city council may approve a site plan in accordance with the Residential Planned Unit Development Section of the B-B Business-Boulevard District that mixes business and multiple-family land uses.

8.6-5.5. Residential Planned Unit Development

A. Findings: the Planning Commission may recommend and the City Council may approve any residential planned unit development in the B-B District in accordance with the Use Regulations Subsection is the residential density conforms with the following density standards and the planning commission and the city council find the following:

i. The planned unit site plan exhibits unusual excellence in design that will result in near ideal environmental qualities.

ii. The proposed planned unit development is in accordance with the physical development policies of the city council.

iii. The planned unit design exhibits more efficient, creative and imaginative use of the site than could be expected to be accomplished with conventional standards.

iv. The variances from the regular standards in the ordinance will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

v. The planned unit design will make the site more compatible with surrounding properties.

147

000517

    vi. The planned unit design incorporates into the development generous open spaces and recreational and aesthetic amenities.

    vii. The planned unit design preserves worthwhile existing natural site qualities and features.

    viii. The planned unit design maximizes pedestrian and vehicular circulation ease.

    ix. The planned unit design maximizes safety on and near the site.

B. Procedures: Procedure for approval of a residential planned unit development shall follow the procedures and requirements for approval of planned development set forth in the zoning ordinance, and applicable ordinances and resolutions of the City of Aurora.

C. Density standards: The net lot area required for dwelling units shall be provided in accordance with the following table:

| UNITS | NET SQ. FT. PER PARCEL | ACRES | UNITS | NET SQ. FT. PER PARCEL | ACRES | UNITS | NET SQ. FT. PER PARCEL | ACRES |
|---|---|---|---|---|---|---|---|---|
| 1 | 8,000 | | 24 | 130,680 | | 47 | 248,450 | |
| 2 | 15,500 | | 25 | 136,125 | | 48 | 252,647 | |
| 3 | 23,000 | | 26 | 141,570 | | 49 | 256,799 | |
| 4 | 29,983 | | 27 | 147,015 | | 50 | 260,905 | |
| 5 | 36,624 | | 28 | 152,460 | | 51 | 264,966 | |
| 6 | 42,924 | | 29 | 157,905 | | 52 | 268,981 | |
| 7 | 48,881 | | 30 | 163,350 | | 53 | 272,952 | |
| 8 | 54,497 | | 31 | 168,795 | | 54 | 276,876 | |
| 9 | 59,771 | | 32 | 174,420 | | 55 | 280,756 | |
| 10 | 64,073 | | 33 | 179,685 | | 56 | 284,590 | |
| 11 | 69,294 | | 34 | 185,130 | | 57 | 288,378 | |
| 12 | 73,543 | | 35 | 190,525 | | 58 | 292,122 | |
| 13 | 77,450 | | 36 | 196,020 | | 59 | 295,820 | |
| 14 | 81,015 | | 37 | 201,465 | | 60 | 299,472 | |
| 15 | 84,328 | | 38 | 206,910 | | 61 | 303,079 | |
| 16 | 87,120 | 2 acres | 39 | 212,355 | | 62 | 306,640 | |
| 17 | 92,565 | | 40 | 217,800 | 5 acres | 63 | 310,157 | |
| 18 | 98,010 | | 41 | 222,318 | | 64 | 310,628 | |
| 19 | 103,455 | | 42 | 266,784 | | 65 | 317,009 | |
| 20 | 108,900 | | 43 | 231,028 | | 66 | 320,434 | |
| 21 | 114,345 | | 44 | 235,586 | | 67 | 323,769 | |
| 22 | 199,790 | | 45 | 239,920 | | 68 | 327,058 | |
| 23 | 125,235 | | 46 | 244,421 | | 69 | 330,302 | |

CO3518

| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|-------|------------------------|-------|
| 70 | 333,501 | |
| 71 | 336,632 | |
| 72 | 339,762 | |
| 73 | 342,825 | |
| 74 | 345,841 | |
| 75 | 348,814 | |
| 76 | 351,740 | |
| 77 | 354,621 | |
| 78 | 357,457 | |
| 79 | 360,247 | |
| 80 | 362,992 | |
| 81 | 365,692 | |
| 82 | 368,346 | |
| 83 | 370,954 | |
| 84 | 373,518 | |
| 85 | 376,036 | |
| 86 | 378,508 | |
| 87 | 380,936 | |
| 88 | 383,317 | |
| 89 | 385,654 | |
| 90 | 387,945 | |
| 91 | 390,191 | |
| 92 | 392,391 | |
| 93 | 394,546 | |
| 94 | 396,656 | |
| 95 | 398,718 | |
| 96 | 400,739 | |
| 97 | 402,712 | |
| 98 | 404,640 | |
| 99 | 406,523 | |
| 100 | 408,360 | |
| 101 | 410,152 | |

| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|-------|------------------------|-------|
| 102 | 411,898 | |
| 103 | 413,600 | |
| 104 | 415,255 | |
| 105 | 416,866 | |
| 106 | 418,430 | |
| 107 | 419,950 | |
| 108 | 421,425 | |
| 109 | 422,854 | |
| 110 | 424,237 | |
| 111 | 425,575 | |
| 112 | 426,868 | |
| 113 | 428,115 | |
| 114 | 429,317 | |
| 115 | 420,474 | |
| 116 | 431,585 | |
| 117 | 432,650 | |
| 118 | 422,671 | |
| 119 | 434,646 | |
| 120 | 435,600 | 10 acres |
| 121 | 440,602 | |
| 122 | 445,627 | |
| 123 | 450,676 | |
| 124 | 455,746 | |
| 125 | 460,839 | |
| 126 | 465,955 | |
| 127 | 471,094 | |
| 128 | 476,255 | |
| 129 | 481,440 | |
| 130 | 486,646 | |
| 131 | 491,876 | |
| 132 | 497,128 | |
| 133 | 502,402 | |

| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|-------|------------------------|-------|
| 134 | 502,700 | |
| 135 | 513,020 | |
| 136 | 518,363 | |
| 137 | 523,729 | |
| 138 | 529,116 | |
| 139 | 534,529 | |
| 140 | 539,962 | |
| 141 | 545,418 | |
| 142 | 550,897 | |
| 143 | 556,399 | |
| 144 | 561,923 | |
| 145 | 567,470 | |
| 146 | 570,040 | |
| 147 | 578,631 | |
| 148 | 584,246 | |
| 149 | 589,883 | |
| 150 | 595,545 | |
| 151 | 601,228 | |
| 152 | 606,933 | |
| 153 | 612,662 | |
| 154 | 618,413 | |
| 155 | 624,186 | |
| 156 | 629,984 | |
| 157 | 635,803 | |
| 158 | 641,646 | |
| 159 | 647,512 | |
| 160 | 653,400 | 15 acres |

For each dwelling unit over 160 on a parcel an additional 5,445 square feet shall be required.

149

CC0519

**8.7. DC Downtown core district.**

8.7-1. Title

8.7-1.1. The Downtown Core District shall be designated as "DC" on the City of Aurora Zoning Map.

8.7-2. Intent and Purpose

8.7-2.1. Purpose. The downtown core district, bounded as described herein, is meant to preserve, enhance and promote the pedestrian character of the city's central business district. The downtown core is the center of government, culture, transportation, finance, specialized retail, and professional offices.

The downtown core offers an accessible market and diverse spaces necessary for small scale, independent businesses. It permits office, retail and service uses as well as light industry, and has the support services necessary for these firms.

The downtown core is uniquely suited to entertainment and recreation. It encompasses numerous historic buildings. Pedestrian access to the Fox River, and the appropriate building facades, street furniture, signage and landscaping are encouraged.

The downtown core encourages both daytime and nighttime activities by permitting a mixture of uses. It permits retail and service sidewalk activities in order to attract pedestrians. It also promotes pedestrian safety, convenience and comfort by regulating ground floor land uses, certain heavy auto traffic uses, and additional parking. Nuisances are prevented through standards for downtown light industries and prohibition of inappropriate land uses.

8.7-3. District Specific Regulations

8.7-3.1. Rules

A. All activities shall be conducted wholly within an enclosed building with the exception of the following:

i. Sidewalk activities.

B. Density and intensity. There shall be no restrictions or regulations regarding a minimum lot area, minimum lot width, maximum ground coverage, minimum ground floor area per building, maximum floor area ratio, or maximum height (except as provided by the building code). Dwelling standards are provided by the applicable codes and ordinances of the city.

C. Existing buildings. As provided by this the DC Downtown Core District and the Bulk Restrictions Section hereof, where applicable.

D. Certain storage prohibited. Outside storage of vehicles, equipment or materials is prohibited.

E. Large scale developments: Downtown.

i. Requirements.

000520

a. Definition and size limitation: A development or redevelopment having gross leasable area of thirty thousand (30,000) square feet or greater, which is developed as a unit under unified or coordinated control of its planning and development.

b. Permitted uses: Those uses permitted in the downtown core.

c. Landscaping. As specified in applicable ordinance; specifications may be increased in accordance with the DC Downtown Core District hereof.

ii. Standards. The planning commission may recommend that the application for a large-scale development be approved if the commission finds that such development is in substantial conformance to the standards below. The commission may recommend that the application for such development be denied if any of the following standards are not met.

a. The development is in accordance with the comprehensive plan and the physical development policies of the city.

b. The proposed development will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

c. The proposed development maximizes pedestrian and vehicular circulation ease and safety.

d. The proposed development will be compatible with surrounding properties and help to maintain and advance property values. The development's physical design shall take into consideration the scale, exterior materials, and rhythm of the historic buildings on the block. (The purpose of this section is not to require that buildings should recreate an earlier style, but rather that they be compatible with the existing character of the block.)

e. Such developments abutting the Fox River or parkland along the river, shall provide pedestrian and visual access to the river.

f. When a development has potential visual access to the river, the building design shall incorporate views of the river.

iii. Procedure: The application procedure for a large-scale development, as provided by the Administration Section hereof except that the provisions of the DC Downtown Core District shall supersede the Administration Section for purposes of the downtown core.

F. Boundaries. The downtown core shall be the area bounded by the following: That portion of Middle Avenue from West New York Street to West Benton Street; that portion of Benton Street from Middle Avenue to the Burlington Northern Main Line; that portion of the Burlington Northern Main Line from East Benton Street to East New York Street; that portion of both sides of East New York Street from the Burlington Northern Main Line to North River Street (including the Old Fire Station Complex parcels at the northeasterly corner of North Broadway and East New York Streets and the three (3) most southerly parcels commencing at the northwesterly corner of said streets); that portion of North River Street from Pinney Street (bordering the property adjoining the north side of New York Street thereat) to West New York Street; and that portion of West New York Street from North River Street to Middle Avenue, and all of Stolp Island.

C03521

G. Uses to Preclude Nuisance. Uses visible to the public through first floor windows shall not display storage areas. The above uses shall be conducted so as to preclude any nuisance, hazard or offensive conditions including creation or emission of dust, gas, smoke, noise, fumes, odors, vibrations, particulate matter, chemical compounds, electrical disturbances, humidity, heat, cold, glare or night illumination. The uses must be compatible with the downtown core uses, including dwelling units and retail. Prior to the issuance of a building or occupancy permit, or at any other time, the building official may require evidence that adequate controls, measures, or devices have been provided to ensure and protect the public interest, health, comfort, convenience, safety and general welfare from such nuisance, hazard or offensive condition.

### 8.7-3.2. Definitions

### 8.7-4. Use Regulations

8.7-4.1. Permitted uses. The Permitted Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

8.7-4.2. Special Uses. The Special Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

8.7-4.3. Accessory Uses. The Use Regulations Section of the Aurora Zoning Ordinance shall apply in addition to the following District specific provisions:

A. Sidewalk activities.

    i. Sidewalk activities may include the following: The use of tables, boxes, bins, racks, showcases, platforms or any other arrangement or structure for the display or sale of food, goods, wares or merchandise; push or vending carts, flower/art/craft and other exhibits; restaurant tables; shoe-shine stands; street musicians; other pedestrian services.

    ii. The following conditions shall be placed on these permitted uses:

        a. Normal public movement in the public right-of-way shall not be impeded by any sidewalk activity, nor shall any display obstruct the vision of pedestrians or motorists near any intersection. Such uses shall be set back at least five (5) feet from the curb, or from any street tree or furniture.

        b. Any merchandise shall be firmly secured so that it cannot be accidentally jarred loose or blown away.

    iii. Operators of such activities shall be responsible for keeping the applicable public right-of-way free from any litter generated as a result of such activity.

    iv. Sponsors of such activities shall be responsible for all liabilities resulting from the operation of said activities and shall hold the city harmless for any and all such liabilities.

    v. No such activity that is determined by the city to be detrimental to the public health, safety and welfare shall be permitted.

    vi. Permits are not required for such activities conducted by businesses directly in front of their establishments. Any applicant shall apply for a permit to operate such activity on the public sidewalk not in front of a business. The city may grant a permit for sidewalk activities in front of a business, if that business gives its written permission.

Permits for sidewalk activities shall specify the permitted location, duration and type of use. Permits for food sales uses shall also specify the required health protection rules. All food shall be covered.

vii. Procedure. Permits for sidewalk activities shall be issued by the director of finance. Fees for such permits shall be as set from time to time by the city council.

### 8.7-4.4. Limited but Permitted Uses

A. Residential (above the first floor). Dwelling units shall be permitted in the downtown core when such units each contain a separate bathroom, a separate bedroom with a door that closes, and a full service, ventilated kitchen. Inspection and licensing of all downtown core dwelling units shall be in accordance with appropriate city codes. Dwelling units shall not be mixed with other uses on a single floor unless separated from such other uses by a continuous wall. The planning and development committee of the Aurora city council may grant an exception to the above provision prohibiting dwelling units on the first floor:

i. For a new building constructed adjacent to the Fox River; and

ii. If the residential uses are separated entirely from street frontage by a permitted use, excluding accessways; and

iii. If the first floor dwelling units have visual access to the river.

## 8.7-5. Bulk Restrictions

### 8.7-5.1. Building, Dwelling and Structure Standards

### 8.7-5.2. Floor Area Ratio

### 8.7-5.3. Height

### 8.7-5.4. Landscaping.

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

### 8.7-5.5. Lot Size

### 8.7-5.6. Lot Coverage

### 8.7-5.7. Monotony Standards

### 8.7-5.8. Nonconformity

### 8.7-5.9. Obstructions

### 8.7-5.10. Parking and Loading

A. Off-street parking shall be in accordance with the Bulk Restrictions except that surface parking constructed after the effective date of this the DC Downtown Core District shall be allowed only in the rear yard of a zoning lot. Parking constructed after the effective date of this the DC Downtown Core District in a front or side yard or as the sole use of a property, shall be permitted only by special use permit, pursuant to sections 13.5 and the Administration Section hereof.

### 8.7-5.11. Performance Standards

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

000523

8.7-5.12. Setbacks. No exterior or interior yard setbacks shall be required except for the following:

| ITEM | SETBACK (in feet) |
|---|---|
| PARKING LOTS | |
| Exterior Yard | 5 |
| EXTERIOR LOTS (any size) | |
| River Yard | 15 |
| BUILDINGS | |
| River Yard | 15 |
| PUBLICLY MAINTAINED RIVER WALKWAY | |
| Between Parking Lot and River | 15 |
| Between Building and River | 15 |

8.7-5.13. Signs

A. Such requirements as are specified in Article 19 of the Aurora Building Code.

## 8.8. F Downtown fringe district.

8.8-1. Title

8.8-1.1. The Downtown Fringe District shall be designated as "F" on the City of Aurora Zoning Map.

8.8-2. Intent & Purpose

8.8-2.1. Purpose. The purpose of the downtown fringe district is to promote economic development by allowing a maximum of uses to be permitted near the center of the city consistent with protection of residential uses, enhancement of the area's image and physical appearance, maintenance of circulation safety, and the assurance of compatibility with surroundings.

8.8-2.2. Intent. The downtown fringe district is intended to permit a large number of land uses, while requiring municipal review of traffic-related and large-scale uses, performance standards for industrial uses, and the maintenance of certain land use functions within enclosed buildings or otherwise totally screened from public view.

8.8-3. District Specific Regulations

8.8-3.1. Rules

A. Density and intensity. There shall be no restrictions or regulations regarding a minimum lot area, minimum lot width, maximum ground coverage, minimum ground floor area per building, maximum floor area ratio, or maximum height (except as provided by the building code). Dwelling standards are provided by the applicable codes and ordinances of the city.

B. Existing buildings. As provided by this the F Downtown Fringe District, and the Bulk Restrictions District hereof, where applicable.

000524

C. Site plan review: Downtown fringe.

    i. Applicable uses. The following uses shall be permitted in the downtown fringe only via the site plan review procedure of this the F Downtown Fringe District:

        a. Drive-in financial uses.

        b. Parking lots in the front or side yard of a property, or as the sole use of a property.

    ii. Standards. The city may approve a site plan if it is found that such plan is in substantial conformance to the standards below. The city may reject a plan if any of the following standards are not met:

        a. The development is in accordance with the comprehensive plan and the physical development policies of the city.

        b. The proposed development will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

        c. The proposed development maximizes pedestrian and vehicular circulation ease and safety.

        d. The proposed development will be compatible with surrounding properties and help to maintain and advance property values.

        e. The proposed development beautifies parking lots through the provision of landscape screens and islands.

        f. A development abutting the Fox River shall beautify their river frontage through the use of landscaping.

        g. A development abutting the Fox River or parkland along the river shall provide pedestrian and visual access to the river.

        h. When a development has potential visual access to the river, the building design shall incorporate views of the river.

    iii. Procedure.

        a. Preapplication review. An applicant for site plan review shall meet with the planning director. The planning director shall have five (5) business days in which to schedule such review. At such preapplication review, the planning director and prospective applicant shall review the following as they relate to the proposed site plan:

            • The comprehensive plan and physical development policies of the City of Aurora;

            • The existing zoning and land use in the surrounding area of the property in question;

            • The zoning and development history of the property in question;

            • Other pertinent factors.

        b. Application. After the preapplication review, the site plan shall be filed with the city clerk, with ten (10) additional copies filed with the planning director. The site plan shall include such information as required by the director of planning.

        c. Planning council. As soon as such site plan is filed, such plan shall be placed on the agenda of the Aurora Planning Council, provided the planning director shall have had at least five (5) business days to review such plan. The planning

000525

council shall review such plan and forward its technical comments to the planning commission.

d. Planning commission. The planning commission shall consider the comments of the planning council, the petitioner and the staff, and shall recommend to approve, to approve with conditions, or to deny the plan. At least ten (10) days prior to said planning commission meeting, the planning division shall notify the public of said meeting by means of a notice published in a newspaper of general circulation in the City of Aurora, and by a sign placed on the property in question of the following format:

- The word "NOTICE", in minimum three-inch high letters, shall be placed at the top;

- The name of the proposed land use, in minimum two-and-one-half-inch high letters, shall be placed under the name of the proposed land use;

- The words "PROPOSED FOR THIS SITE", in minimum two-inch high letters, shall be placed under the name of the proposed land use;

- The following phrase shall be placed at the bottom: "This proposal will be considered by the Aurora Planning Commission on Wednesday, _____, at 7:00 p.m., in the City Council Chambers, 44 E. Downer Place, Aurora. Call the planning division at 844-3624 for more information."

e. Planning and development committee. The planning and development committee shall consider the recommendation of the planning commission, and shall make its decision to approve, to approve with conditions, or to deny the plan.

f. Appeal. Appeal of the decision of the planning and development committee shall be made by filing such appeal with the city clerk within four (4) business days following the decision of the planning and development committee. Appeal is made to the city council, which shall make the final decision.

D. Boundaries. The downtown fringe shall be the area described as follows:

That part of section 22, township 38 north, range 8 east of the third principal meridian in the City of Aurora, Kane County, Illinois, described as follows: Beginning at the southeasterly corner of Lincoln Avenue and Benton Street; thence northwesterly along the southerly line of Benton Street to the southeasterly corner of Lot F of Library Subdivision; thence westerly along the southerly lines of Lots F, E, and D in said subdivision and westerly, northerly and northeasterly along the southerly and westerly lot line of Lot C in said subdivision to the northwesterly corner of said Lot C; thence northwesterly along the southerly line of Benton Street to the southwesterly corner of Lake Street and Benton Street; thence northeasterly along the westerly line of Lake Street to the northwesterly corner of Lake Street and Spruce Street; thence southeasterly along the northerly line of Spruce Street to the easterly line of River Street; thence southwesterly along the easterly line of River Street to the northeasterly corner of River Street and Pinney Street; thence southeasterly along the northerly line of Pinney Street to the westerly bank of the Fox River; thence easterly to the northwest corner of Lot 3 in Block 29 of the original Town of Aurora; thence southerly along the west lines of Lots 3 and 4 of said original Town of Aurora to the southerly line of said Lot 4; thence southeasterly along said southerly line and northerly line of Spring Street to the northeasterly corner

000526

of Spring Street and Lincoln Avenue; thence southwesterly along the easterly line of Lincoln Avenue to the point of beginning;

But excepting the downtown core provided for in section 12.8-2 and described as the area bounded by: That portion of Middle Avenue from West New York Street to West Benton Street; that portion of Benton Street from Middle Avenue to the Burlington Northern Main Line; that portion of the Burlington Northern Main Line from East Benton Street to East New York Street; that portion of both sides of East New York Street from the Burlington Northern Main Line to North River Street (including the Old Fire Station Complex parcels at the northeasterly corner of North Broadway and East New York Streets and the three (3) most southerly parcels commencing at the northwesterly corner of said streets); that portion of North River Street from Pinney Street (bordering the property adjoining the north side of New York Street thereat) to West New York Street; and that portion of West New York Street from North River Street to Middle Avenue, and all of Stolp Island.

8.8-3.2. Definitions

8.8-4. Use Regulations

8.8-4.1. Permitted uses.

A. The following uses shall be permitted as specified in this section excepting related outside storage of vehicles, boats, equipment, or materials, as either a principal or accessory use.

B. Retail.

  i. Agricultural implement sales and service when conducted wholly within an enclosed building.

  ii. Air conditioning sales and service.

  iii. Auto and vehicle sales, new.

  iv. Boat showroom and repairs, including outboard engine service.

  v. Building material sales, wholly within a building, where all delivery vehicles have no more than two (2) axles, and where off-street, on-site parking is provided as specified in the Bulk Restrictions Section, but only at the locations where such uses presently exist: 223 Spring Street, and 58 S. Lake Street.

  vi. Clothing-related uses (new), such as wearing apparel, shoes, hats, dresses, furriers, department stores, sewing supplies, and fabric stores.

  vii. Craft sales and manufacture, such as decorative metal, pottery, woodworking, art studios, similar fine art uses.

  viii. Food and consumables, such as groceries, meat and fish markets, delicatessens, food stores, fruit stores, farmers' markets, candy, ice cream, tobacco and bakery shops.

  ix. Garden supply and feed stores, wholly within a building.

  x. General, such as drugstores.

  xi. Gift uses, such as gift, greeting card, pet and frame shops, and florists.

000527

xii. Hobby uses, such as coin and stamp, camera and photo supply, hobby, antique, art galleries, sporting goods, toys, leather and luggage, musical instrument sales and repair, costume rental, record and video shops.

xiii. Household uses, such as hardware, household, locksmiths and variety stores.

xiv. Information-related uses, such as art and school-supply stores, office supply stores, bookstores, stationery stores, newsstands and reading rooms.

xv. Light durable sales and repair, such as bicycles, furniture and upholstery, carpet, sewing machine, typewriter and adding machine, computer, stereo and electronics, radio and television, jewelry, watches and electrical appliances.

xvi. Other uses compatible to the above uses, in keeping with the intent of this section 12.9.

C. Office/professional.

i. General uses, such as public office buildings, utility offices, telecommunication exchanges, and civic organizations.

ii. Headquarters of organizations, businesses, wholesale operations, and corporations.

iii. Health practitioners, such as physicians, dentists, opticians/optometrists, medical and dental clinics, ortho and medical appliances, chiropractors and naprapaths.

iv. Laboratories/precision manufacturing, such as medical, dental, photography, research, testing and experimental laboratories, and jewelry, optical and instrument manufacturing concerns.

v. Media uses, including radio and TV stations and studios (but not transmission towers, which are regulated by the Use Regulations Section hereof and the Telecommunications and Cable Television Chapter of the City of Aurora Code of Ordinances).

vi. Art uses, including photographer and artist studios, interior decorators, and advertising agencies.

vii. Professionals, such as attorneys, architects, engineers and consultants.

viii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

D. Public and semipublic uses.

i. Organizations, such as clubs and lodges.

ii. Schools, such as colleges and universities, music, dance, business, commercial, trade, art, vocational and professional.

iii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

E. Residential. Dwelling units above the first floor, or in buildings constructed as residential structures, shall be permitted in the downtown fringe when such units each contain a separate bathroom, a separate bedroom with a door that closes, and a full service, ventilated kitchen. Inspection and licensing of all downtown fringe dwelling units shall be in accordance with appropriate city codes. Dwelling units shall not be mixed with other uses on a single floor unless separated from such other uses by a continuous wall, and unless such other uses are provided with a separate entrance.

C02528

F. Services.

    i. Clothing services, such as dressmaking, millinery, tailoring, shoe and hat repair, and laundries and drycleaners.

    ii. Contractors offices and shops of ten thousand (10,000) square feet or less, where all fabrication and storage of material is within an enclosed building, where all delivery vehicles have no more than two (2) axles, and where off-street, on-site parking is provided for all delivery vehicles.

    iii. Drive-in financial uses, provided the provisions of Site Plan Review within the F Downtown Fringe District are complied with.

    iv. Duplicating services, such as blueprinting, photostatting, quick print shops, and publishers' editorial offices and printing operations (providing noise, vibrations and emissions are not detectable at the property lines).

    v. Financial uses (non-drive-in), such as banks and savings institutions, finance, insurance, stock brokers, real estate and employment agencies, and currency exchanges.

    vi. Garden equipment repair, when conducted wholly within an enclosed building.

    vii. Health and beauty uses, such as barber and beauty shops, health clubs, racquetball clubs, self-defense schools and personal service shops.

    viii. Household services, such as interior decorator shops, upholstery, drapery and slipcover manufacture, glass cutting, glazing and mirror shops.

    ix. Plumbing and heating supply shops.

    x. Undertaking establishments, providing off-street parking is provided, as specified in the Bulk Restrictions Section.

    xi. Wholesale storage and/or sales, when conducted wholly within an enclosed building.

    xii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

G. Amusements.

    i. Dining uses (not drive-in), such as restaurants, caterers, and establishments where alcoholic beverages are served.

    ii. Entertainment uses, such as indoor theaters, cultural centers, and nightclubs.

    iii. Indoor recreation places, such as arcades, bowling alleys, gymnasiums, skating rinks, archery ranges or golf practicing ranges.

    iv. Poolrooms.

    v. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

H. Other permitted uses.

    i. Accessory buildings, as regulated in the Use Regulations Section hereof, except that such buildings shall be of the same construction as the primary building.

    ii. Dish antennae (on the roof).

    iii. Signs, in accordance with the Bulk Restrictions Section.

    iv. Solar collection apparatus (on the roof).

C02529

v. Temporary buildings and uses for construction purposes are permitted for a period not to exceed one (1) year.

vi. Other uses compatible with the above uses, in keeping with the intent of this the F Downtown Fringe District.

8.8-4.2. Special Uses

8.8-4.3. Accessory Uses

8.8-5. Bulk Restrictions

8.8-5.1. Building, Dwelling and Structure Standards

8.8-5.2. Floor Area Ratio

8.8-5.3. Height

8.8-5.4. Landscaping

A. Such requirements shall be as specified in the Bulk Restrictions Section hereof. In addition, all parking lots in the downtown fringe district shall be landscaped as follows: The view of any parking lot or area shall be screened from any street or public way by means of a building, a compact hedge two (2) feet high at time of planting, or a decorative masonry wall three (3) feet high. In addition, one (1) tree shall be planted in the parking lot for each ten (10) parking spaces or major fraction thereof. Landscape materials shall be maintained in a healthy condition and any such materials that die shall be replaced by the end of the next planting season.

8.8-5.5. Lot Size

8.8-5.6. Lot Coverage

8.8-5.7. Monotony Standards

8.8-5.8. Nonconformity

8.8-5.9. Obstructions

8.8-5.10. Parking and Loading

A. Off-street parking shall be in accordance with the Bulk Restrictions Section except that surface parking constructed after the effective date of this the F Downtown Fringe District shall be allowed only in the rear yard of a zoning lot. Parking constructed after the effective date of this the F Downtown Fringe District in a front or side yard or as the sole use of a property shall be permitted only by site plan review, pursuant to the F Downtown Fringe District hereof.

8.8-5.11. Performance Standards

A. Uses in the downtown fringe district shall be conducted so as to preclude any nuisance, hazard or offensive condition including creation or emission of dust, gas, smoke, noise, fumes, odors, vibrations, particulate matter, chemical compounds, electrical disturbances, humidity, heat, cold, glare or night illumination. Said uses must be compatible with the downtown core uses, including dwelling units and retail. Prior to the issuance of a building or occupancy permit, or at any other time, the building official may require evidence

009530

that adequate controls, measures, or devices have been provided to ensure and
protect the public interest, health, comfort, convenience, safety and general
welfare from any nuisance, hazard or offensive condition.

8.8-5.12. Setbacks

A. No exterior or interior yard setbacks shall be required except for the following.
River yards shall be measured from the retaining wall or the mean water level, as
determined by the city engineer.

| ITEM | SETBACK (in feet) |
|---|---|
| PARKING LOTS | |
| Exterior Yard | 5 |
| River Yard (with or without walkway) | 15 |
| BUILDINGS | |
| River Yard (with or without walkway) | 15 |

8.8-5.13. Signs

A. Such requirements as are specified in article 19 of the Aurora Building Code.

## 8.9. "RD" Research And Development District.

8.9-1. Title

8.9-1.1. The Research and Development District shall be designated as "RD" on the City
of Aurora Zoning Map

8.9-2. Intent and Purpose

8.9-2.1. General requirements; purpose. The RD research and development district is
provided to support and complement the City of Aurora comprehensive plan,
including (a) the land use and circulation plan, and (b) the physical development
policies, which guides the compatible shaping of the present and future land use
needs of the City of Aurora.

The regulations for the RD district are designed to provide protection for existing
developments while allowing new construction in accordance with current design
standards.

The RD district is designed to create a landscaped transition between it and
residential, office, commercial and manufacturing uses, to provide separation and to
enhance the visual image of the city. Smoke and particulate matter, vibration, glare,
odor, waste and noise are controlled by performance standards.

8.9-2.2. Specific district requirements; intent. The RD research and development district
is intended to provide and maintain in a park-like setting, an environment suitable
for and limited to research and development activities, engineering and testing
activities, and office uses. The production of plans, products, or designs is permitted
when the primary purpose of such production is research development or evaluation.

000531

8.9-3. District Specific Regulations

8.9-3.1. Rules

A. Required conditions. Permitted and/or special uses established in the RD district shall comply with all required conditions:

    i. Not more than one (1) principal building shall be located on a zoning lot within the RD district. Lot area or other criteria used to satisfy one use cannot be counted again or be used to satisfy an additional use, except by a subdivision of land or by a planned development.

    ii. Every use, unless expressly exempted by this ordinance, shall be operated in its entirety within a completely enclosed structure.

    iii. All outdoor storage areas of goods, products, materials, supplies, machinery, equipment, or commercial vehicles, shall be enclosed to a height of eight (8) feet above grade and screened to an opacity of not less than seventy-five (75) percent, as follows:

        a. A fence eight (8) feet above grade, or

        b. Berming and/or landscaping screen, or

        c. A combination of fencing, berming, and/or landscaping.

    iv. Except or [as] otherwise provided by special use herein, establishments of the drive-in or drive-through type are prohibited.

    v. Buildings existing on the date of this the RD Research and Development District may be converted to permitted or special use if in compliance with the zoning ordinance, the building code, and/or any other applicable legislation after review and approval by the City of Aurora.

    vi. All processes and equipment in the RD district shall comply with the provisions of performance standards as set forth in ORI Office, Research and Industrial District of this ordinance.

B. Required conditions. The following conditions shall be required:

    i. No product shall be produced in the RD district primarily for sale either directly or indirectly, except such products that, by their character, require production within a research and development environment.

    ii. All business, servicing, or processing, except for off-street parking and loading, shall be conducted within completely enclosed buildings.

    iii. The business uses in the RD district shall be located within a building or structure containing a permitted use and shall not contain advertising visible from the outside of the building or structure. Such business uses shall be primarily for the service and convenience of the tenants and employees of the RD district in which located.

C. Additional regulations. Special uses granted to provide for yard variations in the RD district shall comply with the following additional regulations:

    i. Site plan review. Each property owner or developer who shall request a special use for a yard variation in the RD district shall submit a complete site plan, including building, parking and storage locations, access control, signage, and landscaping for the proposed development. The site plan shall be reviewed by the Aurora planning commission and approved by the Aurora city council.

C02532

ii. Bonding requirements. Before any zoning certificate, excavation/fill permit or building permit is issued in the RD district, the property owner shall post a cash bond or irrevocable standby letter of credit with the City of Aurora to guarantee appropriate installation of planting and screening material required on the approved site plan. Fifty (50) percent of the cash bond or letter of credit shall be maintained by the City of Aurora for a period of one (1) year (growing season) after installation to assure continued growth of the landscape materials.

iii. Building bulk requirements. Building bulk requirements shall be expressed in terms of minimum yard requirements and maximum heights, or in terms of floor area ratio (F.A.R.) as prescribed in the RD Research and Development District Specific district requirements.

### 8.9-3.2. Definitions

### 8.9-4. Use Regulations

8.9-4.1. Permitted uses. In the RD district, permitted buildings, structures, or uses of land as hereinafter listed, shall only be permitted under the conditions specified. Buildings, structures, lots or tracts of land shall be used only for a permitted use or special use as provided in the RD district, except for the following:

A. Use lawfully established on the effective date of this the RD Research and Development District RD but not in conformance with the provisions of the RD district, shall be rendered as a legal nonconforming use subject to the regulations of the Use Regulations Section Nonconforming buildings and uses of the Aurora zoning ordinance.

B. A special use in existence on the effective date of this the RD Research and Development District RD, shall be allowed to continue, subject to the provisions set out in each special use ordinance.

C. Buildings, structures or uses already established as nonconforming on the effective date of this the RD Research and Development District and rendered nonconforming by the provisions hereof, shall be subject to the regulations of the Use Regulations Section Nonconforming buildings and uses of the Aurora zoning ordinance.

D. Permitted uses. The following uses are permitted:

i. Laboratories, offices, and ancillary uses for research and development.

ii. Production of prototype products when limited to the scale reasonably necessary for full investigation of the merits of a product, including commercial viability.

iii. Pilot plants in which processes planned for use in production elsewhere can be treated to the extent reasonably necessary for full investigation of the merits of a product or process including commercial viability.

iv. Engineering and testing laboratories and offices.

v. Offices--business or professional; medical or dental.

vi. Clinics--medical or dental.

vii. Banks and financial institutions.

8.9-4.2. Special uses. Special uses, as listed in the RD district may be allowed subject to the issuance of a special use permit in accordance with the provisions of the Administration Section special uses of this ordinance.

A. Special uses. The following special uses may be permitted in specific situations in accordance with the procedures outlined in the Administration Section Special uses of this ordinance:

i. Planned unit development. The primary use within a planned unit development shall be one or more of the principal uses, and may include any of the following uses:

a. Public and private schools.

b. Cultural and recreational facilities, auditoriums, public gathering places, chapels, and religious institutions along with their related indoors and recreational facilities.

ii. General retail and services located within one of the permitted uses, including but not limited to drugstores, barbershops, beauty shops, dry-cleaning establishments and laundries, shoe repair, and tailor shop.

iii. Height limit increase as specified in the RD Research and Development District, the Bulk Restrictions Section of this ordinance.

iv. Heliports and helistops (need not be enclosed).

v. Public and private utility facilities.

8.9-4.3. Accessory Uses

8.9-5. Bulk Restrictions

8.9-5.1. Building, Dwelling and Structure Standards

8.9-5.2. Floor Area Ratio

8.9-5.3. Height

A. The maximum height for all buildings and structures in the RD district shall be one hundred (100) feet; however, this limit may be increased to one hundred fifty (150) feet by a special use permit issued by the Aurora city council and after a public hearing before the planning commission in accordance with the provisions of section 14, subsection 14.6-5 of this ordinance. Any such increased height shall be reasonably required for the particular research or development use to which the property in question is to be put. All principal and accessory buildings and structures shall not cover more than twenty-five (25) percent of the gross lot area.

8.9-5.4. Landscaping.

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

B. All required setback areas shall be extensively landscaped with a variety of trees and shrubs. Nonliving material may be used to complement a small percentage of the area to be landscaped.

C. All off-street parking and off-street loading areas shall be landscaped and maintained. Landscaping shall be arranged in such a way as to break up the mass of the parking area.

000534

8.9-5.5. Lot Size

    A. Lot requirements. Lot size requirements shall be as specified under the RD district, the Bulk Restrictions Section Specific RD district requirements.

    B. Lot requirements.

      i. The minimum area in the RD district shall be three (3) acres.

      ii. The minimum lot width, at the front yard line, shall be two hundred (200) feet.

8.9-5.6. Lot Coverage

8.9-5.7. Monotony Standards

8.9-5.8. Nonconformity

    A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

8.9-5.9. Obstructions

8.9-5.10. Parking & Loading

    A. In the RD district, parking lots shall comply with the following requirements:

    B. Parking facilities shall not be located in any required front yard, exterior side yard, or rear yard except that a maximum of eight (8) parking spaces may be permitted in the front yard for the purposes of convenience or short term parking.

    C. Parking facilities where permitted shall not be located within twenty (20) feet of any interior property line. Where an interior yard adjoins the Interstate 88 right-of-way,  the RD Research and Development District shall apply.

    D. Off-street parking and loading requirements. Off-street parking and loading facilities accessory to uses allowed in the RD district, shall be provided in accordance with the regulations established in the Bulk Restrictions Section Off-street parking and loading, and in the RD Research and Development District and the Use Regulations Section of this ordinance.

8.9-5.11. Performance Standards

    A. Noise standards shall be those measurement and administrative procedures most recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city

000535

may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

8.9-5.12. Setbacks

A. Yard requirements.

    i. Except as provided in the Bulk Restrictions Section Permitted obstructions in required yards, and except as provided in the following part, all yards shall be open and unobstructed from the ground level to the sky.

    ii. Where a lot has frontage abutting both an arterial street and a lower classification street, the arterial street line shall be the front lot line.

    iii. Where a lot has frontage abutting both a major collector street and a lower classification street, the major collector street line shall be the front lot line.

    iv. Where a lot has frontage abutting two (2) streets having identical classification, the director of the city planning of Aurora shall determine the location of the front line of the zoning lot.

B. Yard requirements. Notwithstanding subsection the RD Research and Development District, the minimum yards required in the RD district shall be as follows:

    i. Yards facing existing or proposed streets (not including interior circulation roads or drives within an individual tract): There shall be a required yard adjacent to each existing or proposed street that bounds an individual tract. Such required yard shall have not less than one hundred (100) feet in depth.

    ii. Yards adjacent to interior property lines: There shall be a required yard adjacent to each interior side or rear lot line of not less than fifty (50) feet in width or depth respectively, except as provided in paragraph f. below.

    iii. Yards facing interior private circulation streets: The required yard shall not be less than forty (40) feet, measured from the centerline of the roadway.

    iv. Interstate 88: There shall be a seventy-five-foot building setback and a fifty-foot setback for any parking area for any property adjoining Interstate 88. Said setbacks shall be measured from the adjacent right-of-way line of Interstate 88.

    v. Limited-access highway: There shall be fifty-foot setback for any building or structure or parking area for any property adjoining a limited access highway. Said setback shall be measured from the adjacent right-of-way line of said limited access highway.

    vi. Yards adjacent to railroads: Requirements for yards adjacent to interior property lines shall not be applicable to buildings or structures erected adjacent to a railroad or railroad siding.

    vii. Landscaping of required setback areas: As per the RD Research and Development District of this ordinance.

8.9-5.13. Signs

A. Signs shall be permitted in the RD district in accordance with the provisions of the B-B Business-Boulevard District except that, for lots abutting Interstate 88, two (2) freestanding signs shall be permitted on each lot: one (1) along Interstate 88 and the other along other street.

C00536

**8.10.  "ORI" Office, Research And Light Industry District.**

8.10-1. Title

8.10-1.1. The Office, Research and Light Industry District shall be designated as "ORI" on the City of Aurora Zoning Map.

8.10-2. Intent & Purpose

8.10-2.1. Purpose

A. The ORI office, research and light industry district is provided to support and complement the City of Aurora comprehensive plan, including (a) the land use and circulation plan, and (b) the physical development policies, which guides the compatible shaping of the present and future land use needs of the City of Aurora. The ORI district requirements are further designed to govern the location, intensity and methods for development of industrial areas in the City of Aurora. The regulations for the ORI district are designed to provide protection for existing developments while allowing new construction in accordance with current design standards.

B. The regulations further provide for grouping office, research and light industrial uses compatible in scope of services and methods of operation. The ORI is designed to create a landscaped transition between it and adjacent residential, office, commercial, and manufacturing uses and to provide separation and to enhance the visual image of the city. Smoke and particulate matter, vibration, glare, odor, waste and noise are controlled by performance standards.

8.10-2.2. Intent

A. The ORI office, research and light industry district is intended to provide and maintain in a park-like setting, an environment suitable for and limited to research and development activities, engineering and testing activities, office uses, warehousing, and limited manufacturing that will not have adverse effects upon the environmental quality of the community. It groups compatible uses and promotes the economic development potential of the city.

8.10-3. District Specific Regulations

8.10-3.1. Rules

A. All activities, except for off-street parking and loading facilities as permitted or required in this district, shall be conducted wholly within an enclosed building.

B. Building bulk requirements. Building bulk requirements shall be expressed in terms of minimum yard requirements and maximum heights, or in terms of floor area ratio (F.A.R.).

C. Additional regulations. Special uses granted to provide for yard variations in the ORI district shall comply with the following additional regulations:

· i. Site plan review. Each property owner or developer who shall request a special use for a yard variation in the ORI district shall submit a complete site plan, including building, parking and storage locations, access control, signage, and landscaping for the proposed development. The site plan shall be reviewed by the Aurora planning commission and approved by the Aurora city council.

000537

D. Bonding requirements. Before any zoning certificate, excavation/fill permit or building permit is issued in the ORI district, the property owner or developer shall post a cash bond or irrevocable standby letter of credit with the City of Aurora to guarantee appropriate installation of planting and screening material required on the approved site plan. Fifty (50) percent of the cash bond or letter of credit shall be maintained by the City of Aurora for a period of one (1) year (growing season) after installation to assure continued growth of the landscape materials.

E. The business in the ORI district shall be located within a building or structure containing a permitted use and shall not contain advertising visible from the outside of the building or structure. Such business uses shall be primarily for the service and convenience of the tenants and employees of the ORI district in which located.

F. Permitted or special uses established in the ORI district shall comply with all required conditions:

    i. Not more than one (1) principal building shall be located on a zoning lot within the ORI district. Lot area or other criteria used to satisfy one (1) use cannot be counted again or be used to satisfy an additional use, except by a subdivision of land or by a planned development.

    ii. Every use, unless expressly exempted by this ordinance shall be operated in its entirety within a completely enclosed structure.

8.10-3.2. Definitions

8.10-4. Use Regulations

8.10-4.1. Permitted uses. The Permitted Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

8.10-4.2. Special uses. The Special Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

8.10-4.3. Accessory Uses. The Use Regulations Section of the Aurora Zoning Ordinance shall apply in addition to the following District specific provisions:

A. Retail Upon application to an issuance by the division of inspection and permits for a permit thereof, and incidental or secondary only to a principal building containing forty thousand (40,000) or more square feet of gross floor area, one (1) or more uses hereinafter set forth may be operated as accessory uses if each such use meets the following conditions: (1) is provided for the convenience of the owner and/or tenants, (2) does not have exterior signs of any type, (3) does not have separate outside entrance facing any street and (4) is not evident from any street:

    i. Book and stationery store.

    ii. Barbershop, or beauty parlor.

    iii. Candy and ice cream shops, retail only.

    iv. Drugstores.

    v. Camera and photographic supply shops for retail.

CC0508

vi. Gift shop. Notions store. Tobacco store. Newsstand.

vii. Office supply store.

viii. Optician, optometrist.

ix. Postal substations. Telegraph office.

x. Travel bureau and transportation ticket office.

xi. Blueprinting and photo static establishments.

xii. Photographic development and processing drop-off service only, no physical processing on premises.

xiii. Parcel delivery station of not more than two hundred fifty (250) square feet.

xiv. Typewriter, computer, adding machine and office machine sales and drop-off repair service.

xv. Valet shop--cleaning pick-up and drop-off only--no plant on premises.

8.10-5. Bulk Restrictions

8.10-5.1. Building, Dwelling and Structure Standards

8.10-5.2. Floor Area Ratio

8.10-5.3. Height

A. The maximum height and floor area ratio for all buildings and structures in the ORI district shall be as follows:

B. The maximum height for all buildings and structures in the ORI district shall be one hundred (100) feet; however, this limit may be increased to a maximum of one hundred fifty (150) feet by a special use permit issued by the city council and after public hearing before the planning commission in accordance with the provisions of the Administration Section of this ordinance. Any such increased height shall be reasonably required for the particular research or development use to which the property is to be put.

C. The basic floor area ratio in the ORI district shall be 0.70. However, for those buildings and structures that provide special design improvements, a floor area ratio premium may be granted as a special use by the city council and after public hearings before the planning commission in accordance with the provisions of the Administration Section of this ordinance. This premium may be added to the basic floor area ratio in accordance with the following:

i. If seventy-five (75) percent or more of the required parking is provided underground or within the building, then a floor area ratio premium of 0.20 shall be allowed.

ii. As the lot size increases, a floor area ratio premium of 0.02 will be granted for each additional acre in lot size above two (2) acres to a maximum of ten (10) acres.

8.10-5.4. Landscaping

A. All landscaping and screening shall comply with the Bulk Restrictions Section in Chapter A of the Aurora Zoning Ordinance.

8.10-5.5. Lot Size

000539

A. Lot requirements.

    i. The minimum area in the ORI district shall be two (2) acres, except for a planned unit development that shall have more than two (2) acres.

    ii. The minimum lot width, at the front yard line, in the ORI district shall be one hundred fifty (150) feet.

## 8.10-5.6. Lot Coverage

## 8.10-5.7. Monotony Standards

## 8.10-5.8. Nonconformity

A. Buildings, structures, lots or tracts of land shall be used only for a permitted use or special use as provided in the ORI district, except for the following:

    i. Use lawfully established on the effective date of this the ORI Office, Research and Light Industry District ORI but not in conformance with the provisions of the ORI district, shall be rendered as a legal nonconforming use subject to the regulations of nonconforming buildings and uses subsection of the Bulk Restrictions Section of the Aurora zoning ordinance.

    ii. A special use in existence on the effective date of this the ORI Office, Research and Light Industry District ORI, shall be allowed to continue, subject to the provisions set out in each special use ordinance.

    iii. Buildings, structures or uses already established as nonconforming on the effective date of this the ORI Office, Research and Light Industry District ORI and rendered nonconforming by the provisions hereof, shall be subject to the regulations of the Bulk Restrictions Section nonconforming buildings and uses of the Aurora zoning ordinance.

## 8.10-5.9. Obstructions

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

## 8.10-5.10. Parking And Loading

A. Off-street parking and loading facilities accessory to uses allowed in the ORI district, shall be provided in accordance with the regulations established in the Bulk Restrictions Section Off-street parking and loading, and in this subsection of this ordinance.

B. Parking lots. In the ORI district, parking lots shall comply with the following requirements:

    i. Parking facilities shall not be located in any required front yard, exterior side yard, or rear yard.

    ii. Parking facilities where permitted shall not be located within ten (10) feet of any property line. Where an interior yard adjoins the Interstate 88 right-of-way, the yard requirements pertaining to Interstate 88 shall apply.

    iii. These requirements shall apply only to the minimum yards (thirty (30) feet along roadways and twenty (20) feet along interior side property lines) and the transitional area setbacks. Off-street facilities shall be allowed in the additional setback required for additional height.

000540

8.10-5.11. Performance Standards. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply in addition to the following District specific regulations:

A. Standards Processes and equipment employed in the ORI district shall comply with the provisions of performance standards as set forth in this section of this ordinance.

B. It is the intent of this section to provide that business utilities, light industry, research and related activities shall be established and maintained with proper appearance from the streets and adjoining properties and to provide that each such permitted uses shall be a good neighbor to adjoining properties by the control of emission of noise, odor, glare, light, vibration, smoke, particulate matter, gases, and waste.

C. It is further the intent of this section to state the conditions of construction and operation with which uses will be expected to comply. In many cases the relation of a prospective use to all these performance standards cannot be judged properly at the time of building permit issuance. In such cases, the recipient of the building permit should note that these standards, like any other provisions of this ordinance, are continuing obligations and that all uses shall be expected to operate in compliance with these standards. The building plans shall bear the signature of a qualified professional stating that all performance standards will be complied with based upon the submitted building plans. The city retains the option to conduct its own investigation to determine compliance with the performance standards.

D. Compliance. Any use established as hereinafter identified in the RD research and development and ORI office, research and light industry districts, shall be so constructed and operated as to comply with the performance standards hereinafter set forth governing noise, odors, glare, exterior lighting, vibration, smoke, particulate matter, gases, hazards, waste, and others. No use already established on the effective date of this ordinance shall be so altered or modified as to conflict with or further conflict with the performance standards applicable to such cases. The performance standards set forth in this subsection of this ordinance shall be complied with and any use that fails to comply with these standards shall be in violation of this ordinance and shall be subject to penalties provided for such violation.

E. Measurement. Each measurable standard shall be measured at the appropriate indicated location in accordance with the provisions of this subsection of this ordinance.

F. Enclosures. In the RD research and development and ORI office, research and light industry districts, all activities involving manufacturing, fabricating, processing, assembly, disassembly, repairing, cleaning, servicing, and testing shall be conducted in completely enclosed buildings. The storage of materials, products and goods may be outdoors, in interior side or rear yards only, if completely screened from public view. Outdoor storage or uncontained bulk materials subject to dusting such as powder, grain, sand and coal is prohibited.

C00541

G. Administration. Applications pertaining to the use or change of use of land, building, or structures in the RD research and development or ORI office, research and light industry districts shall be accompanied by a certificate from a scientific laboratory or consultant approved by the City of Aurora certifying compliance with the performance standards set forth in this subsection of this ordinance. In the event that a building or structure is erected in an RD research and development or ORI office, research and light industry districts, but the particular use is not known (for example, speculative buildings), then no such certification will be required until such time as the specific use can be designated.

H. Standards

i. Noise standards shall be those measurement and administrative procedures most-recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the result of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

ii. Odors. Odors from any use hereafter begun shall not be discernible at the property line and shall not exceed the odor threshold concentration. The measurement of the threshold odor shall be in accordance with the American Society for Testing Materials Method D1391-57 "Standards Method for Measurement of Odor in Atmosphere (Dilution Method)" (Philadelphia: American Society of Testing Materials, 1957). Detailed plans for the prevention of odors crossing property lines may be required before the issuance of a building permit.

iii. Glare. Glare, whether direct or reflected, such as from floodlights or high temperature processes, and as differentiated from general illumination, shall not be visible at any property line.

iv. Exterior lighting. Any lights used for exterior illumination shall direct light away from adjoining properties.

v. Vibration. Vibration shall not be discernible at any property line to the human sense of feeling for three (3) minutes or more duration in any one (1) hour. No vibration at any time shall produce an acceleration of more than 0.1 gravities or shall result in any combination of amplitudes and frequencies beyond the "safe" range of Table 7 United States Bureau of Mines Bulletin No. 442 "Seismic Effects of Quarry Blasting", on any structure. The methods and equations of said Bulletin No. 442 shall be used to compute all values for the enforcement of this provision.

vi. Smoke. Measurement shall be at the point of emission. The Ringelmann Smoke Chart published by the United States Bureau of Mines shall be used for the measurement of smoke. Smoke not darker or more opaque than No. 0 on said chart may be

000542

emitted except that smoke not darker or more opaque than No. 1 on said chart may be emitted for periods not longer than four (4) minutes in any thirty (30) minutes. These provisions, applicable to visible smoke, shall also apply to visible smoke of a different color but with an equivalent apparent opacity.

vii. Particulate matter. Solid or liquid particles shall not be emitted at any point in concentration exceeding 0.1 grains per cubic foot of the conveying gas or air. For measurement of the amount of particles in gases resulting from combustion, standard corrections shall be applied to a stack temperature of five hundred (500) degrees Fahrenheit and fifty (50) percent excess air.

viii. Hazard. Any operation allowed in the RD Research and Development district and the ORI Office, Research and Light Industry District shall be carried on with reasonable precautions against fire and explosion hazards.

ix. Gases. Fumes or gases shall not be emitted at any point in concentrations or amounts that are noxious, toxic, or corrosive. The values given in Table 1 (Industrial Hygiene Standards--Maximum Allowable Concentration for an eight-hour day, five (5) days per week), Table III (Odor Thresholds), Table IV (Concentrations of Substances Causing Pain in the Eyes), and Table V (Exposures to Substances Causing Injury to Vegetation) in the latest revision of Chapter 5, "Physiological Effect", that contains such tables, in the "Air Pollution Abatement Manual", by the Manufacturing Chemists' Association, Inc., Washington, D.C., are hereby established as guides for the determination of permissible concentration or amounts. Detailed plans for the elimination of fumes or gases may be required before the issuance of a building permit.

x. Waste. All sewage and industrial wastes shall be treated and disposed of in such a manner as to comply with the water quality standards applicable to the classification assigned to the receiving water by the city, the State of Illinois, and the U.S.E.P.A. Approval of the Illinois Environmental Protection Agency of all plans for waste disposal facilities shall be required before issuance of any building permit.

xi. Except or [as] otherwise provided by special use herein, establishments of the drive-in or drive-through type are prohibited.

xii. Buildings existing on the date of this the ORI Office, Research and Light Industry District ORI district may be converted to a permitted or special use if in compliance with the zoning ordinance, the building code, and/or other applicable legislation.

xiii. All processes and equipment in the ORI district shall comply with the provisions of performance standards as set forth in the ORI Office, Research and Light Industry District of this ordinance.

xiv. Corrugated metal panels shall not comprise more than fifty (50) percent of a building facade.

8.10-5.12. Setbacks

A. Setback Locations

i. Except permitted obstructions as provided in the Bulk Restrictions Section and except as provided in the following section, all yards shall be open and unobstructed from the ground level to the sky.

C00543