ii. Where a lot has frontage abutting both an arterial street and a lower classification street, the arterial street line shall be the front lot line.

 iii. Where a lot has frontage abutting both a major collector street and a lower classification street, the major collector street line shall be the front lot line.

 iv. Where a lot has frontage abutting two (2) streets having identical classification, the director of Aurora city planning shall determine the location of the front line of the zoning lot.

B. Setback Requirements

 i. Yards facing existing or proposed streets (not including interior circulation roads or drives within an individual tract): There shall be a required yard adjacent to each existing or proposed street that bounds an individual tract. Such required yard shall not be less than thirty (30) feet in depth, provided, however, that such yard shall be increased in depth by one (1) foot for each three (3) feet in height by which any building or structure on the lot exceeds a height of thirty (30) feet, and also provided, however, that such a yard located across a street from a residential district shall equal one (1) foot in depth for each foot of building height but in no event shall the yard be less than one hundred (100) feet in depth.

 ii. Yards adjacent to interior property lines: There shall be a required yard adjacent to each interior side/rear lot line of not less than twenty (20) feet in depth except that such yard shall be increased by one (1) foot for each three (3) feet in height that any building or structure on the lot exceeds a height of thirty (30) feet, and except that requirements for side/rear yards adjacent to interior side/rear property lines shall not be applicable to buildings or structures erected adjacent to a railroad or a railroad siding. Where any interior side/rear property line abuts upon a residential district, there shall be provided a required yard of one (1) foot in depth for each foot of building height but in no event shall this yard be less than one hundred (100) feet in depth.

 iii. Yards facing interior private circulation streets: The required yard shall not be less than forty (40) feet, measured from the centerline of the roadway.

 iv. Interstate 88: There shall be a seventy-five-foot building setback and a fifty-foot setback for any parking area for any property adjoining Interstate 88. Said setbacks shall be measured from the adjacent right-of-way line of Interstate 88.

 v. Limited access highway: There shall be fifty (50) feet setback for any building or structure or parking area for any property adjoining a limited access highway. Said setback shall be measured from the adjacent right-of-way line of said limited access highway.

 vi. Yards adjacent to railroads: Requirements for yards adjacent to interior property lines shall not be applicable to buildings or structures erected adjacent to a railroad or railroad siding.

 vii. Landscaping of required setback areas: As per the ORI Office, Research and Light Industry District of this ordinance.

8.10-5.13. Signs

 A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

# SECTION 9. MANUFACTURING DISTRICTS

## 9.1 Purpose.

9.1-1. The manufacturing districts set forth herein are established to protect public health, safety, comfort, convenience and the general welfare, and to protect the economic base of the city, as well as the value of real estate by regulating manufacturing development in appropriate locations. These general objectives include, among others, the following specific objectives:

9.1-1.1. To protect established residential areas, and the health of families living therein, by restricting those nearby manufacturing activities which may create offensive noise, vibrations, smoke, dust, odors, heat, glare, fire hazards and other objectionable influences, to those areas which are appropriate therefore.

9.1-1.2. To provide adequate space in appropriate locations for all types of manufacturing and related activities so that economic structure of the community may be strengthened, and that employment opportunities may be found in the interest of public prosperity and welfare.

9.1-1.3. To provide more space for manufacturing activities in locations accessible to rail and highways, so that the movement of raw materials, finished products and employees can be carried on efficiently and with a minimum of danger to public life and property.

9.1-1.4. To establish proper standards of performance, which will restrict obnoxious manufacturing activities, while at the same time encourage and permit the manufacturing activities which have adopted facilities for the processing of finished products without adversely affecting the health, happiness, safety, convenience and welfare of the people living and working in nearby areas.

9.1-1.5. To protect manufacturing districts from incompatible uses of land by prohibiting the use of such space for new residential development, thereby preserving the land for a more appropriate use in accordance with the plans for city improvement and development.

9.1-1.6. To promote the most desirable use of land in accordance with a well considered plan of land use for all of the city, to conserve the use of property, to promote stability of manufacturing activities and related development, and to protect the character and established development in each area of the community, to enhance and stabilize the value of land and to protect the tax base of the city.

## 9.2. "M-1" Manufacturing district, limited.

9.2-1. Title

9.2-1.1. The Limited Manufacturing District shall be designated as "M-1" on the City of Aurora Zoning Map

9.2-2. Intent & Purpose

9.2-3. District Specific Regulations

9.2-3.1. Rules

A. All activities, except for off-street parking and loading facilities, as permitted or required in this district, shall be conducted wholly within an enclosed building or within a fully screened outside storage area where specifically allowed pursuant to the Permitted Use section below.

B. Since most uses permitted in this district will be in close proximity to residential districts, it is hereby declared that performance standards shall be high, and that all manufacturing, processing or assembly of materials and products must be carried on in a manner not injurious or offensive to the occupants of adjacent premises by reason of the emission of odors, fumes or gases, dust, smoke, noise, vibrations or fire hazards.

9.2-3.2. Definitions

9.2-4. Use Regulations

9.2-4.1. Permitted uses. The Permitted Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

9.2-4.2. Special Uses. The Special Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

9.2-4.3. Accessory Uses. The Use Regulations Section of the Aurora Zoning Ordinance shall apply.

9.2-4.4. Limited but Permitted Uses

A. Dwelling Unit. Dwelling accommodations as may be needed to house a caretaker or watchman employed on the premises, and their families.

B. Vehicle Repair, Major. When confined within an enclosed structure (including autos needing work), and only when such lot is located at least two hundred fifty (250) feet away from any residential district or lot with residential use.

9.2-5. Bulk Restrictions

9.2-5.1. Building, Dwelling and Structure Standards

9.2-5.2. Floor Area Ratio

9.2-5.3. Height

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply in addition to the following District specific regulations:

B. No building or structure shall be erected or structurally altered to exceed a height of four (4) stories nor shall it exceed forty-five (45) feet in height except as provided in the Bulk Restrictions Section.

9.2-5.4. Landscaping

A. All zoning lots shall comply with the Aurora Landscape Ordinance.

B. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.2-5.5. Lot Size

A. The maximum ground area occupied by all buildings shall be not more than sixty (60) percent of the area of the lot or tract on which a building permit has been issued.

9.2-5.6. Lot Coverage

9.2-5.7. Monotony Standards

9.2-5.8. Nonconformity

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.2-5.9. Obstructions

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.2-5.10. Parking and Loading

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.2-5.11. Performance Standards

A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply in addition to the following District specific regulations:

B. Noise: Noise standards shall be those measurement and administrative procedures most recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

C. Smoke and particulate matter: The emission of smoke and dusts by manufacturing plants in an amount sufficient to create a general nuisance to adjoining properties shall be prohibited. Total emission of smoke and particulate matter shall be limited to the following:

i. Ringelmann requirements: All smoke and the emission of all other particulate matter in quantities sufficient to produce an opacity at any point greater than Ringelmann 3 is prohibited. The only exception shall be a plume consisting entirely of condensed steam. A Ringelmann 1 unit is defined as twenty-percent density for one (1) minute. No more than fifteen (15) units of Ringelmann smoke shall be permitted per hour and no smoke more intense than Ringelmann 2, except that during one (1) hour of a twenty-four-hour day, thirty (30) units of smoke may be emitted but with no smoke

more intense than Ringelmann 3. The total quantity of emitted solids shall not exceed one (1) pound per hour, per acre of lot area.

D. Odors: No odor shall be emitted by any use permitted in this district in such quantities as to be readily detectable by an average observer at any point on the boundary line of the premises or beyond.

E. Noxious gases: Processes and operations of permitted uses capable of dispersing gases or toxic particulates into the atmosphere must be hooded or otherwise suitably enclosed. The emission of such toxic gases or particulate matter shall be from a stack.

F. Glare and heat: Operations producing intense light or heat shall be performed within an enclosed building and not be visible beyond any lot line bounding the property whereon the use is conducted.

G. Vibrations: There shall be no uses that create heavy earth-shaking vibrations that are noticeable at the property line of the subject premises.

H. Screening. Screening of exterior storage areas shall be required per the Bulk Restrictions Section.

9.2-5.12. Setbacks

A. The following minimum setbacks shall be provided and maintained in connection with any building or parking lot. Front yard parking shall be regulated by this subsection or the Bulk Restrictions Section, whichever is more restrictive. The parking setback provisions of this subsection shall supersede the provisions of the Bulk Restrictions Section.

B. Front, exterior side or exterior rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Tollway | 75 |
| Arterial Street | 30 |
| Collector or Local Street | |
| Front or Exterior Rear | 25 |
| Exterior Side | 15 |

> Setback exceptions. When exterior yards abut a collector or local street that includes residentially zoned lots on the same block, if fifty (50) percent or more of the existing buildings are developed at an established setback of less than the required setback, any new M1 building may conform to the average established setback. If such average established setback is between fifteen (15) feet and thirty (30) feet, any new M1 building shall be set back at least an equivalent distance. In no case shall a setback of more than thirty (30) feet be required.

    i. The property was a lot of record on or before November, 1957.

    ii. A landscape plan is submitted by the owner and approved by the planning director and zoning administrator.

    iii. The owner commits in writing to have the approved landscaping established no later than June 30th or October 30th following the approval of the landscape plan, whichever shall occur first.

    iv. The owner demonstrates that the required setbacks cannot be met due to physical or practical difficulties.

C. Interior side or rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Fox River | 30 |
| Residential | 25 |
| All other Zoning Districts | 15 |

> Interior yards abutting residential district. There shall be no structure, open storage of materials or equipment, or the parking of vehicles in a required interior yard abutting a residential district. There shall be no paving in such required setbacks except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other driveways or auto maneuvering areas are permitted in the interior yards.

9.2-5.13. Signs

    A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

### 9.3. "M-2" Manufacturing District, General.

9.3-1. Title

9.3-1.1. The General Manufacturing District shall be designated as "M-2" on the City of Aurora Zoning Map.

9.3-2. Intent & Purpose

9.3-3. District Specific Regulations

9.3-3.1. Rules

A. All activities, except for off-street parking and loading facilities, as permitted or required in this district, shall be conducted wholly within an enclosed building or within a fully screened outside storage area where specifically allowed pursuant to the Permitted Use section below.

B. The uses in this district generally include those manufacturing and industrial activities which cannot be operated economically without creating some conditions which may be obnoxious or objectionable to the occupants of adjoining properties and for that reason, must be grouped in areas where similar industrial uses are now located or where the permitted uses will be best located in accordance with the comprehensive land use plan of the city, which is designed to protect the welfare of the community

C. When the boundaries of an M-2 district are adjacent to R residential or B residential districts, the regulations governing noise shall conform to the regulations provided for in the B-3 Business Wholesale District.

9.3-3.2. Definitions

9.3-4. Use Regulations

A. Permitted uses. The Permitted Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

9.3-4.2. Special Uses. The Special Uses for this district as identified in <u>Table One: Use Categories</u> shall apply.

9.3-4.3. Accessory Uses. The Use Regulations Section of the Aurora Zoning Ordinance shall apply.

9.3-4.4. Limited but Permitted Uses

A. Heavy Industrial. These uses may be permitted if located more than five hundred (500) feet from any part of an R district and subject to the approval of the city council by specific ordinance and then only after a hearing before the Aurora zoning board of appeals who shall provide the council with findings regarding whether or not the proposed use will be injurious to the public welfare and the surrounding neighborhood, and further whether or not the proposed use will be contrary to the spirit and purpose of this ordinance. The city council shall be guided by their findings, but shall not be bound thereby. These uses shall include in general, those uses which have been declared a nuisance in any court of record or which are or may be unreasonably obnoxious or offensive in the opinion of the zoning administrator by reason of the emission of odor, vapor, smoke, or gas.

9.3-5. Bulk Restrictions

9.3-5.1. Building, Dwelling and Structure Standards

9.3-5.2. Floor Area Ratio

9.3-5.3. Height

   A. No building or structure shall hereafter be erected or structurally altered to exceed a height of six (6) stories or seventy-five (75) feet, except as provided in the Bulk Restrictions Section.

9.3-5.4. Landscaping

   A. All zoning lots shall comply with the Aurora Landscape Ordinance.

   B. All landscaping and screening shall comply with the Bulk Restrictions Section in Chapter A of the Aurora Zoning Ordinance.

9.3-5.5. Lot Size

9.3-5.6. Lot Coverage

9.3-5.7. Monotony Standards

9.3-5.8. Nonconformity

   A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.3-5.9. Obstructions

   A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.3-5.10. Parking and Loading

   A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

9.3-5.11. Performance Standards

   A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply in addition to the following district specific regulations:

   B. Noise: Noise standards shall be those measurement and administrative procedures most-recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

C00551

C. Smoke and particulate matter. The emission of smoke or dusts in an amount sufficient to create a general nuisance to occupants of adjoining properties or to the occupants in the general area wherein the use is located shall be prohibited.

D. Odors. No odors shall be emitted by any use permitted in this district in such quantities as to be readily detectable by an average observer at any point on the boundary line of the nearest residential or business district.

E. Noxious gases. Processes and operations of permitted uses capable of dispersing gases or toxic particulates into the atmosphere must be hooded or otherwise suitably enclosed. The emission of such toxic gases of particulate matters shall be from a stack not less than twenty-five (25) feet in height.

F. Glare and heat. Operations producing intense light or heat, when adjacent to a residential or business district, shall be performed within an enclosed building and not be visible beyond the boundary separating the subject premises from any adjoining residential or business district.

G. Vibrations. There shall be no use that creates heavy earth-shaking vibrations that are noticeable at any district boundaries separating residential and business uses from an M-2 manufacturing district.

H. Screening. Screening exterior storage areas shall be as required in Bulk Restrictions.

9.3-5.12. Setbacks

A. The following minimum setbacks shall be provided and maintained in connection with any building or parking lot. Front yard parking shall be regulated by this subsection or the Bulk Restrictions Section, whichever is more restrictive. The parking setback provisions of this subsection shall supersede the provisions of the Bulk Restrictions Section.

B. Front, exterior side or exterior rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Tollway | 75 |
| Arterial Street | 30 |
| Collector or Local Street | 25 |

000552

> Setback exceptions. When exterior yards abut a collector or local street that includes residentially zoned lots on the same block, if fifty (50) percent or more of the existing buildings are developed at an established setback of less than the required setback, any new M2 building may conform to the average established setback. If such average established setback is between fifteen (15) feet and thirty (30) feet, any new M2 building shall be set back at least an equivalent distance. In no case shall a setback of more than thirty (30) feet be required.

    i. The property was a lot of record on or before November, 1957.

    ii. A landscape plan is submitted by the owner and approved by the planning director and zoning administrator.

    iii. The owner commits in writing to have the approved landscaping established no later than June 30th or October 30th following the approval of the landscape plan, whichever shall occur first.

    iv. The owner demonstrates that the required setbacks cannot be met due to physical or practical difficulties.

C. Interior side or rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Fox River | 30 |
| Residential | 60 |
| All other Zoning Districts | 15 |

> Interior yards abutting residential district. There shall be no structure, open storage of materials or equipment, or the parking of vehicles in a required interior yard abutting a residential district. There shall be no paving in such required setbacks except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other driveways or auto maneuvering areas are permitted in the interior yards.

9.3-5.13. Signs

    A. The Bulk Restrictions Section of the Aurora Zoning Ordinance shall apply.

## CHAPTER C. GENERAL PROVISIONS

### SECTION 10. ADMINISTRATION

**10.1. Enforcing officer.**

10.1-1. The zoning administrator of the City of Aurora shall be responsible for the enforcing of this zoning ordinance. Said zoning administrator shall have the power and shall see that the provisions of this ordinance are properly enforced.

10.1-2. Restrictions on employees. No official or employee responsible for the enforcing of this ordinance shall engage directly or indirectly in the construction industry or the building professions, or in any type of gainful employment or business that conflicts with official duties or the interests of the business incorporated in this ordinance.

**10.2. Zoning permit.**

10.2-1. No building or structure shall be erected, reconstructed, enlarged, or moved until a zoning permit shall have been applied for in writing and issued by the zoning administrator.

Said permit shall be posted in a prominent place on the premises prior to and during the period of erection, reconstruction, enlargement or moving.

Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance.

10.2-2. Site plan. Every application for zoning permit submitted to the zoning administrator shall be accompanied by a site plan, drawn to scale, showing the lot and the building site and the location of existing buildings on the lot, accurate dimensions of the lot, yards and building or buildings together with locations and uses and together with such other information as may be necessary to the enforcement of this ordinance.

10.2-3. Interpretation of ordinance. In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of health, safety, morals, convenience of the general welfare.

10.2-4. Variations by zoning administrator. The zoning administrator is authorized to grant certain variations without a public hearing or notice but only in the specific instances hereinafter set forth. The zoning administrator shall make written findings of fact in accordance with the standards outlined in this section. Said findings shall be made available for public examination and review and shall be filed with the secretary of the zoning board of appeals. Variations may be granted in the following instances and no others:

10.2-4.1. To permit any yard or setback less than that required by the applicable regulations, but by not more than one (1) foot or ten (10) percent, whichever is greater;

10.2-4.2. To permit the same off-street parking facility to qualify as required facilities for two (2) or more uses, provided the substantial use of such facility by each use does not take place at approximately the same hours of the same days of the week;

10.2-4.3. To reduce the applicable off-street parking or loading facilities required by not more than one (1) parking space or loading space, or twenty (20) percent of the applicable regulations, whichever number is greater, provided, however, in applying the twenty (20) percent reduction, the maximum number of spaces reduced shall not exceed ten (10) spaces;

10.2-4.4. To increase by not more than twenty-five (25) percent the maximum distance that required parking spaces are permitted to be located from the use served;

10.2-4.5. To increase by not more than ten (10) percent the maximum gross floor area of any use so limited by the applicable regulations;

10.2-4.6. To allow the expansion of a legal nonconforming principal building so long as the proposed expansion meets all requirements of this ordinance;

10.2-4.7. To allow the expansion of a legal nonconforming accessory building provided that the proposed expansion meets all requirements of this ordinance.

10.2-4.8. To permit an increase in the maximum lot coverage to allow for a one story, maximum twenty foot by twenty foot, two-car garage with a leading driveway to be built on a residential lot, the following guidelines shall apply to said structures:

   A. A Private recreational rear yard area shall be maintained.

   B. Said garage shall be the only garage allowed on the lot.

   C. Garage doors shall not be of a height greater than 8 feet

   D. Said leading driveway width shall not exceed the garage door width by more than 2 feet in either direction.

   E. Side walls of said garage shall not exceed 9 feet in height

10.2-4.9. When deemed appropriate by the zoning administrator, the zoning administrator may require that the application be reviewed and approved or denied by the zoning board of appeals, pursuant to this section of this ordinance.

10.2-4.10. All variation decisions made by the zoning administrator are appealable to the zoning board of appeals within ten (10) business days from the day of the decision by the zoning administrator under procedure established in this section of this ordinance.

10.2-5. Setback reduction by planning and developing committee. Pursuant to the B-1 Local Retail Business District, the B-2 General Retail Business District, the B-3 Services and Wholesale District, the O Office District, the M-1 Limited Manufacturing District and the M-2 General Manufacturing District setback reductions for parking lots may be reduced to ten (10) feet subject to the following procedure:

10.2-5.1. The property owner shall submit a site and landscape plan to the zoning administrator. The plan shall effectively mitigate the effects of reducing the parking lot setback by adequate screening and creating a quality appearance along the public right-of-way.

10.2-5.2. The zoning administrator and planning director shall review the plan. They shall, within thirty (30) days, submit their written recommendation to the planning and development committee of the city council for their consideration at their next

002555

available meeting. The planning and development committee shall make the decision with regard to the setback reduction and shall approve, deny, or modify the recommendation. Approval or denial of the setback reduction shall not be final until the expiration of the appeal period as described below. If an appeal is filed, the decision by the committee also becomes a recommendation to the city council and final decision on the setback reduction shall be made by the city council.

10.2-5.3. The approval or disapproval by the planning and development committee of the setback reduction is appealable to the city council by the applicant or a member of the city council. Appeals may be filed only within four (4) business days from the day of the decision by the committee. All appeals shall be filed by 5:00 p.m. on the fourth business day as described above with the city clerk or the City of Aurora's petition for appeal to the city council.

**10.3. Certificate of occupancy.**

10.3-1. A certificate of occupancy to be issued by the zoning administrator shall be required for any of the following, except buildings incidental to agricultural operations other than residences:

10.3-1.1. Occupancy and use of a building thereafter erected or enlarged;

10.3-1.2. Change in use of an existing building;

10.3-1.3. Occupancy and use of vacant land except for the raising of crops;

10.3-1.4. Change in the use of land to a use of a different classification except for the raising of crops;

10.3-1.5. Any change in the use of a nonconforming use.

10.3-2. No such occupancy, use or change of use, shall take place until a certificate of occupancy therefore shall be issued.

Written application for a certificate of occupancy for a new building or for an existing building that has been enlarged shall be made at the same time as the application for the zoning permit for such building. Said certificate shall be acted upon within three (3) days after a written request for the same has been made to the zoning administrator after the erection or enlargement of such building or part thereof has been completed in conformance with the provisions of this ordinance.

Pending the issuance of such a certificate, a temporary certificate of occupancy may be issued by the zoning administrator for a period of not more than six (6) months during the completion of the construction of the building or of alterations that are required under the terms of any law or ordinance. Such temporary certificate may be renewed, but it shall not be construed in any way to alter the respective rights, duties or obligations of the owner or of the city relating to the use or occupancy of the land or building, or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately ensure the safety of the occupants.

Written application for a certificate of occupancy for the use of vacant land, or for a change in the use of land or of a building, or for a change in a nonconforming use, as

herein provided, shall be made to the zoning administrator.

If the proposed use is in conformity with the provisions of this ordinance, the certificate of occupancy therefore shall be issued within three (3) days after the application for the same has been made.

Each certificate of occupancy shall state that the building or proposed use of a building or land complies with all provisions of this ordinance.

A record of all certificates of occupancy shall be kept on file in the office of the zoning administrator and a copy shall be forwarded, on request, to any person having proprietary or tenancy interest in the building or land affected.

**10.4. Zoning board of appeals.**

10.4-1. Zoning board of appeals established. There is hereby established a zoning board of appeals. Said zoning board of appeals shall consist of seven (7) members appointed by the city council of the City of Aurora. Three (3) to be appointed by the mayor and one (1) by each commissioner.
One (1) for one (1) year;
One (1) for two (2) years;
One (1) for three (3) years;
One (1) for four (4) years;
One (1) for five (5) years;
One (1) for six (6) years;
One (1) for seven (7) years.

The successor of each member so appointed shall serve for a term of five (5) years. Vacancies shall be filled by the city council for the unexpired term. Members may be removed by the city council for cause after written charges have been filed and after a public hearing has been held if demanded by the member so charged. One (1) of the members of said zoning board of appeals at the time of his appointment shall be designated by the city council of the City of Aurora, as chairman of said zoning board of appeals and shall hold said office as chairman until a successor is appointed. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses.

The zoning administrator shall be the executive secretary and shall attend all meetings called by the board. The zoning board of appeals shall have a secretary and may employ a court reporter that shall make and keep a record of all of its meetings and official acts.

The zoning board of appeals in existence at the time of the passage of this ordinance shall be recognized as the zoning board of appeals established under the provisions of this ordinance, and the members previously appointed under the old ordinance shall be recognized as members thereof, and shall serve for such period of time as designated at time of appointment--the time to run from the date of the original appointment under the old ordinance.

10.4-2. Jurisdiction. The zoning board of appeals is hereby vested with the following jurisdiction and authority:

10.4-2.1. To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance;

10.4-2.2. To hear and pass upon applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein;

10.4-2.3. To hear and decide all matters referred to it or upon which it is required to pass under this zoning ordinance as prescribed by statute.

10.4-3. Meetings. All meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the zoning board of appeals may determine. Notice for these meetings shall be conducted pursuant to the Amendment Section hereof. All such meetings of the zoning board of appeals shall be open to the public.

The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon every question, or if absent or failing to vote, indicating such fact, and shall also keep records of its examinations and other official actions. Findings of fact shall be included in the minutes of each case and the reasons for granting or denying such application shall be specified. Every rule, regulation and every order, requirement, decision, or determination of the zoning board of appeals shall immediately be filed in the office of the secretary and shall be of public record.

The zoning board of appeals meeting shall be recorded on tape and maintained on file at the city for a period of seven (7) years.

The zoning board of appeals shall adopt its own rules of procedure and may require submission to each record, plats and other information necessary to make its determinations. A copy of said rules and procedure, and all recommendations thereto, shall be filed in the office of the secretary.

The minutes of the zoning board of appeals shall be open to public examination at reasonable hours.

Expenses incurred by the zoning board of appeals are to be itemized and shall be borne by the City of Aurora.

Each member of the Aurora zoning board of appeals shall receive the sum of ten dollars ($10.00) as compensation for each meeting attended. The amount of said compensation may be increased from time to time by council resolution without the necessity of public hearing thereof.

10.4-4. Finality of decisions of the zoning board of appeals. All decisions and findings of the zoning board of appeals, on appeal or upon application for a variation after a hearing shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided.

**10.5. Variations.**

10.5-1. Purpose. The zoning board of appeals, after a public hearing, may determine and also vary the regulations of this ordinance in harmony with their general purpose and intent, only in the specific instances hereinafter set forth, where the board of appeals makes findings of fact in accordance with the standards hereinafter prescribed, and further finds that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this ordinance.

10.5-2. Application for variation and notice of hearing. An application for a variation shall be filed in writing with the zoning administrator. The application shall contain such information as the zoning board of appeals may from time to time, by rule, require. However, all requests, other than those involving land zoned R-1, single-family, shall include a dated site plan for the development of the property designating specific locations for all fencing, landscaping, buildings and appurtenant structures and labeling all such buildings and structures with their function. Said unaltered site plans shall be reproducible mylar to scale, and have affixed to them a signature block indicating approval by the ZBA chairman, zoning administrator, and petitioner. Variations other than those authorized by this section, on which the zoning board of appeals may act, shall be submitted to the zoning board of appeals and acted on in the following manner:

The zoning board of appeals shall publish notice of a public hearing pursuant to the Amendments Section hereof. Notice of the public hearing may be mailed to the petitioner and the owners of all property deemed by the zoning board of appeals to be affected thereby.

The zoning board of appeals shall, within thirty (30) days after the public hearing or hearings, make its recommendations to the city council in writing. The city council shall then act upon such petition for variation within a reasonable time.

10.5-3. Standard for variations. The zoning board of appeals shall not vary the regulations of this ordinance, nor recommend to the city council variations of this ordinance, unless it shall make findings based upon the evidence presented to it in each specific case that the standards for hardships set forth in the Illinois Municipal Code are complied with and the following:

10.5-3.1. Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience, if a strict letter of regulations were carried out;

10.5-3.2. The conditions upon which the petition for a variation is based are unique to the property for which the variance is sought and are not applicable, generally, to other property within the same zoning classification;

10.5-3.3. The alleged difficulty or hardship is caused by the ordinance and has not been created by any person presently having an interest in the property;

10.5-3.4. The granting of the variation will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located; and

10.5-3.5. The proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion in the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood.

10.5-4. The zoning board of appeals may impose such conditions and restrictions upon the premises benefited by a variation as may be necessary to comply with the standards established in this section, to reduce or minimize the effect of such variation upon other property in the neighborhood and to better carry out the general intent of the ordinance.

10.5-5. Authorized variation. Variations from the regulations of this ordinance shall be granted by the zoning board of appeals only in accordance with the standards established in this section, and may be granted only in the following instances and in no others:

10.5-5.1. To permit any yard or setback less than the yard or setback required by the applicable regulations, but by not more than fifty (50) percent;

10.5-5.2. To permit the use of a lot or lots for a use otherwise prohibited solely because of insufficient area or width of the lot or lots but in no event shall the respective area and width of the lot or lots be less than ninety (90) percent of the required area and width. The percentage set forth in this subparagraph is not to be reduced by any other percentage for minimum lot width and area set forth in this ordinance the Bulk Restrictions Section;

10.5-5.3. To increase the height of any fence but not to exceed seven (7) feet, and to vary other provisions in the R-1 One-Family Dwelling District Section.

10.5-5.4. To reduce the applicable off-street parking or loading facilities required by not more than one parking space or loading space, or twenty (20) percent of the applicable regulations; provided, however, in applying the twenty (20) percent reduction, the maximum number of spaces to be reduced shall not exceed twenty (20) spaces;

10.5-5.5. To increase by not more than fifty (50) percent the maximum distance that required parking spaces are permitted to be located from the use served;

10.5-5.6. To increase by not more than twenty (20) percent the maximum gross floor area of any use so limited by the applicable regulations;

10.5-5.7. To exceed any of the authorized variations allowed under this section, when a lot of record or a zoning lot, vacant or legally used on the effective date of this ordinance, is by reason of the exercise of the right of eminent domain by any authorized governmental body or by reason of a conveyance under threat of an eminent domain proceeding reduced in size so that the remainder of said lot of record or zoning lot or structure on said lot does not conform with one or more of the regulations of the district in which said lot of record or zoning lot or structure is located. The concurring vote of four (4) members of the zoning board of appeals shall be necessary to grant a variation.

10.5-6. Other variations. Variations other than those listed above may be granted by the city council, but only after a public hearing as set forth herein for an authorized variation, and a report from the zoning board of appeals recommending the variation. The

C 0 2 5 6 0