BEFORE THE ZONING BOARD OF APPEALS
AURORA, ILLINOIS

Kim Frachey, Nancy Maloney,              )
*et al.,* and Fox Valley Families         )
Against Planned Parenthood,              )
                                         )
Appellants,                              )
                                         )        07 ZBA 001
vs.                                      )
                                         )
City of Aurora,                          )
A Municipal Corporation,                 )
                                         )
Appellee.                                )

### APPELLANTS' MOTION FOR ISSUANCE OF SUBPOENAS *DUCES TECUM* FOR EXPEDITED DEPOSITIONS OF MR. ED SIEBEN, MR. HERMAN BENEKE, MR. PHILLIP LEUTKEHANS, AND MR. RICHARD MARTENS

Now come Kim Frachey, Nancy Maloney, Socorro Nieto, Chad and Natalie Fiolo, neigboring landowners, and Fox Valley Families Against Planned Parenthood (hereinafter "Appellants"), by their undersigned counsel, and move that the Zoning Board of Appeals issue subpoenas *duces tecum* for Appellants to conduct expedited depositions of Mr. Ed Sieben, Aurora Zoning Administrator; Mr. Herman Beneke, Building Official; Mr. Phillip Leutkehans, Zoning Expert for Aurora; and Mr. Richard Martens, Zoning Expert for Aurora.  In support whereof, Appellants state the following:

### After Almost Two Years in Process, the City Has Acknowledged It Applied the Wrong Zoning to the Subject Property.

1.  In its Motions to Dismiss of November 15, 2007, and December 5, 2007, the City of Aurora acknowledged that

> The zoning for the subject property was approved and adopted by the City Council of the City of Aurora via Ordinance O93-124 on December 7,1993. (Exhibit A1, Motion to Dismiss, pg 2, Bates 6; Exhibit A2, Amended Motion to Dismiss, pg 2)

> Under Ordinance O93-124, the uses for the property are B-B Business Boulevard permitted uses. (Exhibit B1, O93-124, pg 5, Bates 357) The standards for the property are B-B Business Boulevard zoning standards. (Exhibit B2, O93-124, pg 8, Bates 360).

2.  This new determination clearly contradicts the zoning determinations made by the City in its permitting process and by Attorneys Leutkehans and Martens in their respective investigations.  Attorney Leutkehans held that the property was either

1

subject to a combined B-1, B-2, B-3, O district under 1973 Ordinance 4330 or subject to a B-2 district "underlying zoning." (Exhibit C, Leutkehans Report, 10/1/07, pg 2) Attorney Martens cited a Summary of Land Use History, issued by City Planner Stephanie Phifer, which held that the property was subject to a B-1 use district imposed by Preliminary Plat Resolution R97-203 from 1997. (Exhibits D1 & D2, Martens Report, 9/13/07, pg 7 & Tab 16)

3.  Based on their respective reports, it appears the City did not provide the correct zoning ordinance, O93-124, to Attorneys Leutkehans and Martens. If the City did not provide the ordinance, Attorneys Leutkehans and Martens should give sworn testimony on the effect of the ordinance on their zoning determinations. If the City provided the ordinance, Attorneys Leutkehans and Martens should give sworn testimony as to why they did not apply the ordinance to the subject property.

**Appellants Notified the Zoning Administrator of the Correct Zoning Ordinance on October 19, 2007, and He Has Not Acted to Remedy the Numerous Evident Violations Indicated Under that Ordinance, O93-124.**

4.  The Appellants brought the correct zoning to public light in their Notice of Amendment of Appeal on October 19, 2007, which was delivered in person to the Zoning Administrator, Mr. Ed Sieben, on that day. Applying the correct zoning ordinance, Appellants clearly indicated the numerous zoning violations that have been committed throughout this permitting process—violations that outlaw the ongoing use of the property to the present day. In derogation of his mandatory duty under AZO 14.1-2, Mr. Sieben has not "immediately" moved to abate the zoning violations on the property. Based on the admission that O93-124 applies, the Zoning Administrator, Mr. Ed Sieben, should clarify, with sworn testimony, the zoning violations committed in breach of Ordinance O93-124 during the permitting process and why he has failed to remedy and abate this illegal land use.

**The Ongoing Use of the Subject Property in a B-B Business Boulevard District is Prohibited, and Under Ordinance O93-124, City Council Approval Was Required and Not Obtained Prior to Final Plan Submission, Rendering the Permits Void *Ab Initio*.**

5.  Applicant's not-for-pecuniary-profit health-related facility is a **prohibited use** in a B-B Business Boulevard district **under all circumstances.** (AZO 8.6-4.4) The facility could have been allowed under special use circumstances in the B-1, B-2, B-3, or O districts, but **never** in a B-B district. Thus Aurora's zoning law prohibited use of this land for the facility that Planned Parenthood built and now is operating in defiance of law. The zoning code would have required amendment in order to permit this use at this location. That would have necessitated a free, open and robust debate in the City Council where the people's voice would have been heard.

6.  Moreover, the plans for the property show that they were approved in clear violation of a variety of B-B zoning requirements. (Exhibits E1-E3; Final Plan, Landscape

CO1398

Plan, Site Plan; "2006.390 – Updated Record Submission" from City; pp 100, 101, 105) Even if Planned Parenthood's land use was otherwise permitted in a B-B district, any one of these significant departures from the B-B zoning standards would have required variances. Each of these variances would have required notice to nearby landowners and a public hearing, culminating in either approval or disapproval:

A. The building is too large for the parking spaces provided. (AZO 8.6-5.2.E)
B. The parking spaces are too small. (AZO 8.6-5.1.G.ii)
C. The backup space in the parking lot is not sufficient. (AZO 8.6-5.1.G.ii)
D. The paved parking lot extends at least five feet into the required front yard setback, in violation of both setback and landscape requirements. (AZO 8.6-5.1.B.i & 5.4-4.1.A.iii)

7. At the time of issuance of the certificate of occupancy—and to the present—these violations have persisted on the property, along with obstructions in the required visibility clearance zone (AZO 8.6-5.1.G.ii) and illegal fencing in violation of numerous AZO requirements. (AZO 4.2-4.1, *et seq.*)

8. According to Ordinance O93-124 and the AZO, submission of Final Plans for this property required City Council approval, since the deadline for filing Final Plans had passed. (Exhibit B3, O93-124, pg 15, Bates 367; AZO 10.7-8, 10.7-11, 10.7-12.1) In this case, such approval was neither sought nor received. In fact, Gemini did not even submit required Preliminary Plans—or plans that purported to serve as Preliminary Plans—without which Final Plans cannot be approved (AZO 10.7-6 *et seq.*). These clear violations of zoning law render any purported approval of Final Plans void and without legal effect. Thus, no legal authority existed to issue permits and certificates of occupancy, rendering all of them null and void *ab initio* (AZO 10.7-15, 10.2-1, 3.2-6.1). In light of the December 17, 2007, expiration of the final Temporary Certificate of Occupancy issued on October 1, 2007, expedited sworn testimony is needed for the public and ZBA to quickly evaluate these clear violations of law. (Exhibit F, Temporary Certificate of Occupancy, Expiring 12/17/07)

**Planned Parenthood and Gemini Knew or Should Have Known That the Property Was Subject to Ordinance O93-124 and Had to Be Tested Against B-B Business Boulevard District Zoning Requirements.**

9. Gemini Office Development ("GOD") received the property via a Warranty Deed ("the Gemini Deed") executed on March 23, 2006. (Exhibit G, Warranty Deed recorded 4/10/06 as Document No. R2006-064928, Bates No. 61-64) "GOD" took the property "SUBJECT TO: Covenants, conditions and restrictions of record as described on Exhibit A attache[d] heret[o] ". (Exhibit G, Warranty Deed, pg 1, Bates No. 61) Exhibit A lists the "PERMITTED EXCEPTIONS", including

9. TERMS AND CONDITIONS CONTAINED IN TRUSTEE'S DEED RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166187 AND WARRANTY DEED RECORDED AUGUST 9, 2001 AS

C01399

DOCUMENT NO. R2001-166188. (Exhibit G, Warranty Deed, pg 4, Bates No. 64)

10. An "A.L.T.A./A.C.S.M. Land Title Survey" for the property was completed December 9, 2005, and submitted by "GOD" to the City on or about July 27, 2006. Appellants are unable to attach this document to this Motion, since this public document has been inexplicably withheld by the City of Aurora. The survey gives "Notes" on the subject property, telling the reader that

> 3. Building lines are shown only where they are recorded on the maps. **Refer to your deed** or abstract **for additional zoning restrictions**....

> 5e. Property subject to terms & conditions contained in Trustee's Deed recorded as Doc. R2001-166187 & R2001-166188.

11. Trustee's Deed R2001-166187 has a "Rider" referenced and attached as "Exhibit B" that lays out various terms for the property. The Rider states that "The provisions of this Rider shall run with the real estate granted, sold and conveyed hereby for thirty-five (35) years from the date hereof." (Exhibit H, Trustee's Deed recorded August 9, 2001, as Document No. R2001-166187, pg 4, #8) The Rider notifies—and restricts—the property holder to the extent that

> The real estate granted, sold and conveyed hereby is zoned as part of a Planned Development District, sometimes called the Fox Valley East, established pursuant to Section 14.7 of the City's zoning ordinance. Such real estate cannot be developed and no buildings or structures constructed thereon until such time as a Final Plan – as defined and described in the zoning ordinance – has been submitted to and approved by the City. (Exhibit H, Trustee's Deed, pg 4, #3)

The Rider continues, notifying—and restricting—the property holder to the extent that

> The real estate granted, sold and conveyed hereby shall be developed only as a 'Business Area' which under the **Plan Description Modification** which is Exhibit A to the Annexation Agreement, may only be used for **the uses permitted in a B-B Business Boulevard District on 12/7/93** or which become permitted uses thereafter. (Exhibit H, Trustee's Deed, pg 4, #4)

Finally, the Rider notifies—and restricts—the property holder to the extent that

> The Party of the Second Part, shall at its sole cost and expense, **prepare and obtain the City's approval for a Preliminary Plan and thereafter a Final Plan** for the real estate granted, sold and conveyed hereby **which shall designate such real estate as a 'Business Area'**. (Exhibit H, Trustee's Deed, pg 4, #5)

4

CC14C0

12. Warranty Deed R2001-166188 has a "Rider" referenced and attached as "Exhibit A" that lays out similar pertinent terms to those of Trustee's Deed R2001-166187. (Exhibit I, Warranty Deed recorded August 9, 2001, as Document No. R2001-166188, pp 3-4)

13. Planned Parenthood cannot claim that it acted in "good faith" in reliance on any mistake by the City when its own deeds spelled out the laws that bound it, as they bind every other citizen of Aurora. Any liability for the myriad zoning violations in this matter fall squarely on the shoulders of Planned Parenthood. The City should immediately enforce the applicable zoning ordinance, O93-124, against the subject property.

**The City Told a Federal District Court That Its October *2007* "Zoning Review"
Would Cover "the Whole Process of Application" and Would Result in a
"Decision," But Now It Tells Aurora's Zoning Board of Appeals That No Zoning
Decision or Determination Has Occurred Since October *2006*.**

14. Just last Friday, December 7, Appellants received transcripts of proceedings before Federal Judge Charles Norgle in the case <u>Planned Parenthood Chicago Area v. City of Aurora</u>, 07 C 5181 (N.D. Ill). (Exhibit J, 9/17/07 transcript; Exhibit K, 9/20/07 transcript) In that case, Planned Parenthood made a motion that it be allowed to open its facility before the City completed its review. That motion for preliminary injunction comprises the main thrust of the argument in these transcripts. The City defeated Planned Parenthood's motion. During the argument, the City told Judge Norgle that the October 1 review would be a full and complete **zoning** review. What the City told Judge Norgle directly contradicts what it is telling the Zoning Board of Appeals here—that no zoning decision was made in the review concluded October 1, 2007. The City must not be permitted to contradict itself here, taking a position opposite to the one it took—successfully!—in Federal Court.

15. In order to win its defense, the City represented to Judge Norgle that it was performing a **"zoning review."** (Exhibit J, 9/17/07 transcript, pg 10, ln 17) The City defended its review because "from the City's perspective there is a **zoning** interest in the property." (Exhibit J, 9/17/07 transcript, pg 17, lns 1-2)

16. Counsel for the City told Judge Norgle that the review included

    **...investigating the whole process of application**, down through the present of this application, to make sure **everything** was done according to Code, and **complies completely** with Code. (Exhibit J, 9/17/07 transcript, pg 24, lns 15-18)

17. Counsel told Judge Norgle that "The City of Aurora decided to do an independent review of the process to **determine** whether its own codes were followed properly." (Exhibit J, 9/17/07 transcript, pg 25, lns 2-5, emphasis added)

001401

18. In order to convince Judge Norgle to allow the zoning review to conclude before allowing the facility to open, Counsel for the City stated that "Our position is we haven't decided yet and we'd like to be able to **decide**." (Exhibit J, 9/17/07 transcript, pg 27, lns 14-15) Counsel for the City and the Court itself repeatedly refer to a "decision" as the final result of the investigation. (Exhibit J, 9/17/07 transcript, pg 11, ln 1: "The City has not reached **a decision**." pg 28, lns 14-15: "The City completes its review, and then it gives a **decision**." pg 32, lns 10-12: "The City...is going to make a **decision** regarding the certificate of occupancy very quickly." pg 45, lns 23-24)

19. In one instance, Counsel for the City told the Federal Court that "My response is that the City is investigating the process, and whether there was any issue that's related to the **zoning**, the classification, and the right to open, and we're going -- **and the City will act upon that investigation**." (Exhibit J, 9/17/07 transcript, pg 37, lns 17-20)

20. This zoning review concluded with zoning decisions, determinations, orders and/or requirements. These zoning decisions, determinations, orders and/or requirements include some of the following: 1) a press conference was held, announcing that the legal requirements for permits and certificates were met for the property and facility, 2) three Temporary Certificates of Occupancy were issued, and 3) a requirement was imposed that Planned Parenthood sign a statement of restriction of use. The public and the ZBA need the sworn testimony of the key individuals—Mr. Ed Sieben, Mr. Herman Beneke, Mr. Phillip Leutkehans, and Mr. Richard Martens—to better understand the conclusions reached in this zoning review, and how the City's new admission impacts that zoning review.

### City Continues to Deny Access to Pertinent Records

21. When Counsel for the Appellants visited City offices to inspect documents provided pursuant to a Freedom Of Information Act (FOIA) request, he was denied copies of certain drawings and plans, status reports, and numerous other official correspondence between the City and Gemini/Planned Parenthood. Mr. Vincent Tessitore, Esq., a property owner in Aurora and an expert witness for the Appellants, requested documents pertinent to this appeal from the City under FOIA, and substantial parts of his request were denied, as shown in the attached letter and correction from Corporate Counsel, sent on Monday, December 10, 2007, and Wednesday, December 12, 2007. (Exhibit L, FOIA Response to Vincent Tessitore, 12/10/07 & 12/12/07)

22. The City continues to refuse to provide these public documents to the Appellants and citizens of Aurora. These documents will never see the light of day—unless the ZBA orders the City to produce them. Appellants believe some of these documents may be in the possession or under the control of Messrs. Sieben, Beneke, Leutkehans, and Martens and available through them via depositions pursuant to subpoenas *duces tecum*. If these zoning experts performed a "thorough" investigation of "the whole process of application," they should explain, under oath, how they arrived at their

6

conclusions—now admitted to be incorrect by the City. Counsel for the Appellants have been instructed by Corporate Counsel not to speak to the City officials who have pertinent information on this matter. Moreover, these officials have been placed under a gag order by the Corporate Counsel, such that Appellants and members of the public cannot consult with these involved officials, even informally, about this matter. Without the ZBA ordering sworn testimony, the public and the ZBA cannot adequately evaluate the zoning decisions and determinations made in this matter.

WHEREFORE, the Appellant Objectors respectfully request that this Board grant them the requested relief and issue the subpoenas *duces tecum* for expedited depositions of Mr. Ed Sieben, Aurora Zoning Administrator; Mr. Herman Beneke, Aurora Building Official; Mr. Phillip Leutkehans, Zoning Expert for Aurora; and Mr. Richard Martens, Zoning Expert for Aurora and for all other relief warranted on the premises in accordance with the law.

On behalf of the Appellants,


_____/s/Peter Breen/s/_____


Of Counsel
Peter Breen, 630-544-4455
Thomas Brejcha, 312-590-3408
Thomas More Society,
A public interest law firm
29 S LaSalle St, Ste 440
Chicago, IL 60603
December 12, 2007

C01403

# EXHIBIT A1

001404

Appellants cite several sections of the Illinois Municipal Code and the Aurora Zoning Ordinance with respect to their appeal regarding this property, located at 3051 E. New York Street (hereinafter "the subject property").

## LACK OF SUBJECT MATTER JURISDICTION

The first statutory section cited by Appellants is 65 ILCS 5/11-13-12 of the Municipal Code, which provides that "an appeal to the board of appeals may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality. The appeal shall be taken within 45 days of the action complained of by filing, with the officer from whom the appeal is taken and with the board of appeals a notice of appeal, specifying the grounds thereof."

The zoning for the subject property was approved and adopted by the City Council of the City of Aurora via Ordinance 093-124 on December 7, 1993. The Zoning Administrator approved the use to be made of the subject property as submitted in the final plan document as being in accordance with the previously adopted zoning for the subject property in a staff report dated October 27, 2006, which report was published to the Planning Commission at a public meeting on November 1, 2006, and to the Planning and Development Committee at a public meeting on November 16, 2006. Therefore and according to 65 ILCS 5/11-13-12 which Appellants cite as authority, it has been more than 45 days since any zoning determination by the Zoning Administrator was made for the subject property.

Further, the City of Aurora Zoning Ordinance provides, in Section 10.4-2 of that Ordinance, that "the zoning board of appeals is hereby vested with the following jurisdiction and authority: 10.4-2.1 To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance..." As well, the "Rules and Regulations For Aurora Zoning Board of Appeals" states, in the "Procedures on Appeals" section at page 3 of such Rules, that "an appeal for an interpretation of the Zoning Administrator's decision may be taken by any person aggrieved, or officer, department or bureau head of the municipality affected by the Zoning Administrator's decision. An appeal shall be filed with the Zoning Administrator

2

001405

# EXHIBIT A2

C01406

Appellants cite several sections of the Illinois Municipal Code and the Aurora Zoning Ordinance with respect to their appeal regarding this property, located at 3051 E. New York Street (hereinafter "the subject property").

## LACK OF SUBJECT MATTER JURISDICTION

### A.    TIMELINESS OF APPEAL

The first statutory section cited by Appellants is 65 ILCS 5/11-13-12 of the Municipal Code, which provides that "an appeal to the board of appeals may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality. The appeal shall be taken within 45 days of the action complained of by filing, with the officer from whom the appeal is taken and with the board of appeals a notice of appeal, specifying the grounds thereof."

The zoning for the subject property was approved and adopted by the City Council of the City of Aurora via Ordinance 093-124 on December 7, 1993. The Zoning Administrator approved the use to be made of the subject property as submitted in the final plan document as being in accordance with the previously adopted zoning for the subject property in a staff report dated October 27, 2006, which report was published to the Planning Commission at a public meeting on November 1, 2006, and to the Planning and Development Committee at a public meeting on November 16, 2006. Therefore and according to 65 ILCS 5/11-13-12 which Appellants cite as authority, it has been more than 45 days since any zoning determination by the Zoning Administrator was made for the subject property.

Further, the City of Aurora Zoning Ordinance provides, in Section 10.4-2 of that Ordinance, that "the zoning board of appeals is hereby vested with the following jurisdiction and authority: 10.4-2.1 To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance..." As well, the "Rules and Regulations For Aurora Zoning Board of Appeals" states, in the "Procedures on Appeals" section at page 3 of such Rules, that "an appeal for an interpretation of the Zoning Administrator's decision may be taken by any person aggrieved, or officer, department or bureau head of the municipality affected by the Zoning Administrator's decision. An appeal shall be filed with the Zoning Administrator

C01407

# EXHIBIT B1

### Plan Description Modification

### Part One

### Section II

### Permitted Uses and

### Percentage Limitation of Land Uses

1.    Only the uses that are permitted uses on December 7, 1993 or which subsequently become permitted uses in a B-B Business Boulevard District of the Zoning Ordinance shall be permitted uses in the Business Areas of the Region to which this Modification applies, e.g. those Business Areas of the Region which have not yet been Final Planned and Final Platted; except that in the "Business Area" located at the southeast corner of the intersection of Montgomery Road and the Waubonsie Creek, only the uses that are permitted uses on December 7, 1993 or subsequently become permitted uses in an O-Office District of the Zoning Ordinance shall be the permitted uses in that "Business Area".

In the "Business Areas" located at: the northeast corner of North Aurora Road and Relocated Eola Road, the southwest corner of East New York Street and Eola Road, and the southwest corner of Ridge Avenue and Route 34/Ogden Avenue, the development of a fast food restaurant thereon with a drive-up facility will only be considered as a "special use" if any part of the applicable restaurant building is to be located within 250 feet or less of a residential property line.

-5-

000557

# EXHIBIT B2

001410

Plan Description Modification

Part One

Section III

Zoning Standards and Residential Density

The standards set forth in this Section III shall be applicable in lieu of comparable or similar standards or requirements of the Zoning Ordinance, and all standards and requirements of the Zoning Ordinance inconsistent with the standards set forth herein shall be inapplicable. Any uncertainty between the applicability of a standard or requirement of the Zoning Ordinance and the applicability of a standard set forth in this Modification shall be resolved in favor of the standard set forth herein.

1.   The standards applicable from time to time to lands in B-B Business Boulevard Districts shall apply in such "Business Areas" of the Region (as designated on the 1993 Plan) not yet Final Planned and Final Platted, as depicted on Section II of Part Three of this Modification.

2.   The standards applicable in "Residential Areas" of the Burlington Properties (as designated on the 1993 Plan) falling within Areas 1, 2 and 3, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be the standards for an R-1 District in the Zoning Ordinance on December 7, 1993, but with the following modifications:

a.   the front yard set back shall be 25 feet instead of 30 feet; and

-8-

C01411

# EXHIBIT B3

001412

all City ordinances and regulations which are contrary to or inconsistent with the matters set forth in the foregoing paragraph. The criteria and standards are intended to supersede and replace all provisions in the Principal Agreement, Plan Description and that certain letter agreement between Developer and the City dated July 31, 1984 (the "1984 Agreement") which cover or address the matter of storm water retention with respect to the Burlington Properties.

      c.   Storm water retention and detention facilities within the portions of the Region designated on the 1993 Plan as "Business Areas" to which this Modification applies shall be constructed in accordance with the provisions of the Plan Description as modified and supplemented by the 1984 Agreement.

      2.   Any change in the above described storm water retention and detention requirements described in Paragraph 1 above which receives the approval of the City Engineer shall be deemed a reasonable variation for the purpose of clause (a) of Subsection 14.7-6 of the Zoning Ordinance.

      3.   <u>Time Limitations for Submission of Preliminary and Final Plans.</u>

Preliminary Plans shall be submitted for approval prior to December 7, 2000. Final Plans for all portions of the Region shall be submitted for approval prior to December 7, 2003.

-15-

# EXHIBIT C

001414

Given the fact that the building contained bullet-proof glass and walls in the entryway, the Planned Parenthood emails I have received and the ties between Gemini and Planned Parenthood, it is my opinion that the facility was always intended to be utilized to terminate pregnancies. Further, we were recently given opinion letters from attorneys for Planned Parenthood showing that the sole member of Gemini is 21st Century Office Development LLC ("21st Century") and that the sole member of 21st Century is Planned Parenthood/Chicago Area. Accordingly, there can be no doubt that the intended user for the development was always Planned Parenthood.

## II.    CITY OF AURORA ZONING ORDINANCE

The subject property originally was annexed into the City of Aurora in 1972 as part of a Planned Development District and was zoned B-2 under that Annexation Agreement. In 1993, the Annexation Agreement was amended and restated pursuant to Ordinance No. 093-123. The amendment and restatement expired in 2003 pursuant to its terms. However, the zoning for the area was enacted as a Planned Development District ("PDD") by zoning ordinance and runs with the land. Further, tThe underlying zoning of the subject property has remained B-2 Business district since that time. The PDD allows sets forth both "Clinics and medical centers" and "Hospitals or sanitariums, public or private" as permitted uses along with any other "uses that become permitted uses in said B-1, B-2, B-3 and O districts of the Zoning Ordinance subsequent" to the passage of the PDD ordinance.

The City's zoning ordinance in effect at the time of Gemini's application (July 27, 2006) provided that properties used for offices, including medical clinics, are permitted uses in the B-2 Business district. *See* City of Aurora Zoning Ordinance (the "Ordinance"), §§ 12.2-1.34 and 12.3-1.1. Thus, a medical clinic is a permitted use in the B-2 Business district, and no special use permit or public hearing is required for such use. *Id.* Under the Zoning Ordinance in effect at the time of the Application, hHospitals, however, require a special use permit. Ordinance, § 7.1. In order to obtain a special use permit, a public hearing and ordinance granting the special use permit are required.

The Ordinance contains the following definitions:

> Clinic, medical or dental: A building containing an individual practitioner or an association or group of licensed physicians; surgeons, dentists, clinical psychologists, or similar professional health-care practitioners, including assistants. The clinic may include apothecary, dental and medical laboratories and/or x-ray facilities, but shall not include in-patient care or operating rooms for major surgery.

> Clinical or medical center: A "medical center" or "medical clinic" is an establishment where three (3) or more licensed physicians, surgeons or dentists engage in the practice of medicine or dentistry, operating on a group or individual basis with pooled facilities, which need not, but may, include coordinated laboratory, x-ray and allied departments, and a diagnosis and treatment of

# EXHIBIT D1

001416

The largest component of the Project, for approximately $7,400,000, is the acquisition, construction, installation and equipping of a full service health center to serve the Bolingbrook, Naperville and Aurora area. The new Aurora health center will provide approximately 13,000 visits each year when it is completed and will also provide space for community education. The Aurora health center is currently scheduled to open in September of 2007.

On page 38, the Official Statement is executed by Steven Tromble (sic), President and Chief Executive Officer, on behalf of Planned Parenthood / Chicago, and by Theresa A. Huyck, President, on behalf of Gemini Office Development, LLC.

I understand from a representative of IFA that the bonds were sold on May 24, 2007 and the transaction closed. I have filed a Freedom of Information Request with IFA, asking to inspect the bond transcript, but IFA's FOIA Officer told me that IFA does not now have a copy of the transcript, but has asked the underwriter to provide a copy to IFA. See Tab 15 for a copy of my FOIA request. The transcript should contain copies of the Preliminary Inducement Resolution (first notice to the IFA Board of the Project), the TEFRA (Tax Equity and Fiscal Responsibility Act) public hearing notice which is published in one or more newspapers, and the transcript of the TEFRA public hearing.

<u>Compliance with City Codes</u>

The proposed Health Center is a permitted use under the applicable City Zoning Regulations at the subject site on New York Street. See Tab 16 for a Summary of Land Use History prepared by Stephane Phifer, City Planner, in late August, 2007. I understand from staff that the applicant has provided more parking than is required and has provided an acceptable landscape plan.

A temporary occupancy permit was issued on August 16, 2007, with an expiration date of September 16, 2007, a copy of which is in Tab 17. Section 110.4 entitled "Temporary Occupancy" of the 200 International Building Code ("Building Code"), which the City adopted, sets for the effect of the issuance of a temporary occupancy permit, which is to permit occupancy on a temporary basis. To have issued the temporary occupancy permit, the City's Building Official must have found that the building could be occupied safely during the 30-day period.

The Temporary Certificate of Occupancy and Compliance (Tab 17) sets forth three special conditions, pertaining respectively to engineering, zoning and building issues. I understand that the applicant has satisfied the zoning issue. You would need to check with staff to determine the current status of the engineering and building issues.

001417

# EXHIBIT D2

**NA20/3-06.390-FPN** - GEMINI OFFICE DEVELOPMENT - FINAL PLAN ON 3.24 ACRES FOR A 21,777 SQ FT MEDICAL OFFICE BLDG ON LOT 2 OF THE PDA RESUBDIVISION LOCATED NEAR THE SWC OAKHURST AND NEW YORK (Ward 10- JR/JHS)

Parcel Number ............................ 07-20-302-081

Size ................................................ 3.24 acres

Street Frontage ............................ 416 feet, along N. Oakhurst Drive

Current Zoning ............................ PDD Planned Development District

Contiguous Zoning .................... North: PDD (S) Planned Development District
South: PDD Planned Development District
East:  PDD Planned Development District
West:  PDD Planned Development District

Contiguous Land Uses .............. North: Vacant
South: Residential
East:  Residential
West:  Commercial

Comp Plan Designation ............ Commercial

## CHARACTER OF THE AREA

The Subject Property is located near the SWC of Oakhurst Drive and New York Street and at the time of Final Plan approval was utilized as Vacant Land. The property to the north is currently vacant, but is going to be developed as a gas station with car wash. To the south is a residential townhome development. East of the subject property is a residential apartment development. Adjacent to the property on the west side the land is used as a Dominick's.

## DEVELOPMENT PROPOSAL

The GEMINI OFFICE DEVELOPMENT proposed a Final Plan on 3.24 acres for a 21,750 square foot medical office building, on Lot 2 of the PDA Resubdivision of Fox Valley East Region II Unit No. 52 – Oakhurst 1ˢᵗ Resubdivision, located near the SWC of Oakhurst Drive and New York Street. The proposal consisted of a medical office building and 71 parking spaces. The site is proposed to be landscaped pursuant to our current standards including some additional landscaping to the existing berm to screen the adjacent townhome development to the south. The stormwater detention for the site has been provided in the stormwater facility directly to the west of the proposed building.

CC1419

HISTORY

This Final Plan petition was referred by the City Council to the Planning Division on August 1, 2006.

The property was annexed on July 27, 1973 by Ordinance Number O73-4326 pursuant to an Annexation Agreement approved by the City of Aurora on July 27, 1973 by Ordinance Number O73-4315. An Amendment and Restatement of the Principal Annexation Agreement O93-123 approved on December 7, 1993. There were public hearings required for both the 1973 and the 1993 Annexation Agreement actions.

The Final Plan was reviewed as to the substantial conformance with the preliminary plat, which was approved by the City Council on May 27, 1997 by Resolution Number R97-203; with the Plan Description B-1 Business District –Local Retail, Permitted Uses, section 12.2-1.34. "Offices, business and professional, including medical clinics"; and the Schedule of parking requirements section 10.6-10 "For medical or dental clinics – three (3) parking spaces per doctor engaged at clinic, plus one space for each two (2) regular employees including nurses".

At the time of Final Plan approval the property was undeveloped and legally known as Lot 2 of the PDA Resubdivision of Fox Valley East Region II Unit No. 52 – Oakhurst 1st Resubdivision approved by the City of Aurora as Resolution Number PDFNL02-027 on May 16, 2002.

C01420

# EXHIBIT E1

CC1421



# EXHIBIT E2

C01423



# EXHIBIT E3

001425



DRAINAGE FACILITY

VISITOR PARKING - 45 SPACES

EASEMEN

001426

# EXHIBIT F

C01427



# City of Aurora

Division of Building and Permits - 65 Water Street - Aurora, Illinois 60505-3305 - Phone: (630) 892-8088 - Fax: (630) 892-8112

## DEPARTMENT OF COMMUNITY DEVELOPMENT
## DIVISION OF BUILDING AND PERMITS

### CERTIFICATE OF OCCUPANCY AND COMPLIANCE

#### T E M P O R A R Y

```
Issue Date  .  .  .  .  .  .    10/01/07
Expiration Date  .  .  .  .    12/17/07

Parcel Number  .  .  .  .    07-20-302-081
Property Address  .  .  .    3051 E NEW YORK ST
                             AURORA            IL 60504
Subdivision Name  .  .  .
Legal Description  .  .  .    OLD ADDRESS WAS
                             240 N OAKHURST DR
                             VACANT LOT ON THE WEST SIDE OF
                             N OAKHURST DR SOUTH OF
Property Zoning  .  .  .  .    PLANNED DEVELOP DIST

Owner  .  .  .  .  .  .  .  .    GEMINI OFFICE DEVELOPMENT

Contractor  .  .  .  .  .  .    KRAHL CONSTRUCTION
                             312 735-6397

Application number  .  .    06-00003529 000 000
Description of Work  .  .    CON - BUSINESS OFFICES
Construction type  .  .  .    NONCOMBUSTIBLE 1 HOUR
Occupancy type  .  .  .  .    BUSINESS OFFICE
Flood Zone  .  .  .  .  .  .    PLS. VERIFY W/ FEMA MAP
Special conditions  .  .
        TEMP. C.O. IS CONTINGENT UPON THE FOLLOWING ITEMS:
      ENGINEERING; OK FOR TCO UNTIL COMPLETION OF ALL ENGINEERING
          FINAL APPROVAL REQUIREMENTS

Approved  .  .  .  .  .  .  .    _____
                                    Building Official
```

#### VOID UNLESS SIGNED BY BUILDING OFFICIAL

C01428