# EXHIBIT G

001429

UNOFFICIAL COPY

**WARRANTY DEED**
Statutory (Illinois)
(Corporation to Corporation)



**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
APR.10,2006     RHSP     11:01 AM
DEED                     07-20-302-081
**004 PAGES     R2006-064928**

THE GRANTOR, N. Y. OAKHURST,
LLC,

*(the above space for Recorder's use only)*

a limited liability company created and existing under and by virtue of the laws of the State of Illinois and duly authorized to transact business in the State of Illinois, for and in consideration of the sum of TEN and 00/100 ($10.00) Dollars, and other good and valuable consideration in hand paid, CONVEYS and WARRANTS to GEMINI OFFICE DEVELOPMENT, LLC, a limited liability company organized and existing under and by virtue of the laws of the State of Illinois having its principal office at the following address: One South Wacker Drive, Suite 800, Chicago, Illinois 60606, the following described Real Estate situated in DuPage County, in the State of Illinois, to wit:

**Parcel 1:**  Lot 2 in PDA Resubdivision of Lot 2 in Fox Valley East, Region II Unit No. 52-Oakhurst 1st Resubdivision, being part of the Southwest 1/4 of Section 20, Township 38 North, Range 9, East of the Third Principal Meridian, according to the plat of said PDA Resubdivision recorded December 18, 2002 as Document No. R2002-351500, in DuPage County, Illinois.

**Parcel 2:**  Non-exclusive easement upon Lot 39 in Fox Valley East Region II Unit No. 52-Oakhurst, a Subdivision of part of the Southwest 1/4 of Section 20, Township 38 North, Range 9, East of the Third Principal Meridian, in DuPage County, Illinois, for the benefit and burden of Parcel 1 as created by the storm water retention and detention and cost share obligations agreement dated December 1, 1996 and recorded January 3, 1997 as Document R97-000974.

**Parcel 3:**  Non-exclusive easement upon Lot 1 in Fox Valley East Region II Unit No. 52-Oakhurst, a Subdivision of part of the Southwest 1/4 of Section 20, Township 38 North, Range 9, East of the Third Principal Meridian, in DuPage County, Illinois, for the benefit and burden of Parcel 1 as created by the agreement of easements for ingress and egress and covenants for maintenance of easement premises dated December 1, 1996 and recorded January 3, 1997 as Document 97-000976.                                        heret

as described on Exhibit A attache

SUBJECT TO:  Covenants, conditions and restrictions of record; public and utility easements and roads and x Rightways, if any, and taxes for 2005 and subsequent years.

Permanent Index Number (PIN):  07-20-302-081
Address of Real Estate:  Vacant parcel South of Southwest corner of New York and Oakhurst, Aurora , IL

IN WITNESS WHEREOF, said Grantor has caused its name to be signed to these presents by its Members this **23**
day of *March* 2006.

N.Y. OAKHURST, LLC,

By: _____                                    By: _____
MICHAEL BUTLER, Member                                              MARK BUTLER, Member

001430

State of Illinois )
County of Cook )

UNOFFICIAL COPY

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that MICHAEL BUTLER and MARK BUTLER, personally known to me to be Members of N. Y. OAKHURST, LLC, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as such Members they signed and delivered the said instrument, as their free and voluntary act, and as the free and voluntary act and deed of said limited liability company, for the uses and purposes therein set forth.

GIVEN under my hand and official seal this _23_ day of _March_ 2006.

Commission expires _____, 20___

OFFICIAL SEAL
KURT HEERWAGEN
Notary Public, State of Illinois
My Commission Expires 07/09/2009

NOTARY PUBLIC

This instrument was prepared by

Kurt Heerwagen
BOEGER, HEERWAGEN, LUSTHOFF & BRENDEMUHL, P.C.
2914 S. Harlem Avenue
Riverside, IL 60546

STATE OF ILLINOIS
APR -7.06
DUPAGE COUNTY

REAL ESTATE
TRANSFER TAX
0147750
FP326686

Send tax bills to:

GEMINI OFFICE
DEVELOPMENT
1 S. WACKER DR
#800
CHICAGO, IL
60606

Mail To
~~bills to~~:
Mindy W. Sherman
Perkins Coie
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Gemini Office Development, LLC
One South Wacker Drive
Suite 800
Chicago, IL 60606

OR    RECORDER'S OFFICE BOX NO.

CITY OF AURORA
MAR 22.06

REAL ESTATE
TRANSFER TAX
0295500
FP361000

REAL ESTATE TRANSACTION TAX
DEPARTMENT OF REVENUE

Page 2

001431

UNOFFICIAL COPY

**Exhibit A**

**PERMITTED EXCEPTIONS**

1.  TAXES FOR THE YEAR 2005.

2.  EASEMENT IN FAVOR OF COMMONWEALTH EDISON COMPANY, AMERITECH AN NICOR GAS, AND ITS/THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, TO INSTALL, OPERATE AND MAINTAIN ALL EQUIPMENT NECESSARY FOR THE PURPOSE OF SERVING THE LAND AND OTHER PROPERTY, TOGETHER WITH THE RIGHT OF ACCESS TO SAID EQUIPMENT, AND THE PROVISIONS RELATING THERETO CONTAINED IN THE GRANT RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166186, AFFECTING: THE EAST 10.00 FEET OF SAID LOT, EXCEPT THE SOUTH 40.00 FEET THEREOF; THE EAST 20.00 FEET OF THE SOUTH 40.00 FEET; AND THE NORTH 10.00 FEET OF THE SOUTH 40.00 FEET, EXCEPT THE EAST 20.00 FEET THEREOF.

3.  TERMS, PROVISIONS, CONDITIONS AND OBLIGATIONS INCLUDING PROVISION FOR LIEN FOR NONPAYMENT, CONTAINED IN STORM WATER RETENTION AND DETENTION AND COST SHARING OBLIGATIONS DATED DECEMBER 1, 1996 AND RECORDED JANUARY 3, 1997 AS DOCUMENT R97-000974, RE THE COST AND MAINTENANCE OF STORM WATER FACILITIES, AS AMENDED BY AGREEMENT DATED MARCH 17, 2006 BY AND BETWEEN SAFEWAY, INC., A DELAWARE CORPORATION AND N.Y. OAKHURST, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, AND RECORDED AS DOCUMENT NO. [R06-          ].

4.  MATTERS SHOWN ON THE PLAT OF FOX VALLEY EAST, REGION II UNIT NO. 52-OAKHURST 1ST RESUBDIVISION AFORESAID, AS FOLLOWS: 30.00 FEET ALONG THE EAST LINE OF THE UNDERLYING LAND.

[(CHX00810.033]]

3/22/06

001432

UNOFFICIAL COPY

5.  AGREEMENT OF EASEMENT FOR INGRESS AND EGRESS AND COVENANTS FOR MAINTENANCE OF EASEMENT PREMISES DATED DECEMBER 1, 1996 AND RECORDED JANUARY 3, 1997 AS DOCUMENT R97-000976.

6.  SCREEN PLANTING EASEMENT IN FAVOR OF AURORA VENTURE, THE OAKHURST COMMUNITY ASSOCIATION, AND ITS/THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, TO INSTALL, OPERATE AND MAINTAIN ALL EQUIPMENT NECESSARY FOR THE PURPOSE OF SERVING THE LAND AND OTHER PROPERTY, TOGETHER WITH THE RIGHT OF ACCESS TO SAID EQUIPMENT, AND THE PROVISIONS RELATING THERETO CONTAINED IN THE PLAT RECORDED/FILED AS DOCUMENT NO. R94-128614, AFFECTING THE SOUTHERLY 40.00 FEET OF THE UNDERLYING LAND.

7.  TERMS, PROVISIONS AND CONDITIONS CONTAINED IN AGREEMENT OF EASEMENTS FOR STORM SEWER AND DETENTION BASIN RECORDED APRIL 27, 1999 AS DOCUMENT R99-094973, RELATING TO EASEMENTS FOR STORM SEWERS, DETENTION BASIN AND WATER LINES.

8.  COVENANTS AND RESTRICTIONS (BUT OMITTING ANY SUCH COVENANT OR RESTRICTION BASED ON RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN UNLESS AND ONLY TO THE EXTENT THAT SAID COVENANT (A) IS EXEMPT UNDER CHAPTER 42, SECTION 3607 OF THE UNITED STATES CODE OR (B) RELATES TO HANDICAP BUT DOES NOT DISCRIMINATE AGAINST HANDICAPPED PERSONS), RELATING TO THE USE OF THE LAND CONTAINED IN THE DOCUMENT KNOWN AS "RESTRICTIVE COVENANT" DATED AS OF OCTOBER 1, 2004 MADE BY N.Y. OAKHURST, LLC, IN FAVOR OR SAFEWAY INC., AND RECORDED OCTOBER 20, 2004 AS DOCUMENT NO. 2004270390.

9.  TERMS AND CONDITIONS CONTAINED IN TRUSTEE'S DEED RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166187 AND WARRANTY DEED RECORDED AUGUST 9, 2001 AS DOCUMENT NO. R2001-166188.

FRED BUCHOLZ      R2006-064928      DUPAGE COUNTY RECORDER

001433

# EXHIBIT H

001434

### TRUSTEE'S DEED

THIS INDENTURE, Made this ___18 TH___ day of ___JULY___ A.D. 20 __01__ between LA SALLE BANK NATIONAL ASSOCIATION., as successor trustee to LaSalle National Bank, a national banking association, Chicago, Illinois, as Trustee under the provisions of a Deed or Deeds in Trust, duly recorded and delivered to said Bank in pursuance of a trust agreement dated the 10th day of December 1969, and known as Trust Number 40299, party of the first part, and



**J.P. "RICK" CARNEY**
DUPAGE COUNTY RECORDER
AUG.09,2001                    10:38 AM
DEED                    07-20-302-075
**004 PAGES**    R2001-166187

McVickers AURORA, .L.L.C.

party of the second part.
Address of Grantee(s):  2800 West Higgins Road, Suite 205, Hoffman Estates, Illinois 60195

WITNESSETH, that said party of the first part, in consideration of the sum of TEN AND NO/100   Dollars ($10.00) and other good and valuable considerations in hand paid, does hereby grant, sell and convey unto said party of the second part, the following described real estate, situated in DuPage County, Illinois, to wit:

(See Attached Exhibit "A")

together with the tenements and appurtenances thereunto belonging.

TO HAVE AND TO HOLD the same unto said party of the second part as aforesaid and to the proper use benefit and behoof of said party of the second part forever. Subject to the terms, provisions and options set forth in The Storm Water Retention and Detention and Cost Sharing Obligations recorded January 3, 1997 as Document No. R97-000974, Agreement of Easements for Ingress and Egress and Covenants For Maintenance of Easement Premises recorded January 3, 1997 as Document No. R97-000976 and in Exhibit "B" attached hereto and made a part hereof.

This deed is executed pursuant to and in the exercise of the power and authority granted to and vested in said Trustee by the terms of said Deed or Deeds in Trust.  This Deed is made subject to the lien of every Trust Deed or Mortgage (if any there be) of record in said county affecting said real estate or any part thereof given to secure the payment of money and remaining unreleased at the date of delivery hereof.

IN WITNESS WHEREOF, said party of the first part has caused its corporate seal to be hereto affixed, and has caused its name to be signed to these presents by its ~~Assistant Vice President~~ and attested by its Assistant Secretary, the day and year first above written.            LAND TRUST ADMINISTRATOR

ATTEST:                                                    LA SALLE Bank National Association as Trustee to LaSalle
                                                          National Trust N.A. as successor   trustee to LaSalle National
Attestation not required by                               Bank as aforesaid
LaSalle Bank National Association
Bylaws                                                    By
By                                                           ~~Assistant Vice President~~  LAND  TRUST  ADMINISTRATOR
Assistant Secretary

| THIS INSTRUMENT PREPARED BY: | LASALLE BANK NATIONAL ASSOCIATION |
|---|---|
| Linda Mendrala, Aurora Venture | Real Estate Trust Department |
| 3600 Thayer Court, Suite 100 | 135 South LaSalle Street |
| Aurora, Illinois 60504 | Chicago, Illinois 60690 |

AFTER RECORDING RETURN TO:                    SEND SUBSEQUENT TAX BILLS TO:
John McVickers                                 John McVickers
McVickers Development Corporation              McVickers Development Corporation
2800 West Higgins Road, Suite 205             2800 West Higgins Road, Suite 205
Hoffman Estates, Illinois 60195               Hoffman Estates, Illinois 60195

001435

STATE OF ILLINOIS ) I, Lisa S. Smith, a Notary Public in and for said County and State, do hereby
COUNTY OF COOK ) certify

) Anita M. Lutkus , an officer of LaSalle Bank National Association personally
known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before
me this day in person and acknowledged that said officer of said association signed and delivered this
instrument as a free and voluntary act, for the uses and purposes therein set forth.
GIVEN under my hand and seal this 18th day of July, 2001

_Lisa S. Smith_
NOTARY PUBLIC

"OFFICIAL SEAL"
LISA S. SMITH
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 04/25/2005



STATE OF ILLINOIS        REAL ESTATE
        TRANSFER TAX
JUL.27.01
        0172350
DUPAGE COUNTY        FP326686



CITY OF AURORA        REAL ESTATE
        TRANSFER TAX
AUG. -7.01
        0344616
REAL ESTATE TRANSACTION TAX        FP351000
DEPARTMENT OF REVENUE

001436

## EXHIBIT "A"

LOT 2 IN FOX VALLEY EAST, REGION II UNIT NO. 52 - OAKHURST RESUBDIVISION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 20, TOWNSHIP 38 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF SAID RESUBDIVISION RECORDED JANUARY 3, 1997 AS DOCUMENT R97-00972 IN DUPAGE COUNTY, ILLINOIS.

ADDRESS:       SOUTHWEST CORNER OF EAST NEW YORK STREET AND OAKHURST DRIVE
               AURORA, ILLINOIS 60504

P.I.N.         07-20-302-075

EXHIBIT "B"

RIDER ATTACHED TO AND MADE A PART OF TRUSTEE'S DEED
DATED ___7-18___, 2001 BY AND BETWEEN
LA SALLE BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE
TO LASALLE NATIONAL BANK
OF TRUST NO. 40299, AS PARTY OF THE FIRST PART, AND
MCVICKERS DEVELOPMENT CORPORATION
AS PARTY OF THE SECOND PART

1.     The Party of the First Part expressly retains all benefits, including the right to receive any cash payments from governmental bodies, and all rights, including certain rights of election with respect to water, roads and sewers, under that certain Principal Annexation Agreement dated July 27, 1973, by and between the City of Aurora, Illinois ("the City"), the party of the first part, and others therein named, as subsequently amended, restated and extended by agreement dated December 7, 1993 (the "Annexation Agreement").

2.     The party of the second part hereby irrevocably appoints on behalf of itself, its grantees, successors and assigns, Aurora Venture , an Illinois limited partnership, and its successors, assigns or designees, as its true and lawful attorney-in-fact and agent to take any and all actions as may be necessary or required to enter into, execute and deliver, as attorney-in-fact and agent, amendments, extensions or supplements to said Annexation Agreement; provided that no such amendment, extension or supplement may limit any rights of the Party of the Second Part under that certain Sales Agreement between Aurora Venture and the Party of the Second Part having an effective date of November 23, 2000, ("the Agreement"), or impose any financial or other obligations upon Purchaser or upon the real estate herein described or change the zoning or uses permitted to be maintained on the Property or disturb the possession, use and enjoyment of the real estate or limit or restrict the use thereof by the party of the second part and its grantees, successors and assigns.

3.     The real estate granted, sold and conveyed hereby is zoned as part of a Planned Development District, sometimes called Fox Valley East, established pursuant to Section 14.7 of the City's zoning ordinance.  Such real estate cannot be developed and no buildings or structures constructed thereon until such time as a Final Plan – as defined and described in the zoning ordinance – has been submitted to and approved by the City.

4.     The real estate granted, sold and conveyed hereby shall be developed only as a "Business Area" which, under the Plan Description Modification which is Exhibit A to the Annexation Agreement, may only be used for the uses permitted in a B-B Business Boulevard District on 12/7/93 or which become permitted uses thereafter.

5.     The Party of the Second Part, shall at its sole cost and expense, prepare and obtain the City's approval for a Preliminary Plan and thereafter a Final Plan for the real estate granted, sold and conveyed hereby which shall designate such real estate as a "Business Area".  Such Preliminary and Final Plans are subject to certain rights of prior review and approval granted Aurora Venture by Section 9 of the Agreement.

6.     The landscape plans, exterior elevations, floor plans, signage and exterior lighting plans for the Real Estate granted, sold and conveyed hereby ("Plans") are subject to certain rights of review and approval granted to Aurora Venture by the Agreement.  The Agreement also grants Aurora Venture certain rights to approve modifications to approved Plans.

7.     The Party of the Second Part, for itself and its successors and assigns by taking title to the real estate, assumes the duty and obligation to cooperate with and assist the Party of the First Part and Aurora Venture, if after closing Aurora Venture seeks to obtain a zoning change, modification or variance for any lands beneficially owned by Aurora Venture, or owned by the Party of the First Part, other than the real estate granted, sold and conveyed hereby for which the Party of the Second Part's consent or approval is required by any governmental agency; provided however, that any required costs incurred by the Party of the Second Part shall be paid by Aurora Venture.

8.     The provisions of this Rider shall run with the real estate granted, sold and conveyed hereby for thirty-five (35) years from the date hereof.

001498

J. P. "Rick" Carney            R2001166187            DuPage County Recorder

# EXHIBIT I

001439





J.P. "RICK" CARNEY
DUPAGE COUNTY RECORDER
AUG.09,2001                    10:38 AM
DEED                    07-20-302-075
004 PAGES    R2001-166188

## WARRANTY DEED

THE GRANTOR, McVICKERS AURORA, L.L.C., an Illinois limited liability company, in consideration of Ten Dollars ($10.00), and other good and valuable consideration, conveys and warrants to SAFEWAY INC., a Delaware corporation, whose address is 5918 Stoneridge Mall Road, Pleasanton, CA 94588, the following described real estate ("Real Estate") in the County of DuPage, State of Illinois:



LOT 2 IN FOX VALLEY EAST, REGION II UNIT NO. 52 - OAKHURST 1ST RESUBDIVISION BEING A RESUBDIVISION OF LOT 53 IN FOX VALLEY EAST, REGION II UNIT NO. 52 - OAKHURST, IN PART OF THE SOUTHWEST 1/4 OF SECTION 20, TOWNSHIP 38 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF SAID RESUBDIVISION RECORDED JANUARY 3, 1997 AS DOCUMENT R97-000972, IN DUPAGE COUNTY, ILLINOIS.

Permanent Tax No.: 07-20-302-075
Common Address:    Lot 2 Oakhurst First Resubdivision, Aurora, Illinois
                   VACANT  NEW YORK ST
    Subject to taxes not yet due or payable; the zoning ordinances of the City of Aurora, as applicable to the Real Estate; covenants, easements, building and parking setback lines, conditions and restrictions set forth on the Plat of Subdivision; the terms and provisions of instruments recorded as Document R97-000974 and R97-000976; and Exhibit "A" attached hereto and made a part hereof.



CITY OF AURORA

REAL ESTATE TRANSACTION TAX
DEPARTMENT OF REVENUE

REAL ESTATE
TRANSFER TAX

0495000

FP351000

IN WITNESS WHEREOF, said Grantor has caused its name to be signed to this Warranty Deed this 18th day of July, 2001.

McVICKERS AURORA, L.L.C., an Illinois limited liability company

By: _John K. McVickers_

John K. McVickers, Member

STATE OF ILLINOIS

COUNTY OF MCHENRY

The undersigned, a Notary Public in and for the County and State, certifies that JOHN K. McVICKERS, Member of McVickers Aurora, L.L.C., personally known to me to be the same person whose name has been subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that as said Member of McVickers Aurora, L.L.C., he signed, sealed and delivered the said instrument pursuant to authority given by the Member as aforesaid, as his free and voluntary act, and as the free and voluntary act of said Member as aforesaid, for the uses and purposes therein set forth.

Given under my hand and official seal, this 18th day of July, 2001.

_Laura Picard_

NOTARY PUBLIC

**OFFICIAL SEAL**
**LAURA D PICARD**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/04/05

Prepared by:
Karen A. Kaminski
McVickers & Associates, Ltd.
2800 West Higgins Road, Suite 205
Hoffman Estates, IL 60195
(847)884-4825

Address of Grantee and mail
subsequent tax bills to:

Safeway Inc.
5918 Stoneridge Mall Road
Pleasanton, CA 94588

After Recording Mail to:

Wendell A. Mitchell
Real Estate Law Division
Safeway Inc.
5918 Stoneridge Mall Road
Pleasanton, CA 94588

2

EXHIBIT "A"

RIDER ATTACHED TO AND MADE A PART OF THE WARRANTY DEED
DATED JULY 18, 2001, BY AND BETWEEN McVICKERS AURORA, L.L.C,
AS PARTY OF THE FIRST PART, AND SAFEWAY INC.,
AS PARTY OF THE SECOND PART

1.      Aurora Venture, an Illinois Limited Partnership ("Aurora Venture"), expressly
retains all benefits, including the right to receive any cash payments from governmental bodies,
and all rights, including certain rights of election with respect to water, roads and sewers, under
that certain Principal Annexation Agreement dated July 27, 1973, by and between the City of
Aurora, Illinois (the "City"), Aurora Venture, and others therein named, as subsequently amended,
restated and extended by agreement dated December 7, 1993 (the "Annexation Agreement").

2.      Party of the Second Part irrevocably appoints on behalf of itself, its grantees,
successors and assigns for the term of the Annexation Agreement and all extensions thereof,
Aurora Venture and its successors, assigns or designees, as its true and lawful attorney-in-fact and
agent: to take any and all actions as may be necessary or required to enter into, execute and
deliver, as attorney-in-fact and agent, amendments, extensions of or supplements to said
Annexation Agreement; provided, that no extension, supplement or amendment may limit any
rights to the Party of the Second Part under the Real Estate Purchase Agreement between Party of
the First Part and Party of the Second Part dated March 6, 2001, or impose any financial or other
obligations upon Party of the Second Part or upon the Property or change the zoning or uses
permitted to be maintained on the Property or disturb the possession, use and enjoyment of the
Property or limit or restrict the use thereof by Party of the Second Part and its grantees, successors
and assigns.

3.      The real estate granted, sold and conveyed hereby is zoned as part of a Planned
Development District, sometimes called Fox Valley East, established pursuant to Section 14.7 of
the City's zoning ordinance.  Such real estate cannot be developed and no buildings or structures
constructed thereon until such time as a Final Plan - as defined and described in the zoning
ordinance - has been submitted to and approved by the City.

4.      The real estate granted, sold and conveyed hereby shall be developed only as a
"Business Area" which, under the Plan Description Modification which is Exhibit "A" to the
Annexation Agreement, may only be used for the uses permitted in a B-B Business Boulevard
District on December 7, 1993, or which become permitted uses thereafter.

5.      The Party of the Second Part, shall at its sole cost and expense, prepare and obtain
the City's approval for a Preliminary Plan and thereafter a Final Plan for the real estate granted,
sold and conveyed hereby which shall be designated such real estate as a "Business Area."  Such
Preliminary and Final Plans are subject to the right of prior review and approval granted to Aurora
Venture, which approval shall not be unreasonably withheld.

6.      The landscape plans, exterior elevations, signage and exterior lighting plans for the
real estate granted, sold and conveyed hereby ("Plans") are subject to certain rights of review and
approval granted to Aurora Venture.  Aurora Venture shall have the right to approve modifications
to approved Plans.  Any approval required by Aurora Venture under this Section 6 shall not be
unreasonably withheld.

J. P. "Rick" Carney          R2001166188          DuPage County Recorder
CC1442

7.     The Party of the Second Part, for itself and its successors and assigns by taking title to the real estate, assumes the duty and obligation to cooperate with and assist Aurora Venture, if after closing Aurora Venture seeks to obtain a zoning change, modification or variance for any lands beneficially owned by Aurora Venture, other than the real estate granted, sold and conveyed hereby for which the Party of the Second Part's consent or approval is required by any governmental agency; provided, however, that any required costs incurred by the Party of the Second Part shall be paid by Aurora Venture.

8.     The provisions of this Right shall run with the real estate granted, sold and conveyed hereby for thirty-five (35) years from the date hereof.



# EXHIBIT J

CC1444

Maellen E. Pittman, U.S. Court Reporter

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    PLANNED PARENTHOOD CHICAGO     )
      AREA, an Illinois non-profit  )
 4    Corporation, and Gemini Office)    07 C 5181
      Development LLC, an Illlinois  )
 5    limited liability company,     )
                                     )
 6              Plaintiffs,          )    September 17, 2007
                                     )    Chicago, Illinois
 7         vs.                       )    9:30 a.m.
                                     )
 8    CITY OF AURORA, ILLINOIS,      )
                                     )
 9              Defendant.           )

10                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
11

12    APPEARANCES:

13    For the Plaintiffs:          PERKINS COIE LLC
                                   131 South Dearborn Street
14                                 Suite 1700
                                   Chicago, Illinois   60603-5559
15                                 BY:  MR. CHRISTOPHER B. WILSON
                                        (312) 263-5601
16
      For the Defendant:          KLEIN, THORPE & JENKINS, Ltd.
17                                 20 North Wacker Drive
                                   Suite 1660
18                                 Chicago, Illinois   60606-2903
                                   BY:  MR. LANCE C. MALINA
19                                      (312) 984-6400

20    Court Reporter:             MAELLEN E. PITTMAN
                                   Official Court Reporter
21                                 219 South Dearborn Street
                                   Room 2342
22                                 Chicago, Illinois   60604
                                   (312) 435-5576
23

24

25
```

2

```
 1          (Proceedings heard in open court:)
 2          THE CLERK:  07 C 5181, Planned Parenthood Chicago
 3   Area versus City of Aurora, Illinois.
 4          MR. WILSON:  Good morning, your Honor.
 5          Chris Wilson on behalf of Planned Parenthood.
 6          THE COURT:  Good morning.
 7          MR. MALINA:  Judge, good morning.
 8          I am Lance Malina here on behalf of the City of
 9   Aurora, along with Allen Wall from my office.
10          THE COURT:  Good morning, counsel.
11          About a half an hour ago I received a motion from
12   Planned Parenthood, which I have added to the pile here.  But
13   it is a motion for abstention, is that correct?
14          MR. WILSON:  It's correct that there is a motion for
15   abstention.  It's filed by the City, though.
16          THE COURT:  Aurora.
17          MR. MALINA:  Yes.
18          THE COURT:  You filed a motion for abstention,
19   Colorado River or Buford abstention.
20          MR. MALINA:  Right.
21          THE COURT:  Now, did you give notice of that motion
22   to opposing counsel?
23          MR. MALINA:  As much as we could give, Judge, yes.
24          THE COURT:  A few hours?
25          MR. MALINA:  Yes.
```

1        MR. WILSON:  I found out about it at 9:15.  You know

2   what, your Honor, though, we are prepared to discuss it if

3   you'd like to take it up.  I don't want there to be a cloud.

4        There is absolutely no Younger abstention at issue

5   here.

6        THE COURT:  Well, I'm a little concerned about just

7   last-minute submission of pleadings when you have not had a

8   reasonable opportunity to examine those pleadings and research

9   the applicable law or file a written response, and it puts the

10  Court into the same position.

11       MR. WILSON:  Correct, your Honor.

12       THE COURT:  So but if, however, you are ready to

13  proceed on that motion, both of you, or all three of you are

14  ready to proceed, then we will proceed.

15       And so Aurora may proceed on the motion.

16       MR. MALINA:  Judge, what I'd like to do is I would

17  like to have the Court take the motion in the context of our

18  hearing today.  Because I think it's part and parcel of the

19  current situation, which is that the City of Aurora --

20       THE COURT:  Let me clarify:  If you are asking the

21  Court to abstain, is it to abstain right now, instanter, or

22  next week, or next month?

23       MR. MALINA:  Right now.  But I could incorporate --

24       THE COURT:  Well, there shouldn't be any

25  incorporation, then.  I mean, if the Court is going to abstain,

1  that abstention should stop this matter from going forward.

2          MR. MALINA:  I understand, Judge.  I'll proceed.

3          THE COURT:  You'll proceed on the motion for

4  abstention?

5          MR. MALINA:  Yes.

6          THE COURT:  Proceed.

7          MR. MALINA:  The City has moved for abstention,

8  Judge, on the basis that the current assignment, or to complete

9  the independent investigation, has been to refer the matter to

10 the State's Attorney of Kane County, John Barsanti, who has

11 agreed to take the matter and look at all the facts.

12         THE COURT:  How is it that the State's Attorney of

13 Kane County could become involved in this civil litigation?

14 Are you suggesting criminality?

15         MR. MALINA:  The City referred the matter to him and

16 asked him to look at it, and he agreed.  And he has taken it.

17         He is going to advise the City on all matters.  I

18 don't know whether he will investigate it.

19         THE COURT:  What would be the basis in law for Aurora

20 to ask the State's Attorney of Kane County to look into the

21 matter?

22         MR. MALINA:  The basis would be that the property

23 resides or it was located in Kane County, and that the City

24 asked the State's Attorney's advice, and that he has agreed.

25         THE COURT:  Is it a matter of advice?  You are saying

1  the State's Attorney just generally gives advice to the cities

2  in Kane County?

3          MR. MALINA:  I don't know if he generally does that,

4  Judge.  But the City did ask him formally, and he did agree.

5          And it is the City's position that --

6          THE COURT:  I'm wondering if that principle might

7  apply here in the Northern District of Illinois with respect to

8  the City of Chicago and the State's Attorney of Cook County.

9          But, in any event --

10         MR. MALINA:  I understand.

11         THE COURT:  -- I've raised the issue.

12         MR. MALINA:  It is a unique situation, I acknowledge

13  that.

14         THE COURT:  Well, it is, indeed, unique, and that's

15  why I raise questions with respect to it.  But you are, I

16  assume, not suggesting that there is criminality involved here.

17  Or are you?

18         MR. MALINA:  What I'm suggesting is the matter -- we

19  are not moving under Younger abstention, which would involve

20  the pending criminal procedure.  There is none --

21         THE COURT:  But a part of your motion, it brings to

22  the Court's attention that somehow you are going to be getting

23  advice from the State's Attorney of Kane County.

24         MR. MALINA:  Correct.  As it relates to all matters,

25  including the fraud, the zoning application, the facts, and as

1  they might apply to the City's obligations.

2          THE COURT:  Well, go on with your argument.

3          MR. MALINA:  And argument is that because that is

4  such a local and state law issue, that it should be resolved,

5  and the City should be allowed to complete its decision with

6  the involvement of the State's Attorney of Kane County, because

7  it may obviate the need for this Court to rule on the matter.

8          THE COURT:  Does that complete your argument?

9          MR. MALINA:  It does.

10          THE COURT:  You may respond.

11          MR. WILSON:  Your Honor, under Younger or any of the

12  federal abstention doctrines that flow from it there are three

13  elements that have to be met:

14          "First, there has to be an ongoing proceeding that is

15  judicial in nature.  An ongoing proceeding that is judicial in

16  nature.

17          "Second, it must be" --

18          THE COURT:  At best, this would be investigatory or

19  advisory.

20          MR. WILSON:  Correct.  There is no ongoing judicial

21  proceeding.

22          In fact, the nature of the claim we have brought to

23  your Honor is that this process has broken down, we received a

24  permit and now there is an ad hoc review process that appears

25  to have no end.

1          In fact, our argument to you today is that we are

2    being treated specially in a discriminatory manner because we

3    are providing reproductive and abortion services.

4          I can think of no better evidence right now than

5    after we filed the suit they decided to refer this for

6    potential criminal review to the State's Attorney of Kane

7    County, one of the four counties.  I don't know how they

8    selected Kane.  But the process has broken down.

9          But to get back to Younger abstention, we don't think

10   they meet that first prong.  There is no ongoing proceeding

11   that is judicial in nature.  There is a review.

12         There is no witnesses, there is no evidence taken,

13   there is nothing going on.

14         Second, it has to implicate an important state

15   interest.  Arguably, the zoning code is an important state

16   interest.  We would concede the second prong.

17         But the third is:  Would there be an opportunity for

18   us to present important federal constitutional issues in that

19   proceeding?  I don't see any way that that can happen.

20         The only place we can resolve those is before your

21   Honor.

22         So both the first and third prong --

23         THE COURT:  Well, there is concurrent jurisdiction

24   with respect to 1983 between the federal and the state courts.

25         MR. WILSON:  That always exists, your Honor.  But the

1    important thing is that we are asking a federal review, a

2    federal constitutional review of our equal protection

3    arguments, and the only place we can do that right now is

4    before your Honor.

5            Mainly because there is no ongoing --

6            THE COURT:  This is not the only place you could do

7    it.  You could have done it in the state court if you had

8    wanted to do so.

9            MR. WILSON:  We could have.  But we are before you,

10   and there is no alternative proceeding going on.

11           THE COURT:  That is clear.  There is no parallel

12   proceeding, no other state action with respect to the core

13   issues involved in this matter.

14           MR. WILSON:  Correct.

15           THE COURT:  All right.  What is your reply, counsel?

16           MR. MALINA:  Judge, my reply is that there is a

17   quasi-proceeding pending before the City of Aurora in that that

18   -- there is a quasi-judicial proceeding, you have put on your

19   proof to be entitled to build and to get a permit with the

20   City.

21           There has been an allegation that a permit was

22   obtained fraudulently.  The City Council, under it's home rule

23   authority, has the power to investigate and has an ordinance

24   that says that the City Council can investigate matters in the

25   City that have been approved by staff.

1          That -- the City Council needs to decide whether this

2     permit was issued properly.  And it's going -- and the State's

3     Attorney is involved in that proceeding.

4          And that proceeding, it is my argument -- and I

5     acknowledge that it's unique in the sense that this kind, there

6     are no cases that deal with this kind of proceeding at this

7     level -- however, it is my position that --

8          THE COURT:  Well, there are cases that certainly --

9     that criminal prosecutions can go forward while related civil

10    matters also progress.  It's not an unusual experience in this

11    courthouse.

12         MR. MALINA:  That would be Younger abstention.  We're

13    not moving under Younger.  There is no criminal proceeding.  An

14    investigation is not a proceeding.

15         There is, however, a proceeding pending before the

16    City Council regarding the permit.  And it is our position that

17    this abstention doctrine would apply to let the City finish

18    that process.

19         And that process will involve the constitutional

20    right, as articulated in Roe versus Wade, as well as local

21    rights and determinations.  And so there will be a forum in

22    order to make that determination.

23         THE COURT:  I don't think it's sufficient to support

24    Buford or Colorado abstention on the basis that somehow the

25    State's Attorney of Kane County has decided to enter into the

1 ring, so to speak.

2          It is correct to say that there is an ongoing process

3 in the City of Aurora, pursuant to its ordinances.

4          MR. MALINA:  Correct.

5          THE COURT:  That is ongoing.

6          But neither of those two factors are sufficient to

7 justify the granting of the motion and for this Court to

8 abstain either under Colorado River or Buford.

9          So we will go forward today on the motion for the

10 preliminary injunction.

11          I should say that the attorneys did meet their

12 commitments.  You set a very quick briefing schedule of 24

13 hours, and each side, not surprisingly, complied with that.

14 And I do have before me your submissions.

15          And so you may proceed with the motion.

16          MR. WILSON:  Your Honor, we'd like to present our

17 motion.  At our hearing on Monday, you asked if we'd like to

18 present witnesses.  We are prepared to present witnesses if the

19 Court would like to hear testimony from Planned Parenthood

20 witnesses.

21          THE COURT:  Well, I gave you the opportunity to put

22 in writing whatever you wanted to submit.  And, indeed, you did

23 embellish the pleadings you previously submitted.  Or

24 supplemented them, I should say.

25          But if there is something that you want to put on

1   that you have not put into your submissions, you may call a

2   witness.

3           MR. WILSON:  I think we will stand on the papers,

4   your Honor.

5           What we would prosent is cumulative to what's before

6   you.  So the only issue, I guess, is the meetings with -- the

7   discussions with the City of Aurora.

8           If you feel that you need testimony on that, we'll be

9   prepared to present it.  But why don't I just go ahead and

10  present the motion.

11          THE COURT:  I suggest that you just proceed with your

12  argument.  And if, along the way, there is the necessity for

13  calling live witnesses, you may do that.

14          MR. WILSON:  Your Honor, on August 16th, 2007, the

15  City of Aurora, with full knowledge that Planned Parenthood was

16  the tenant to take over the 3051 East New York facility, issued

17  an occupancy permit.

18          That occupancy permit gave us full rights to open for

19  business immediately.  It's temporary only in that there were

20  two conditions that needed to be met, but the ordinary

21  procedures under the municipal Code of Aurora are upon the

22  issuance of the occupancy permit, we can begin for business.

23          After that we were informed that a special condition

24  was being imposed upon us.  We were a not allowed to open for

25  business until the City of Aurora could review the proceedings.

1    They have since done that repeatedly.  They have had

2  over a month to review our proceedings.

3    There is nothing before the City that would be any

4  basis for us to not open for business.

5    We supply a full range of medical services to the

6  people of Aurora, not just abortion services, which are

7  obviously controversial, but cancer screening, gynecological

8  exams, tests for immunizations, sexually transmitted

9  infections.

10    Only 10 percent of the services we provide relate to

11  abortion.

12    THE COURT:  Okay.  And that's contained within

13  Mr. Trombley's affidavit?

14    MR. WILSON:  That is, your Honor.

15    THE COURT:  Proceed.

16    MR. WILSON:  What I'd like to review briefly is the

17  process that got us here.

18    We submitted materials last year, 2006, that

19  indicated we were going to be building a health facility, a

20  medical out-patient facility.  And we also presented this.

21    This is the drawing of the facility that was to be

22  240 Oakhurst in Aurora.  It's a 22,000-square foot, $7 and a

23  half million, facility that would provide services to the

24  175,000 people in Aurora and the neighboring counties.

25    The City reviewed this and issued building permits.

1          In the architectural drawings we submitted were

2    indications that at this facility we would have

3    bullet-resistant glass, bullet-resistant doors,

4    bullet-resistant drywalls, because it's an unfortunate fact of

5    life that when you provide abortion services you need to have

6    these type of security measures in today's world.

7          These were submitted to the people of Aurora who

8    reviewed them and approved our drawings.

9          We went forward with our building permit -- which is

10   Exhibit 3 in the materials -- your Honor, I think if I can give

11   you the book that we've got all the exhibits?

12          THE COURT:  Yes.

13          MR. WILSON:  May I approach?

14          THE COURT:  Yes.

15          Thank you.  Thank you, counsel.

16          MR. WILSON:  All of these were attached to the

17   affidavits of Steven Trombley.

18          THE COURT:  Yes.

19          MR. WILSON:  But if we could look at Exhibit 1, your

20   Honor, these are some of the exhibits we submitted to the City

21   of Aurora.

22          At the beginning, the first one indicates "Gemini

23   Out-Patient Facility."

24          This is the indication that this was a medical health

25   facility.  It was a health-related use that complied with the

1   zoning code.

2        Second, we indicated "medical office facility" in the

3   second page.

4        At all times we disclosed this was going to be a

5   medical building, this was going to be an out-patient medical

6   use that involved surgical procedures.

7        At page 2 are the architectural drawings we referred

8   to, your Honor.

9        On the third page is the indication that this would

10  have bullet-resistant partitions.  It's bullet-resistant

11  drywall.

12       On page 4 of Exhibit 2 is the bullet-resistant doors

13  that would be installed.

14       On page 5 are the bullet-resistant drywall again.

15       Exhibit 3 are the building permits that were issued.

16  Based on these architectural drawings, based on the disclosure

17  of bullet-resistant partitions, bullet-resistant drywall,

18  bullet-resistant doors, bullet-resistant glass, we began

19  construction.

20       If you could turn, your Honor, to Exhibit 8.

21       In the winter of 2007, Planned Parenthood, which had

22  opened and applied for permits under the name of "Gemini," had

23  discussions internally about reaching out to the City of Aurora

24  to discuss this matter.

25       The reason this was opened under "Gemini" is simple.

1    The types of protests we're seeing would have arisen the minute

2    Planned Parenthood's name came out.

3         There would have been demonstrations.  There would

4    have been possible attempts to obstruct our contractors.

5    Possible violence at the worksite.

6         To avoid things that have happened at other places

7    around the country, they operated under "Gemini."  But at no

8    point was there an attempt to trick or mislead the City based

9    on these documents.

10        There were conversations with the City of Aurora,

11   which are detailed in these emails, about the relationship

12   between Planned Parenthood and Gemini.

13        If I can turn to --

14        MR. MALINA:  Judge, just for the record, I object to

15   this particular exhibit based on foundation.

16        What these are are internal communications at Planned

17   Parenthood about conversations with the City.  There is nothing

18   in there directly from the City.

19        THE COURT:  Sustained in terms of foundation with

20   respect to Aurora speakers or communicators.

21        MR. WILSON:  Correct.

22        If we could turn, this is an affidavit of --

23   submitted through the affidavit of Steve Trombley, and these

24   are emails of Steve Trombley.

25        I understand the City of Aurora can contradict what's

1   stated in these, but these are records of Planned Parenthood,

2   they are records -- internal records of what happened at the

3   time, and we are offering them on that basis only.

4        THE COURT:  Well, if you were offering them, I assume

5   it would be in the nature of a business record --

6        MR. WILSON:  Correct.

7        THE COURT:  -- under the Federal Rules of Evidence.

8        MR. WILSON:  Correct.

9        THE COURT:  If you were to lay a proper foundation.

10       MR. WILSON:  They are business records.  In addition,

11  though, they are records Steve Trombley has personal knowledge

12  of, and is offering them on that basis.

13       THE COURT:  All right.  You may proceed.

14       MR. WILSON:  If we could turn in Exhibit 8 to

15  page -- to the eighth page, your Honor.

16       THE COURT:  Go ahead.

17       MR. WILSON:  The original message is from Steve

18  Trombley, and it's containing a message actually from Becky

19  Novak, you see at the bottom.

20       MR. MALINA:  Judge, just for the record, again I want

21  to make an additional objection here, because the affidavit is

22  from Steve Trombley, but it's not Steve Trombley who is claimed

23  to have spoken with anyone at the City.  It's someone who -- it

24  is hearsay within hearsay.

25       THE COURT:  I agree that there is no foundation to