1          And on this issue of discrimination, there is a

2   dearth of information or evidence to suggest that you there is

3   intentional discriminatory conduct in the record.

4          Part of the problem here is that this is brought as a

5   motion for preliminary injunction -- which is extraordinary

6   relief, when granted -- is that counsel, when moving as quickly

7   as they did, did not have the opportunity to do reasonable

8   discovery.

9          We have some documents, obviously, in the record.

10         But this was brought on an emergency basis, and

11  counsel have moved very quickly.

12         Now, it may well be, along the way, that the

13  plaintiff will move to amend its complaint -- and that motion

14  would likely be granted -- to make the kinds of allegations

15  that are required in order to establish municipal liability

16  under 1983, or to make a better case in terms of equal

17  protection under the law.

18         But in its present form, and based upon all of the

19  submissions, and having heard the arguments of counsel, I am

20  going to deny the motion for the reasons that I have just

21  indicated.

22         However -- and this is a big "however" -- motions for

23  preliminary injunction can be refiled.  A motion for

24  preliminary injunction is simply that, it is preliminary.

25         There can be other such motions.

1          And at this juncture, I don't believe that Aurora has

2   actually answered the complaint, is that right?

3          MR. MALINA:  That is correct.

4          THE COURT:  You have not answered.

5          And the general rule is to answer or otherwise plead

6   within 20 days of the filing of the core complaint, and so

7   there is still time.

8          The law also, in terms of procedure under Federal

9   Rule of Civil Procedure 26, requires initial disclosures, and

10  both sides have the right to proceed routinely with discovery.

11         So by no means is this case over.  By no means.

12         I should add this:  that it is not the function of

13  the Court to take a position regarding the judgments that have

14  been made by the parties in this case.

15         The record speaks for itself on that point.

16         This Court should not second-guess what the mayor has

17  decided to do, with the advice of the Council or agreement of

18  the Council in terms of external investigations.  That is not

19  an issue this Court is deciding.

20         There is a delay, but the delay itself at this point

21  is not of constitutional magnitude.

22         That, obviously, could change.

23         And as we discussed very, very early on, the first

24  time you were before the Court, I believe, there was a question

25  of whether the refusal to issue appropriate permits and

1  documents could ultimately involve a taking.

2        That issue certainly has not been fully developed.

3  And I should hope we never get to it.

4        But, in any event, all I'm deciding today is the

5  motion for preliminary injunction.

6        Beyond this, all parties should proceed routinely

7  consistent with the rules.

8        It is so ordered.  Thank you, counsel.

9     (Proceedings concluded.)

10                        CERTIFICATE

11     I hereby certify that the foregoing is a true and

12  correct transcript of the proceedings in the above-entitled

13  case.

14

15  _____        _12-6-07_____
    Maellen E. Pittman              Date

16

17

18

19

20

21

22

23

24

25

001537

# EXHIBIT K

C01528

1

1   IN THE UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF ILLINOIS
2             EASTERN DIVISION

3   PLANNED PARENTHOOD CHICAGO      )
    AREA, an Illinois non-profit    )
4   Corporation, and Gemini Office) 07 C 5181
    Development LLC, an Illinois    )
5   limited liability company,      )
                                    )
6          Plaintiffs,              )   September 20, 2007
                                    )   Chicago, Illinois
7      vs.                          )   10:00 a.m.
                                    )
8   CITY OF AURORA, ILLINOIS,       )
                                    )
9          Defendant.               )

10            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE CHARLES R. NORGLE, SR.

11

12  APPEARANCES:

13  For the Plaintiffs:         PERKINS COIE LLC
                                131 South Dearborn Street
14                              Suite 1700
                                Chicago, Illinois  60603-5559
15                              BY:  MR. CHRISTOPHER B. WILSON
                                     (312) 263-5601
16

17  For the Defendant:          KLEIN, THORPE & JENKINS, Ltd.
                                20 North Wacker Drive
18                              Suite 1660
                                Chicago, Illinois  60606-2903
19                              BY:  MR. LANCE C. MALINA
                                     MR. ALLEN WALL
20                                   (312) 984-6400

21  Court Reporter:             MAELLEN E. PITTMAN
                                Official Court Reporter
22                              219 South Dearborn Street
                                Room 2342
23                              Chicago, Illinois  60604
                                (312) 435-5576

24

25

Maellen E. Pittman, U.S. Court Reporter

001529

1       (Proceedings heard in open court:)

2          THE CLERK:  07 C 5181, Planned Parenthood Chicago

3   Area versus the City of Aurora.

4          MR. WILSON:  Good morning, your Honor.

5          Chris Wilson for Planned Parenthood.  I apologize for

6   the confusion this morning.

7          THE COURT:  Good morning, counsel.

8          What is the issue?

9          MR. WILSON:  The issue is that we are seeking an

10  injunction.

11         THE COURT:  I don't mean the merits of the case.  I

12  mean the failure of the opposing counsel to appear.

13         MR. WILSON:  Neither of us were aware that you would

14  take us at 10:00 o'clock today.

15         THE COURT:  I think when we left it Friday, that was

16  everybody's understanding:  that if Judge Kendall did not deal

17  with this case, that it would be returned to this court and

18  that we would proceed.

19         I am ready to proceed, if you are.

20         MR. WILSON:  We are absolutely ready to proceed.  He

21  should be here in the next ten minutes, and we will proceed.

22         THE COURT:  We will pass the case.  15 minutes.

23         MR. WILSON:  Thank you very much, your Honor.  I

24  apologize.

25         THE COURT:  Thank you, counsel.

3

1          (Recess.)

2          THE CLERK:  07 C 5181, Planned Parenthood versus City

3    of Aurora.

4          MR. WILSON:  Good morning, your Honor.

5          Chris Wilson on behalf of Planned Parenthood Chicago

6    Area and Gemini Office Development.

7          THE COURT:  Good morning, counsel.

8          MR. MALINA:  Good morning, your Honor.

9          I am Lance Malina, here on behalf of the City of

10   Aurora.

11         THE COURT:  Good morning, counsel.

12         How does the matter come before the Court?

13         MR. WILSON:  The matter is here, your Honor, for

14   preliminary injunction.

15         We are seeking an injunction barring the City of

16   Aurora from interfering with our ability to open for business

17   as scheduled on September 18th.

18         We received a temporary occupancy permit from the

19   City of Aurora, and there were two conditions upon that

20   temporary occupancy permit.

21         We have met both of those conditions.

22         Since the issuance of that temporary occupancy permit

23   there has been a firestorm of political opposition to the fact

24   that Planned Parenthood provides abortion services:  there have

25   been protests, there have been marches, there have been

C01531

1    demonstrations and commentary in front of the City Council.

2          And in response to that, they have initiated an

3    independent review that is unprecedented.  And we submit that

4    the only reason for that independent review is because of the

5    fact we provide constitutionally protected abortion services.

6          And that is simply an obstacle in the way, in the

7    path of the constitutionally protected right.  That is

8    impermissible.

9          For that reason, we are seeking an injunction from

10   your Honor.

11         If I could, I'd like to briefly review the facts and

12   present to you the standards that we meet for preliminary

13   injunction.

14         THE COURT:  I have read the pleadings.

15         What is your immediate response, counsel?

16         MR. MALINA:  Judge, my immediate response is this

17   morning we filed a Rule 12(b)(1) motion to dismiss for lack of

18   subject matter jurisdiction.

19         We did not notice --

20         THE COURT:  When did you file that?

21         MR. MALINA:  Within the last hour.

22         THE COURT:  Do I have a copy of it?

23         MR. MALINA:  I have a copy here, Judge.

24         My associate came over -- see, I didn't know you were

25   going to hear this this morning until about ten minutes ago.  I

1  was waiting for a call from opposing counsel or from your

2  chambers, and --

3          THE COURT:  So you have raised a jurisdictional

4  issue?

5          MR. MALINA:  I do.

6          THE COURT:  Do you have an extra copy?

7          MR. MALINA:  Yes, Judge.  And I apologize for --

8          THE COURT:  Mr. Wilson, have you seen a copy of this?

9          MR. WILSON:  I just read it as we were sitting here,

10  your Honor.

11          THE COURT:  Certainly you should take a couple of

12  minutes to read it as well.

13          Is that all it will take, just a couple of minutes?

14          MR. MALINA:  Yes.  About seven pages.

15          THE COURT:  All right.  I'll be back in about seven

16  minutes.

17      (Recess.)

18          THE COURT:  Call the case again, please.

19          THE CLERK:  07 C 1581, Planned Parenthood versus City

20  of Aurora.  5181.

21          THE COURT:  Mr. Wilson, have you had an opportunity

22  to read the pleading?

23          MR. WILSON:  Yes, I have had.

24          THE COURT:  Are you prepared to respond?

25          MR. WILSON:  Yes, I am, your Honor.

1        THE COURT:  All right.  The -- one of the questions

2   here is whether -- for Williamson purposes -- is whether Gemini

3   or Planned Parenthood are making a claim of a taking in terms

4   of the Fifth Amendment.

5        Is that one of your claims?

6        MR. WILSON:  We have not asserted property rights

7   claims at this point.

8        We are simply asserting a 1983 claim for violation of

9   our rights under the Constitution.

10       THE COURT:  Yes.  But a part of what you are pleading

11  is that if the City of Aurora does not act expeditiously --

12  although you haven't said this directly -- the inference is

13  that there would be a taking.  And if Aurora did not issue the

14  occupancy permit for 30 days or 30 years, certainly there would

15  be a taking in that respect because you couldn't function.

16       MR. WILSON:  Yes, that is correct, your Honor.

17       THE COURT:  But you haven't directly alleged a

18  taking.

19       MR. WILSON:  No, we have not.

20       Well, what we have alleged is that because of the

21  actions of the City of Aurora in reversing and modifying the

22  occupancy permit, we have been denied the ability to provide

23  services, we have been denied the ability to earn revenue, we

24  have been denied the opportunity to realize our property.

25       So, yes, in fairness, we are asserting a property

C01534

1    claim as well.

2              THE COURT:  Well, you are unable to use the property.

3         MR. WILSON:  We are absolutely unable to use that.

4              THE COURT:  Your claim alleges that this area is

5    zoned to permit the construction and utilization of a medical

6    facility.  So it's not a zoning issue.

7              MR. WILSON:  Absolutely not a zoning issue.

8              THE COURT:  It is an issue of the occupancy, the

9    certificate.

10             But by virtue of not issuing it, now I think you are

11   saying -- if you did not in your complaint originally -- argue

12   that there is a taking in that sense.

13             MR. WILSON:  Yes.

14             I mean, for purposes of this presentation today, I'm

15   willing to submit that we will be submitting a property claim,

16   as well as the denial of our constitutional rights.

17             THE COURT:  Now, that takes us to the Williamson

18   case, which is alleged by Aurora to be applicable under these

19   circumstances.  Have I stated your argument appropriately?

20             MR. MALINA:  Yes, Judge.  That is our argument.  It

21   is a property use case.

22             THE COURT:  Well, the role --

23             MR. MALINA:  Counsel -- I'm sorry.

24             THE COURT:  Just a minute.

25             What is your position, then, in terms of the

1  application of the Williamson case, which is a Supreme Court

2  case?

3          MR. MALINA:  Exactly.  The Williamson case, and also

4  the Seventh Circuit case that applies that same ripeness

5  doctrine in an equal protection context --

6          THE COURT:  Well, let's slow this up.

7          This is a case of equal protection, according to the

8  plaintiff, right?

9          MR. MALINA:  That is correct.

10          THE COURT:  That's what they allege.  Equal

11  protection of laws.

12          MR. MALINA:  Right.  Because they want to plead this

13  case so that it appears to be a denial or restriction of

14  abortion rights under the Fourth Amendment.

15          But it's really, from their perspective, a land use

16  case, it's a property case.  Because their right to privacy

17  under the Fourth and Fourteenth Amendment is unaffected by what

18  the City is doing here.

19          This is a land use case.  They can't open because we

20  are going to conduct an independent review.  The City wants to

21  look at the procedures followed because of an allegation

22  raised.

23          THE COURT:  The complaint, however, is brought

24  pursuant to 1983, a civil rights action, based upon equal

25  protection of the laws.

C01536

1      And it does not directly or formally take us to the

2   Fifth Amendment taking aspect of the case.   Although

3   inferentially, as I have said, it may be there.

4          MR. MALINA:   Yes.

5          THE COURT:   And that is your position.

6          Although it's not pleaded specifically, you are

7   saying that's the effect; therefore, Williamson should apply.

8          MR. MALINA:   Exactly.

9          And their claim of harm raises it directly, because

10   they are saying they have scheduled appointments.   In other

11   words, their business will be affected if they can't -- it will

12   be harmed.

13          And if we get that far, it's our position that,

14   therefore, they have alleged they have an adequate remedy at

15   law because they are going to be out the cost of those

16   appointments.

17          THE COURT:   What is your reply, counsel?

18          MR. WILSON:   Your Honor, you have identified it with

19   your questions.

20          This is -- there are many parts of this case, but at

21   its core it's an equal property claim and a civil rights claim,

22   and it is absolutely ripe for determination.   Because the City

23   has singled out Planned Parenthood for differential treatment

24   by denying its occupancy permit.

25          And the only basis is the objection by some in the

1    community to the provision of abortion services.

2            Because of that, we are getting special review, we're

3    getting special scrutiny.  And it simply is not permitted.

4            And so this case is absolutely ripe.

5            What should happen today, your Honor -- and I'm sure

6    we'll spend a lot of time getting into it -- is that an

7    injunction should allow us to open and allow to us conduct our

8    business.

9            If they have a review process that finds some reason

10    why it should not have been issued, then we can address that at

11    this point.

12            But right now they are harming us in a

13    constitutionally protected service.

14            MR. MALINA:  May I respond, Judge?

15            THE COURT:  Yes.

16            MR. MALINA:  If you order the City to allow them to

17    open, and there is a zoning review, and there is a subsequent

18    attempt by the City to say "this was done improperly," or

19    "you're going to need to do this over again," this federal

20    court is going to be sitting as a zoning court the way a state

21    court in Kane County would be sitting, and it's just

22    inappropriate.

23            We haven't reached that point yet.  We haven't denied

24    their occupancy permit.  They have a temporary, they were

25    allowed to move in, they are going to be delayed because of an

1  investigation.   The City has not reached a decision.

2       The fact that there were protests, and so forth, the

3  City cannot change any of that.   There is a thing called the

4  First Amendment.   People have a political right to present

5  their view.

6       The fact that the City listened to those views

7  doesn't mean that the City has some motive automatically in

8  order to deny the right that the U.S. Supreme Court has held of

9  abortion rights under the Fourth and Fourteenth amendments.

10      THE COURT:  You've got to return to the Williamson

11  aspect of the case.

12      What Williamson says, basically, is that before the

13  Court should entertain the 1983 action in a case where there is

14  a taking allegation, that, first, the taking allegation should

15  be decided because it may well be that the plaintiffs would get

16  the relief that they are seeking, and, therefore, there would

17  be no need to proceed to a 1983 action.

18      MR. MALINA:  That's one of the components, yes.

19      THE COURT:  All right.  So which is to say that if by

20  noon today, for example, that the occupancy permit were issued

21  without qualifications, that Planned Parenthood probably would

22  not proceed with a 1983 action.

23      The issue might, therefore, become moot, unless there

24  were some claim of damages that could be argued as a result of

25  delay.

1          Is that right?

2          MR. WILSON:  Not quite, your Honor.  Because what we

3     are facing is an inability to open absent an injunction of this

4     Court.

5          They have told us they have no intention of allowing

6     us to open before September 18th.  We have a letter dated

7     September 11th saying:  "We have no intention."  It's Exhibit 7

8     to the --

9          THE COURT:  Yes.  It's attached to your complaint and

10    I have read it.

11         MR. WILSON:  So we are facing absolute, imminent

12    harm, and they have made the determination that they are

13    imposing an entirely different process on us because of our

14    provision of abortion services.

15         If I could just read one line from the case of

16    Manchester, which addressed this directly, it says:  "It is

17    enough for the complaining parties, Planned Parenthood, to show

18    that the local officials are effectuating the discriminatory

19    designs of private individuals."

20         The opponents of Planned Parenthood have raised

21    objections.  They have been followed by the City Council and

22    the other authorities at the City of Aurora.

23         And they are imposing an entirely different review

24    process than what they put in their certificate of occupancy in

25    response to political demands.

1           And that is not permitted under the Constitution, and

2   that's the hardship that we are --

3           THE COURT:  Are you saying that public officials

4   cannot respond to legitimate public protests?

5           MR. WILSON:  They can.  The big term there, your

6   Honor, is "legitimate."

7           This was --

8           THE COURT:  Well, that wasn't accidental that I put

9   that in there.

10          MR. WILSON:  Right.  They are entitled to respond to

11  legitimate concerns.

12          They are not entitled to put extra obstacles to

13  abortion services because of political objections.

14          That is a constitutionally protected right.

15          THE COURT:  But that is an inference that you have

16  reached.

17          There is no evidence to support your position, at the

18  moment, that individuals are -- those decisionmakers have their

19  own personal reasons for voting as they did or for writing the

20  letter and using the language that they did.

21          So that's something we may get to.

22          But your request for relief in the preliminary

23  injunction can be separated at this point ultimately from the

24  Williamson issue.

25          I think there is at least enough here to proceed with

1  the preliminary injunction while the issue of Williamson can

2  still be developed by counsel.

3           There are many, many views of Williamson.

4           And you have put a substantial quote from Williamson

5  in your motion to dismiss the plaintiffs' complaint for

6  preliminary injunction.

7           So I'm going to deny the motion to dismiss the motion

8  for preliminary injunction, but while you can still preserve

9  that issue, when and if we get to the substance of the

10 complaint, over a period of time.

11          But back to the prayer for relief in the preliminary

12 injunction.

13          The plaintiffs state on page 7 that "The Court enter

14 judgment against Aurora, and find that Aurora has violated

15 plaintiffs' rights to equal protection under the law by

16 attempting to modify the certificate of occupancy and

17 compliance, thereby preventing plaintiffs from opening the

18 facility on September 18th, 2007."

19          And then in the second paragraph you're asking that

20 Aurora be enjoined and restrained from modifying the

21 certificate of occupancy and compliance, and preventing

22 plaintiffs from opening the facility as planned on September

23 18th, 2007.

24          Without some kind of a hearing, or some evidence,

25 what is there before the Court that would justify telling the

1   local authority that they cannot attempt to modify something?

2        Now, is it not a legitimate exercise of discretion,

3   that when public officials hear objections or protests from all

4   sides, that they can step pack and say:  "We will look at this

5   again," or "Review what we have done"?

6        Isn't that a legitimate exercise of discretion by

7   public officials?

8        MR. WILSON:  It can be, your Honor.

9        And some examples I have thought about:  If a

10  restaurant obtained a permit and the City thought that it was a

11  mom and pop blue-plate diner and it was actually a national

12  chain, and there was something in the zoning code barring

13  national chains.  Or if it was a bookstore, and they found that

14  it actually was an adult book store and violated the zoning

15  code.

16       Those types of examples may be situations where they

17  could have a review.

18       Here the only new fact -- and, your Honor, we allege

19  that those facts are not new, they were well-known -- but let's

20  assume for purposes of argument that they were not aware that

21  this was a Planned Parenthood facility.

22       They knew it was a medical facility, they knew it was

23  an outpatient facility, they knew it was providing surgical

24  services.

25       The only new fact is that it was providing abortion

C01543

1  services as part of a broad range of conception and

2  gynecological services, that is simply not a permitted basis to

3  go back and  submit us to additional review.

4      The objections of people to abortion services, while

5  well-held and certainly strongly held, is not a basis for

6  denying us a permit.

7      It's singling out abortion services --

8      THE COURT:  Yes, but you leap to the conclusion that

9  that is the basis.  And, certainly, it is not established in

10  the record -- perhaps you may be able to do that -- but in

11  terms of your submission there is nothing to support that

12  that's what they have done.

13      MR. WILSON:  But, your Honor, I think counsel would

14  stipulate that that is why they are looking at this so

15  specially, is the objection to abortion services.

16      There is no other objection in the record in any way,

17  other than the outcry over the fact that we provide abortion

18  services.

19      THE COURT:  Okay.  What is your response, counsel?

20      MR. MALINA:  I won't stipulate to that.  I mean, not

21  as it's phrased.

22      I think that the City -- the fact that this

23  development provided abortion services provides one component.

24  Some people objected because they don't want abortion to be

25  legal or constitutionally protected.

1       But from the City's perspective there is a zoning
2  interest in the property.  This isn't a straight zoning
3  district case.  This is a planned development district.

4       And this isn't a situation where they just applied
5  for a building permit that showed a footprint and got it.

6       The developer, Gemini, had to appear before a
7  committee of the City, and they were asked certain questions
8  and certain answers were given.

9       The allegations were that those answers were --
10 omitted material facts that related to who the developer really
11 was.

12      Now, the City's interest in public health and safety,
13 as it relates to --

14      THE COURT:  Let me press that point.  You are saying
15 that there were material omissions from the application.

16      MR. MALINA:  Actually, I'm not.  I'm saying that's
17 what the investigation is looking into.

18      THE COURT:  Whether there were material omissions or
19 misrepresentations.

20      MR. MALINA:  Whether there were omissions, and
21 whether they were material.

22      THE COURT:  And that is the reason, at least you
23 argue, and not mere pretext with respect to abortion or right
24 to life.

25      MR. MALINA:  Right.

1    THE COURT:  Or all of the above.

2    MR. MALINA:  And I'm not saying what the outcome is

3 either.  I'm not saying the City has taken a position one way

4 or another, but it's investigating into that -- it's

5 investigating that process.

6    THE COURT:  Now, the duration of the investigation is

7 another thing that we touched on in terms of Williamson, which

8 could be, of course, a taking if they were to wait a year to

9 make a decision.

10    On the other hand, the review could take place in a

11 day or a week or some other reasonable period of time, could it

12 not?

13    MR. MALINA:  Yes.  And that is, in fact, the goal of

14 the City.

15    THE COURT:  So what the injunction asks the Federal

16 Court to do is to enjoin Aurora from attempting to modify

17 something; to have a federal judge tell Aurora that "You cannot

18 attempt to modify."

19    MR. WILSON:  That's correct.  That's what it says.

20    THE COURT:  That's what you are asking the Court to

21 do.

22    MR. WILSON:  Not only are we asking you to do that,

23 your Honor, but in other circumstances identical to these --

24 Planned Parenthood asked to do this -- and they have taken much

25 broader action than what we are asking you to do in regards to

1   Aurora.

2         In fact, they have ordered variances to be given in

3   the New Hampshire case.  They have ordered facilities to be

4   given exceptions to the zoning code.

5         THE COURT:  Without discovery?  Without evidentiary

6   hearings?  Without hearing witnesses?

7         THE WILSON:  In the Manchester case it was a hearing

8   just like this with submissions of counsel.

9         THE COURT:  Well, this is hardly a hearing.  This is

10  more of an argument.

11        When I'm speaking of a hearing, I have in mind the

12  calling of witnesses and the presentation of evidence and

13  documents, and so on.

14        MR. WILSON:  But to answer your question, your Honor,

15  yes, it was a presentation by counsel based on the affidavits

16  just like this.

17        And if I could, I just wanted to --

18        THE COURT:  Well, what affidavits?  Have you attached

19  affidavits of anybody who is functioning on behalf of Aurora in

20  making the decision process?

21        MR. WILSON:  I have not, and here is why, your Honor

22  --

23        THE COURT:  Well, have you submitted any affidavits

24  of anyone?  Anyone?  Who?

25        MR. WILSON:  We submitted a lengthy affidavit of the

1  president of Planned Parenthood Chicago Area and the --

2          THE COURT:  Just one affidavit of the president.

3          MR. WILSON:  Correct.

4          THE COURT:  No other --

5          MR. WILSON:  An affidavit of the president.

6          THE COURT:  No other affidavits from any other person

7  involved in the practicalities of making the decision.

8          MR. WILSON:  If your Honor would like more

9  affidavits, we would be glad to provide them.  But we think all

10 the facts --

11         THE COURT:  Well, I'm not saying I'm asking for them.

12 I'm asking you what you have provided.

13         MR. WILSON:  We provided one affidavit of Steve

14 Trombley.

15         THE COURT:  Is it in the nature of a 30(b)(6)

16 witness?

17         MR. WILSON:  Fair enough.

18         If I could, your Honor, though, the question is:  Was

19 there a material representation?  That's what this independent

20 review is.

21         And let me just present to you, this isn't the first

22 time this has come up.  This is exactly what happened in the

23 Manchester case.  And the only material misrepresentation at

24 issue here is whether or not we disclosed we were Planned

25 Parenthood.

C01548

1        THE COURT:  You are suggesting that that's the result

2   of the investigation.   That is the only material

3   misrepresentation.

4        What -- as I understand what the pleadings suggest

5   here is that Aurora has said:  "We are going to step back and

6   look at this."

7        As I said, it may well be that the result of the

8   investigation, if one is to go forward, would be favorable to

9   and Planned Parenthood and Gemini.

10        MR. WILSON:  We expect that it will be.

11        The problem is, while that's going on, we can't treat

12   patients, we can't open for business, we can't help the people

13   of DuPage, Kane, Kendall and Will counties.

14        THE COURT:  Once again, to return to your motion,

15   it's to say to the Court to stop Aurora from attempting to

16   modify.

17        There is no support for the idea that the

18   modification could be disfavorable to the plaintiffs, for

19   example.

20        MR. WILSON:  Your Honor, if it's a question of the

21   scope of the objection, we can address that.  But what I'd like

22   to demonstrate first is we have an absolute likelihood of

23   success on the merits.  We have presented a 1983 claim that

24   they are interfering with abortion rights.  And there is no

25   question that we can prove that case.

1          Second, the question of irreparable harm, first of
2   all, is assumed a constitutional case, but here it's tangible:
3          Patients will not get services tomorrow morning
4   absent an order of this Court.
5          Third, Planned Parenthood, like any business, needs
6   to have its doors open, and we're being unconstitutionally
7   interfered with by the City of Aurora.
8          Third, the balance of the hardships --
9          THE COURT:  The interference that you are arguing
10  here, as I understand it, is a continuing investigation to look
11  back at the process that was followed in getting the occupancy
12  permit, the temporary occupancy permit.
13          That you are objecting to the review of that
14  procedure.
15          MR. WILSON:  We're not.  It's a very, very important
16  difference here, your Honor, which is we are objecting to the
17  interference with our business while they go through with this
18  ad hoc new review.
19          This is not -- first of all, this is not something
20  the City of Aurora normally does.  It's been created for
21  Planned Parenthood.
22          But, second, we have put in the requested order that
23  we don't want interference with our lawful operations.
24          If there is a citation, if we are doing something
25  wrong, if we're draining our waste water in a bad way, if we're

C01550

1  otherwise not complying with the City of Aurora, they have

2  every right to issue a citation and to close our business.

3         I assume we will be complying with that, and they

4  will not be doing that.

5         What they don't have a right to do, your Honor, is to

6  arbitrarily and unreasonably shut down our business.

7         THE COURT:  You're saying "unreasonably" and

8  "arbitrarily."

9         MR. WILSON:  It is --

10        THE COURT:  First, they haven't shut down anything

11  yet because, obviously, you're not functioning, but you might

12  be tomorrow.

13        MR. WILSON:  I'm sorry to interrupt, your Honor, but

14  they have told us categorically:  "We have no intention of

15  allowing you to open for business."

16        THE COURT:  That's what the letter says.

17        MR. WILSON:  And that's what they're doing.

18        THE COURT:  But are you saying that no delay is

19  tolerable?  That if this investigation were to take a day or

20  two days or three days, that that would be intolerable?

21        MR. WILSON:  Well, I think the fair thing, your

22  Honor, is to allow us to open, to permit the injunction to go

23  forward, and if the process goes forward correctly and we are

24  allowed to continue, then we will continue.  There will be no

25  harm to us.

1          That's the thing about an injunction.  You need to
2 balance the hardships.

3          THE COURT:  Of course.

4          MR. WILSON:  The hardship to us is we can't work.

5          The hardship to them is nothing.  They just go
6 through with their process.  There is no harm if the clinic is
7 open for a few days and then they find out there is a
8 violation.  There is no harm to that; none whatsoever.

9          From the other side --

10          THE COURT:  It depends on the violation.

11          MR. WILSON:  The violation here is were there
12 material misrepresentations, as I understand it.

13          THE COURT:  Is that the issue?  Is that what it gets
14 down to, material misrepresentations?

15          MR. MALINA:  The City is investigating the whole
16 process of the application, down through the present of this
17 application, to make sure that everything was done according to
18 Code, and that it complies completely with Code.

19          I can't tell you what -- I'm not even involved in it.

20          THE COURT:  So are you suggesting that the City of
21 Aurora rushed to judgment when issuing the temporary permit in
22 the first instance?

23          MR. MALINA:  No.  Here is the --

24          THE COURT:  What was unusual then about the process?

25          MR. MALINA:  The temporary certificate of occupancy

1   was issued so they could start moving in.

2          Allegations were raised about these

3   misrepresentations.  The City of Aurora decided to do an

4   independent review of the process to determine whether its own

5   codes were followed properly, and they said that in the interim

6   they would not be allowed to open without a certificate of

7   occupancy.

8          They don't have a certificate of occupancy, they have

9   a temporary in order to move in.

10         The City of Aurora --

11         THE COURT:  That is to say, to move in but not

12  operate?

13         MR. MALINA:  To conduct business.

14         And they indicated to the City that they had an

15  expectation to open September 18th, and the City was aware of

16  that.

17         THE COURT:  Is that in the record somewhere?

18         MR. MALINA:  I don't know.

19         But the point --

20         THE COURT:  Well, who knows?

21         MR. WILSON:  Actually -- I'm sorry to interrupt, your

22  Honor -- in Exhibit 6 it does indicate, a letter from the City,

23  that they expected us to open on the 18th.  They have

24  acknowledged that publicly.

25         THE COURT:  But there have been public hearings, have

1  there not, in the routine process?

2         MR. MALINA:  Yes.  There was a hearing before the

3  Planning and Zoning Committee of the City Council.

4         THE COURT:  What was the action of the Committee with

5  respect to the issuance of the permit?

6         MR. MALINA:  Oh, that --

7         THE COURT:  Now, is this the City acting, or just the

8  Committee acting?

9         MR. MALINA:  The temporary occupancy permit was

10 issued by the building department of the City of Aurora.

11        THE COURT:  All right.  And the final decision would

12 be made by whom?

13        MR. MALINA:  The Building Department of the City of

14 Aurora.  But the City Council -- well, actually, because this

15 is a planned district development, the City Council also has a

16 way of considering a recommendation for approval, and that, our

17 position is, what's happening.

18        THE COURT:  And that ultimately the mayor would sign,

19 right?

20        After the Council acts, looking at the recommendation

21 of the Zoning Building Committee, after the Council itself

22 acts, ultimately the mayor would have to sign, right?

23        MR. MALINA:  In this case.  In this case that could

24 very well be.

25        THE COURT:  How is this case different from any other

1  case of major development?

2       MR. MALINA:  Well, because the City doesn't -- I

3  mean, counsel is correct:  The City does not investigate every

4  single action by staff, although it's part of the City Code

5  that it can, and it does from time to time.

6       And there also is a right of appeal by the City

7  Council for approvals of final plans in this planned

8  development district.

9       THE COURT:  And so that may take us back, ultimately,

10  to Williamson.

11       Because what you're suggesting here is that the

12  ultimate result may provide all the relief that the plaintiff

13  seeks; that ultimately all of this would go forward.

14       MR. MALINA:  Right.  Our position is we haven't

15  decided yet and we'd like to be able to decide.

16       THE COURT:  All right.  And, therefore, there is no

17  case or controversy as you see it.  It's not ripe for

18  disposition.

19       MR. MALINA:  That is our position.

20       THE COURT:  All that would be a sound argument but

21  for the preliminary injunction before the Court.

22       MR. MALINA:  Well, the preliminary injunction is

23  based on the complaint.  Your preliminary injunction is only as

24  good as your cause of action.

25       THE COURT:  Well, no.  The injunction just shows a

1   likelihood of success on the merits.

2          You agree to that, don't you?

3          MR. MALINA:  I do.  But if the motion is well-taken

4   there can be no likelihood.

5          I mean, in other words, the complaint itself has to

6   state a ripe cause of action.  And it's not just Williamson,

7   it's also the Seventh Circuit case that deals with the issue in

8   an equal protection context, Patel versus City of Chicago.

9          So, you know, our position is that we haven't denied

10  them their certificate of occupancy.

11         The City routinely makes developers wait while they

12  -- maybe they don't get to a final inspection on the date that

13  the developer wanted, and that's what happens.

14         The City completes its review, and then it gives a

15  decision.  And then if the developer doesn't like the decision,

16  they go in on a writ of mandamus or other appropriate

17  injunctive in the State Court.

18         We haven't even made a decision here.

19         MR. WILSON:  Your Honor, the fundamental difference

20  here is we are talking about a constitutionally protected

21  service, that is what, we submit, is the reason why we are

22  being treated differently.  And that's why our 1983 cause of

23  action is very likely to succeed on the merits.

24         THE COURT:  Yes.  That is what you argue.  That is

25  what you argue.