1          But I'm saying, what is at evidence to support what

2    you are saying?

3          MR. WILSON:  If I could approach, I will --

4          THE COURT:  Yes.

5          MR. WILSON:  This the attached as Exhibit 5 to

6    Mr. Trombley's affidavit.

7          This is the certificate of temporary occupancy.

8          THE COURT:  Well, there is no question that this was

9    issued.

10          MR. WILSON:  If I could, your Honor, on August 16th

11   here were the two conditions that had to be met.  And this was

12   after a full review, after a year of building permits, after

13   meetings with the City, this is all that was required:

14          "Install permanent exit directional signnage.

15          And two:  "Install glass at service partitions."

16          Before the political protests, this is all that we

17   had to do and it's what we did.

18          Once the political firestorm started, we were singled

19   out for differential treatment.  And whether or not they agree,

20   or whether or not you agree that I can carry the day, I think

21   there is a likelihood of success on the merits that we are

22   being treated differently because of the constitutionally

23   protected service we provide.

24          It was only after the firestorm that the certificate

25   of occupancy was modified.  Only after that, after a second

1 round of City Council meetings that they told us "We have no

2 intention of letting you move in," it's in response to

3 political pressure.

4      Now, we are burdened -- the question, though, your

5 Honor, is have we made the showing of likelihood?  We may not.

6 It may be that there is alternative reasons.  Maybe they'll

7 show different reasons.

8      I think the inference is very strong, from the

9 complaint we showed you, that it's in the response to the type

10 of services we provide that they are claiming we mislead them.

11      THE COURT:  This could be post-hoc ergo-hoc:  that

12 because this happened, that happened.

13      That because there are protests, and the substance of

14 those protests were heard by the body, that that was the basis

15 for what they did.  It could well be that there is something

16 beyond what people said in the meeting room or what people said

17 publicly.

18      And what I'm suggesting, or asking the question,

19 except for your argument that you characterize as a political

20 firestorm, that that is the only basis for the committee doing

21 what they did.

22      Is there no other reason, other than what happened in

23 terms of protests?

24      MR. WILSON:  Your Honor, there simply is no other

25 reason.  And I think --

1          THE COURT:  Well, that is your assertion.  But what

2     is there to support that?

3          MR. WILSON:  I guess it's the dog that didn't bark.

4     There is no other evidence other than this firestorm that we

5     did anything wrong.

6          THE COURT:  That there was this Conan Doyle party

7     here.

8          MR. WILSON:  He is authority we're citing.

9          THE COURT:  Proceed.  What is your response?

10         MR. MALINA:  My response is that the City can decide

11    to investigate something.  I mean, if counsel -- we haven't

12    denied the certificate of occupancy.

13         MR. WILSON:  But, your Honor --

14         THE COURT:  When do you expect to do it, if you

15    wanted to take a giant leap forward?

16         MR. MALINA:  I'm sorry.  Say that again.  I missed

17    it.

18         THE COURT:  When do you expect to deny it, if you are

19    going to deny it?

20         MR. MALINA:  The City is acting expeditiously to

21    investigate.  I'm not involved in that myself.

22         THE COURT:  Well, there is no timetable.  And that's

23    one of the arguments the plaintiffs are saying.  There is no

24    timetable, and that that could present the problem in terms of

25    the taking of the property.

1       If there were no action whatsoever for an extended

2   period of time, the plaintiffs would argue "You have taken our

3   property under the Fifth Amendment," without compensation,

4   obviously.

5       MR. MALINA:  That is correct.  And then they could

6   seek compensation.

7       THE COURT:  But you have to wait for that to happen,

8   to take the blow before you do something?

9       MR. MALINA:  Williamson suggests yes.

10      Although what I'm telling you, as far as the City is

11  concerned, is that it is investigating, and is going to make a

12  decision regarding the certificate of occupancy very quickly.

13      I don't know that that's relevant to the motion, but

14  that is the plan.

15      THE COURT:  Well, let me ask this, then:  Is there

16  any timetable whatsoever in the record with respect to how long

17  this investigation will take?

18      MR. MALINA:  In the record, no.

19      THE COURT:  Well, or -- where else do we find it?

20      MR. MALINA:  Nowhere.  Well, I have some idea, but

21  it's not in the record.

22      THE COURT:  Well, that's why it may take an

23  evidentiary hearing.

24      I mean, if someone whose authority it were to take

25  the stand and say:  This will take 12 hours, or 12 days, it

1   would be something to work with.

2          MR. WILSON:  And, your Honor --

3          THE COURT:  Does Planned Parenthood have any idea how

4   long this investigation may take?

5          MR. WILSON:  We have a fear that it could go on

6   indefinitely.

7          THE COURT:  Well, how long indefinitely?

8          MR. WILSON:  Well, we were first promised it would be

9   over by September 18th.  Now it's going on.

10         There are no procedures for this.  This is completely

11  ad hoc.  This is not part of the zoning code.  This is being

12  created out of whole cloth as we speak.  So, in fact, that's

13  part of our claim.

14         THE COURT:  Well, you see it as "created," or it

15  could be responsive.

16         MR. WILSON:  Well, let me just say this --

17         THE COURT:  If people legitimately complain to their

18  public officials, then we expect public officials to be

19  responsive.  I think we can agree on that.

20         But, as you argue, if this is done for some

21  subjective reasons that have nothing to do with the actual

22  functioning of the building except abortion services, it might

23  be an entirely different issue.

24         MR. WILSON:  But, your Honor, the way you are

25  describing it, we are in a worse position because they haven't

001561

1  denied us an occupancy permit.  They could keep this process

2  going on indefinitely and I could never get in front of you

3  because he would bring up Williamson every time he came in:

4  six months, a year.  He would say:  "We're just a few weeks

5  away."

6          We have presented a ripeness issue to you.  This is

7  ripe.  As of tomorrow morning, we will be hurt.

8          THE COURT:  A part of the problem here is that you

9  are asking the Court to enjoin Aurora from attempting to

10  modify.

11          Now, what is before the Court is simply that there is

12  some kind of independent investigation.  And, of course, no one

13  knows the results of that investigation.

14          It may well be after the investigation that there

15  would be no need to modify.

16          MR. WILSON:  Correct.  And then -- well, and then

17  there would be no harm whatsoever to them from the injunction.

18          But the question is this:  The proposed injunction is

19  modifying in a way that stops the lawful operation of our

20  business.

21          If they find out that we are not lawfully operating,

22  they can shut us down in 20 minutes.

23          That's not the situation.  They are simply reviewing

24  it.

25          We want to be able to go forward with our operations

1  which, according to them as of August 16th, were just fine.

2  In fact, it's a little ironic that they let us into

3  the facility. There is no security problem. They just think

4  we shouldn't be able to do our business.

5  If you are looking for what's the evidence in the

6  record, we're not allowed to provide --

7  THE COURT: When you say "they," who?

8  MR. WILSON: The City of Aurora. They have stopped

9  us. They have modified it to keep us from doing our business.

10  THE COURT: What you have is simply attached to the

11  pleading is a letter. Beyond a letter what else is here?

12  MR. WILSON: Well, let me just give a hypothetical,

13  your Honor, which might illuminate us here.

14  THE COURT: Well, the hypotheticals are fine, but I'm

15  still looking for some evidence to support the action you are

16  requesting of the Court.

17  MR. WILSON: And I go back to the Manchester case,

18  your Honor. It's very rare that you will actually hear the

19  animus.

20  What we have is public outcry and a response to that

21  outcry. The clear, clear implication would be -- survive even

22  on a motion for summary judgment -- is that this is a response

23  to that political pressure.

24  There is no other basis for giving us special

25  treatment and reviewing abortions specially.

1          Not only is there no basis for that in the factual
2  record, but it's not permitted.
3          THE COURT:  I don't know what was said in protest at
4  the meeting.
5          If the protest simply got to the issue of right to
6  life and abortion, that's one thing.
7          But as far as other bases for protest or argument at
8  these various hearings, the Court is completely uninformed as
9  to what anybody said, what anybody presented.  There is nothing
10 here.
11         MR. WILSON:  Your Honor, this -- the issue is if we
12 misled people as to the fact that we would be providing
13 abortion services or that it was Planned Parenthood that was
14 providing the medical services.
15         They had no problem up until that point with us
16 providing medical services.  Out-patient medical services, the
17 area is zoned for that, that's what all the documents describe.
18         The question is, did the -- and I'm reading from
19 their brief, your Honor, where they said:  "Aurora officials
20 lacked relevant information concerning the intended use of the
21 building at 3051 East New York, and granted permits and
22 certificates that might have been denied otherwise."
23         If that isn't an admission that if they had known we
24 were providing abortion services they would have denied this
25 permit, I don't know what is.

1          This is their pleading, saying they lacked the

2    evidence, they lacked the awareness that we were Planned

3    Parenthood.

4          That is simply not permitted, and why we're entitled

5    to an injunction.

6          If this were -- take this out of the constitutionally

7    protected process.  If this were simply a business in Aurora

8    and people came and complained.  They couldn't just shut that

9    business down without some basis.  But that's what they are

10   doing to us.

11         They couldn't come into a restaurant and say:  "We

12   have had complaints about bad food, and we are shutting you

13   down, and we'll review your permit."

14         They would have to have some basis for doing that.

15         THE COURT:  What is your response?

16         MR. MALINA:  It's the same thing I have said before,

17   Judge.  My response is that the City is investigating the

18   process, and whether there was any issue that's related to the

19   zoning, the classification, and the right to open, and we're

20   going -- and the City will act upon that investigation.

21         Counsel is suggesting we have denied it.

22         The fact that they may not be able to open tomorrow

23   is not a denial.  It's a delay, but it's not a denial.

24         And the cases that involve endless administrative

25   loops, where a developer or property owner can never get a

1    decision and, therefore, is an effective denial, I don't

2    believe is relevant here where they haven't even reached that

3    date yet.

4             They don't have a certificate of occupancy.  All they

5    --

6             THE COURT:  Is justice delayed justice denied?

7             MR. MALINA:  Yes, but I don't --

8             MR. WILSON:  Absolutely, your Honor.

9             MR. MALINA:  But I don't believe they have a legal

10   right -- there is nothing in our Code that says they can open

11   September 18th.

12            The City is aware that they expected to open.  That's

13   why the City wrote them a letter saying they hoped to be

14   completed by September 18th originally, but there was a

15   different person chosen in order to do the investigation, so

16   it's going to be delayed somewhat.

17            But the City intends to reach a decision

18   expeditiously, and then if we have a fight, we will have a

19   fight.

20            But I don't believe we have one yet.

21            MR. WILSON:  Your Honor, I think it's telling that

22   counsel, while certainly speaking in good faith, cannot give

23   you any dates, any time frame whatsoever when this process will

24   be over.

25            We have two paths before us:

1          One, an injunction that allows us to open and allows

2   them to continue on with their process.

3          The second --

4          THE COURT:  Well, would that not present a problem?

5   If you were -- and I think you've said the institution is fully

6   staffed.

7          MR. WILSON:  Correct.

8          THE COURT:  And medical appointments have been set.

9          MR. WILSON:  Yes.

10         THE COURT:  And so wouldn't that present a very

11  practical problem, if the Court at some later point were to

12  say:  "You've got to stop operations."

13         MR. WILSON:  We always face that risk, like any

14  business.

15         The only risk that's different for us today is that

16  we are in this nether world where we can't open because of the

17  service we provide.

18         If you allow the injunction to go forward, allow us

19  to open, allow us to provide service to the people of Aurora,

20  allow their process to continue, there is no harm to anyone.

21         If, on the other hand, you deny it, there is harm to

22  all the patients scheduled tomorrow, the doctors --

23         THE COURT:  What would you have to do, cancel

24  appointments?

25         MR. WILSON:  Tomorrow we would have to cancel

1  appointments?  Not only would we have to cancel appointments,

2  people would have to drive 75 miles round trip.

3        Planned Parenthood -- these are poor people in many

4  circumstances.  They wouldn't be able to get treatment.

5        THE COURT:  Where were they to go as of yesterday?

6        MR. WILSON:  We are here.  There is 175,000 people in

7  Aurora and hundreds of thousands in the surrounding counties

8  waiting for this to open, and we want to provide them

9  procedures.

10        It's only because of an ad hoc procedure that this

11  has no end or no beginning that we can't provide those

12  services.

13        THE COURT:  I don't want to predict the outcome of

14  this case.  Certainly it would be wrong for me to do so.

15        But in the long run, the plaintiffs make a

16  substantial argument that this clinic will function and provide

17  the kinds of services that we're talking about.

18        It is the law of the United States, under proper

19  circumstances, that there can be abortions, and I'm sure you

20  agree with that.  Not all kinds of abortions, because the

21  Supreme Court in Gonzales, the Attorney General, versus

22  Carhart, ruled on a federal statute which involved a dilation

23  and evacuation.

24        But I don't want to go too far afield here.

25        Abortion, properly conducted, consistent with Roe

1  versus Wade is lawful in the United States.  And a medical

2  facility that provides abortion services consistent with Roe

3  versus Wade can function, and they are functioning every day in

4  the Chicago area and throughout the United States.

5          And it may well be in the long run this institution

6  will function in the Aurora.  But that's not the issue before

7  the Court today.  It is the preliminary injunction.

8          I would put this to you:  If you want me to rule now,

9  based upon what has been submitted, I could do that.

10          On the other hand, the defendant Aurora has not filed

11  any responsive pleading to the motion for preliminary

12  injunction.  There has been no response to it, except the

13  motion to dismiss on Williamson grounds.

14          And there has been absolutely no discovery

15  whatsoever.

16          Ordinarily, with respect to preliminary injunctions,

17  there is an opportunity to respond, and the Court sets an

18  accelerated discovery process and we take it one step at a

19  time, and sometimes evidentiary witnesses, calling of

20  witnesses, and so forth.

21          Now, I assume that Planned Parenthood and Gemini does

22  not want that to be the procedure we follow here.

23          Would you be objecting to providing, say, seven days

24  to Aurora to file a written response to your motion?

25          MR. WILSON:  We don't object to that, your Honor.

1          We did not file a temporary restraining order,

2   because of the importance of these issues, we wanted to provide

3   service.

4          THE COURT:  There is a major distinction.  You filed

5   a temporary restraining order before Judge Kendall.

6          MR. WILSON:  No.

7          MR. MALINA:  Actually, Judge, that was our motion,

8   and it was a different party.

9          THE COURT:  I just wanted to distinguish between a

10  TRO and preliminary injunction.

11          In a TRO, the Court rules on the submissions, on the

12  four corners of the motion.

13          Preliminary injunction is different.

14          What is the Aurora's position regarding an

15  opportunity to respond in writing to this motion?

16          MR. MALINA:  Judge, we would be happy to respond in

17  writing.

18          THE COURT:  I'm not concerned about happiness at the

19  moment.  In the long run, yes.

20          But today you want an opportunity to file a written

21  response to this motion.

22          MR. MALINA:  Yes.

23          THE COURT:  How much time do you need?

24          MR. MALINA:  I could do it in 24 hours.

25          THE COURT:  File it in 24 hours.

1          Do you need time to reply?

2          MR. WILSON:  We can reply in 24 hours to theirs.

3          THE COURT:  All right.  One of the shortest schedules

4    I have ever set:  24 for response, and 24 for reply.

5          Now, it may well be that when the Court looks at your

6    written submissions, it may call out for an evidentiary

7    hearing.  It depends on your submissions.

8          Now, in terms of discovery, there has been none,

9    right?

10          MR. MALINA:  Right.

11          THE COURT:  So what do you intend to do about that?

12          MR. MALINA:  Follow up as quickly as possible.

13          May I make a suggestion, however?

14          THE COURT:  Yes.

15          MR. MALINA:  If counsel would like -- I mean, there

16    has been talk about how long this process would take.

17          One option would be for me to call the City and get a

18    date.

19          THE COURT:  For decision.

20          MR. MALINA:  Yes.  The City's decision.

21          THE COURT:  I should have thought that you would have

22    done that before you came to Court today.

23          Because if you told me, for example, that "There will

24    be a decision by 6:00 o'clock tonight," I simply would have

25    continued the entire time until 6:00 o'clock.

001571

1          You have more in mind days or weeks.

2          MR. MALINA:  I would say it's probably more close to

3    four to seven days.

4          THE COURT:  That the investigation would be completed

5    in four to seven days?

6          MR. MALINA:  Yes.

7          THE COURT:  Do you have any response?

8          MR. WILSON:  Given that, I see no reason why they

9    would even object to allowing us to open on the 18th for the

10   week.

11         THE COURT:  It depends on the results of the

12   investigation.

13         MR. MALINA:  Well, no.  That's absolutely ludicrous.

14         If the City is investigating the propriety of a

15   zoning and occupancy permit, we would never allow --

16         THE COURT:  If the application -- if the application

17   process contained a material misrepresentation, it could

18   conceivably have affected the decision even to issue the

19   temporary certificate.

20         MR. MALINA:  Correct.

21         THE COURT:  If someone argued that "We're going to

22   open a pet hospital" and, yet, the real objective was to open a

23   brothel, I think you would say that that's a material

24   misrepresentation, and that we, having known that, would not

25   have not issued the temporary certificate.

C01572

1       MR. MALINA:  Right.  That would be an example.

2       THE COURT:  Maybe a poor example.

3       But, in any event, an extreme example.  I should put

4 it that way.

5       MR. MALINA:  Right.

6       THE COURT:  Now, Planned Parenthood argues much of

7 what they were going to do was spread of public record, if not

8 as part of the application process, but that it was generally

9 known in the Aurora area, is that right?

10      MR. WILSON:  Yes.

11      THE COURT:  What you were going to do?

12      MR. WILSON:  Yes.  In fact, the front page of the

13 Chicago Tribune describes our facility in July, three weeks

14 before the issuance of the temporary occupancy permit.

15      THE COURT:  And the permit was issued August 17th or

16 the 26th.

17      MR. WILSON:  August 16th.

18      THE COURT:  16th.

19      All right.  So we are left with this:  24 hours for

20 response; 24 for reply; accelerated discovery, to the extent

21 that you can do something within this abbreviated period of

22 time.

23      Now, if somehow Aurora can advise the plaintiffs that

24 they expect to have a decision -- a completed investigation and

25 decision within a few days, and if you are willing to simply

1   wait for that, you can send in an agreed order which would stay

2   the response and reply, and stay discovery pending the results

3   of the investigation.  If it's going to be that soon.

4            That has be left up to you.

5            But absent any agreement on your part, respond in 24

6   hours, reply in 24 hours.  We will put the matter on the call

7   for Thursday morning.

8            MR. WILSON:  Thank you, your Honor.

9            THE COURT:  Thursday morning at 10:00 o'clock.

10           And the Court would then attempt to rule on the

11  written submissions.  But if you the Court determines that an

12  evidentiary hearing is necessary, we would set one promptly so

13  that we can ultimately resolve this matter.

14           MR. WILSON:  Your Honor, if it works for you, we

15  would be glad to produce on that day whoever, if you think you

16  need testimony.

17           THE COURT:  You mean Thursday?

18           MR. WILSON:  On Thursday we would bring our

19  witnesses, and we would ask that Aurora bring theirs, and we

20  could proceed from there.

21           MR. MALINA:  That's fine.

22           THE COURT:  How many people do you think either side

23  might need?

24           MR. WILSON:  I don't see more than two or three for

25  us.

1      THE COURT:  Do you see about the same?

2      MR. MALINA:  Yes.  I think so.

3      THE COURT:  If the hearing starts, we will give it

4  all the time it needs.

5      So the matter will be on the call for Thursday.  As I

6  have said, if you reach agreement on any of these matters send

7  in an agreed order.  Let Mr. Fulbright know as soon as

8  possible.

9      I have not, by any of the questions I have asked or

10  statements I have made, intended to indicate the ultimate

11  decision on the motion for preliminary injunction.

12      But I have denied the motion to dismiss, which was

13  filed by the City of Aurora this morning.

14      We will, perhaps, in the long run, return to this

15  Williamson issue as the case evolves.

16      Thank you.

17      MR. WILSON:  Your Honor, just for the record, so it's

18  on the record:  We are not waiving our claim for damages from

19  the 18th forward as to the City because we're not able to go

20  forward.

21      We are going to preserve the damages, which will be

22  considerable because we are going to have to push the

23  appointments and the schedule off.

24      I just wanted that on the record.

25      THE COURT:  Do you want to say anything in response?

1          MR. MALINA:  No.

2          THE COURT:  All right.  Thank you.

3      (Proceedings concluded.)

4                    CERTIFICATE

5          I hereby certify that the foregoing is a true and

6  correct transcript of the proceedings in the above-entitled

7  case.

8

9  _____        12-6-07
                                       _____
10 Maellen E. Pittman               Date
   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

001576

# EXHIBIT L

001577



**City of Aurora Law Department**
**Alayne Weingartz, Corporation Counsel**
**44 East Downer Place**
**Aurora, Illinois 60507**
**Phone:      (630) 844-4777**
**Fax:         (630) 844-4737**

# FAX TRANSMISSION

The materials enclosed with this facsimile transmission are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient, be advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone (collect calls will be accepted) to arrange for return of the forwarded documents to us at our expense.

| To: | Vincent Tessitore | Fax No: | (630) 701-1169 |
|---|---|---|---|
| Date: | December 10, 2007 | Pages: | _3_<br>Including cover sheet |
| From: | Alayne Weingartz | Tel. No.: | (630) 844-4777 |

| Subject: | *FOIA 07-724* |
|---|---|

Comments:

r01578



# City of Aurora

Law Department • 44 East Downer Place • Aurora, Illinois 60507-2067 • (630) 844-4777 • Fax (630) 844-4737

Corporation Counsel:                                                      Assistant Corp. Counsel:
Alayne M. Weingartz                                                        John C. Banbury

December 10, 2007

Mr. Vincent Tessitore
100 S. River Street
Aurora, Illinois 60506

Re:    **FOIA # 07-724**

Dear Mr. Tessitore:

Your FOIA request dated November 16, 2007 that requests 8 numbered types of categories listed on "Appendix A to Aurora FOIA Request" is granted in part and denied in part. Each numbered request that is denied is listed below with a citation to the applicable exemption from the Freedom of Information Act, 5 ILCS 140/1 *et seq.*

1.    Copies of all records consisting of orders, rulings, resolutions, findings, minutes, committee recommendations, staff reports, agendas, notices, motions, applications, hearing minutes, transcripts and submittals concerning any planning or zoning relief sought by any party since January 1, 2004 for the property located at 3051 E. New York Street, Aurora, IL with a former address of 240 N. Oakhurst, Aurora, IL (the "Subject Property").

Denied as to staff reports that are preliminary in nature pursuant to Section 7(1)(f).

3.    Copies of all notes, memoranda, emails, facsimiles, letters and all other correspondence between any agent or representative of the City of Aurora and any agent or representative of either Gemini Office Development, LLC, Planned Parenthood Chicago Area.

Denied as to all notes of employees due to the fact that any such notes are preliminary in nature pursuant to Section 7(1)(f).

4.    Copies of all notes, memoranda, emails, facsimiles, letters and all other correspondence concerning Planned Parenthood Chicago Area, Gemini Office Development, LLC or the Subject Property from the date of January 1, 2002 to the present date.

Denied as to all notes of employees due to the fact that any such notes are preliminary in nature pursuant to Section 7(1)(f). In addition, any communication between employees or elected officials and corporation counsel or outside counsel are exempt pursuant to Section 7(1)(n) which exempts attorney-client privileged communication.

5.    A copy of Mayor Thomas Weisner's calendar from the date of January 1, 2005 to the present date.

001579

Granted, however please be aware that the Mayor's calendar contains many items of a tentative nature or overlapping times, therefore, not all meetings or event shown were in fact attended by the Mayor.

6. A copy of Chief of Staff William Wiet's calendar from the date of January 1, 2005 to the present date.

Granted, however and unlike the Mayor's calendar which is an exception, the City's computer system does not store calendar information beyond 6 months. Therefore, you have been given all that was available for the time period you requested.

8. Copies of all correspondence, memorandum, notes, letters, emails and all other correspondence from the City of Aurora's Zoning Administrator concerning the Subject Property from the date of January 1, 2005 to the present date.

Denied as to all notes of the Zoning Administrator due to the fact that any such notes are preliminary in nature pursuant to Section 7(1)(f).

Documents responsive to all the requests not denied above will be copied, at your expense. Please note that the copying charges for the documents totals $ _457.50_. Please contact Nancy Warren in the Legal Department to make arrangements to pay the copying costs and pick up the copied documents.

The person or persons who made this decision and their title or titles are: Alayne Weingartz, Corporation Counsel

You have the right to appeal this response to the Mayor. If you wish to appeal this response, you must file a written request for an appeal, within **ten (10) days** of the receipt of this letter, by sending your request to Tom Weisner, Mayor, City of Aurora, 44 East Downer Place, Aurora, Illinois 60507-2067. The Mayor will make a decision to either affirm the denial of disclosure to or to allow disclosure within seven working days after you file your notice of appeal. If the decision to deny your request for disclosure was made by the Mayor, you have the right to appeal the Mayor's decision to the Circuit Court of this County pursuant to Section 11 of the Freedom of Information Act.

Very truly yours,

Alayne Weingartz
Corporation Counsel

C01580



City of Aurora Law Department
Alayne Weingartz, Corporation Counsel
44 East Downer Place
Aurora, Illinois 60507
Phone:     (630) 844-4777
Fax:        (630) 844-4737

# FAX TRANSMISSION

The materials enclosed with this facsimile transmission are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient, be advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone (collect calls will be accepted) to arrange for return of the forwarded documents to us at our expense.

| To: | Vincent Tessitore | Fax No: | (630) 701-1169 |
|---|---|---|---|
| Date: | December 12, 2007 | Pages: | _1_ Including cover sheet |
| From: | Alayne Weingartz | Tel. No.: | (630) 844-4777 |

| Subject: | *FOIA Request 07-724* |
|---|---|

Comments:

Mr. Tessitore,

 Due to a computational error wherein the number of pages responsive to your FOIA request was not accurately computed, the new amount you will need to pay in order to receive this 2,000 + page response is actually $557.00, calculated at the usual rate of 25 cents per page. Our apologies for any inconvenience this error may cause you.

Alayne Weingartz

001581