# THOMAS MORE SOCIETY

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Peter K. Wilson | **FROM:** Peter C. Breen |
| **COMPANY:** Mickey, Wilson, Weiler, Renzi & Andersson, P.C. | **DATE:** 1/2/2008 |
| **FAX NUMBER:** 630-801-9715 | **TOTAL NO. OF PAGES INCLUDING COVER:** 44 |
| **RE:** Frachey et al, 07 ZBA 001 | **SENDER'S FAX NUMBER:** 630-261-9567 |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

C01697

BEFORE THE ZONING BOARD OF APPEALS
AURORA, ILLINOIS

Kim Frachey, Nancy Maloney,                )
*et al.*, and Fox Valley Families          )
Against Planned Parenthood,                )
                                            )
                                            )
Appellants,                                 )           07 ZBA 001
                                            )
vs.                                         )
                                            )
City of Aurora,                             )
A Municipal Corporation,                    )
                                            )
Appellee.                                   )

## APPELLANTS' REPLY IN SUPPORT OF APPELLANTS' MOTION FOR ISSUANCE OF SUBPOENAS *DUCES TECUM* FOR EXPEDITED DEPOSITIONS OF MR. ED SIEBEN, MR. HERMAN BENEKE, MR. PHILLIP LEUTKEHANS, AND MR. RICHARD MARTENS

Now come Kim Frachey, Nancy Maloney, Socorro Nieto, Chad and Natalie Fiolo, and Fox Valley Families Against Planned Parenthood (hereinafter "Appellants"), by their undersigned counsel, and for this Reply in Support of their Motion that the Board of Appeals Issue Subpoenas *Duces Tecum* for Expedited Depositions of Mr. Ed Sieben, Aurora Zoning Administrator, Mr. Herman Beneke, Aurora Building Official, Mr. Phillip Leutkehans, Zoning Expert for Aurora, and Mr. Richard Martens, Zoning Expert for Aurora, they submit the following:

### Introduction

In their Motion for Subpoenas *Duces Tecum*, Appellants set forth compelling grounds for the Zoning Board of Appeals to issue subpoenas to the requested witnesses. The Board had declared its intention to issue subpoenas to witnesses when its counsel, Mr. Peter Wilson, wrote to the undersigned attorneys on November 21, 2007, and also when it adopted its procedural rules for the conduct of this hearing on November 28, 2007. (Exhibit A, Letter to Counsel, November 21, 2007) Two hearing dates and a full month after the Board's intention in this regard was conveyed to the parties, the City has now challenged the authority of the ZBA to subpoena witnesses.

This is only the latest in a series of steps taken by the City to suppress the relevant facts in this matter: City officials have been gagged since September 25 from explaining their decisions in this matter to the undersigned attorneys for Aurora citizens. A zoning review was concluded hastily on October 1, with reports and decisions withheld from City Council members until after those decisions were delivered to Planned Parenthood. The City has since claimed, in its Motion to Dismiss, that its own validly enacted

ordinances are "of no legal consequence or authority" with respect to the zoning of this property. Back-dated certificates of occupancy have continued to issue for the property, even after the City acknowledged that it used the wrong zoning ordinance, *over one year after the initial zoning determination on the property*. At first, the City withheld relevant documents from the undersigned attorneys and the ZBA, until this Board ordered the documents to be produced. Then, the City released the documents three days late, claiming that it had "misunderstood the process."

The Appellants, who include citizens and taxpayers of the City of Aurora, have put forth great effort and in good faith to bring to light the illegalities that persist on the subject property. But, in its latest filing, the City has gone so far as to accuse the Appellants of making an "omission [that] is clearly intentional" with regard to the legal authority of the ZBA to issue subpoenas. (Response to Motion for Subpoenas *Duces Tecum*, pg 2)

Instead of working to remedy this blatantly illegal zoning, the City keeps attempting to sidetrack this legitimate inquiry. The subpoenas *duces tecum* requested by the Appellants will provide vital information that has been kept from the ZBA and the public until now. Appellants urge this Board of Appeals to grant the Motion for Subpoenas *Duces Tecum* and venerate the words of Patrick Henry, one of the Founding Fathers of our nation, who declared, "The liberties of a people never were, nor ever will be, secure, when the transactions of their rulers may be concealed from them."

## I. The AZO Grants the ZBA Authority to Adopt Rules of Procedure, and Counsel Were Instructed That Subpoenas Would Be Issued—No Parties Objected in the Intervening Month or at the Two ZBA Hearings Since That Time.

According to the AZO, "The zoning board of appeals shall adopt its own rules of procedure." (AZO 10.4-3) As a home rule municipality, the City of Aurora has the right to empower its quasi-judicial administrative boards of appeal with discovery powers over an adversarial dispute like the present matter.

During its first evening of hearings on the present matter, on November 28, 2007, this Board approved and reaffirmed its power to issue subpoenas. This was not a surprising act: In a letter to all counsel in this matter on November 21, 2007—including Corporate Counsel for Aurora—Mr. Peter Wilson, attorney to the ZBA, instructed that, "[i]n the event any party desires to have witnesses under subpoena, we request that you provide us with that information as soon as possible." (Exhibit A, Letter to Counsel, November 21, 2007)

If the City wished to object to the rules of procedure for this present hearing, that opportunity passed long ago. The ZBA has already ruled that it has power to issue subpoenas—the City should respect the ruling of the Board.

2

C01699

## II. Case Law Supports the Power of the ZBA to Issue Subpoenas *Duces Tecum*.

The City cites <u>Northwestern v Evanston</u>, 74 Ill.2d 80, 85 (1978), to support its contention that this Board lacks power and authority to issue subpoenas. But, in recounting the history of that case, the Illinois Supreme Court merely stated that a circuit court had quashed six "discovery subpoenas" in July, 1976, without providing any further details. The decision does not stand for the proposition that Evanston lacked power to issue subpoenas. Their quashing may have been due to irrelevancy, immateriality, or other reasons. Indeed, the City admits that, in certain circumstances, "...the Board has the authority, at the request of the applicant, to issue subpoenas for persons to appear at the hearing or for examination of documents..." (Response to Motion for Subpoenas *Duces Tecum*, pg 2)

Moreover, in a more recent case, <u>Safanda v Zoning Board of Appeals</u>, 203 Ill. App. 3d 687, 690, 691 (2nd Dist., 1990), the circuit court sent a matter back to the ZBA for an additional hearing where the Building Commissioner (who was also Secretary of the Geneva ZBA) "was ordered to testify and produce documents pursuant to an ordered subpoena." The Building Commissioner of Geneva is the equivalent official in that municipality to the Zoning Administrator and Building Official of Aurora.

The <u>Safanda</u> case is directly relevant to the appeal at hand. In <u>Safanda</u>, the Appellant subpoenaed the Building Commissioner/Zoning Administrator and, apparently, the Appellant was opposed by the City in that matter, too. The Circuit Court supported the Appellant and ordered that the subpoena issue. Moreover, the subpoena was for testimony and documents, as here, where Appellants seek issuance of subpoenas *duces tecum*.

By its arguments, the City attempts to negate the power of this Zoning Board of Appeals to conduct relevant fact-finding. The Board should reject the City's attempts to prevent the Zoning Administrator and Building Official from testifying to the numerous zoning violations on the subject property.

Finally, depositions via subpoenas *duces tecum* make practical sense. They would add light to the proceedings, while preserving valuable hearing time before the Board.

### III. The Illinois Municipal Code, 65 ILCS 5/11-13-7a, Does Not Restrict the Power of the ZBA—the Code *Assumes* That the ZBA Has the Power to Issue Subpoenas *Duces Tecum*.

In its Response, the City states that

Under Section 11-13-7a of the Illinois Municipal Code, 65 ILCS 5/11-13-7a, the only subpoena power provided to a Zoning Board of Appeals is in the context of a variation or special use permit hearing, where the Board has the authority, at the request of the applicant, to issue subpoenas for

3

C01700

persons to appear at the hearing or for examination of documents prior to the hearing. (Response to Motion for Subpoenas *Duces Tecum*, pg 2)

However, 11-13-7a *guarantees rights to certain parties* in a ZBA hearing—*it does not limit the power of the ZBA*. If anything, this code section *assumes* the ZBA has the power to issue subpoenas *duces tecum*, but it only requires that a ZBA issue such subpoenas in particular circumstances. Again, this code section is written to give a right to parties appearing before the ZBA—"Zoning variation and special use applicants and property owners"—not to limit the power of the ZBA itself. (65 ILCS 5/11-13-7a)

Moreover, one of the issues in this matter is that Planned Parenthood was required to seek variations, an amendment, and/or a special use permit: expanding the power of the ZBA during run-of-the-mill applications but restricting that power when an applicant commits numerous zoning violations in trying to skirt those required applications is nonsensical. The law is clear—this ZBA has a right to issue the requested subpoenas *duces tecum*.

## IV. Procedural Due Process Requires the Availability of Subpoenas in This Matter.

Procedural due process in this matter is guaranteed to the Appellants by the Illinois Municipal Code, 65 ILCS 5/11-13-25, the Illinois Supreme Court, People ex rel. Klaren v. Village of Lisle, 202 Ill. 2d 164 (2002), the Illinois Constitution, and by the Fourteenth Amendment to the United States Constitution.

In Klaren, the Illinois Supreme Court held that a special use hearing is an "administrative" hearing instead of a "legislative" hearing. In an "administrative"—and therefore "quasi-judicial"—hearing, Klaren guaranteed certain due process rights, including the right to present evidence and cross-examine witnesses.

These proceedings are even more "quasi-judicial" than special use or variation proceedings. Therefore, Appellants are even more clearly entitled to the full panoply of due process rights, which includes the "rights of discovery, confrontation, cross-examination, and other elements of due process involved in judicial and quasi-judicial proceedings." (202 Ill. 2d at 183-184. People ex rel. Klaeren v. Lisle, 316 Ill. App. 3d 770, 788 (2000), quoting Petersen v. Plan Comm'n, 302 Ill. App. 3d 461, 468 (1998), quoting Jabbari v. Human Rights Comm'n, 173 Ill. App. 3d 227, 233 (1988) (Rapp, J., dissenting).)

## V. City's Only Objection to Subpoenas Is Procedural and Jurisdictional—No Objections Were Made to the Specific Individuals Requested.

Appellants note that, other than general objections to the jurisdiction of the Board over zoning decisions, the City had no objections to the specific individuals requested for subpoena and to the reasons for requesting those particular individuals. Since this Board has clear legal authority to issue subpoenas *duces tecum*—and the City has no objection

4

C01701

to the specific individuals requested for deposition—Appellants respectfully request that the Board issue these subpoenas *duces tecum* without delay.

WHEREFORE, the Appellant Objectors respectfully request that this Board grant them the requested relief and issue the subpoenas *duces tecum* for expedited depositions of Mr. Ed Sieben, Aurora Zoning Administrator; Mr. Herman Beneke, Aurora Building Official; Mr. Phillip Leutkehans, Zoning Expert for Aurora; and Mr. Richard Martens, Zoning Expert for Aurora and for all other relief warranted on the premises in accordance with the law.

On behalf of the Appellants,

Of Counsel
Peter Breen, 630-544-4455
Thomas Brejcha, 312-590-3408
Thomas More Society,
A public interest law firm
29 S LaSalle St, Ste 440
Chicago, IL 60603
January 2, 2008

5

# EXHIBIT A

001703

## MICKEY, WILSON, WEILER, RENZI & ANDERSSON, P.C.

ATTORNEYS AT LAW

2111 W. PLUM STREET, SUITE 201
AURORA, ILLINOIS 60506
www.mickeywilson.com

GARY K. MICKEY
PETER K. WILSON, JR.
BERNARD K. WEILER
CONSTANCE BURNETT RENZI
STEVEN A. ANDERSSON
DEAN M. FRIEDERS
LINDA K. LEASK

MAILING ADDRESS:  P.O. BOX 787
AURORA, ILLINOIS 60507-0787

TELEPHONE: (630) 801-9699
FAX: (630) 801-9715
WRITER'S E-MAIL: pkw@mickeywilson.com

November 21, 2007

Mr. Peter C. Breen    VIA FAX 312/782-1887 AND 630/261-9567
Thomas More Society  AND REGULAR MAIL
29 South LaSalle St. Suite 440
Chicago, IL 60603

Mr. Christopher B. Wilson    VIA FAX 312/324-9603 AND REGULAR MAIL
Perkins, Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Ms. Alayne Weingartz    VIA FAX 630/844-4737 AND REGULAR MAIL
Corporation Counsel, City of Aurora
5 E. Downer Place, Suite F
Aurora, IL 60507

    Re:    Frachey, et al. Appeal to Zoning Board of Appeals No. 07 ZBA 001

Dear Counsel:

This will confirm for all parties that we are in receipt of the record from the City of Aurora, along with a Motion to Dismiss and Transfer.

We want to assure that throughout the proceedings references to any document will be clear to all parties and the court reporter. We have therefore Bates stamped the record and the Motion and have made copies of the same for each party and the Zoning Board of Appeals. Any new or additional documents admitted as part of the record will also be stamped in sequence.

The initial record consists of documents maintained by the City of Aurora and will therefore be accepted by the Zoning Board of Appeals as true and correct copies of the same without further foundation. They will also be considered as evidence of the act or transaction they represent. Any

Mr. Peter C. Breen
Mr. Christopher B. Wilson
Ms. Alayne Weingartz
November 21, 2007
Page 2 of 2

objection to an individual document must state the objection with specificity. Any additional documents offered by any party, which are municipal records, will be admitted on the same basis.

As noted, the City of Aurora has filed a Motion to Dismiss and Transfer. Each of the other parties may, and are encouraged to, file a written response, and the City will have an opportunity to reply. The same format will be followed for any other pre-hearing motions that may be filed by any other party. We do request, however, that any additional motions or pre-hearing matters to be filed be done so prior to November 28, 2007.

If responses and a reply on the City's motion are received prior to the 28th, the Board will hear oral arguments on it at that time. If not received by then, and any party requests the opportunity to file such that evening, we believe the request will be granted by the Board with a specific timetable for all pre-hearing matters and another date set for decision or argument.

At the initial hearing date on the 28th, the Board will adopt procedures for the hearing process. Thereafter, the Board will consider all pre-hearing motions or other matters and set appropriate dates.

Since this is an appeal process, and not a proceeding of first impression, we would expect that the Board of Appeals would be, for the most part, reviewing the record. In the event there is other factual matter relevant to any issue before the Board, the same will be presented in accordance with the hearing procedures to be adopted by the Board. In the event any party desires to have witnesses under subpoena, we request that you provide us with that information as soon as possible. In order to keep the proceedings orderly and efficient, and to minimize inconvenience for witnesses, we suggest that counsel discuss with one another, in advance, any possible stipulations of factual matters not in dispute and that may be relevant to the proceeding. We would also request that you discuss the expected length of time for any witness so that the scheduling of any additional hearing dates can be accomplished by the Board on the 28th.

As before, should you have any questions please do not hesitate to contact either me or Steve Andersson at our office.

Very truly yours,

Peter K. Wilson, Jr.

PKW:mar
R:\Municipal\Aurora\Zoning Board of Appeals\Correspondence\Hearing letter 112107.doc

cc:    Margaret Truax, Chairperson, Zoning Board of Appeals, City of Aurora

# CASES CITED

C01706

2 of 3 DOCUMENTS

ELIZABETH M. SAFANDA, Plaintiff-Appellant, v. ZONING BOARD
OF APPEALS OF THE CITY OF GENEVA et al.,
Defendants-Appellees

Nos. 2-89-1256, 2-90-0200 cons.

Appellate Court of Illinois, Second District

203 Ill. App. 3d 687; 561 N.E.2d 412; 1990 Ill. App. LEXIS
1538; 149 Ill. Dec. 134

October 2, 1990, Filed

**NOTICE:**    [***1] Released for Publication November 5, 1990.

**PRIOR HISTORY:**    Appeal from the Circuit Court of Kane County; the Hon. Michael J. Colwell, Judge, presiding.

**DISPOSITION:**    Affirmed in part; reversed in part and remanded.

**COUNSEL:** Safanda & Brannen, of St. Charles (Carl F. Safanda, of counsel), for appellant.

Radovich & Radovich and Stephen M. Cooper, of Law Offices of Cooper, Storm & Petesch, both of Geneva, and Lloyd E. Dyer, Jr., of Wheaton (Charles A. Radovich, of counsel), for appellees.

**JUDGES:** Justice McLaren delivered the opinion of the court. Unverzagt, P.J., and Inglis, J., concur.

**OPINION BY:** McLAREN

**OPINION**

[*689] [**413] JUSTICE McLAREN delivered the opinion of the court:

Plaintiff appeals from the trial court's dismissal of two counts of her complaint in administrative review and the dismissal of certain parties

defendant. We affirm in part, reverse in part, and remand.

Plaintiff, Elizabeth Safanda (plaintiff), sought a rear-yard variance on property owned in defendant City of Geneva (City) to enable her to build a single-family residence. Following a hearing before defendant zoning board of appeals of the City of Geneva (Board) on June 8, 1988, the application was denied.

Plaintiff filed her complaint for administrative [***2] review on August 4. On September [**414] 27, the court entered an agreed order remanding the cause to the Board for additional hearings and the issuance of a decision containing required findings of fact. The order also provided that the prior Board decision would be superseded by the decision on remand, that the records of both hearings would constitute the record on review, and that plaintiff's complaint was to be stayed pending the issuance of the decision on remand.

The Board met on October 5, 1988, to discuss the case. This meeting was not open to the public, and plaintiff received no notice of it. An additional public hearing was held by the Board on October 27, after [*690] which the Board denied the application in a decision dated December 29.

203 Ill. App. 3d 687, *690; 561 N.E.2d 412, **414;
1990 Ill. App. LEXIS 1538, ***2; 149 Ill. Dec. 134

On December 22, plaintiff filed a motion in the circuit court seeking further hearings before the Board. The court then remanded the cause to the Board and ordered an additional hearing at which Charles Lencioni, building commissioner of the City of Geneva and secretary of the Board, was ordered to testify and produce documents pursuant to an ordered subpoena. Such meeting was held on March 1, 1989. The Board [***3] then denied the application in a decision dated March 8 and mailed on March 30. Plaintiff filed her first amended complaint in the trial court on April 17. Defendants Board, City, and the individual members of the Board filed a motion to strike and dismiss plaintiff's first amended complaint. On November 2, plaintiff was granted leave to amend her first amended complaint by adding count V. The court then dismissed counts IV and VI and dismissed as parties the City and the individual members of the Board. Plaintiff appeals these dismissals.

Defendants then filed a motion to dismiss count V of the first amended complaint. This motion was granted on February 8, 1990. Plaintiff also appeals from this dismissal. We have consolidated these dismissals on appeal.

Plaintiff first contends that count VI of her first amended complaint should not have been dismissed as a matter of law. This count alleged that the Board's October 5, 1988, meeting was held in violation of the Open Meetings Act (Act) (Ill. Rev. Stat. 1989, ch. 102, par. 41 et seq.). The trial court found that this count was not timely filed and therefore dismissed it. We disagree.

Section 3(a) of the Open Meetings [***4] Act provides:

"Where the provisions of this Act are not complied with, or where there is probable cause to believe

that the provisions of this Act will not be complied with, any person, including the State's Attorney of the county in which such noncompliance may occur, may bring a civil action in the circuit court for the judicial circuit in which the alleged noncompliance has occurred or is about to occur, or in which the affected public body has its principal office, prior to or within 45 days after the meeting alleged to be in violation of this Act or within 45 days of the discovery of a violation by the State's Attorney." (Ill. Rev. Stat. 1989, ch. 102, par. 43(a).)

The statute allows a person to file a complaint within three time periods: (1) before the violative meeting is held; (2) within 45 days of the violation; or (3) within 45 days of discovery of the violation by the [*691] State's Attorney. In the case before us, plaintiff filed her complaint 194 days after the Board's allegedly violative meeting, clearly beyond the limits of the first two periods. However, the record contains no evidence that the State's Attorney ever discovered the occurrence of the meeting. [***5] Therefore, the 45-day period after such discovery had not run, and plaintiff's complaint was filed within the statutory time limit. The trial court measured the 45-day limit from the time the court found plaintiff to have notice of the meeting. However, the statute does not measure the opportunity to file from the complainant's discovery. Even if the court were correct in measuring the 45 days from plaintiff's discovery, the court still erred in determining that plaintiff filed outside the limited period. The court found that plaintiff discovered the meeting on [**415] March 1, 1989, and therefore should have filed her

203 Ill. App. 3d 687, *691; 561 N.E.2d 412, **415;
1990 Ill. App. LEXIS 1538, ***5; 149 Ill. Dec. 134

complaint on or before April 15. Plaintiff filed on April 17. However, April 15 fell on a Saturday; plaintiff would have been allowed to file on the next day that the court was open, namely April 17. We conclude that plaintiff timely filed count VI of the first amended complaint. Therefore, the trial court erred in dismissing that count, and we remand this cause to the trial court with instructions to reinstate that count.

Plaintiff next contends that the court erred in dismissing the City of Geneva as a defendant in this suit. The trial court [***6] found that the City was not a proper party to this action because it "was not part of the decision rendered by the Zoning Board of Appeals" and because plaintiff was challenging the Board's application of the City's zoning code, not the code itself.

The City did not participate in the hearing before the Board. Plaintiff points out that Charles Lencioni, the City building commissioner, testified before the Board and that City attorney Charles Radovich presented evidence and otherwise participated in the public hearing before the Board. However, Lencioni was subpoenaed by plaintiff to testify regarding Lencioni's actions as secretary of the zoning board of appeals, not as building commissioner, and Radovich was acting in his capacity as counsel for the Board. Neither man represented the City or acted on its behalf in these hearings. We do not conclude that the presence of these men at the hearings constituted participation by the City.

Plaintiff maintains that the City is a proper party because counts III and IV of the first amended complaint seek to have the Geneva zoning ordinance declared void and unconstitutional as applied to her property. According to plaintiff, the City [***7] has an interest in the outcome of these counts and would be

affected by a decision entered in [*692] its absence; if the City is not a party, it would be bound by the decision with no avenue for appeal.

Parties to an action are divided into indispensable or necessary parties and proper or dispensable parties. ( Lain v. John Hancock Mutual Life Insurance Co. (1979), 79 Ill. App. 3d 264, 268.) "'Proper' parties may but need not be joined." ( Lain, 79 Ill. App. 3d at 268 n.4.) A necessary party is one who "has an interest in the subject matter of the suit which may be materially affected by a judgment entered in the person's absence." ( People ex rel. Sheppard v. Money (1988), 124 Ill. 2d 265, 281.) Such a party must be joined unless joinder would destroy the jurisdiction of the court or the party is not amenable to the court's jurisdiction. Lain, 79 Ill. App. 3d at 268 n.4.

Plaintiff, while calling the City a "proper" party, applies the definition of "necessary" party to the City. Plaintiff argues that the City will be bound by the trial court's decision with [***8] no avenue for appeal unless it is a party. While this may be true, it is true for other individuals or groups who may have opposed the application for variance yet never involved themselves in the process. The City, for whatever reason, neither opposed nor advocated the granting of the variance. By failing to involve itself in the hearing, the City voluntarily gave up its right to challenge the Board's decision. The City cannot be forced to regain that right by plaintiff. The City was not a party of record in the prior proceedings and is not a necessary party on review.

In addition, plaintiff agrees that she is only challenging the constitutionality of the zoning code as applied to her property, not the constitutionality of the code on its face. The Board, not the City, is responsible for the application of the

203 Ill. App. 3d 687, *692; 561 N.E.2d 412, **415;
1990 Ill. App. LEXIS 1538, ***8; 149 Ill. Dec. 134

code to individual parcels of property. The City made no administrative decision to be reviewed. The trial court correctly dismissed the City as a defendant in this suit.

Plaintiff next contends that the individual members of the suit and should be proper parties to the suit and should not have been dismissed. Count VI of the first amended [**416] complaint sought [***9] relief against these individuals for the alleged violation of the Open Meetings Act. Count III also sought relief from the Board members, among others, for alleged violations of plaintiff's constitutional rights. Before the court dismissed count VI as untimely filed, it found that the individual Board members were proper parties to the open meetings count. Since we have concluded that count VI was timely filed and should be reinstated on remand, the individual Board members will remain parties under that count. Therefore, we will only address the alleged error of dismissing the individual members of the Board from count III.

[*693] Plaintiff fails to cite any case explicitly concluding that individual Board members are proper parties to a suit charging deprivation of constitutional rights by an administrative body. However, plaintiff argues that the reasoning employed in *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, is applicable to this case. *Barger* involved a violation of the Open Meetings Act by several officials of the City of Wheaton. The members of the Wheaton city council involved in the illegal meeting were found to [***10] be necessary parties to the resulting suit. ( *Barger*, 30 Ill. App. 3d at 539.) We find *Barger* to be clearly distinguishable from the case before us. Section 4 of the Open Meetings Act provides that "[a]ny person violating any of the provisions of this Act shall be guilty of a Class

C misdemeanor." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 102, par. 44.) Thus, the individual council members in *Barger* were properly defendants because the statute under which the suit was brought provided that individuals were to be charged under the Act. In the case before us, no statute explicitly provides for the joinder of individuals in such a case. We will not extend the provisions of a statute to situations and actions beyond the purview of that enactment. *Barger* provides no basis for finding the members of the Board to be proper defendants.

Plaintiff also cites *Weaver v. Zoning Board of Appeals* (1970), 130 Ill. App. 2d 1052, because the individual members of that Board were also made parties defendant in that case. However, the propriety of naming the members as defendants was not at issue in that case. [***11] The fact that the members were named does not, by itself, prove that the action was proper or that the members could not have gotten themselves dismissed from the cause had they so attempted. Plaintiff has provided no cognizable argument why the dismissal of the individual Board members was error. Accordingly, we affirm the dismissal of these parties.

Plaintiff next contends that the court erred in dismissing count IV of her first amended complaint. This count alleged that the Board's application of the Geneva Zoning Code violated the due process and equal protection clauses of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). The court dismissed this count for failure to state a cause of action.

A motion to dismiss admits all well-pleaded facts, and all reasonable inferences which may be drawn from those facts are taken as true for purposes of the motion. ( *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1097.) A complaint should not be

C01710

203 Ill. App. 3d 687, *693; 561 N.E.2d 412, **416;
1990 Ill. App. LEXIS 1538, ***11; 149 Ill. Dec. 134

dismissed for failure to state a cause of action unless the pleadings disclose that no set of facts could be proved which would entitle plaintiff to relief. ( Interway, [*694] 85 Ill. App. 3d at 1097.) [***12] On appeal from such a dismissal, the reviewing court should view the facts alleged in the complaint in the light most favorable to the plaintiff. Interway, 85 Ill. App. 3d at 1097.

Plaintiff first argues that her complaint stated a cause of action for violation of her right to due process. Section 31.2604 of the Geneva Code grants to the Board the power to

"[a]uthorize, upon its own motion or upon formal petition signed by one or more property owners, whenever the property owner can show that a strict application of the terms of this ordinance [appendix] relating to the use, construction or alteration of buildings [**417] or structures or the zoned use of land will impose upon him unusual and particular difficulties or particular hardship, such variations of the strict application of the terms of this ordinance [appendix] as are in harmony with its general purposes and intent, but only when the board is

satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable hardship or difficulty so great as to warrant a variation from the requirements established by [***13] this ordinance [appendix] and that at the same time the surrounding property will be properly protected. The same procedure shall be followed concerning public hearing, notices and maps as in the case of amendments to this ordinance [appendix].

In consideration of all appeals and all proposed variations to the ordinance [appendix] the board shall, before making any variation from the ordinance [appendix] in specific case, first determine that the proposed variation will not impair an adequate supply of light and air to adjacent property, or unreasonably increase the congestion in public streets, or increase the damage of fire or endanger the public safety, or unreasonably diminish or impair established property values within the surrounding area * * *."

203 Ill. App. 3d 687, *694; 561 N.E.2d 412, **417;
1990 Ill. App. LEXIS 1538, ***13; 149 Ill. Dec. 134

(Geneva, Ill., Municipal Code ch. ___, par. 31.2604 (19___).)

Plaintiff maintains that she presented adequate evidence to the Board to show that denial of the variance would cause her undue hardship and that the granting of the variance would not adversely affect the surrounding neighborhood. The complaint alleges that plaintiff presented to the Board expert testimony that the R-2 zone requirements, if not modified by the requested [***14] variance, create hardships in the construction of a single-family residence on plaintiff's property, including problems with room size and other quality of life problems. The complaint [*695] also alleged expert testimony that the granting of the variance would not impair the supply of light to adjacent property and would not negatively affect traffic congestion, the danger of fire, or the public health, safety and general welfare.

Application of a zoning ordinance to a parcel of land is violative of an individual's right to due process if that application is arbitrary, unreasonable, or capricious and it bears no substantial relationship to public welfare. ( Brown v. Board of Zoning Appeals (1959), 21 Ill. App. 2d 273, 277.) Plaintiff has contended that the Board acted arbitrarily and without concern for public welfare in denying her application for a variance because the expert testimony presented to the Board indicated that the variance should have been allowed under section 31.2604 of the Geneva Code. Viewing these allegations in the light most favorable to plaintiff, we conclude that the complaint did state a cause of action alleging due process [***15] violation. We may certainly infer, from the facts alleged, that the Board acted arbitrarily or capriciously in denying the variance in the face of such testimony. If these facts were proved, plaintiff may be entitled to

relief. Therefore, the court erred in dismissing count IV of plaintiff's first amended complaint for failure to state a cause of action under due process.

Plaintiff also contends that she stated a cause of action sounding in equal protection. The threshold question in an equal protection case is whether similarly situated people are being treated dissimilarly. ( People v. Burton (1981), 100 Ill. App. 3d 1021, 1023.) The State may treat different classes of persons differently, and, in the absence of a fundamental right or suspect classification, the State may even differentiate between similarly situated persons if there is a rational basis for doing so. ( Jenkins v. Wu (1984), 102 Ill. 2d 468, 477.) This analysis is used in this State in assessing both Federal and State equal protection challenges. Jenkins, 102 Ill. 2d at 477.

Plaintiff alleges that her property was originally [***16] platted in 1837 as 150 feet [**418] deep and 60 feet wide with frontage on Fulton Street. However, under the terms of the current Geneva Zoning Code, the property is now configured as 60 feet deep and 150 feet wide with frontage on 7th Street. Plaintiff contends that her property is the only property from the original 1837 plat that is configured in this manner and that that the configuration denies her full use of her property. Plaintiff also alleges that her property is subject to section 31.304 of the Geneva Code, which provides in part:

"The lot area and width regulations established in the residence districts shall not prohibit the erection or alteration of a dwelling and accessory buildings designed for single-family use [*696] on any residential lot shown as such on a recorded plat

203 Ill. App. 3d 687, *696; 561 N.E.2d 412, **418;
1990 Ill. App. LEXIS 1538, ***16; 149 Ill. Dec. 134

in the recorder's office of Kane County, dated prior to January 7, 1957; provided that in no instance shall a building be erected on a lot less than fifty (50) feet wide in any residence district." (Geneva, Ill., Municipal Code, ch. ___, par. 31.304 (19___).)

Plaintiff alleges that the Board's action denied her full use of her property as mandated by the Code even though "all [***17] other lots platted in 1837 could avail themselves of this provision." Nowhere, however, does plaintiff allege a specific instance when another property owner was treated differently. Alleging that other property owners "could avail themselves" of the Code provision does not allege dissimilar treatment. Such a statement merely alleges that others could seek the benefit of the provision, as did plaintiff. However, the allegation that the configuration of plaintiff's property was changed does raise an equal protection cause of action. Taking plaintiff's allegations as true, plaintiff's property was the only parcel from the 1837 plat, among several parcels having the same dimensions, to have its dimensions reversed. It is this reversal which forced plaintiff to seek the variance denied by the Board. Under these alleged facts, plaintiff has been treated differently than other owners of properties platted in 1837. Therefore, plaintiff has stated a cause of action, and count IV of her first amended complaint should not have been dismissed.

In the consolidated case, plaintiff contends that the court improperly dismissed count V of her first amended complaint. This count alleged that [***18] the Board violated both the Illinois Municipal Code (Ill. Rev.

Stat. 1989, ch. 24, par. 1 -- 1 -- 1 et seq.) and the Geneva Code when it held its meeting on October 5, 1988. Plaintiff also alleged that the Board's meeting denied her rights to due process and equal protection in violation of the Illinois Constitution. (See Ill. Const. 1970, art. I, § 2.) The trial court found that this count fell within the provisions of the Open Meetings Act (Ill. Rev. Stat. 1989, ch. 102, par. 41 et seq.) and dismissed the count for the same reasons it dismissed count VI.

We conclude that the court erred in dismissing count V of plaintiff's first amended complaint. Count VI sought relief under the Open Meetings Act. Count V sought a reversal of the Board's decision and the granting of the variance based on violations of the Illinois Constitution, the Municipal Code and the Geneva Code. Nowhere in this count did plaintiff allege violation of the Open Meetings Act. Clearly, the reasoning employed by the court to dismiss count VI, which in any event we found to be in error, is irrelevant to count V. We must therefore reverse the court's order dismissing count V of plaintiff's first amended [***19] complaint.

[*697] For the above reasons, we affirm the dismissal of the individual Board members under count III and affirm the dismissal of the City as a party to this suit. We reverse the circuit court's dismissal of counts IV, V, and VI, and remand this cause to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, P.J., and INGLIS, J., concur.

C01713

LEXSEE 2004 ILL. APP. LEXIS 1251

THE PEOPLE ex rel. ROBERT J. KLAEREN II, FRIEDA CHERNOBROV,
CARLE R. WUNDERLICH II, and AIZIK CHERNOBROV,
Plaintiffs-Appellees and Cross-Appellants, v. THE VILLAGE OF
LISLE Defendant-Appellee (Meijer, Inc. and Meijer Stores
Limited Partnership, Defendants-Appellants and
Cross-Appellees; Saint Procopius Abbey, Defendant).

No. 2-03-0786

APPELLATE COURT OF ILLINOIS, SECOND DISTRICT

352 Ill. App. 3d 831; 817 N.E.2d 147; 2004 Ill. App. LEXIS
1251; 288 Ill. Dec. 22

October 12, 2004, Decided

SUBSEQUENT HISTORY: [***1]
Released for Publication November 12,
2004.

PRIOR HISTORY: Appeal from the
Circuit Court of Du Page County. No.
99--CH--179. Honorable Bonnie M.
Wheaton, Judge, Presiding.
People ex rel. Klaeren v. Vill. of
Lisle, 202 Ill. 2d 164, 781 N.E.2d
223, 2002 Ill. LEXIS 941, 269 Ill.
Dec. 426 (2002)

DISPOSITION: Affirmed.

COUNSEL: For Meijer, Inc., St.
Procopius Abbey, Appellant: Piper
Rudnick LLP, Attorneys at Law,
Chicago, IL. Thomas F. Geselbracht,
David L. Reifman, Piper Rudnick,
Chicago, IL.

For People ex rel. Robert J. Klaeren,
II, Appellee/Cross-Appellant: Rathje &
Woodward, Attorneys at Law, Wheaton,
IL. Mark W. Daniel, John R. Zemanak,
Carol A. Watkiss, Rathje & Woodward,
Wheaton, IL. Kevin M. Carrara, Rathje,
Woodward, Dyer & Burt, Wheaton, IL.

For Village of Lisle, Appellee: Ancel,
Glink, Diamond, Bush, DiCianni &
Rolek, PC, Attorneys at Law, Chicago,
IL. Robert K. Bush, Derke J. Price,

Ancel, Glink, Diamond, Bush, DiCianni
& Rolek, PC, Chicago, IL.

JUDGES: PRESIDING JUSTICE O'MALLEY
delivered the opinion of the court.
BOWMAN and CALLUM, JJ., concur.

OPINION BY: O'MALLEY

OPINION

[**149] [*832] PRESIDING
JUSTICE O'MALLEY delivered the opinion
of the court:

This case again comes before us,
this time on the appeal of defendants
Meijer, Inc. and Meijer Stores Limited
Partnership (collectively, Meijer),
from the judgment of the circuit court
of Du Page County granting in part the
motion for summary judgment of
plaintiffs, Robert J. Klaeren II,
Frieda and Aizik Chernobrov, and
[*833] Carle R. Wunderlich II.
Plaintiffs also cross-appeal from the
trial court's judgment denying them
leave to file an amended complaint and
a petition for attorney fees. We
affirm.

The basic facts of this case are
unchanged from the earlier appeals.
See People ex rel. Klaeren v. Village
of Lisle, 316 Ill. App. 3d 770, 737

352 Ill. App. 3d 831, *833; 817 N.E.2d 147, **149;
2004 Ill. App. LEXIS 1251, ***1; 288 Ill. Dec. 22

N.E.2d 1099, 250 Ill. Dec. 122 (2000) (*Klaeren I*); *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 781 N.E.2d 223, 269 Ill. Dec. 426 (2002) [***2] (*Klaeren II*). Accordingly, only a brief recapitulation of the salient facts is necessary to set the stage for our analysis; additional pertinent facts will be discussed as necessary in the body of our analysis.

### BACKGROUND

#### The Project and the Public Hearing

Meijer, Inc. decided to build and open a new store in the Village of Lisle (village). To that end, it entered into a contract with the Saint Procopius Abbey (Abbey) to purchase a 60-acre parcel of land. Meijer, Inc. then entered into the village's zoning process, seeking to have the village pass the necessary ordinances regarding the annexation, rezoning, and special use needed to develop the parcel. Plaintiffs steadfastly opposed Meijer, Inc. throughout the process, concerned about the impact that the new Meijer store would have on their neighboring lands.

On July 9, 1998, the village held a public hearing regarding the Meijer, Inc. development, and this hearing was the focus of the earlier appeals. Pertinently, the village board of trustees (village board), the village plan commission (plan commission), and the village zoning board of appeals (zoning board ) convened a joint hearing in a local junior high school auditorium. [***3] The joint hearing was heavily attended by village residents, who formed a standing-room-only crowd within the hot and too-small auditorium.

[**150] At the beginning of the joint hearing, the village mayor, Ronald Ghilardi, who also presided over the hearing, stated:

"This is a public hearing. It is not a debate.

There will be no attempt at tonight's hearing to answer any question raised by this audience. Questions may be addressed during the review process ***.

To the extent possible the speaker will address questions and concerned [sic] raised by the combined boards this evening.

***

The petitioner will be first subject to any questions by the assembled boards. We will attempt to deal with each individual aspect of the presentation as it's made.

People in the audience speaking in favor of the proposal will then be heard. People in the audience speaking in opposition of the [*834] proposal will then be heard. The petitioner will then be allowed to make closing comments.

After closing comments by the petitioner, the public hearing will be adjourned.

Public records will remain open for written comments by interested parties. Any written comments must be received at the village offices [***4] by 4:30 p.m. Friday, July 31st.

***

To be fair to everyone in the audience, I ask that you limit your comments to two minutes each. I will be the time keeper and will let you know when 15 seconds remain.

352 Ill. App. 3d 831, *834; 817 N.E.2d 147, **150;
2004 Ill. App. LEXIS 1251, ***4; 288 Ill. Dec. 22

***

No one will be allowed to speak a second time until everyone has an opportunity to speak once. That requirement will also be applicable to members of the assembled boards."

The hearing proceeded under the rules set out by the mayor. A number of witnesses spoke on behalf of Meijer, Inc., including its architect, land planner, traffic consultant, and hydraulic engineer for the proposed project. During these witnesses' presentations, various members of the combined boards asked them questions.

After the Meijer, Inc. presentation was completed, the mayor invited those audience members in favor of the project to speak. Two people spoke in favor of the project and more than 40 people spoke in opposition to the project. One of the opponents questioned the procedures being used at the hearing, and the mayor explained that only a single representative would be permitted to speak on behalf of any group or organization and that the two-minute time limit would be enforced. Mayor Ghilardi [***5] continued:

"Rather than try and debate with you the procedure we are going to try and follow, I tried to explain at the beginning of the meeting. My instructions would give everyone who wants to speak or had a written comment an opportunity to be heard. I think that is fair.

No matter what we do it is going to be characterized as being unfair. That being the case, we are going to proceed with the suggestion I made."

The opponents raised various individual concerns about the project, including whether the project would have a greater impact on traffic than Meijer, Inc. predicted, whether the project would decrease the quality of life of the neighborhood and was inappropriate, and whether unanticipated noise pollution would occur as a result of the parking lot traffic, snow removal in the winter, and the use of garbage compactors. In addition, several opponents identified questions that they wanted the assembled bodies to ask the Meijer, Inc. representatives. [*835] Several times during the public [**151] comment portion of the hearing, the mayor warned speakers that their time had expired or was about to expire.

Following the hearing, the zoning board and the plan commission voted to deny [***6] annexation and rezoning of the subject property. The village board, however, approved the plan and made preparations to vote to approve the annexation, rezoning, and special use.

Plaintiffs'    Complaint    and Underlying Proceedings in the Trial Court

On February 11, 1999, plaintiffs filed a complaint against the village, seeking, pertinently, an injunction to prevent its vote approving the annexation, rezoning, and special use Meijer, Inc. was seeking in order to develop the subject property. Plaintiffs' injunction was denied because they had failed to join all of the necessary parties. Shortly thereafter, the village board adopted the necessary ordinances and approved the necessary resolutions to annex, rezone, and grant a special use for the subject property. Plaintiffs then filed an amended complaint adding Meijer, Inc. and the Abbey as defendants and adding a quo warranto claim. On September 14, 1999,

352 Ill. App. 3d 831, *835; 817 N.E.2d 147, **151;
2004 Ill. App. LEXIS 1251, ***6; 288 Ill. Dec. 22

plaintiffs obtained a temporary restraining order that halted Meijer, Inc.'s site preparation on the subject property. On October 4, 1999, the trial court held a hearing on plaintiffs' motion for a preliminary injunction.

On October 18, 1999, the trial court issued a memorandum [***7] opinion and order granting the preliminary injunction. Relying primarily upon E&E Hauling, Inc. v. County of Du Page, 77 Ill. App. 3d 1017, 396 N.E.2d 1260, 33 Ill. Dec. 536 (1979), the trial court held that, although Mayor Ghilardi had the right, as chair of the public hearing, to impose reasonable conditions on the public's participation in the hearing, he could not completely deny plaintiffs the right to question the witnesses for Meijer, Inc. The trial court ordered that no further activity be undertaken on the Meijer, Inc. site either until further court order or until the village held a proper public hearing on the matter. Defendants appealed this ruling.

Review on Appeal of the Preliminary Injunction Order

Defendants appealed from the trial court's order granting the preliminary injunction. This court affirmed the trial court's order, holding that the complete preclusion of any cross-examination at the hearing violated due process and rendered void the zoning modifications granted by the village. Klaeren I, 316 Ill. App. 3d at 785. One justice dissented, contending that municipal annexation and zoning questions are purely legislative functions requiring only [***8] that the municipal board allow interested parties to present their cases rather than allowing them to cross-examine opposing witnesses. Klaeren I, 316 Ill. App. 3d at 787-88 (Rapp, J., dissenting).

[*836] Our supreme court allowed defendants leave to appeal this court's ruling. The supreme court affirmed this court, holding that a municipal body acts in a quasi-judicial capacity when conducting a hearing on a special use petition. Klaeren II, 202 Ill. 2d at 183. The court concluded that the preclusion of plaintiffs' right to cross-examine witnesses was a denial of their due process rights, supporting a sufficient showing by plaintiffs that they had a likelihood of success on the merits, which entitled them to the preliminary injunction. Klaeren II, 202 Ill. 2d at 185.

Following the supreme court's decision, on December 12, 2002, the Abbey sold the property to Meijer Stores Limited Partnership [**152] and upon the remand of this cause to the trial court, the partnership was substituted as a defendant in place of the Abbey. Plaintiffs and the Meijer defendants moved for summary judgment, standing upon the record established in the preliminary injunction [***9] hearing. In addition, plaintiffs moved to amend their complaint to add a claim for a writ of certiorari and to file a petition for attorney fees.

On April 3, 2003, the trial court heard argument on the cross-motions for summary judgment, indicated that it was inclined to rule in favor of plaintiffs on the merits, and asked the parties to prepare a judgment order. On May 20, 2003, Meijer asked the trial court to reconsider its position on applying the supreme court's decision in Klaeren II to the facts of this case, basing its request on this court's opinion in Oak Grove Jubilee Center, Inc. v. City of Genoa, 338 Ill. App. 3d 967, 974, 789 N.E.2d 836, 273 Ill. Dec. 662 (2003), in which this court held that Klaeren II should not be given retroactive application. Similarly, Meijer requested that the trial court not apply Klaeren II retroactively to this cause, notwithstanding the fact that it is the same cause. The trial court

352 Ill. App. 3d 831, *836; 817 N.E.2d 147, **152;
2004 Ill. App. LEXIS 1251, ***9; 288 Ill. Dec. 22

denied Meijer's motion to reconsider and, on June 25, 2003, issued its final judgment in this matter.

The trial court held that *Klaeren II* applied to the facts of this case, stating:

"The supreme court's decision in this case did not change [***10] the law, but rather re-affirmed the law requiring that cross-examination be available to interested parties in a public hearing on a special use application. Although adopting a different rationale than advanced by this court or the appellate court, the result in the supreme court was the same, and therefore the supreme court decision will be applied retroactively to the public hearing held in this case. Upon review of the competing motions for summary judgment, and in light of the memoranda and argument, the court finds that the decision of the supreme court will be applied retroactively as to these parties in litigation."

[*837] The trial court further held that, although the public hearing involved three separate municipal bodies considering different facets of the development proposal, the other purposes of the hearing could not be separated from the zoning hearing on the special use permit, and the entire hearing violated plaintiffs' rights to due process:

"The joint public hearing in this case so intricately intertwined all of the proceedings from the various bodies that they cannot be separated. In this circumstance, where the mechanism of a joint public hearing was used, [***11] and where there was no separation of proceedings, the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process."

The trial court reasoned that, because the most stringent procedural requirement, namely, cross-examination during the special use hearing, was not allowed at the July 8, 1998, public hearing, all of the approvals at issue here--the annexation, the rezoning, the special use and planned unit development, and the subdivision--were void. The trial court also found that plaintiffs' attempt to amend their complaint was untimely, coming some 3 1/2 years after the case had been filed.

The trial court granted summary judgment in favor of plaintiffs on counts I and II of plaintiffs' first amended complaint and dismissed count III as moot. The upshot of the trial court's judgment was to invalidate the resolutions and ordinances approving the annexation agreement, the annexation and rezoning of the subject [**153] property, and the grant of the special use permit, along with the approval of the other entitlements granted for the subject property. It was determined that the subject property was not validly [***12] annexed but, instead, remained in unincorporated Du Page County. On July 14, 2003, Meijer timely appealed. On July 28, 2003, plaintiffs timely filed their notice of cross-appeal.

ANALYSIS

Meijer's Appeal

On appeal, Meijer raises two issues. First, it contends that the trial court erred in applying *Klaeren II* retroactively to this case because

352 Ill. App. 3d 831, *837; 817 N.E.2d 147, **153;
2004 Ill. App. LEXIS 1251, ***12; 288 Ill. Dec. 22

*Klaeren II* wrought a sea change in the law of special uses and it would be grossly inequitable to apply the new law to Meijer. Meijer also argues that, notwithstanding the outcome of its first argument, *Klaeren II* would invalidate only the special use portion of the July 5, 1998, public hearing. It contends that, based on this consideration, the trial court erred in invalidating the annexation, rezoning, and subdivision of the subject property.

[*838] Turning to Meijer's first issue on appeal, we are struck by the incongruity of the argument. Essentially, Meijer argues that, because this court held that *Klaeren II* was not to be applied retroactively in *Oak Grove*, 388 Ill. App. 3d at 974, we should find that decision to be controlling and similarly conclude that *Klaeren II* does not apply here. Meijer thus urges [***13] us to apply the rule set forth in *Klaeren II* only prospectively, even as regards the parties herein.

We find this argument to be virtually a *non sequitur*. Meijer is asking that the rule announced in this case not be applied to this case—ignoring the *sotto voce* general rule that the law announced in a case is applied to the case in which it is announced. See, e.g., *Elg v. Whittington*, 119 Ill. 2d 344, 359, 518 N.E.2d 1232, 116 Ill. Dec. 252 (1987) ("We therefore hold that our decision will apply prospectively to all cases in which the notice of appeal was filed or due to be filed on or after our decision in this case was first announced, November 16, 1987. However, our decision remains in effect for the parties in the instant case"). In addition, Meijer overlooks or ignores the standard definition of prospectivity: "Prospective application means that, on the date of filing [the opinion], the new rule will affect pending cases and all cases brought after the date of filing. In addition, the parties to

the subject case will also be affected by the new rule." *Gallik v. County of Lake*, 335 Ill. App. 3d 325, 332, 781 N.E.2d 522, 269 Ill. Dec. 725 (2002); see also *Department of Transportation ex rel. People v. Hunziker*, 342 Ill. App. 3d 588, 602-03, 796 N.E.2d 122, 277 Ill. Dec. 407 (2003), [***14] quoting *John Carey Oil Co. v. W.C.P. Investments*, 126 Ill. 2d 139, 149, 533 N.E.2d 851, 127 Ill. Dec. 769 (1988) (" 'On those occasions when prospective application is warranted, the holding of the court still controls the case at bar' "). We note that, while Meijer's argument may be strange, Meijer fortuitously supported it with citation to a relevant case in which the court declined to subject the parties in that case to the rule announced in that case. *Bogseth v. Emanuel*, 166 Ill. 2d 507, 517, 655 N.E.2d 888, 211 Ill. Dec. 505 (1995). Meijer did not note that exception to the general rule of prospectivity in any of its argument. Nevertheless, as a result of the fortuity, we will undertake the analysis set forth in *Bogseth* regarding prospectivity and apply it to the parties in this cause.

"Whether a ruling will be applied prospectively will depend upon whether the decision to be applied nonretroactively [**154] establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. If either of these criteria is met, the question of prospective [***15] or retroactive application will be answered by considering whether, given the purpose and prior history of the

352 Ill. App. 3d 831, *838; 817 N.E.2d 147, **154;
2004 Ill. App. LEXIS 1251, ***15; 288 Ill. Dec. 22

rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by a balance of the equities."

*Bogseth*, 166 Ill. 2d at 515. [*839] Thus, we must first determine whether the relevant law has been changed, and, if that has occurred, proceed to the remaining prongs of the analysis set forth in *Bogseth*.

Meijer argues, of course, that *Klaeren II* changed the law. We agree that *Klaeren II* changed the law, insofar as it relates to whether a municipal body acts administratively or legislatively when acting upon a special use permit. *Klaeren II*, 202 Ill. 2d at 183. We do not agree, however, that the *relevant* law, namely, whether the opportunity to conduct cross-examination is required in a municipal hearing on a special use permit, was changed by *Klaeren II*.

*E&E Hauling* held that the right of cross-examination was integral to the validity of a hearing before a zoning board. *E&E Hauling*, 77 Ill. App. 3d at 1021-22. *Klaeren II* limited [***16] the scope of the holding in *E&E Hauling*, determining that the "full panoply of due process rights" should not necessarily be available when any public hearing is conducted before any tribunal or body as listed in the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2002)). *Klaeren II*, 202 Ill. 2d at 181. Meijer seizes upon the supreme court's criticism of both this court's rationale in *Klaeren I* and the scope of *E&E Hauling* in an attempt to argue that *Klaeren II* changed not the characterization of the hearing on a special use permit but rather the availability of the right of cross-examination in such a hearing. Meijer's argument is misplaced.

The supreme court held that the right of cross-examination accrued in a hearing before a zoning board on a special use permit, just as the court in *E&E Hauling* determined that the right of cross-examination was available in any hearing before a zoning board. *Klaeren II*, 202 Ill. 2d at 185. *Klaeren II* limited *E&E Hauling*, however, by recognizing that the right to engage in cross-examination was not unfettered and that a municipal body could reasonably [***17] impose limits on that right, based upon the circumstances of the hearing specifically before it. *Klaeren II*, 202 Ill. 2d at 185. Thus, *Klaeren II* did not enunciate a new change in the law establishing the right of cross-examination at a zoning board hearing on a special use permit; rather, it limited that already-existing right.

Plaintiffs' challenge throughout this case steadfastly has been that they were deprived of due process when the mayor forbade any cross-examination in the joint hearing, which included, among other things, a hearing on a special use permit. Thus, the only relevant inquiry as to a change in the law must concern whether the right to cross-examination in a hearing on a special use permit existed before *Klaeren II*. As noted above, since at least 1979, the courts in this state have recognized that public hearings before zoning boards include the [*840] right to cross-examination. *Klaeren II*, at most, limited that right and enhanced a municipal body's discretion [**155] in implementing that right, but it did not dispose of it or create it afresh. Accordingly, we hold that the relevant law was not changed by *Klaeren II*. As a result of this conclusion, [***18] we need not progress further in the *Bogseth* prospectivity analysis. As Meijer has shown no change in the law, there is no reason not to apply *Klaeren II* to this case.

In an effort to tidy loose ends, we note that Meijer faults the trial court for failing to apply the holding of *Oak Grove* to this case and give *Klaeren II* only prospective application. *Oak Grove* is distinguishable in that it did not involve the deprivation of the right of cross-examination and, instead, involved the central *Klaeren II* holding about the characterization of municipal bodies' public hearings as either legislative or administrative/quasi-judicial. *Oak Grove*, 338 Ill. App. 3d at 974-75. Here, by contrast, the sole issue has always been the deprivation of the right of cross-examination and, as shown above, did not involve a change in the relevant law, only a refinement or limitation.

Meijer raises a number of other points regarding this issue, but they are based on its analysis of the relevant *Bogseth* factors. As we have found that *Bogseth* does not apply because the relevant law was not changed by *Klaeren II*, we need not address this issue further.

Next, [***19] Meijer argues that only the special use approval need be invalidated; the other approvals, resolutions, and ordinances stemming from the July 9, 1998, hearing should not be affected. Meijer reasons that, because the July 9, 1998, hearing involved several aspects, namely, hearings before the village board, the plan commission, and the zoning board, and because *Klaeren II* held that only a hearing on a special use permit before a zoning board is administrative/quasi-judicial, the remaining portions of the hearing before the village board and plan commission do not lose their legislative character. As a result, Meijer asserts that the village board and the plan commission were not required to provide the right of cross-examination in conjunction with their hearings, and the deprivation of that right should not affect the

municipal actions taken as a result of those hearings. We disagree.

The trial court observed:

"The joint public hearing in this case so intricately intertwined all of the proceedings from the various bodies that they cannot be separated. In this circumstance, where the mechanism of a joint public hearing was used, and where there was no separation of proceedings, [***20] the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process."

[*841] The record abundantly supports the trial court's conclusion that the public hearing was not separable into its component parts. The various village bodies did not alternate in chairing the hearing; the mayor retained control throughout. There were no pauses or segues to show either the public or the village participants that the hearing was progressing from consideration of the annexation to the special use and so on. In short, all of the components of the hearing were, as the trial court observed, intricately intertwined with no hope of separation.

We also agree with the trial court's assessment that, "where the mechanism of a joint public hearing was used, and where there was no separation of proceedings, the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process." This pronouncement is implicitly supported in *Klaeren II*, 202 Ill. 2d at 185 [**156] ("since the joint procedure used by the village involved a special use request, it would be [***21] a denial of due process not to afford

352 Ill. App. 3d 831, *841; 817 N.E.2d 147, **156;
2004 Ill. App. LEXIS 1251, ***21; 288 Ill. Dec. 22

interested parties the right to cross-examine adverse witnesses"). Accordingly, we confirm the trial court's assessment and hold that, where a municipality uses a joint hearing (which it may), and where it does not segregate the hearing into its component parts (such as addressing an annexation, completing all tasks related to the annexation, then clearly moving on to address another issue of interest to one of the other component bodies of the joint hearing), the most stringent procedural requirement must apply to all approvals addressed in the joint hearing. We hasten to point out that we are not holding that any joint public hearing requires the most stringent procedural requirement of any of its components. As we have noted above, where a municipal body takes pains to separate the component hearings by, for example, announcing that the hearing is moving on to address a specific subject, the procedures required for that component will suffice to assure that the participants receive the process to which they are due. Our holding is not and should not be seen to be a blanket condemnation of the joint hearing process. Rather, it applies specifically [***22] to the, we hope, unusual circumstances present in this case, the total denial of cross-examination and an inseparably intertwined joint hearing. As the joint hearing addressed the request for a special use permit which, under *Klaeren II* (as well as *E&E Hauling*), requires that the village allow interested parties to cross-examine adverse witnesses, the village's denial of any cross-examination necessarily violated procedural due process and invalidates not just the special use permit but all of the other approvals addressed in the joint hearing: the annexation, the annexation agreement, the rezoning, and the subdivision of the subject property.

[*842]  Meijer urges that the

severability clauses contained in the ordinances, the resolutions, and the annexation agreement should operate to save those actions. The argument focuses on the wrong thing. For example, the annexation agreement provides:

> "If any provision *** of this agreement or its application to any *** property or portion of property is held invalid, or if any ordinance or resolution adopted pursuant to this agreement or its application to any *** property, or portion of property is held invalid, such invalidity shall [***23] not affect the application or validity of any other provisions *** of this agreement or other ordinances or resolutions passed pursuant hereto."

The severability clause refers to an attack on the agreement or an ordinance involved with the agreement; here, we have a more fundamental flaw, a failure of process before we even reach the stage where the agreement or an ordinance or resolution could be attacked. The severability clauses do not apply to the facts presented in this case, which involve a breakdown of due process at the fact-finding stage, far before any of the problems the severability clauses address would arise. We reject Meijer's argument.

Meijer also argues that only the special use approval was of an administrative/quasi-judicial nature and that all the other actions (annexation, rezoning, and subdivision) were legislative. While that is true, all the other actions were undertaken cheek-by-jowl with the special use. As we have previously noted, where there is not a structural separation of the components of a joint public hearing, the municipal bodies engaged in the joint hearing

352 Ill. App. 3d 831, *842; 817 N.E.2d 147, **156;
2004 Ill. App. LEXIS 1251, ***23; 288 Ill. Dec. 22

must afford the participants the most stringent procedural protections of any of [***24] the component [**157] parts of the joint hearing. Here, because the hearings on the other actions were undertaken simultaneously with the special use hearing, the village was required to provide the public the opportunity to cross-examine witnesses on pain of having all of the actions taken as a result of the joint hearing declared invalid. Thus, even though the annexation, rezoning, and subdivision issues were legislative, participants should have been allowed to cross-examine witnesses at the joint hearing because the special use permit was being simultaneously considered. Because cross-examination (or any examination ) was prohibited, the entirety of the hearing and the actions taken as a result of the hearing fail to pass muster.

Meijer's argument in this regard is flawed for another reason. While Meijer correctly pounds away at the theme that annexations, rezonings, and subdivisions are legislative and, as a result, a municipal body engaged in a public hearing on such issues is not required to provide cross-examination, it views each discretely and out of the [*843] context in which it arose in this case. Thus, while we cannot disagree with Meijer's argument in a vacuum, we note that it ignores [***25] the factual circumstances here, which eviscerate its force and viability because the joint hearing was not segregated among the components of special use, annexation, rezoning, and subdivision. As a result, Meijer's relentless hammering at legislative/administrative distinction is inapposite to the facts of this case.

Meijer also looks to *Klaeren II* for support of its argument that only the special use portion of the joint hearing was invalid and the remaining business resolved as a result of the joint hearing should remain in force

and undisturbed. According to Meijer, the supreme court wholeheartedly endorsed the procedures used in the joint hearing. We cannot agree.

First, Meijer shuffles the order of the supreme court's argument. While quoting at length from whatever Meijer believes to be supportive of its position, it completely ignores the countervailing considerations raised by the supreme court. Second, and more importantly, the supreme court declined the parties' invitation "to comment upon the procedures used by the village as a whole." *Klaeren II*, 202 Ill. 2d at 187. While the supreme court expressed general sentiments about both the advantages and [***26] the disadvantages of using a joint hearing to resolve a number of related issues, it did not actually pass judgment on the procedure used by the village in the joint hearing. Pertinently, however, it did note that, "while time limits may be necessary in certain circumstances, the two-minute time limit imposed here would have been clearly improper had the proceedings complied with the due process requisite of cross-examination for interested parties." *Klaeren II*, 202 Ill. 2d at 188. We find the tenor of the supreme court's comments to be, at best, neutral regarding the joint hearing.

We also note that Meijer caps its argument with a quote from *Klaeren II*, suggesting that a joint hearing would never be problematic and attempting to extrapolate from that quote that the village's procedures at issue did not run afoul of due process concerns. We find this argument to be misleading, as Meijer failed to include the supreme court's important qualification that actually changed the endorsement quoted by Meijer to a condemnation of the procedures used by the village in this matter. To clarify our objection to Meijer's method of argument, we quote both the portion recited [***27] by Meijer in its brief (which is set out in plain text)

C01723

as well as the portion omitted (which we designate by bold text):

[**158]   "As we have noted, the joint hearing in this case involved multiple decisions by three separate intra-municipal bodies. Viewed [*844] independently based on the individual purposes of each municipal body, whether and to what extent interested parties should be afforded the right to cross-examine adverse witnesses varies depending upon the type of hearing at issue. When a municipal body acts legislatively, its decision is subject only to review for arbitrariness as a matter of substantive due process. [Citation.] **The joint hearing in this case, however, involved a quasi-judicial proceeding in that a special use application was heard and interested parties were not afforded the right to cross-examine adverse witnesses. In light of this deficiency, we agree with the trial court's and appellate court's ultimate conclusion that plaintiffs enjoy a likelihood of success on the merits of their claim that their constitutional right to due process was infringed."**

*Klaeren II*, 202 Ill. 2d at 187. Thus, the supreme court did not endorse the procedures [***28] used by the village, contrary to Meijer's argument. Moreover, the supreme court's reasoning expressed in the above-quoted passage clearly supports our determination that, where a joint hearing is held in which there is no separation of the multiple purposes,

the most stringent procedural requirements must be applied to the whole of the hearing. Accordingly, we find Meijer's argument to be without merit.

We note further that our discussion of the *arcana* of retroactive/prospective application of a judicial decision has led us mildly astray from the central issue here, namely, whether the trial court properly granted summary judgment in favor of plaintiffs and against Meijer. Summary judgment is appropriately granted where the pleadings, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2002); *Jinkins v. Lee*, 209 Ill. 2d 320, 329, 807 N.E.2d 411, 282 Ill. Dec. 787 (2004). We review *de novo* the trial court's grant of summary judgment. *Jinkins*, 209 Ill. 2d at 329. [***29] Applying this standard to the ultimate question at issue on Meijer's appeal, we hold that the trial court properly granted summary judgment in favor of plaintiffs.

Plaintiffs' Cross-Appeal

On cross-appeal, plaintiffs raise two issues. First, plaintiffs contend that the trial court's refusal to allow them to file a petition for attorney fees was erroneous as a matter of law. Second, plaintiffs contend that the trial court abused its discretion by refusing to allow them to amend their complaint to add a claim for a writ of *certiorari*. We address each contention in turn.

Plaintiffs base their claim for attorney fees on section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2002)). Section 11-13-15 provides:

[*845]   "In case any

352 Ill. App. 3d 831, *845; 817 N.E.2d 147, **158;
2004 Ill. App. LEXIS 1251, ***29; 288 Ill. Dec. 22

building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code [(65 ILCS 5/11-13-1 et seq., 11-31-1 et seq., 11-31.1-1 et seq. (West [***30] 2002))], or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, [**159] within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. When any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality, no such action

may be maintained until such notice has been given.

In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding [***31] has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above.

If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such.

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions."

The award of attorney fees under section 11-13-15 is mandatory and not discretionary, based on a finding that the defendant has engaged in prohibited activity. *Palella v. Leyden Family Service & Mental Health Center*, 79 Ill. 2d 493, 501, 404 N.E.2d 228, 38 Ill. Dec. 804 (1980). Plaintiffs

352 Ill. App. 3d 831, *845; 817 N.E.2d 147, **159;
2004 Ill. App. LEXIS 1251, ***31; 288 Ill. Dec. 22

maintain that they filed suit under section 11-13-15 and [***32] that the court found that Meijer had engaged in prohibited conduct by beginning site [*846] preparation work. According to plaintiffs, the trial court erred by refusing to reserve the attorney-fee issue for a later hearing. We disagree.

The flaw in plaintiffs' argument is fundamental: plaintiffs did not indicate that their action was brought under the auspices of section 11-13-15. It is well settled that a party will recover, if at all, only according to the case it has made for itself by its pleadings. *American Standard Insurance Co. v. Basbagill*, 333 Ill. App. 3d 11, 15, 775 N.E.2d 255, 266 Ill. Dec. 693 (2002). Because plaintiff did not seek to invoke section 11-13-15 in its complaint, it cannot offer the issue for our review, notwithstanding the fact that it was raised in the trial court, because "proof without pleadings is as defective as pleadings without proof." *American Standard*, 333 Ill. App. 3d at 15.

Equally, if not more, problematic is the fact that plaintiffs' allegations were directed against the village, and not Meijer. Thus, plaintiffs were not seeking to restrain Meijer's illegal actions but, instead, were attempting to force the village to enforce [***33] its own ordinances in passing upon the various requests made by Meijer in connection with the proposed development of the

subject property. It is also equally well settled that section 11-13-15 does not [**160] allow a private landowner to maintain a cause of action against a municipality to enforce compliance with its own ordinances. *City of Aurora v. Navar*, 210 Ill. App. 3d 126, 138, 568 N.E.2d 978, 154 Ill. Dec. 757 (1991); *Heerey v. Berke*, 179 Ill. App. 3d 927, 934, 534 N.E.2d 1277, 128 Ill. Dec. 672 (1989). Based on these considerations, we hold that the trial court properly refused to allow plaintiffs to file a petition for attorney fees.

Plaintiffs also contend that the trial court abused its discretion by refusing to allow plaintiffs to amend their complaint to add a claim for a writ of certiorari. However, plaintiffs concede that they will have suffered no prejudice if the trial court's ruling is affirmed on appeal. As we have affirmed the trial court's ruling and because an appeal cannot be maintained where there is no adverse result from which to appeal (*Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur*, 317 Ill. App. 3d 737, 743, 739 N.E.2d 1049, 251 Ill. Dec. 116 (2000)), [***34] we need not further address this issue.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and CALLUM, JJ., concur.

LEXSEE 316 ILL. APP. 3D 770

THE PEOPLE ex rel. ROBERT J. KLAEREN II, FRIEDA CHERNOBROV,
CARLE R. WUNDERLICH II, and AIZIK CHERNOBROV,
Plaintiffs-Appellees, v. THE VILLAGE OF LISLE, MEIJER, INC.,
and SAINT PROCOPIUS ABBEY, Defendants-Appellants.

No. 2-99-1256

APPELLATE COURT OF ILLINOIS, SECOND DISTRICT

316 Ill. App. 3d 770; 737 N.E.2d 1099; 2000 Ill. App. LEXIS
881; 250 Ill. Dec. 122

October 13, 2000, Decided

SUBSEQUENT HISTORY:      [***1]
Released for Publication November 16,
2000.

PRIOR HISTORY:      Appeal from the
Circuit Court of Du Page County. No.
99--CH--179.   Honorable   Bonnie   M.
Wheaton, Judge, Presiding.

DISPOSITION:   Affirmed.

JUDGES: JUSTICE HUTCHINSON delivered
the opinion of the court. COLWELL, J.,
concurs. JUSTICE RAPP, dissenting.

OPINION BY: HUTCHINSON

OPINION

[*773]      [**1104]      JUSTICE
HUTCHINSON delivered the opinion of
the court:

This matter reaches us as an
interlocutory appeal of an order
granting a preliminary injunction
preventing defendants Saint Procopius
Abbey (the Abbey) and Meijer, Inc.
(Meijer), from continuing site
preparation required for the
construction of a Meijer retail store
on a parcel of land owned by the Abbey
pursuant to the terms of a contract
for the sale of the parcel between
Meijer and the Abbey. Plaintiffs are

adjoining landowners, who alleged
that, because of procedural defects,
ordinances   enacted   by   another
defendant, Village of Lisle (the
Village), annexing the Abbey property,
rezoning the property, and authorizing
construction   as   a   planned   unit
development (PUD) were void.

Plaintiffs originally brought suit
in their individual capacities but
later added a count sounding in quo
[***2]   warranto, suing on behalf of
the State. For the sake of clarity we
will   refer   to   them   simply   as
"plaintiffs," whether they are acting
as individuals or as the real parties
in interest in the quo warranto
action.

[Nonpublishable   material   removed
under Supreme Court Rule 23.]

Defendants timely appeal and
contend that (1) plaintiffs lack
standing to challenge the annexation
and rezoning; (2) plaintiffs do not
have a protectable interest in the
continuation of the existing zoning;
(3) plaintiffs are unlikely to succeed
on the merits of their claim because
due   process   does   not   require
cross-examination in a zoning [*774]
hearing; (4) plaintiffs are unlikely
to succeed on the merits of their
claim because Illinois statutory law
does   not   create   a   right   to

316 Ill. App. 3d 770, *774; 737 N.E.2d 1099, **1104;
2000 Ill. App. LEXIS 881, ***2; 250 Ill. Dec. 122

cross-examination; (5) plaintiffs have not demonstrated irreparable injury; and (6) the trial court abused its discretion when it only required a bond of $ 5,000. We address defendants' third and fourth contentions in the published portion of this opinion. Defendants' remaining contentions are addressed in the nonpublished portion of the opinion. We affirm.

BACKGROUND

July 9, 1998 Hearing

Plaintiffs' challenge to the annexation [***3] and rezoning focused on procedural irregularities at the July 9, 1998, joint public hearing, and the testimony elicited at the hearing on the preliminary injunction also centered on the conduct of the July 1998 hearing. A transcript of that public hearing is contained in the record and reveals that on July 9, 1998, the Village board of trustees (board), the Village plan commission (plan commission), and the Village zoning board of appeals (ZBA) each convened a public hearing regarding the Meijer proposal at the Village hall. Each board then independently moved to recess its hearing and reconvene in the auditorium of a local junior high school. When the hearing reconvened, the mayor described the procedure as follows:

"This is a public hearing. It is not a debate. There will be no attempt at tonight's hearing to answer any question raised by the audience. Questions may be addressed during the review process I just described.

To the extent possible the speaker will address questions and concerned [sic] raised by the combined boards this evening.

* * *

The petitioner will be first subject to any questions by the assembled boards. [***4] We will attempt to deal with each individual aspect of the presentation as it's made.

People in the audience speaking in favor of the proposal will then be heard. People in the audience speaking in opposition of the proposal will then be heard. The petitioner will then be allowed to make closing comments.

[**1105]

After closing comments by the petitioner, the public hearing will be adjourned.

Public records will remain open for written comments by interested parties. Any written comments must be received at the Village offices by 4:30 p.m. Friday, July 31st.

* * *

To be fair to everyone in the audience, I ask that you limit your [*775] comments to two minutes each. I will be the time keeper and will let you know when 15 seconds remain.

* * *

No one will be allowed to speak a second time until everyone has an opportunity to speak once. That requirement will also be applicable to members of the assembled boards."