# EXHIBIT G

001914

Naperville Township Assessor's Office

# Property Search Detail

Parcel Number: **07-20-302-081**

## Property Information
Address: 3051 E NEW YORK ST
City: **AURORA**
First Floor: **0**
Second Floor: **0**
Third Floor: **0**
Misc. Floor: **0**
Total Living Area: **0**

Lot Frontage: **0**
Lot Depth: **0**
Lot Total: **141,134**
Total Acres: **0.00**
Irregular Lot: **No**

Style: **Medical Clinic**
Construction: **Medical Clinic**
Year Built: **2007**
Room Count: **0**
Bed Rooms: **0**
Full Baths: **0**
Half Baths: **0**
Basement Area: **0**
Basement Finished: **0**
Garage Type:
CAC: **No**

NBHD Code: **067**
Property Class: **C**

Subdivision: **PDA RESUB**
Lot Number: **2**
Block Unit:

## Photograph

Photo not yet available

## Improvement Sketch



C001915

Naperville Township Assessor's Office
## Property Search Detail

Parcel Number: **07-20-302-081**

### Assessment Information

| Year | Land Value | Improvement | Total Assessed Value | Tax Code | Tax Rate | Tax Amount |
|------|-----------|-------------|----------------------|----------|----------|-----------|
| 2007 | 206,950 | 0 |  | 206,950 | 7045 | 0.0000 | $0.00 |
| 2006 | 195,240 | 0 |  | 195,240 | 7045 | 7.5493 | $14,739.26 |
| 2005 | 190,290 | 0 |  | 190,290 | 7045 | 7.7831 | $14,810.46 |
| 2004 | 183,320 | 0 |  | 183,320 | 7045 | 7.7790 | $14,260.48 |

### Sales Information (4 year history)

| Month | Year | Sale Price | Deed Type |
|-------|------|-----------|-----------|
| 3 | 2006 | $985,000.00 | W |
| 10 | 2004 | $550,000.00 | O |

### Site Map



Information on this site was derived from data which was compiled by the Naperville Township Assessor's office solely for the governmental purpose of property assessment. This information should not be relied upon by anyone as a determination of ownership of property or market value. No warranites, expressed or implied, are provided for the accuracy of data herein, its use, or its interpretation.

Although it is periodically updated, this information may not reflect the data currently on file in the Assessor's office. The assessed values may NOT be certified values and therefore may be subject to change before being finalized for ad valorem assessment purposes.

© 2001-2008 Naperville Township. All Rights Reserved.

Close this Window

001916

# EXHIBIT H

C01917

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

SEP 13 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PLANNED PARENTHOOD CHICAGO
AREA, an Illinois non-profit Corporation,
and GEMINI OFFICE DEVELOPMENT LLC,
an Illinois limited liability company,

      Plaintiffs,

      v.

CITY OF AURORA, ILLINOIS

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**07C 5181**

JUDGE NORULE

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## VERIFIED COMPLAINT
## FOR PRELIMINARY INJUNCTION AND OTHER RELIEF

Plaintiffs Planned Parenthood/Chicago Area ("PPCA"), and Gemini Office Development,

LLC ("Gemini") (collectively "Plaintiffs"), by and through their attorneys, bring this action for

immediate injunctive and other relief.  Plaintiffs complain as follows:

### CASE OVERVIEW

1.     This action arises out of the actual and threatened violation of Plaintiffs'

constitutional rights by Defendant City of Aurora ("Aurora").

2.     Plaintiffs PPCA and Gemini seek an order of this Court barring Aurora from

preventing PPCA from opening its new medical facility in Aurora (the "Facility") as scheduled

on September 18, 2007.

3.     Although Aurora issued a Certificate of Occupancy and Compliance on August

16, 2007 for this medical facility, it has since made clear to Plaintiffs that it will not allow the

Facility to open for business and will instead review Plaintiffs' application indefinitely.

4.     Aurora's actions, however, are not related to any legitimate municipal concern,

C01918

but instead are motivated solely by political opposition to the fact that PPCA provides abortion services as part of a broad range of health care services for its patients.

5.     Accordingly, Plaintiffs seek injunctive relief pursuant to 42 U.S.C. § 1983 to prevent Aurora from continued deprivation of PPCA and Gemini's constitutionally protected right to equal protection under the law.

### PARTIES

6.     Planned Parenthood/Chicago Area is an Illinois non-profit corporation, organized under the laws of Illinois, with its headquarters in Chicago, Illinois.  PPCA provides competent, high quality and affordable health care to thousands of diverse women, men and teens every year.

7.     Gemini Office Development, LLC is an Illinois limited liability company. Gemini is a wholly owned affiliate of PPCA.

8.     Defendant City of Aurora is an Illinois city that extends into Kane, DuPage, Will and Kendall counties.

### JURISDICTION AND VENUE

9.     This District Court has personal jurisdiction over Aurora because Aurora is located within this District.

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Certain real estate that is the subject of this litigation is located in the Northern District of Illinois.

### FACTUAL BACKGROUND

#### Planned Parenthood

12.     PPCA has provided quality family planning services, education programs and

C01919

counseling to the people of Chicago for more than 50 years.  Specifically, PPCA offers abortion services, birth control services, HIV/AIDS testing and counseling, pregnancy testing and counseling, and sexually transmitted infection testing and treatment.

**The Facility**

13.    In 2002, PPCA began planning for a new medical facility to provide services in Chicago's western suburbs.  The nearest PPCA facility is in downtown Chicago, more than 35 miles away.  Ultimately, PPCA obtained a parcel of land at 3051 E. New York Street in Aurora and designed a $7.5 million, 22,000 square foot outpatient medical office facility for that site (the "Facility").

14.    On July 27, 2006 Gemini, a wholly owned affiliate of PPCA, applied to Aurora for a building permit in order to construct the Facility.

15.    In the fall and winter of 2006, Gemini submitted materials to obtain the building permit from Aurora.  Among the materials Gemini submitted were detailed architectural plans showing the design of the facility and its use as a medical office facility.  Other materials submitted by Gemini described the project as "Gemini Outpatient Facility."  Under "General Description of Proposed Work" Gemini entered "Medical Office Building."

16.    Because Aurora had already zoned the property for medical use, no variance or other zoning appeal was required.

17.    On January 12, 2007, Aurora issued a building permit to Gemini, which expired on July 11, 2007.  Gemini then commenced construction on the 22,000 square foot facility.

**The Issuance of a Certificate of Occupancy and Compliance**

18.    On August 16, 2007, Aurora issued Gemini a Certificate of Occupancy and Compliance for the Facility, allowing PPCA to open for business.

001910

19.    According to the Certificate of Occupancy and Compliance, Gemini was only required to complete two tasks: (1) "install permanent exit directional signage and add exit sign at conference room 110 west exit door"; and (2) "install glass at service counters or provide architect revision to delete glass partitions."

20.    As of the present date, Gemini has fulfilled both tasks identified by Aurora in the Certificate of Occupancy and Compliance.

21.    Based on Gemini's receipt of the Temporary Certificate of Occupancy from the City, PPCA planned to open the Facility on September 18, 2007 and began scheduling appointments for its first clients at the Facility.

**Anti-Abortion Protests**

22.    In late July 2007, anti-abortion advocates learned that the Facility would be used to provide abortion services, among other medical services.  In the last week of August, anti-abortion activists began protesting the Facility.  On Sunday, August 26, 2007, a group of more than 1,000 anti-abortion protestors held a demonstration outside of the new Facility.  At the next Aurora City Council meeting, August 28, 2007, more than 100 protestors arrived to object to the new Facility.

**Aurora's Response**

23.    Late on Friday, August 31, 2007 the Aurora Department of Community Development, Development Services Division sent Gemini a letter informing Gemini that Aurora had "begun an [sic] full review of the process surrounding the development of your property at the above address."

24.    In addition, Aurora informed Gemini that Gemini's Certificate of Occupancy and Compliance was being modified "to include an additional condition that you may not open for

001921

business until such time as [Aurora] has given you further written approval to do so." Aurora

cited no statute or ordinance that authorized it to make such a modification.

25.     Aurora noted, however, that "We understood your projected opening date is

September 18, 2007, and it is our intention to conclude our review in order to provide you with

further direction prior thereto."

**Additional Anti-Abortion Protests**

26.     On Tuesday, September 11, 2007, at its next regularly scheduled public meeting,

the Aurora City Council again heard from dozens of anti-abortion protestors.  In all, the meeting

lasted more than three hours.  Again, the protestors objected to abortion generally as well as to

the new Planned Parenthood facility in Aurora.  Some protestors objected to the lack of parental

notification laws in Illinois.  Other protestors objected to distribution of birth control at Planned

Parenthood facilities.  Many protestors again complained that they had not been given notice and

an opportunity to object to the Planned Parenthood facility.

**Aurora Threatens to Inflict Serious and Irreparable Injury Upon Plaintiffs**

27.     On September 12, 2007, Gemini received a second letter from Aurora.  This letter

stated:

> This correspondence is a follow-up to our letter to you of August 31, 2007 in
> which we advised you that, pending a review of the development process, you
> could not open for business under the temporary certificate of occupancy.
>
> At that time we indicated that it was our intention to have the review concluded
> by September 18, 2007.  We wish to advise you that it is not likely that the review
> process will be completed prior to your projected opening date.  **The City of
> Aurora has no intention of allowing you to open for business prior to the
> completion of the independent review.**
>
> Therefore, we wish to reiterate that until or unless you receive specific approval
> from the City of Aurora, you are not permitted to open for business.

(emphasis added).

28.     Thus, as a result of Aurora's attempted modification of Gemini's Certificate of Occupancy and Compliance, the Facility will not be allowed to open as planned on September 18, 2007. Further, as this undefined "review" process is indefinite in scope and time, the Facility will not be allowed to open for the indefinite future.

29.     The $7.5 million facility is completed and staffed with doctors, nurses, educators, administrative staff and health care professionals. PPCA has scheduled appointments with its first patients for September 18, 2007 and the balance of next week.

30.     Aurora's actions have significantly interrupted and delayed PPCA's patients' ability to obtain family planning, contraceptive and abortion services by delaying PPCA's opening of the Facility.

31.     Every day that PPCA is delayed in opening the Facility increases the likelihood that patients seeking low-cost medical services will have to seek alternative care at more expensive hospitals or by traveling long distances to other facilities.

## COUNT 1

### VIOLATION OF PLAINTIFFS' RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. §1983

32.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 31 inclusive.

33.     This Count arises under 42 U.S.C. §1983 for Aurora's violation of Plaintiffs' rights to equal protection under the law.

34.     Aurora is an Illinois city whose conduct in attempting to modify the Certificate of Occupancy and Compliance originally issued on August 16, 2007 and prevent Plaintiffs from opening the Facility is committed under color of state law.

35.     The undefined and indefinite "review" process and attempted modification of the

001923

Certificate of Occupancy and Compliance was taken by Aurora as a policy of Aurora and/or the Aurora Department of Community Development.

36.     Aurora's undertaking of the "review" process and attempt to prevent the Facility from opening as scheduled is not based on any failure of Plaintiffs to comply with the zoning and permitting process of Aurora, but is rather motivated by political opposition to the fact that PPCA provides abortion services as part of its range of health care services.

37.     Aurora's conduct in discriminating against Plaintiffs due to the nature of the services they provide has deprived Plaintiffs of their right to equal protection under the law, as protected by the Fourteenth Amendment to the Constitution of the United States.

38.     As a result of Aurora's conduct, Plaintiffs will suffer irreparable harm.  First, Plaintiffs' constitutional rights will continue to be denied day after day.  Also, if Plaintiffs are prevented from opening the Facility, its patients will have to seek alternative care in more expensive hospital settings or travel more than fifty (50) miles round trip to obtain services from the nearest PPCA facility.  Finally, each day that the Facility is unable to operate results in a loss of revenue and the goodwill of Plaintiffs' patients.

**WHEREFORE,** Plaintiffs respectfully request judgment against Aurora as follows:

(1)     That the Court enter judgment against Aurora and find that Aurora has violated Plaintiffs' rights to equal protection under the law by attempting to modify the Certificate of Occupancy and Compliance, thereby preventing Plaintiffs from opening the Facility on September 18, 2007;

(2)     That the Court issue injunctive relief against Aurora, and that Aurora, its principals, officers, agents, representatives, servants, employees and attorneys, and all others in active concert or participation with Aurora, be enjoined and restrained from modifying the Certificate of Occupancy and Compliance and preventing Plaintiffs from opening the Facility as planned on September 18, 2007;

(3)     That Aurora be further enjoined from interfering in Planned Parenthood's lawful operation of its outpatient medical facility;

C01924

(4)     That Plaintiffs are awarded its damages arising from Aurora's improper conduct.

(5)     That the Court order Aurora to pay to Plaintiffs both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and

(6)     That the Court grant to Plaintiffs such other and additional relief as is just and proper under applicable law.

DATED:  September 13, 2007                    Respectfully submitted,

                                              PLANNED PARENTHOOD CHICAGO AREA
                                              and GEMINI OFFICE DEVELOPMENT LLC

                                        By:   _____
                                              One of its attorneys

Christopher B. Wilson (ARDC# 06202139)
Peter B. Neumer  (ARDC# 06290330)
PERKINS COIE LLP
131 S. Dearborn, Suite 1700
Chicago, IL  60603
Tel:  (312) 324-8400
Fax:  (312) 324-9400

001925

IN THE UNITED STATES DISTRICT COURT **RECEIVED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP 13 2007

| | | |
|---|---|---|
| PLANNED PARENTHOOD CHICAGO AREA, an Illinois non-profit Corporation, and GEMINI OFFICE DEVELOPMENT LLC, an Illinois limited liability company, | ) ) ) ) | MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |

PLANNED PARENTHOOD CHICAGO
AREA, an Illinois non-profit Corporation,
and GEMINI OFFICE DEVELOPMENT LLC,
an Illinois limited liability company,

   Plaintiffs,

  v.

CITY OF AURORA, ILLINOIS

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# 07C 5181

**JUDGE NORGLE**

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## MOTION FOR PRELIMINARY INJUNCTION

  Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Planned

Parenthood/Chicago Area ("PPCA") and Gemini Office Development LLC ("Gemini")

(collectively "Plaintiffs"), respectfully request that the Court enter a preliminary injunction

against Defendant City of Aurora, Illinois ("Aurora") enjoining Aurora from modifying the

Certificate of Occupancy and Compliance issued on August 16, 2007 such that Plaintiffs would

not be permitted to open its Aurora outpatient medical facility, located at 3051 E. New York

Street, Aurora, IL (the "Facility"), or otherwise interfering with Plaintiffs' lawful business

operations in opening and operating its outpatient medial facility until this case can be heard on

the merits.

  In support of this motion, Plaintiffs offer their Verified Complaint for Preliminary

Injunction and Other Relief (the "Verified Complaint"), as well as the accompanying

Memorandum In Support of Plaintiffs' Motion for Preliminary Injunction ("Memorandum").

Plaintiffs also present the Declaration of Steve Trombley and supporting Exhibits as an Exhibit

to the Memorandum.

59152-0001/LEGAL13554778.2

C01926

In further support of their Motion, Plaintiffs state as follows:

1.      Plaintiffs have filed and are serving Aurora with the Verified Complaint, which is incorporated in this motion by this reference.

2.      As stated in the Verified Complaint, PPCA provides a range of health care services to patients in the Chicago area, including counseling services, birth control options, pregnancy testing and counseling, gynecological exams, sexually transmitted disease testing and treatment, and abortion services.

3.      In 2002, PPCA began planning for a new medical facility to be located in Chicago's western suburbs.  PPCA obtained a parcel of land at 3051 E. New York Street in Aurora, Illinois, and designed a $7.5 million, 22,000 square foot medical facility (the "Facility") for that site.

4.      In 2006, Gemini, a wholly owned affiliate of PPCA, applied to Aurora for a building permit for the Facility and submitted materials, including detailed architectural plans showing the design of the Facility and its intended use as a medical center, in support of its application.  In 2007, Aurora issued a building permit, and Gemini commenced construction on the Facility.

5.      On August 16, 2007, Aurora issued a Certificate of Occupancy and Compliance, allowing the Facility to open for business.  Plaintiffs announced that the Facility would open for business on September 18, 2007.

6.      After several protests regarding the opening of the Facility, Aurora issued a letter to Gemini on August 31, 2007, advising Gemini that Aurora had initiated a review of the process surrounding the development of the Facility and stating that Aurora was modifying the Certificate of Occupancy and Compliance to "include an additional condition that you may not

59152-0001/LEGAL13554778.2

C01927

open for business until such time as [Aurora] has given you further written approval to do so." The letter stated that it was Aurora's intention to complete the review prior to the September 18, 2007 opening date.

7.      After more protests at the Aurora City Council's public meeting on September 11, 2007, Aurora issued a second letter, stating that "it is not likely that the review process will be completed prior to your projected opening date." The letter reiterates that the Facility may not open for business without specific approval from Aurora.

8.      Should Aurora be permitted to modify the Certificate of Occupancy and Compliance previously issued to Plaintiffs on August 16, 2007, Plaintiffs will be unable to open and provide medical services to the community as scheduled on September 18, 2007.

9.      Aurora is attempting to modify the Certificate of Occupancy and Compliance and thereby discriminate against Plaintiffs solely due to the nature of the services which PPCA provides, which include providing abortions.

10.     Plaintiffs have a strong likelihood of success, therefore, on their equal protection claim pursuant to § 1983.

11.     Plaintiffs face irreparable harm for which there is no adequate remedy at law.

12.     Aurora has shown its propensity to violate and continue violating Plaintiffs' constitutional rights. As discussed in the accompanying Memorandum, unless Aurora is enjoined from modifying the Certificate of Occupancy and Compliance, thereby preventing Plaintiffs from opening the Facility on September 18, 2007, Plaintiffs will be irreparably harmed by being unable to provide medical services, including services to patients who have already scheduled appointments at the Facility for September 18, 2007 and the days immediately following.

- 3 -

13.    Because Aurora is violating Plaintiffs' constitutional rights, Plaintiffs have no adequate remedy at law.

14.    The balance of the hardships presented by this relief favors Plaintiffs. Plaintiffs seek to enjoin Aurora from modifying the Certificate of Occupancy and Compliance, thereby preventing Plaintiffs from opening the Facility on September 18, 2007 and otherwise improperly interfering with Plaintiffs' lawful business operation. The requested injunction will not impose any burden on Aurora that it is not already legally obligated to maintain. Accordingly, greater injury will be inflicted on Plaintiffs by the denial of its request for immediate injunctive relief than would be inflicted on Aurora by the granting of the requested relief.

15.    The public interest is in the provision of affordable medical services for those who could otherwise not afford them and in ensuring that Plaintiffs receive the equal protection of the laws.

16.    Plaintiffs have served this Motion for Injunctive Relief and supporting Memorandum on Aurora.

17.    Plaintiffs respectfully request that a preliminary injunction order be entered to preserve the status quo and prevent Aurora from modifying the Certificate of Occupancy and Compliance.

- 4 -

001929

WHEREFORE, Plaintiffs respectfully request that the Court issue an Order enjoining and restraining Aurora from modifying the Certificate of Occupancy and Compliance issued on August 16, 2007 and allowing Plaintiffs to conduct business at the Facility starting on September 18, 2007.

DATED:  September 13, 2007

PLANNED PARENTHOOD CHICAGO AREA
and GEMINI OFFICE DEVELOPMENT LLC

By: _____
One of their Attorneys

Christopher B. Wilson
Peter Neumer
PERKINS COIE LLP
131 S. Dearborn, Suite 1700
Chicago, IL  60603
Tel:  (312) 324-8400
Fax:  (312) 324-9400

- 5 -

59152-0001/LEGAL13554778.2

CC1920

RECEIVED

SEP 13 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PLANNED PARENTHOOD/CHICAGO      )
AREA, an Illinois Corporation, and GEMINI   )
OFFICE DEVELOPMENT, LLC, an Illinois   )
Company,                        )
                                )
            Plaintiffs,          )
                                )
      v.                         )
                                )
CITY OF AURORA, ILLINOIS         )
                                )
            Defendant.           )
                                )

JUDGE NORGLE

07C 5181

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR INJUNCTIVE RELIEF**

Plaintiffs, Planned Parenthood/Chicago Area and Gemini Office Development, LLC

(hereafter "Planned Parenthood") seek an order of this Court barring the City of Aurora

(hereafter "Aurora") from preventing Planned Parenthood from opening its new medical facility

as scheduled on September 18, 2007.  Although Aurora issued a Temporary Occupancy Permit

on August 16, 2007, for this medical facility, it has since made clear to Planned Parenthood that

it will not allow it to open for business and will instead review Planned Parenthood's application

indefinitely.  Aurora's actions, however, are not related to any legitimate municipal concern, but

instead are motivated solely by political opposition to the fact that Planned Parenthood provides

abortion services as part of a broad range of health care services for its patients.  Accordingly,

Planned Parenthood seeks injunctive relief pursuant to 42 U.S.C. Section 1983 to prevent Aurora

from continuing to deprive Planned Parenthood of its constitutionally-protected right to equal

protection under the law.

59152-0001/LEGAL13562209.1

C01931

## SUMMARY OF KEY FACTS

Planned Parenthood/Chicago Area is a not-for-profit corporation, organized under the laws of Illinois, with its headquarters in Chicago, Illinois.  Planned Parenthood provides a complete range of healthcare services to its patients including gynecological services, breast exams and cancer screening, pap tests, pregnancy tests, and screening and treatment for sexually transmitted infections.  Trombley Affidavit at ¶4.  Planned Parenthood also performs abortions. Trombley Affidavit at ¶4.

Gemini is a wholly owned affiliate of PPCA.

The City of Aurora is Illinois' second largest city with more than 175,000 residents. Aurora spans four Illinois counties – DuPage, Kane, Kendall and Will –an area that has seen tremendous economic and population growth in the last five years.

### The Facility

In 2006, Planned Parenthood began planning for a new medical facility to provide services in Chicago's western suburbs.  Trombley Affidavit at ¶5.  The nearest Planned Parenthood facility is in downtown Chicago, more than 35 miles away.  Ultimately, Planned Parenthood obtained a parcel of land at 3051 New York Street in Aurora and designed a $7.5 million, 22,000 square foot medical office facility for that site.  Trombley Affidavit at ¶5.

### The Permit Process

In the fall and winter of 2006, Gemini Office Development, a wholly-owned affiliate of Planned Parenthood/Chicago Area, submitted materials to obtain a building permit from the City of Aurora.  Trombley Affidavit at ¶6.  Among the materials Gemini submitted were detailed architectural plans showing the design of the facility and its use as an outpatient medical facility. Trombley Affidavit at ¶6.  Other materials submitted by Gemini described the project as

001932

"Gemini Outpatient Facility." Trombley Affidavit at ¶6. Under "General Description of Proposed Work" Gemini entered "Medical Office Building." Trombley Affidavit at ¶6.

Because Aurora had already zoned the property for medical use, no variance or other zoning appeal was required. Trombley Affidavit at ¶7. On January 12, 2007, Aurora issued a building permit to Gemini Office Development, which expired on July 11, 2007. Trombley Affidavit at ¶7; *see also* Aurora Municipal Code Chapter 43, Section 12. Gemini then commenced construction on the 22,000 square foot facility. *See* Trombley Affidavit at ¶8. In late July 2007, newspaper and other media began reporting that the new medical facility would provide abortion services to women in the western suburban area. Trombley Affidavit at ¶9.

On August 16, 2007, Aurora issued a Temporary Occupancy Permit, allowing Planned Parenthood to open for business. Trombley Affidavit at ¶10; *see also* Aurora Municipal Code Chapter 43, Section 12. The Temporary Occupancy Permit clearly stated that there were only two minor conditions to obtaining its Permanent Occupancy Permit: install additional exit signs at certain points inside the facility and install glass at the service counters. Trombley Affidavit at ¶11. Upon receiving this positive news, Planned Parenthood announced that it would open for business on September 18, 2007, and began scheduling appointments for its first patients at its new facility. Trombley Affidavit at ¶12.

## Anti-Abortion Protests of the Facility

This peaceful landscape changed suddenly in the final weeks of August. A group of more than 1,000 anti-abortion protestors held a demonstration outside of the new facility on Sunday, August 26, 2007. Trombley Affidavit at ¶13. At the next Aurora City Council meeting, August 28, 2007, more than 100 protesters arrived to object to the new Planned Parenthood facility. Trombley Affidavit at ¶13. The protestors objected strongly to the practice of providing

001933

abortion services. Trombley Affidavit at ¶13. Many also questioned why they had just recently

learned that the medical outpatient facility would be providing abortion services. Trombley

Affidavit at ¶13.

## Aurora's Response to the Anti-Abortion Protests

Late on Friday, August 31, 2007, Aurora issued a letter to Gemini Office Development,

stating as follows:

> Please be advised that the City of Aurora have (sic) begun an full review (sic) of
> the process surrounding the development of your property at the above address, in
> order that we may ensure that all codes and regulations have been met prior to
> your occupancy thereof.  Therefore, we are modifying the conditional Temporary
> Occupancy Permit issued August 16, 2007 to include an additional condition that
> you may not open for business until such time as the City has given you further
> written approval to do so.  This letter should be considered official notice thereof.

Aurora, however, expressly acknowledged that Planned Parenthood had announced its opening

date of September 18.  The letter, therefore, concluded:

> We understand that your projected opening date is September 18, 2007, and it is
> our intention to conclude our review in order to provide you with further direction
> prior thereto.

**{A copy of Aurora's August 31, 2007 letter is attached as Exhibit 6 to the Trombley
Affidavit}**

## Additional Anti-Abortion Protests of the Facility

On Tuesday, September 11, 2007, at its next regularly scheduled public meeting, the

Aurora City Council heard again from dozens of anti-abortion protestors.  In all, the meeting

lasted more than three hours. Trombley Affidavit at ¶15.  Again, the protestors objected to

abortion generally as well as to the new Planned Parenthood facility in Aurora.  Trombley

Affidavit at ¶15.  Some protestors objected to the lack of parental notification laws in Illinois.

Trombley Affidavit at ¶15.  Other protestors objected to distribution of birth control at Planned

Parenthood facilities. Trombley Affidavit at ¶15.  Many protestors again complained that they

001934

had not been given notice and an opportunity to object to the Planned Parenthood facility. *See*

Trombley Affidavit at ¶15.

### Aurora Announces it has "No Intention" of Allowing Planned Parenthood to "open for business"

On September 12, 2007, Gemini Office Development received a second letter from the

City of Aurora. This letter stated:

> This correspondence is a follow-up to our letter to you of August 31, 2007 in which we advised you that, pending a review of the development process, you could not open for business under the temporary certificate of occupancy.

> At that time we indicated that it was our intention to have the review concluded by September 18, 2007. We wish to advise you that it is not likely that the review process will be completed prior to your projected opening date. **The City of Aurora has no intention of allowing you to open for business prior to the completion of the independent review.**

> Therefore, we wish to reiterate that until or unless you receive specific approval from the City of Aurora, **you are not permitted to open for business**.

(emphasis added).

Planned Parenthood has met both of the conditions set forth in the original August 16

Temporary Occupancy permit. Trombley Affidavit at ¶17. The $7.5 million facility is

completed and staffed with doctors, nurses, educators, administrative staff and health care

professionals. Trombley Affidavit at ¶17. Planned Parenthood has scheduled appointments with

its first patients for September 18, 2007 and the balance of next week. Trombley Affidavit at

¶18. Because of Aurora's actions, however, Planned Parenthood will not be able to provide any

services to these patients. Further, by its own terms, Aurora's highly unusual "review" process is

both undefined in scope and indefinite in nature. Absent intervention by this Court, Planned

Parenthood may never be able to operate its facility in Aurora.

001935

## ARGUMENT

**A.    Planned Parenthood can establish each of the elements for injunctive relief.**

"Five factors figure into the determination of whether a preliminary injunction should be granted. As a threshold matter, plaintiffs must show 1) a likelihood of success on the merits, 2) irreparable harm if the preliminary injunction is denied, and 3) the inadequacy of any remedy at law. Once this threshold showing is made, the court balances 4) the harm to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and 5) the impact on persons not directly concerned in the dispute (the "public interest")." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

With respect to the likelihood of success on the merits showing, "The threshold for this showing is low." *Id.* (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 387 (7th Cir. 1984). "Plaintiffs need only demonstrate a 'better than negligible chance of succeeding.'" *Id.* (citing *Boucher v. Schl. Bd. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998).

Plaintiffs must also make "a threshold showing that any remedy at law would be inadequate." *Id.* at 817. In using the term "inadequate," "[courts] do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." *Id.*

Here, Planned Parenthood can demonstrate each of these criteria for obtaining a preliminary injunction barring Aurora from withdrawing or modifying the terms of its occupancy permit. First, Planned Parenthood is overwhelmingly likely to prevail on the merits of its Section 1983 claim. Aurora has provided no reason for its changed position on Planned Parenthood medical facility and the obvious reason – the vocal objection to the provision of abortion services – is not a permissible basis for denying a medical facility to open for business. Second, this injunctive relief is necessary to prevent irreparable harm to Planned Parenthood and

C01936

its patients and staff. Third, the balance of harms clearly favors a limited injunction allowing Planned Parenthood to open for business rather than permitting Aurora to change arbitrarily the process for reviewing and issuing a permit. Finally, the public interest favor issuance of the injunctive relief requested here. Without this relief, Planned Parenthood and its patients will be denied access to crucial and constitutionally-protected health services. By contrast allowing Planned Parenthood to open for business and operate its facility will have no negative impact on the City of Aurora.

### B.   Planned Parenthood is likely to prevail on the merits of its claim.

At trial, Planned Parenthood will establish that the City of Aurora has denied it equal protection under the laws by treating it differently than other medical providers. Accordingly, Aurora has acted under color of state law to deny Planned Parenthood the fundamental right of equal protection. 42 U.S.C.A. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

To state a claim under Section 1983, Plaintiffs must show (1) that the conduct at issue was committed under color of state law; and (2) that the conduct deprived Plaintiffs of rights, privileges, or immunities protected by the Constitution or laws of the United States. *See, e.g., Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989). Rights conferred under the Equal Protection clause of the Fourteenth Amendment are enforceable under Section 1983. *See, e.g., Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216 (7th Cir. 1994).

CC1937

1. **The City of Aurora's pretextual refusal to allow Planned Parenthood to open for business imposes a substantial and unconstitutional obstacle on women seeking abortions and other patients seeking health care services.**

Planned Parenthood will establish at trial that Aurora's decision to revoke its occupancy permit and to submit it instead to an endless administrative review was the result of animus to abortion and contraception services. In *Gonzales v. Carhart*, ___ U.S. ___, 127 S. Ct. 1610 (2007), the Supreme Court affirmed the core holding of *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), reiterating "Before viability a State 'may not prohibit any woman from making the ultimate decision to terminate her pregnancy.'" *Gonzales*, 127 S. Ct. at 1626. The Court also reaffirmed that the State "may not impose upon this right an undue burden, which exists if a regulation's 'purpose of effect is to place a substantial obstacle in the path of a woman seeking an abortion.'" *Id.* at 1626-7.

Here, the City of Aurora is treating Planned Parenthood differently than any other medical facility precisely because of the constitutionally-protected services it provides. Because Planned Parenthood provides contraception and abortion services, Aurora is treating it differently than any other medical facility, of which there are dozens in the surrounding area. The site of Planned Parenthood's medical facility is zoned for medical use. All of the materials reviewed and approved by the City of Aurora described the 22,000 square foot facility as an "outpatient medical facility." Even after Planned Parenthood publicly announced in late July that it would become the new tenant of the facility, the City of Aurora issued a Temporary Occupancy Permit. Only when protestors began appearing at the Planned Parenthood facility in late August and testifying at public hearings before the Aurora City Council, did the status of Planned Parenthood's facility change.

Once Planned Parenthood establishes that it has been discriminated against based on its

C01938

exercise of a constitutional right, the burden shifts to the City of Aurora to justify its conduct, and strict scrutiny is applied. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68 (1981) ("[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest.") The City of Aurora has offered no rationale for its "modifying" of the Temporary Occupancy Permit to refuse to allow Planned Parenthood to open for business. It has not and cannot meet its heavy burden of justifying its discriminatory treatment of Planned Parenthood. As the Eighth Circuit noted in *Planned Parenthood v. Atchison*, 126 F.3d 1042 (8th Cir. 1997), state action taken for "no purpose other than to make abortions more difficult" is unconstitutional. *Id.* at 1049 ("Our concern . . .chiefly lies in the state authorities' response to the[] lobbying efforts" of groups opposed to abortion.)

The City of Aurora has acted under color of state law to interfere with Planned Parenthood's ability to provide the constitutionally-protected services of abortion and contraception. It has not and cannot meet its burden of justifying its disparate treatment of Planned Parenthood. Accordingly, Plaintiffs are highly likely to prevail on the merits of their claims.

> **2.    The City of Aurora's rumored basis for modifying the Temporary Occupancy Permit – that Planned Parenthood "misled" the City about the type of medical facility it would operate – is neither factually nor legally availing.**

The City of Aurora, in both its August 31, 2007 and September 11, 2007 letters provides no reason for Aurora's "modification" of the Temporary Occupancy Permit. Several protestors at the Aurora City Council meetings, however, argued that they believed Planned Parenthood had committed "fraud" by not publicly announcing their intention to perform abortions at the new medical facility. This argument fails on both factual and legal grounds.

First, as a factual matter, Planned Parenthood had publicly announced its intention to

001939

operate a medical facility that provided a full range of reproductive services, including birth control, family planning counseling and abortions, in late July, well before the City of Aurora issued its Temporary Occupancy Permit.  In May 2007, in order to finance this new medical facility, Planned Parenthood issued more than $8 million in tax exempt bonds through the Illinois Finance Authority.  Trombley Affidavit at ¶8.  The dozens of documents related to that public transaction all refer to both Planned Parenthood Chicago Area and Gemini Office Development.  *Id.*  Finally, the architectural drawings provided to Aurora during the permitting process displayed not only the surgical rooms in the facility but also the security measures that were built into the design of the facility.  None of this was hidden from the City or the public in any way.  The facts simply do not support an argument that Planned Parenthood "misled" the City of Aurora in the permitting process.

As a legal matter, however, Aurora's implicit argument is even less persuasive.  As the court noted in *Planned Parenthood of Northern New England v. City of Manchester, N.H.*, No. CIV. 01-64-M, 2001 WL 531537, at *3 (D.N.H. April 27, 2001), {**Attached hereto as Exhibit A**} "If the issuing authority was 'misled' as to the identity of the prospective tenant who would be providing medical services at the site, that identity would have been irrelevant  to any impartial decision . . .[T]hat the proposed tenant intended to engage in constitutionally-protected activities in providing medical services – such as providing abortion and contraception counseling and services – would have been equally irrelevant."

In the *Manchester* case, the court granted an injunction barring the municipality from refusing to provide a variance to a Planned Parenthood facility.  As in Aurora, the municipality had initially granted a building permit and a zoning variance, but had revoked it in the face of a firestorm of public criticism.  The court noted that other medical facilities in the immediate area

001940

had been provided variances allowing them to provide medical services. By contrast, Planned Parenthood had been singled out apparently only because it provided abortion and contraception services to its patients.

Like Aurora, Manchester did not openly object to Planned Parenthood's use of the medical facility, but instead claimed that it did not merit a variance because it had not fully disclosed its plan to offer abortion services at the facility. The court was not persuaded by this argument. "Counsel [argues that] the variance was procured by misrepresentation or even fraud – i.e. the <u>variance</u> was granted based on the Owner's agent's representation that the building would be used as a "general medical practice," while the actual intended use is significantly different because a medical practice is not 'general' if it focuses on gynecology and obstetrics. Under that rationale, a 'medical office' for podiatrists, dermatologists, pediatricians, or any medical group other than perhaps a general family practice, would probably be equally violative of the implicit 'general practice' limitation. *Id.*

Here, the facts are even more compelling than in *Manchester*. Planned Parenthood does not seek a zoning variance – medical facilities are already a permitted use at the Aurora location. Instead, they seek to be allowed to operate a medical facility consistent with the City of Aurora Municipal Code. The only possible objection--that somehow the City of Aurora was not given the opportunity to discriminate based on the fact that Planned Parenthood provides constitutionally-protected services such as contraception and abortions to its patients--is clearly unsupportable. If a State actor were to deny a permit because of animus to abortion services, that would be the basis of a Section 1983 claim, not a valid basis for denying an occupancy permit.

Given this history, the core holding of *Manchester*, set forth below, is even more powerfully applicable here:

> [P]laintiffs are likely to prove at trial that the actual factor motivating the ZBA to revoke the Owner's building permit . . was its antipathy for the abortion and contraception services [Planned Parenthood] will provide, or its acquiescence in the expression of public antipathy for such constitutionally protected activity.  In either event, revocation of a permit based upon such considerations operates to deprive the Owner and [Planned Parenthood] (and its patients) of their constitutionally protected freedoms. . . Such decisions, taken under color of state law, are clearly unlawful and actionable.

*Id.* (citations omitted).

As in *Manchester*, the City of Aurora's fig leaf argument that it was "misled" about the nature of the services that Planned Parenthood intends to provide at its facility is neither factually nor legally persuasive.

### C.    In the absence of an injunction, Planned Parenthood and its patients face irreparable harm for which no adequate remedy at law exists.

Preliminary relief is necessary to prevent irreparable harm to Planned Parenthood and its patients.  First, irreparable harm is presumed when the violation involves constitutional rights.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")  Here, Aurora's revocation of Planned Parenthood's occupancy permit results in precisely this loss of constitutionally-protected rights – rights of privacy, as well as rights to contraception and abortion services.

Second, the nature of the services which Planned Parenthood provides are particularly harmed by the type of obstacles and delay that the City of Aurora is creating.  As the court noted in *Manchester*, "Every day [Planned Parenthood] is prevented from occupying its new facility increases the likelihood that abortion or contraception or family planning patients will have to seek alternative care either in hospital settings, at considerable expense, or by traveling to other facilities." 2001 WL 531537 at *5.

Here, patients in the western suburbs of Chicago would have to travel more than 70 miles to obtain services from the nearest Planned Parenthood facility.  Many of the patients who have

001942

neither the means nor the time for this travel would be effectively denied health care as a result of the City of Aurora's conduct.

Third, Planned Parenthood has invested more than $7.5 million in this facility. It has considerable operating costs each day, and has financed this project with more than $8 million in tax exempt bonds. Like any business, each day it is not open, it is not receiving revenue and not earning the goodwill of its patients. The arbitrary and discriminatory actions of the City of Aurora are therefore threatening to irreparably harm the fundamental business of Planned Parenthood.

### D.    The balance of hardships tips heavily in favor of Planned Parenthood.

An injunction permitting Planned Parenthood to operate its facility will inflict no harm at all on the City. The City of Aurora has already approved the designs for the building and had only two minor comments on the Temporary Occupancy Permit: providing additional exit signs and glass at the service counters. Both of those conditions have now been satisfied. Far from harming the City, an injunction would actually allow its 175,000 citizens, plus hundreds of thousands more in the neighboring communities, to have access to affordable, reliable health care in a new 22,000 square foot facility.

By contrast, Planned Parenthood and its patients face a series of harms in the absence of injunctive relief. First, their constitutional rights will continue to be denied day after day. Second, patients will be denied access to affordable health care and reproductive counseling and services. Third, Planned Parenthood will have an extremely difficult time quantifying the loss of patients who simply decide that its new facility is too controversial or unreliable given the actions of the City of Aurora. In sum, while the City faces no hardship from the injunctive relief requested, the balance tips decidedly to Planned Parenthood in the absence of such relief.

001943

**E.      The public interest weighs heavily in favor of granting the injunctive relief Planned Parenthood requests.**

As the court noted in *Manchester*, "The public interest never favors governmental action that is arbitrary, unreasonable, and motivated by personal animus toward groups or individuals based upon their exercise of constitutionally-protected freedoms." 2001 WL 531537, at *6. Instead, the public has an interest in the services that Planned Parenthood hopes to offer at its new facility:  health care at reasonable prices, screening, education, counseling and treatment for sexually transmitted diseases, cancer screening and breast exams, contraceptive and family planning counseling, and abortion services.  The public interest clearly sits with the services Planned Parenthood will provide, not in the City of Aurora's arbitrary decision to revoke its occupancy permit.  Injunctive relief here will further, not threaten, the public interest.

<u>CONCLUSION</u>

Wherefore, for the foregoing reasons, Plaintiffs Planned Parenthood/Chicago Area and Gemini Office Development request an order of this Court enjoining the City of Aurora from further modifying the Temporary Occupancy Permit dated August 16, 2007 or otherwise interfering with Planned Parenthood's opening of its business beginning on September 18, 2007.

001944

Dated:  September 13, 2007

One of its Attorneys

Christopher B. Wilson
Peter B. Neumer
PERKINS COIE, LLP
131 S. Dearborn Street
17th Floor
Chicago, IL 60603
Telephone:  (312) 324-8400