during the permitting process – a zoning and land use issue -- into a lawsuit concerning the fundamental rights of individuals who are not parties in the case.

*Planned Parenthood of Northern New England v. City of Manchester* does not further the argument that Aurora's actions implicate the fundamental right to abortion and, therefore, Defendant must show that its decision to investigate the permitting process related to the Planned Parenthood facility at 3051 East New York Street promotes a compelling governmental interest. In *Manchester*, plaintiffs -- Planned Parenthood *and* 24 individuals -- brought suit after the ZBA revoked Planned Parenthood's building permit. The ZBA gave no reasons for its action. 2001 WL 531537 at * 32. The permit revocation occurred after a public hearing in which "significant numbers of people expressed personal objection to Planned Parenthood's location in the area due to their general opposition to abortion, contraception, or family planning activities." *Id.* at * 3. In other words, the record in *Manchester* indicates that revocation of a Planned Parenthood building permit resulted after the city conducted a hearing during which anti-abortion *animus* clearly was expressed. Such a record supported the claim that defendant acted to deny a fundamental constitutional right.

Unlike the defendants in *Planned Parenthood of Northern New England v. City of Manchester*, Aurora and its officials have not taken any action based on *animus* to the fundamental right to abortion. No record exists to indicate that Defendant has made any decision that denies a fundamental right that is premised on governmental officials' personal, philosophical, moral, religious, and/or political opposition to abortion. No evidence exists that Aurora's undertaking of a review of the permitting process that resulted in the issuance of building permits and occupancy certificates to Plaintiff was

002074

motivated by political opposition to Planned Parenthood providing abortion services. Importantly, Aurora appointed an independent investigator to conduct the inquiry. Such action constitutes an affirmative step by Defendant to insure that the investigation and the results of the inquiry are not motivated by *animus* concerning abortion. Therefore, Plaintiff's attempt to characterize this matter as involving the denial of the fundamental right to abortion by Defendant is speculative and cannot be the basis for subjecting Aurora's actions in launching its investigation to strict scrutiny analysis.

**2.    Aurora's Investigation Satisfies The Rational Basis Test**

Equal protection jurisprudence directs that governmental action that does not implicate a suspect class or the violation of a fundamental constitutional right should be accessed by applying the rational basis test. Under this standard, governmental action is valid if it is rationally related to a legitimate interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. at 440.

In this case, the rational basis test should be applied to Aurora's decision to investigate Plaintiffs' actions during the process that resulted in the issuance of a building permit and a certificate of occupancy for the Planned Parenthood facility at 3051 East New York Street. The question is whether Aurora's decision reasonably relates to the promotion of a legitimate governmental interest.

Section 10 of the Aurora Zoning Ordinance establishes the process by which permits and certificates shall be issued for development in a Planned Development District. Aurora decided to investigate Plaintiffs' actions relative to the Section 10 permitting process after allegations were raised that Plaintiffs may not have been truthful with city officials. The decision to investigate allegations of deceptive behavior by an

002075

applicant for PDD permits and certificates seeks to preserve the integrity of an administrative process used by many entities with substantial economic interests at stake. Aurora clearly has an interest in maintaining a process for issuance of PDD permits and certificates that is equitable for all parties who seek to engage in economic development and activity in the city. The investigation into allegations of improprieties by an entity seeking to engage in PDD development activity promotes the legitimate governmental interest of maintaining public confidence and trust in a process that affects the economic welfare of the municipality.

Aurora's decision to review Plaintiff's actions relative to the Section 10 permitting process is rationally related to a legitimate governmental purpose. Plaintiffs are not likely to succeed on the merits of the claim that Aurora has violated their Equal Protection Rights; therefore, this Court should deny the motion for preliminary injunction.

### III. Plaintiffs Have An Adequate Remedy At Law For Any Damages It May Suffer As A Result Of Aurora's Actions In Denying A Permanent Occupancy Permit Until Its Investigation Is Completed

To prevail on its motion for preliminary injunction, Plaintiffs must show they lack an adequate remedy at law. Plaintiffs' motion for preliminary injunction and their supporting memorandum of law contain no allegations that Plaintiffs lack a legal remedy. This is not surprising because a clear remedy at law stands available to Plaintiffs. In the event that the Planned Parenthood facility remains closed while Aurora completes its investigation, Plaintiffs can sue for damages in state court. Since Plaintiffs can pursue a legal remedy in court, their motion for preliminary injunctive must be denied.

002076

**IV.    Plaintiffs Cannot Show That They Have Or Will Suffer Irreparable Harm Unless They Are Granted A Preliminary Injunction**

To prevail on their motion for preliminary injunction, Plaintiffs must show that they will suffer irreparable harm unless injunctive relief is granted. They cannot make such a showing. Plaintiffs are correct that irreparable harm is presumed when a violation of constitutionally protected rights – e.g. rights to abortion – are violated. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). However, in this matter, no individuals have been identified as parties who have suffered violation of their constitutional rights. Further, the record is devoid of any evidence that Aurora officials have rendered a decision regarding the opening of the Planned Parenthood facility at 3051 East New York Street based on opposition to the exercise of abortion rights. Rather, Aurora officials have decided to investigate Plaintiffs' actions related to the Section 10 PDD permitting process due to a legitimate concern for the integrity of the codified procedures. Such action is not directed at the right to abortion.

Plaintiffs claim that they will suffer irreparable harm to their business interests. *Plaintiffs' Memorandum Of Law In Support Of their Motion For Injunctive Relief* at 13. Plaintiffs allege in this regard that, "Planned Parenthood has invested more than $7.5 million in this facility [at 3051 East New York Street]. It has considerable operating costs each day, and has financed this project with more than $8 million in tax exempt bonds. Like any business, each day it is not open, it is not receiving revenue and not earning the goodwill of its patients." *Id.* Assuming that these claims of economic hardship are true, Plaintiffs can seek damages in court. Therefore, Plaintiffs cannot show irreparable harm due to Aurora' actions and their motion for injunctive relief should be denied.

## V.    Granting Plaintiffs' Motion For Injunctive Relief
## Will Harm The Public Interest

Aurora has significant interests that will be harmed if the Court grants Plaintiffs' motion for preliminary injunction.   An injunction that requires Aurora to allow the Planned parenthood facility to open for business would compromise the city's legitimate interest in regulating land use to achieve planning goals.   *Vision Church, United Methodist v. Village of Long Grove*, 468 F.3d at 990; *Civil Liberties For Urban Believers v. City of Chicago*, 342 F.3d 752, 766.  The city initiated its investigation into allegations that Plaintiffs failed to disclose material information while seeking and securing requisite permits and certificates in order to preserve the integrity of its Section 10 procedures. Decisions influencing the development of areas like that surrounding the site of the Planned Parenthood facility have significant consequences for the welfare of the community.  If the process used to allocate building permits and occupancy certificates is compromised, then the public suffers substantial harm.  Public confidence and trust in the fair and honest operation of municipal government could be eroded.

Plaintiffs' argument that the public interest weighs heavily in favor of granting its motion for preliminary injunction rests on the premise that the sole reason for Aurora' actions in this matter is governmental *animus* towards the exercise of the constitutionally protected right to abortion.  *Plaintiff's memorandum Of Law In support Of their Motion For Injunctive Relief* at 14.  The record does not support Plaintiff's assertion.  Aurora commenced an investigation by an independent party of Plaintiffs' actions relative to the Section permitting process *following* allegations that PPCA and Gemini withheld information that was material to their requests for a building permit and an occupancy certificate.  If concerns that Plaintiffs compromised the Section 10 permitting process had

002078

not been raised, then Aurora would not need to conduct its investigation before allowing the Planned Parenthood facility to open for business.

Defendant initiated its investigation in response to legitimate public concern that Plaintiff may have acted in ways adverse to the honest and fair operation of municipal government. If the Court orders the Planned Parent facility open before Defendant completes its investigation, then the public interest will suffer substantial harm. Therefore, Plaintiffs' motion for injunctive relief should be denied.

**WHEREFORE**, for all the above-stated reasons, Defendant City of Aurora respectfully requests that this Honorable Court enter an order denying Plaintiffs' motion for preliminary injunction and granting Defendant any relief the court deems fair and just.

Respectfully submitted,

CITY OF AURORA

By:_____/s/Allen Wall_____
          One of its attorneys

Lance C. Malina
Allen Wall
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400
Attorney No. 90446

C02C79

STATE OF ILLINOIS      )
                        ) SS.
COUNTY OF KANE        )

## <u>AFFIDAVIT OF ALAYNE WEINGARTZ</u>

      I, ALAYNE WEINGARTZ, being first duly sworn upon oath, depose and state as follows:

1. I am and at all relevant times have been the Corporation Counsel for the City of Aurora, Illinois.

2. On August 16, 2007, City of Aurora building department staff issued a temporary occupancy permit to Gemini Office Development LLC, but City of Aurora elected officials were not involved in this decision.

3. After that time allegations surfaced that Gemini Office Development LLC had either made material misrepresentations or committed fraud in applying for and obtaining permits from the City. A true and accurate copy of the minutes of a November 16, 2006 Planning and Development Committee meeting, which was part of the materials that indicated the potential for misrepresentation or fraud on the part of Gemini Development LLC, is attached hereto as **Exhibit A**.

4. Pursuant to Section 2-17(4) of the Aurora City Code, the City Council, has the power to "inquire into the conduct of any office, department or agency of the city, examine and inspect those books, records and papers pertaining to city business of any appointive agent or employee of the city, and make investigations as to municipal problems and affairs." *Aurora City Code*, Article II, § 2-17(4).

5. The City of Aurora has a strong interest in maintaining the integrity of its permit application process for property development, as it is essential to the health, safety and welfare of the City and its citizens.

iManage:200945_1

EXHIBIT

_1_

002080

6. On August 28, 2007, at a City Council meeting, the Mayor announced plans to conduct an investigation into the Gemini Office Development LLC permit application process.

7. Because allegations of fraud were made within the context of the politically charged abortion issue, the Mayor and City Council determined that the investigation should be conducted by an independent attorney with experience in zoning and property development matters, who has no ties to the City, has never worked for the City in the past, and has no ties to either side of the abortion issue.

8. The purpose of the investigation is to look at the complete application process, including statements made by Gemini Office Development LLC during said process, to determine whether Gemini Office Development applied for and/or received permits properly, and in accordance with the Aurora City Code and relevant State law.

9. I make these statements based on my own personal knowledge and I could testify competently thereto if called upon to do so.

Alayne Weingartz
Corporation Counsel
City of Aurora, Illinois

SUBSCRIBED AND SWORN to before
me this 18th day of September, 2007

Notary Public

OFFICIAL SEAL
LAURA A. SCHINDEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-5-2009

iManage:200945_1

002081

## PLANNING & DEVELOPMENT COMMITTEE
### MEETING MINUTES
November 16, 2006

### COMMITTEE PRESENT

Alderman Michael B. Saville, Chairman, Present
Alderman Lynda Elmore, Present
Alderman John S. "Whitey" Peters, Present
Alderman Chris Beykirch, Alternate, Not Needed

### CITY OF AURORA PRESENT

Janell Roehlk, Land Use & Zoning
Stephane Phifer, Planning Dept.
Tim Macholl, Land Use & Zoning
Mike Kamon, Neighborhood Redevelopment
Ed Sieben, Land Use & Zoning
Bill Wiet, Community Development
Stephane Phifer, Planning Department
Bill Spaeth, Planning Department
Peter Boutsikakis, Planning Department
Christiana Pascavage, Planning Department
Jennie Grobe, Historic Preservation
Karen Christensen, Downtown Development
Alayne Weingartz, Legal Department
John Banbury, Legal Department
Chuck Nelson, Mayor's Office

### OTHERS PRESENT

Bruce Goldsmith, Attorney, Dykema Law Firm
Ken Kearns, 2626 Ogden Ave
Tracey Ciciora, 1114 Marseillaise Pl
Kevin Kane, 214 LeGrande Blvd
Alan Kato, Anderson Mikos
Frank Ferguson, Rush-Copley
Tom Verive, 2563 Adamsway, (Cypress)
Ed Schneider, McDonald's Corp
Hank Stillwell, 300 E Roosevelt Rd, Wheaton
Nan Theotold 2260 E New York
Tom Lehman, Gemini Office Development
Bernie Wilhelmsen, 888 S Edgelawn, LDA
Jim Bibby, 324 W State St
Sharon Gorrell, Realtor Association
Kristos Tsogas, 240 N Oakhurst

Bill Wiet, Director of Community Development is present for the items that are on the agenda.



EXHIBIT

A

tables

002082

## CALL TO ORDER

Chairman Saville called the meeting to order at 4:07 p.m.

002083

18.    **Agenda Item 18: A RESOLUTION APPROVING THE FINAL PLAN ON 3.24 ACRES FOR A 21,750 SQUARE FOOT MEDICAL OFFICE BUILDING LOCATED NEAR THE SWC OF OAKHURST DRIVE AND NEW YORK STREET (Gemini Office Development – NA20/3-06.390-Fpn – TM/JHS) (Appealable)**

Tim Macholl from Land Use and Zoning and Kristos Tsogas were present for this item.

Chairman Saville:  Number 18 then, is a resolution accepting, approving a final plan for a medical office facility at Oakhurst and New York.

Tim Macholl:  As was stated, it's a fairly large medical office building that's going there at the corner – or it's basically just south of the corner – of Oakhurst and New York.  Pretty straightforward.  I think it's a two-story building.

Kristos Tsogas:  Single story.

Tim Macholl:  That one's only a single story; I'm sorry, I'm confusing … everything's melting [laughs].  Basically there's residential to the east and south and they will be providing landscaping and screening for all that appropriately.

Alderman Elmore:  What type of screening and landscaping?

Tim Macholl:  There is, currently to the south there is an existing berm and there is landscaping on it and they will be adding a considerable amount of landscaping to that berm to help…

Ed Sieben:  Tim, can you pull out the plans, please, and show her?

Tim Macholl:  Yeah, sorry.  Let's see…

Alderman Elmore:  I can see why he thought this was two stories.  It has the look of it.  If you're looking at this…

Kristos Tsogas:  Yeah, there's a little raised section in front but it's a single story building.

Tim Macholl:  I'm kind of mixing cases.

Alderman Elmore:  Is this building being built specifically for a client?

Unidentified Gentleman:  We're in negotiations with a tenant; we do not currently have a lease but we still want to move ahead.

Tim Macholl:  As I was saying, there's currently an existing berm here and about half of this plant material is currently installed.  They will be installing the other half extensively…

Alderman Elmore: Do you know, in looking at your guide down there – and you may even know – whether the existing plant material is deciduous, whether it's evergreen, what are we adding to it, because that makes your four-season coverage.

Tim Macholl: It's a mix. Currently there's a mix of both deciduous and evergreen, and we did take that into account when we were reviewing it and they are providing more of the same mix – it's all mixed. You're going to have year-round screening as opposed to all deciduous and it's, you know, in the middle of the winter when the leaves are all gone.

Alderman Elmore: It's all dying out and you have nothing [laughs]. That's why I ask those questions; if you don't have enough of the evergreen mixes then in the winter it becomes very open to the people behind you, especially in this part of the country. It goes away [laughs].

Kristos Tsogas: There is an existing six-foot berm in this area that pretty much covers the first story of the housing behind it, and there's a couple openings in between the existing landscaping and we're filling that up so we're filling that up so it'll be pretty screened, even on the second story.

Alderman Elmore: I know your entry will come in off of Oakhurst. North of you is more business property? Did we develop some cross-access in there or is it separated totally from that area?

(People talk over each other)

Alderman Elmore: They've actually put plans through but they haven't decided to move on it. And I don't know whether they will or they won't but I was just kind of curious, with most of that in there we have some cross...

Bill Wiet: Ed would know.

Alderman Elmore: Ed might know?

Bill Wiet: Accessing then from the proposed Dominick's...

Alderman Elmore: I don't know that we want it or don't want it; my question is, where they're located they're tying into an area that is, as you know, all business, retail oriented...

Ed Sieben: Right. There is a... I think this is the gas station site here.

Alderman Elmore: Yeah, north of them.

Ed Sieben: So this is a cross-access through this drive through here, I believe. This is already existing here?

Kristos Tsogas: Yes. This is a private drive.

Alderman Elmore:  That's the one that comes in off of Oakhurst?

Ed Sieben:  That's already, yeah.  Yes.  That's already existing.   So that will remain.

Alderman Elmore:  And so this will connect... their parking lot will connect into...

Ed Sieben:  Correct.  The curb cut comes up off of their drive...

Alderman Elmore:  It actually might be to your benefit but... because it would give people coming from other directions a way to get into the facility if you decide to move in that direction.

Chairman Saville:  And there's sidewalks along Oakhurst?

Kristos Tsogas:  Yes.

Tim Macholl:  Right there.

Chairman Saville:  Anything more to add, gentlemen?  Any questions or discussion for the P&D Committee?

Alderman Elmore:  I think that's the bulk of it.

Chairman Saville:  Ok.

Alderman Elmore:  This, apparently... I think the preliminary on this must have happened prior to this getting moved into my ward [laughs] because this is a little bit of a surprise to me, but...

Ed Sieben:  I think the neighbors thought this was Chris's ward too, before, because I've talked to the gentleman in the townhomes on different issues...

Alderman Elmore:  And that actually got moved over into mine, yeah.  And the townhomes there are pretty nice people; I don't... have not presented this to them so they're not aware of it but I think they are aware that the property would be developed.

Ed Sieben:  Yes.

Alderman Elmore:  And the fact that it's an office rather than commercial, they should be very happy.

Ed Sieben:  Yes.

Alderman Elmore:  It's a much more...

Tim Macholl:  Yeah, they're not getting a strip mall.

Alderman Elmore:  It's a nice buffer between them and the retail center, and these usually are pretty quiet because they usually function in the daytime and that makes it nice.  I'd be interested to know who your client is, when you can release that.

Gentleman:  Ok.

Chairman Saville:  Is there a motion?

Alderman Elmore:  So moved.

Alderman Peters:  (inaudible) I've got a couple spots in the 5th Ward; we could use a couple (inaudible).

Alderman Elmore:  Yeah, it's a nice looking building.  I like the way it's laid out.

Alderman Peters:  It's beautiful.  I second.

Chairman Saville:  Second?  Motion been made and second for approval on Item 18; any further discussion?  All in favor say "Aye."

Alderman Peters:  Aye.

Alderman Elmore:  Aye.

Chairman Saville:  Aye.  Opposed?  Motion carried 3-0.

Motion to approve by Alderman Elmore. Seconded by Alderman Peters. Motion carried 3-0.





002089

### Regular Meeting - Tuesday, August 1, 2006- 9:00 A.M.
### Held in the City of Aurora Council Chambers

## IV. Newly Submitted and Reactivated Petitions From Pending

B) NA20/3-06.390-FPN - GEMINI OFFICE DEVELOPMENT - FINAL PLAN ON 3.24 ACRES FOR A 21,777 SQ FT MEDICAL OFFICE BLDG NEAR THE SWC OAKHURST AND NEW YORK(Ward 10- JR/JHS)

Representative present, David Dastur, Tom Lehman, and Jon Vaznecis.

Mr. Dastur described the plan. The material will be brick inlaid precast. Their parking is more than adequate with 46 visitor, and 25 staff spaces. Mr. Pozzi said a fire plan is needed.

### Regular Meeting - Tuesday, October 24, 2006- 9:00 A.M.
### Held in the City of Aurora Council Chambers
### II. Petitions To Be Voted On This Week

D) NA20/3-06.390-FPN - GEMINI OFFICE DEVELOPMENT - FINAL PLAN ON 3.24 ACRES FOR A 21,777 SQ FT RETAIL BLDG NEAR THE SWC OAKHURST AND NEW YORK(Ward 10- TM/JHS)

The motion to move this item forward was unanimously approved. This item is moved to the November 1st Planning Commission meeting.

# EXHIBIT M



# City of Aurora

**Mayor's Office • 44 E. Downer Place • Aurora, Illinois  60507-2067 • (630) 844-3612**
**FAX (630) 892-8967**

Thomas J. Weisner
Mayor

### Memorandum

**To:**       Aurora Alderman

**From:**     Mayor Tom Weisner

**Date:**     Thursday, August 30, 2007

**Subject:**  Planned Parenthood Report and Recommendation

---

As you know the Legal Department has retained the Law Offices of Richard Martens to evaluate the development process surrounding the construction of the Planned Parenthood facility.  The final report will evaluate whether representatives from Planned Parenthood, Gemini Office Development, the City of Aurora and third party contractors acted appropriately within the bounds of municipal code in the development of the facility located on New York Street.  The report will also provide an overview of the city's legal options regarding the issuance of a final occupancy permit.

To our knowledge, Mr. Marten's never been contracted by the City of Aurora.  According to Mr. Martens, he has no affiliation with any group on either side of the issue.  He was chosen based on his extensive experience in municipal law.  He currently serves as Chairman of the Home Rule Attorney's Committee of the Illinois Municipal League and is past Chairman of the Chicago Bar Association Local Government Committee.  His biography is attached for your review.

To expedite the review process, Mr. Marten's began gathering documents and interviewing staff as of Monday, August 27.  The City will continue to retain Mr. Martens to complete the full evaluation, unless a majority of the Aurora City Council objects prior the end of business on Friday, August 31.  Objections should communicated in writing to the Mayor's Office.

The final report is expected to be completed and made available to the City Council by September 13, prior to the expiration of the temporary occupancy permit on September 17.

**RICHARD A. MARTENS**
20 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606
708/715-4400

**EXPERIENCE**

1977–Present:   **PRIVATE PRACTICE** of law specializing in municipal law, including public personnel disciplinary hearings and investigations, zoning and planning matters, pension proceedings and liquor license revocation proceedings.

Representative clients include the Villages of Oak Brook, Oak Park, Tinley Park, Vernon Hills, Carpentersville, Hinsdale, LaGrange, Hoffman Estates, Glendale Heights, Lynwood, Woodridge, Willowbrook, Carol Stream, Lake Zurich, Grayslake, Palatine, Westmont, New Lenox, Manhattan, Channahon and the City of Joliet.

Experienced in state and federal trial and appellate courts. Admitted to the Federal Trial Bar, U.S. District Court for the Northern District of Illinois and the Seventh Circuit Court of Appeals.

Appeared as a speaker on municipal problems before the Local Government Committee of the Illinois Bar Association, the Attorney's section of the Illinois Municipal League and the DuPage County Chiefs of Police. Lectured at Triton College to municipal code enforcement officials and zoning officers. Co-authored the Illinois Municipal League's handbook entitled Practice and Procedure in Police and Fire Disciplinary Matters.

Past chairperson of the Local Government Committee of the Chicago Bar Association.

Current chairperson of the Home Rule Attorneys Committee of the Illinois Municipal League.

1991–2003:   **VILLAGE ATTORNEY**, Village of Oak Brook, Illinois. Responsible for
1984-1987    all legal affairs of the Village and head of the Law Department. General Counsel to the President and Board of Trustees, Village Manager and staff. Counsel to the Plan Commission, Zoning Board of Appeals and Fire and Police Commission.

1973–Present:   **COUNSEL**, Village of Oak Park, Illinois

1984–Present:   **SPECIAL COUNSEL**; Counsel to the Zoning Board of Appeals, Plan Commission, Fire & Police Commission and the Village staff serving these groups.

C02091

RICHARD A. MARTENS page 2

| | |
|---|---|
| 1982–1984: | **VILLAGE ATTORNEY**; responsible for all legal affairs of the Village and head of the Law Department. General Counsel to the President and Board of Trustees, Village Manager and staff. |
| 1976-1982: | **ASSISTANT VILLAGE ATTORNEY**; Responsible for all housing-related matters including enforcement of the Village's Fair Housing Ordinance, preparation of rehabilitation loan documents and Village acquisitions; Zoning Counsel; advised various citizen groups; in the absence of the Village Attorney, counseled the President and Board of Trustees. |
| 1973-1976: | **PROSECUTING ATTORNEY**: Chief Prosecutor for the Village in all quasi-criminal matters as well as some civil cases; counsel for enforcement officers of the Village. |

**EDUCATION**

| | |
|---|---|
| 1967-1969<br>1972 | **UNIVERSITY OF MICHIGAN LAW SCHOOL,** Ann Arbor, Michigan (J.D., December 1972). Senior member of Journal of Law Reform Editorial Board. Semi-Finalist in Henry M. Campbell Moot Court Competition. Junior Clerk in Case Club Program. |
| 1963-1967 | **DENISON UNIVERSITY,** Granville, Ohio (B.A. with Honors, June 1967). Economics major. Phi Beta Kappa; Leland J. Gordon Prize for best honors paper in economics; Vice-President, Alpha Phi Omega National Service Fraternity; Elected to the following honor societies: Economics (President), History, Creative Writing (Treasurer), and Music. |

**REFERENCES**   On request.



# City of Aurora

**Mayor's Office ● 44 E. Downer Place ● Aurora, Illinois 60507-2067 ● (630) 844-3612**
**FAX (630) 892-8967**

Thomas J. Weisner
Mayor

**Memorandum**

| | |
|---|---|
| **To:** | Aurora Alderman |
| **From:** | Mayor Tom Weisner |
| **Date:** | Friday, August 31, 2007 |
| **Subject:** | Planned Parenthood Evaluation |

As you know the Legal Department retained the Law Offices of Richard Martens to evaluate the development process surrounding the construction of the Planned Parenthood facility. Mr. Martens has never been contracted by the City of Aurora and has no affiliation with any group on either side of the issue. In addition, he has extensive municipal law experience. Thus, it is my opinion that Mr. Martens is more than qualified to complete the investigation.

It has recently come to our attention that Mr. Martens was a law clerk for the city's outside counsel, Klein, Thorpe and Jenkins in 1968. Additionally, a small minority of the City Council has objected based on the fact that Mr. Martens' office is located in the same building as the city's outside counsel and indicated that his active involvement in a professional organization where he has contact with attorneys throughout the region are in someway conflicts of interest.

While I do not believe that any of the objections raised would disqualify Mr. Martens, as I indicated at Tuesday evening's Council meeting, I have no pride of ownership of the person chosen to investigate. Therefore even though only a small minority of the City Council took issue with Mr. Martens, I have asked the two attorneys on the City Council, Richard Irvin and Bob O'Connor, to recommend an alternate attorney and gain City Council consensus on the alternate choice. For my standpoint, I believe we must insist the new attorney or firm should have no affiliation with any group on either side of the issue and have never been contracted by the City of Aurora, as these are the points of substance.

It is important to remember that the alternate attorney or firm should be required to complete a full evaluation of the facts surrounding the construction of the Planned Parenthood facility on New York Street. The attorney or firm should submit a final report evaluating whether representatives from Planned Parenthood, Gemini Office Development, the City of Aurora and third party contractors acted appropriately, within the bounds of municipal code in the development of the facility, no later than September 12, 2007 so that copies can be made and provided to the entire City Council by September 13, 2007, prior to the expiration of the temporary occupancy permit on September 17.

# EXHIBIT N

002094

**Ergo, Carie Anne**

| | |
|---|---|
| **From:** | Ergo, Carie Anne |
| **Sent:** | Tuesday, August 28, 2007 11:57 AM |
| **To:** | Wiet, William; Nelson, Chuck; Lewis, Alisia |
| **Subject:** | PP - Confidential |

Attached you will find the Planned Parenthood memo.  It is important for the Alderman to know that issuing an occupancy permit is an administrative function, not a legislative issue.  At this point none of the them have voted on any action regarding Planned Parenthood and per our process there is **no need to do so.**  In order to alleviate any questions about the process, a third party law firm is looking at the process and will provide the Administration a report and recommendation during the week of Sept. 10.  The Administration will make the results of the report available to Alderman.  If the report finds that the city has no basis by which to withhold a final occupancy permit, staff will proceed and issue the permit prior to Planned Parenthood's scheduled opening.

Please touch base with the following Alderman today on this issue:

Alisia - Garza
Chuck - Keith and Peters
Carie Anne - Beykirch
Mayor - O'Connor and Elmore



070827_PP.doc

Carie Anne Ergo
Public Information Officer
City of Aurora
44 E. Downer Place
Aurora, IL 60507
Office: 630-844-3612
Mobile: 630-774-0598

002095



# City of Aurora

**Mayor's Office • 44 E. Downer Place • Aurora, Illinois 60507-2067 • (630) 844-3612**
**FAX (630) 892-8967**

Thomas J. Weisner
Mayor

### Memorandum

**To:**      Mayor Tom Weisner

**From:**   Bill Wiet, Chief of Staff

**Date:**   Thursday, December 06, 2007

**Subject:**   Planned Parenthood

---

As you know there has been quite a bit of controversy surrounding the opening of a new Planned Parenthood facility on New York Street in Aurora. There has been much misinformation circulating about the City of Aurora's role in the development of the facility. The purpose of this memo is to clarify the city's role and inform you of the steps the staff has taken to ensure that our process was properly followed.

It is our understanding that during the planning and building process, neither city staff nor elected officials knew when the development was proposed that Planned Parenthood would occupy the building. The zoning of property in question allowed for medical and dental uses. As is common with developments of this type, it was built by a development corporation. This is not unusual since properties developed under this zoning often house a number of different tenants, such as a family doctor, obstetrician, dentist and orthodontist.

As you know, the federal government protects abortion rights. Generally, local governments must abide by state and federal laws. As such, it has been our understanding that local municipalities cannot specifically prohibit these uses when the zoning code allows other medical uses. In addition, as long as the developer adheres to building codes and local ordinances, they are entitled to obtain an occupancy permit.

Staff granted Planned Parenthood a 30-day temporary occupancy permit that expires September 17, 2007 prior to the facility being opened to the public. The temporary occupancy permit allows them to move in furnishings, fixtures, materials and other staff needs prior to opening.

Per your discussion with Alderman Beykirch, the city has hired the Law Offices of Richard Martens to review the entire development process involved in the construction of this facility. Mr. Martens has more than 30 years of municipal law experience and serves on the Home Rule Attorney's Committee of the Illinois Municipal League and is past Chairman of the Chicago Bar Association Local Government Committee.

The city expects to receive a full review of the process prior to Planned Parenthood's scheduled opening. The review will advise the city whether Planned Parenthood, city departments or other entities involved in the process functioned appropriately within the bounds of our municipal code. If the review indicates that our laws have been followed, the city will be obligated to issue a final occupancy permit for the facility opening on September 18, 2007.

C02096

# EXHIBIT O

002097

**Phifer, Stephane**

| | |
|---|---|
| **From:** | Sieben, Ed |
| **Sent:** | Wednesday, August 22, 2007 8:11 AM |
| **To:** | Vacek, Tracey |
| **Cc:** | Phifer, Stephane |
| **Subject:** | RE: Planned Parenthood Clinnic |

Tracey, we didn't need to present this last night, but Stephane mentioned that in 1993, the Fox Valley East was re-approved after the 20 year period, and some previous industrial areas (of which this was) switched to a commercial designation partly as a result of the Fox Valley Freeway (which generally was parallel to the E J & E tracks) being removed. This will need to be added.

We should then look specifically at the definition of the permitted uses from the Plan Description (whether it refers to the 1973, 1993, or the current ordinance (2006), for the exact language for medical use.

Ed

-----Original Message-----
**From:** Vacek, Tracey
**Sent:** Monday, August 20, 2007 5:10 PM
**To:** Sieben, Ed; 'LDELMORE@aol.com'
**Subject:** RE: Planned Parenthood Clinnic

Lynda,

Attached is the history for this parcel. The zoning was established by the plan description pursuant to the annexation agreement which was approve July 27, 1973. The public hearings would have been prior to the City Council approval.

Please let me know if you have any questions regarding the history information.

Tracey M. Vacek, Planner
City of Aurora
Work: 630-844-3614
Fax: 630-844-3638

-----Original Message-----
**From:** Sieben, Ed
**Sent:** Monday, August 20, 2007 8:22 AM
**To:** 'LDELMORE@aol.com'
**Cc:** Vacek, Tracey
**Subject:** RE: Planned Parenthood Clinnic

Lynda, I will have Tracey get for me the exact dates for you to respond. I know the public hearing and granting of zoning would have been in 1973 when this was annexed as

part of Fox Valley East which was the 4000 acre annexation. I'll then find out when this section was final platted (when the Dominick's shopping center was going in) in I think the early/mid 90's, and then when Gemini first approached us at DST (late 2006), and then the dates of their Final Plan submittal and approval.

Ed

-----Original Message-----
**From:** LDELMORE@aol.com [mailto:LDELMORE@aol.com]
**Sent:** Saturday, August 18, 2007 8:00 PM
**To:** Sieben, Ed
**Subject:** Planned Parenthood Clinnic

Ed, I am getting numerous e-mails about the clinic, its siting, public hearings, etc. In responding, I would really like to be very factual.

First, when was the property annexed and was it part of the larger parcel connected with the shopping center? When did Gemini first submit its plan and when was the final approved.

When do we have a public hearing on property and its zoning? Is it only at annexation?

I believe you indicated that this property was annexed as B2 which would mean that medical offices are an approved use. Certainly I know that the planning review, the planning commission review and P&D review as well as city council looks at the zoning, the plat and plan, the building elevations, landscaping plans and engineering plans.

Thanks -- please add any other information that would be helpful. With the questions coming in daily, your response as soon as possible would be more appreciated.
**Lynda D. Elmore**
**Alderman, Ward 10**
**City of Aurora**
**Phone: (630) 898-0403**
**Email: LDElmore@aol.com**

---

Get a sneak peek of the all-new AOL.com.

12/7/2007    002099

## Gemini's History

This Subject property is Lot 53 of the Fox Valley East Region II, Unit 52 - Oakhurst.

The property was annexed on July 27, 1973 by Ordinance Number O73-4326 pursuant to an Annexation Agreement approved by the City of Aurora on July 27, 1973 by Ordinance Number O73-4315.

A plan description was subsequently established on the property on July 27, 1973 with Resolution Number O73-4330 pursuant to said Annexation Agreement.

The Preliminary Plat for Fox Valley East Region II, Unit 52 – Oakhurst, Lot 53 was subdivided into Lots 1 & 2, which was approved by the City of Aurora as Resolution Number R97-203 on May 27, 1997.

The Final Plat for Fox Valley East Region II, Unit 52 – Oakhurst, Lot 53 subdivided this parcel into Lots 1 & 2, which was approved by the City of Aurora as Resolution Number PDFNL 96-056 on December 12, 1996.

The Final Plat for this property was approved prior to the Preliminary Plat solely to allow the petitioner to convey Lot 1 to Hamilton Partners, who was pursuing plans for the Dominick's food store. However, as a condition on the Final Plat, prior to any Final Plan approval, a preliminary plat must be approved for this property.

Lot 1 (the Dominick's Site) was re-subdivided into 3 lots (Dominick Lot, the Blockbuster Lot, and West Suburban Bank Lot), which was approved on April 24, 1997, by Resolution PDFNL97-048.

Lot 2 (the future Gemini Site) was re-subdivided into 2 lots (Vacant Lot at the Southwest corner of New York Street/Oakhurst Drive and future Gemini Lot) which was approved on May 16, 2002, by Resolution PDFNL02.027

There were two Development Service Team Meeting on this property, which were on January 5, 2006 and April 5, 2006.

Gemini Office Development submitted the final plan on August 1, 2006.  The City approved the final plan on November 16, 2006 by Resolution PDFNL06.056.

## Wiet, William

| | |
|---|---|
| **From:** | Phifer, Stephane |
| **Sent:** | Tuesday, August 28, 2007 6:13 PM |
| **To:** | Ergo, Carie Anne; Sieben, Ed; Wiet, William; Weingartz, Alayne |
| **Subject:** | RE: Planned Parenthood Site |

Hi Carie,

Here you go.

--Please Let Me Know If You Have Any Questions

Stephane A. Phifer AICP, Planning Director
City of Aurora Planning Division
1 South Broadway
Aurora, Illinois 60507
p (630) 844-3614
f (630) 844-3638
DST (630)906-4081
SPhifer@aurora-il.org

2006.390
evelopment Descripti

    -----Original Message-----

| | |
|---|---|
| **From:** | Ergo, Carie Anne |
| **Sent:** | Tuesday, August 28, 2007 5:28 PM |
| **To:** | Phifer, Stephane; Sieben, Ed |
| **Subject:** | Planned Parenthood Site |

Can I please get an updated timeline by 10 a.m. tomorrow?

CAE

Carie Anne Ergo
Public Information Officer
City of Aurora
44 E. Downer Place
Aurora, IL 60507
Office: 630-844-3612
Mobile: 630-774-0598

002101

**NA20/3-06.390-FPN - GEMINI OFFICE DEVELOPMENT - FINAL PLAN ON 3.24 ACRES FOR A 21,750 SQ FT MEDICAL OFFICE BLDG ON LOT 2 OF THE PDA RESUBDIVISION LOCATED NEAR THE SWC OAKHURST AND NEW YORK (Ward 10- JR/JHS)**

Parcel Number ............................07-20-302-081

Size ...............................................3.24 acres

Street Frontage ............................416 feet, along N. Oakhurst Drive

Current Zoning ............................PDD Planned Development District

Contiguous Zoning....................North: PDD (S) Planned Development District
                                    South: PDD Planned Development District
                                    East:   PDD Planned Development District
                                    West:  PDD Planned Development District

Contiguous Land Uses..............North: Vacant
                                    South: Residential
                                    East:   Residential
                                    West:  Commercial

Comp Plan Designation.............Commercial

## CHARACTER OF THE AREA

The Subject Property is located near the SWC of Oakhurst Drive and New York Street and at the time of Final Plan approval was utilized as Vacant Land. The property to the north is currently vacant, but is going to be developed as a gas station with car wash. To the south is a residential townhome development. East of the subject property is a residential apartment development. Adjacent to the property on the west side the land is used as a Dominick's.

## DEVELOPMENT PROPOSAL

The GEMINI OFFICE DEVELOPMENT proposed a Final Plan on 3.24 acres for a 21,750 square foot medical office building, on Lot 2 of the PDA Resubdivision of Fox Valley East Region II Unit No. 52 – Oakhurst 1st Resubdivision, located near the SWC of Oakhurst Drive and New York Street. The proposal consisted of a medical office building and 71 parking spaces. The site is proposed to be landscaped pursuant to our current standards including some additional landscaping to the existing berm to screen the adjacent townhome development to the south. The stormwater detention for the site has been provided in the stormwater facility directly to the west of the proposed building.

002102

## HISTORY
The Subject Property is legally known as Lot 2 of the PDA Resubdivision of Fox Valley East Region II Unit No. 52 – Oakhurst 1st Resubdivision approved by the City of Aurora as Resolution Number PDFNL02-027 on May 16, 2002.

The property was annexed on July 27, 1973 by Ordinance Number O73-4326 pursuant to an Annexation Agreement approved by the City of Aurora on July 27, 1973 by Ordinance Number O73-4315. An Amendment and Restatement of the Principal Annexation Agreement O93-123 approved on December 7, 1993. There were public hearings required for both the 1973 and the 1993 Annexation Agreement actions. A Preliminary Plat for the property was approved by the City Council on May 27, 1997 by Resolution Number R97-203.

## PETITION DATES
The Final Plan petition was filed on July 27, 2006 and referred by the City Council to the Planning Division on August 1, 2006.

The petition was reviewed as to the substantial conformance with the with the Plan Description zoning regulations including but not limited to Section 12.2-1.34 permitting Offices, business and professional, including medical clinics, and Section 10.6-10 providing a schedule of parking for medical or dental clinics being three (3) parking spaces per doctor engaged at clinic, plus one space for each two (2) regular employees including nurses.

The petition was voted out of Planning Council on October 24, 2006, and the Planning Commission made a recommendation on the petition on November 1, 2006.

The Planning and Development Committee approved the Final Plan petition on November 16, 2006 with PDFNL06.056.

**Key Dates:**
Petition Filed: 7/27/2006
City Council Referral: 8/1/2006
Staff Review Memos Send: 9/6/2006 and 10/4/2006
Planning Council Vote: 10/24/2006
Planning Summary: 10/27/2006
Staff Report: 10/27/2006
Planning Commission: 11/01/2006
Planning and Development Committee: 11/16/2006
Appeal Sheet Filed: 11/17/2006
Appeal Period Complete: 11/21/2006

002103