| | |
|---|---|
| YARD, CORNER: | See yard, exterior side. |
| YARD, EXTERIOR: | A front, exterior side or exterior rear yard. |
| YARD, EXTERIOR REAR: | A rear yard on a through lot abutting a public street right-of-way. |
| YARD, EXTERIOR SIDE: | The area lying between the exterior lot line and the nearest line or lines of the principal building, and extending from the front yard (or from the front lot line, if there is no front yard) to the rear yard. |
| YARD, FRONT: | A yard extending across the full width of the zoning lot and lying between the front line of the lot and the line or lines of the principal building. |
| YARD, INTERIOR: | An interior side or interior rear yard. |
| YARD, INTERIOR REAR: | A rear yard abutting any use except a public street right-of-way. |
| YARD, INTERIOR SIDE: | The area lying between the interior lot line and the line or lines of the principal building, and extending from the front yard (or from the front lot line, if there is no front yard) to the rear yard. |
| YARD, REAR: | A yard extending across the full width of the zoning lot and lying between the rear line of the lot and the line or lines of the principal building. |
| YARD, RIVER: | The area lying between the setback line and the Fox River retaining wall, if such exists, or the mean watermark, as determined by the city engineer. The setback shall be measured horizontally. The purpose of such yard shall be to beautify the riverbank, to provide for pedestrian enjoyment, circulation and access among various businesses and activities. Within such yards pedestrian walkways, bicycle paths, pedestrian plazas and landscaping are permitted. Buildings, storage of materials or equipment, or vehicular parking, accessways or maneuvering areas shall not be permitted in the river yard. |
| YARD, SIDE: | That part of the yard lying between the line or lines of the principal building and a side lot line, and extending from the front yard (or from the front lot line, if there is no front yard) to the rear yard. |
| ZONING ADMINISTRATOR: | Such officer as may be appointed by the city council for the purpose of administering and enforcing this ordinance. |
| ZONING BOARD: | The Aurora zoning board of appeals. |
| ZONING LOT: | A plot of ground, made up of one (1) or more parcels that is or may be occupied by a use, building or buildings including the open spaces required by this ordinance. |

ZONING MAPS:    The map or maps incorporated into this ordinance as a part hereof.

## SECTION 4. USE REGULATIONS REGULATIONS

4.1. Use Districts

| ESTABLISHMENT OF ZONE DISTRICTS | |
|---|---|
| In order to carry out the purposes and provisions of this ordinance, the City of Aurora, Illinois is hereby divided into the following districts: | |
| ABBREVIATION | DISTRICT NAME |
| **PARK/OPEN SPACE DISTRICT** | |
| P | Park/Open Space |
| **RESIDENTIAL DISTRICTS** | |
| E | One-Family Dwelling District |
| R-1 | One-Family Dwelling District |
| R-2 | One-Family Dwelling District |
| R-3 | One-Family Dwelling District |
| R-4 | Two-Family Dwelling District |
| R-4A | Two-Family Dwelling District |
| R-5 | Multiple-Family Dwelling District |
| R-5A | Midrise Multiple-Family Dwelling District |
| **BUSINESS DISTRICTS** | |
| B-1 | Business District Local Retail |
| B-2 | Business District General Retail |
| B-3 | Services and Wholesale District |
| B-B | Business-Boulevard District |
| **MANUFACTURING DISTRICTS** | |
| M-1 | Manufacturing District Limited |
| M-2 | Manufacturing District General |
| **OTHER DISTRICTS** | |
| ORI | Office, Research and Industrial |
| R-D | Research & Development District |
| DC | Downtown Core |
| F | Downtown Fridge |
| O | Office |
| PDD | Planned Development District |

4.2. Permitted Uses

4.2-1. Church standards.

4.2-1.1. All churches shall comply with all applicable building and fire codes, and Aurora comprehensive plan.

4.2-1.2. Churches built or buildings newly occupied and used as churches on or after July 28, 1986, shall be regulated as follows:

A. Zoning districts. Churches shall be permitted in all districts.

B. Setbacks. All churches shall comply with the setback requirements of their applicable zoning classification, and shall be landscaped pursuant to applicable ordinance.

C. Green space. At least twenty-five (25) percent of that portion of the lot shall be landscaped and maintained with grass or other living ground cover, and shall be landscaped pursuant to applicable ordinance.

D. Lighting. Where parking lots, walkways and activity areas are lighted, such lighting shall be directed and shielded so as to reflect light away from abutting properties and public rights-of-way.

E. Location. Churches shall abut an arterial or major collector street, as shown on the City of Aurora comprehensive map.

F. Parking requirements. Churches shall provide parking spaces as required in section 10 of this ordinance and shall be landscaped pursuant to applicable ordinance. However, the zoning administrator may authorize the following variations from said requirements upon adequate evidence from the petitioner that such variations will not detract from the public health, safety and general welfare, and that the surrounding properties will not be negatively affected.

   i. Phased paving of parking lots. If such phasing is granted, the future paved portions shall be maintained in grass or other living ground cover. No gravel shall be permitted.

   ii. Reduction of parking requirements due to sharing abutting parking.

   iii. Transferring of some or all of the parking requirement off-site, if such off-site lot is within a reasonable distance of the church and adequate pedestrian walkways are provided.

G. Combining uses. If a church wishes to combine one (1) or more other uses permitted under this ordinance, including, but not limited to day schools, such uses shall be regulated by special use procedures under this subsection hereof and the Use Regulations Section, and the Administration Section.

H. Site plan review:

   i. Prior to approval of a building permit for any new church building or new church use in an existing building, the following plans and specifications shall be submitted to the zoning administrator for review:

      a. Dimensional plans, drawn to scale, including all proposed building locations, landscape materials, parking lots (with stalls, circulation, and landscaping), dimensional setbacks, stormwater retention facilities (if required), signs, and lighting (placement and shielding).

      b. Dimensions and size of the lot.

      c. Dimensioned plans, drawn to scale, showing the relation of the site to the major collector or arterial street.

      d. A legal description of the property.

      e. A location plan showing the uses and zoning of surrounding properties.

   ii. As soon as practicable, the zoning administrator and planning director shall present the site plan before the Aurora planning commission for public review.

   iii. Notice of such review shall be conducted pursuant to the Amendments Section hereof.

iv. The Aurora planning commission shall review the site plan for the sole purpose of determining that said plan is in compliance with the applicable zoning and plan standards. The Aurora planning commission shall submit its findings to the planning and development committee of the Aurora city council, which shall review it and determine whether the site plan is in compliance with said standards. Upon making a determination that said plans are in compliance with applicable standards, the planning and development committee shall report their findings to the zoning administrator, who shall forthwith issue a building permit. Appeals from denial of a site plan shall be in accordance with the Administration Section of this ordinance.

I. Shared facilities:

   i. More than one (1) congregation may use a church building.

   ii. For congregations that use schools, community centers and other public buildings, such building shall be located on a major collector or arterial street, and shall have at least one (1) paved parking space for each six (6) users of the building at the peak usage time.

4.2-1.3. If a developer wishes to vary the standards of this subsection hereof, such developer may request to use special use procedures under this subsection and sections 7 and 14.6. Nothing in this ordinance shall prevent such petitioners from using said special use procedures.

A. Variations may be granted upon a finding of compliance with the following standards:

   i. The resulting development will not be a detriment to surrounding property; and

   ii. The resulting development will not significantly increase noise in any residential area; and

   iii. The resulting development will not significantly increase traffic congestion in the subject neighborhood; and

   iv. The resulting development is consistent with the City of Aurora comprehensive plan and physical development policies.

B. Additional standards: The city council may in its discretion add to or increase the standards used to evaluate proposed special uses for churches herein. The objectives of such additional regulation may include prevention of nuisances; protection of abutting property; protection of neighborhood character.

4.2-1.4. Uses for temporary church structures, meetings or revivals shall be regulated as follows:

A. Uses for such activities shall require a permit.

B. Such permits shall be granted for no more than thirty (30) days for any one (1) location during any one (1) calendar year.

C. Uses for such activities shall be located on existing church-owned property or at locations that are on arterial or major collector streets.

D. Uses for such activities shall provide adequate off-street parking space for expected peak usage.

4.2-2. Community residence, family and group.

4.2-2.1. A family community residence shall be a permitted use in all residentially zoned districts and all residential portions of planned development districts. However, prior to occupancy, the family community residence operator shall first obtain an administrative occupancy permit as set forth in the Bulk Restrictions Section.

4.2-2.2. A group community residence shall be allowed in any residentially zoned district, and any residential portion of a planned development district, only upon issuance of a special use permit.

4.2-2.3. Spacing requirements:

A. No family community residence shall be located within a radius of one thousand three hundred twenty (1,320) feet from any other structure containing a family community residence, or a group community residence.

B. The distance set forth above shall be measured from the property line nearest the structure containing the existing residence to the property line nearest the structure to contain the proposed residence.

4.2-2.4. Family community residences shall become occupied only after the residence operator has first obtained an administrative occupancy permit from the zoning administrator authorizing the use of the dwelling unit as a family community residence.

A. The application for an administrative occupancy permit shall be in writing upon forms furnished by the zoning administrator. The application shall be under oath and shall state the following:

i. The date of the application;

ii. The name and address of the applicant, and if a corporation, the name and address of the registered agent and corporate officers, and if a partnership, the name and address of all partners, including limited partners;

iii. The proposed location of the residence;

iv. The number of residents to be housed in the residence;

v. The amount of gross floor area as defined in PM-404.2;

vi. The amount of square footage of bedroom space as defined in PM-404.2;

vii. The proposed date of occupancy by residents;

viii. The number of other persons that will reside within the residence, classified according to their respective job title;

ix. The number of other persons that will work at the residence, or provide support to the residents at the residence, classified according to their respective job titles.

B. The application shall be accompanied by:

i. Reliable evidence that the residence operator is licensed or similarly authorized by the State of Illinois to operate the proposed group home in the proposed location.

ii. Reliable evidence that the proposed residence complies with all applicable State of Illinois regulations.

C. The absence of such evidence shall constitute sufficient grounds to deny the administrative occupancy permit.

APPENDIX A ZONING                    31

D. No administrative occupancy permit shall be issued for a residence that fails to meet the distance requirement of the Bulk Restrictions Section.

E. No administrative occupancy permit shall be issued for a residence that fails to meet the square footage spacing requirements in PM-404.1, 404.2, and 404.3.

F. Upon receiving an application for an administrative occupancy permit, the zoning administrator shall process the application to determine if the proposed use complies with the standards set forth in this the Bulk Restrictions Section.

G. The zoning administrator shall recommend to the permittee that the permittee inform members of the surrounding neighborhood of the permittee's plans to establish a family community residence.

H. The holder of an administrative occupancy permit shall file with the zoning administrator a copy of each State of Illinois inspection report for the residence covered by the permit.

I. Upon renewal of its license or authorization from the State of Illinois, the permittee shall submit to the zoning administrator reliable evidence of such renewal.

J. The zoning administrator may revoke an administrative occupancy permit upon giving the permittee at least ten (10) days' written notice of the grounds for revocation and the opportunity for a public hearing before the zoning administrator at which time the operator may present evidence bearing on the question and cross-examine witnesses. The grounds for which an administrative occupancy permit may be revoked are:

i. The permit was obtained by fraudulent means, material misrepresentation or by submitting false information;

ii. The permittee is no longer licensed or authorized by the State of Illinois to operate a residence at the location specified in the permit;

iii. The permittee has unlawfully refused to permit an inspection of the home by an authorized official of the City of Aurora;

iv. The group home has been determined by an authorized official of the City of Aurora to be unsafe for human habitation.

v. The permittee has failed to file the necessary State of Illinois inspection reports.

K. Appeals from the decision of the Zoning Administrator concerning the revocation of an administrative occupancy permit shall be to the zoning board of appeals and shall follow the procedure outlined in the Administration Section.

L. An administrative occupancy permit is not transferable to any other person.

4.2-2.5. Family community residences that fail to meet all the requirements for an administrative occupancy permit, excepting said residences denied a required state license, shall require a special use permit prior to occupancy.

4.2-3. Telecommunications Facilities

4.2-3.1. Telecommunication facilities regulations.

A. All telecommunications facilities, towers and antennas shall be subject to the regulations contained in the Chapter 19 TELECOMMUNICATIONS AND

CABLE TELEVISION of the Aurora Code of Ordinances, except as specifically excluded therein.

4.3. Special Uses

4.3-1. Authority.

4.3-1.1. The city council of the City of Aurora shall have the authority to permit by ordinance the following uses of land or structures or both, subject to the conditions contained in the Administration Section.

A. Airport, landing field, or landing strip, in any use district subject to the Civil Aeronautics Administration certifying that a new or reoriented runway will not interfere with the flight pattern of any established airport, landing field or landing strip.

B. Arcades in the downtown core.

C. Areas for the dumping or disposal of trash or garbage; provided the landfill method is used.

D. Auditorium, stadium, arena, armory, gymnasium and other similar places for public events, in any B or M district.

E. Auto repair in the downtown core.

F. Auto and vehicle sales in the downtown core.

G. Automobile laundry, major, in any B-3 district; and automobile laundry, minor, in any B-2 district and in the downtown fringe district when such use is in conjunction to an automotive service station as an accessory use to and operated only during the regular business hours of an automotive service station.

H. Automatic service stations; in any B-2, B-3 or M district.

I. Auto parts and supplies retailers in the downtown fringe district.

J. Automotive service stations, auto repair, motorcycle repair, and battery and tire service stations in the downtown fringe district.

K. Financial institutions with a drive-through facility, when located at the intersection of two publicly dedicated streets (corner) under the following conditions:

i. When said intersection is designated as non-residential on only two of the four corners of the intersection of said two publicly dedicated streets (corner).

ii. When said intersection is designated as non residential on all four corners and contains one or more existing financial institutions with drive-through facilities located at the intersection of said two publicly dedicated streets (corner).

L. Financial institutions with a drive-through facility, when located within 1000' of an intersection of two publicly dedicated streets and

i. When said intersection is designated as non-residential on only two of the four corners of the intersection of said two publicly dedicated streets (corner) and contains one or more existing Financial institutions with a drive-through facilities located within 1000' of said intersection, as measured property line to property line.

APPENDIX A ZONING                    33

      ii. When said intersection is designated as non residential on all four corners and contains two or more existing Financial institutions with a drive-through facilities located within 1000' of said intersection, as measured property line to property line.

M. Battery and tire service stations in the downtown core.

N. Bus terminal, railroad passenger station, freight terminal, or any other public transportation terminal facilities, in any B or M use district.

O. Clinic or medical center, in any R district.

P. Cemeteries, crematoriums or mausoleums, in any R district.

Q. Community residence-family, in any residentially zoned district and any residential portion of a planned development district if the requirements of the Bulk Regulations are not complied with.

R. Community residence-group, in any residentially zoned district and any residential portion of a planned development district.

S. Dance halls in downtown fringe district.

T. Drive-in banks and other financial institutions in the downtown core.

U. Drive-in dining uses in the downtown fringe district.

V. Drive Through/ Drive In establishment, when located at the intersection of two publicly dedicated streets (corner), under the following conditions:

      i.  When said intersection is designated as non-residential on only two of the four corners of the intersection of said two publicly dedicated streets (corner).

      ii. When said intersection is designated as non-residential on all four corners and contains one or more existing Drive Through/ Drive In establishments located at the intersection of said two publicly dedicated streets (corner).

W. Drive Through/ Drive In establishment, when located within 1000' of an intersection of two publicly dedicated streets and

      i.  When said intersection is designated as non residential on only two of the four corners of the intersection of said two publicly dedicated streets (corner) and contains one or more existing Drive Through/Drive In establishments located within 1000' of said intersection, as measured property line to property line.

      ii. When said intersection is designated as non residential on all four corners and contains two or more existing Drive Through/Drive In establishments located within 1000' of said intersection, as measured property line to property line.

X. Dwelling units on the first floor of a building in the downtown fringe district.

Y. Extraction of gravel, sand or other raw materials, for commercial purposes, other than construction on the site, in any B or M district, provided the area is not less than ten (10) acres.

Z. Flea market in any B or M district.

AA. Garden supply and feed stores in the downtown core.

BB. Golf courses, public or private, in any district.

CC. Halfway house-corrections, work release center or comparable facilities as defined by Illinois State Statutes, in R-5 or R-5A districts.

DD. Halfway house-therapy, in any use district.

EE. Hospitals or sanitariums, public or private, in any use district other than an M district.

FF. Hotels, hometels and motels, in the downtown fringe district.

GG. Hotels and motels with fewer than fifty (50) guest rooms, in the B-2, B-3, BB, M-1, M-2, DC and ORI districts, that are newly established or expanded after the date of this ordinance.

HH. Institutions for the care of the insane or feeble minded, public or private, in any R-4, R-5 or B districts, provided that when located in a business district, such uses shall be established above the first floor when located in a building constructed for a business use. A building originally constructed for residential use may be used in whole or in part.

II. Intertrack wagering facilities in any DC, DF, B-2, B-3, M-1, M-2 or ORI district; however, not located within eight hundred (800) feet of a church, grade school, high school, hospital, nursing home property or any single-family detached residential zoning district.

JJ. Large scale developments in the downtown core.

KK. Laundromats in the downtown core.

LL. Laundromats in the downtown fringe district.

MM. Municipal or privately owned recreation building or community center, when not operated for pecuniary profit, in any use district.

NN. Nursery school or day nursery, in any R or B-1 district.

OO. Off-street parking areas noncommercial, in any R district, provided there is a need for this facility and that no appropriate site is available in nearby business or manufacturing districts.

PP. Pawnshops in the downtown core.

QQ. Off-street parking areas within the downtown core constructed after the effective date of this the Downtown Core District, located within front or side yards, or as the sole use of a property.

RR. Outdoor recreation places, such as skating rinks, archery ranges, golf practicing ranges, miniature golf courses, or other similar places of amusement or entertainment in the downtown fringe district.

SS. Pawnshops in the downtown fringe district.

TT. Penal or correctional institutions, in any B-3 or M-1 district.

UU. Planned developments, as defined in the Rules and Definitions Section.

VV. Police station or fire station, in any use district.

WW. Public buildings including art gallery, post office, library, museum or similar structures, in any use district.

XX. Public or private park or playground, in any use district.

YY. Public or privately owned and operated fairgrounds, permanent carnivals, "kiddie parks," or other similar amusement centers, in any B-3 or M district.

ZZ. Public utility facilities, i.e., filtration plant, water reservoir or pumping station, heat or power plant, transformer station and other similar facilities, in any use district other than the B-3 or M districts where such facilities are permissive uses.

AAA. Radio and television transmitting or aerial or antenna support structures (commercial) and other commercial electronic equipment requiring outdoor structures, but not including aerial or antenna support structures used for the transmission of private messages or private receiving aerial or antenna support structures in any B or M district.

BBB. Railroad right-of-way, in any use district.

CCC. Recreation places, including bowling alley, dance hall, gymnasium, skating rink, archery range, golf practice range, miniature golf course or other similar places of amusement or entertainment when operated for pecuniary profit in the B-3, BB, M-1 and M-2 districts.

DDD. Rest homes and nursing homes, in any R-4, R-5 or B districts, provided that when located in a business district, such uses shall be established above the first floor when located in a building constructed for a business use. A building originally constructed for residential use may be used in whole or part.

EEE. Schools, elementary, high and college, public or private, in any R district, but not including trade or commercial schools operated for profit, which must be in any B or M district, except as modified in the Downtown Core District.

FFF. Social service agencies, charitable organizations, health-related facilities, meeting halls and similar uses when not operated for pecuniary profit in any use district.

GGG. Taxicab and bus waiting rooms in the downtown core.

HHH. Telephone exchange, antenna towers, and other outdoor equipment essential to the operation of the exchange, in any R-4 or R-5 district in addition to the B and M districts where such facilities are permissive uses.

III. Transportation uses, such as taxicab and bus waiting rooms, auto rental agencies wholly within a building, and public parking garages for storage of private passenger autos and commercial vehicles under one-and-one-half-ton capacity, in the downtown fringe district.

JJJ. Truck, motorcycle and boat sales, service shops and major automotive repair, as defined in section 3.2, but only when confined within an enclosed structure, in any B-3 or M district, (other than as provided in the M-1 Manufacturing District, Limited Section).

KKK. Undertaking establishments in the downtown core.

LLL. Used auto and vehicle sales in the downtown fringe district, B-3, M-1, and M-2 districts.

MMM. Used clothing stores in the downtown core.

NNN. Used clothing stores in the downtown fringe district.

OOO. One (1) or more buildings to be redeveloped for use or uses not permitted within the underlying zoning district; provided the proposed use is of a nature that may give rise to problems with respect to impact upon neighboring property and public facilities in any use district. Buildings constructed originally as single-family and two-family dwellings shall not be considered for development under this provision.

## 4.4. Accessory Buildings And Uses

### 4.4-1. [Applicability of principal building regulations.]

4.4-1.1. Where an accessory building is structurally attached to a principal building, it shall be subject to, and must conform to, all regulations of this ordinance applicable to the principal building.

### 4.4-2. [Proximity to lot lines.]

4.4-2.1. An accessory building may not be located nearer to any interior lot line than that permitted for the principal building, when any part of the accessory building is on a line with the principal building, extended. However, when an accessory building is located in the rear yard, it may then be located within three (3) feet of the interior lot line, but not nearer than five (5) feet of the rear lot line.

When an accessory building has been constructed on a slab or foundation, and demolition occurs for whatever reason, the accessory building may be re-established at its previous location without the necessity of a variation provided that an application for building permit is made no later than six (6) months after demolition.

### 4.4-3. [Erection prior to that of principal building.]

4.4-3.1. An accessory building may be erected prior to the establishment or construction of the principal building to which it is accessory, or to which it is intended to be accessory, providing the principal building shall be fully completed within two (2) years after the erection of the accessory building, and providing further, that the accessory building shall not be used for residential purposes, except for the housing (after the completion of the principal building) of domestic help, or temporary housing of guests, per the Rules and Definitions Section and the Bulk Restrictions Section.

### 4.4-4. Proximity to adjacent lot

4.4-4.1. No accessory building shall be located on a reversed corner lot beyond the front yard required on the adjacent lot to the rear, nor be located nearer than five (5) feet to the side lot line of the adjacent lot.

### 4.4-5. Federally licensed amateur radio station, citizens band radio operator and receive-only antenna structures in residential districts.

4.4-5.1. The provisions of the R-1 One Family Dwelling District shall apply in determining height, yard areas and setbacks hereunder. Such structures shall require a

APPENDIX A ZONING                37

permit and be erected in accordance with the provisions of the Aurora Building Code.

4.4-5.2. The permit application for the proposed structure shall include the following items:

A. A location plan, drawn to scale.

B. Manufacturer's specifications and details of footings, guys and braces.

C. A copy of the applicant's homeowner's or renter's insurance policy.

4.4-6. Exterior pay telephone structures in office, business, manufacturing, research and development and office, research and light industrial districts.

4.4-6.1. General provisions. The provisions of the Bulk Restrictions Section and the setback requirements of each district shall apply in determining location. Such structures shall not be located within required exterior yards. Such structures shall require a building permit and be established in accordance with the provisions of the Aurora Building Code.

4.4-6.2. The permit application for the proposed structure shall include the following items:

A. A plat of survey or location plan, drawn to scale, showing the proposed structure location.

B. Specifications and details of footings.

C. Number. Each lot developed for business purposes under the same ownership and control shall be permitted to have no more than one (1) exterior pay telephone structure. The exception is for places of assembly such as public parking lots with two hundred (200) or more parking spaces, auditoriums, stadiums and other facilities designed for public assembly having a capacity of more than five hundred (500) persons which may be entitled to additional exterior pay telephone structures. Additional exterior pay telephone structures may be established on the basis of one (1) additional structure for each portion of the parking lot containing two hundred (200) or more parking spaces.

D. Function. All exterior pay telephone structures shall be restricted to making outgoing calls.

E. Retroactivity. All property with existing exterior pay telephone structures that do not comply with the setback, location, function and number requirements as contained herein shall be provided with a time frame of sixty (60) days in which to comply with said requirements after proper service of notice. Exterior pay telephone structures that are relocated shall require a permit.

F. Prohibition for residences. No property developed solely for residential purposes shall be permitted to have an exterior pay telephone structure.

G. Property zoned DC Downtown Core and DF Downtown Fringe. Exterior pay telephone structures within these districts may be established only after the issuance of a certificate of appropriateness at designated areas as determined to be appropriate by the Foxwalk Design Review Committee.

H. Public right-of-way. No pay telephone structure shall be located within any public right-of-way, which includes sidewalks and parkways, unless the appropriate approvals are obtained form the Public Works and Public Property Departments.

I. Variations. Application for variation from the provisions of the Use Regulations Section may be made pursuant to the Administration Section.

## SECTION 5. BULK RESTRICTIONS

5.1. Building, Dwelling & Structure Standards

5.2. Floor Area Ratio

5.3. Height

5.3-1. Building height, bulk and lot coverage.

5.3-1.1. No building shall be erected, reconstructed, relocated or structurally altered so as to have a greater height or bulk, a higher percentage of lot coverage or smaller open space about it than permissible under the limitations set forth herein for the district in which such building is located, except that parapet walls, chimneys, cooling towers, elevators, bulkheads, fire towers, stacks, stage towers or scenery lofts, and necessary mechanical appurtenances shall be permitted to exceed the maximum height provision when erected in accordance with all other ordinances of the City of Aurora.

5.3-1.2. No space allocated to a building or dwelling group for the purpose of complying with the side, rear or front yard, or court, or other open space, or lot area requirements of this ordinance shall thereafter, by reason of a change in ownership or for any other reason, be used to satisfy the yard, court, open space or lot area requirements of any other building or dwelling group.

5.3-1.3. An open terrace, but not including a roofed-over porch or terrace, may occupy a front yard, provided the unoccupied portion of the front yard has a depth of not less than fifteen (15) feet. A one-story bay window may project into a front yard not more than three (3) feet. Overhanging eaves, including gutters, may project over the minimum required side yard not more than eighteen (18) inches.

5.3-1.4. No usable open space or off-street parking space or loading space existing or provided hereafter for any building shall be reduced below the minimum requirements hereinafter set forth for such usable open space, parking space or loading space, nor further reduced if already less than said minimum requirements.

5.3-1.5. The provisions of the R-1 One Family Dwelling District shall apply in determining federally licensed amateur radio station and citizens band radio operator and receive-only antenna structure height in residential districts.

5.4. Lot Area

5.5. Lot Coverage

5.6. Monotony Standards

5.7. Nonconformity

5.7-1. Purpose and intent.

5.7-1.1. The Aurora Zoning Ordinance establishes separate districts, each of which is an appropriate area for the location of the zoning lot configurations, structures, and uses that are permitted in that district. Nonconforming zoning lots, structures, and uses may be created when the application of a specific zoning district to a property changes, or when a zoning regulation otherwise changes. As a result of such changes, then-existing zoning lot configurations, structures, or uses may no longer be allowed or are otherwise limited. It is necessary and consistent with the establishment of those zoning districts that all zoning lot configurations, structures, and uses that are nonconforming therewith be strictly regulated and properly controlled.

It is the purpose of this section to provide for the regulation of nonconforming zoning lots, structures, and uses in the various zoning districts, recognizing that a zoning ordinance change is not enacted to require all nonconforming situations to be immediately brought into conformance, but rather to guide them and future zoning lot configurations, structures, and uses in a new direction consistent with current city policy. It is the intent of this section 6 to protect the character of each zoning district by reducing the negative impacts from nonconforming situations, to assure that revised zoning regulations will not cause inappropriate or unnecessary burdens on individual property, and to permit under limited conditions, but not encourage the survival of these nonconformities by specifying those circumstances under which they shall be allowed to continue.

5.7-2. Applicability.

5.7-2.1. The provisions of this section shall apply to all zoning districts when any of the following circumstances exist:

5.7-2.2. Nonconforming zoning lot. A zoning lot, as defined in the Rules and Definitions Section, made up of one (1) or more parcels configured such that it does not comply with the minimum required lot width or area of the zoning district for the zoning lot.

5.7-2.3. Nonconforming structure. A structure that does not comply with the zoning provisions then currently applicable to the zoning lot on which said structure is located, or a structure originally designed for a use not permitted within the zoning district for the zoning lot, with such determination being made by the zoning administrator.

5.7-2.4. Nonconforming use. A use on a zoning lot that does not comply with the zoning district provisions then currently applicable to the zoning lot on which said use is located, including a use not allowed in the zoning district for such zoning lot.

5.7-3. Continuance of a nonconforming zoning lot, structure, or use.

5.7-3.1. Any lawfully established zoning lot, structure, or use that existed prior to the effective date of the Aurora Zoning Ordinance, or of applicable amendments hereto and currently subject to one (1) or more of the circumstances described in the Applicability subsection of this Nonconformity Section, shall be deemed legal nonconforming and may be continued subject to the provisions of this section.

5.7-4. Permitted changes to legal nonconforming zoning lots, structures and uses.

5.7-4.1. Changes to legal nonconforming zoning lots, structures, and uses permitted to continue pursuant to this section shall be permitted in accordance with the following sections, with the most restrictive subsection being enforced in case of multiple

applicability. (Legal nonconforming zoning lot and the structures thereon section contains the least restrictive provisions, Legal nonconforming structure section contains more restrictive provisions, and Legal nonconforming uses and the structures related thereto section contains the most restrictive provisions.)

5.7-4.2. Legal nonconforming zoning lot and the structures thereon.

A. Conformance. Any legal nonconforming zoning lot may obtain conforming status pursuant to the following:

 i. A zoning lot may be modified, altered or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance.

 ii. A zoning lot within the R-5 district may be issued a Mitigation Certificate pursuant to the Bulk Restrictions Section hereof.

B. Repair and maintenance. Normal and customary repair and maintenance of a structure located on a legal nonconforming zoning lot is permitted.

C. Alterations. The following shall be the only circumstances where an alteration is allowed for a structure on a legal nonconforming zoning lot:

 i. When the alteration is otherwise required by law.

 ii. When the alteration provides an exterior improvement to the appearance of the structure such as but not limited to a new storefront.

 iii. When a structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

 iv. When a structure containing a church use is internally altered in a way to improve its function.

 v. When such a structure containing a use that complies with the zoning district provisions then currently applicable to that zoning lot is internally altered in a way that accommodates said use.

D. Additions and enlargements. A structure located on a legal nonconforming zoning lot may be added onto, enlarged or extended only if the entire structure is thereafter devoted to a conforming use and said addition, enlargement or extension conforms to all of the then current regulations of the zoning district in which it is located.

E. Use of a vacant legal nonconforming zoning lot. Any vacant zoning lot made up of one (1) or more parcels that does not meet the minimum lot width or area according to the then current Aurora Zoning Ordinance, may be utilized for an otherwise permitted use, provided that both the lot width and area are not less than eighty (80) percent of the minimum width and area required.

F. Reconstruction of a damaged or destroyed structure.

 i. A structure located on a legal nonconforming zoning lot which is damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Bulk Restrictions Section, may be reconstructed and the use of said structure which existed at the time of such partial destruction may be continued, provided that the restoration or repair of the structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending

insurance settlements, or other lawful considerations. The Aurora City Council may grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

ii. A structure located on a legal nonconforming zoning lot which is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Bulk Restrictions Section, may be reconstructed and the use of said structure which existed at the time of such destruction may be continued, provided that the width and area of said zoning lot are each not less than eighty (80) percent of the minimum required width and area.

iii. A structure in the form of a single-family detached dwelling upon a legal nonconforming zoning lot located within a residential zoning district, that is damaged or destroyed partially or in totality, may only be rebuilt in conformance with the structure's dimensions and height as existed prior to such damage or destruction.

5.7-4.3. Legal nonconforming structure.

A. Conformance. Any legal nonconforming structure may be modified, altered, rebuilt or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance either partially or in totality.

B. Repair and maintenance. Normal and customary repair and maintenance of a legal nonconforming structure is permitted.

C. Alterations. The following shall be the only conditions where an alteration is allowed for a legal nonconforming structure:

D. When the alteration is otherwise required by law.

E. When the alteration provides an exterior improvement to the appearance of a legal nonconforming structure such as but not limited to a new storefront.

F. When a legal nonconforming structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

G. When a legal nonconforming structure containing a church use is internally altered in a way to improve its function.

H. When such a legal nonconforming structure containing a use that complies with the zoning district provisions then currently applicable to that zoning lot is internally altered in a way that accommodates said use.

I. When the alteration does not involve in any way the exterior portion of the structure that is the cause for such structure having legal nonconforming status.

5.7-4.4. Additions and enlargements. A legal nonconforming structure may be added onto, enlarged or extended only if the entire structure is thereafter devoted to a conforming use and said addition, enlargement or extension conforms to all the then current regulations of the zoning district in which it is located.

5.7-4.5. Use of a legal nonconforming structure. A legal nonconforming structure shall only be occupied by a use that conforms to all then current regulations of the zoning district in which it is located, or by a legal nonconforming use.

5.7-4.6. Reconstruction of a damaged or destroyed legal nonconforming structure.

APPENDIX A ZONING     42

A. A legal nonconforming structure damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, may be reconstructed and the use of said structure which existed at the time of such partial destruction may be continued, provided that the restoration or repair of the legal nonconforming structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending insurance settlements, or other lawful considerations. The Aurora City Council may grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

B. Notwithstanding the previous regulation, a legal nonconforming structure in the form of a single-family detached dwelling, located within a residential zoning district, that is damaged or destroyed partially or in totality, may only be rebuilt in conformance with the structure's dimensions and height as it existed prior to such damage or destruction, provided that the restoration or repair of the legal nonconforming structure is started within six (6) months of the destruction date and diligently pursued to completion within two (2) years of the destruction date. A written extension of these time limits may be granted by the Zoning Administrator for up to one (1) year to allow for pending insurance settlements, or other lawful considerations. The Aurora City Council may grant further written extensions in addition to the one (1) year granted by the Zoning Administrator.

5.7-4.7. Legal nonconforming uses and the structures related thereto.

A. Conformance. Any legal nonconforming use may be modified, altered or otherwise changed to be brought into conformance with the provisions of this Aurora Zoning Ordinance. A legal nonconforming use may be changed to a use of the same, or of a more restricted character, but may not thereafter be changed to any less restricted use.

B. Repair and maintenance. Normal and customary repair and maintenance of a structure is permitted.

C. Alterations. The following shall be the only conditions where an alteration is allowed for a structure:

i. When the alteration is otherwise required by law.

ii. When the alteration provides an exterior improvement to the appearance of a structure such as but not limited to a new storefront.

iii. When a structure containing residential uses is internally altered in a way to improve livability, provided it does not increase the number of dwelling units.

iv. When a structure containing a church use is internally altered in a way to improve its function.

D. Additions and enlargements. A structure wholly or partially occupied by a legal nonconforming use is not allowed to be expanded and/or enlarged in any way.

E. Reconstruction of a damaged or destroyed structure involving a legal nonconforming use. A structure damaged or destroyed by any means to the

extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section may only be rebuilt in conformance with applicable, then current zoning district provisions.

5.7-5. Previously issued permits.

5.7-5.1. Any structure for which a permit has been lawfully issued prior to the effective date of this Aurora Zoning Ordinance or of amendments hereto, may be completed in accordance with the approved plans for which said permit was issued provided construction is started within six (6) months after the date of the permit issuance and diligently pursued to completion within two (2) years from such date. Such structure shall thereafter be deemed a legal nonconforming structure, if it is then subject to one (1) or more of the following circumstances described in the Applicability subsection of the Nonconformity Section.

5.7-6. Discontinuance of legal nonconforming status for zoning lots, structures, or uses.

5.7-6.1. Any legal nonconforming zoning lot, structure, or use that has been brought into conformance with the zoning district provisions then currently applicable to the zoning lot, shall not thereafter be classified as legal nonconforming. Said legal nonconforming status shall also be terminated in the following circumstances, and such properties shall thereafter fully comply with the zoning district provisions then currently applicable to the zoning lot:

5.7-6.2. Legal nonconforming zoning lot.

A. When any zoning lot made up of one (1) or more parcels owned or controlled by the same individual or group of individuals and taxed as one (1) tax parcel, conforms to either the minimum lot width or area required for that zoning lot, or both, said parcels that make up the zoning lot shall not qualify separately as legal nonconforming zoning lots.

B. When a structure on a legal nonconforming zoning lot is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, and either the width or area of said zoning lot is less than eighty (80) percent of the minimum width and area required, except as provided in the Reconstruction of a damaged or destroyed structure subsection provision (iii) of this Nonconformity Section.

5.7-6.3. Legal nonconforming structure.

A. When a structure is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, except as provided in Reconstruction of a damaged or destroyed structure subsection provision (ii) of this Nonconformity Section.

B. When a structure is damaged or destroyed by any means to the extent of less than fifty (50) percent of its replacement value pursuant to the Evaluation of a damaged or destroyed structure subsection of this Nonconformity Section, but has not met the timing requirements of the Reconstruction of a damaged or destroyed structure subsection provision (i) of this Nonconformity Section.

C. When a legal nonconforming structure in the form of a single-family detached dwelling, located within a residential zoning district, is damaged or destroyed partially or in totality, and has not met the timing requirements of the Reconstruction of a damaged or destroyed structure subsection provision (ii) of this Nonconformity Section.

5.7-6.4. Legal nonconforming use.

A. When a legal nonconforming use has been discontinued for a period of six (6) consecutive months, and said use occupied a structure originally built in such a way as to be specifically designed for a residential use, with such determination being made by the zoning administrator.

B. When a legal nonconforming use has been discontinued for a period of fifteen (15) consecutive months, where said use occupies a structure originally built in such a way as to be specifically designed for a nonresidential use, with such determination being made by the zoning administrator.

C. When a legal nonconforming use has been discontinued for a period of three (3) consecutive months, where said use does not primarily involve an on-site enclosed structure, with such determination being made by the zoning administrator.

D. When there is evident to the city a clear intent on the part of the property or business owner to abandon a legal nonconforming use, with such determination being made by the zoning administrator.

5.7-7. Evaluation of a damaged or destroyed structure.

5.7-7.1. In the event that a structure is damaged or destroyed by any means, said structure shall be evaluated by the Zoning Administrator for purposes of estimating the extent of said damage or destruction. Said evaluation shall estimate the replacement value of said structure and compare it to the estimated value of the structure just prior to its damage or destruction. The Zoning Administrator shall set forth in written form the percentage of damage within the evaluation, which shall be made available to the owner of said structure or representative thereof. Said evaluation may be appealed by the owner of said structure to the Zoning Board of Appeals as set forth in the Administration Section for appeals.

5.7-8. Unauthorized zoning lot, structure, or use.

5.7-8.1. Any zoning lot, structure, or use not authorized by the provisions of this Aurora Zoning Ordinance and which does not qualify as legal nonconforming pursuant to the Continuance of a nonconforming zoning lot, structure, or use subsection of this Nonconformity Section, shall be discontinued and not reestablished.

5.7-9. Mitigation Certificate.

5.7-9.1. A property owner may obtain conforming status for their property through the issuance of a Mitigation Certificate pursuant to the following:

5.7-9.2. Qualifications. A property shall be eligible for a Mitigation Certificate if all of the following conditions are met or exist:

A. The zoning lot is zoned R-5.

B. The zoning lot is legal nonconforming.

C. The owner/manager of said zoning lot has maintained a Waiver of License as defined by the Aurora Property Maintenance Code for a minimum period of four (4) consecutive years just prior to the application for a Mitigation Certificate, and said owner/manager agrees to maintain said waiver as a condition of the granting of a Mitigation Certificate.

D. The owner/manager of said zoning lot has maintained a level of Police Incidents (as defined by the Rules and Definitions Section of this Aurora Zoning Ordinance) for the subject property no higher than an amount which is ten (10) percent of the number of units, for a minimum period of four (4) consecutive years just prior to the application for a Mitigation Certificate, and said owner/manager agrees to maintain said level as a condition of the granting of a Mitigation Certificate.

E. The owner of said zoning lot has entered into an Enforcement Agreement with the City of Aurora for the subject property in lieu of a Property Management Agreement as defined within the R-5 Multiple Family Dwelling District Section of this Aurora Zoning Ordinance (AZO), which Enforcement Agreement states that Owner agrees to perform at then current standards with regard to inspections and police incidents under the Bulk Restrictions Section of the AZO. In the event that the performance of Owner falls below current standards for police incidents and inspection waivers as provided by the AZO, Owner agrees to enter into and to abide by a Property Management Agreement with the City for the purpose of correcting the out-of-compliance status. The Property Management Agreement may specify management standards and practices as well as the criteria by which these standards shall apply to the subject property, including qualification criteria, occupancy standards, causes for eviction, property maintenance and police activity, all as provided under the R-5 Multiple Family Dwelling District Section.

5.7-9.3. Certificate Issuance. A property owner shall apply to the Zoning Administrator for a Mitigation Certificate, providing evidence indicating compliance with the Qualifications subsection of this Mitigation Certificate Section hereof, along with an accurate survey and legal description of the subject property. The Zoning Administrator shall determine if the subject property is eligible for a Mitigation Certificate, and shall issue it with all supportive documentation attached thereto. Said certificate shall be executed by the Zoning Administrator and subject property owner, and shall be recorded on the subject property by the Zoning Administrator.

5.7-9.4. Zoning Violation. All executed and recorded Mitigation Certificates shall be binding on the subject property owner, and said owner is required to abide by all conditions under which said certificate was issued. In the event that the Zoning Administrator determines that any provision of said certificate, or the subject properties eligibility, is no longer being complied with, said property owner shall be subject to enforcement thereof pursuant to the Penalties Section of this Aurora Zoning Ordinance.

5.8. Obstructions

5.8-1. Permitted obstructions in required yards.

5.8-1.1. The following shall not be considered to be obstructions when located in the required yards specified:

APPENDIX A ZONING          46

A. In all yards, open terraces not over four (4) feet above the average level of the adjoining ground but not including a permanently roofed-over terrace or porch; awnings and canopies; steps, four (4) feet or less above grade, which are necessary for access to a permitted building, or for access to a zoning lot from a street or alley; chimneys projecting eighteen (18) inches or less into the yard; recreational and laundry-drying equipment; arbors and trellises; flag poles; fences and walls not exceeding five (5) feet in height above natural grade level; and open-type fences exceeding five (5) feet in height, provided that visibility at right angles to any surface of such fence may not be reduced by more than twenty (20) percent.

B. In front yards, one-story bay windows projecting three (3) feet or less into the yard; and overhanging eaves and gutters projecting three (3) feet or less into the yard.

C. In rear yards, enclosed, attached, or detached off-street parking spaces; open off-street parking spaces; accessory sheds, tool rooms, and similar buildings or structures for domestic or agricultural storage; balconies; breezeways and open porches; one-story bay windows projecting three (3) feet or less into the yard; and overhanging eaves and gutters projecting three (3) feet or less into the yard.

D. In side yards, overhanging eaves and gutters projecting into the yard for a distance not exceeding ten (10) percent of the required yard width but in no case, exceeding eighteen (18) inches.

5.8-2. Use of exterior yards.

5.8-2.1. In the O, BI, B2, B3, M1 and M2 districts there shall be no structure of any kind (except for lights and permitted signs), open storage of materials or equipment, or the parking of vehicles in the area between the lot line bordering any public right-of-way, and the required setback line. Lights for the purpose of illuminating parking areas are not permitted in such exterior yards. Such yards shall contain no paving except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other drives or auto maneuvering areas are permitted in the exterior yards.

5.8-2.2. Screening of storage areas. All exterior storage for business, wholesale and manufacturing uses as defined by the permitted use sections of the B-3 business and wholesale, M-1 limited manufacturing and M-2 general manufacturing zoning districts shall be screened as provided herein. Screening shall be to an opacity of not less than seventy-five (75) percent six (6) feet above grade and may be accomplished by berming, evergreen landscaping, neutral colored fence slating, or wall construction. Such screening shall be required when one or more of the following conditions are present:

A. When any exterior yard of the property is located along a public right-of-way and storage is two hundred (200) feet or less from the right-of-way.

B. When any exterior yard of the property is located across a street from property that is zoned or developed solely for residential or public park purposes regardless of the distance from the residential or park property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

C. When any exterior yard of the property is located across an alley from property that is zoned or developed solely for residential or public park purposes and the storage is two hundred (200) feet or less from the residential property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

D. When the property is located contiguous to the yard of [the] property that is zoned or developed solely for residential or public park purposes and the storage is two hundred (200) feet or less from the residential property, and the City of Aurora's Official Comprehensive Plan designates the residential property for residential purposes or the park property for open space purposes.

E. Such storage areas in existence as of July 9, 1996, shall be screened in conformance with the above requirements not later that [than] one (1) year from the date of notification, but within five (5) years following said date.

F. This provision is not intended to allow outdoor storage where it is prohibited by the provisions of the underlying zoning district.

G. In the event that screening is required by the foregoing standards, the owner may have the screening requirement modified if a landscape or improvement plan is submitted which is approved by the planning director and zoning administrator, and the owner commits in writing to have the approved improvements established no later than June 30 or October 30 following the approval of the plan, whichever date shall be first.

5.9. Performance Standards

5.10. Setbacks

5.10-1. Front yard, side yard and building line setbacks on existing or anticipated four-lane highways or streets.

5.10-1.1. Provisions as to front or side yards abutting upon existing four-lane or anticipated four-lane highways or streets, and front setback lines on such property, shall, notwithstanding other provisions in this ordinance, be changed by a two-thirds vote of all the members voting of the city council to provide for a future eighty (80) feet to one hundred (100) feet right-of-way.

5.11. Signs

5.11-1. Sign regulations.

5.11-1.1. All sign regulations shall be subject to the City of Aurora sign ordinance, except that all signage erected in the BB district shall be governed by the applicable provisions of the BB Business-Boulevard District, and in addition thereto, the following regulation shall apply:

5.11-1.2. In all R districts, there shall be no signs permitted other than specified exceptions as provided for in the Aurora sign ordinance. Nameplate signs shall not exceed two (2) square feet per side.

5.12. Off-Street Parking And Loading

5.12-1. Purpose.

5.12-1.1. The purpose of this section of the zoning ordinance is to alleviate or prevent congestion of the public streets, and so promote the safety and welfare of the public, by establishing minimum requirements for the off-street parking and loading and unloading of motor vehicles in accordance with the use to which property is put.

5.12-2. General provisions--Parking and loading.

5.12-2.1. Procedure. An application to be filed by the owner, lessee or designated agent thereof for a building permit for a new or enlarged building, structure, or use, shall include therewith a plot plan, drawn to scale, and fully dimensioned showing any parking or loading facilities to be provided in compliance with the requirements of this ordinance.

5.12-2.2. Extent of control. The off-street parking, driveway and loading requirements of this ordinance shall apply as follows:

5.12-2.3. All buildings and structures erected or enlarged and land uses initiated after the effective date of this ordinance shall provide accessory off-street parking or loading facilities as required hereinafter for the use thereof, except that a building or structure for which a building permit has been issued prior to the effective date of this ordinance shall not be required to furnish parking or loading facilities if construction is begun thereon within six (6) months of the effective date of the building permit and diligently prosecuted to completion.

5.12-2.4. When a building or structure erected or enlarged prior to or after the effective date of this ordinance shall undergo a decrease in number of dwelling units, gross floor area, seating capacity, number of employees, or other unit of measurement specified hereinafter for required parking or loading facilities, and further, when said decrease would result in a requirement for a fewer total parking or loading spaces through application of the provisions of this ordinance thereto, parking and loading facilities may be reduced accordingly provided that existing parking or loading facilities shall be so decreased only when the facilities remaining would at least equal or exceed the parking or loading requirements resulting from application of the provisions of this ordinance to the entire building or structure as modified.

5.12-2.5. When a building or structure shall undergo any increase in number of dwelling units, gross floor area, seating capacity, or other unit of measurement specified hereinafter for required parking or loading facilities, and further, when said increase would result in a requirement for additional total parking or loading spaces through application of the provisions of this ordinance thereto, parking and loading facilities may be increased accordingly, provided that existing parking or loading facilities shall be so increased so that the facilities would at least equal or exceed the parking or loading requirements resulting from application of the provisions of this ordinance to the entire building or structure as modified.

5.12-2.6. The parking, driveway and loading facilities for a building, structure or use shall be increased and properly surfaced whenever the following occurs:

A. Any increase in number of dwelling units.

B. Any increase in gross floor area resulting in a requirement for additional parking or loading spaces.

    C. Any increase in seating capacity resulting in a requirement for additional parking or loading spaces.

    D. An increase in any unit of measurement specified hereinafter resulting in a requirement for additional parking or loading spaces.

    E. Rebuilding or reconstruction after damage exceeding fifty (50) percent of principal building.

    F. Rezoning of the property to a classification other than R-1 single-family, R-2 single-family, R-3 single-family or R-4 two-family dwelling district.

    G. When an accessory garage building is newly constructed or new garage construction results in an increase in the number of parking spaces on a zoning lot, previously provided.

5.12-2.7. These off-street parking regulations, but not including loading requirements, shall not apply to any uses of new buildings or structures, or any existing principal building or structure which is enlarged or increased in capacity after the adoption of this section when located within the area bounded as follows:

That part of section 22, township 38 north, range 8 east of the third principal meridian in the City of Aurora, Kane County, Illinois, described as follows: Beginning at the southeasterly corner of Lincoln Avenue and Benton Street; thence northwesterly along the southerly line of Benton Street to the southeasterly corner of Lot F of Library Subdivision; thence westerly along the southerly lines of Lots F, E, and D in said subdivision and westerly, northerly and northeasterly along the southerly and westerly lot line of Lot C in said subdivision to the northwesterly corner of said Lot C; thence northwesterly along the southerly line of Benton Street; to the southwesterly corner of Lake Street and Benton Street; thence northeasterly along the westerly line of Lake Street to the northwesterly corner of Lake Street and Spruce Street; thence southeasterly along the northerly line of Spruce Street to the easterly line of River Street; thence southwesterly along the easterly line of River Street to the northeasterly corner of River Street and Pinney Street; thence southeasterly, along the northerly line of Pinney Street to the westerly bank of the Fox River; thence easterly to the northwest corner of Lot 3 in block 29 of the original Town of Aurora; thence southerly along the west lines of Lots 3 and 4 of said original Town of Aurora to the southerly one of said Lot 4; thence southeasterly along said southerly line and northerly line of Spring Street to the northeasterly corner of Spring Street and Lincoln Avenue; thence southwesterly along the easterly line of Lincoln Avenue to the point of beginning.

An area where it becomes unreasonable and impractical for individual building uses to provide auxiliary parking facilities, and where it has been determined that parking facilities to accommodate the requirements of the uses within the designated area can best be provided by public garages and parking areas developed in compliance with a general plan of parking facilities. All parking facilities, hereinafter proposed for construction and development within the above designated area, shall be subject to rules set forth in the Use Regulations Section, governing the location of special uses.

5.12-2.8. Existing parking and loading spaces. Accessory off-street parking and loading spaces in existence on the effective date of this ordinance may not be reduced in number unless already exceeding the requirements of this section for equivalent new

construction; in which event, said spaces shall not be reduced below the number required herein for such equivalent new construction.

5.12-2.9. Permissive parking and loading spaces. Nothing in this section shall prevent the establishment of off-street automobile parking or loading facilities to serve any existing use of land or buildings, subject to full compliance with the provisions of this section, except that off-street parking areas accessory to existing multiple-family structures cannot be located off the premises containing the principal use, unless on a lot adjacent thereto, without special authorization by the city council.

5.12-2.10. Schedule of requirements.

A. Tables for required parking and loading. Requirements governing the number and location of off-street parking and off-street loading facilities in relation to the use of property are established hereinafter in subsections of this ordinance. The parking and loading requirements for any use not specified herein shall be the same as for a similar specified use.

B. Floor area. The term "floor area" as employed in this parking and loading section in the case of office, merchandising or service types of use shall mean the gross floor area of a building or structure used or intended to be used for service to the public as customers, patrons, clients, patients or tenants, including areas occupied by fixtures and equipment used for display or sale of merchandise. "Floor area" for the purposes of this section shall not include any area used for:

C. Storage accessory to the principal use of a building;

D. Incidental repairs;

E. Processing or packaging of merchandise;

F. Show windows, or offices incidental to the management or maintenance of a store or building;

G. Rest rooms;

H. Utilities, or

I. Dressing, fitting or alteration rooms.

5.12-3. Additional regulations--Parking.

5.12-3.1. Use of parking facilities. Off-street parking facilities accessory to a residential use shall be limited to the parking of the following:

A. Passenger vehicles in any number.

B. One (1) recreational vehicle for each zoning lot subject to the required setbacks; or

C. One (1) commercial or other vehicle for each zoning lot subject to the required setbacks and the following conditions:

i. A Commercial Vehicle: The vehicle does not exceed the standards of a State of Illinois licensure classification of "B," (including, but not limited to, contractor's vans, mini-school buses, pick-up trucks, and smaller stake trucks) but excluding tow trucks and panel trucks, which shall be prohibited.

ii. An Essential Emergency Commercial Vehicle: The vehicle is used for essential emergency twenty-four (24) hour service such as electrical, mechanical and plumbing contracting, and does not exceed a State of Illinois licensure classification of "D" when the vehicle is also the owner's principal means of transportation to and from their place of employment; excluding tow trucks and panel trucks which shall be prohibited.

A zoning lot shall not contain more than one (1) recreational vehicle or more than one (1) commercial or other vehicle as defined in this subsection.

Only vehicles owned or leased by or assigned to occupants or guests thereof of the residential use to which such facilities are accessory shall be permitted for parking.

5.12-3.2. Joint parking facilities. Off-street parking facilities for different buildings, structures or uses or for mixed uses, may be provided collectively in any zoning district in which separate parking facilities for each constituent uses would be permitted, provided that the total number of spaces so located together shall not be less than the sum of the separate requirements for each use.

5.12-3.3. Control of the off-site facilities. When required accessory off-street facilities are provided elsewhere than on the lot on which the principal use served is located, they shall be in the same possession, either by deed or long-term lease, as the property occupied by such principal use, and the owner shall be bound by covenants filed of record in the office of the Recorder of Deeds of Kane County, requiring the owner and his or her heirs and assigns to maintain the required number of parking spaces during the existence of said principal use.

5.12-3.4. Permitted districts for accessory parking. Accessory parking facilities provided elsewhere than on the same zoning lot with the principal use served in accordance with the parking requirements for hotels and motels, may be located in any zoning district except as follows:

A. No parking facilities accessory to an apartment use shall be located in an R-1, R-2, or R-3 district.

B. No parking facilities accessory to a business or manufacturing use shall be located in a residential district, except when authorized by the city council as prescribed hereinafter.

5.12-3.5. Nonresidential parking in residential districts. Accessory off-street parking facilities serving nonresidential uses of property may be permitted in any R district when authorized by the city council, subject to the following requirements in addition to all other relevant requirements of this section:

A. The parking lot shall be accessory to, and for use in connection with, one (1) or more nonresidential establishments located in adjoining districts or in connection with one (1) or more existing professional or institutional office buildings or institutions.

B. Said parking lot shall be used solely for the parking of passenger automobiles.

C. No commercial repair work or service of any kind shall be conducted on said parking lot.

D. No sign of any kind other than signs designating entrances, exits, and conditions of use, shall be maintained on said parking lot, and shall not exceed twenty (20) square feet in area.

E. Each entrance to and exit from said parking lot shall be at least five (5) feet distant from any adjacent property located in any residential district, except where ingress and egress to the parking lot is provided from a public alley or public way separating the residential areas from the proposed parking lot.

F. In addition to the foregoing requirements, such parking lots shall conform to any further requirements and conditions as may be prescribed by the city council for the protection of properties adjacent to and in the vicinity of the proposed parking lot.

5.12-3.6. Design and maintenance.

A. Parking space--Description. A required off-street parking space shall be an area of not less than one hundred and sixty-two (162) square feet nor less than eight and one-half (8 1/2) feet wide by nineteen (19) feet long, exclusive of access drives or aisles, ramps, columns, or office and work areas and individually accessible from streets or alleys, or from private driveways or aisles leading to streets or alleys, and to be used for the storage or parking of passenger automobiles and commercial vehicles under one and one-half-ton capacity where permitted under this ordinance. All spaces within parking lots shall be striped according to the required size. Aisles between vehicular parking spaces shall not be less than twelve (12) feet in width when serving automobiles parked at forty-five-degree angle in one (1) direction, nor less than twenty (20) feet in width when serving automobiles parked perpendicular to the aisles and accommodating two-way traffic.

B. Measurement of space. When determination of the number of required off-street parking spaces results in a requirement of a fractional space, any fraction up to and including one-half shall be disregarded, and fractions over one-half shall be interpreted as one (1) parking space.

C. Open and enclosed spaces. Parking areas may be open or enclosed except that when parking facilities accessory to a multiple dwelling are located in a residential or business 1 or business 2 district elsewhere than on the same zoning lot with the principal use served, such parking facilities shall be open to the sky.

D. Access. Parking facilities shall be designed with appropriate means of vehicular access to a street or alley in such a manner as will least interfere with the movement of traffic, and shall comply with all provisions of other ordinances of the City of Aurora regulating the location and construction of driveways.

E. Signs. No sign shall be displayed in any parking area within any residential district, except such as may be necessary for the orderly use of the parking facilities.

F. Required setbacks. No required parking space, as provided in the Bulk Restrictions Section, nor portion thereof established on the same zoning lot with a building shall be located within a required front yard. In residential districts, parking of vehicles may occur upon all driveways and upon extensions that are parallel and contiguous to driveways provided that the extension is no more than ten (10) feet in width and is established away from the front of the building,

except where prohibited by this subsection. No parking space nor portion thereof established on a zoning lot without a building shall be located closer to any street line that the established building line on adjacent properties nor closer than the front yard setback required for the district in which the parking lot is located. Further, any wall, fence or hedge developed around any parking area shall be subject to the front yard setback requirements of the ordinance in the same manner as a building or structure.

i. Parking of commercial vehicles. In residential districts, parking of one (1) commercial vehicle for each zoning lot permitted in this subsection may take place in side and rear yards provided that the vehicles considered essential emergency vehicles as defined in this subsection are set back six (6) feet from all adjoining residential structures. Said vehicles may be parked in required front and exterior side yards only if the following conditions are satisfied:

  a. The commercial vehicle is used daily on regular working days and is the owner's principal means of transportation to and from their place of employment.

  b. The owner of the commercial vehicle shall obtain a parking permit from the division of inspection and permits.

ii. Parking of recreational vehicles. In residential districts, parking of one (1) recreational vehicle for each zoning lot may take place in side and rear yards provided that the vehicle is set back six (6) feet from all adjoining residential structures. Said vehicle may be parked in required front and exterior side yards only if the following conditions are satisfied:

  a. The recreational vehicle is used daily and is the owner's principal means of transportation to and from their place of employment.

  b. The length of the recreational vehicle shall not exceed twenty-five (25) feet or the required front yard or exterior side yard setback.

  c. The owner of the recreational vehicle shall obtain a parking permit from the Division of Inspection and Permits.

    Parking of a recreational vehicle for a five-day time frame per each calendar month for loading and unloading purposes may take place in the required front yard without the necessity of complying with the above three (3) conditions. This time frame may be reasonably extended by the zoning administrator to accommodate additional loading and unloading.

G. Surfacing. All open off-street parking areas and driveways shall be improved with a gravel compacted macadam base, not less than four (4) inches thick, and surfaced with asphalt, asphaltic concrete or constructed to a comparable specification. This requirement shall not be applicable to the parking of a recreational vehicle located in residential districts which may be parked upon two (2) strips constructed of asphalt, asphaltic concrete or comparable specification which shall be as wide as the tire widths or pads constructed of said material which shall be located and surface the area under each tire. Driveways leading to such parking areas for a recreational vehicle may also be constructed of a continuous strip in the manner herein specified. Nor shall this requirement be applicable to the parking of a non self-propelled camping trailer located in residential districts that may be parked on unimproved surfaces. Such parking must be in accordance with the location requirements the R-1 One Family Dwelling District and the required setbacks subsection.

H. Lighting. Any lighting used to illuminate an off-street parking area shall be so arranged as to reflect the light away from adjoining properties or public thoroughfares.

5.12-3.7. Special use public parking areas. Any automobile parking area developed for transient trade, and not accessory to specific principal uses or groups of uses for which parking is required by this ordinance, shall be treated as a special use, as defined in the Rules and Definitions Section and as allowed in accordance with the provisions of the Use Regulations Section by the city council.

5.12-4. Additional regulations--Loading.

5.12-4.1. Design.

A. Loading berth--Description. An off-street loading berth shall be a hard-surfaced area of land, open or enclosed, other than a street or a public way, used principally for the standing, loading or unloading of motor trucks, tractors and trailers so as to avoid undue interference with the public use of streets and alleys. A required loading space shall not be less than ten (10) feet in width, forty-five (45) feet in length, and fourteen (14) feet in height, exclusive of access aisles and maneuvering space, except as otherwise specifically dimensioned hereafter.

B. Location. No permitted or required loading berth shall be closer than fifty (50) feet to any property in a residential district unless completely enclosed by building walls, or a uniformly painted solid fence or wall, or any combination thereof not less than six (6) feet in height. No permitted or required loading berth shall be located within twenty-five (25) feet of the nearest point of intersection of any two (2) streets. Loading berths open to the sky may be located in any required yards.

C. Measurement of berth. When determination of the number of required off-street loading berths results in a requirement of a fractional berth, any fraction up to and including one-half shall be disregarded, and fractions over one-half shall be interpreted as one (1) loading berth.

D. Surfacing. All open off-street loading berths shall be improved with a compacted macadam base not less than seven (7) inches thick, surfaced with not less than two (2) inches of asphaltic concrete or some comparable construction material.

5.12-5. Location of parking areas.

5.12-5.1. Extent of control. Off-street automobile parking facilities shall be located as hereinafter specified; where a distance is specified, such a distance shall be walking distance measured from the nearest point of the parking area to the nearest entrance of the building that said parking area is required to serve:

A. For one- and two-family dwellings--on the same lot with the building they are required to serve.

B. For three- and four-family dwellings not over two (2) stories in height--on the same lot or parcel of land as the building they are required to serve. For the purpose of this requirement, a group of such uses constructed and maintained under single ownership or management shall be assumed to be on a single lot or parcel of land.

C. For apartment houses containing four (4) or more dwelling units--on the same lot or parcel of land as the building they are required to serve, or on a separate lot or parcel of land not more than three hundred (300) feet from the nearest entrance to the principal building being served, provided the lot or parcel of land selected for the parking facilities is located in an apartment district or a less restricted district.

D. For rooming houses, lodging houses, clubs, hospitals, sanitariums, orphanages, homes for the aged, convalescent homes, dormitories, sorority and fraternity houses, and for other similar uses, the off-street parking facilities required shall be provided on a lot or parcel of land not more than five hundred (500) feet from the nearest entrance to the principal building being served, provided the lot or parcel of land selected for the parking facilities is located in the same district classification as is the building which the parking lot is intended to serve.

E. For uses other than those specified above, off-street parking facilities shall be provided on the same lot or parcel of land as the principal building being served, or on a separate lot or parcel of land not over one thousand (1,000) feet from the entrance of the principal building, measured from the nearest point of the parking area, provided the separate lot or parcel of land intended for the parking facilities is located in the same district as the principal permitted use or in a less restricted district.

5.12-6. Schedule of parking requirements.

5.12-6.1. For one- and two-family dwellings:

A. For one- and two-family dwellings constructed prior to October 20, 1987--One (1) parking space for each family dwelling unit.

B. For one-family dwellings newly constructed October 20, 1987 or thereafter, two (2) individually accessible parking spaces. (This requirement shall not apply to any property constructed prior to October 20, 1987 which is rebuilt after being damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value).

C. For two-family dwellings newly constructed April 19, 1988, or thereafter, three (3) individually accessible parking spaces, except as provided by the parking requirements for efficiency dwelling units. This requirement shall not apply to any property constructed prior to April 19, 1988, which is rebuilt after being damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value.

5.12-6.2. For buildings containing three (3) or more dwelling units:

A. A dwelling unit with two (2) or more bedrooms; two (2) parking spaces per dwelling unit, except as provided for a dwelling unit comprised of three (3) or more individuals not related by blood, marriage or adoption; one (1) parking space for each unrelated individual over the age of sixteen (16) therein.

B. A dwelling unit with one (1) bedroom; one and one-half (1 1/2) parking spaces per dwelling unit, except as provided by  for a dwelling unit comprised of three (3) or more individuals not related by blood, marriage or adoption; one (1) parking space for each unrelated individual over the age of sixteen (16) therein.