| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|---|---|---|
| 58 | 292,122 | |
| 59 | 295,820 | |
| 60 | 299,472 | |
| 61 | 303,079 | |
| 62 | 306,640 | |
| 63 | 310,157 | |
| 64 | 310,628 | |
| 65 | 317,009 | |
| 66 | 320,434 | |
| 67 | 323,769 | |
| 68 | 327,058 | |
| 69 | 330,302 | |
| 70 | 333,501 | |
| 71 | 336,632 | |
| 72 | 339,762 | |
| 73 | 342,825 | |
| 74 | 345,841 | |
| 75 | 348,814 | |
| 76 | 351,740 | |
| 77 | 354,621 | |
| 78 | 357,457 | |
| 79 | 360,247 | |
| 80 | 362,992 | |
| 81 | 365,692 | |
| 82 | 368,346 | |
| 83 | 370,954 | |
| 84 | 373,518 | |
| 85 | 376,036 | |
| 86 | 378,508 | |
| 87 | 380,936 | |
| 88 | 383,317 | |
| 89 | 385,654 | |
| 90 | 387,945 | |
| 91 | 390,191 | |

| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|---|---|---|
| 92 | 392,391 | |
| 93 | 394,546 | |
| 94 | 396,656 | |
| 95 | 398,718 | |
| 96 | 400,739 | |
| 97 | 402,712 | |
| 98 | 404,640 | |
| 99 | 406,523 | |
| 100 | 408,360 | |
| 101 | 410,152 | |
| 102 | 411,898 | |
| 103 | 413,600 | |
| 104 | 415,255 | |
| 105 | 416,866 | |
| 106 | 418,430 | |
| 107 | 419,950 | |
| 108 | 421,425 | |
| 109 | 422,854 | |
| 110 | 424,237 | |
| 111 | 425,575 | |
| 112 | 426,868 | |
| 113 | 428,115 | |
| 114 | 429,317 | |
| 115 | 420,474 | |
| 116 | 431,585 | |
| 117 | 432,650 | |
| 118 | 422,671 | |
| 119 | 434,646 | |
| 120 | 435,600 | 10 acres |
| 121 | 440,602 | |
| 122 | 445,627 | |
| 123 | 450,676 | |
| 124 | 455,746 | |
| 125 | 460,839 | |

| UNITS | NET SQ. FT. PER PARCEL | ACRES |
|---|---|---|
| 126 | 465,955 | |
| 127 | 471,094 | |
| 128 | 476,255 | |
| 129 | 481,440 | |
| 130 | 486,646 | |
| 131 | 491,876 | |
| 132 | 497,128 | |
| 133 | 502,402 | |
| 134 | 502,700 | |
| 135 | 513,020 | |
| 136 | 518,363 | |
| 137 | 523,729 | |
| 138 | 529,116 | |
| 139 | 534,529 | |
| 140 | 539,962 | |
| 141 | 545,418 | |
| 142 | 550,897 | |
| 143 | 556,399 | |
| 144 | 561,923 | |
| 145 | 567,470 | |
| 146 | 570,040 | |
| 147 | 578,631 | |
| 148 | 584,246 | |
| 149 | 589,883 | |
| 150 | 595,545 | |
| 151 | 601,228 | |
| 152 | 606,933 | |
| 153 | 612,662 | |
| 154 | 618,413 | |
| 155 | 624,186 | |
| 156 | 629,984 | |
| 157 | 635,803 | |
| 158 | 641,646 | |
| 159 | 647,512 | |

APPENDIX A ZONING

| 160 | 653,400 | 15 acres |
|---|---|---|

> For each dwelling unit over 160 on a parcel an additional 5,445 square feet shall be required.

8.7. DC Downtown core district.

8.7-1. Title

8.7-1.1. The Downtown Core District shall be designated as "DC" on the City of Aurora Zoning Map.

8.7-2. Intent and Purpose

8.7-2.1. Purpose. The downtown core district, bounded as described herein, is meant to preserve, enhance and promote the pedestrian character of the city's central business district. The downtown core is the center of government, culture, transportation, finance, specialized retail, and professional offices.

The downtown core offers an accessible market and diverse spaces necessary for small scale, independent businesses. It permits office, retail and service uses as well as light industry, and has the support services necessary for these firms.

The downtown core is uniquely suited to entertainment and recreation. It encompasses numerous historic buildings. Pedestrian access to the Fox River, and the appropriate building facades, street furniture, signage and landscaping are encouraged.

The downtown core encourages both daytime and nighttime activities by permitting a mixture of uses. It permits retail and service sidewalk activities in order to attract pedestrians. It also promotes pedestrian safety, convenience and comfort by regulating ground floor land uses, certain heavy auto traffic uses, and additional parking. Nuisances are prevented through standards for downtown light industries and prohibition of inappropriate land uses.

8.7-3. District Specific Regulations

8.7-3.1. Rules

A. Density and intensity. There shall be no restrictions or regulations regarding a minimum lot area, minimum lot width, maximum ground coverage, minimum ground floor area per building, maximum floor area ratio, or maximum height (except as provided by the building code). Dwelling standards are provided by the applicable codes and ordinances of the city.

B. Existing buildings. As provided by this the DC Downtown Core District and the Bulk Restrictions Section hereof, where applicable.

C. Certain storage prohibited. Outside storage of vehicles, equipment or materials is prohibited.

D. Large scale developments: Downtown.

  i. Requirements.

    a. Definition and size limitation: A development or redevelopment having gross leasable area of thirty thousand (30,000) square feet or greater, which is developed as a unit under unified or coordinated control of its planning and development.

    b. Permitted uses: Those uses permitted in the downtown core.

    c. Landscaping. As specified in applicable ordinance; specifications may be increased in accordance with the DC Downtown Core District hereof.

  ii. Standards. The planning commission may recommend that the application for a large-scale development be approved if the commission finds that such development is in substantial conformance to the standards below. The commission may recommend that the application for such development be denied if any of the following standards are not met.

    a. The development is in accordance with the comprehensive plan and the physical development policies of the city.

    b. The proposed development will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

    c. The proposed development maximizes pedestrian and vehicular circulation ease and safety.

    d. The proposed development will be compatible with surrounding properties and help to maintain and advance property values. The development's physical design shall take into consideration the scale, exterior materials, and rhythm of the historic buildings on the block. (The purpose of this section is not to require that buildings should recreate an earlier style, but rather that they be compatible with the existing character of the block.)

    e. Such developments abutting the Fox River or parkland along the river, shall provide pedestrian and visual access to the river.

    f. When a development has potential visual access to the river, the building design shall incorporate views of the river.

  iii. Procedure: The application procedure for a large-scale development, as provided by the Administration Section hereof except that the provisions of the DC Downtown Core District shall supersede the Administration Section for purposes of the downtown core.

E. Boundaries. The downtown core shall be the area bounded by the following: That portion of Middle Avenue from West New York Street to West Benton Street; that portion of Benton Street from Middle Avenue to the Burlington Northern Main Line; that portion of the Burlington Northern Main Line from East Benton Street to East New York Street; that portion of both sides of East New York Street from the Burlington Northern Main Line to North River Street (including the Old Fire Station Complex parcels at the northeasterly corner of North Broadway and East New York Streets and the three (3) most southerly parcels

commencing at the northwesterly corner of said streets); that portion of North River Street from Pinney Street (bordering the property adjoining the north side of New York Street thereat) to West New York Street; and that portion of West New York Street from North River Street to Middle Avenue, and all of Stolp Island.

8.7-3.2. Definitions

8.7-4. Use Regulations

8.7-4.1. Permitted uses.

A. Retail.

i. Clothing-related uses, such as wearing apparel, shoes, hats, dresses, furriers, department stores, sewing supplies, and fabric stores.

ii. Craft sales and manufacture, such as decorative metal, pottery, woodworking, art studios, similar fine art uses.

iii. Food and consumables, such as groceries, meat and fish markets, delicatessens, food stores, fruit stores, farmers' markets, candy, ice cream, tobacco and bakery shops.

iv. General, such as drugstores.

v. Gift uses, such as gift, greeting card, pet and frame shops, and florists.

vi. Hobby uses, such as coin and stamp, camera and photo supply, hobby, antique, art galleries, sporting goods, toys, leather and luggage, musical instrument sales and repair, costume rental, taxidermists, record and video shops.

vii. Household uses, such as hardware, household, locksmiths and variety stores.

viii. Information-related uses, such as art and school-supply stores, office supply stores, bookstores, stationery stores, newsstands and reading rooms.

ix. Light durable sales and repair, such as bicycles, furniture and upholstery, carpet, sewing machine, typewriter and adding machine, computer, stereo and electronics, radio and television, jewelry, watches and electrical appliances.

x. Other uses compatible to the above uses, but specifically prohibiting those uses that are first permitted by separate reference in the B-3 business and wholesale district.

B. Office/professional.

i. General uses, such as public office buildings, utility offices, telecommunication exchanges, and civic organizations.

ii. Headquarters of organizations, businesses, wholesale operations, and corporations.

iii. Health practitioners, such as physicians, dentists, opticians/optometrists, medical and dental clinics, ortho and medical appliances, chiropractors and naprapaths.

iv. Laboratories/precision manufacturing, such as medical, dental, photograph, research, testing and experimental laboratories, and jewelry, optical and instrument manufacturing concerns. Such uses visible to the public through first floor windows shall not display storage areas. The above uses shall be conducted so as to preclude any nuisance, hazard or offensive conditions including creation or emission of dust, gas, smoke, noise, fumes, odors, vibrations, particulate matter, chemical compounds, electrical disturbances, humidity, heat, cold, glare or night illumination. The above uses must be compatible with the downtown core uses, including dwelling units and

retail. Prior to the issuance of a building or occupancy permit, or at any other time, the building official may require evidence that adequate controls, measures, or devices have been provided to ensure and protect the public interest, health, comfort, convenience, safety and general welfare from such nuisance, hazard or offensive condition.

v. Media and art uses, including radio and TV broadcasters (stations and studios but not transmission towers, which are regulated by the Rules and Definitions Section and the Administration Section hereof and Chapter 19), photographer and artist studios, interior decorators, and advertising agencies.

vi. Professionals, such as attorneys, architects, engineers and consultants.

vii. Other uses compatible to the above uses, but specifically prohibiting those uses that are first permitted by separate reference in the B-3 business and wholesale district.

C. Public and semipublic uses.

i. Organizations, such as clubs and lodges.

ii. Schools, such as colleges and universities, music, dance, business, commercial, trade, art, vocational and professional.

iii. Transportation uses, such as bus and train depots, taxi dispatcher's offices, travel bureaus, ticket offices, telegraph offices, and parcel delivery drop-off facilities.

iv. Other uses compatible to the above uses, but specifically prohibiting those uses that are first permitted by separate reference in the B-3 business and wholesale district.

D. Residential (above the first floor). Dwelling units shall be permitted in the downtown core when such units each contain a separate bathroom, a separate bedroom with a door that closes, and a full service, ventilated kitchen. Inspection and licensing of all downtown core dwelling units shall be in accordance with appropriate city codes. Dwelling units shall not be mixed with other uses on a single floor unless separated from such other uses by a continuous wall. The planning and development committee of the Aurora city council may grant an exception to the above provision prohibiting dwelling units on the first floor:

i. For a new building constructed adjacent to the Fox River; and

ii. If the residential uses are separated entirely from street frontage by a permitted use, excluding accessways; and

iii. If the first floor dwelling units have visual access to the river.

E. Services.

i. Clothing services, such as dressmaking, millinery, tailoring, shoe and hat repair, and laundries and drycleaners.

ii. Duplicating services, such as blueprinting, photostatting, quick print shops, and publishers' editorial offices and printing operations (providing noise, vibrations and emissions are not detectable at the property lines).

iii. Financial uses, such as banks and savings institutions, finance, insurance, stock brokers, real estate and employment agencies, and currency exchanges. Such uses that are drive-ins shall require special use consideration under the Use Regulations Section hereof.

    iv. Health and beauty uses, such as barber and beauty shops, health clubs, racquetball clubs, self defense schools and personal service shops.

    v. Hotels and hometels with fifty (50) or more guest rooms or suites, and those with fewer than fifty (50) rooms or suites that were established prior to the date of this ordinance.

    vi. Household services, such as interior decorator shops, upholstery, drapery and slip cover manufacture, glass cutting, glazing and mirror shops.

    vii. Other uses compatible to the above uses, but specifically prohibiting those uses that are first permitted by separate reference in the B-3 business and wholesale district.

F. Amusements.

    i. Dining uses, such as restaurants, caterers, and establishments where alcoholic beverages are served.

    ii. Entertainment uses, such as indoor theaters, cultural centers, and nightclubs.

    iii. Poolrooms.

    iv. Other uses compatible to the above uses, but specifically prohibiting those uses that are first permitted by separate reference in the B-3 business and wholesale district (except poolrooms).

G. Sidewalk activities.

    i. Sidewalk activities may include the following: The use of tables, boxes, bins, racks, showcases, platforms or any other arrangement or structure for the display or sale of food, goods, wares or merchandise; push or vending carts, flower/art/craft and other exhibits; restaurant tables; shoe-shine stands; street musicians; other pedestrian services.

    ii. The following conditions shall be placed on these permitted uses:

        a. Normal public movement in the public right-of-way shall not be impeded by any sidewalk activity, nor shall any display obstruct the vision of pedestrians or motorists near any intersection. Such uses shall be set back at least five (5) feet from the curb, or from any street tree or furniture.

        b. Any merchandise shall be firmly secured so that it cannot be accidentally jarred loose or blown away.

    iii. Operators of such activities shall be responsible for keeping the applicable public right-of-way free from any litter generated as a result of such activity.

    iv. Sponsors of such activities shall be responsible for all liabilities resulting from the operation of said activities and shall hold the city harmless for any and all such liabilities.

    v. No such activity that is determined by the city to be detrimental to the public health, safety and welfare shall be permitted.

    vi. Permits are not required for such activities conducted by businesses directly in front of their establishments. Any applicant shall apply for a permit to operate such activity on the public sidewalk not in front of a business. The city may grant a permit for sidewalk activities in front of a business, if that business gives its written permission. Permits for sidewalk activities shall specify the permitted location, duration and type

of use. Permits for food sales uses shall also specify the required health protection rules. All food shall be covered.

   vii. Procedure. Permits for sidewalk activities shall be issued by the director of finance. Fees for such permits shall be as set from time to time by the city council.

H. Other permitted uses.

   i. Accessory buildings, as regulated in the Use Regulations Section hereof.

   ii. Auto parts and supplies retailers (provided no auto repair to vehicles takes place on the premises, either as a principal or accessory use), except as allowed under the Use Regulations Section.

   iii. Dish antennae (on the roof).

   iv. Signs, in accordance with the Bulk Restrictions Section.

   v. Solar collection apparatus (on the roof).

   vi. Temporary buildings and uses for construction purposes are permitted for a period not to exceed one (1) year.

   vii. Other uses compatible with the above uses of this section, but specifically prohibiting those uses which are first permitted by separate reference in the B-3 business and wholesale district, and those uses which are set out as special uses by section 7.1.

8.7-4.2. Special Uses

8.7-4.3. Accessory Uses

8.7-5. Bulk Restrictions

8.7-5.1. Building, Dwelling and Structure Standards

8.7-5.2. Floor Area Ratio

8.7-5.3. Height

8.7-5.4. Landscaping.

   A. Such requirements shall be as specified in the Bulk Restrictions Section hereof.

8.7-5.5. Lot Area

8.7-5.6. Lot Coverage

8.7-5.7. Monotony Standards

8.7-5.8. Nonconformity

8.7-5.9. Obstructions

8.7-5.10. Parking and Loading

   A. Off-street parking shall be in accordance with the Bulk Restrictions except that surface parking constructed after the effective date of this the DC Downtown Core District shall be allowed only in the rear yard of a zoning lot. Parking constructed after the effective date of this the DC Downtown Core District in a front or side yard or as the sole use of a property, shall be permitted only by special use permit, pursuant to sections 13.5 and the Administration Section hereof.

8.7-5.11. Performance Standards

8.7-5.12. Setbacks. No exterior or interior yard setbacks shall be required except for the following:

| ITEM | SETBACK (in feet) |
|---|---|
| PARKING LOTS | |
| Exterior Yard | 5 |
| EXTERIOR LOTS (any size) | |
| River Yard | 15 |
| BUILDINGS | |
| River Yard | 15 |
| PUBLICLY MAINTAINED RIVER WALKWAY | |
| Between Parking Lot and River | 15 |
| Between Building and River | 15 |

8.7-5.13. Signs

A. Such requirements as are specified in Article 19 of the Aurora Building Code.

8.8. F Downtown fringe district.

8.8-1. Title

8.8-1.1. The Downtown Fringe District shall be designated as "F" on the City of Aurora Zoning Map.

8.8-2. Intent & Purpose

8.8-2.1. Purpose. The purpose of the downtown fringe district is to promote economic development by allowing a maximum of uses to be permitted near the center of the city consistent with protection of residential uses, enhancement of the area's image and physical appearance, maintenance of circulation safety, and the assurance of compatibility with surroundings.

8.8-2.2. Intent. The downtown fringe district is intended to permit a large number of land uses, while requiring municipal review of traffic-related and large-scale uses, performance standards for industrial uses, and the maintenance of certain land use functions within enclosed buildings or otherwise totally screened from public view.

8.8-3. District Specific Regulations

8.8-3.1. Rules

A. Density and intensity. There shall be no restrictions or regulations regarding a minimum lot area, minimum lot width, maximum ground coverage, minimum ground floor area per building, maximum floor area ratio, or maximum height (except as provided by the building code). Dwelling standards are provided by the applicable codes and ordinances of the city.

B. Existing buildings. As provided by this the F Downtown Fringe District, and the Bulk Restrictions District hereof, where applicable.

C. Site plan review: Downtown fringe.

   i. Applicable uses. The following uses shall be permitted in the downtown fringe only via the site plan review procedure of this the F Downtown Fringe District:

      a. Drive-in financial uses.

      b. Parking lots in the front or side yard of a property, or as the sole use of a property.

   ii. Standards. The city may approve a site plan if it is found that such plan is in substantial conformance to the standards below. The city may reject a plan if any of the following standards are not met:

      a. The development is in accordance with the comprehensive plan and the physical development policies of the city.

      b. The proposed development will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

      c. The proposed development maximizes pedestrian and vehicular circulation ease and safety.

      d. The proposed development will be compatible with surrounding properties and help to maintain and advance property values.

      e. The proposed development beautifies parking lots through the provision of landscape screens and islands.

      f. A development abutting the Fox River shall beautify their river frontage through the use of landscaping.

      g. A development abutting the Fox River or parkland along the river shall provide pedestrian and visual access to the river.

      h. When a development has potential visual access to the river, the building design shall incorporate views of the river.

   iii. Procedure.

      a. Preapplication review. An applicant for site plan review shall meet with the planning director. The planning director shall have five (5) business days in which to schedule such review. At such preapplication review, the planning director and prospective applicant shall review the following as they relate to the proposed site plan:

- The comprehensive plan and physical development policies of the City of Aurora;

- The existing zoning and land use in the surrounding area of the property in question;

- The zoning and development history of the property in question;

- Other pertinent factors.

      b. Application. After the preapplication review, the site plan shall be filed with the city clerk, with ten (10) additional copies filed with the planning director. The site plan shall include such information as required by the director of planning.

c. Planning council. As soon as such site plan is filed, such plan shall be placed on the agenda of the Aurora Planning Council, provided the planning director shall have had at least five (5) business days to review such plan. The planning council shall review such plan and forward its technical comments to the planning commission.

d. Planning commission. The planning commission shall consider the comments of the planning council, the petitioner and the staff, and shall recommend to approve, to approve with conditions, or to deny the plan. At least ten (10) days prior to said planning commission meeting, the planning division shall notify the public of said meeting by means of a notice published in a newspaper of general circulation in the City of Aurora, and by a sign placed on the property in question of the following format:

- The word "NOTICE", in minimum three-inch high letters, shall be placed at the top;

- The name of the proposed land use, in minimum two-and-one-half-inch high letters, shall be placed under the name of the proposed land use;

- The words "PROPOSED FOR THIS SITE", in minimum two-inch high letters, shall be placed under the name of the proposed land use;

- The following phrase shall be placed at the bottom: "This proposal will be considered by the Aurora Planning Commission on Wednesday, _____, at 7:00 p.m., in the City Council Chambers, 44 E. Downer Place, Aurora. Call the planning division at 844-3624 for more information."

e. Planning and development committee. The planning and development committee shall consider the recommendation of the planning commission, and shall make its decision to approve, to approve with conditions, or to deny the plan.

f. Appeal. Appeal of the decision of the planning and development committee shall be made by filing such appeal with the city clerk within four (4) business days following the decision of the planning and development committee. Appeal is made to the city council, which shall make the final decision.

D. Boundaries. The downtown fringe shall be the area described as follows:

That part of section 22, township 38 north, range 8 east of the third principal meridian in the City of Aurora, Kane County, Illinois, described as follows: Beginning at the southeasterly corner of Lincoln Avenue and Benton Street; thence northwesterly along the southerly line of Benton Street to the southeasterly corner of Lot F of Library Subdivision; thence westerly along the southerly lines of Lots F, E, and D in said subdivision and westerly, northerly and northeasterly along the southerly and westerly lot line of Lot C in said subdivision to the northwesterly corner of said Lot C; thence northwesterly along the southerly line of Benton Street to the southwesterly corner of Lake Street and Benton Street; thence northeasterly along the westerly line of Lake Street to the northwesterly corner of Lake Street and Spruce Street; thence southeasterly along the northerly line of Spruce Street to the easterly line of River Street; thence southwesterly along the easterly line of River Street to the northeasterly corner of River Street and Pinney Street; thence southeasterly along the northerly line of Pinney Street to the westerly bank of the Fox River; thence easterly to the northwest corner of Lot 3 in Block 29 of the original Town of

Aurora; thence southerly along the west lines of Lots 3 and 4 of said original Town of Aurora to the southerly line of said Lot 4; thence southeasterly along said southerly line and northerly line of Spring Street to the northeasterly corner of Spring Street and Lincoln Avenue; thence southwesterly along the easterly line of Lincoln Avenue to the point of beginning;

But excepting the downtown core provided for in section 12.8-2 and described as the area bounded by: That portion of Middle Avenue from West New York Street to West Benton Street; that portion of Benton Street from Middle Avenue to the Burlington Northern Main Line; that portion of the Burlington Northern Main Line from East Benton Street to East New York Street; that portion of both sides of East New York Street from the Burlington Northern Main Line to North River Street (including the Old Fire Station Complex parcels at the northeasterly corner of North Broadway and East New York Streets and the three (3) most southerly parcels commencing at the northwesterly corner of said streets); that portion of North River Street from Pinney Street (bordering the property adjoining the north side of New York Street thereat) to West New York Street; and that portion of West New York Street from North River Street to Middle Avenue, and all of Stolp Island.

### 8.8-3.2. Definitions

### 8.8-4. Use Regulations

#### 8.8-4.1. Permitted uses.

A. The following uses shall be permitted as specified in this section excepting related outside storage of vehicles, boats, equipment, or materials, as either a principal or accessory use.

B. Retail.

i. Agricultural implement sales and service when conducted wholly within an enclosed building.

ii. Air conditioning sales and service.

iii. Auto and vehicle sales, new.

iv. Boat showroom and repairs, including outboard engine service.

v. Building material sales, wholly within a building, where all delivery vehicles have no more than two (2) axles, and where off-street, on-site parking is provided as specified in the Bulk Restrictions Section, but only at the locations where such uses presently exist: 223 Spring Street, and 58 S. Lake Street.

vi. Clothing-related uses (new), such as wearing apparel, shoes, hats, dresses, furriers, department stores, sewing supplies, and fabric stores.

vii. Craft sales and manufacture, such as decorative metal, pottery, woodworking, art studios, similar fine art uses.

viii. Food and consumables, such as groceries, meat and fish markets, delicatessens, food stores, fruit stores, farmers' markets, candy, ice cream, tobacco and bakery shops.

ix. Garden supply and feed stores, wholly within a building.

    x. General, such as drugstores.

    xi. Gift uses, such as gift, greeting card, pet and frame shops, and florists.

    xii. Hobby uses, such as coin and stamp, camera and photo supply, hobby, antique, art galleries, sporting goods, toys, leather and luggage, musical instrument sales and repair, costume rental, record and video shops.

    xiii. Household uses, such as hardware, household, locksmiths and variety stores.

    xiv. Information-related uses, such as art and school-supply stores, office supply stores, bookstores, stationery stores, newsstands and reading rooms.

    xv. Light durable sales and repair, such as bicycles, furniture and upholstery, carpet, sewing machine, typewriter and adding machine, computer, stereo and electronics, radio and television, jewelry, watches and electrical appliances.

    xvi. Other uses compatible to the above uses, in keeping with the intent of this section 12.9.

C. Office/professional.

    i. General uses, such as public office buildings, utility offices, telecommunication exchanges, and civic organizations.

    ii. Headquarters of organizations, businesses, wholesale operations, and corporations.

    iii. Health practitioners, such as physicians, dentists, opticians/optometrists, medical and dental clinics, ortho and medical appliances, chiropractors and naprapaths.

    iv. Laboratories/precision manufacturing, such as medical, dental, photography, research, testing and experimental laboratories, and jewelry, optical and instrument manufacturing concerns.

    v. Media uses, including radio and TV stations and studios (but not transmission towers, which are regulated by the Use Regulations Section hereof and the Telecommunications and Cable Television Chapter of the City of Aurora Code of Ordinances).

    vi. Art uses, including photographer and artist studios, interior decorators, and advertising agencies.

    vii. Professionals, such as attorneys, architects, engineers and consultants.

    viii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

D. Public and semipublic uses.

    i. Organizations, such as clubs and lodges.

    ii. Schools, such as colleges and universities, music, dance, business, commercial, trade, art, vocational and professional.

    iii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

E. Residential. Dwelling units above the first floor, or in buildings constructed as residential structures, shall be permitted in the downtown fringe when such units each contain a separate bathroom, a separate bedroom with a door that closes, and a full service, ventilated kitchen. Inspection and licensing of all downtown fringe dwelling units shall be in accordance with appropriate city codes. Dwelling

units shall not be mixed with other uses on a single floor unless separated from such other uses by a continuous wall, and unless such other uses are provided with a separate entrance.

F. Services.

i. Clothing services, such as dressmaking, millinery, tailoring, shoe and hat repair, and laundries and drycleaners.

ii. Contractors offices and shops of ten thousand (10,000) square feet or less, where all fabrication and storage of material is within an enclosed building, where all delivery vehicles have no more than two (2) axles, and where off-street, on-site parking is provided for all delivery vehicles.

iii. Drive-in financial uses, provided the provisions of Site Plan Review within the F Downtown Fringe District are complied with.

iv. Duplicating services, such as blueprinting, photostatting, quick print shops, and publishers' editorial offices and printing operations (providing noise, vibrations and emissions are not detectable at the property lines).

v. Financial uses (non-drive-in), such as banks and savings institutions, finance, insurance, stock brokers, real estate and employment agencies, and currency exchanges.

vi. Garden equipment repair, when conducted wholly within an enclosed building.

vii. Health and beauty uses, such as barber and beauty shops, health clubs, racquetball clubs, self-defense schools and personal service shops.

viii. Household services, such as interior decorator shops, upholstery, drapery and slipcover manufacture, glass cutting, glazing and mirror shops.

ix. Plumbing and heating supply shops.

x. Undertaking establishments, providing off-street parking is provided, as specified in the Bulk Restrictions Section.

xi. Wholesale storage and/or sales, when conducted wholly within an enclosed building.

xii. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

G. Amusements.

i. Dining uses (not drive-in), such as restaurants, caterers, and establishments where alcoholic beverages are served.

ii. Entertainment uses, such as indoor theaters, cultural centers, and nightclubs.

iii. Indoor recreation places, such as arcades, bowling alleys, gymnasiums, skating rinks, archery ranges or golf practicing ranges.

iv. Poolrooms.

v. Other uses compatible to the above uses, in keeping with the intent of this the F Downtown Fringe District.

H. Other permitted uses.

i. Accessory buildings, as regulated in the Use Regulations Section hereof, except that such buildings shall be of the same construction as the primary building.

ii. Dish antennae (on the roof).

APPENDIX A ZONING                    129

     iii. Signs, in accordance with the Bulk Restrictions Section.

     iv. Solar collection apparatus (on the roof).

     v. Temporary buildings and uses for construction purposes are permitted for a period not to exceed one (1) year.

     vi. Other uses compatible with the above uses, in keeping with the intent of this the F Downtown Fringe District.

8.8-4.2. Special Uses

8.8-4.3. Accessory Uses

8.8-5. Bulk Restrictions

8.8-5.1. Building, Dwelling and Structure Standards

8.8-5.2. Floor Area Ratio

8.8-5.3. Height

8.8-5.4. Landscaping

    A. Such requirements shall be as specified in the Bulk Restrictions Section hereof. In addition, all parking lots in the downtown fringe district shall be landscaped as follows: The view of any parking lot or area shall be screened from any street or public way by means of a building, a compact hedge two (2) feet high at time of planting, or a decorative masonry wall three (3) feet high. In addition, one (1) tree shall be planted in the parking lot for each ten (10) parking spaces or major fraction thereof. Landscape materials shall be maintained in a healthy condition and any such materials that die shall be replaced by the end of the next planting season.

8.8-5.5. Lot Area

8.8-5.6. Lot Coverage

8.8-5.7. Monotony Standards

8.8-5.8. Nonconformity

8.8-5.9. Obstructions

8.8-5.10. Parking and Loading

    A. Off-street parking shall be in accordance with the Bulk Restrictions Section except that surface parking constructed after the effective date of this the F Downtown Fringe District shall be allowed only in the rear yard of a zoning lot. Parking constructed after the effective date of this the F Downtown Fringe District in a front or side yard or as the sole use of a property shall be permitted only by site plan review, pursuant to the F Downtown Fringe District hereof.

8.8-5.11. Performance Standards

    A. Uses in the downtown fringe district shall be conducted so as to preclude any nuisance, hazard or offensive condition including creation or emission of dust, gas, smoke, noise, fumes, odors, vibrations, particulate matter, chemical compounds, electrical disturbances, humidity, heat, cold, glare or night

illumination. Said uses must be compatible with the downtown core uses, including dwelling units and retail. Prior to the issuance of a building or occupancy permit, or at any other time, the building official may require evidence that adequate controls, measures, or devices have been provided to ensure and protect the public interest, health, comfort, convenience, safety and general welfare from any nuisance, hazard or offensive condition.

8.8-5.12. Setbacks

A. No exterior or interior yard setbacks shall be required except for the following. River yards shall be measured from the retaining wall or the mean water level, as determined by the city engineer.

| ITEM | SETBACK (in feet) |
|---|---|
| PARKING LOTS | |
| Exterior Yard | 5 |
| River Yard (with or without walkway) | 15 |
| BUILDINGS | |
| River Yard (with or without walkway) | 15 |

8.8-5.13. Signs

A. Such requirements as are specified in article 19 of the Aurora Building Code.

8.9. "RD" Research And Development District.

8.9-1. Title

8.9-1.1. The Research and Development District shall be designated as "RD" on the City of Aurora Zoning Map

8.9-2. Intent and Purpose

8.9-2.1. General requirements; purpose. The RD research and development district is provided to support and complement the City of Aurora comprehensive plan, including (a) the land use and circulation plan, and (b) the physical development policies, which guides the compatible shaping of the present and future land use needs of the City of Aurora.

The regulations for the RD district are designed to provide protection for existing developments while allowing new construction in accordance with current design standards.

The RD district is designed to create a landscaped transition between it and residential, office, commercial and manufacturing uses, to provide separation and to enhance the visual image of the city. Smoke and particulate matter, vibration, glare, odor, waste and noise are controlled by performance standards.

8.9-2.2. Specific district requirements; intent. The RD research and development district is intended to provide and maintain in a park-like setting, an environment suitable

for and limited to research and development activities, engineering and testing activities, and office uses. The production of plans, products, or designs is permitted when the primary purpose of such production is research development or evaluation.

8.9-3. District Specific Regulations

8.9-3.1. Rules

A. Required conditions. Permitted and/or special uses established in the RD district shall comply with all required conditions:

i. Not more than one (1) principal building shall be located on a zoning lot within the RD district. Lot area or other criteria used to satisfy one use cannot be counted again or be used to satisfy an additional use, except by a subdivision of land or by a planned development.

ii. Every use, unless expressly exempted by this ordinance, shall be operated in its entirety within a completely enclosed structure.

iii. All outdoor storage areas of goods, products, materials, supplies, machinery, equipment, or commercial vehicles, shall be enclosed to a height of eight (8) feet above grade and screened to an opacity of not less than seventy-five (75) percent, as follows:

a. A fence eight (8) feet above grade, or

b. Berming and/or landscaping screen, or

c. A combination of fencing, berming, and/or landscaping.

iv. Except or [as] otherwise provided by special use herein, establishments of the drive-in or drive-through type are prohibited.

v. Buildings existing on the date of this the RD Research and Development District may be converted to permitted or special use if in compliance with the zoning ordinance, the building code, and/or any other applicable legislation after review and approval by the City of Aurora.

vi. All processes and equipment in the RD district shall comply with the provisions of performance standards as set forth in ORI Office, Research and Industrial District of this ordinance.

B. Required conditions. The following conditions shall be required:

i. No product shall be produced in the RD district primarily for sale either directly or indirectly, except such products that, by their character, require production within a research and development environment.

ii. All business, servicing, or processing, except for off-street parking and loading, shall be conducted within completely enclosed buildings.

iii. The business uses in the RD district shall be located within a building or structure containing a permitted use and shall not contain advertising visible from the outside of the building or structure. Such business uses shall be primarily for the service and convenience of the tenants and employees of the RD district in which located.

C. Additional regulations. Special uses granted to provide for yard variations in the RD district shall comply with the following additional regulations:

i. Site plan review. Each property owner or developer who shall request a special use for a yard variation in the RD district shall submit a complete site plan, including

building, parking and storage locations, access control, signage, and landscaping for the proposed development. The site plan shall be reviewed by the Aurora planning commission and approved by the Aurora city council.

ii. Bonding requirements. Before any zoning certificate, excavation/fill permit or building permit is issued in the RD district, the property owner shall post a cash bond or irrevocable standby letter of credit with the City of Aurora to guarantee appropriate installation of planting and screening material required on the approved site plan. Fifty (50) percent of the cash bond or letter of credit shall be maintained by the City of Aurora for a period of one (1) year (growing season) after installation to assure continued growth of the landscape materials.

iii. Building bulk requirements. Building bulk requirements shall be expressed in terms of minimum yard requirements and maximum heights, or in terms of floor area ratio (F.A.R.) as prescribed in the RD Research and Development District Specific district requirements.

### 8.9-3.2. Definitions

### 8.9-4. Use Regulations

8.9-4.1. Permitted uses. In the RD district, permitted buildings, structures, or uses of land as hereinafter listed, shall only be permitted under the conditions specified. Buildings, structures, lots or tracts of land shall be used only for a permitted use or special use as provided in the RD district, except for the following:

A. Use lawfully established on the effective date of this the RD Research and Development District RD but not in conformance with the provisions of the RD district, shall be rendered as a legal nonconforming use subject to the regulations of the Use Regulations Section Nonconforming buildings and uses of the Aurora zoning ordinance.

B. A special use in existence on the effective date of this the RD Research and Development District RD, shall be allowed to continue, subject to the provisions set out in each special use ordinance.

C. Buildings, structures or uses already established as nonconforming on the effective date of this the RD Research and Development District and rendered nonconforming by the provisions hereof, shall be subject to the regulations of the Use Regulations Section Nonconforming buildings and uses of the Aurora zoning ordinance.

D. Permitted uses. The following uses are permitted:

i. Laboratories, offices, and ancillary uses for research and development.

ii. Production of prototype products when limited to the scale reasonably necessary for full investigation of the merits of a product, including commercial viability.

iii. Pilot plants in which processes planned for use in production elsewhere can be treated to the extent reasonably necessary for full investigation of the merits of a product or process including commercial viability.

iv. Engineering and testing laboratories and offices.

v. Offices--business or professional; medical or dental.

vi. Clinics--medical or dental.

vii. Banks and financial institutions.

8.9-4.2. Special uses. Special uses, as listed in the RD district may be allowed subject to the issuance of a special use permit in accordance with the provisions of the Administration Section special uses of this ordinance.

A. Special uses. The following special uses may be permitted in specific situations in accordance with the procedures outlined in the Administration Section Special uses of this ordinance:

i. Planned unit development. The primary use within a planned unit development shall be one or more of the principal uses, and may include any of the following uses:

a. Public and private schools.

b. Cultural and recreational facilities, auditoriums, public gathering places, chapels, churches, mosques, synagogues, temples, and other places of worship along with their related indoors and recreational facilities.

ii. General retail and services located within one of the permitted uses, including but not limited to drugstores, barbershops, beauty shops, dry-cleaning establishments and laundries, shoe repair, and tailor shop.

iii. Height limit increase as specified in the RD Research and Development District, the Bulk Restrictions Section of this ordinance.

iv. Heliports and helistops (need not be enclosed).

v. Public and private utility facilities.

8.9-4.3. Accessory Uses

8.9-5. Bulk Restrictions

8.9-5.1. Building, Dwelling and Structure Standards

8.9-5.2. Floor Area Ratio

8.9-5.3. Height

A. The maximum height for all buildings and structures in the RD district shall be one hundred (100) feet; however, this limit may be increased to one hundred fifty (150) feet by a special use permit issued by the Aurora city council and after a public hearing before the planning commission in accordance with the provisions of section 14, subsection 14.6-5 of this ordinance. Any such increased height shall be reasonably required for the particular research or development use to which the property in question is to be put. All principal and accessory buildings and structures shall not cover more than twenty-five (25) percent of the gross lot area.

8.9-5.4. Landscaping.

A. All required setback areas shall be extensively landscaped with a variety of trees and shrubs. Nonliving material may be used to complement a small percentage of the area to be landscaped. Landscaping plans shall be submitted for review and approval by the director of planning.

B. All storage areas of goods, materials, products, and trash containers shall be enclosed with fences or landscaping of at least seventy-five (75) percent opacity. Lighting of the facility shall be directed away from surrounding properties.

C. Parking and loading requirements shall be as set forth in the Bulk Restrictions Section of this ordinance. All off-street parking and off-street loading areas shall be landscaped and maintained. Landscaping shall be arranged in such a way as to break up the mass of the parking area.

8.9-5.5. Lot Area

A. Lot requirements. Lot size requirements shall be as specified under the RD district, the Bulk Restrictions Section Specific RD district requirements.

B. Lot requirements.

i. The minimum area in the RD district shall be three (3) acres.

ii. The minimum lot width, at the front yard line, shall be two hundred (200) feet.

8.9-5.6. Lot Coverage

8.9-5.7. Monotony Standards

8.9-5.8. Nonconformity

8.9-5.9. Obstructions

8.9-5.10. Parking & Loading

A. In the RD district, parking lots shall comply with the following requirements:

B. Parking facilities shall not be located in any required front yard, exterior side yard, or rear yard except that a maximum of eight (8) parking spaces may be permitted in the front yard for the purposes of convenience or short term parking.

C. Parking facilities where permitted shall not be located within twenty (20) feet of any interior property line. Where an interior yard adjoins the Interstate 88 right-of-way, the RD Research and Development District shall apply.

D. Off-street parking and loading requirements. Off-street parking and loading facilities accessory to uses allowed in the RD district, shall be provided in accordance with the regulations established in the Bulk Restrictions Section Off-street parking and loading, and in the RD Research and Development District and the Use Regulations Section of this ordinance.

8.9-5.11. Performance Standards

A. Noise standards shall be those measurement and administrative procedures most recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard

may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

8.9-5.12. Setbacks

A. Yard requirements.

i. Except as provided in the Bulk Restrictions Section Permitted obstructions in required yards, and except as provided in the following part, all yards shall be open and unobstructed from the ground level to the sky.

ii. Where a lot has frontage abutting both an arterial street and a lower classification street, the arterial street line shall be the front lot line.

iii. Where a lot has frontage abutting both a major collector street and a lower classification street, the major collector street line shall be the front lot line.

iv. Where a lot has frontage abutting two (2) streets having identical classification, the director of the city planning of Aurora shall determine the location of the front line of the zoning lot.

B. Yard requirements. Notwithstanding subsection the RD Research and Development District, the minimum yards required in the RD district shall be as follows:

i. Yards facing existing or proposed streets (not including interior circulation roads or drives within an individual tract): There shall be a required yard adjacent to each existing or proposed street that bounds an individual tract. Such required yard shall have not less than one hundred (100) feet in depth.

ii. Yards adjacent to interior property lines: There shall be a required yard adjacent to each interior side or rear lot line of not less than fifty (50) feet in width or depth respectively, except as provided in paragraph f. below.

iii. Yards facing interior private circulation streets: The required yard shall not be less than forty (40) feet, measured from the centerline of the roadway.

iv. Interstate 88: There shall be a seventy-five-foot building setback and a fifty-foot setback for any parking area for any property adjoining Interstate 88. Said setbacks shall be measured from the adjacent right-of-way line of Interstate 88.

v. Limited-access highway: There shall be fifty-foot setback for any building or structure or parking area for any property adjoining a limited access highway. Said setback shall be measured from the adjacent right-of-way line of said limited access highway.

vi. Yards adjacent to railroads: Requirements for yards adjacent to interior property lines shall not be applicable to buildings or structures erected adjacent to a railroad or railroad siding.

vii. Landscaping of required setback areas: As per the RD Research and Development District of this ordinance.

8.9-5.13. Signs

    A. Signs shall be permitted in the RD district in accordance with the provisions of the B-B Business-Boulevard District except that, for lots abutting Interstate 88, two (2) freestanding signs shall be permitted on each lot: one (1) along Interstate 88 and the other along other street.

    B. Signs. Signs shall be permitted in the RD district in accordance with the provisions of the B-B the Business-Boulevard District except that for lots abutting Interstate 88 two (2) freestanding signs shall be permitted on each lot: one (1) along Interstate 88 and the other along other street.

8.10. "ORI" Office, Research And Light Industry District.

    8.10-1. Title

        8.10-1.1. The Office, Research and Light Industry District shall be designated as "ORI" on the City of Aurora Zoning Map.

    8.10-2. Intent & Purpose

        8.10-2.1. Purpose

        A. The ORI office, research and light industry district is provided to support and complement the City of Aurora comprehensive plan, including (a) the land use and circulation plan, and (b) the physical development policies, which guides the compatible shaping of the present and future land use needs of the City of Aurora. The ORI district requirements are further designed to govern the location, intensity and methods for development of industrial areas in the City of Aurora. The regulations for the ORI district are designed to provide protection for existing developments while allowing new construction in accordance with current design standards.

        B. The regulations further provide for grouping office, research and light industrial uses compatible in scope of services and methods of operation. The ORI is designed to create a landscaped transition between it and adjacent residential, office, commercial, and manufacturing uses and to provide separation and to enhance the visual image of the city. Smoke and particulate matter, vibration, glare, odor, waste and noise are controlled by performance standards.

    8.10-3. Intent

        8.10-3.1. The ORI office, research and light industry district is intended to provide and maintain in a park-like setting, an environment suitable for and limited to research and development activities, engineering and testing activities, office uses, warehousing, and limited manufacturing that will not have adverse effects upon the environmental quality of the community. It groups compatible uses and promotes the economic development potential of the city.

    8.10-4. District Specific Regulations

        8.10-4.1. Rules

        A.

B. Building bulk requirements. Building bulk requirements shall be expressed in terms of minimum yard requirements and maximum heights, or in terms of floor area ratio (F.A.R.).

C. Additional regulations. Special uses granted to provide for yard variations in the ORI district shall comply with the following additional regulations:

   i. Site plan review. Each property owner or developer who shall request a special use for a yard variation in the ORI district shall submit a complete site plan, including building, parking and storage locations, access control, signage, and landscaping for the proposed development. The site plan shall be reviewed by the Aurora planning commission and approved by the Aurora city council.

D. Bonding requirements. Before any zoning certificate, excavation/fill permit or building permit is issued in the ORI district, the property owner or developer shall post a cash bond or irrevocable standby letter of credit with the City of Aurora to guarantee appropriate installation of planting and screening material required on the approved site plan. Fifty (50) percent of the cash bond or letter of credit shall be maintained by the City of Aurora for a period of one (1) year (growing season) after installation to assure continued growth of the landscape materials.

E. The business in the ORI district shall be located within a building or structure containing a permitted use and shall not contain advertising visible from the outside of the building or structure. Such business uses shall be primarily for the service and convenience of the tenants and employees of the ORI district in which located.

8.10-4.2. Definitions

8.10-5. Use Regulations

A. Permitted or special uses established in the ORI district shall comply with all required conditions:

   i. Not more than one (1) principal building shall be located on a zoning lot within the ORI district. Lot area or other criteria used to satisfy one (1) use cannot be counted again or be used to satisfy an additional use, except by a subdivision of land or by a planned development.

   ii. Every use, unless expressly exempted by this ordinance shall be operated in its entirety within a completely enclosed structure.

   iii. All permitted and special use activities shall be conducted within enclosed buildings and structures, except for off-street parking and off-street loading.

B. Permitted uses. The following uses are permitted:

   i. Permitted uses. In the ORI district, permitted buildings, structures, or uses of land as hereinafter listed, shall only be permitted under the conditions specified.

   ii. Laboratories, offices, and ancillary uses for research and development.

   iii. Production of prototype products when limited to the scale reasonably necessary for full investigation of the merits of a product, including commercial viability.

    iv. Pilot plants in which processes planned for use in production elsewhere can be treated to the extent reasonably necessary for full investigation of the merits of a product or process including commercial viability.

    v. Engineering and testing laboratories and offices.

    vi. Offices--business or professional; medical or dental.

    vii. Clinics--medical or dental.

    viii. Industrial activities, including, but not limited to, electronic, scientific and precision instruments manufacture and repair, experimental product development and plastic products design and assembly, cloth products manufacture, light machinery production and assembly, printing and publishing.

    ix. Warehousing and distribution facilities, but excluding motor freight terminals.

    x. Medical and dental research laboratories.

    xi. Hotel and motel or combination office hotel/motel, with fifty (50) or more guest rooms or suites, and those with fewer than fifty (50) rooms or suites that were established prior to the date of this ordinance which must be staffed with twenty-four-hour clerk service, maid and janitor services.

    xii. Artwork, commercial graphics and drafting services. Blueprinting and photo static services. Duplicating and letter service firms.

    xiii. The temporary use of land for the installation, maintenance and operation of facilities used by contractors in the ordinary course of construction related to a parcel of land of which the temporary construction yard is an integral part, provided such facilities shall be located no less than five hundred (500) feet from any building used for residential purposes (buildings not being a part of the development site subdivision--planned development and provided that the period of such temporary use shall not exceed the duration of the construction for the development site.

    xiv. To be permitted both as freestanding facilities and as incidental to and including in office/commercial buildings:

        a. Banks and financial institutions including drive-in or drive-through facilities when accessory to principal use.

        b. Restaurants, tearoom, cafe when the establishment is not of the drive-in or drive-through type.

        c. Hotels-motels with fifty (50) or more guest rooms must be staffed with twenty-four-hour clerk service, maid and janitor services.

        d. Laboratories, commercial (medical, dental, research, experimental and testing).

        e. Recreation facilities, health club, including but not limited to gymnasium, skating rink, indoor tennis, racquetball, or similar facility within fully enclosed structure.

8.10-5.2. Special uses. Special uses, as listed in the ORI district may be allowed subject to the issuance of a special use permit in accordance with the provisions of the Administration Section Special uses.

    A. Special uses. The following special uses may be permitted in specific situations in accordance with the procedures outlined in the Administration Section Special uses of this ordinance, as appropriate:

i. Planned unit development. The primary use within a planned unit development shall be one or more of the principal uses, and may include any of the following uses:

    a. Public and private schools.

    b. Cultural and recreational facilities, auditoriums, and public gathering places, chapels, churches, mosques, synagogues, temples, and other places of worship along with their related indoors and recreational facilities.

ii. Civic buildings. Governmental offices and other public buildings excluding maintenance shops and outdoor storage.

iii. Height limit increase as specified in the Bulk Restrictions Subsection of this section of this ordinance.

iv. Heliports/commercial and private, need not to be enclosed.

v. Public and private utility facilities.

vi. Floor area ratio (F.A.R.) premiums as specified in the Bulk Restrictions Subsection of this section of this ordinance.

vii. Warehousing, receiving, and moving van distribution centers.

viii. Sales and storage of building materials and products.

ix. Food manufacture, packaging and processing.

x. Banks and financial institutions including drive-in or drive-through facilities.

xi. Building trades, show rooms and shops.

xii. Processing, finishing and assembly facilities.

xiii. Warehousing and distribution facilities.

xiv. Day care center.

xv. Railroad passenger stations when not located on railroad property.

xvi. Clubs, lodges and fraternal organizations.

xvii. Community Theater, amateur.

xviii. Health clubs.

xix. Private membership clubs. Private parks.

xx. Swim clubs, tennis, handball and racquetball club and similar activities, need not to be enclosed.

xxi. Business and professional schools. Corporate training centers. Data processing and electronic training center.

xxii. Other non-retail office, financial, institutional and industrial uses, not specifically listed above when found to have economic and performance compatibility uses on adjoining properties.

xxiii. Accessory uses, retail. Upon application to an issuance by the division of inspection and permits for a permit thereof, and incidental or secondary only to a principal building containing forty thousand (40,000) or more square feet of gross floor area, one (1) or more uses hereinafter set forth may be operated as accessory uses if each such use meets the following conditions: (1) is provided for the convenience of the owner and/or tenants, (2) does not have exterior signs of any type, (3) does not

APPENDIX A ZONING          140

have separate outside entrance facing any street and (4) is not evident from any street:

a. Book and stationery store.

b. Barbershop, or beauty parlor.

c. Candy and ice cream shops, retail only.

d. Drugstores.

e. Camera and photographic supply shops for retail.

f. Gift shop. Notions store. Tobacco store. Newsstand.

g. Office supply store.

h. Optician, optometrist.

i. Postal substations. Telegraph office.

j. Travel bureau and transportation ticket office.

k. Blueprinting and photo static establishments.

l. Photographic development and processing drop-off service only, no physical processing on premises.

m. Parcel delivery station of not more than two hundred fifty (250) square feet.

n. Typewriter, computer, adding machine and office machine sales and drop-off repair service.

o. Valet shop--cleaning pick-up and drop-off only--no plant on premises.

8.10-6. Bulk Restrictions

8.10-6.1. Building, Dwelling and Structure Standards

8.10-6.2. Floor Area Ratio

8.10-6.3. Height

A. The maximum height and floor area ratio for all buildings and structures in the ORI district shall be as follows:

B. The maximum height for all buildings and structures in the ORI district shall be one hundred (100) feet; however, this limit may be increased to a maximum of one hundred fifty (150) feet by a special use permit issued by the city council and after public hearing before the planning commission in accordance with the provisions of the Administration Section of this ordinance. Any such increased height shall be reasonably required for the particular research or development use to which the property is to be put.

C. The basic floor area ratio in the ORI district shall be 0.70. However, for those buildings and structures that provide special design improvements, a floor area ratio premium may be granted as a special use by the city council and after public hearings before the planning commission in accordance with the provisions of the Administration Section of this ordinance. This premium may be added to the basic floor area ratio in accordance with the following:

i. If seventy-five (75) percent or more of the required parking is provided underground or within the building, then a floor area ratio premium of 0.20 shall be allowed.

ii. As the lot size increases, a floor area ratio premium of 0.02 will be granted for each additional acre in lot size above two (2) acres to a maximum of ten (10) acres.

### 8.10-6.4. Landscaping

A. All required setback areas shall be extensively landscaped with a variety of trees and shrubs. Nonliving material may be used to complement a small percentage of the area to be landscaped. Landscaping plans shall be submitted for review and approval by the director of city planning.

B. All outside storage areas of goods, materials, products, and trash containers shall be enclosed with fences or landscaping of a [at] least seventy-five (75) percent opacity. Lighting of the facility shall be directed away from surrounding properties.

C. Parking and loading requirements shall be as set forth in the Bulk Restrictions Section of this ordinance. All off-street parking and off-street loading areas shall be landscaped and maintained. Landscaping shall be arranged in such a way as to break up the mass of parking area.

### 8.10-6.5. Lot Area

A. Lot requirements.

i. The minimum area in the ORI district shall be two (2) acres, except for a planned unit development that shall have more than two (2) acres.

ii. The minimum lot width, at the front yard line, in the ORI district shall be one hundred fifty (150) feet.

### 8.10-6.6. Lot Coverage

### 8.10-6.7. Monotony Standards

### 8.10-6.8. Nonconformity

A. Buildings, structures, lots or tracts of land shall be used only for a permitted use or special use as provided in the ORI district, except for the following:

i. Use lawfully established on the effective date of this ORI Office, Research and Light Industry District ORI but not in conformance with the provisions of the ORI district, shall be rendered as a legal nonconforming use subject to the regulations of nonconforming buildings and uses subsection of the Bulk Restrictions Section of the Aurora zoning ordinance.

ii. A special use in existence on the effective date of this the ORI Office, Research and Light Industry District ORI, shall be allowed to continue, subject to the provisions set out in each special use ordinance.

iii. Buildings, structures or uses already established as nonconforming on the effective date of this the ORI Office, Research and Light Industry District ORI and rendered nonconforming by the provisions hereof, shall be subject to the regulations of the Bulk Restrictions Section nonconforming buildings and uses of the Aurora zoning ordinance.

### 8.10-6.9. Obstructions

8.10-6.10. Parking And Loading

A. Off-street parking and loading facilities accessory to uses allowed in the ORI district, shall be provided in accordance with the regulations established in the Bulk Restrictions Section Off-street parking and loading, and in this subsection of this ordinance.

B. Parking lots. In the ORI district, parking lots shall comply with the following requirements:

   i. Parking facilities shall not be located in any required front yard, exterior side yard, or rear yard.

   ii. Parking facilities where permitted shall not be located within ten (10) feet of any property line. Where an interior yard adjoins the Interstate 88 right-of-way, the yard requirements pertaining to Interstate 88 shall apply.

   iii. These requirements shall apply only to the minimum yards (thirty (30) feet along roadways and twenty (20) feet along interior side property lines) and the transitional area setbacks. Off-street facilities shall be allowed in the additional setback required for additional height.

8.10-6.11. Performance Standards

A. Standards Processes and equipment employed in the ORI district shall comply with the provisions of performance standards as set forth in this section of this ordinance.

B. It is the intent of this section to provide that business utilities, light industry, research and related activities shall be established and maintained with proper appearance from the streets and adjoining properties and to provide that each such permitted uses shall be a good neighbor to adjoining properties by the control of emission of noise, odor, glare, light, vibration, smoke, particulate matter, gases, and waste.

C. It is further the intent of this section to state the conditions of construction and operation with which uses will be expected to comply. In many cases the relation of a prospective use to all these performance standards cannot be judged properly at the time of building permit issuance. In such cases, the recipient of the building permit should note that these standards, like any other provisions of this ordinance, are continuing obligations and that all uses shall be expected to operate in compliance with these standards. The building plans shall bear the signature of a qualified professional stating that all performance standards will be complied with based upon the submitted building plans. The city retains the option to conduct its own investigation to determine compliance with the performance standards.

D. Compliance. Any use established as hereinafter identified in the RD research and development and ORI office, research and light industry districts, shall be so constructed and operated as to comply with the performance standards hereinafter set forth governing noise, odors, glare, exterior lighting, vibration, smoke, particulate matter, gases, hazards, waste, and others. No use already established on the effective date of this ordinance shall be so altered or modified as to conflict with or further conflict with the performance standards applicable

to such cases. The performance standards set forth in this subsection of this ordinance shall be complied with and any use that fails to comply with these standards shall be in violation of this ordinance and shall be subject to penalties provided for such violation.

E. Measurement. Each measurable standard shall be measured at the appropriate indicated location in accordance with the provisions of this subsection of this ordinance.

F. Enclosures. In the RD research and development and ORI office, research and light industry districts, all activities involving manufacturing, fabricating, processing, assembly, disassembly, repairing, cleaning, servicing, and testing shall be conducted in completely enclosed buildings. The storage of materials, products and goods may be outdoors, in interior side or rear yards only, if completely screened from public view. Outdoor storage or uncontained bulk materials subject to dusting such as powder, grain, sand and coal is prohibited.

G. Administration. Applications pertaining to the use or change of use of land, building, or structures in the RD research and development or ORI office, research and light industry districts shall be accompanied by a certificate from a scientific laboratory or consultant approved by the City of Aurora certifying compliance with the performance standards set forth in this subsection of this ordinance. In the event that a building or structure is erected in an RD research and development or ORI office, research and light industry districts, but the particular use is not known (for example, speculative buildings), then no such certification will be required until such time as the specific use can be designated.

H. Standards

    i. Noise standards shall be those measurement and administrative procedures most-recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the result of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

    ii. Odors. Odors from any use hereafter begun shall not be discernible at the property line and shall not exceed the odor threshold concentration. The measurement of the threshold odor shall be in accordance with the American Society for Testing Materials Method D1391-57 "Standards Method for Measurement of Odor in Atmosphere (Dilution Method)" (Philadelphia: American Society of Testing Materials, 1957). Detailed plans for the prevention of odors crossing property lines may be required before the issuance of a building permit.

iii. Glare. Glare, whether direct or reflected, such as from floodlights or high temperature processes, and as differentiated from general illumination, shall not be visible at any property line.

iv. Exterior lighting. Any lights used for exterior illumination shall direct light away from adjoining properties.

v. Vibration. Vibration shall not be discernible at any property line to the human sense of feeling for three (3) minutes or more duration in any one (1) hour. No vibration at any time shall produce an acceleration of more than 0.1 gravities or shall result in any combination of amplitudes and frequencies beyond the "safe" range of Table 7 United States Bureau of Mines Bulletin No. 442 "Seismic Effects of Quarry Blasting", on any structure. The methods and equations of said Bulletin No. 442 shall be used to compute all values for the enforcement of this provision.

vi. Smoke. Measurement shall be at the point of emission. The Ringelmann Smoke Chart published by the United States Bureau of Mines shall be used for the measurement of smoke. Smoke not darker or more opaque than No. 0 on said chart may be emitted except that smoke not darker or more opaque than No. 1 on said chart may be emitted for periods not longer than four (4) minutes in any thirty (30) minutes. These provisions, applicable to visible smoke, shall also apply to visible smoke of a different color but with an equivalent apparent opacity.

vii. Particulate matter. Solid or liquid particles shall not be emitted at any point in concentration exceeding 0.1 grains per cubic foot of the conveying gas or air. For measurement of the amount of particles in gases resulting from combustion, standard corrections shall be applied to a stack temperature of five hundred (500) degrees Fahrenheit and fifty (50) percent excess air.

viii. Hazard. Any operation allowed in the RD Research and Development district and the ORI Office, Research and Light Industry District shall be carried on with reasonable precautions against fire and explosion hazards.

ix. Gases. Fumes or gases shall not be emitted at any point in concentrations or amounts that are noxious, toxic, or corrosive. The values given in Table 1 (Industrial Hygiene Standards--Maximum Allowable Concentration for an eight-hour day, five (5) days per week), Table III (Odor Thresholds), Table IV (Concentrations of Substances Causing Pain in the Eyes), and Table V (Exposures to Substances Causing Injury to Vegetation) in the latest revision of Chapter 5, "Physiological Effect", that contains such tables, in the "Air Pollution Abatement Manual", by the Manufacturing Chemists' Association, Inc., Washington, D.C., are hereby established as guides for the determination of permissible concentration or amounts. Detailed plans for the elimination of fumes or gases may be required before the issuance of a building permit.

x. Waste. All sewage and industrial wastes shall be treated and disposed of in such a manner as to comply with the water quality standards applicable to the classification assigned to the receiving water by the city, the State of Illinois, and the U.S.E.P.A. Approval of the Illinois Environmental Protection Agency of all plans for waste disposal facilities shall be required before issuance of any building permit.

xi. All outdoor storage areas of goods, products, materials, supplies, machinery, equipment, or commercial vehicles, shall be enclosed to a height of eight (8) feet above grade and screened to an opacity of not less than seventy-five (75) percent as follows:

a. A fence eight (8) feet above grade, or

b. Berming and/or landscaping screen, or

c. A combination of fencing, berming, and/or landscaping.

d. Except or [as] otherwise provided by special use herein, establishments of the drive-in or drive-through type are prohibited.

e. Buildings existing on the date of this the ORI Office, Research and Light Industry District ORI district may be converted to a permitted or special use if in compliance with the zoning ordinance, the building code, and/or other applicable legislation.

f. All processes and equipment in the ORI district shall comply with the provisions of performance standards as set forth in the ORI Office, Research and Light Industry District of this ordinance.

g. Loading facilities visible from the tollway, public right-of-way, or main parking area shall be screened to a minimum of ninety (90) percent opacity. Screening may be achieved using landscaping or architectural materials and shall be designed as an integral part of the development.

h. Rooftop equipment and heating, ventilating, and air-conditioning equipment visible from the tollway, public right-of-way, or main parking area, shall be screened to a minimum of ninety (90) percent opacity. Screening may be achieved using landscaping or architectural materials and shall be designed as an integral part of the development.

i. Corrugated metal panels shall not comprise more than fifty (50) percent of a building facade.

j. Building facades, consisting of pre-engineered material installed with exposed fasteners, visible from the tollway, right-of-way, or main parking area, shall be screened to an opacity of one hundred (100) percent. Screening may be achieved using landscaping or architectural materials and shall be designed as an integral part of the development.

k. All chain-link fencing visible from the tollway, right-of-way or main parking area shall be screened to at least ninety (90) percent opacity. Screening may be achieved using landscaping or architectural materials and shall be designed as an integral part of the development.

l. All refuse areas visible from the tollway, right-of-way, or main parking area, shall be screened to at least ninety (90) percent opacity. Screening may be achieved using landscaping or architectural material and shall be designed as an integral part of the development.

8.10-6.12. Setbacks

A. Setback Locations

i. Except permitted obstructions as provided in the Bulk Restrictions Section and except as provided in the following section, all yards shall be open and unobstructed from the ground level to the sky.

ii. Where a lot has frontage abutting both an arterial street and a lower classification street, the arterial street line shall be the front lot line.

iii. Where a lot has frontage abutting both a major collector street and a lower classification street, the major collector street line shall be the front lot line.