iv. Where a lot has frontage abutting two (2) streets having identical classification, the director of Aurora city planning shall determine the location of the front line of the zoning lot.

B. Setback Requirements

i. Yards facing existing or proposed streets (not including interior circulation roads or drives within an individual tract): There shall be a required yard adjacent to each existing or proposed street that bounds an individual tract. Such required yard shall not be less than thirty (30) feet in depth, provided, however, that such yard shall be increased in depth by one (1) foot for each three (3) feet in height by which any building or structure on the lot exceeds a height of thirty (30) feet, and also provided, however, that such a yard located across a street from a residential district shall equal one (1) foot in depth for each foot of building height but in no event shall the yard be less than one hundred (100) feet in depth.

ii. Yards adjacent to interior property lines: There shall be a required yard adjacent to each interior side/rear lot line of not less than twenty (20) feet in depth except that such yard shall be increased by one (1) foot for each three (3) feet in height that any building or structure on the lot exceeds a height of thirty (30) feet, and except that requirements for side/rear yards adjacent to interior side/rear property lines shall not be applicable to buildings or structures erected adjacent to a railroad or a railroad siding. Where any interior side/rear property line abuts upon a residential district, there shall be provided a required yard of one (1) foot in depth for each foot of building height but in no event shall this yard be less than one hundred (100) feet in depth.

iii. Yards facing interior private circulation streets: The required yard shall not be less than forty (40) feet, measured from the centerline of the roadway.

iv. Interstate 88: There shall be a seventy-five-foot building setback and a fifty-foot setback for any parking area for any property adjoining Interstate 88. Said setbacks shall be measured from the adjacent right-of-way line of Interstate 88.

v. Limited access highway: There shall be fifty (50) feet setback for any building or structure or parking area for any property adjoining a limited access highway. Said setback shall be measured from the adjacent right-of-way line of said limited access highway.

vi. Yards adjacent to railroads: Requirements for yards adjacent to interior property lines shall not be applicable to buildings or structures erected adjacent to a railroad or railroad siding.

vii. Landscaping of required setback areas: As per the ORI Office, Research and Light Industry District of this ordinance.

8.10-6.13. Signs

# SECTION 9. MANUFACTURING DISTRICTS

9.1. Purpose.

9.1-1. The manufacturing districts set forth herein are established to protect public health, safety, comfort, convenience and the general welfare, and to protect the economic base of the city, as well as the value of real estate by regulating manufacturing development in appropriate locations. These general objectives include, among others, the following specific objectives:

APPENDIX A ZONING                    147

9.1-1.1. To protect established residential areas, and the health of families living therein, by restricting those nearby manufacturing activities which may create offensive noise, vibrations, smoke, dust, odors, heat, glare, fire hazards and other objectionable influences, to those areas which are appropriate therefore.

9.1-1.2. To provide adequate space in appropriate locations for all types of manufacturing and related activities so that economic structure of the community may be strengthened, and that employment opportunities may be found in the interest of public prosperity and welfare.

9.1-1.3. To provide more space for manufacturing activities in locations accessible to rail and highways, so that the movement of raw materials, finished products and employees can be carried on efficiently and with a minimum of danger to public life and property.

9.1-1.4. To establish proper standards of performance, which will restrict obnoxious manufacturing activities, while at the same time encourage and permit the manufacturing activities which have adopted facilities for the processing of finished products without adversely affecting the health, happiness, safety, convenience and welfare of the people living and working in nearby areas.

9.1-1.5. To protect manufacturing districts from incompatible uses of land by prohibiting the use of such space for new residential development, thereby preserving the land for a more appropriate use in accordance with the plans for city improvement and development.

9.1-1.6. To promote the most desirable use of land in accordance with a well considered plan of land use for all of the city, to conserve the use of property, to promote stability of manufacturing activities and related development, and to protect the character and established development in each area of the community, to enhance and stabilize the value of land and to protect the tax base of the city.

9.2. "M-1" Manufacturing district, limited.

9.2-1. Title

9.2-1.1. The Limited Manufacturing District shall be designated as "M-1" on the City of Aurora Zoning Map

9.2-2. Intent & Purpose

9.2-3. District Specific Regulations

9.2-3.1. Rules

9.2-3.2. Definitions

9.2-4. Use Regulations

9.2-4.1. Permitted uses: Since most uses permitted in this district will be in close proximity to residential districts, it is hereby declared that performance standards shall be high, and that all manufacturing, processing or assembly of materials and products must be carried on in a manner not injurious or offensive to the occupants of adjacent premises by reason of the emission of odors, fumes or gases, dust, smoke, noise, vibrations or fire hazards. Permitted uses are:

A. Any use permitted in a B district, but not including residences or apartments, except such dwelling accommodations as may be needed to house a caretaker or watchman employed on the premises, and their families.

B. Adult business uses otherwise complying with the License, Permits and Miscellaneous Business Regulations Chapter of the Aurora Municipal Code of Ordinances.

C. Advertising displays manufacture.

D. Artificial limb manufacture.

E. Apparel and other products manufactured from textiles.

F. Awnings, Venetian blinds and window shades manufacture.

G. Bakeries, wholesale.

H. Batteries, manufacture and rebuilding.

I. Bedspring and mattress manufacture.

J. Belting manufacture.

K. Bicycle manufacture.

L. Brooms and brushes manufacture.

M. Boat building and repair.

N. Building equipment yards; yards for building materials; lumber, coal, sand and gravel yards; and yards for contracting equipment, maintenance or operating equipment of public agencies, or public utilities, or materials or equipment of similar nature.

O. Bus line shops and garages.

P. Canning and preserving.

Q. Canvas and canvas products manufacture.

R. Carpet and rug cleaning.

S. Carpet manufacture.

T. Cartage (local), express hauling or storage yards.

U. Cement block manufacture.

V. Ceramic products, pottery, and glazed tile manufacture.

W. Chick hatcheries.

X. Cleaning and dyeing establishments when employing facilities for handling more than one thousand (1,000) pounds of dry goods per day.

Y. Cigarette and cigar manufacture.

Z. Coated fabrics, except rubberized, manufacture.

AA. Cork and cork products manufacture.

BB. Cosmetics, drugs and perfumes manufacture.

CC. Creameries and dairies.

DD. Drapery and bedding manufacture.

EE. Drugs and pharmaceutical products manufacture.

FF. Electric motors and generators manufacture.

GG. Electrical equipment appliances manufacture.

HH. Engraving.

II. Felt manufacture.

JJ. Food processing, packaging and distribution.

KK. Fur goods, not including tanning or dyeing, manufacture.

LL. Glass products, from previously manufactured glass.

MM. Heating appliances and sheet metal products, including stoves and ranges, manufacture.

NN. Hosiery manufacture.

OO. Ice cream and ice manufacture.

PP. Jewelry manufacture.

QQ. Kennel with outdoor pens and runs.

RR. Laundries, more than one thousand (1,000) pounds' daily capacity.

SS. Machine shops and metal products' manufacture, when not equipped with heavy (exceeding fifty-ton)[,] pressure punch presses, drop forges, riveting and grinding machines or any other equipment which may create noise, vibrations, smoke, odors, heat, glare or fire hazards, exceeding the performance standards of this section.

TT. Major automotive repair, as defined in the Rules and Definitions Section of this ordinance, but only when confined within an enclosed structure (including autos needing work), and only when such lot is located at least two hundred fifty (250) feet away from any residential district or lot with residential use.

UU. Medical and dental supplies manufacture.

VV. Metal polishing and plating.

WW. Motor freight terminal, private.

XX. Musical instrument manufacture.

YY. Optical goods and equipment manufacture.

ZZ. Pattern-making manufacture.

AAA. Piano and organ manufacture.

BBB. Perfume and cosmetics manufacture.

CCC. Plastic products, but not including the processing of the raw materials, manufacture.

DDD. Public utility electric substations and distribution center, gas regulation centers.

EEE. Rubber products (small), such as washers, gloves, footwear, bathing caps, and tire recapping, but excluding rubber and synthetic rubber processing, manufacture.

FFF. Scientific and precision instruments manufacture.

GGG. Shoe and boot manufacture.

HHH. Storage of household goods.

III. Storage and sale of trailers, including truck trailers, farm implements and other similar equipment on an open lot.

JJJ. Sporting and athletic equipment manufacture.

KKK. Storage of flammable liquids, fats or oil in tanks, each of fifty thousand gallons or less capacity, but only after the locations and protective measures have been approved by local governing officials.

LLL. Stone, marble and granite grinding and cutting.

MMM. Textiles--spinning, weaving, dyeing and printing.

NNN. Tools and hardware, such as hand tools, bolts, nuts, screws, cutlery, house hardware, locks and plumbing appliances, manufacture.

OOO. Tool and die [dye] shops.

PPP. Truck and trailer, over one-and-one-half-ton capacity, rental agencies.

QQQ. Truck tractor, trailer or bus storage or parking yard, lot or garage.

RRR. Truck terminal, including exchange and handling of freight.

SSS. Toys and children's vehicles, manufacture.

TTT. Wire brush manufacture.

UUU. Any other establishment that can be operated in compliance with the requirements of this section, without creating objectionable noise, odor, dust, smoke, gas, fumes or vapor, and that is a use compatible with the use and occupancy of adjoining properties.

9.2-4.2. Accessory Uses

9.2-4.3. Special Uses

9.2-5. Bulk Restrictions

9.2-5.1. Building, Dwelling and Structure Standards

9.2-5.2. Floor Area Ratio

9.2-5.3. Height

A. No building or structure shall be erected or structurally altered to exceed a height of four (4) stories nor shall it exceed forty-five (45) feet in height except as provided in the Bulk Restrictions Section.

9.2-5.4. Landscaping

9.2-5.5. Lot Area

    A. The maximum ground area occupied by all buildings shall be not more than sixty (60) percent of the area of the lot or tract on which a building permit has been issued.

9.2-5.6. Lot Coverage

9.2-5.7. Monotony Standards

9.2-5.8. Nonconformity

9.2-5.9. Obstructions

9.2-5.10. Parking and Loading

9.2-5.11. Performance Standards

    A. Noise: Noise standards shall be those measurement and administrative procedures most recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

    B. Smoke and particulate matter: The emission of smoke and dusts by manufacturing plants in an amount sufficient to create a general nuisance to adjoining properties shall be prohibited. Total emission of smoke and particulate matter shall be limited to the following:

        i. Ringelmann requirements: All smoke and the emission of all other particulate matter in quantities sufficient to produce an opacity at any point greater than Ringelmann 3 is prohibited. The only exception shall be a plume consisting entirely of condensed steam. A Ringelmann 1 unit is defined as twenty-percent density for one (1) minute. No more than fifteen (15) units of Ringelmann smoke shall be permitted per hour and no smoke more intense than Ringelmann 2, except that during one (1) hour of a twenty-four-hour day, thirty (30) units of smoke may be emitted but with no smoke more intense than Ringelmann 3. The total quantity of emitted solids shall not exceed one (1) pound per hour, per acre of lot area.

C. Odors: No odor shall be emitted by any use permitted in this district in such quantities as to be readily detectable by an average observer at any point on the boundary line of the premises or beyond.

D. Noxious gases: Processes and operations of permitted uses capable of dispersing gases or toxic particulates into the atmosphere must be hooded or otherwise suitably enclosed. The emission of such toxic gases or particulate matter shall be from a stack.

E. Glare and heat: Operations producing intense light or heat shall be performed within an enclosed building and not be visible beyond any lot line bounding the property whereon the use is conducted.

F. Vibrations: There shall be no uses that create heavy earth-shaking vibrations that are noticeable at the property line of the subject premises.

G. Screening. Screening of exterior storage areas shall be required per the Bulk Restrictions Section.

9.2-5.12. Setbacks

A. The following minimum setbacks shall be provided and maintained in connection with any building or parking lot. Front yard parking shall be regulated by this subsection or the Bulk Restrictions Section, whichever is more restrictive. The parking setback provisions of this subsection shall supersede the provisions of the Bulk Restrictions Section.

B. Front, exterior side or exterior rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Tollway | 75 |
| Arterial Street | 30 |
| Collector or Local Street | |
| Front or Exterior Rear | 25 |
| Exterior Side | 15 |
| Setback exceptions. When exterior yards abut a collector or local street that includes residentially zoned lots on the same block, if fifty (50) percent or more of the existing buildings are developed at an established setback of less than the required setback, any new M1 building may conform to the average established setback. If such average established setback is between fifteen (15) feet and thirty (30) feet, any new M1 building shall be set back at least an equivalent distance. In no case shall a setback of more than thirty (30) feet be required. | |

i. The property was a lot of record on or before November, 1957.

ii. A landscape plan is submitted by the owner and approved by the planning director and zoning administrator.

iii. The owner commits in writing to have the approved landscaping established no later than June 30th or October 30th following the approval of the landscape plan, whichever shall occur first.

iv. The owner demonstrates that the required setbacks cannot be met due to physical or practical difficulties.

C. Interior side or rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Fox River | 30 |
| Residential | 25 |
| All other Zoning Districts | 15 |
| Interior yards abutting residential district. There shall be no structure, open storage of materials or equipment, or the parking of vehicles in a required interior yard abutting a residential district. There shall be no paving in such required setbacks except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other driveways or auto maneuvering areas are permitted in the interior yards. | |

9.2-5.13. Signs

9.3. "M-2" Manufacturing District, General.

9.3-1. Title

9.3-1.1. The General Manufacturing District shall be designated as "M-2" on the City of Aurora Zoning Map.

9.3-2. Intent & Purpose

9.3-3. District Specific Regulations

9.3-3.1. Rules

9.3-3.2. Definitions

9.3-4. Use Regulations

9.3-4.1. Permitted uses: The uses permitted in this district generally include those manufacturing and industrial activities which cannot be operated economically without creating some conditions which may be obnoxious or objectionable to the occupants of adjoining properties and for that reason, must be grouped in areas where similar industrial uses are now located or where the permitted uses will be best

located in accordance with the comprehensive land use plan of the city, which is designed to protect the welfare of the community. Permitted uses are:

A. Any Use Permitted In The M-1 District.

B. Aircraft, Assembly And Testing Of Fuselage And Motors.

C. Asbestos And Asbestos Products, Manufacture.

D. Automobiles, Trucks And Trailers, Manufacture.

E. Alcoholic Beverages, Manufacture.

F. Blacksmith Shop.

G. Blast Furnaces, Steel Works Or Rolling Mills.

H. Boiler Works.

I. Box And Crate Manufacture.

J. Brass Foundry.

K. Brick, Tile And Terra-Cotta Manufacture.

L. Building Materials Such As Prefabricated Houses, Composition Wallboards, Partitions And Panels.

M. Cement Products.

N. Chalk Manufacture.

O. Chemicals, Not Including Those That May Be Inflammable Or Explosive.

P. Charcoal Manufacture.

Q. Coffin Manufacture.

R. Cooperage Works.

S. Corrugated Metal Products.

T. Cotton Ginning And Cotton Wadding.

U. Cottonseed Oil Manufacture.

V. Dyes; Aniline, Ink Pigments And Others, Manufacture.

W. Feed Milling And Processing.

X. Grain Elevators.

Y. Glass Blowing And Manufacture.

Z. Gelatin, Vegetable And Animal.

AA. Graphite, And Graphite Products, Manufacture.

BB. Hemp Products, Manufacture.

CC. Ink From Primary Raw Materials, Including Colors And Pigment.

DD. Linoleum Manufacture.

EE. Lumber, Preserving Treatment, Processing, Sawmills, And Planing Mills.

FF. Metal Stamping And Extrusion Of Metal Products.

GG. Metal Foundries And Casting.

HH. Machinery, Heavy Manufacturing And Repair, Including Electrical, Construction, Mining, And Agriculture, Manufacture.

II. Meat And Fish Products, Packing And Processing Of, But Not Including Slaughtering And Glue And Size Manufacture.

JJ. Motor Testing Or Internal Combustion Motors, Manufacture.

KK. Porcelain Products--Such As Bathroom And Kitchen Equipment, Manufacture.

LL. Railroad Equipment--Such As Railroad Car And Locomotive Manufacture.

MM. Rubber Products, Including Tires And Tubes Manufacture.

NN. Wax Products, Manufacture From Paraffin.

OO. Wool Scouring And Pulling.

9.3-4.2. Conditional permitted uses: In addition to the preceding uses, the following uses may be permitted if located more than five hundred (500) feet from any part of an R district and subject to the approval of the city council by specific ordinance and then only after a hearing before the Aurora zoning board of appeals who shall provide the council with findings regarding whether or not the proposed use will be injurious to the public welfare and the surrounding neighborhood, and further whether or not the proposed use will be contrary to the spirit and purpose of this ordinance. The city council shall be guided by their findings, but shall not be bound thereby.

A. Animal Slaughterhouse And Stockyards.

B. Acid Manufacture.

C. Ammonia, Bleaching Powder And Chlorine Manufacture.

D. Arsenal.

E. Asphalt Manufacture Or Refining.

F. Celluloid Manufacture Or Treatment.

G. Cement, Gypsum, Lime Or Plaster Of Paris Manufacture.

H. Coke Ovens.

I. Crematory.

J. Creosote Treatment Or Manufacture.

K. Disinfectant, Insecticide Or Poison Manufacture.

L. Distillation Of Bones, Coal Or Wood.

M. Dyestuff Manufacture.

N. Fat Rendering.

O. Fertilizer Manufacture.

P. Fireworks Or Explosive Manufacture Or Storage.

Q. Gas (Illuminating Or Heating) Manufacture.

R. Glue, Sizing Or Gelatin Manufacture.

S. Gunpowder Manufacture And Storage.

T. Incinerator Or Reduction Of Garbage, Dead Animals, Offal Or Refuse, Except For Municipal Purposes.

U. Junkyards And Automobile Wrecking Yards when wholly enclosed by a solid wall or slightly type fence, not less than seven (7) feet in height, and no material shall be piled or stacked to a height in excess of fifteen (15) feet above the ground level.

V. Paint, Oil (Including Linseed), Shellac, Turpentine, Lacquers Or Varnish Manufacture.

W. Petroleum Refining.

X. Rock Crushing.

Y. Rubber Or Gutta-Percha Manufacture Or Treatment.

Z. salt Works.

AA. Sauerkraut, Sausage Or Bologna Manufacture.

BB. Smelters.

CC. Stone Mill Or Quarry.

DD. Sulfuric, Nitric, Hydrochloric, Or Picric Acid Manufacture.

EE. Tallow, Grease Or Lard Manufacture Or Refining.

FF. Tar Distillation Or Manufacture.

GG. Tar Roofing Or Waterproofing Manufacture.

HH. Vinegar Manufacture.

II. Yeast Plant.

JJ. And, in general, those uses which have been declared a nuisance in any court of record or which are or may be unreasonably obnoxious or offensive in the opinion of the zoning administrator by reason of the emission of odor, vapor, smoke, or gas. When the boundaries of an M-2 district are adjacent to R residential or B residential districts, the regulations governing noise shall conform to the regulations provided for in the B-3 Business Wholesale District.

9.3-4.3. Special Uses

9.3-4.4. Accessory Uses

9.3-5. Bulk Restrictions

9.3-5.1. Building, Dwelling and Structure Standards

9.3-5.2. Floor Area Ratio

9.3-5.3. Height

A. No building or structure shall hereafter be erected or structurally altered to exceed a height of six (6) stories or seventy-five (75) feet, except as provided in  the Bulk Restrictions Section.

9.3-5.4. Landscaping

9.3-5.5. Lot Area

9.3-5.6. Lot Coverage

9.3-5.7. Monotony Standards

9.3-5.8. Nonconformity

9.3-5.9. Obstructions

9.3-5.10. Parking and Loading

9.3-5.11. Performance Standards

A. Noise: Noise standards shall be those measurement and administrative procedures most-recently adopted by the State of Illinois and enforced by the Illinois Environmental Protection Agency, Division of Land/Noise Pollution Control. All uses within this district shall not exceed the sound pressure levels as provided therein. Complaints regarding noise shall be forwarded by a complainant to the State of Illinois Noise Pollution Control Board for hearing and decision in accordance with the rules and regulations of said board. Nothing contained herein shall prevent any official or officer of the city from filing a complaint independently or on behalf of a private citizen with said board and in that regard may make arrangements to conduct an independent measurement for noise compliance forwarding the results of such measurement to the board. All decisions and findings of said board shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided. In the event that the state does not investigate a complaint by measuring for noise compliance within ninety (90) days of registration, the city may proceed on its own to investigate the complaint using the State of Illinois Standards described above.

B. Smoke and particulate matter. The emission of smoke or dusts in an amount sufficient to create a general nuisance to occupants of adjoining properties or to the occupants in the general area wherein the use is located shall be prohibited.

C. Odors. No odors shall be emitted by any use permitted in this district in such quantities as to be readily detectable by an average observer at any point on the boundary line of the nearest residential or business district.

D. Noxious gases. Processes and operations of permitted uses capable of dispersing gases or toxic particulates into the atmosphere must be hooded or otherwise suitably enclosed. The emission of such toxic gases of particulate matters shall be from a stack not less than twenty-five (25) feet in height.

E. Glare and heat. Operations producing intense light or heat, when adjacent to a residential or business district, shall be performed within an enclosed building and not be visible beyond the boundary separating the subject premises from any adjoining residential or business district.

F. Vibrations. There shall be no use that creates heavy earth-shaking vibrations that are noticeable at any district boundaries separating residential and business uses from an M-2 manufacturing district.

G. Screening. Screening exterior storage areas shall be as required in Bulk Restrictions.

9.3-5.12. Setbacks

A. The following minimum setbacks shall be provided and maintained in connection with any building or parking lot. Front yard parking shall be regulated by this subsection or the Bulk Restrictions Section, whichever is more restrictive. The parking setback provisions of this subsection shall supersede the provisions of the Bulk Restrictions Section.

B. Front, exterior side or exterior rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|
| Tollway | 75 |
| Arterial Street | 30 |
| Collector or Local Street | 25 |
| Setback exceptions. When exterior yards abut a collector or local street that includes residentially zoned lots on the same block, if fifty (50) percent or more of the existing buildings are developed at an established setback of less than the required setback, any new M2 building may conform to the average established setback. If such average established setback is between fifteen (15) feet and thirty (30) feet, any new M2 building shall be set back at least an equivalent distance. In no case shall a setback of more than thirty (30) feet be required. | |

i. The property was a lot of record on or before November, 1957.

ii. A landscape plan is submitted by the owner and approved by the planning director and zoning administrator.

iii. The owner commits in writing to have the approved landscaping established no later than June 30th or October 30th following the approval of the landscape plan, whichever shall occur first.

iv. The owner demonstrates that the required setbacks cannot be met due to physical or practical difficulties.

C. Interior side or rear setback requirements:

| ABUTTING | SETBACK (in feet) |
|---|---|

| | |
|---|---|
| Fox River | 30 |
| Residential | 60 |
| All other Zoning Districts | 15 |
| Interior yards abutting residential district. There shall be no structure, open storage of materials or equipment, or the parking of vehicles in a required interior yard abutting a residential district. There shall be no paving in such required setbacks except for accessways perpendicular to the street or sidewalks across the lot. Accessways shall not exceed twenty-five (25) feet in width per approved access point. No other driveways or auto maneuvering areas are permitted in the interior yards. | |

9.3-5.13. Signs

# CHAPTER C. GENERAL PROVISIONS

## SECTION 10. ADMINISTRATION

10.1. Enforcing officer.

    10.1-1. The zoning administrator of the City of Aurora shall be responsible for the enforcing of this zoning ordinance. Said zoning administrator shall have the power and shall see that the provisions of this ordinance are properly enforced.

    10.1-2. Restrictions on employees. No official or employee responsible for the enforcing of this ordinance shall engage directly or indirectly in the construction industry or the building professions, or in any type of gainful employment or business that conflicts with official duties or the interests of the business incorporated in this ordinance.

10.2. Zoning permit.

    10.2-1. No building or structure shall be erected, reconstructed, enlarged, or moved until a zoning permit shall have been applied for in writing and issued by the zoning administrator.

    Said permit shall be posted in a prominent place on the premises prior to and during the period of erection, reconstruction, enlargement or moving.

    Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance.

    10.2-2. Site plan. Every application for zoning permit submitted to the zoning administrator shall be accompanied by a site plan, drawn to scale, showing the lot and the building site and the location of existing buildings on the lot, accurate dimensions of the lot, yards and building or buildings together with locations and uses and together with such other information as may be necessary to the enforcement of this ordinance.

    10.2-3. Interpretation of ordinance. In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of health, safety, morals, convenience of the general welfare.

    10.2-4. Variations by zoning administrator. The zoning administrator is authorized to grant certain variations without a public hearing or notice but only in the specific instances hereinafter set forth. The zoning administrator shall make written findings of fact in accordance with the standards outlined in this section. Said findings shall be made available for public examination and review and shall be filed with the secretary of the zoning board of appeals. Variations may be granted in the following instances and no others:

        10.2-4.1. To permit any yard or setback less than that required by the applicable regulations, but by not more than one (1) foot or ten (10) percent, whichever is greater;

        10.2-4.2. To permit the same off-street parking facility to qualify as required facilities for two (2) or more uses, provided the substantial use of such facility by each use does not take place at approximately the same hours of the same days of the week;

10.2-4.3. To reduce the applicable off-street parking or loading facilities required by not more than one (1) parking space or loading space, or twenty (20) percent of the applicable regulations, whichever number is greater, provided, however, in applying the twenty (20) percent reduction, the maximum number of spaces reduced shall not exceed ten (10) spaces;

10.2-4.4. To increase by not more than twenty-five (25) percent the maximum distance that required parking spaces are permitted to be located from the use served;

10.2-4.5. To increase by not more than ten (10) percent the maximum gross floor area of any use so limited by the applicable regulations;

10.2-4.6. To allow the expansion of a legal nonconforming principal building so long as the proposed expansion meets all requirements of this ordinance;

10.2-4.7. To allow the expansion of a legal nonconforming accessory building provided that the proposed expansion meets all requirements of this ordinance.

10.2-4.8. To permit an increase in the maximum lot coverage to allow for a one story, maximum twenty foot by twenty foot, two-car garage with a leading driveway to be built on a residential lot, the following guidelines shall apply to said structures:

A. A Private recreational rear yard area shall be maintained.

B. Said garage shall be the only garage allowed on the lot.

C. Garage doors shall not be of a height greater than 8 feet

D. Said leading driveway width shall not exceed the garage door width by more than 2 feet in either direction.

E. Side walls of said garage shall not exceed 9 feet in height

10.2-4.9. When deemed appropriate by the zoning administrator, the zoning administrator may require that the application be reviewed and approved or denied by the zoning board of appeals, pursuant to this section of this ordinance.

10.2-4.10. All variation decisions made by the zoning administrator are appealable to the zoning board of appeals within ten (10) business days from the day of the decision by the zoning administrator under procedure established in this section of this ordinance.

10.2-5. Setback reduction by planning and developing committee. Pursuant to the B-1 Local Retail Business District, the B-2 General Retail Business District, the B-3 Services and Wholesale District, the O Office District, the M-1 Limited Manufacturing District and the M-2 General Manufacturing District setback reductions for parking lots may be reduced to ten (10) feet subject to the following procedure:

10.2-5.1. The property owner shall submit a site and landscape plan to the zoning administrator. The plan shall effectively mitigate the effects of reducing the parking lot setback by adequate screening and creating a quality appearance along the public right-of-way.

10.2-5.2. The zoning administrator and planning director shall review the plan. They shall, within thirty (30) days, submit their written recommendation to the planning and development committee of the city council for their consideration at their next

available meeting. The planning and development committee shall make the decision with regard to the setback reduction and shall approve, deny, or modify the recommendation. Approval or denial of the setback reduction shall not be final until the expiration of the appeal period as described below. If an appeal is filed, the decision by the committee also becomes a recommendation to the city council and final decision on the setback reduction shall be made by the city council.

10.2-5.3. The approval or disapproval by the planning and development committee of the setback reduction is appealable to the city council by the applicant or a member of the city council. Appeals may be filed only within four (4) business days from the day of the decision by the committee. All appeals shall be filed by 5:00 p.m. on the fourth business day as described above with the city clerk or the City of Aurora's petition for appeal to the city council.

10.3. Certificate of occupancy.

10.3-1. A certificate of occupancy to be issued by the zoning administrator shall be required for any of the following, except buildings incidental to agricultural operations other than residences:

10.3-1.1. Occupancy and use of a building thereafter erected or enlarged;

10.3-1.2. Change in use of an existing building;

10.3-1.3. Occupancy and use of vacant land except for the raising of crops;

10.3-1.4. Change in the use of land to a use of a different classification except for the raising of crops;

10.3-1.5. Any change in the use of a nonconforming use.

10.3-2. No such occupancy, use or change of use, shall take place until a certificate of occupancy therefore shall be issued.

Written application for a certificate of occupancy for a new building or for an existing building that has been enlarged shall be made at the same time as the application for the zoning permit for such building. Said certificate shall be acted upon within three (3) days after a written request for the same has been made to the zoning administrator after the erection or enlargement of such building or part thereof has been completed in conformance with the provisions of this ordinance.

Pending the issuance of such a certificate, a temporary certificate of occupancy may be issued by the zoning administrator for a period of not more than six (6) months during the completion of the construction of the building or of alterations that are required under the terms of any law or ordinance. Such temporary certificate may be renewed, but it shall not be construed in any way to alter the respective rights, duties or obligations of the owner or of the city relating to the use or occupancy of the land or building, or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately ensure the safety of the occupants.

Written application for a certificate of occupancy for the use of vacant land, or for a change in the use of land or of a building, or for a change in a nonconforming use, as

herein provided, shall be made to the zoning administrator.

If the proposed use is in conformity with the provisions of this ordinance, the certificate of occupancy therefore shall be issued within three (3) days after the application for the same has been made.

Each certificate of occupancy shall state that the building or proposed use of a building or land complies with all provisions of this ordinance.

A record of all certificates of occupancy shall be kept on file in the office of the zoning administrator and a copy shall be forwarded, on request, to any person having proprietary or tenancy interest in the building or land affected.

10.4. Zoning board of appeals.

10.4-1. Zoning board of appeals established. There is hereby established a zoning board of appeals. Said zoning board of appeals shall consist of seven (7) members appointed by the city council of the City of Aurora. Three (3) to be appointed by the mayor and one (1) by each commissioner.
One (1) for one (1) year;
One (1) for two (2) years;
One (1) for three (3) years;
One (1) for four (4) years;
One (1) for five (5) years;
One (1) for six (6) years;
One (1) for seven (7) years.

The successor of each member so appointed shall serve for a term of five (5) years. Vacancies shall be filled by the city council for the unexpired term. Members may be removed by the city council for cause after written charges have been filed and after a public hearing has been held if demanded by the member so charged. One (1) of the members of said zoning board of appeals at the time of his appointment shall be designated by the city council of the City of Aurora, as chairman of said zoning board of appeals and shall hold said office as chairman until a successor is appointed. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses.

The zoning administrator shall be the executive secretary and shall attend all meetings called by the board. The zoning board of appeals shall have a secretary and may employ a court reporter that shall make and keep a record of all of its meetings and official acts.

The zoning board of appeals in existence at the time of the passage of this ordinance shall be recognized as the zoning board of appeals established under the provisions of this ordinance, and the members previously appointed under the old ordinance shall be recognized as members thereof, and shall serve for such period of time as designated at time of appointment--the time to run from the date of the original appointment under the old ordinance.

10.4-2. Jurisdiction. The zoning board of appeals is hereby vested with the following jurisdiction and authority:

10.4-2.1. To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance;

10.4-2.2. To hear and pass upon applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein;

10.4-2.3. To hear and decide all matters referred to it or upon which it is required to pass under this zoning ordinance as prescribed by statute.

10.4-3. Meetings. All meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the zoning board of appeals may determine. Notice for these meetings shall be conducted pursuant to the Amendment Section hereof. All such meetings of the zoning board of appeals shall be open to the public.

The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon every question, or if absent or failing to vote, indicating such fact, and shall also keep records of its examinations and other official actions. Findings of fact shall be included in the minutes of each case and the reasons for granting or denying such application shall be specified. Every rule, regulation and every order, requirement, decision, or determination of the zoning board of appeals shall immediately be filed in the office of the secretary and shall be of public record.

The zoning board of appeals meeting shall be recorded on tape and maintained on file at the city for a period of seven (7) years.

The zoning board of appeals shall adopt its own rules of procedure and may require submission to each record, plats and other information necessary to make its determinations. A copy of said rules and procedure, and all recommendations thereto, shall be filed in the office of the secretary.

The minutes of the zoning board of appeals shall be open to public examination at reasonable hours.

Expenses incurred by the zoning board of appeals are to be itemized and shall be borne by the City of Aurora.

Each member of the Aurora zoning board of appeals shall receive the sum of ten dollars ($10.00) as compensation for each meeting attended. The amount of said compensation may be increased from time to time by council resolution without the necessity of public hearing thereof.

10.4-4. Finality of decisions of the zoning board of appeals. All decisions and findings of the zoning board of appeals, on appeal or upon application for a variation after a hearing shall, in all instances, be final administrative determinations and shall be subject to review by court as by law may be provided.

10.5. Variations.

10.5-1. Purpose. The zoning board of appeals, after a public hearing, may determine and also vary the regulations of this ordinance in harmony with their general purpose and intent, only in the specific instances hereinafter set forth, where the board of appeals makes findings of fact in accordance with the standards hereinafter prescribed, and further finds that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this ordinance.

10.5-2. Application for variation and notice of hearing. An application for a variation shall be filed in writing with the zoning administrator. The application shall contain such information as the zoning board of appeals may from time to time, by rule, require. However, all requests, other than those involving land zoned R-1, single-family, shall include a dated site plan for the development of the property designating specific locations for all fencing, landscaping, buildings and appurtenant structures and labeling all such buildings and structures with their function. Said unaltered site plans shall be reproducible mylar to scale, and have affixed to them a signature block indicating approval by the ZBA chairman, zoning administrator, and petitioner. Variations other than those authorized by this section, on which the zoning board of appeals may act, shall be submitted to the zoning board of appeals and acted on in the following manner:

The zoning board of appeals shall publish notice of a public hearing pursuant to the Amendments Section hereof. Notice of the public hearing may be mailed to the petitioner and the owners of all property deemed by the zoning board of appeals to be affected thereby.

The zoning board of appeals shall, within thirty (30) days after the public hearing or hearings, make its recommendations to the city council in writing. The city council shall then act upon such petition for variation within a reasonable time.

10.5-3. Standard for variations. The zoning board of appeals shall not vary the regulations of this ordinance, nor recommend to the city council variations of this ordinance, unless it shall make findings based upon the evidence presented to it in each specific case that the standards for hardships set forth in the Illinois Municipal Code are complied with and the following:

10.5-3.1. Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience, if a strict letter of regulations were carried out;

10.5-3.2. The conditions upon which the petition for a variation is based are unique to the property for which the variance is sought and are not applicable, generally, to other property within the same zoning classification;

10.5-3.3. The alleged difficulty or hardship is caused by the ordinance and has not been created by any person presently having an interest in the property;

10.5-3.4. The granting of the variation will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located; and

10.5-3.5. The proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion in the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood.

10.5-4. The zoning board of appeals may impose such conditions and restrictions upon the premises benefited by a variation as may be necessary to comply with the standards established in this section, to reduce or minimize the effect of such variation upon other property in the neighborhood and to better carry out the general intent of the ordinance.

10.5-5. Authorized variation. Variations from the regulations of this ordinance shall be granted by the zoning board of appeals only in accordance with the standards established in this section, and may be granted only in the following instances and in no others:

10.5-5.1. To permit any yard or setback less than the yard or setback required by the applicable regulations, but by not more than fifty (50) percent;

10.5-5.2. To permit the use of a lot or lots for a use otherwise prohibited solely because of insufficient area or width of the lot or lots but in no event shall the respective area and width of the lot or lots be less than ninety (90) percent of the required area and width. The percentage set forth in this subparagraph is not to be reduced by any other percentage for minimum lot width and area set forth in this ordinance the Bulk Restrictions Section;

10.5-5.3. To increase the height of any fence but not to exceed seven (7) feet, and to vary other provisions in the R-1 One-Family Dwelling District Section.

10.5-5.4. To reduce the applicable off-street parking or loading facilities required by not more than one parking space or loading space, or twenty (20) percent of the applicable regulations; provided, however, in applying the twenty (20) percent reduction, the maximum number of spaces to be reduced shall not exceed twenty (20) spaces;

10.5-5.5. To increase by not more than fifty (50) percent the maximum distance that required parking spaces are permitted to be located from the use served;

10.5-5.6. To increase by not more than twenty (20) percent the maximum gross floor area of any use so limited by the applicable regulations;

10.5-5.7. To exceed any of the authorized variations allowed under this section, when a lot of record or a zoning lot, vacant or legally used on the effective date of this ordinance, is by reason of the exercise of the right of eminent domain by any authorized governmental body or by reason of a conveyance under threat of an eminent domain proceeding reduced in size so that the remainder of said lot of record or zoning lot or structure on said lot does not conform with one or more of the regulations of the district in which said lot of record or zoning lot or structure is located. The concurring vote of four (4) members of the zoning board of appeals shall be necessary to grant a variation.

10.5-6. Other variations. Variations other than those listed above may be granted by the city council, but only after a public hearing as set forth herein for an authorized variation, and a report from the zoning board of appeals recommending the variation. The

concurring vote of four (4) members of the city council shall be necessary to reverse the recommendation of the zoning board of appeals.

10.5-7. Alterations to an approved variation plan. If, after approval of a variation by the zoning board of appeals or the city council, any changes are proposed to the site plan or other documentation which was presented to the zoning board of appeals or the city council, the changes must be detailed on a plan which illustrates both the original location and the desired location of the alterations, and shall be approved by the body which approved the original variation in the same manner and procedure followed in approving the original variation. Said site plans shall be reproducible mylar to scale and have affixed to them a signature block indicating approval by the ZBA chairman, zoning administrator and petitioner. The following note shall appear above the signature block: "This revised site plan dated _____ supersedes all previous site plans."

10.5-8. Submission of building permit application. The petitioner for a building permit shall notify the division of inspections and permits regarding all variations to the proposed development that have been granted by the Aurora city council by attaching copies of all applicable variations to the building permit application.

Additionally, a copy of the signed and approved site plan granting said variations shall be attached to said permit.

10.5-9. Zoning administrator responsibility. This section shall identify specific responsibilities of the zoning administrator that are in addition to those required elsewhere in this section:

10.5-9.1. The zoning administrator shall verify that said building permit matches the site plan approved by the zoning board of appeals.

10.5-9.2. The zoning administrator shall maintain on file all original mylars of site plans approved by the zoning board of appeals, and said site plans shall not be removed from the city hall premises.

10.5-9.3. The zoning administrator shall maintain on file all zoning board of appeals meetings minutes and tapes of said meetings.

10.6. Special uses.

10.6-1. Purpose. The development and execution of a zoning ordinance is based upon the division of the city into districts, within which districts the use of land and buildings and the bulk and location of buildings and structures in relation to the land are substantially uniform. It is recognized, however, that there are uses which, because of their unique characteristics, cannot be properly classified in any particular district or districts without consideration, in each case, of the impact of those uses upon neighboring land and of the public need for the particular use at the particular location. Such special uses fall into two (2) categories:

10.6-1.1. Uses publicly operated or traditionally affected with a public interest;

10.6-1.2. Uses entirely private in character but of such an unusual nature that their operation may give rise to unique problems with respect to their impact upon neighboring property or public facilities.

10.6-2. Initiation of special uses. Any person owning or having an interest in the subject property may file an application to use such land for one or more of the special uses provided for in this ordinance in the zoning district in which the land is situated.

10.6-3. Processing application for a special use.

10.6-3.1. Application for a special use. An application for a special use or expansion or amendment to a special use shall be filed with the city clerk. No application shall be accepted by the city clerk unless a preapplication review has been completed with the planning director or said review has been waived by the planning director. Such a preapplication review must be arranged so that two (2) business days' notice is given to the planning director prior to the date of the review. At such a preapplication review, the planning director and prospective applicant shall review the following as they relate to the proposed special use application:

A. General plan and physical development policies of the City of Aurora.

B. Existing zoning and land use in the general area of the property in question.

C. The zoning history in the general area of the property in question.

D. The City of Aurora's special use review process.

E. Other pertinent factors.

10.6-3.2. After the completion of the required preapplication review, a special use application may be filed with the City of Aurora. The application shall include all plans and data as required within the City of Aurora's application for a special use as approved by the Aurora city council. Copies of such application shall be forwarded by the city clerk to the city council to the planning council and planning commission with the request that the planning commission hold a public hearing.

10.6-3.3. Notice of the public hearing shall be conducted pursuant to the Amendments Section hereof.

10.6-4. Authorization. For each application for a special use, the plan commission shall report to the city council its findings and recommendations, including the stipulations of additional conditions and guarantees that such conditions will be complied with when they are deemed necessary for the protection of the public interest. The city council may grant or deny any application for a special use, provided, however, that in the event of written protest against any proposed special use, signed and acknowledged by the owners of twenty (20) percent of the frontage adjacent thereto, or across an alley, or directly opposite there from, such special use shall not be granted except by the favorable vote of two-thirds of all the members of the city council.

10.6-5. Standards. No special use shall be recommended by the plan commission unless said commission shall find:

10.6-5.1. That the establishment, maintenance or operation of the special use will not be unreasonably detrimental to or endanger the public health, safety, morals, comfort or general welfare;

10.6-5.2. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood; factors

APPENDIX A ZONING                    169

including but not limited to, lighting, signage and outdoor amplification, hours of operation, refuse disposal areas and architectural compatibility and building orientation.

10.6-5.3. That the establishment of the special use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district;

10.6-5.4. That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided;

10.6-5.5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; For automobile intensive uses including but not limited to, gas stations, car washes, and drive through facilities the concentration of similar uses within 1000 feet of said subject property should be given consideration as to the impact this concentration will have on the traffic patterns and congestion in the area.

10.6-5.6. That the special use shall in all other respects conform to the applicable regulations of the district in which it is located, except as such regulations may in each instance be modified by the city council pursuant to the recommendations of the plan commission.

10.6-6. Planned developments. Planned developments are of such substantially different character from other special uses that specific and separate standards, exceptions, and procedures for approval are hereby established to govern the recommendations of the plan commission and the action of the city council.

10.6-6.1. The plan commission may recommend and the city council may authorize that there be in part of the area of a planned development, and for the duration of such development, specified uses not permitted by the use regulations of the district in which said development is located, provided that the plan commission shall find that:

A. The uses permitted by such exceptions are necessary or desirable and are appropriate with respect to the primary purpose of the development;

B. The uses permitted by such exception are not of such a nature or so located as to exercise an undue detrimental influence on the surrounding neighborhood;

C. Not more than twenty (20) percent of the ground area or of the gross floor area of such development shall be devoted to the uses permitted by said exception;

D. In an industrial planned development, such additional uses allowed by exceptions shall conform with the performance standards of the district in which the development is located;

E. The use exceptions so allowed are reflected by the appropriate zoning district symbols and so recorded on the zoning district map.

10.6-6.2. Procedures for application for planned development.

A. The application for establishment of a planned development shall be filed with the city clerk. No application shall be accepted by the city clerk unless a preapplication review has been completed with the planning director or said review has been waived by the planning director. The preapplication review must

be arranged so that forty-eight (48) hours' notice is given to the planning director prior to the date of the review. At the preapplication review, the planning director and prospective applicant shall review the following as they relate to the proposed application for establishment of a planned development:

   i. General plan and physical development policies of the City of Aurora.

   ii. Existing zoning and land use in the general area of the property in question.

   iii. The zoning history in the general area of the property in question.

   iv. The City of Aurora's process for establishment of a planned development.

   v. Other pertinent factors.

B. After the completion of the required preapplication review an application for establishment of a planned development may be filed with the City of Aurora. The application shall include all plans and data as required within the City of Aurora's application for establishment of a planned development as approved by the Aurora city council. Copies of the application shall be forwarded by the city clerk to the city council to the planning commission with the request to hold a public hearing.

C. The application for establishment of a planned development shall be accompanied by a preliminary plan or both a preliminary plan and final plan for all or a portion of the planned development. The plan(s) must include all data as specified in the City of Aurora's application for establishment of a planned development. The developer may request review and approval of the plan(s) concurrently with the review and approval of application for the establishment of the planned development.

D. The application filed with the city clerk on the City of Aurora's application for establishment of a planned development as set forth above shall be forwarded to the planning commission, and the planning council. Notice shall be given and the planning commission shall hold a public hearing as required herein for a special use. Pursuant to the public hearings, and upon testimony from the planning commission, and the testimony of the planning council, the planning commission shall submit a written report to the city council. The report shall set forth the planning commission's findings and recommendations with a record of the vote of each member.

E. The city council may disapprove, or grant a special use permit for a planned development by ordinance, but such permit shall not be approved except by three-fourths of the members present, when the planning commission recommends denial of the request for a special use permit for planned development.

F. The ordinance granting a special use for planned developments shall set forth all the requirements, special conditions and agreements made a part of the planned development. The plans and other documents required as part of the special use application shall be attached to and made a part of the ordinance granting the permit for planned development.

APPENDIX A ZONING        171

10.6-6.3. Bulk regulations. The plan commission may recommend and the city council may authorize that there be in a planned development, exceptions to the bulk regulations set forth herein the district regulations applicable to the district in which the planned development is located, provided that the plan commission shall find:

A. That such exception shall be solely for the purpose of promoting a unified site plan no less beneficial to the residents or occupants of such development as well as the neighboring property than would be obtained by the bulk regulations of this ordinance for buildings developed on separate lots;

B. That the overall floor area ratio, when applicable, would not exceed by more than fifteen (15) percent the floor area ratio regulations of this ordinance for the district in which it is located;

C. That in the part of the planned development containing only residential uses, the minimum lot area per dwelling unit may be less than required by the district regulations applicable to the district regulations applicable to the district in which the planned development is located, but not more than fifteen (15) percent, provided there is contained within the planned development permanent open spaces, the area and location of which shall meet with the approval of the zoning hearings commission, and that such open space shall not be less than that which would pertain if developed on individual lots.

D. Such open areas shall be preserved over the life of the planned development, for use only by the planned development or dedicated to the City of Aurora for school, park, playground or other public uses; and

E. That in part of a planned development devoted to residential uses, the plan commission may recommend and the city council may approve, access to a dwelling by a driveway or pedestrian walk easement, and spacing between buildings of lesser widths or depths then required by district regulations for the district in which the planned development is located, provided:

i. That adequate provisions are made which perpetuate during the period of the special use, access easements and off-street parking spaces for use by the residents of the dwelling served;

ii. The spacing between buildings shall be approved by the plan commission and shall be consistent with the application of recognized site planning principles for securing a unified development and due consideration is given to the openness normally afforded by intervening streets and alleys. Spacing between principal buildings within a part of a planned development where subsequent transfer of ownership is contemplated, shall be equivalent to such spacing as would be required between buildings by district regulations for the district in which it is located; and

F. The yards for principal buildings along the periphery of the development shall be not less in width or depth than required for permitted uses in the district regulations applicable to the district in which the planned development is located, and the plan is developed to afford adequate protection to neighboring properties.

10.6-6.4. Exterior construction standards for multiple-family construction. All Use Group R-2 structures, except for multiple-single family dwelling units, as defined in

the Aurora Building Code, shall have exterior walls of brick, decorative precast or a decorative masonry surface.

10.6-7. Conditions and guarantees. Prior to granting any special use, the plan commission may recommend, and the city council shall stipulate such conditions and restrictions upon the establishment, locations, construction, maintenance and operation of the secure special use as deemed necessary for the protection of the public interest and to secure compliance with the standards and requirements specified herein, as may be from time to time required. In all cases in which special uses are granted, the city council shall require such evidence and guarantees as it may deem necessary as proof that the conditions stipulated in connection therewith are being, and will be, complied with.

10.6-7.1. As part of such evidence and guarantees, before any building permit is issued for any work associated with a special use permit, the property owner or developer shall post an irrevocable letter of credit with the City of Aurora's Division of Inspection and Permits to guarantee required installation of improvements mandated by the special use permit such as landscaping, fencing, screen walls, and paving. The actual amount of the letter of credit shall be determined by the owner or developer, based upon written bids from contractors and subject to the approval of the zoning administrator. The city may impose the above letter of credit restriction in planned developments, where appropriate.

A. Violation of conditions. In cases where conditions and restrictions are stipulated by special use ordinance upon the establishment, location, construction, maintenance and operation of the use as deemed necessary for the protections and securings herein described, and are not followed, the city council shall have the authority to revoke the special use.

10.6-7.2. In order to revoke the special use, the city council planning and development committee shall conduct a public meeting at which time the parties granted the special use, after service of a ten (10) day written notice, may explain their reasons for not adhering to the required conditions and restrictions. Such committee may then grant additional time for compliance, based upon sufficient cause, or may recommend to the city council that the special use be revoked. The decision by said committee to revoke the special use shall become a recommendation to the full city council. The special use shall be revoked by ordinance.

10.6-8. Effect of denial of a special use. No application for a special use which has been denied wholly or in part by the council shall be resubmitted for a period of one (1) year from the date of said order of denial, except on the grounds of substantial new evidence or proof of changed conditions found to be valid by the plan commission and the city council.

10.6-9. Termination of special use permit. If construction work such as parking lots, sidewalks, streets, buildings, sewer and water lines on the proposed development, have not begun within twelve (12) months from the authorization order of the city council, the city council shall have the power to institute proceedings on its own motion to terminate the special use permit.

10.6-10. Procedures for approval of plans.

APPENDIX A ZONING                    173

10.6-10.1. Preliminary plans. Preliminary plans for all or specified phases of a planned development shall be submitted by the developer to the city clerk on the City of Aurora's application for establishment of a planned development. The city council shall refer each such preliminary plan to the planning commission and to the Aurora planning council. The planning commission and the planning council shall review the preliminary plan, and, if so directed by the city council, the planning commission [shall] hold a public hearing on a preliminary plan in accordance with the provisions of this section as in the case of an application for establishment of a planned development. The planning commission shall, within ninety (90) days from the date of referral, submit to the city council its written recommendations with respect to the preliminary plan, which recommendations may include the recommendations may include the recommendations of the planning council. The planning commission shall review the preliminary plan and may recommend that the city council approve or disapprove such preliminary plan. In either case, the planning commission shall set forth in writing the reasons for its recommendations, and may, in the event of a favorable recommendation, specify particular conditions that should be incorporated in the approval of the preliminary plan. Within sixty (60) days after receipt of the planning commission's recommendation the city council shall either approve or disapprove the preliminary plan. An approval may be conditional and, if so, shall specifically state what additions or deletions from the preliminary plan as submitted shall be made in the preliminary plan as approved. Such additions or deletions shall be shown on or attached to such approved preliminary plan. A developer may request the planning commission to waive preliminary plan approval procedures for any area in a planned development and, if such request is granted the developer may, without having obtained approval of a preliminary plan covering the area, submit for approval, in accordance with the procedures prescribed in this section and within the time period prescribed for submission of a preliminary plan for the area, one or more final plans for the area. Promptly after approval of each preliminary plan, ten (10) complete copies of such approved preliminary plan with all accompanying materials and data shall be prepared at the developer's expense and deposited with the division of city planning.

10.6-10.2. Final plans. Final plans for all or specified phases of a planned development shall be submitted by the developer to the city clerk with the City of Aurora's application for establishment of a planned development. The city council shall refer such final plan to the planning commission and to the Aurora planning council. The planning commission and planning council shall review the final plan, and, if major changes are proposed by the developer, the planning commission, pursuant to this section, shall hold a public hearing in accordance with the provisions of this section as in the case of an application for the establishment of a planned development. The planning commission shall, within sixty (60) days from the date of referral to the planning commission and planning council, submit to the planning and development committee of the city council its written recommendations with respect to the final plan. The planning commission may recommend approval or disapproval of the final plan, and/or specify particular conditions that should be incorporated in the final plan for approval. Within thirty (30) days after receipt of the planning commission's recommendation, the committee shall either approve or disapprove the final plan provided that the final plan is in substantial conformance to the preliminary plan.

The planning commission shall make the determination whether the final plan is in substantial conformance with the preliminary plan. If the final plan is not in substantial conformance with the preliminary plan, the final plan approval procedure shall follow that described in this section. The applicant and the committee may mutually agree to extend said time periods. An approval may be conditional and if so, shall specifically state what additions or deletions from the final plan as submitted shall be made in the final plan as approved. Such additions or deletions shall be shown on or attached to such approved final plan. Promptly after approval of each final plan, ten (10) complete copies of such approved final plan, with all accompanying materials and data shall be prepared at the developer's expense and deposited with the division of city planning. Approval of a final plan by the committee shall not be final until the expiration of the appeal period as described below. If an appeal is filed the decision by the committee also becomes a recommendation to the city council and the final decision on the final plan shall be made by the city council.

10.6-10.3. Preliminary and final plans submitted concurrently. In the event that a preliminary plan and final plan are submitted concurrently, the procedures for application shall be provided by this section.

10.6-10.4. Appeals. The approval or disapproval by the planning and development committee of a final plan is appealable to the city council by the applicant or a member of the city council. Appeals may be filed only within four (4) business days from the day of the decision by the committee. All appeals shall be filed by 5:00 p.m. on the fourth business day as described above with the city clerk on the City of Aurora's petition for appeal to the city council. Only items associated with the final plan on record with the committee may be appealable.

10.7. Planned development districts.

10.7-1. Purpose. A large planned development which includes multiple principal uses that would require classification of the property within the planned development into two (2) or more standard zoning districts presents to both the city and the owner or developer difficult planning problems if it may be approved only as a special use pursuant to this section, and the purpose of this section is to provide for the approval and classification of such planned developments as separate zoning districts under this ordinance.

10.7-2. Definition and size limitation. A planned development district is a tract of land which includes two (2) or more principal uses that would require classification of the tract into two (2) or more standard zoning districts and which is developed as a unit under single ownership or under single, unified or coordinated control of its planning and development. A planned development district must include at least two hundred (200) acres of contiguous property; provided that after establishment of a planned development district in accordance with the procedures set forth in this section, contiguous property of any size may be added to such district; and, provided further, that properties separated by highways, streets, public ways or railroads or other public utility rights-of-way may be deemed contiguous for the purpose of qualifying as a planned development district. All procedures required by this section for the establishment of a planned development district shall be applicable to the addition of property to an existing planned development district, and any provision of this section or

of any other ordinance of the City of Aurora which refers to the establishment of a planned development district shall, with respect to such added property, be deemed to refer to the adoption by the city council of the zoning amendment adding such property to a planned development district.

10.7-3. Preapplication review. An application for the establishment of a planned development district shall be filed with the city clerk. No application shall be accepted by the city clerk unless a preapplication review has been completed with the planning director or said review has been waived by the planning director. Such a preapplication review must be arranged so that forty-eight (48) hours' notice is given to the planning director prior to the date of the review. At such a preapplication review, the planning director and prospective applicant shall review the following as they relate to the proposed application for establishment of a planned development district:

A. General plan and physical development policies of the City of Aurora.

B. Existing zoning and land use in the general area of the property in question.

C. The zoning history in the general area of the property in question.

D. The City of Aurora's planned development district review process.

E. Other pertinent factors.

10.7-3.2. After the completion of the required preapplication review, an application may be filed with the City of Aurora. The application shall include all plans and data as required in this section below. Copies of such application shall be forwarded by the city clerk to the city council to the planning commission with the request to hold a public hearing.

10.7-4. Procedures for establishment of a planned development district. A planned development district may be established only by amendment of the zoning map in accordance with the amendment procedures set forth in the Amendments Section of this ordinance and by compliance with the provisions of this section. Application for the establishment of a planned development district may be made by the developer by filing with the city clerk an application for a zoning amendment establishing a planned development district. Said application shall be accompanied by a plan description which application and plan description shall be deemed to comply with the requirements of the Amendment Section for a zoning amendment application and the plans, data and other information and evidence that must accompany such application. Said plan description shall include the following:

10.7-4.1. A legal description of the property proposed to be included in the planned development district.

10.7-4.2. A plat or map showing boundaries of the proposed planned development district.

10.7-4.3. A written explanation of the general character of the proposed planned development district including: (i) a description of all land uses to be included in such district (including open space) with approximate percentages or, alternatively, maximum or minimum percentage limitations for each use, (ii) projected densities for residential uses or, alternatively, maximum and minimum limitations for such densities and (iii) a description of the development standards and design criteria

APPENDIX A ZONING                    176