the City under said guarantee, or the amount payable by the
City to the guarantors, and if the City and the guarantors
are unable to resolve such disagreement by negotiation,
then the auditors selected by the City and the auditors
selected by the guarantors shall jointly select a third
auditor, which shall be a firm of independent certified
public accountants of recognized standing, and the deter-
mination made by such third auditor shall be conclusive
upon the parties.  To the extent that there shall be any
such unresolved disagreement, no payment shall be required
to be made to the City; provided that such payment, if
determined to be required, shall be made within ten (10)
days after resolution of such disagreement as herein pro-
vided; further provided that any additional payment
determined to be required to be made to such guarantors
by the City shall be paid to such guarantors by the City
within ten (10) days after resolution of such disagreement
as herein provided.

     6.  <u>Termination of Guarantee</u>.  The guarantee
provided for in Subsection 2 above, if such guarantee
becomes effective, will terminate when for three (3) con-
secutive years the Phase I Project Net Revenues collected
by the City, computed for purposes of this Subsection 6
as if water connection charges had not been included in
the definition thereof, shall be sufficient to obviate the
need for any payments to the City pursuant to said guarantee.

7.  Phase II and Phase III Water Facilities.
Upon the annexation of the Territory to the City, the City
shall do or cause to be done each and all of the following
so as to meet and comply with the requirements of Subsec-
tion 7(e) of this Section IV.

(a)  For the purpose of providing funds for
the acquisition and construction of the water
utility facilities described by the general
design data set forth in Parts II and III of
Exhibit C (hereinafter, respectively, called the
"Phase II Water Facilities" and the "Phase III
Water Facilities"), forthwith take all steps
necessary to authorize and issue, pursuant to an
ordinance to be adopted by the City (hereinafter
called the "Junior Lien Bond Ordinance"), and
use its best efforts to sell its Waterworks and
Sewerage Revenue Bonds (hereinafter called the
"Junior Lien Bonds") under and pursuant to the pro-
visions of Division 139 of Article 11 of the Illinois
Municipal Code (or any appropriate enabling ordin-
ance or ordinances which may have been enacted
by the City in substitution for or in addition
to said Division 139 in exercise of the City's
home rule powers under Section 6 of Article
VII of the Constitution of the State of Illinois).
The Junior Lien Bond Ordinance shall contain, among

other usual and customary provisions which may be
deemed necessary by the City or its counsel, pro-
visions for amortization of the Junior Lien Bonds
over a period of not less than thirty (30) years or
such shorter period as may be agreed upon by the City
and the developers of Region II and provisions which
shall incorporate the bond specifications which are
to be prepared by Paul D. Speer & Associates, Inc.,
the City's financial consultants, and approved by
the developers of Region II.  The Junior Lien Bonds
to be so issued and sold shall be in the approximate
aggregate principal amount of $3,000,000 or such lesser
principal amount as shall be necessary to pay the cost
of acquiring and constructing the Phase II and Phase
III Water Facilities, including capitalized interest,
financial advisory, legal and other related fees and
expenses; shall be issued and sold from time to time,
as necessary, in blocks of not less than $100,000
principal amount each at the request of Metropolitan
Crown; shall be junior and subordinate in every respect
to all bonds from time to time issued pursuant to the
Bond Ordinance; and shall be payable from and secured
by a pledge of the amounts from time to time on deposit
to the credit of the Surplus Revenue Account created by
Section 8 of the Bond Ordinance.

(b)  Design, engineer and complete plans and
specifications for the Phase II Water Facilities
and, solely at the request of Metropolitan Crown

-21-

given at any time during the term hereof, commence
and complete the designing, engineering and prepar-
ation of plans and specifications for the Phase III
Water Facilities;

(c)  Acquire or obtain (by condemnation pro-
ceedings when and if necessary), subject to the
provisions of Subsection 15 of this Section IV,
all sites, easements and permits necessary for the
construction of the Phase II Water Facilities and,
after notice from Metropolitan Crown as provided
for in Subsection (b) next above, acquire or obtain
(by condemnation proceedings when and if necessary),
subject to the provisions of Subsection 15 of this
Section IV, all sites, easements and permits
necessary for the Phase III Water Facilities;

(d)  Publish, take bids, and award bids to and
contract with the lowest qualified bidders for the
construction of the component parts of the Phase II
Water Facilities and, after notice from Metropolitan
Crown as provided for in Subsection (b) above, publish,
take bids, and award bids to and contract with the
lowest qualified bidders for the construction of the
component parts of the Phase III Water Facilities;
provided, that the awarding of all bids shall be
made only with the approval of the developers of
Region II, which approval shall not be unreasonably
withheld; and, provided further, that if the developers
of Region II shall not approve the awarding of the
contract for the construction of the Phase II or Phase
III Water Facilities, as the case may be, to the

lowest qualified bidder, the City shall have
the right to reject all bids, and thereafter the
City shall republish for new bids and award bids
and contract in accordance with the provisions of
this Subsection (d);

(e)  Cause construction of the Phase II Water
Facilities to be completed within fifteen (15)
months after the date of approval by the City and
the developers of Region II of layout drawings,
the locations of tanks, wells, pumping stations and
other necessary components of such Facilities;
and, following Metropolitan Crown's request to the
City to commence the designing, engineering and
completion of plans and specifications for the
Phase III Water Facilities, cause construction
of the Phase III Water Facilities to be completed
within twelve (12) months after the date of approval
by the City and the developers of Region II of layout
drawings, the locations of tanks, wells, pumping
stations and other necessary components of such
Facilities; provided, that if there are delays beyond
the reasonable control of the City occasioned by delays
in the delivery of component parts for such Facilities,
or if the developers of Region II shall not approve the
awarding of the contract for the Phase II or Phase III
Water Facilities, as the case may be, and the City shall
thereupon reject all bids, then, in either case, the
period for the completion of the Phase II or Phase III
Water Facilities, as the case may be, shall be extended
for a period equal to the period of any such delays
beyond such reasonable control of the City or the period

-23-

required to republish, take bids and award bids as
provided for in Subsection (d) next above, as the case
may be; and

(f)  Allow temporary use of the component
parts of the Phase II and Phase III Water Facilities
as they are completed to provide potable and fire
protection water to users in the District on a tem-
porary basis and to service the construction opera-
tions of the developers of the District as may be
possible during the construction and completion of
the Phase II and Phase III Water Facilities; pro-
vided, that the City may charge such developers a
water rate for the use and consumption of water
on such temporary basis in accordance with existing
City ordinances.

The terms Phase II Water Facilities and Phase III Water
Facilities shall include all water storage and distribution
facilities, real property, easements and appurtenances
related to such facilities, as described in Parts II and
III of Exhibit C.

8.   Junior Lien Bond Project Guarantee.

(a)  If any component part of the Phase II or
Phase III Water Facilities is completed in accordance
with this Agreement out of the proceeds of Junior Lien
Bonds issued by the City for such purpose, the
guarantor or guarantors described in Subsection 10 of
this Section IV agree to execute (prior to the City's
issuing said Bonds) a written guarantee, which shall
be mutually agreeable to the developers of Region II
and the City and which shall provide in substance

-24-

that:  the amount of the Junior Lien Bond Project
Net Revenues (as defined below) will not be less than
the amount in each calendar year (commencing with the
first calendar year in which any principal or interest
(except capitalized interest) on such Junior Lien
Bonds falls due) equal to one hundred thirty-five
percent (135%) of Junior Bond Debt Service (as defined
below) for such calendar year on the then outstanding
Junior Lien Bonds.  "Junior Bond Debt Service" for a
calendar year shall mean and include the actual amount
of principal and/or interest required to be paid on
July 1 of such calendar year on the then outstanding
Junior Lien Bonds and the actual amount of principal
and/or interest required to be paid on January 1 of the
next succeeding calendar year on the then outstanding
Junior Lien Bonds.  If for any calendar year one
hundred thirty-five percent (135%) of Junior Bond
Debt Service exceeds the amount of the Junior Lien
Bond Project Net Revenues, the amount of such excess
is herein referred to as "Guarantee Amount".  Notwith-
standing the immediately preceding provisions, in no
event shall the amount (herein referred to as "Maximum
Guarantee Amount") of the obligation of the guarantor(s)
under the preceding provisions in any year exceed:  the
sum of (y) one hundred thirty-five percent (135%) of
Junior Bond Debt Service, as defined, for such calendar
year, and (z) the amount of the "Guaranteed Fixed Cost"
(as hereinafter in Subsection 9 below defined) for such
calendar year.  If any amount shall become payable under
the provisions of this Subsection 8(a), such amount shall
be the lesser of the Guarantee Amount or the Maximum
Guarantee Amount.

(b)  If an amount shall become payable to the City under the provisions of this Subsection 8 or Subsection 11 of this Section IV, such amount shall be paid to the City as provided in Subsection 11 hereof.

(c)  Junior Lien Bond Project Net Revenues shall be computed from year to year on a cumulative basis.  If in any year the Junior Lien Bond Project Net Revenues shall exceed one hundred thirty-five percent (135%) of Junior Bond Debt Service for such year, such excess shall be included in the computation of Junior Lien Bond Project Net Revenues in the next succeeding year or years until such excess shall have been exhausted; provided however, that if in any year Junior Lien Bond Project Net Revenues for such year shall be less than one hundred ten percent (110%) of Junior Bond Debt Service for such year, such excess shall only be applicable to the difference between one hundred thirty-five percent (135%) and one hundred ten percent (110%) of Junior Bond Debt Service for such year.

9.  Definition of Terms.  For purposes of the guarantee provided for in Subsection 8 above, and the other provisions of this Subsection 9 of Section IV hereof, the following definitions and provisions shall apply:

(a)  "Region II Gross Revenues" shall mean that portion of the entire gross revenues of the City's combined waterworks and sewerage system required to be deposited in the Waterworks and Sewerage Fund of the City created by Section 7 of the Bond Ordinance, which is collected from users of such system located in Region II, including any investment income attributable to such moneys and credited to such Waterworks and Sewerage Fund of the City in accordance with Section 8(f) of the Bond Ordinance.

(b)  "Junior Lien Bond Project Net Revenues" shall mean and apply as follows:

(i)  the actual amount, in each calendar year, of Region II Gross Revenues less that portion of the amounts deposited to the credit of the Operation and Maintenance Account pursuant to Section 8(a) of the Bond Ordinance, which portion is properly allocable to the actual cost of the operation and maintenance of the Phase II and/or Phase III Water Facilities, as agreed between the City and the developers of Region II;

(ii)  if the Regional Shopping Center is open for business on or before January 1,

1977 and the guarantee provided for in Subsection 2 above consequently fails to become effective, or if such guarantee becomes effective and is later satisfied or discharged, there shall also be included in the computation of the Junior Lien Bond Project Net Revenues in each year that such guarantee shall not be in effect, and in the next succeeding year or years until such excess shall have been exhausted, an amount (hereinafter called "Phase I Surplus Project Net Revenues") equal to the excess, if any, of Phase I Project Net Revenues (as defined in Subsection 3 above) over one hundred thirty-five percent (135%) of Phase I Debt Service (as defined in Subsection 2 of this Section IV); provided however, that if in any year Junior Lien Bond Project Net Revenues shall be less than one hundred ten percent (110%) of Junior Bond Debt Service, such excess shall only be applicable to the difference between one hundred thirty-five percent (135%) and one hundred ten percent (110%) of Junior Bond Debt Service for that year; and

(iii) The actual amount, in each calendar year, of any water connection charges, and fifty

percent (50%) of the amount of service
charge revenues which are collected from
users located in any Small Annexed Ter-
ritory (as defined in Subsection 14(b)
of this Section IV).

(c)  "Guaranteed Fixed Cost" shall mean the
estimated amount of minimum fixed cost required to
operate and maintain the Phase II and Phase III
Water Facilities at minimum levels of activity for
each calendar year from the proposed date of the issu-
ance of the Junior Lien Bonds until all of such
bonds shall mature (which estimated amount(s) shall
be agreed upon by the City and the developers of
Region II prior to the issuance of the Junior
Lien Bonds).

10.  Liability of Junior Lien Bond Project
Guarantors.  A guarantor acceptable to the City shall be
liable to the City, or if there shall be more than one
guarantor, such guarantors shall be jointly and severally
liable to the City for the payment of any amounts payable
to the City under the guarantee as provided for in Sub-
sections 8, 9 and 11 of this Section IV.

11.  Payments under the Junior Lien Bond Project
Guarantee.  In each year during which the Junior Lien Bonds
shall be outstanding and the guarantee described in Sub-
section 8 of this Section IV shall be in effect, not more

than sixty (60) days, nor less than forty-five (45) days,
prior to July 1 of such year, provided that any interest
(other than capitalized interest) on the Junior Lien Bonds
shall be payable on said July 1 ("Interest Payment Date"),
the City shall deliver to the guarantor described in Sub-
section 10 of this Section IV a statement prepared and
signed by the City Treasurer showing the City's best
reasonable estimate of the Junior Lien Bond Project Net
Revenues, as defined, for the six-month period ending on
the day prior to the Interest Payment Date.  To the extent
that the projected Junior Lien Bond Project Net Revenues
for the six-month period ending on the day prior to the
Interest Payment Date, as shown on said statement, shall
be less than one hundred percent (100%) of the interest
payable on said Interest Payment Date on the Junior Lien
Bonds then outstanding, plus fifty percent (50%) of the
principal due on the next occurring Principal Payment Date
(as defined below), such deficit shall be paid to the City
by the guarantor described in Subsection 10 of this Section IV
within thirty (30) days after receipt of such statement.  Such
payments are herein sometimes referred to as "Junior Bond
Mid-year Guarantee Payments".

In each year during which the Junior Lien Bonds
shall be outstanding and the guarantee described in Sub-
section 8 of this Section IV shall be in effect, not more
than sixty (60) days, nor less than forty-five (45) days,
prior to January 1 of the next succeeding year, provided

-30-

that any principal or interest (other than capitalized interest) on the Junior Lien Bonds shall be payable on said January 1 ("Principal Payment Date"), the City shall deliver to the guarantor described in Subsection 10 of this Section IV a statement prepared and signed by the City Treasurer showing the City's best reasonable estimate of the Junior Lien Bond Project Net Revenues, as defined, for the twelve-month period ending on the day prior to the Principal Payment Date. To the extent that projected Junior Lien Bond Project Net Revenues for the twelve-month period ending on the day prior to the Principal Payment Date (which Revenues shall include the amount of any Junior Bond Mid-year Guarantee Payment for such year), as shown on said statement, shall be less than one hundred ten percent (110%) of the Junior Bond Debt Service for said twelve-month period on the Junior Lien Bonds then outstanding, such deficit shall be paid to the City by the guarantor described in Subsection 10 of this Section IV within thirty (30) days after receipt of such statement. Such payments are herein sometimes referred to as "Junior Bond Year-End Guarantee Payments".

As promptly as practicable following the close of each calendar year the City will deliver to the guarantor described in Subsection 10 of this Section IV a statement certified by an independent public accounting firm showing the Junior Lien Bond Project Net Revenues, as defined, received by the City in such calendar year (which Revenues shall include the amount of any Junior Bond Mid-year Guarantee Pyaments for such year and the amount of any

Junior Bond Year-End Guarantee Payments for such year), and the amount, if any, payable to the City pursuant to the guarantee provided for in Subsection 8 of this Section IV, or the amount, if any, by which, as a result of Junior Bond Mid-year Guarantee Payments and Junior Bond Year-End Guarantee Payments, Junior Lien Bond Project Net Revenues have exceeded one hundred thirty-five percent (135%) of Junior Bond Debt Service for such calendar year. Such guarantors shall pay the amount, if any, so shown as payable to the City within thirty (30) days following receipt of such certified statement; or the City shall pay the amount, if any, so shown as exceeding one hundred thirty-five percent (135%) of Junior Bond Debt Service for such calendar year to the guarantor described in Subsection 10 of this Section IV at the time of the delivery of such statement by the City to such guarantor. Notwithstanding the foregoing, the guarantor shall have the right to employ a certified public accountant or firm of independent certified public accountants for the purposes of reviewing said certified statement, including the computations supporting such statement, which accountant or accountants shall have the right to examine the books and records of the City in connection with such review. If the guarantor, based upon such review, shall disagree with said certified statement furnished by the City, the amount of any payment due to the City under said guarantee, or the amount payable by the City to the guarantor, and if the City and the guarantor are unable to resolve such disagreement by negotiation, then the auditors selected by the City and the auditors selected by the guarantor shall jointly select a third auditor, which

shall be a firm of independent certified public accountants
of recognized standing, and the determination made by
such third auditor shall be conclusive upon the parties.
To the extent that there shall be any such unresolved
disagreement, no payment shall be required to be made to
the City; provided that such payment, if determined to be
required, shall be made within ten (10) days after reso-
lution of such disagreement as herein provided; further
provided that any additional payment determined to be
required to be made to such guarantor by the City
shall be paid to such guarantor by the City within ten
(10) days after resolution of such disagreement as
herein provided.

12.  <u>Termination of Junior Lien Bond Project</u>
<u>Guarantee</u>.  The guarantee provided for in Subsections 8,
9 and 11 of this Section IV will terminate when for three
(3) consecutive years the Junior Lien Bond Project Net
Revenues, computed for purposes of this Subsection 12 as
if water connection charges (both from Region II and from
Small Annexed Territories) and Phase I Surplus Project Net
Revenues had not been included in the definition thereof,
shall have been sufficient to obviate the need for any pay-
ments to the City pursuant to said guarantee.

13.  <u>Credits Against Water Connection Charges</u>.
Any payments made to the City pursuant to the guarantee
provided for in Subsections 8, 9 and 11 of this Section IV
(herein sometimes referred to as "Guarantee Payments") shall
be regarded as advance payments of water connection charges
otherwise payable to the City, and the developers of Region
II shall receive a credit for such advance payments.  At

the direction of the developers of Region II, as given
from time to time, such payments, together with interest
thereon from the date of each such payment at the rate of
seven percent (7%) per annum, shall be used to abate any
water connection or similar charges which would otherwise
have become payable by the developers of Region II in any
year following the year in which such payment was made.
If, within a period of two (2) years following termination
of the guarantee pursuant to Subsection 12 of this Section
IV, the developers of Region II shall not have recovered
the entire amount of such Guarantee Payments, together
with interest thereon as aforesaid, through credits against
such water connection charges in the manner contemplated
by the foregoing provisions of this Subsection 13, then
the City shall, out of any moneys then, or at any time,
and from time to time, legally available therefor, refund
such unrecovered Guarantee Payments in cash to Metropolitan
Crown.  If the City shall fail to refund such unrecovered
Guarantee Payments as herein provided, the developers of
Region II, in addition to all other rights and remedies
hereunder, or at law or at equity, shall have the continuing
right to use the amount of such unrecovered Guarantee Pay-
ments as credits against any water connection charges pay-
able to the City by the developers of Region II.

14. Future Annexations.

(a)  After annexation of the Territory to the
City, the City, subject to the provisions of

-34-

Subsection (b) of this Subsection 14, shall require,
as a condition to the annexation of any property
which requires the direct use of any component part
of Phase I, Phase II or Phase III Water Facilities
in order to obtain water service from the existing
City water distribution system, from the record
owners of such annexed property that said record
owners shall assume the obligations of the guarantee
provided for in Subsection 2 of this Section IV (if
such guarantee becomes effective), and the guarantee
provided for in Subsections 8, 9 and 11 of this
Section IV, in a proportion which bears a reasonable
and equitable relationship to the service to be
provided by or through any component part of the
Phase I, Phase II or Phase III Water Facilities
to such annexed property, provided that if the
guarantee provided for in Subsection 2 of this
Section IV does not become effective (or is sub-
sequently satisfied or discharged), then obliga-
tions so assumed with respect to the guarantee
provided for in Subsections 8, 9 and 11 of this
Section IV shall be in proportion which bears a
reasonable and equitable relationship to the service
to be provided by or through the Phase I, II and III
Water Facilities.  The assumption by such record
owners of a proportionate share of the obligations
of said guarantee shall not relieve the guarantors
referred to in Subsection 4 or Subsection 10 of this
Section IV from their obligations thereunder, but
said guarantors shall be entitled to credits against
the amount of their guarantee obligations in
the amounts of any moneys from time to time

-35-

actually received by the City from said record owners
as payments under said record owners' guarantee
obligations, and the amounts of any such payments to
the City by such record owners shall not constitute,
or become part of, Guarantee Payments for the purposes
of Subsection 13 of this Section IV.  The developers of
the District may waive the obligations of the City
under this Subsection 14(a) with respect to any annexa-
tion of property by the City.

(b)  If property to be annexed which would other-
wise be subject to the provisions of Subsection (a) of
this Subsection 14 shall be less than forty (40) acres
in size (herein sometimes referred to as "Small Annexed
Territory"), it shall not be a condition to the annexa-
tion of such Small Annexed Territory that the record
owners thereof assume any of the guarantee obligations
provided for in said Subsection (a); provided, that
for purposes of making such determination of size,
there shall be included all properties:  (i) owned,
controlled or held, under common control with others,
by such record owners, or, if the record owner of such
property shall be a land trust, there shall be included
all properties owned, controlled or held, under common
control with others, by the beneficiaries thereof, or,
if the record owner of such property shall be a
nominee, or if the beneficiary of such land trust
shall be a nominee, there shall be included all pro-
perties owned, controlled or held, under common control

with others, by the principal of such nominee,
and (ii) previously annexed to the City, from the
date hereof to the date of such annexation by such
record owners.

    15.  <u>Easements and Sites</u>.  It shall be a condi-
tion of the City's obligations to construct the Phase I,
Phase II, and Phase III Water Facilities that:

    (a)  the developers of the District shall cause
to be granted to the City, without cost, all necessary
easements which are required for the construction and
maintenance of transmission and distribution piping
for the Phase I, Phase II and Phase III Water Facili-
ties and which run under, over, across or through any
property in the District or any property outside the
District which is owned by any of such developers;
provided, that the necessity, location and size of
such easements shall be subject to the approval of the
City and the developers of the District;

    (b)  the developers of the District shall
reserve, dedicate and convey to the City without
cost, when and as required for the construction of
the Phase I, II, or III Water Facilities, as the
case may be, the site of approximately two (2) acres
legally described in Part IV of Exhibit C hereof
for a well site, pumping station and ground water
storage tanks, and a square site of approximately
one hundred (100) feet on each side to be located

at the northeast corner of the intersection of
83rd Street and the eastern boundary of Elgin, Joliet
& Eastern Railway Company to be used for a water
storage tank; and

(c)  in addition to the obligations of the
developers of the District provided for in Subsec-
tion (b) of this Subsection 15, the developers of
the District shall cause sites required for wells,
water storage and pumping facilities and appurten-
ances related to such facilities which are to be
located on property in the District or on property
outside the District which is owned by any such
developer to be made available for purchase by the
City from the owners of such sites at a cost of
$7,500 per acre; provided, that the necessity,
location and size of any such sites shall be sub-
ject to the approval of the City and the developers
of the District.

16.  <u>Schedule of Requirements</u>.  The developers
of each Region of the District shall deliver to the City
annually a five-year schedule of the estimated water
requirements for such respective Region of the District
during its development period and when fully developed
in accordance with the provisions of the Plan Descrip-
tion, which schedule shall be based upon the actual develop-
ment of such Region to the date of delivery of such schedule,
and the developers' best reasonable estimate of the projected

development of such Region for the period of such schedule.
At all times the City shall reserve for the next occurring
three (3) years an adequate supply of water for the pro-
perties in each such Region of the District and the occupants
thereof in accordance with the latest of such schedule of
requirements and shall not annex any new properties to the
City nor undertake to supply water to any property not now
within the corporate boundaries of the City, the effect of
which would be to impair the City's ability to supply water
to the properties in each Region of the District and the
occupants thereof for such three-year period in accordance
with the latest of such schedule of requirements.

17. <u>Water Storage Tank Signs</u>.  During the develop-
ment period of the District, the developers of each Region
of the District shall have the right upon their unanimous
request to the City, at their own expense and subject to
City supervision, to paint or place on any City water storage
tank constructed in such Region the name of the District or
any development phase thereof; provided such painting or
placement is accomplished in an appropriate and tasteful
manner; and, provided further, that any such name shall be
in addition to and not a replacement of the name Aurora.

18. <u>Revised Connection Charge Schedule</u>.  Upon
annexation of the Territory to the City, the City shall
promptly, without further public hearing, adopt an ordinance
amending the City's water connection charge schedule in the

manner set forth in Part V of Exhibit C, and the connection
charges provided for therein for meter sizes above two (2)
inches which may be installed in Manufacturing Areas of the
District shall not be increased within the District during
the term of this Agreement by more than five percent (5%)
in each five-year period following the date of annexation
of the Territory to the City.  Subject to the limitation
in the next preceding sentence, the City may by ordinance
increase the City's water connection charge schedule, pro-
vided that any such increase shall be applicable in all
other areas of the City.  Any revisions to the City's water
service user rate schedule deemed necessary by the City's
consulting engineers may be effected at any time at the
option of the City during the term hereof, provided however,
that at no time shall any portion of the District be charged
a water service user rate higher than the lowest water ser-
vice user rate charged in any other part of the City for
the same level of water service.

    19.  <u>Private Fire Protection Systems--Connection
Charge</u>.  It is hereby agreed and understood that if a
private sprinkler and fire protection system shall be
installed in any part of the District, no connection or
other comparable charge shall be charged by the City for
the connection of such private sprinkler and fire protection
system, and further, such sprinkler and fire protection
system shall not be metered, and no meter charge shall be
made for such sprinkler and fire protection system.  The
City shall have the right to require the installation of
detector check valves and flow meters or similar water
flow monitoring systems to monitor the flow of water into

or through any private sprinkler and fire protection system installed in any part of the District, if such detector check valves and flow meters or other systems shall, by City ordinance, be required on private sprinkler and fire protection systems in all other areas of the City.

20. <u>Dedication of Water Distribution System</u>. The developers of the District shall dedicate, and the City shall accept the dedication of, all water utility mains, pipes and related appurtenances constructed or installed by such developers in any part of the District which constitute a part of the water transmission and dis- tribution system of the City excluding service lines, pro- vided that all such water utility mains, pipes and related facilities shall comply with all applicable City standards or regulations with respect thereto. From and after the dedication of any such water utility mains, pipes and related facilities excluding service lines, such water utility mains, pipes and related facilities excluding service lines shall be maintained, reconstructed, repaired and replaced by the City, and all costs and expenses of operation, maintenance, repair, reconstruction and replace- ment of such water utility mains, pipes and related facili- ties excluding service lines shall be the responsibility of the City.

21. <u>Changes in General Design Data</u>. Any Stage of the Phase I Water Facilities deleted therefrom pursuant to Subsection 1 of this Section IV shall be added to the Phase II Water Facilities. Other changes in the general design data for the Phase I, Phase II or Phase III Water Facilities may be made at any time and from time to time with the approval of the City and the developers of the District.

-41-

V.

ROADS AND HIGHWAYS

1.   Arterial Roads and Highways for the District—
General Provisions.

(a)   Description of District Road and Highway
Program.   Exhibit D, attached hereto and made a part
hereof, contains a description of, and the land use
plan which is included in Part Three of the Plan
Description shows, the arterial road and highway
improvement and construction projects presently
deemed by the City and the developers of the District
as desirable for the full development of the District.
The arterial road and highway construction projects
described in Exhibit D, taken together (except for
the roads and highways described as Complementary
Roads and Highways in Subsection (f) of this Sub-
section 1), shall hereinafter in this Agreement be
called the "District Road and Highway Program."
As provided hereinafter in this Section V, from
time to time the City shall complete the successive
phases of the District Road and Highway Program of
Region I and Region II, and the City shall, with
respect to all or any part of any such phases,
other than Phases III B and IV C of the Region I
Road and Highway Program, which are within

or outside the corporate limits of the City,
provide for the construction of such phases and
for the financing thereof with special assessments,
or otherwise as hereinafter provided, and in that
connection take, and to the extent permitted by
law, cause and enable its officers and the City
Board of Local Improvements to take, all steps
necessary or desirable to the end that the public
and private portions of the cost of such phases
will be determined in accordance with the agreements
set forth in those provisions of this Section V
and those provisions of Exhibit D which state the
public and private benefit portions of the net cost
(as hereinafter defined) of the roads and highways
described therein.

(b)  Assistance from other Governmental
Authorities.  The City and the developers of the
District will cooperate with each other and use
their best efforts to obtain from the State, County
and other governmental authorities financial and
other forms of assistance which may be necessary or
appropriate in acquiring properties and rights-of-way
for and in completing the construction of the District
Road and Highway Program.  Without limiting the gen-
erality of the foregoing, and subject to the later
provisions of this Section V, and particularly, without
limitation, the provisions of Subsection 1(f) of this

Section V, the City will cooperate with other govern-
mental authorities to provide special assessment or
other financing of the District Road and Highway Pro-
gram, both within and without the corporate limits of
the City.

(c)  General Provisions with Respect to Future
Annexations.  Subject to the limitations and provi-
sions set forth in this Section V, and particularly
in Subsection 4 of this Section V, it is agreed that,
in connection with future annexations to the City of
property which has benefited or will benefit from one
or more phases or part of any phase of the District
Road and Highway Program, the City shall obtain,
unless the developers of Region I as to the Region
I roads (as hereinafter defined) or the developers
of Region II as to the Region II roads (as hereinafter
defined) otherwise agree, as an annexation condition
assumed by the record owners of the property to be
annexed, and as an undertaking in the annexation
agreements providing for such annexations, an agreement
by such record owners covering the following:

(i)  that such record owners of such annexed
property, in proportion to and to the extent of
the private benefit that has accrued or will
accrue to such annexed property from the com-
pletion of any phase or part of a phase of the

-44-

District Road and Highway Program (determined in accordance with the provisions of this Agreement), will assume, be subject to, and agree to perform and pay each of the agreements and undertakings of the developers and other record owners of property set forth in Subsections 2, 3 and 4 of this Section V with respect to said phase or part of a phase of the District Road and Highway Program, with a resulting proportionate reduction in such agreements and undertakings of the developers and other record owners, in proportion to their respective obligations thereunder, and

(ii)  without limiting the generality of clause (i) next above, such record owners of the annexed property, in proportion to and to the extent of the private benefit that has accrued or will accrue to such annexed property from the completion of all or any part of any phase of the District Road and Highway Program (determined in accordance with the provisions of this Agreement), will:

(y)  consent to future special assessments against such annexed property with respect to any such phase or part which may be financed by special assessments under the provisions of this Section V or otherwise,

such special assessments to be determined,
assessed and spread against such annexed
property to the extent of and in proportion
to the private benefit that has accrued or
will accrue thereto, which private benefit
shall be determined on the same basis and
in accordance with the agreements and pro-
visions hereinafter in this Section V and
in Exhibit D set forth with respect to such
phase or part, and

    (z)  make a payment to the City for
and to the extent of the private benefit
that has accrued or will accrue to such
annexed property from the completion of
any phase or part of such phase of the
District Road and Highway Program (deter-
mined in accordance with the provisions of
this Agreement), which payment shall be
determined on the same basis as and in
accordance with the agreements and pro-
visions hereinafter in this Section V and
in Exhibit D set forth, and which payment
shall be used by the City; first, to reim-
burse the developers and other record
owners within and outside the District
for special assessment or other payments
theretofore paid by them with respect to

such phase or part (such reimbursement
to be on a basis proportionate to the
respective amounts of said payments made
by the developers and such other record
owners with respect to such phase or part),
and second (if any balance remains), to
reduce future payments of assessments or
other payments required to be made with
respect to such phase or part by the devel-
opers and such other record owners of prop-
erty inside or outside the District (such
reduction likewise to be on a basis pro-
portionate to the respective amounts of
said future payments required to be made
by the developers and such other record
owners with respect to such phase or part
of a phase).  All payments made hereunder
to the developers of Region I and other
owners of record of property in Region I
shall be made by the City to Urban, which
shall receive such payments on behalf of
the developers of Region I and other record
owners of property in Region I.  All payments
to be made hereunder to the developers of
Region II and other record owners of prop-
erty in Region II shall be made by the City
to Metropolitan Crown, which shall receive
such payments on behalf of the developers of
Region II and other record owners of property
in Region II, and

(iii)  that such record owners of such annexed
property will dedicate to the City, Township,
County, State or other governmental authority,
as may in each case be appropriate, without cost
to the City, all properties and rights-of-way
which are necessary to complete the District Road
and Highway Program.

(d)  Properties and Rights-of-Way from Developers.
The developers of the District will dedicate to the
City, Township, County, State or other governmental
authority, as may in each case be appropriate, without
cost to the City, all properties and rights-of-way
(i) which are located in the District or which are
located outside the District and which are now owned by
such developers; and (ii) which are necessary to com-
plete and are a part of the District Road and Highway
Program, provided, that with respect to Phases II B and
II C of the Region I Road and Highway Program (herein-
after called the "Phase II B and II C Programs"), the
value of the land dedicated to the City by the devel-
opers of Region I for the Phase II B and II C Programs
(computed at a price of $10,000 per full acre and a
proportional amount for fractions of acres) shall be
included in the calculation of the net cost (as "net
cost" is hereinafter defined) of the Phase II B and
II C Programs and shall be credited against such
developers' share of the private benefit portion of
the net cost of the Phase II B and II C Programs.