in this Agreement, to the contrary, it is agreed
and understood that if, at the expiration of
eighteen (18) years after annexation date, the
City and the developers of Region II shall
have failed to agree upon the times for the
commencement and completion of any phase of any
twenty-year road (except where the City and the
developers of Region II have theretofore mutually
agreed to permanently defer and not to construct
such phase), then, upon written notice, given
promptly after the expiration of said eighteen-
year period, from the City to the developers of
Region II or from the developers of Region II
to the City, such phase shall be commenced
promptly, and completed as soon as practicable,
and the City and the developers of Region II shall
be deemed for all purposes of this Agreement to
have agreed upon the said times as the times of
commencement and completion with respect thereto.

    (ix)  The cross sections of the four-lane
Region II roads designated and described in Part
III of Exhibit D shall be constructed as therein
designated, unless the respective cross section
is otherwise agreed to be constructed pursuant
to the mutual agreement of the City and the de-
velopers of Region II.

<u>General Schedule Provisions</u>

(x)  It is agreed that, if any phase of any priority road shall be changed to a phase of a twenty-year road, or any phase of any twenty-year road shall be changed to a phase of a priority road, in accordance with the provisions hereof, the times for commencement and completion, the rights with respect to deferral and advancement, and all of the other provisions under this Section V shall correspondingly change with respect to such changed phase, and shall be applicable to such changed phase as though such changed phase were originally a phase of a twenty-year road or of a priority road, as the case may be, in accordance with the provisions of this Agreement.

(xi)  The developers of Region II and the City agree to meet at least annually to review the status of the District Road and Highway Program as it pertains to Region II roads, and to make amendments and changes with respect to provisions of this Subsection 3(j) relating to the Region II roads, as conditions and the nature and progress of the development of the District and of Region II from time to time warrant and indicate, and as shall be mutually agreed upon between the City and the developers of Region II.

(xii)   The City and Metropolitan Crown agree that the location and alignment of the priority roads and the twenty-year roads, and the phases and parts thereof (as shown in the land use plan which is included in Part Three of the Plan Description, and as described in Exhibit D), may require changes from time to time in order to serve the best interests and meet the needs and requirements of the City generally and of such developers.  Accordingly, it is agreed that Metropolitan Crown may, at any time prior to the Expiration Date of Notice of Start of Construction of any phase or part of a phase of any of the priority roads or of any of the twenty-year roads, change the location and alignment of any such phase or part, by written notice to the City, provided that all such changes in alignment and location to the extent that they are within the City shall meet with the approval of the City, which approval shall not be unreasonably withheld.

(xiii)   Each sale, conveyance or other transfer of any real property, whether inside or outside the District, made at any time or from time to time after the annexation date shall be subject to the provisions of this Subsection 3(j), and each transferee and grantee under such sale, con- veyance or other transfer shall be deemed to have

consented and agreed to and be bound by the said
provisions.  Except only to the extent, if any,
that Metropolitan Crown or any other seller,
grantor or transferor shall expressly and specifi-
cally in the agreement, deed or other instrument
effecting such sale, conveyance or other transfer
expressly and specifically assign and transfer
some or all of the rights of Metropolitan Crown
under this Subsection 3(j), all of the said rights
under Subsection 3(j) not so expressly and specifi-
cally assigned and transferred shall be deemed to
be retained by and to remain in Metropolitan Crown
or said other seller, grantor or other transferor
to whom Metropolitan Crown may have assigned any
of said rights.

4.  <u>Financing of the Region I Roads and of the
Region II Roads</u>.  Except as otherwise provided for in Sub-
sections 1, 2 and 3 of this Section V, the following provi-
sions shall apply to the financing and payment of the cost of
constructing the Region I roads and the Region II roads:

(a)  <u>General Provisions</u>.

(i)  Some or all of the properties, whether
located inside or outside of the City after the
annexation date, which will benefit from a phase
or part of a phase of the Region I roads, or a

phase or part of a phase of the Region II roads,
may, at the time of the commencement of construc-
tion (as hereinafter defined) of such phase or part:
(y) be owned respectively by the developers of
Region I or by the developers of Region II (herein
sometimes referred to as "owned properties"), or (z)
not be owned respectively by the developers of Region
I or by the developers of Region II (herein sometimes
referred to as "non-owned properties").

    (ii)  Some or all of the owned properties, and/
or some or all of the non-owned properties, whether
located inside or outside of the City after the
annexation date, at the time of the commencement of
construction of a phase or a part of a phase of the
Region I roads, or a phase or a part of a phase of
the Region II roads, can legally be subjected to
special assessment in connection with the construction
of such phase or part (because of location inside
the City, contiguity or adjacency thereto, or for
other reasons) pursuant to special assessment pro-
ceedings instituted by or on behalf of the City,
its Board of Local Improvements, or another
governmental authority or instrumentality (said
properties which can be subjected to special
assessment are herein sometimes referred to
as "special assessment properties," said owned
properties which can be subjected to special

assessment are herein sometimes referred to as
"owned special assessment properties", and said
non-owned properties which can be subjected to
special assessment are herein sometimes referred
to as "non-owned special assessment properties").

(iii)  Some or all of the owned properties,
and/or some or all of the non-owned properties, at
the time of the commencement of construction of a
phase or a part of a phase of the Region I roads,
or a phase or a part of a phase of the Region II
roads, cannot legally be subjected to special
assessment in connection with the construction of
such phase or part (because of location outside
of the City, or for other reasons) pursuant to
special assessment proceedings instituted by or
on behalf of the City, its Board of Local Improve-
ments, or other governmental authority or instrumen-
tality (said properties which cannot be subjected
to special assessment are herein sometimes referred
to as "non-special assessment properties," said
owned properties which cannot be subjected to special
assessment are herein sometimes referred to as
"owned non-special assessment properties," and said
non-owned properties which cannot be subjected to
special assessment are herein sometimes referred
to as "non-owned non-special assessment prop-
erties").

(iv)  Subject to the provisions of this Subsection 4, the developers of Region I and of Region II agree to consult and cooperate with the City to the end of accomplishing the most expeditious and economical method of financing the construction of each of the Region I and Region II roads and each phase and part thereof.

(v)  The phrase "time of commencement of construction" of a phase or a part of a phase of a Region I road or a Region II road, as used in this Subsection 4 of this Section V, shall mean: (y) in all cases where special assessment financing shall be employed, the date that the City, either alone or jointly with another governmental authority, shall institute the special assessment suit in the appropriate court having jurisdiction to make the special assessments in connection with and for the financing of the construction of such phase or part; and (z) in all cases where special assessment financing is not employed, the date when the principal contract is entered into covering the building and construction of such phase or part.

(vi)  The following phases of the Region I roads and of the Region II roads are herein referred to as the "1973-1974 Phases":

-85-

(A)    <u>Region I roads</u>:  Phases I A, I B, I C, II A, II B, III B, IV B, and IV C.

(B)    <u>Region II roads</u>:  Phases I, II, III, IV, V, VI, VII, X, XIII, and XIV of the priority roads of Region II roads.

(b)    <u>Special Assessment and Other Financing</u>.

(i)    Subject to the provisions of Subsection 2 of this Section V, the City shall as promptly as practicable, to comply with the completion schedules set forth in Exhibit D (subject to the changes under the provisions of Subsection 3(j) of this Section V), provide for the financing of each of the Region I roads and each of the Region II roads, and each phase and part thereof, by special assessment or by other financing in accordance with the provisions of this Subsection 4.  Where special assessment financing is to be employed, to the extent permitted and required by law, the City shall cause and enable its officers and its Board of Local Improvements and other appropriate governmental authorities and instrumentalities to promptly take all steps required in connection therewith, to the end that construction contracts for said work will be advertised and awarded, and special assessment bonds, in amounts reflecting the respective private and public benefits of the work, will be issued and delivered or sold in payment for

said work, all in accordance with the provisions of
this Subsection 4.  It is agreed that only the
direct and directly allocable costs of the City for
administration, legal and engineering items shall
be included as costs for said items for purposes
of said special assessment proceedings and for pur-
poses of determining "cost" and "net cost," as said
terms are above defined, of the Region I and Region
II roads, and each of the phases and parts of the
phases thereof.

(ii)  Notwithstanding any provisions herein
to the contrary, in the case of owned non-special
assessment property and non-owned non-special
assessment property, with respect to which the
City or its agencies may not be legally able to
employ special assessments, but with respect to
which other governmental authorities may have the
jurisdiction and authority to employ special assess-
ments, either jointly with the City or otherwise,
the City agrees to use its best efforts to cause
such other governmental authorities to institute
and complete such special assessments on such property,
as promptly as practicable to comply with the com-
pletion schedules set forth in Exhibit D, as they may
be changed under Subsection 3(j) of this Section V.

(iii)  Subject to the provisions of Subsection
4(k) of this Section V, in each of said special

assessment proceedings, the developers' and record
owners' share of the net cost (i.e., private benefit)
shall be assessed against the developers and other
benefited record owners of property located in each
respective Region involved, and against the benefited
owners of property outside of such Region, in accor-
dance with and to the extent of the benefits derived
or to be derived by such developers and record
owners respectively from the phase or part thereof
involved in such special assessment.  The City's
share of the net cost shall be assessed against,
borne and paid by the City as public benefit.  The
City shall use its best efforts to cause the Court
to find the public benefit portion and the private
benefit portion of the net cost of the respective
phase or part of the phase involved to be in accor-
dance with the respective determinations and amounts
set forth in Exhibit D with respect to such phase
(subject to the provisions of Subsection 4(k) of
this Section V), and the City shall complete
promptly all required court proceedings.  Subject
to the provisions of Subsection 4(k) of this
Section V, and particularly clause (ii) thereof,
if the record owners' share of the net cost asses-
sed as private benefit, as finally confirmed by the
Court, is less than the record owners' share (private
benefit) as provided for in Exhibit D, the record
owners agree to pay such difference in the record
owners' share of net cost to the City.  If the

record owners' share of the net cost assessed as
private benefit, as finally determined by the Court,
is greater than the record owners' share (private
benefit) of the net cost as provided for in Exhibit
D, then the City will reimburse the record owners
for such excess.  The said payments provided for in
the immediately preceding two (2) sentences shall be
made by the record owners to the City, or by the
City to the record owners, as the case may be, at
the same times and in the same manner, and depending
on the method of financing employed, as hereinafter
in this Subsection 4 provided for the payment of
the public benefit and private benefit portions of
the respective phase or part of a phase involved.
All rebates of special assessments, whether at the
time of the approval of the Certificate of Cost
and Completion or after the payment of all bonds
and vouchers, shall be made to the City and to the
record owners against whom the private benefit por-
tions of such net cost shall have been assessed, in
the proportions of their respective allocations of
the total of such net cost.  All payments made
hereunder to the developers of Region I or other
record owners of property in Region I shall be
made by the City to Urban, which shall receive the
same on behalf of the developers of Region I and
the other record owners of property in Region I.
All payments made hereunder to the developers of
Region II or other record owners of property in

Region II shall be made by the City to Metropolitan Crown, which shall receive the same on behalf of the developers of Region II and the other record owners of property in Region II.

(iv)  Notwithstanding any provisions in this Agreement to the contrary, the provisions of clause (iii) next above shall be deemed binding upon the respective record owners from time to time of real property located inside the District or located outside the District, and each sale, conveyance or other transfer of any such real property, whether within or without the District, made at any time and from time to time after the annexation date shall be deemed subject to the provisions of said clause (iii) next above, and each transferee and grantee under any such sale, conveyance or other transfer shall be deemed to have consented and agreed to and be bound by the said provisions; provided, that the provisions of said clause (iii) shall not be deemed binding on any such transferee or grantee or subsequent record owner under any such sale, conveyance or other transfer to the extent that the developers or any such other seller, grantor or other transferor (whether having theretofore acquired the property to be transferred from the developers or others) shall expressly and specifically, in the agreement, deed or other instrument effecting such sale, conveyance or other transfer, agree to retain

any of said obligations.  Except only to the
extent, if any, of such express and specific
retention of liabilities or obligations by the
developers or such other seller, grantor or
other transferor, the developers and each such
other seller, grantor or other transferor shall,
upon said sale, conveyance or other transfer,
have no liabilities or obligations with respect
to or under any of the provisions of said clause
(iii) next above.

(c)  <u>Right of City to Use Special Assessment,</u>
<u>General Obligation or Other Financing, and Requirement</u>
<u>in Certain Instances to Use Only Special Assessment</u>.

(i)  The City shall be required and hereby
agrees to employ and use only special assessment
financing for the construction of each phase or
part of a phase of the Region I roads and of the
Region II roads, except (v) Phase III B and Phase
IV C of the Region I roads, and except (w) where,
at the time of the commencement of the construction
of a 1973-1974 Phase of a Region I road or of a
Region II road, all of the properties which will
benefit from such 1973-1974 Phase are owned
by the respective developers of Region I or
Region II, as the case may be, and except (x)
where, at the time of the commencement of the
construction of a phase or a part of a phase of

a Region I road or of a Region II road, all of the
properties which will benefit from such phase or
part of a phase are either owned non-special assess-
ment properties or are non-owned non-special
assessment properties, and the City is not able to
cause any other governmental authority which has
jurisdiction and has the ability to impose special
assessments against said benefited properties,
jointly with the City or otherwise, to impose
special assessments against said benefited proper-
ties, and except (y) where, at the time of the
commencement of the construction of a 1973-1974
Phase of a Region I road or of a Region II road,
some of the properties which will benefit from
such 1973-1974 Phase are owned respectively by the
respective developers of Region I or Region II, as
the case may be, and all of the remainder of the
properties which will benefit from such 1973-1974
Phase are non-owned non-special assessment proper-
ties, and the City is not able to cause any other
governmental authority which has jurisdiction and
the ability to impose special assessments against
said non-owned non-special assessment properties,
jointly with the City or otherwise, to impose
special assessments against said benefited proper-
ties, and except (z) where, at the time of the
commencement of the construction of a phase or of
a part of a phase of any Region I road or of any

-92-

Region II road, the City and the respective developers of Region I or Region II, as the case may be, otherwise agree.

(ii)  It is agreed that in each of the instances described in clauses (v), (w), (x), (y) and (z) next above, the City shall have the right to use and employ special assessment financing, general obligation or other financing, as the City in its sole discretion may determine.

(iii)  The City in its discretion shall determine whether a phase or a part of a phase of a road which is to be constructed shall be included in one or more special assessment proceedings.  In exercising such discretion the City agrees that whenever possible it will include in a special assessment proceeding a phase or part of a phase of a road that will benefit not only assessable properties, but also non-assessable properties to the end and for the purpose, among others, of applying and employing the provisions of Subsection 4(k) of this Section V.o

(d)  Developers' Obligation to Pay in Cash Amount of Private Benefit Portion Applicable to Property Owned by the Developers on the Annexation Date with Respect to the 1973-1974 Phases.

(i)  In addition to the obligations of the
developers as set forth in Subsection 4(f) of this
Section V, the respective developers of Region I
and Region II (i.e., the developers of Region I as
to a 1973-1974 Phase of the Region I roads, and the
developers of Region II as to a 1973-1974 Phase of
the Region II roads) agree to pay to the City in
cash, as and when required for each progress payment
and the final payment of the net cost of the respec-
tive 1973-1974 Phases of the Region I roads or of
the Region II roads, as the case may be, that
fraction of the private benefit portion of each
such payment equal to the fraction arrived at by
dividing (y) the amount of the private benefit
portion applicable to the property owned by such
respective developers on the annexation date and
benefited thereby by (z) the total amount of all
of the private benefit portion applicable to all
of the property benefited by said respective
1973-1974 Phase.

(ii)  If the respective developers of Region
I or Region II shall sell, convey or otherwise
transfer all or any part of any property owned by
them on the annexation date which shall be benefited
by any said respective 1973-1974 Phase of a Region I
road or of a Region II road, as the case may be, the
transferees who shall become the record owners from
time to time of such property may, or may not,

-94-

expressly and specifically assume some or all
of the obligations of the respective developers
as provided and set forth in clause (i) of this
Subsection 4(d), and such transferees shall not
be deemed to have assumed any of the obligations
provided and set forth in clause (i) of this Sub-
section 4(d), except only to the extent, if any, of
such express and specific assumption of such obli-
gations by such transferee in the agreement, deed
or other instrument effecting the sale, conveyance
or other transfer to such transferee.  Such express
and specific assumption by such transferees of such
obligations shall not relieve the respective developers
from their said respective obligations, but the res-
pective developers shall be entitled to a credit
against (and repayment, if applicable, with respect
to) their said respective obligations, to the extent
and in the amount of all moneys at any time and from
time to time received by the City from such trans-
ferees with respect to said respective obligations.

     (iii)  Notwithstanding any of the provisions
of this Section V, and particularly the provisions
of Subsection 1(c) of this Section V, to the contrary,
it is agreed that record owners of property which
is annexed to the City, after the Territory is
annexed to the City, shall not be required (unless
the City in its sole discretion determines and so
requires) as a condition to such annexation, or

as an undertaking in the annexation agreement
providing for such annexation, to agree to make
any of the cash payments provided for above in
clause (i) of this Subsection 4(d) to be made
after the date of such annexation; provided, that
such record owners shall be required to make any
and all payments of then existing or future
special assessments assessed against such annexed
property, and to make the other payments and
assume the other obligations provided for in Sub-
section 1(c) of this Section V.

(e)  <u>Interest Rate and Terms of Special Assessment
Bonds</u>.  The City agrees that, in order to minimize the
cost of the roads, and all phases and parts thereof,
and to avoid the incorporation by prospective bidders
in construction contracts of additional amounts for
anticipated discounts in the sale of the special assess-
ment bonds at prices below par, the special assessment
bonds to be issued both for the public benefit portion
and for the private benefit portion shall provide for
the then maximum legal interest rate (or a lower interest
rate if such lower rate will permit the sale of the
bonds at par) and shall contain such other favorable
terms that the City may legally incorporate in such
bonds so as to enable such bonds to be sold at par; or,
if because of the then existing financial market condi-
tions or the legal disability of the City to provide
for a high enough interest rate or other favorable

enough terms adequate to enable such bonds to be sold at par, then such interest rate and other terms shall be the highest and most favorable that the City may then legally be able to provide so as to enable such bonds to be sold at the highest possible price below par. To the extent that such bonds are required to be issued for any private benefit portion, it is agreed that the bonds issued for the private benefit portion shall have the same terms as those issued for the public benefit portion.

(f) Obligations of City and of Developers with Respect to Owned and Non-Owned Non-Special Assessment Properties.

(i) In those instances where properties to be benefited by the construction of a phase or part of a phase of a Region I road or a Region II road are either owned non-special assessment properties or non-owned non-special assessment properties, and the City is not able to cause another governmental authority which has jurisdiction and has the ability to impose special assessments against said properties, jointly with the City or otherwise, to impose special assessments against said properties, the respective developers of Region I or Region II (i.e., the developers of Region I as to any

phase or part of a phase of a Region I road,
and the developers of Region II as to any
phase or part of a phase of a Region II road)
agree to advance and pay to the City in cash,
as and when required, for each progress payment
and the final payment of the net cost for the
construction of such respective phase or part,
that part of each such required payment equal to
the private benefit portion of such payment appli-
cable to the said benefited owned non-special
assessment properties and to said benefited non-
owned non-special assessment properties.  If the
said private benefit portion applicable to said
owned non-special assessment properties and to
said non-owned non-special assessment properties
has been determined under the provisions of Sub-
section 4(k) of this Section V, the said deter-
mination shall govern in applying the provisions
of the immediately preceding sentence, otherwise
such private benefit portion so applicable to
said owned and non-owned non-special assessment
properties shall be determined as though said non-
assessable properties were the subject matter of
a special assessment proceeding, applying the pro-
visions of this Agreement and in accordance with
the principles and formulae used in spreading
special assessments as to such private benefit
portion in special assessment proceedings that
theretofore may have been had with respect to

phases or parts of phases similar to the phase or part involved, and if theretofore there shall not have been such proceedings, then in accordance with the principles and formulae generally used in spreading such assessments as to such private benefit portion in special assessment proceedings with respect to phases or parts of phases of roads located in the vicinity of the instant phase or part and similar thereto.  The City shall bear and pay the full amount of the balance of each said progress and final payment, i.e., the balance comprising the public benefit portion.

(ii)  In order to effect the recapture and reimbursement of the cost of constructing said roads, phases, and parts thereof referred to in clause (i) next above:  (x) the City and the developers and record owners, as provided for in this Section V, shall cooperate with each other and use their best efforts to obtain from the State, County, Township, federal government and other governmental authorities financial and other assistance for the construction of such Region I and Region II roads and all phases and parts thereof; (y) the City shall obtain as provided for in this Section V, as a condition of annexation of properties so benefited by the said respective Region I or Region II roads or any

phase or part thereof, an agreement from the
record owners of said annexed properties to
contribute to the net cost of such roads, phases
and parts thereof, to the extent that such roads,
phases and parts thereof have benefited or shall
benefit such annexed properties, including, with-
out limitation, an agreement from the record owners
of such annexed properties to make the payments and
reimbursements determined as provided for in Sub-
section 4(k) of this Section V, if the determinations
provided for in said Subsection 4(k) have theretofore
been made, otherwise, such payments and reimbursements
shall be determined as though said annexed proper-
ties were the subject matter of a special assessment
proceeding, applying the provisions of this Agree-
ment and in accordance with the principles and
formulae used in spreading special assessments in
special assessment proceedings that theretofore
may have been had with respect to phases or parts
of phases similar to the phase or part involved,
and if theretofore there shall not have been such
proceedings, then in accordance with the princi-
ples and formulae generally used in spreading such
assessments in special assessment proceedings with
respect to phases or parts of phases of roads located
in the vicinity of the involved phase or part and
similar thereto; and (z) as provided for in this
Section V, the City agrees to use its best efforts
to cause other governmental authorities which have

jurisdiction and the ability to impose special
assessments to institute and complete special
assessments against such property benefiting
from any such road, or any phases or part
thereof.  All amounts and costs recaptured
shall be applied and paid as provided for in
this Section V.

(iii)  Notwithstanding any of the provisions
of this Section V, and particularly the provisions
of Subsection 1(c), to the contrary, it is agreed
that record owners of property which is annexed to
the City after the Territory is annexed to the
City shall not be required (unless the City in
its sole discretion determines and so requires)
as a condition to such annexation, or as an under-
taking in the annexation agreement providing for
such annexation, to agree to make any of the pay-
ments and advances required to be made after the
effective date of such future annexation under
clause (i) above of this Subsection 4(f) with
respect to the private benefit portion of each
such payment applicable to property which shall
after the date of such future annexation be owned
non-special assessment property or non-owned non-
special assessment property; provided, however,
such record owners shall be required to make any
and all payments of then existing or future
special assessments assessed against such annexed

-101-

property, and to make the other payments and
assume the other obligations provided for in
Subsection 1(c) of this Section V, including,
without limitation, the reimbursements and
payments provided for in clauses (i) and (ii)
of Subsection 4(h) and in clause (ii) of Sub-
section 4(k) of this Section V to be made by
such record owners of such property annexed after
the annexation date under this Agreement.

(iv)  If the respective developers of Region
I or Region II shall sell, convey or otherwise
transfer all or any part of any property owned
by them on the annexation date, the transferees
who shall become the record owners from time to
time of such property may, or may not, expressly
and specifically assume some or all of the obliga-
tions of the respective developers as provided for
and set forth in clause (i) of this Subsection 4(f),
and such transferees shall not be deemed to have
assumed any of the obligations provided and set
forth in clause (i) of this Subsection 4(f), except
only to the extent, if any, of such express and
specific assumption of such obligations by such
transferee in the agreement, deed or other instrument
effecting the sale, conveyance or other transfer to
such transferee.  Such express and specific assump-
tion by such transferees of such obligations shall
not relieve the respective developers from their said

respective obligations, but the respective developers
shall be entitled to a credit against (and repayment,
if applicable, with respect to) their said respective
obligations, to the extent and in the amount of all
moneys at any time and from time to time received
by the City from such transferees with respect to
said respective obligations.

(g)  Bidding.

(i)  In the case of each and all of said roads,
phases and parts thereof agreed to be constructed
hereunder, the City agrees to advertise for bids
and to award the contracts for construction by com-
petitive bidding.

(ii)  The respective developers of Region I
and Region II shall have the right to bid on the
same terms and basis as other bidders.

(iii)  The City shall award the bid to and
contract with the lowest qualified bidder.

(iv)  The respective developers and record
owners of Region I or Region II may respectively
assume the construction of the respective phases
and parts of phases of the respective Region I or
Region II roads, as provided for in Section 9-2-109
of the Illinois Local Improvement Act.

(h)  <u>Guarantee with Respect to Private Benefit
Portion of Special Assessment Bonds Covering Private
Benefit Portion of Owned and Non-Owned Special Assess-
ment Properties</u>.

(i)  In those instances where the City shall
issue special assessment bonds in compliance with
and pursuant to the provisions of this Subsection
4 of this Section V with respect to the construc-
tion of any phase or part of a phase of any
respective Region I or Region II road, and if a
part of such special assessment bonds shall be
payable from special assessments for the private
benefit portion assessed against owned special
assessment properties or assessed against non-
owned special assessment properties (i.e., from
the special assessments for the private benefit
portion of the net cost applicable to property
then owned or then not owned by the respective
developers of Region I or Region II), the respec-
tive developers of Region I and Region II (i.e.,
the developers of Region I, including, without
limitation, Urban, Sears and Mafco, Inc., jointly
and severally, as to a phase or part of a phase
of a Region I road, and the developers of Region
II, including, without limitation, Crown, as to
a phase or part of a phase of a Region II road),
or such other persons and entities as shall be

acceptable to the City, shall execute (prior
to the City's issuing said special assessment
bonds) a written guarantee to the City which
shall be mutually agreeable in form to the City
and the respective guarantors executing the
guarantee, which guarantee shall in substance
provide that the guarantors will pay in cash at
the time and in the manner hereinafter provided
the amount of the "special assessment payment
deficiency amount" as hereinafter defined.

    (ii)   The City agrees that between November 1
and November 10 of each year, beginning with the
year in which any of the said special assessments
referred to in clause (i) next above shall be
assessed and levied and in which the said special
assessment bonds referred to in clause (i) next
above (with respect to which the said guarantee
shall be executed as provided for in clause (i)
next above) are issued, and ending with the year
in which the said special assessment bonds shall
have been fully paid, the City shall bill the
installments of special assessments (covering both
principal and interest) which shall become due on
January 2 of the next succeeding year.  On January 3
of the said next succeeding year, the City shall,
with respect to each issue of such special
assessment bonds, by written notice executed by

the City's Treasurer, advise the guarantors of
such issue of the amount of that part of the
deficiency, if any, (after the application and
exhaustion of all special assessment reserve funds,
if any, and after the application of all funds that
the City shall have theretofore received from collec-
tions of such special assessment liens and not
theretofore paid by the City on such special
assessment bonds and interest coupons relating
thereto) in the amount of interest or principal
required to be paid by the City to meet the next
current special assessment bond payment on such
issue (which next current special assessment bond
payment shall be due and payable under said special
assessment bonds on January 15 of the said next
succeeding year) resulting from, and only to the
extent of, the amount of the defaults in the pay-
ment of the private benefit portion of the said
last referred to installment(s) of said special
assessments assessed and levied against said owned
special assessment properties and said non-owned
special assessment properties and billed in the
preceding year as aforesaid.  (The said amount of
the said part of said deficiency is defined and
is herein referred to as "special assessment pay-
ment deficiency amount".)  Seven (7) days after
the receipt of the said notice, such guarantors

jointly and severally agree to pay to the City
in cash the said special assessment payment
deficiency amount.  Promptly after each said
January 15, the City shall assign, or cause
to be assigned, said special assessment bonds
and interest coupons relating thereto in an amount
equal to the amount of the special assessment
payment deficiency amount so advanced and paid
by the guarantors to the City, which special
assessment bonds and interest coupons shall be
assigned to the guarantors uncancelled and in
fully enforceable form, except that and the
guarantors agree that the bonds and interest
coupons so assigned shall be deemed subordinated
in order of payment to all of the then outstand-
ing and unpaid said special assessment bonds and
interest coupons of the said respective issue of
special assessment bonds not then owned by the
guarantors.  Thereafter, the City shall diligently
take and prosecute all steps and action required to
enforce and collect the said delinquent and defaulted
payments, and to enforce the City's special assess-
ment liens against the said defaulting properties.
Upon the request of such guarantors made from
time to time, the City shall take all steps and
execute all instruments required to transfer to
such guarantors or their designees all of the
City's liens, judgments and rights with respect
to such defaulting properties and with respect to
such delinquent and defaulted special assessment

liens.  Notwithstanding the provisions with respect
to subordination in order of payment set forth in
the fourth sentence of this clause (ii), the City
agrees to repay to such guarantors, as and when
received, all amounts received by the City at any
time and from time to time from such defaulting
properties and with respect to such delinquent and
defaulted special assessment liens, which payments
when so received shall be applied on and in payment
of the special assessment bonds and interest coupons
assigned and transferred to such guarantors as
aforesaid.  (As used in this clause (ii), an "issue
of special assessment bonds" shall consist of bonds
issued with respect to a specific special assessment
proceeding conducted to provide special assessment
financing for the construction of a specific phase
or part of a phase of a Region I road or a Region II
road.  The City shall keep separate records for each
such separate proceeding and the docket with respect
thereto, pursuant to this Agreement, and each such
special assessment proceeding and docket number with
respect thereto, and the special assessment bonds
secured thereby, shall be treated separately and
independently for the purposes of this Agreement,
and particularly the provisions of this Subsection
4(h).)

(iii)  In no event shall any guarantee executed
pursuant to the provisions of this Subsection 4(h),