included in the District at the time the Application for
the establishment of the District as a planned development
district was filed with the City.  The City agrees, at any
time or from time to time, at the request of the developers
of the District, to take all action appropriate or necessary
to annex such parcel to the City.

12.  <u>Incorporation of Defined Terms</u>.  All terms
which are defined or described in the Plan Description when
used in this Agreement shall have the same meaning given
to them in the Plan Description unless specifically modi-
fied herein or unless the context clearly indicates some
other meaning.

13.  <u>Defaults</u>.  If any party to this Agreement
shall fail to perform any of its obligations hereunder,
and the party or parties affected by such default shall
have given written notice of such default to the defaulting
party and such defaulting party shall have failed to cure
such default with reasonable promptness after the receipt
of such default notice, then, in addition to any and all
other remedies that may be available, either in law or
equity, the party or parties affected by such default
shall have the right (but not the obligation) to take
such action as in its or their reasonable discretion and
judgment shall be necessary to cure such default, and the
defaulting party, in such event, hereby agrees to pay and
reimburse the party or parties affected by such default
for all reasonable costs and expenses incurred by it or

them in connection with action taken to cure such default plus interest at a rate equal to the prime rate of interest charged by The First National Bank of Chicago to large corporate borrowers plus one percent (1%) per annum.

14. <u>Plan Description</u>. To the extent that any part of the Plan Description shall be contrary to, or inconsistent with, this Agreement and its Exhibits (other than Exhibit A), the terms and provisions of this Agreement and such Exhibits shall prevail and control.

15. <u>Enforcement</u>. Each of the parties hereto, or their successors in interest or assigns, may by civil action, mandamus, or other proceeding enforce each and all of the terms, conditions and provisions hereof.

16. <u>Location of Sites and Properties and Rights-of-Way for Roads and Highways</u>. Notwithstanding any provision of this Agreement to the contrary, and except as expressly provided in Subsection 15(b) of Section IV of this Agreement, the City shall have no right to request or require that a fire station site, the site for the public works maintenance building, easements for the construction and maintenance of transmission and distribution piping for the Phase I, Phase II and Phase III Water Facilities, or sites for water wells, water storage and pumping facilities and appurtenances related to such facilities, be located on property included in an approved Preliminary or Final Plan unless such easements, site or sites are designated on such

Plan, nor shall the City have the right to require the
dedication, for the District Road and Highway Program, of
properties or rights-of-way which are located on property
included in an approved Preliminary or Final Plan unless
such properties or rights-of-way are shown on such Prelim-
inary or Final Plan as properties or rights-of-way to be
reserved or dedicated for the District Road and Highway
Program.  The City may at any time or from time to time,
with respect to any property in the District, (i) waive its
rights as provided in this Agreement to request or require
the location on such property of a fire station site or the
public works maintenance building site, (ii) waive its
rights as provided in this Agreement to request or require
the granting of easements for the construction and mainte-
nance of transmission and distribution piping for the
Phase I, Phase II and Phase III Water Facilities, (iii) waive
its rights as provided in this Agreement to request or require
that sites for water wells, water storage and pumping facili-
ties and appurtenances related to such facilities be made
available for purchase or (iv) waive its right to require
the dedication of properties or rights-of-way for the District
Road and Highway Program.

      17.  _Notice_.  Any notice or demand hereunder from
any party hereto to another party hereto shall be in writing
and shall be deemed duly served if mailed by prepaid regis-
tered or certified mail addressed as follows:

      If to the City:

          City of Aurora
          44 East Downer
          Aurora, Illinois  60504

If to the owners of record of the properties in
the District or to Urban:

        Urban Investment and Development Co.
        401 North Michigan Avenue
        Chicago, Illinois  60611

with copies to:

        Metropolitan Structures
        111 East Wacker Drive
        Chicago, Illinois  60611

        Henry Crown and Company (Not Incorporated)
        300 West Washington Street
        Chicago, Illinois  60606

        Schradzke, Gould and Ratner
        300 West Washington Street
        Chicago, Illinois  60606

        Sidley & Austin
        One First National Plaza
        Chicago, Illinois  60670

or to such address as any party may from time to time desig-
nate by notice to the other parties.


XII.

CONDITIONS TO ANNEXATION


1.  No action shall be taken by the City to annex
any part of the Territory to the City until and unless all
of the Additional Annexation Agreements shall have been
validly executed by the parties thereto.


2.  No action shall be taken by the City to annex
any part of the Territory to the City unless all of the
Territory is annexed to the City at the same time and by
the same ordinance or by separate ordinances concurrently
adopted.

3. At any time after the execution of this Agreement when either of the conditions set forth in Subsections 1 and 2 above remain unfulfilled, Urban may withdraw the Annexation Petition, whereupon this Agreement and each Additional Annexation Agreement shall terminate without further obligation or liability on the part of the parties thereto.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers upon the day and year first above written.

ATTEST:       CITY OF AURORA, ILLINOIS,
           a municipal corporation

_____ By _____
City Clerk           Mayor

           FOX VALLEY MALL VENTURE,
           a joint venture

ATTEST:       URBAN INVESTMENT AND DEVELOPMENT
           CO.

_____ By _____
Secretary          Exec. Vice-President

ATTEST:       SEARS, ROEBUCK AND CO.

_____ By _____
Secretary          Vice President

-202-

WESTBROOK VENTURE,
a joint venture

ATTEST:                              URBAN INVESTMENT AND DEVELOPMENT CO.

_Jerome Rosenfeld_                   By _Robert E. Ullman_
                                        _Executive Vice-President_

ATTEST:                              SEARS, ROEBUCK AND CO.

_John Wilkins_                       By _W. G. Ebbing_
Secretary                               Vice President

ATTEST:                              MAFCO, INC.

_Pettengill H. Nelson_               By _Ronald K. Keith_
Assistant Secretary                     Executive Vice President

                                     HENRY CROWN AND COMPANY (Not
                                     Incorporated), a partnership

                                     By _Lester Crown_

ATTEST:                              EXCHANGE BUILDING CORPORATION

_Gerald Ratner_                      By _Lester Crown_
Assistant Secretary                     Vice President

                                     METROPOLITAN STRUCTURES, an
                                     Illinois limited partnership

                                     By _Allen Berman_

RECORD OWNERS OF REGION I

LaSalle National Bank not individually
or personally but solely as Trustee
under the following Trusts:
Trust Nos. 41290 dated 9/10/70
41173 dated 8/21/70
44041 dated 5/1/72
41276 dated 9/11/70

By _____
ASSISTANT Vice President

ATTEST:

_____
ASSISTANT Secretary

Chicago Title and Trust Company, not
individually or personally but
solely as Trustee under Trust No.
55815, dated September 18, 1970

By _____
ASST. Vice President

ATTEST:

_____
ASST. Secretary

American National Bank and Trust
Company of Chicago, not personally
but as Trustee under Trust No. 24472.

By _____
Seco. Vice President

ATTEST:

_____
ASSISTANT Secretary

-204-

RECORD OWNERS OF REGION II

```
                    LaSalle National Bank, not individually
                    or personally but solely as Trustee
                    under the following Trusts:
                    Trust Nos. 42938 dated 8/24/71
                               43192 dated 9/27/71
                               43522 dated 1/3/72
                               43524 dated 1/3/73
                               43820 dated 3/7/72
                               43926 dated 3/28/72
                               44044 dated 5/5/72
                               44165 dated 5/24/72
                               44319 dated 6/23/72
                               44740 dated 9/26/72
                               44741 dated 9/26/72
                               44742 dated 9/28/72
                               45126 dated 12/7/72
                               43043 dated 10/6/71
                               40299 dated 12/10/69
                               40363 dated 12/23/69
                               40457 dated 2/5/70
                               40722 dated 4/1/70
                               41036 dated 6/14/70
                               41663 dated 4/19/72
                               42193 dated 4/19/71
                               42898 dated 8/25/71
                               43024 dated 2/11/72
                               43788 dated 3/7/72
                               43924 dated 3/28/72
                               43925 dated 3/28/72
                               44223 dated 6/5/72
                               45477 dated 2/15/73
                               46315 dated 7/7/73
```

By _____
                ASSISTANT Vice President

ATTEST:

_____
                ASSISTANT Secretary


```
                    Chicago Title and Trust Company, not
                    individually or personally but solely
                    as Trustee under the following Trusts:
                    Trust Nos. 54608
                               54738
                               55271
                               55494
                               57533
                               58527
```

By _____
                ASST. Vice President

ATTEST:

_____
                Secretary

Chicago Title and Trust Company, not
individually or personally but solely
as Trustee under the following Trusts:
Trust Nos. 60385
            58764

By _____
                ASST. Vice President

ATTEST:
_____
                    ASST. Secretary

American National Bank and Trust
Company of Chicago, not individually
or personally but solely as Trustee
under the following Trusts:
Trust Nos. 29180
            29305
            29374
            29444
            30029

By _____
                Second Vice President

ATTEST:
_____
      ASSISTANT   Secretary

American National Bank and Trust
Company of Chicago, not individually
or personally but solely as Trustee
under the following Trusts:
Trust Nos. 75902
            76116

By _____
                Second Vice President

ATTEST:
_____
      ASSISTANT   Secretary

-206-

Merchants National Bank of Aurora,
not individually or personally but
solely as Trustee under the following
Trust:
Trust No. 1913

By _Marian Murphy_

Assistant Vice ~~Vice President~~

ATTEST:

_____

~~VICE PRESIDENT~~    Secretary

_____
Carol L. Meyer

_____
Eleanor J. Huber

_____
Nancy Huber Timmins

_____
Barney Holland Timmins

# Exhibit A I

<u>FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT</u>

<u>Plan Description</u>

This Plan Description consists of the following Parts:

<u>Part One</u>.  A written explanation of the general character of the Proposed Planned Development District divided into the following Sections:

       I.  General description of the Proposed District.

       II.  Description of land uses to be included in the Proposed District.

       III.  Description of the development standards, design criteria and land improvement requirements applicable to the Proposed District.

       IV.  Description of requested modifications and exceptions from the Aurora Zoning Ordinance and the Aurora Subdivision Control Ordinance.

       V.  General provisions relating to the Proposed District.

<u>Part Two</u>.  A legal description of the property to be included in the Proposed District.

<u>Part Three</u>. The following maps:

I.  Map showing the boundaries of the Proposed District and the boundaries of Region I and Region II of the Proposed District.

II.  Map showing the existing zoning of the Proposed District and adjacent properties.

III.  Map showing existing utilities which will serve the Proposed District.

IV.  Topographical map of the Proposed District.

V.  Flood plain map of the Proposed District.

VI.  Land use plan for the Proposed District.

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

INDEX

|  | | Page No. |
|---|---|---|
| Section I. | General Description of the Proposed District. | 1 |
| Section II. | Description of Land Uses. | 6 |
| A. | Business Areas. | 6 |
| | 1.  Permitted Uses. | 6 |
| | 2.  Percentage Limitations. | 10 |
| B. | Manufacturing Areas. | 11 |
| | 1.  Permitted Uses. | 11 |
| | 2.  Percentage Limitations. | 14 |
| C. | Residential Areas. | 14 |
| | 1.  Permitted Uses. | 14 |
| | 2.  Percentage Limitations. | 16 |
| D. | Open Space. | 17 |
| E. | School Sites. | 17 |
| F. | Existing and Temporary Uses in the District. | 17 |
| G. | Determination of Percentage Limitations. | 18 |
| Section III. | Development Standards, Design Criteria and Land Improvements. | 19 |
| A. | Zoning Standards. | 19 |
| | 1.  Dwelling Standards. | 19 |
| |     a.  One-Family Dwellings. | 19 |
| |     b.  Two-Family Dwellings. | 20 |
| |     c.  Multiple-Family Dwellings and Apartments. | 20 |

| | | Page No. |
|---|---|---|
| 2. | Building Height. | 20 |
| | a. Residential Areas. | 20 |
| | b. Business Areas. | 21 |
| | c. Manufacturing Areas. | 22 |
| 3. | Location of Buildings in Relation to Boundary Lines of the District and in Relation to Boundary Lines of Use Areas in the District. | 23 |
| | a. Residential Areas. | 23 |
| | b. Business Areas. | 23 |
| | c. Manufacturing Areas. | 24 |
| | d. General Provisions. | 24 |
| 4. | Zoning Lot. | 26 |
| 5. | Zoning Lot Coverage and Floor Area Ratios. | 27 |
| | a. Residential Areas. | 27 |
| | b. Business Areas. | 29 |
| | c. Manufacturing Areas. | 30 |
| | d. Permitted Encroachments. | 30 |
| | e. Floor Area Ratio. | 30 |
| | f. Basement as a Story. | 31 |
| 6. | Residential Density. | 31 |
| | a. Average Residential Density. | 31 |
| | b. Required Percentage of One-Family Detached Dwellings in Region II. | 32 |
| | c. Limitations on Percentage of Medium and High Density Dwellings. | 32 |
| | d. Limitations on Number of Dwelling Units. | 33 |
| | e. Assigned Zoning Lot Land Area. | 33 |
| 7. | Yard and Minimum Zoning Lot Size Requirements. | 33 |

|  |  | Page No. |
|---|---|---|
| 8. | Required Zoning Lot Land Area Per Dwelling Unit. | 37 |
| a. | Zoning Lot Land Area Required to Fulfill One-Family Detached Dwelling Obligation. | 37 |
| b. | Medium Density Minimum Zoning Lot Land Area Requirements. | 37 |
| c. | High Density Apartment Building Minimum Zoning Lot Land Area Requirements. | 39 |
| d. | Buildings Containing Dwelling Units Located in Business Areas. | 40 |
| 9. | Approval of Bulk Requirements for Certain Uses and Temporary Uses. | 40 |
| 10. | Off-Street Parking and Loading. | 41 |
| 11. | Performance Standards in Manufacturing Areas of the District. | 41 |
| 12. | Accessory Buildings. | 42 |
| 13. | City Disapproval Rights. | 42 |
| 14. | Development Pursuant to Existing Standards. | 44 |
| B. | Design Criteria and Land Improvements. | 47 |
| Section IV. | Requested Modifications and Exceptions from the Zoning Ordinance and the Subdivision Control Ordinance. | 48 |
| A. | Zoning Ordinance Modifications and Exceptions. | 48 |
| B. | Subdivision Control Ordinance Modifications and Exceptions. | 64 |
| Section V. | General Provisions Relating to the Proposed District. | 113 |
| A. | Sanitary Sewer Service to the District. | 113 |
| B. | Water Service to the District. | 115 |
| C. | District Storm Water Retention and Disposal Systems. | 119 |

-iii-

|                                                                                      | Page No. |
|--------------------------------------------------------------------------------------|----------|
| 1.  Waubansee Creek Storm Retention and Disposal Facilities.                         | 120      |
| 2.  Indian Creek Watershed.                                                          | 121      |
| 3.  Variations.                                                                      | 121      |
| D.  Highways and Roads.                                                              | 122      |
| 1.  General.                                                                         | 122      |
| 2.  Highway and Roads Network.                                                       | 125      |
| a.  North-South Linkages.                                                            | 125      |
| b.  East-West Linkages.                                                              | 127      |
| 3.  Variations.                                                                      | 128      |
| E.  Time Limitations for Submission of Preliminary and Final Plans.                  | 129      |
| F.  Deletion of Land from the Proposed District.                                     | 130      |
| G.  Consent of Owners.                                                               | 131      |
| H.  Obligation to Develop.                                                           | 131      |
| I.  Land Use Plans.                                                                  | 132      |
| 1.  Submission of Land Use Plan Included in Plan Description.                        | 132      |
| 2.  Submission of Updated Land Use Plans.                                            | 132      |
| a.  Submission with Preliminary Plans.                                               | 132      |
| b.  Submission by Developers.                                                        | 133      |
| c.  Annual Submissions.                                                              | 133      |
| 3.  Land Use Plans to Reflect Developers' Best Intentions.                           | 133      |
| 4.  Changes in Land Use Plans Requiring City Council Approval.                       | 134      |
| 5.  Preliminary Plans and General Development Plans to Conform to Land Use Plan.     | 137      |
| J.  General Development Plans.                                                        | 137      |
| K.  Development Pursuant to Final Plans.                                              | 139      |

|  | | Page No. |
|---|---|---|
| L. | Conveyances of Property Not Included in an Approved Final Plan. | 139 |
| M. | Transfers of Property Between Regions. | 140 |
| N. | Changes in Plan Description. | 141 |
| O. | Changes in Approved Final Plans. | 142 |
| | 1. Prior to Completion of Development Phase. | 142 |
| | 2. After Completion of Development Phase. | 142 |
| P. | Reliance by Developers. | 144 |
| Q. | Developer. | 145 |

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

Section I

General Description of the Proposed District

For the purposes of this Plan Description the Proposed District (hereinafter called the "District") is divided into two contiguous parts, herein called Region I and Region II.

Region I consists of approximately seven hundred contiguous acres lying in an area bounded generally by Route 65 (Aurora Road) on the north, Route 34 (Oswego Road) on the south, Route 59 on the east and the easterly right-of-way line of the Elgin, Joliet & Eastern Railway Company on the west. The exact boundaries are set forth in a separate submission.

Region II consists of approximately three thousand four hundred and fifty contiguous acres located in an area bounded generally by Molitor Road on the north, the DuPage-Will County Line on the south, the westerly line of the north-south Commonwealth Edison Company right-of-way paralleling the Elgin, Joliet & Eastern Railway Company on the east and the DuPage-Kane County Line on the west with an added portion of the area bounded by an irregular line extending into Section 36

in Aurora Township, Kane County, and with another portion extending to the east of the Elgin, Joliet & Eastern Railway Company and lying south of Route 34 (Oswego Road) in Sections 29 and 32 of Naperville Township, DuPage County. The exact boundaries are set forth in a separate submission.

The District, tentatively named Fox Valley East, is being planned as a New City extension of the City of Aurora, Illinois (hereinafter called the "City") to serve the present and future population in the Fox River Valley area east of the present city limits of the City.

The District's location at the junction of three major transportation systems:  the East-West Tollway which is being extended to the western section of the state; the designated Fox Valley Freeway; and the Burlington Northern, Inc. commuter and inter-city rail line which serves Chicago, western Illinois and Iowa; make this planned new city a "gateway" for people and goods entering the Chicago metropolitan area from the west.  Accordingly, uses planned are appropriate to its gateway function and location.  These include a variety of residential, commercial, industrial, institutional and public uses designed to create a comprehensive economic and consumer service base which will not only assure the environmental and financial self-sufficiency of the District but also contribute to the economic and cultural well-being of the people of the City and surrounding communities.

In its own right the District will represent a major fiscal and territorial addition to the resources of the City and the other governmental units serving the DuKane Valley area.

Given its strategic location at the junction of three major transportation systems, the need to assure access for an adequate labor force to support the various commercial, institutional and industrial uses, and the overriding public interest in providing efficient high quality commuter service for local residents to places of employment in and near the central city, a Transportation Center for the interchange of rail, bus, private automobile and other forms of traffic is under discussion. A balanced transportation system will be planned for the District. In planning transportation facilities within the District, emphasis will be placed on the impact of proposed new facilities on the existing local and area-wide transportation structures. Vehicular and pedestrian circulation patterns will be planned so as to minimize pedestrian-vehicular conflict.

Region I will offer the area a regional shopping center (hereinafter called the "Regional Shopping Center") featuring nationally renowned retailers including major department stores of Marshall Field & Company and Sears, Roebuck and Co. On the basis of current experience with similar shopping centers in other parts of the

Chicago metropolitan area, the shopping center will gener-
ate several thousand new jobs and well over $100,000,000 in
annual sales.

Substantial areas in the District are proposed
for business, manufacturing, office and other uses to
serve both local and regional needs.  Provision for
manufacturing facilities is consistent with the historic
industrial role of the Fox River Valley area and gives
material substance to county and regional public planning
objectives of encouraging further industrial development
in this section of the Chicago metropolitan area.

The housing units contemplated in the District
are to be distributed among single-family homes, town-
houses, garden apartments and multi-story buildings.

Because of the necessarily extended development
period for an undertaking of this magnitude, the details
as to housing types, sizes and amenities in the District
will be determined by market experience as successive
groups of housing units are completed and made available.
It is contemplated that a high degree of home and apart-
ment ownership will prevail and that a broad spectrum of
housing types and prices will be made available to meet
the needs of the labor force required by the area's indus-
tries and for those drawn to this new city by its location
and amenities.

-4-

Community amenities will be included in the District, and planning for schools, parks, libraries, transportation and other community facilities and amenities in the District will receive the same care as the planning of housing.

Care will be taken in the planning of the District to preserve and stablize the ecology of the area. The natural resources and characteristic land forms of the area shall, wherever possible, be preserved with the concept in mind that a community and its environment must be viewed as one. Measures will be taken during construction to prevent erosion of exposed top soil.

By virtue of its geographic position between the Fox River, one of the few natural scenic features in the Chicago region, and the proposed Springbrook forest preserve, the District is uniquely located to significantly augment the scenic and recreational facilities of this general area. Sites will be reserved in appropriate locations for schools and parks to assure the availability of these essential community facilities and to enhance the residential quality of areas designated for housing.

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

Section II

Description of Land Uses

       The District shall be developed into the land use Areas described below and in accordance with the land use plans included in Part Three of this Plan Description, which land use plans may be changed from time to time as provided for in Subsection I. of Section V hereof.  On each Preliminary Plan and Final Plan (hereinafter called "Preliminary Plan" and "Final Plan") submitted for approval in accordance with Subsection 14.7 of City Ordinance No. 3100 (which Ordinance No. 3100, together with all amendments thereto, is hereinafter collectively called the "Zoning Ordinance"), and on each General Development Plan submitted pursuant to Subsection V J. hereof, the land use Areas to be included in that part of the District covered by such Preliminary or Final Plan or General Development Plan shall be indicated.

    A.  Business Areas.

      1.  Permitted Uses.

        a.  In neighborhood shopping center Business Areas of the District which are fifteen acres or less in size and are located adjacent to a Residential Area of the District, and in all other

-6-

Business Areas of the District which do not meet the requirements of Subsection b. of this Subsection 1., the permitted uses shall be any of the uses permitted on the date of the approval by the City Council of the City (hereinafter called the "City Council") of the application for establishment of the District (hereinafter called the "approval date") in the B-1, B-2 and O districts as set forth and provided for in the Zoning Ordinance; provided, that with the approval of the City Council, which approval may be given as part of the approval of a Preliminary or Final Plan, uses permitted by the Zoning Ordinance on the approval date in B-3 districts may be permitted in any such Business Areas.

b.  In Business Areas of the District other than neighborhood shopping center Business Areas described in Subsection a. above, which Business Areas are planned and developed as a unit, and the planning and development of which are under single, unified or coordinated control (regardless of ownership), the permitted uses shall be any of the uses permitted on the approval date in the B-1, B-2, B-3 and O districts as set forth and provided for in the Zoning Ordinance; provided, that (i) without the approval of the City Council, which approval may be given as part of the approval of a Preliminary or Final Plan, dwellings may not be located over a use permitted on the approval date only in B-3

-7-

districts as set forth and provided for in the Zoning Ordinance, and (ii) the uses described in Subsections 12.4-1.29, 12.4-1.36 and 12.4-1.38 of the Zoning Ordinance on the approval date shall not be permitted in any such Business Areas of the District.

c. Any uses that become permitted uses in said B-1, B-2, B-3 and O districts of the Zoning Ordinance subsequent to the approval date shall be deemed to have been permitted uses in said districts on the approval date.

d. The following additional uses shall be permitted throughout Business Areas of the District:

(1) Auditoriums, stadiums, arenas, armories, gymnasiums and other similar places for public events.

(2) Bus terminals, railroad passenger stations, freight terminals, and other public transportation terminal facilities.

(3) Municipal or privately owned recreation buildings and community centers.

(4)   Nursery schools and day nurseries.

(5)   Police stations and fire stations.

(6)   Public buildings, including art galleries, post offices, libraries, museums and similar buildings.

(7)   Public telephone booths not installed in a building or structure but standing in the open for the general use of the public.

(8)   Public or private parks and playgrounds.

(9)   Public utility facilities, i.e., filtration plants, water reservoirs and pumping stations, heat or power plants, transformer stations and other similar facilities.

(10)  Radio and television transmitting or antenna towers (commercial) and other electronic equipment requiring outdoor structures, and including antenna towers used for the sending of private messages.

-9-

(11)  Rest homes and nursing homes.

(12)  Schools, elementary, high and college, public or private.

(13)  Clinics and medical centers.

(14)  Golf courses, public or private.

(15)  Hospitals or sanitariums, public or private.

(16)  Telephone exchanges, antenna towers and other outdoor equipment essential to the operation of the exchanges.

2.  <u>Percentage Limitations</u>.  The percentage of the land in Region I which may be devoted to Business Areas shall be a minimum of forty-five percent and a maximum of seventy-five percent.  The percentage of the land in Region II which may be devoted to Business Areas shall be a minimum of five percent and a maximum of fifteen percent.

-10-

B.  Manufacturing Areas.

    1.  Permitted Uses.  Any of the uses permitted on the approval date in the M-1 and O districts as set forth and provided for in the Zoning Ordinance shall be uses permitted throughout the Manufacturing Areas of the District; provided, that:

    a.  The uses described in Subsections 12.4-1.29; 12.4-1.36; 12.4-1.38; 12.5-1.9 and 13.2-1.20 of the Zoning Ordinance on the approval date shall not be permitted;

    b.  Any uses that become permitted uses in said M-1 and O districts subsequent to the approval date shall be permitted uses throughout such Manufacturing Areas; and

    c.  The following additional uses shall be permitted throughout such Manufacturing Areas:

    (1)  Airport, landing field, or landing strip, subject to the Civil Aeronautics Administration certifying that a new or reoriented runway will not interfere with the flight pattern of any established airport, landing field or landing strip.

-11-

(2)  Bus terminals, railroad passenger stations, freight terminals, and other public transportation terminal facilities.

(3)  Public telephone booths not installed in a building or structure but standing in the open for the general use of the public.

(4)  Railroad rights-of-way.

(5)  Any use listed as an additional use in Subsection A.1.c. of this Section II except the uses listed in clauses (4), (11), (12) and (15) of said Subsection.

(6)  Cultural, educational and child care facilities when part of and related to a planned industrial park.

(7)  Outdoor theaters.

d.  In any part of any Manufacturing Area of the District which is, at the time when a Preliminary Plan including such part of the Manufacturing Area is submitted for approval, within one hundred feet of the boundary of a Residential Area of the

-12-