27.   Section 43-63 shall be modified to read
as follows:

"Sec. 43-63.   BLOCKS.

(a)   Except as provided in Subsections (b),
(c) and (d) below, no specific rule is made
concerning the length, width or shape of blocks,
but blocks shall be designed with due regard to:

(1)   provision for adequate building sites
suitable to the special needs of the type
of use contemplated;

(2)   the limitations and opportunities of
topography; and

(3)   the desirability of convenient access,
and of street traffic circulation, control
and safety.

(b)   In Residential Areas where a pattern of
residential and collector streets is planned, the
City Engineer may, for the purpose of minimizing
traffic congestion, recommend that the distance
between cross streets not exceed eighteen hundred
feet.

(c)   Pedestrian cross walks not less than five
feet wide shall be provided where deemed neces-
sary to provide for pedestrian circulation or
access to schools, playgrounds, shopping centers,
transportation, and other community facilities;
provided, that where recommended by the City
Engineer, such cross walks shall have a greater
width up to and including ten feet.

(d)   Blocks or portions thereof intended for

-103-

commercial or industrial use shall be desig-
nated as such, and the plat shall show adequate
off-street areas to provide for parking, loading
docks, and other such facilities."

28.  Subsection (a) of Section 43-64 shall be
inapplicable.

29.  Subsection (b) of Section 43-64 shall be
modified to read as follows:

"(b)  A 'subdivided lot' is herein defined
to mean a portion of a subdivision intended
for transfer of ownership, building develop-
ment, other uses consistent with this Plan
Description or any combination of the foregoing.
A subdivided lot shall be appropriate for the
type of development and use contemplated by
this Plan Description.  A subdivided lot may
be a zoning lot, as such term is defined in
this Plan Description, or it may be a portion
of a zoning lot.  The term lot used alone in
this Plan Description or in the Subdivision
Control Ordinance shall be deemed to be a
subdivided lot as such term is defined herein.
If a subdivided lot on which dwelling units
are or may be located is a portion of a zoning
lot, appropriate arrangements shall be required
to provide for the continuing protection and
maintenance of the open areas, parking facili-
ties and other common elements of such zoning

-104-

lot required by the development standards and other terms of this Plan Description, or of any Preliminary Plan or Final Plan for the area of the District in which such zoning lot is located. Such arrangements may provide for the conveyance of all or part of such open areas, parking facilities and other common elements to a property owners association consisting of all the owners, present and future, of subdivided lots within such zoning lot; or such continuing protection and maintenance may be provided by other types of conveyances and agreements.  The following provisions shall be applicable to lots or to zoning lots as indicated:

(1)  Zoning lot dimensions and areas shall conform to the requirements of this Plan Description.

(2)  Zoning lots abutting a watercourse, drainage way, channel, or stream shall have a minimum width and depth as may be required to provide adequate building sites and to afford the minimum usable area required by the provisions of this Plan Description.

(3)  The depth and width of lots in the Business and Manufacturing Areas of the District shall be adequate to provide for the off-street parking and loading facilities required by the Zoning Ordinance as modified by this Plan Description."

30.  Subsection (d) of Section 43-64 shall be
modified to read as follows:

"(d)  All lots shall have access to or
abut on a public dedicated street, court
or cul-de-sac, or a private street,
court or cul-de-sac."

31.  Subsection (e) of Section 43-64 shall be
modified to read as follows:

"(e)  In the case of a subdivided lot which is
a zoning lot, as such term is defined in this
Plan Description, and which contains not more
than one one-family detached dwelling, a double
frontage or reverse-frontage lot shall be avoided
except where essential to provide separation of
residential development from highways or primary
thoroughfares or to overcome specific disadvantages
of topography and orientation.  A planting screen
easement of at least ten feet and across which
there shall be no right of vehicular access shall
be provided along the lot line of such a lot
abutting such a highway or primary thoroughfare."

32.  Subsection (f) of Section 43-64 shall be
inapplicable.

33.  Section 43-65 shall be modified to read as
follows:

"Sec. 43-65.  BUILDING SETBACK LINES.
    Building setback lines shall conform to
the provisions and requirements of this Plan
Description."

-106-

34.  Subsection (a) of Section 43-66 shall be inapplicable.

35.  Section 43-67 shall be inapplicable.

36.  Section 43-78 shall be modified to read as follows:

"Sec. 43-78.  COMPLIANCE REQUIRED; CERTIFICATION.

No subdivision of land shall be approved without the subdivider submitting a statement signed by the City Engineer certifying that the improvements described in the subdivider's plans and specifications, together with agreements, meet the minimum requirements of this Plan Description, of all ordinances of the City as modified by this Plan Description and of Article V of the Subdivision Control Ordinance as modified by this Plan Description."

37.  Subsection (e) of Section 43-79 shall be modified to read as follows:

"(e)  When required by the City Engineer storm sewers shall be constructed throughout the entire subdivision, which shall be separate and independent of the sanitary sewer system and which shall provide an adequate outlet or connection with the storm sewer system of the City or a stream or drainage course.  The storm sewer system shall be designed by the rational method, to accept the runoff from a storm with

a five-year return frequency on the fully developed
site.  Storm water inlets shall be constructed in
the pavement curbs and gutters to drain the pave-
ment at intervals not to exceed six hundred feet;
provided, that where standard engineering prac-
tices, as recommended by the City Engineer, would
require a shorter interval between storm water
inlets, such inlets shall be constructed at such
shorter intervals which shall not be less than
three hundred feet except at intersections.  The
total storm system may be a combination of open
and closed conduits or channels.  No storm
sewer shall be connected to any sanitary sewer
of the Aurora Sanitary District.  When storm
sewers are not installed, adequate facilities,
as recommended by the City Engineer, for the
removal of surface water shall be provided
throughout the entire subdivision."

38.  Section 43-80 shall be modified to read
as follows:

"Sec. 43-80.  WATER SUPPLY.

.    Water mains to furnish City water to each
and every lot within the subdivision shall be
constructed in accordance with the applicable
ordinances of the City."

39.  Subsection (a) of Section 43-81 shall be
modified to read as follows:

"(a)  Roadways of collector and residential
streets shall have a surface consisting of
one of the following materials as selected

-108-

by the subdivider's design engineers: non-reinforced Portland cement concrete pavement having a minimum thickness of six inches or a gravel or crushed stone base course Type B having a minimum compacted thickness of eight inches on residential streets and ten inches on collector streets, or structurally equivalent base material of appropriate thickness with a two inch Bituminous Concrete surface course, Sub-class B-5."

40.  Subsection (d) of Section 43-81 shall be modified to read as follows:

"(d)  All streets shall be improved with roadways bounded by non-reinforced Portland cement concrete curbs and gutters in accordance with specifications established by the City and approved by the City Engineer.  Eighteen-inch wide roll type curbs and gutters shall be permitted on collector and residential streets.  Where non-reinforced Portland cement concrete pavement is constructed, curbs may be constructed monolithic with the pavement."

41.  Subsection (f) of Section 43-81 shall be modified to read as follows:

"(f)  Street improvements shall be in accordance with the Table of Minimum Standards in Section 43-59 as modified by this Plan Description."

42.   Section 43-84 shall be modified to read
as follows:

"Sec. 43-84.   SIDEWALKS.

Public sidewalks shall be constructed to
a width of not less than five feet and shall
be installed on both sides of publicly dedi-
cated streets; provided, that with the approval
of the City Council, public sidewalks may be
installed on only one side of a publicly dedi-
cated street if (1) adequate public pedestrian
walkways are located on the property on the
other side of such street, or (2) sidewalks
on the other side of such street are inappropriate
or unnecessary on both sides of such street be-
cause of the nature of the land use planned for
the affected area.  The construction of sidewalks
may be deferred until such time as the develop-
ment of the property adjacent to such sidewalks
has been completed, and acceptance and dedication
of other improvements may take place prior to
the construction of such sidewalks; provided,
that for reasons of public safety the City
Engineer may in such cases require the sub-
divider to provide temporary walkways pending
the construction of sidewalks.  The specifica-
tions for such temporary walkways shall be
subject to the approval of the City Engineer.
Public sidewalks shall be constructed of

Portland cement concrete having a minimum
thickness of four inches or equivalent
material approved by the City Engineer.
Unless otherwise approved by the City
Council, all public sidewalks shall be
located within the street right-of-way, one
foot inside the right-of-way line.  All City
Council approvals provided for in this
Section 43-84 may be given as part of the
approval of a Preliminary or Final Plan."

43.  Section 43-87 shall be modified to read as
follows:

"Sec. 43-87.  INSPECTION OF IMPROVEMENTS.

The subdivider shall be obligated to pay the
City for the City's actual costs incurred in
connection with the review of plans and specifi-
cations for all public improvements installed
pursuant to Subsections (a)(1), (a)(2) or (a)(3)
of Section 43-47 of the Subdivision Control
Ordinance, as modified by this Plan Description.
All such public improvements shall, at the
subdivider's expense, be layed-out in the field
prior to the commencement of construction
and shall be inspected during the course of
construction by a professional engineering
firm retained by the subdivider, and copies of
reports of such firm shall be made available

to the City Engineer without cost to the City.
Routine inspections of such public improvements
by the City during the course of and upon com-
pletion of construction will be made without
cost to the subdivider, but the subdivider shall
be obligated to pay the City for the City's
actual costs of special inspections of such
public improvements occasioned by defective
work or work practices.  Upon completion of
construction of such public improvements, the
subdivider shall supply the City with 'as
built' drawings of such public improvements,
which drawings shall, at the subdivider's
expense, be certified by the professional
engineering firm which performed the inspec-
tion services referred to above."

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

Section V

General Provisions Relating to the Proposed District

A.   Sanitary Sewer Service to the District.

The developers of the District propose annexation of the District to the Aurora Sanitary District.  The proposed sewer service system described below has been planned jointly by the developers of the District and the Aurora Sanitary District.  By describing the proposed sewer service system in this Plan Description the developers of the District do not assume responsibility for financing the proposed system.  The developers of the District and the Trustees of the Aurora Sanitary District are jointly exploring methods by which such financing may be accomplished.

The sanitary outfall sewer systems serving Regions I and II will consist of a gravity sewer running south-westerly along the Waubansee Creek from the approximate intersection of Farnsworth Avenue and Waubansee Creek to a pumping station to be built in the south half of Section 9, Oswego Township, Kendall County.  The pumping station will be connected to the Aurora Sanitary District's treatment plant on the Fox River in Montgomery, Illinois by a force main sewer.

That portion of Regions I and II lying in general between Aurora Road and Oswego Road will be served by a trunk sewer connected to the above mentioned outfall sewer and running northeasterly along the Waubansee Creek to its intersection with the Elgin, Joliet & Eastern Railway Company right-of-way, thence northerly adjacent to and parallel with said right-of-way to the north line of Section 29, Naperville Township, DuPage County, thence easterly adjacent to and parallel with said line and said line extended east to its intersection with the east line of the west half of the west half of Section 21 in the Township and County aforesaid, thence northerly adjacent to and parallel with said line to its intersection with the southerly right-of-way line of Aurora Road.

Sanitary trunk sewers for the southern part of Region II will consist of a sewer connected to the proposed Aurora Sanitary District trunk sewer described above as following Waubansee Creek at a point in the southwest quarter of Section 36, Township 38 North, Range 8 East, and running generally southeasterly from that connection point to the right-of-way of 87th Street extended, thence easterly along the existing and extended 87th Street right-of-way to the approximate intersection of 87th Street and the north-south centerline of Section 31 in Naperville Township, DuPage County, thence northerly along the approximate centerline of Section 31 to the 83rd Street right-of-way, thence easterly along the 83rd Street right-of-way to its intersection with the centerline of Section 33, Naperville Township, DuPage County.

The sanitary trunk sewer system to serve the northern part of Region II will consist of a gravity trunk sewer connected at some point in the northeast quarter of Section 30 to the trunk sewer described earlier and which runs northeasterly adjacent to the Waubansee Creek.  This gravity trunk sewer to serve the northern part of Region II will be constructed in a northerly direction adjacent to or within the corridor of the proposed Fox Valley Freeway and will terminate at approximately the intersection of said corridor and Molitor Road.

Manholes will be located in accordance with the Aurora Sanitary District's design standards and at key connection points.  Trunk sewers will be sized to accommodate the estimated future sewer requirements of the area.

Any change in the above described sewer service system which receives the approval of the Aurora Sanitary District shall be deemed a reasonable variation from this Plan Description for the purpose of clause a. of Subsection 14.7-6 of the Zoning Ordinance, and shall not require the approval of the City Council.  The Department of City Planning shall be notified of any change in the above-described sewer service system.

B.  Water Service to the District.

The proposed water distribution facilities described below have been planned jointly by the developers

of the District and the City Water Department.  By describ-
ing the proposed water distribution facilities in this Plan
Description the developers of the District do not assume
complete responsibility for financing the proposed facili-
ties.  The developers of the District and the City are
jointly exploring methods by which such financing may be
accomplished.

The primary water distribution facilities for
Region I and the central part of Region II will consist of
a water main, approximately twenty inches in diameter con-
necting to the existing City of Aurora water system at two
points in the vicinity of Hill Avenue and Fifth Avenue.
The twenty-inch water main will extend easterly along
Fifth Avenue to Vaughn Road, thence easterly along the
east-west centerline of Section 30, Naperville Township,
DuPage County to its intersection with the Waubansee Creek;
thence northeasterly adjacent to the Waubansee Creek align-
ment to the west side of the Commonwealth Edison Company
right-of-way; thence northerly, approximately sixteen inches
in diameter, adjacent to and parallel with said right-of-way
line to the north line of Section 29, Naperville Township,
DuPage County; thence easterly adjacent to and parallel
with said north line and said north line extended east to
its intersection with the east line of the west one-half
of the west one-half of Section 21 in the Township and
County aforesaid; thence southerly and generally parallel-
ing said east line to its intersection with the northerly
right-of-way line of Oswego (Illinois Route Number 34).

At the intersection of the Waubansee Creek and the westerly right-of-way line of the Commonwealth Edison Company right-of-way, a two-million-gallon ground storage facility and high pressure pumping station will be constructed. A deep well with a capacity of one thousand gallons per minute will be drilled at the location of the ground storage pumping facility, discharging to said facility with the necessary pumping and chlorination equipment located adjacent to the well.

Water mains designed to supply water to the High Pressure Zone will run from this pumping station northerly adjacent to and parallel with said right-of-way line to the north line of Section 29, Naperville Township, DuPage County; thence easterly adjacent to and parallel with said north line and said north line extended to its intersection with the east line of the west one-half of the west one-half of Section 21 in the Township and County aforesaid. The water main will be approximately twenty inches in diameter from the pumping station to the intersection of the proposed main with the approximate easterly right-of-way line of the Elgin, Joliet & Eastern Railway Company, from which point the easterly extension of said water main will be approximately twelve inches in diameter.

Water distribution facilities for the southeast part of Region II will consist of an extension south from the proposed water main located on the west side of the

Commonwealth Edison Company right-of-way, following that
right-of-way line and terminating at a proposed elevated
storage tank with a minimum capacity of seven hundred and
fifty thousand gallons located in the vicinity of the
Elgin, Joliet & Eastern Railway Company right-of-way and
83rd Street.  This tank will be further connected to the
system through a trunk main running east along 83rd Street
to the north-south centerline of Sections 33 and 28,
thence north along said centerline across the 75th Street
right-of-way and extending northerly to a connection with
a previously described water main at the approximate inter-
section of Oswego Road with the east line of the west
one-half of the west one-half of Section 21, Naperville
Township, DuPage County; and by a trunk main running west
along 83rd Street to the DuPage-Kane County Line, thence
north along said county line to the above mentioned trunk
main to be extended along Fifth Avenue.

Water distribution facilities for the northern
part of Region II will consist of a proposed water main
connected to the existing City water system at Reckinger,
east of Farnsworth, thence south on Felton Road to Shefler
Avenue, thence eastward along Shefler Avenue and Shefler
Avenue extended to Eola Road, thence south along Eola Road
to State Route 65, thence east on the south side of State
Route 65 to the east right-of-way of the Elgin, Joliet &
Eastern Railway Company and then south adjacent to said
right-of-way to the High Pressure Zone trunk water main

described as following the north line of Section 29,
Naperville Township, DuPage County.  Additionally, a water
transmission main approximately sixteen inches in diameter
will be constructed easterly on the south side of State
Route 65, from the east right-of-way of the Elgin, Joliet &
Eastern Railway Company to the intersection of State
Route 65 with the East line of the west one-half of the
west one-half of Section 21, Naperville Township, DuPage
County.

A further connection to the existing City water
system will be provided by a proposed water main from the
intersection of Molitor Road and Felton Road extended,
easterly on Molitor Road to Eola Road, thence south along
Eola Road to make a connection with the main described
above.

Any change in the above described water distri-
bution facilities which receives the approval of the City
Water Department shall be deemed a reasonable variation
from this Plan Description for the purposes of clause a.
of Subsection 14.7-6 of the Zoning Ordinance.

C.  <u>District Storm Water Retention and Disposal Systems</u>.

The proposed storm water retention and disposal
systems described below are being planned jointly by the

developers of the District and the City.  By describing the
proposed storm water retention and disposal systems in this
Plan Description the developers of the District do not
assume complete responsibility for financing the proposed
systems.  The developers of the District are exploring
methods by which such financing may be accomplished.

      1.   <u>Waubansee Creek Storm Retention and Disposal
Facilities</u>.  Storm water retention facilities will be
developed within the Waubansee Creek watershed.  The faci-
lities will have the capacity to retain storm runoff result-
ing from a storm with a twenty-five-year return frequency
from a fully developed site with a discharge restricted to
0.15 inches per hour per acre from the same contributing
area.  Additionally, the facilities will have the capacity
to retain storm runoff resulting from a storm with a one-
hundred-year return frequency from a fully developed site
with a discharge restricted to 0.2 inches per hour per
acre from the same contributing area.

      The allowable discharge from the upstream watershed
will bypass or be in addition to the discharge from the
proposed storm water retention facilities.

      Between storm water retention facilities a conduit
or improved channel with an adjacent floodway will be
provided with capacity to convey a maximum runoff equiva-
lent to 0.2 inches per hour per acre from the site and from
the upstream watershed.

2.  <u>Indian Creek Tributary Storm Retention and</u>
<u>Disposal Facilities</u>.  Storm water retention facilities
will be provided having a capacity to retain storm water
runoff resulting from a storm with a twenty-five-year
return frequency from the fully developed site with a
discharge restricted to 0.15 inches per hour per acre
from the same contributing area.  Additionally, the
facilities will have the capacity to retain storm runoff
resulting from a storm with a one-hundred-year return
frequency from a fully developed site with a discharge
restricted to 0.2 inches per hour per acre from the same
contributing area.

The allowable discharge from the upstream water-
shed will bypass or be in addition to the discharge from
the proposed storm retention facilities.

Between storm water retention facilities a
conduit or improved channel with an adjacent floodway
will be provided with capacity to convey a maximum runoff
equivalent to 0.2 inches per hour per acre from the site
and the upstream watershed.

3.  <u>Variations</u>.  Any change in the above described
storm water disposal system which receives the approval of
the City Engineer shall be deemed a reasonable variation
from this Plan Description for the purpose of clause a. of
Subsection 14.7-6 of the Zoning Ordinance.

D.  <u>Highways and Roads</u>.

    1.  <u>General</u>.  The following is an outline of the
structure and general configuration of the major roadway
network which will serve the District and the area surround-
ing it.  It has been planned by the developers of the Dis-
trict after consultation with the State and County Highway
Departments, the City Engineer and the Director of City
Planning.  The primary transportation system elements
described herein are intended to serve as the basis for
further detailed planning and design by the developers and
their traffic consultants, working in close coordination
with public transportation planning agencies at the City,
County, State, and Federal levels.  The portions of the
major roadway network described herein which are outside
the District are included only to illustrate what the
developers of the district believe to be desirable road
and highway planning, and it shall not be a condition to
the right of the developers of the District to develop
the District in accordance with this Plan Description
that such portions of the major roadway network are com-
pleted in the manner described herein.  By describing the
proposed major roadway network in this Plan Description
the developers of the District do not assume complete
responsibility for financing the proposed network.  The
developers of the District, representatives of the State and
County Highway Departments and the City are jointly explor-
ing methods by which such financing may be accomplished.

The primary objectives of the transportation system are:

a.  To provide for sufficient system-wide traffic capacity moving to, from and through the two Regions of the District.

b.  To provide sufficient internal roadway capacity to meet the access and circulation requirements of development-related traffic moving within the Regions.

c.  To interconnect the Regions with primary regional major arterials and expressways.

d.  To create a transportation facilities infrastructure which will support and serve proposed land uses within the two Regions and in the surrounding areas.

e.  To form the basis for application of new transportation systems and technologies at a future time, as such new systems are developed and demonstrated to be feasible and desirable.

The staging of street and highway improvements within the two Regions will be coordinated so as to provide

roadway capacities to meet travel needs which will exist at future dates.  Since development within the Regions will be scheduled over a relatively long (twenty-year) period, selected improvements may be accomplished in stages and be designed to both meet then-current needs and to complete linkages which will be required by new development and which will support the final transportation system.

Street and highway improvements are contemplated to fall within one or more of the following categories:

a.  New construction of roads along existing or newly acquired rights-of-way, including arterial and collector streets as well as local access streets serving newly developed land uses.

b.  Improvements of existing roads, including widening, resurfacing, providing controlled access, and realignment of some sections of roadway to complete required linkages.

c.  Localized improvements, including installation of traffic control devices, intersection approach widening and channelization, and access control at critical points.

The major elements of the proposed transportation network are described in the following Subsections of this

Subsection D.  The proposed alignments will be fixed after completion of detailed traffic engineering studies and in coordination with appropriate transportation planning activities of City, County, State and Federal agencies.

2. <u>Highway and Roads Network</u>.  The principal elements of the proposed District-Wide Transportation System are intended to form a grid network of primary and secondary arterial roads, which will link the District with adjacent regional arterials and expressways.  Specific elements are described below:

a. <u>North-South Linkages</u>:

(1)  Illinois Route 59 is planned for improvement by the construction of additional traffic lanes and the improvement of major intersections to increase both their through-movement and turning-movement capacities.  These improvements should extend from 75th Street north to the East-West Tollway.

(2)  A new north-south arterial is planned for construction along an alignment west of Illinois Route 59 and east of the Elgin, Joliet & Eastern Railway Company right-of-way.  This new roadway should

extend from 87th Street north to Butter-
field Road.

(3)  The Fox Valley Freeway is
proposed to extend from an interchange
with the East-West Tollway, approximately
midway between the Farnsworth Avenue inter-
change and the Eola Road crossing, south
along an alignment generally parallel to
and west of the Elgin, Joliet & Eastern
Railway Company right-of-way, to a point
south of Region II at 95th Street, then
south and east to the Stevenson Expressway
(Interstate Route 55).

(4)  Kautz Road is planned for
major improvement to an arterial con-
structed along the DuPage-Kane County
line from 87th Street to Molitor Road.

(5)  Vaughn Road is planned for
improvement to an arterial road con-
structed from Molitor Road to 87th Street.

(6)  Eola Road is planned for
improvement to an arterial from Butter-
field Road to 87th Street.

b.  East-West Linkages:

(1)  North Aurora Road is planned
for improvement to arterial standards and
connected from the vicinity of its inter-
section with Ogden Avenue (U. S. Route 34)
generally west along the alignment of North
Aurora Road to an intersection with Indian
Trail Road at Farnsworth Avenue in Aurora.

(2)  Liberty Road (Claim Street)
is planned for improvement to arterial
standards from Route 34 in Naperville to
Farnsworth Avenue in Aurora.

(3)  Aurora Avenue is planned for
improvement to arterial, or at-grade express-
way standards, between Naperville and
Farnsworth Avenue in Aurora.

(4)  A new east-west arterial
is planned for construction through the
District, approximately two thousand feet
south of Aurora Avenue from U. S. Route 34
on the east to connect into the existing
street system of the City of Aurora.

(5)   75th Street is planned for improvement to at-grade expressway standards between Naperville and its intersection with Route 34.

(6)   Route 34 is planned for improvement to arterial standards from 75th Street to by-pass Route 30.

(7)   83rd Street is planned for improvement to an arterial from Route 59 to Montgomery Road extended.

(8)   87th Street is planned for improvement and construction to arterial standards between Route 59 and Route 34.

3.   _Variations_.  Any change in the above described plans for highways and roads which receives the approval of the City Engineer shall be deemed a reasonable variation from this Plan Description for the purpose of clause a. of Subsection 14.7-6 of the Zoning Ordinance.

E.  Time Limitations for Submission of Preliminary
and Final Plans.

Within twelve months after the approval date
Preliminary Plans for not less than forty acres of the
District (hereinafter called the "Required First Prelimi-
nary Plans") shall be submitted for approval.  Final Plans
for not less than forty acres of the area covered by the
Required First Preliminary Plans (hereinafter called
"Required First Final Plans") shall be submitted for
approval within three years after approval by the City
Council of the Required First Preliminary Plans.  Pre-
liminary Plans for development phases of the District not
included in the Required First Preliminary Plans may be
submitted for approval from time to time after the
approval date within the fifteen-year period following
the approval date.  Final Plans for development phases of
the District not included in the Required First Final
Plans may be submitted for approval from time to time
after the approval date within the eighteen-year period
following the approval date.

The developer may, with respect to any area of
the District, without having obtained approval of a Pre-
liminary Plan covering such area, submit for approval,
in accordance with the procedures prescribed in Subsec-
tion 14.7-12 of the Zoning Ordinance and within the time

period prescribed for submission of a Preliminary Plan for such area, one or more Final Plans for such area.

On the approval date the developers of the District will have entered into certain agreements with the City which will obligate the City to install and construct certain water facilities in the District on or before certain dates as specified in such agreements. After the approval date the developers of the District contemplate entering into an agreement with the Aurora Sanitary District which will obligate the Aurora Sanitary District to install and construct certain sewerage facilities in the District on or before certain dates as specified in such agreement. By approving the application for establishment of the District, the City agrees that any delays in constructing and installing such water facilities or sewerage facilities in accordance with such specified dates will, to the extent of such delays, be recognized as proper grounds for granting (in accordance with the procedures prescribed in Subsections 14.7-8 and 17.7-11 of the Zoning Ordinance) extensions to the time periods for submission of Preliminary Plans and Final Plans covering all of the District.

F.   Deletion of Land from the Proposed District.

At any time prior to the approval date the developers shall have the right to delete one or more

-130-

parcels of land from the District as proposed in the Plan Description originally filed with the application for establishment of the District and to amend the legal description of the District and the maps showing boundaries of the District to reflect such deletions; provided, that (i) not more than ten percent of the acreage of the District as described in the Plan Description as originally filed may be so deleted, and (ii) no such deletion may be made which would affect the contiguity of the property in the District as required by Subsection 14.7-2 of the Zoning Ordinance.

G.   Consent of Owners.

The application for establishment of the District has been made by Urban Investment and Development Co., a Delaware corporation, acting as agent for the owners of all of the land in the District.  Prior to the approval date, this Plan Description shall be made part of an Annexation Agreement executed by the owners of record of all of the land in the District.  Such Annexation Agreement shall contain a provision by which said owners of record consent to the establishment of the District in accordance with the terms of this Plan Description.

H.   Obligation to Develop.

With respect to each parcel of land in the District included in a Final Plan approved by the City

Council pursuant to Subsection 14.7 of the Zoning Ordin-
ance, the obligation to develop said parcel in accordance
with the provisions of such approved Final Plan, and the
obligation to make the improvements and land reservations
and dedications with respect to such parcel provided for
in such approved Final Plan shall be solely a requirement
of the development of such parcel of land in accordance
with the provisions of such Final Plan, and no obligation
with respect thereto shall attach to other land in the
District.

I.  Land Use Plans.

1.  Submission of Land Use Plan Included in
Plan Description.  There is included in Part Three of this
Plan Description as map number VI a land use plan for the
District which sets forth the present plans of the
developers of the District with respect to the future
development of the District into the three types of land
use Areas described in Subsections A., B. and C. of Sec-
tion II hereof and the location of such land use Areas in
the District.

2.  Submission of Updated Land Use Plans.

a.  Submission with Preliminary Plans.  At
any time and from time to time when a Preliminary
Plan for a development phase of a Region of the