ORDINANCE NUMBER *4330*

AN ORDINANCE ESTABLISHING A PLANNED
DEVELOPMENT DISTRICT AND APPROVING
A PLAN DESCRIPTION

WHEREAS, in accordance with Subsection 14.7 and Section 15 of Ordinance No. 3100 (hereinafter called the "Zoning Ordinance") of the City of Aurora, Illinois (hereinafter called the "City"), an application (hereinafter called the "Application") for a zoning amendment establishing certain property, upon its annexation to the City, as a planned development district was heretofore duly filed with the City Clerk by Urban Investment and Development Co., a Delaware corporation (hereinafter called "Urban"), the duly authorized agent for the purpose of filing and presenting the Application, of the owners of record of said property; and

WHEREAS, in accordance with Subsection 14.7 of the Zoning Ordinance, the Application was accompanied, as Exhibit A to the Application, by a plan description which contained the information required by the Zoning Ordinance and also requested amendments to and classifications, modifications and exceptions under the Zoning Ordinance and requested modifications to and exceptions from City Ordinance No. 3446 (hereinafter called the "Subdivision Control Ordinance"), all as set forth in such plan description; and

WHEREAS, notice of the Application was given to the Kane-DuPage Soil and Water Conservation District in accordance with Chapter 5, Section 127.2(a) of Illinois Revised Statutes (1973 Supp.); and

WHEREAS, the Application was forwarded to the City Plan Commission in accordance with the provisions of Subsection 14.7 and Section 15 of the Zoning Ordinance; and

WHEREAS, the City Plan Commission held public hearings on the Application pursuant to notices duly published and mailed as required by law and the provisions of the Zoning Ordinance; and

WHEREAS, the City Plan Commission has submitted to the City Council of the City (hereinafter called the "City Council") its written report on the Application (hereinafter called the "Plan Commission Report"), containing findings of fact and the City Plan Commission's recommendations with respect to the Application; and

WHEREAS, the original Plan Commission Report is on file in the office of the City Clerk; and

WHEREAS, the Plan Commission Report contains a favorable recommendation with respect to the requests made in the Application, but recommends that, prior to the approval of the Application by the City Council, and as a condition to such approval, certain changes and modifications be made in the plan description which was attached as Exhibit A to the Application; and

WHEREAS, attached hereto and made a part hereof as Exhibit A is a plan description for the proposed planned development district (hereinafter called the "Plan Description")

which Plan Description has, with the approval and acceptance of Urban, the duly authorized agent, for such purpose, of the owners of record of the property described in Part Two of Exhibit A to the Application, been modified from the form in which it was originally submitted to the City Clerk (i) to incorporate the recommendations contained in the Plan Commission Report, (ii) to incorporate certain additional changes deemed desirable by the City Council and (iii) to delete, in accordance with the right requested in the Application and approved in the Plan Commission Report, one parcel of property from the property legally described in Part Two thereof, such deleted parcel being described in Exhibit B, attached hereto and made a part hereof; and

WHEREAS, the property legally described in Part Two of the Plan Description (hereinafter called the "District") has been duly and validly annexed to the City; and

WHEREAS, the District includes more than two hundred (200) acres of contiguous property; and

WHEREAS, the City Council, after due investigation and consideration, has determined that the classification and establishment of the District as a planned development district and the approval of the Plan Description will promote the sound planning and development of the City, and therefore serve the best interests of the City;

NOW, THEREFORE BE IT ORDAINED, by the City Council as follows:

- 3 -

SECTION 1.   The City Council finds as facts all of the recitals contained in the preambles of this Ordinance.

SECTION 2..  The City Council finds as facts and adopts as its findings the findings of the City Plan Commission set forth in the Plan Commission Report; and

SECTION 3.   the Application, subject to the modifications contained in the Plan Description, attached hereto as Exhibit A, is hereby approved.

SECTION 4.   In accordance with Subsections 14.7 and Section 15 of the Zoning Ordinance, the District is hereby classified and established as a planned development district, subject to and in accordance with all of the terms and provisions of the Plan Description, and the Zoning Ordinance and the Zoning Map of the City, is hereby amended so to provide.

SECTION 5.   All modifications and exceptions under under the Zoning Ordinance and all modifications to and exceptions from the Subdivision Control Ordinance, as set forth in the Plan Description, are hereby granted and approved.

SECTION 6.   This Ordinance shall be known as Ordinance No. 4330 .

SECTION 7.   This Ordinance shall take effect and be in full force and effect upon and after its passage, approval and publication in pamphlet form as required by law.

PRESENTED to the City Council of the City of Aurora, Illinois this _1st_ day of _August_, 1973.

PASSED by the City Council of the City of Aurora, Illinois this _1st_ day of _August_, 1973 by a roll call vote as follows:

| Ayes | Nays | Not Voting |
|------|------|------------|
| 5    | 0    | 0          |

SIGNED by the Mayor of the City of Aurora, Illinois, this _1st_ day of _August_, 1973.

ATTEST:

_____          _____
        City Clerk                          Mayor

EXHIBIT A
TO
ORDINANCE NUMBER 4330

AN ORDINANCE ESTABLISHING A PLANNED
DEVELOPMENT DISTRICT AND APPROVING
A PLAN DESCRIPTION

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

This Plan Description consists of the following Parts:

Part One. A written explanation of the general character of the Proposed Planned Development District divided into the following Sections:

I. General description of the Proposed District.

II. Description of land uses to be included in the Proposed District.

III. Description of the development standards, design criteria and land improvement requirements applicable to the Proposed District.

IV. Description of requested modifications and exceptions from the Aurora Zoning Ordinance and the Aurora Subdivision Control Ordinance.

V. General provisions relating to the Proposed District.

Part Two. A legal description of the property to be included in the Proposed District.

Part Three. The following maps:

I.  Map showing the boundaries of the Proposed District and the boundaries of Region I and Region II of the Proposed District.

II.  Map showing the existing zoning of the Proposed District and adjacent properties.

III.  Map showing existing utilities which will serve the Proposed District.

IV.  Topographical map of the Proposed District.

V.  Flood plain map of the Proposed District.

VI.  Land use plan for the Proposed District.

```
CITY OF AURORA       )
COUNTY OF KANE        ) ss
STATE OF ILLINOIS    )
```

        I, Elizabeth F. Pietkiewicz, City Clerk of the City of Aurora, Illinois do hereby certify that, as such City Clerk I am the Clerk of the City Council of said City and the custodian and keeper of the journal of the proceedings of said Council and of the original ordinances enacted by said Council, and also of the Ordinance record in which the ordinances of said City are recorded or enrolled, and I do hereby further certify that the attached Ordinance with Exhibits "A" and "B" thereto attached published in this pamphlet entitled "Ordinance Number 4330, An Ordinance Establishing A Planned Development District and Approving A Plan Description" is a true and correct copy of an original ordinance of said City which was passed on the 1st day of August, 1973, and signed on the 1st day of August, 1973, which original ordinance is now on file in my office, and that said ordinance was on the 1st day of August, 1973, published in pamphlet form by authority of the City Council of the City of Aurora, Illinois.

        In Testimony whereof witness my hand and the corporate seal of the City of Aurora, Illinois, this 1st day of August, 1973.

                                *Elizabeth F. Pietkiewicz*
                                  Elizabeth F. Pietkiewicz
                                  City Clerk
                                  City of Aurora, Illinois

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

INDEX

|  |  | Page No. |
|---|---|---|
| Section I. | General Description of the Proposed District. | 1 |
| Section II. | Description of Land Uses. | 6 |
| A. | Business Areas. | 6 |
| 1. | Permitted Uses. | 6 |
| 2. | Percentage Limitations. | 10 |
| B. | Manufacturing Areas. | 11 |
| 1. | Permitted Uses. | 11 |
| 2. | Percentage Limitations. | 14 |
| C. | Residential Areas. | 14 |
| 1. | Permitted Uses. | 14 |
| 2. | Percentage Limitations. | 16 |
| D. | Open Space. | 17 |
| E. | School Sites. | 17 |
| F. | Existing and Temporary Uses in the District. | 17 |
| G. | Determination of Percentage Limitations. | 18 |
| Section III. | Development Standards, Design Criteria and Land Improvements. | 19 |
| A. | Zoning Standards. | 19 |
| 1. | Dwelling Standards. | 19 |
| a. | One-Family Dwellings. | 19 |
| b. | Two-Family Dwellings. | 20 |
| c. | Multiple-Family Dwellings and Apartments. | 20 |

|  |  | Page No. |
|---|---|---|
| 2. | Building Height. | 20 |
| | a. Residential Areas. | 20 |
| | b. Business Areas. | 21 |
| | c. Manufacturing Areas. | 22 |
| 3. | Location of Buildings in Relation to Boundary Lines of the District and in Relation to Boundary Lines of Use Areas in the District. | 23 |
| | a. Residential Areas. | 23 |
| | b. Business Areas. | 23 |
| | c. Manufacturing Areas. | 24 |
| | d. General Provisions. | 24 |
| 4. | Zoning Lot. | 26 |
| 5. | Zoning Lot Coverage and Floor Area Ratios. | 27 |
| | a. Residential Areas. | 27 |
| | b. Business Areas. | 29 |
| | c. Manufacturing Areas. | 30 |
| | d. Permitted Encroachments. | 30 |
| | e. Floor Area Ratio. | 30 |
| | f. Basement as a Story. | 31 |
| 6. | Residential Density. | 31 |
| | a. Average Residential Density. | 31 |
| | b. Required Percentage of One-Family Detached Dwellings in Region II. | 32 |
| | c. Limitations on Percentage of Medium and High Density Dwellings. | 32 |
| | d. Limitations on Number of Dwelling Units. | 33 |
| | e. Assigned Zoning Lot Land Area. | 33 |
| 7. | Yard and Minimum Zoning Lot Size Requirements. | 33 |

|  |  | Page No. |
|---|---|---|
| 8. | Required Zoning Lot Land Area Per Dwelling Unit. | 37 |
| a. | Zoning Lot Land Area Required to Fulfill One-Family Detached Dwelling Obligation. | 37 |
| b. | Medium Density Minimum Zoning Lot Land Area Requirements. | 37 |
| c. | High Density Apartment Building Minimum Zoning Lot Land Area Requirements. | 39 |
| d. | Buildings Containing Dwelling Units Located in Business Areas. | 40 |
| 9. | Approval of Bulk Requirements for Certain Uses and Temporary Uses. | 40 |
| 10. | Off-Street Parking and Loading. | 41 |
| 11. | Performance Standards in Manufacturing Areas of the District. | 41 |
| 12. | Accessory Buildings. | 42 |
| 13. | City Disapproval Rights. | 42 |
| 14. | Development Pursuant to Existing Standards. | 44 |
| B. | Design Criteria and Land Improvements. | 47 |
| Section IV. | Requested Modifications and Exceptions from the Zoning Ordinance and the Sub-division Control Ordinance. | 48 |
| A. | Zoning Ordinance Modifications and Exceptions. | 48 |
| B. | Subdivision Control Ordinance Modifications and Exceptions. | 64 |
| Section V. | General Provisions Relating to the Proposed District. | 113 |
| A. | Sanitary Sewer Service to the District. | 113 |
| B. | Water Service to the District. | 115 |
| C. | District Storm Water Retention and Disposal Systems. | 119 |

|  |  |  | Page No. |
|---|---|---|---|
|  | 1. | Waubansee Creek Storm Retention and Disposal Facilities. | 120 |
|  | 2. | Indian Creek Watershed. | 121 |
|  | 3. | Variations. | 121 |
| D. | | Highways and Roads. | 122 |
|  | 1. | General. | 122 |
|  | 2. | Highway and Roads Network. | 125 |
|  |  | a. North-South Linkages. | 125 |
|  |  | b. East-West Linkages. | 127 |
|  | 3. | Variations. | 128 |
| E. | | Time Limitations for Submission of Preliminary and Final Plans. | 129 |
| F. | | Deletion of Land from the Proposed District. | 130 |
| G. | | Consent of Owners. | 131 |
| H. | | Obligation to Develop. | 131 |
| I. | | Land Use Plans. | 132 |
|  | 1. | Submission of Land Use Plan Included in Plan Description. | 132 |
|  | 2. | Submission of Updated Land Use Plans. | 132 |
|  |  | a. Submission with Preliminary Plans. | 132 |
|  |  | b. Submission by Developers. | 133 |
|  |  | c. Annual Submissions. | 133 |
|  | 3. | Land Use Plans to Reflect Developers' Best Intentions. | 133 |
|  | 4. | Changes in Land Use Plans Requiring City Council Approval. | 134 |
|  | 5. | Preliminary Plans and General Development Plans to Conform to Land Use Plan. | 137 |
| J. | | General Development Plans. | 137 |
| K. | | Development Pursuant to Final Plans. | 139 |

|  |  | Page No. |
|---|---|---|
| L. | Conveyances of Property Not Included in an Approved Final Plan. | 139 |
| M. | Transfers of Property Between Regions. | 140 |
| N. | Changes in Plan Description. | 141 |
| O. | Changes in Approved Final Plans. | 142 |
|  | 1.  Prior to Completion of Development Phase. | 142 |
|  | 2.  After Completion of Development Phase. | 142 |
| P. | Reliance by Developers. | 144 |
| Q. | Developer. | 145 |

<u>FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT</u>

<u>Plan Description</u>

<u>Part One</u>

<u>Section I</u>

<u>General Description of the Proposed District</u>

For the purposes of this Plan Description the Proposed District (hereinafter called the "District") is divided into two contiguous parts, herein called Region I and Region II.

Region I consists of approximately seven hundred contiguous acres lying in an area bounded generally by Route 65 (Aurora Road) on the north, Route 34 (Oswego Road) on the south, Route 59 on the east and the easterly right-of-way line of the Elgin, Joliet & Eastern Railway Company on the west.  The exact boundaries are set forth in a separate submission.

Region II consists of approximately three thousand four hundred and fifty contiguous acres located in an area bounded generally by Molitor Road on the north, the DuPage-Will County Line on the south, the westerly line of the north-south Commonwealth Edison Company right-of-way paralleling the Elgin, Joliet & Eastern Railway Company on the east and the DuPage-Kane County Line on the west with an added portion of the area bounded by an irregular line extending into Section 36

in Aurora Township, Kane County, and with another portion
extending to the east of the Elgin, Joliet & Eastern Rail-
way Company and lying south of Route 34 (Oswego Road) in
Sections 29 and 32 of Naperville Township, DuPage County.
The exact boundaries are set forth in a separate
submission.

The District, tentatively named Fox Valley East,
is being planned as a New City extension of the City of
Aurora, Illinois (hereinafter called the "City") to serve
the present and future population in the Fox River Valley
area east of the present city limits of the City.

The District's location at the junction of three
major transportation systems: the East-West Tollway which
is being extended to the western section of the state; the
designated Fox Valley Freeway; and the Burlington Northern,
Inc. commuter and inter-city rail line which serves
Chicago, western Illinois and Iowa; make this planned new
city a "gateway" for people and goods entering the Chicago
metropolitan area from the west. Accordingly, uses planned
are appropriate to its gateway function and location. These
include a variety of residential, commercial, industrial,
institutional and public uses designed to create a compre-
hensive economic and consumer service base which will not
only assure the environmental and financial self-sufficiency
of the District but also contribute to the economic and
cultural well-being of the people of the City and surround-
ing communities.

In its own right the District will represent a major fiscal and territorial addition to the resources of the City and the other governmental units serving the DuKane Valley area.

Given its strategic location at the junction of three major transportation systems, the need to assure access for an adequate labor force to support the various commercial, institutional and industrial uses, and the overriding public interest in providing efficient high quality commuter service for local residents to places of employment in and near the central city, a Transportation Center for the interchange of rail, bus, private automobile and other forms of traffic is under discussion.  A balanced transportation system will be planned for the District.  In planning transportation facilities within the District, emphasis will be placed on the impact of proposed new facilities on the existing local and area-wide transportation structures.  Vehicular and pedestrian circulation patterns will be planned so as to minimize pedestrian-vehicular conflict.

Region I will offer the area a regional shopping center (hereinafter called the "Regional Shopping Center") featuring nationally renowned retailers including major department stores of Marshall Field & Company and Sears, Roebuck and Co.  On the basis of current experience with similar shopping centers in other parts of the

Chicago metropolitan area, the shopping center will generate several thousand new jobs and well over $100,000,000 in annual sales.

Substantial areas in the District are proposed for business, manufacturing, office and other uses to serve both local and regional needs. Provision for manufacturing facilities is consistent with the historic industrial role of the Fox River Valley area and gives material substance to county and regional public planning objectives of encouraging further industrial development in this section of the Chicago metropolitan area.

The housing units contemplated in the District are to be distributed among single-family homes, townhouses, garden apartments and multi-story buildings.

Because of the necessarily extended development period for an undertaking of this magnitude, the details as to housing types, sizes and amenities in the District will be determined by market experience as successive groups of housing units are completed and made available. It is contemplated that a high degree of home and apartment ownership will prevail and that a broad spectrum of housing types and prices will be made available to meet the needs of the labor force required by the area's industries and for those drawn to this new city by its location and amenities.

Community amenities will be included in the District, and planning for schools, parks, libraries, transportation and other community facilities and amenities in the District will receive the same care as the planning of housing.

Care will be taken in the planning of the District to preserve and stablize the ecology of the area. The natural resources and characteristic land forms of the area shall, wherever possible, be preserved with the concept in mind that a community and its environment must be viewed as one.  Measures will be taken during construction to prevent erosion of exposed top soil.

By virtue of its geographic position between the Fox River, one of the few natural scenic features in the Chicago region, and the proposed Springbrook forest preserve, the District is uniquely located to significantly augment the scenic and recreational facilities of this general area.  Sites will be reserved in appropriate locations for schools and parks to assure the availability of these essential community facilities and to enhance the residential quality of areas designated for housing.

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

Section II

Description of Land Uses

The District shall be developed into the land
use Areas described below and in accordance with the land
use plans included in Part Three of this Plan Description,
which land use plans may be changed from time to time as
provided for in Subsection I. of Section V hereof.  On
each Preliminary Plan and Final Plan (hereinafter called
"Preliminary Plan" and "Final Plan") submitted for
approval in accordance with Subsection 14.7 of City Ordin-
ance No. 3100 (which Ordinance No. 3100, together with all
amendments thereto, is hereinafter collectively called the
"Zoning Ordinance"), and on each General Development Plan
submitted pursuant to Subsection V J. hereof, the land use
Areas to be included in that part of the District covered
by such Preliminary or Final Plan or General Development
Plan shall be indicated.

A.  Business Areas.

1.  Permitted Uses.

a.  In neighborhood shopping center Busi-
ness Areas of the District which are fifteen acres
or less in size and are located adjacent to a Resi-
dential Area of the District, and in all other

-6-

Business Areas of the District which do not meet the
requirements of Subsection b. of this Subsection 1.,
the permitted uses shall be any of the uses permitted
on the date of the approval by the City Council of
the City (hereinafter called the "City Council") of
the application for establishment of the District
(hereinafter called the "approval date") in the B-1,
B-2 and O districts as set forth and provided for in
the Zoning Ordinance; provided, that with the
approval of the City Council, which approval may be
given as part of the approval of a Preliminary or
Final Plan, uses permitted by the Zoning Ordinance
on the approval date in B-3 districts may be per-
mitted in any such Business Areas.

      b.   In Business Areas of the District
other than neighborhood shopping center Business
Areas described in Subsection a. above, which Busi-
ness Areas are planned and developed as a unit, and
the planning and development of which are under
single, unified or coordinated control (regardless
of ownership), the permitted uses shall be any of
the uses permitted on the approval date in the B-1,
B-2, B-3 and O districts as set forth and provided
for in the Zoning Ordinance; provided, that (i) with-
out the approval of the City Council, which approval
may be given as part of the approval of a Prelimi-
nary or Final Plan, dwellings may not be located
over a use permitted on the approval date only in B-3

districts as set forth and provided for in the Zoning
Ordinance, and (ii) the uses described in Subsec-
tions 12.4-1.29, 12.4-1.36 and 12.4-1.38 of the Zon-
ing Ordinance on the approval date shall not be
permitted in any such Business Areas of the District.

c. Any uses that become permitted uses in
said B-1, B-2, B-3 and O districts of the Zoning
Ordinance subsequent to the approval date shall be
deemed to have been permitted uses in said districts
on the approval date.

d. The following additional uses shall be
permitted throughout Business Areas of the District:

(1) Auditoriums, stadiums,
arenas, armories, gymnasiums and other
similar places for public events.

(2) Bus terminals, railroad
passenger stations, freight terminals,
and other public transportation terminal
facilities.

(3) Municipal or privately
owned recreation buildings and community
centers.

(4)   Nursery schools and day nurseries.

(5)   Police stations and fire stations.

(6)   Public buildings, including art galleries, post offices, libraries, museums and similar buildings.

(7)   Public telephone booths not installed in a building or structure but standing in the open for the general use of the public.

(8)   Public or private parks and playgrounds.

(9)   Public utility facilities, i.e., filtration plants, water reservoirs and pumping stations, heat or power plants, transformer stations and other similar facilities.

(10)   Radio and television transmitting or antenna towers (commercial) and other electronic equipment requiring outdoor structures, and including antenna towers used for the sending of private messages.

(11)   Rest homes and nursing homes.

(12)   Schools, elementary, high and college, public or private.

(13)   Clinics and medical centers.

(14)   Golf courses, public or private.

(15)   Hospitals or sanitariums, public or private.

(16)   Telephone exchanges, antenna towers and other outdoor equipment essential to the operation of the exchanges.

2.   Percentage Limitations.  The percentage of the land in Region I which may be devoted to Business Areas shall be a minimum of forty-five percent and a maximum of seventy-five percent.  The percentage of the land in Region II which may be devoted to Business Areas shall be a minimum of five percent and a maximum of fifteen percent.

B.  <u>Manufacturing Areas</u>.

1.  <u>Permitted Uses</u>.  Any of the uses permitted on the approval date in the M-1 and O districts as set forth and provided for in the Zoning Ordinance shall be uses permitted throughout the Manufacturing Areas of the District; provided, that:

a.  The uses described in Subsections 12.4-1.29; 12.4-1.36; 12.4-1.38; 12.5-1.9 and 13.2-1.20 of the Zoning Ordinance on the approval date shall not be permitted;

b.  Any uses that become permitted uses in said M-1 and O districts subsequent to the approval date shall be permitted uses throughout such Manufacturing Areas; and

c.  The following additional uses shall be permitted throughout such Manufacturing Areas:

(1)  Airport, landing field, or landing strip, subject to the Civil Aeronautics Administration certifying that a new or reoriented runway will not interfere with the flight pattern of any established airport, landing field or landing strip.

    (2) Bus terminals, railroad passenger stations, freight terminals, and other public transportation terminal facilities.

    (3) Public telephone booths not installed in a building or structure but standing in the open for the general use of the public.

    (4) Railroad rights-of-way.

    (5) Any use listed as an additional use in Subsection A.1.c. of this Section II except the uses listed in clauses (4), (11), (12) and (15) of said Subsection.

    (6) Cultural, educational and child care facilities when part of and related to a planned industrial park.

    (7) Outdoor theaters.

    d. In any part of any Manufacturing Area of the District which is, at the time when a Preliminary Plan including such part of the Manufacturing Area is submitted for approval, within one hundred feet of the boundary of a Residential Area of the

District or the boundary of an area outside the District which was, on the approval date, and is, at the time when such Preliminary Plan is submitted for approval, zoned for residential use, the permitted uses in such part shall be limited to (1) warehouse or parking facilities associated with any uses located in the Manufacturing Area; (2) any uses permitted in the B-1, B-2, B-3 and O districts as set forth and provided for in the Zoning Ordinance on the approval date; and (3) any uses that become permitted uses in said districts subsequent to the approval date; provided, that if the boundary of such Residential Area or such area outside the District shall be in a road, highway, railroad or similar right-of-way or in a stream, park, river or similar natural barrier, the depth of that part of such right-of-way or natural barrier which is within such Residential Area or such area outside the District zoned for residential use may be deducted from the one-hundred-foot requirement for the part of the Manufacturing Area in which the permitted uses shall be so limited.  The provisions of this Subsection II B.1.d. shall not apply to the Region II Manufacturing Area designated as "Restricted Manufacturing Area" on the land use plan included as map number VI in Part Three of this Plan Description, or in such Area as it may be enlarged or contracted pursuant to Subsection V I. hereof.

e.  In the Region II Manufacturing Area designated as "Restricted Manufacturing Area" on the land use plan included as map number VI in Part Three of this Plan Description or in such Area as it may be enlarged or contracted pursuant to Subsection V I. hereof, neither the uses described in Subsections 13.2-1.10; 13.2-1.11; 13.2-1.18; 13.2-1.19; 13.2-1.32; 13.2-1.33; 13.2-1.36; 13.2-1.38; 13.2-1.51; 13.2-1.52; 13.2-1.54; 13.2-1.56 and 13.2-1.57 of the Zoning Ordinance on the approval date; nor a retail commercial structure having more than two hundred and fifty thousand square feet of gross floor area devoted to retail sales and service operations shall be permitted.

2.  <u>Percentage Limitations</u>.  The percentage of the land in Region I which may be devoted to Manufacturing Areas shall be a maximum of ten percent.  The percentage of the land in Region II which may be devoted to Manufacturing Areas shall be a minimum of twenty percent and a maximum of fifty percent.

C.  <u>Residential Areas</u>.

1.  <u>Permitted Uses</u>.  Any of the uses permitted on the approval date in the R-1, R-2, R-3, R-4, R-5 and R-5A districts as set forth and provided for in the Zoning Ordinance shall be uses permitted throughout the Residential Areas of the District; provided, that one-family row

-14-

dwellings (party wall) may have eight dwellings in a row or building, and provided further, that:

    a.  Any uses that become permitted uses in said R-1, R-2, R-3, R-4, R-5 and R-5A districts subsequent to the approval date shall be permitted uses throughout such Residential Areas; and

    b.  The following additional uses shall be permitted throughout such Residential Areas:

    (1)  Golf courses, public or private.

    (2)  Municipal or privately owned recreation buildings and community centers.

    (3)  Nursery schools and day nurseries.

    (4)  Police stations and fire stations.

    (5)  Public buildings, including art galleries, post offices, libraries, museums and similar buildings.

    (6)  Public or private parks and playgrounds.

-15-

(7)  Public telephone booths not installed in a building or structure but standing in the open for the general use of the public.

(8)  Public utility facilities, i.e., filtration plants, water reservoirs and pumping stations, heat or power plants, transformer stations and other similar facilities.

(9)  Rest homes and nursing homes.

(10)  Schools, elementary, high and college, public or private.

(11)  Telephone exchanges, antenna towers and other outdoor equip- ment essential to the operation of the exchanges.

2.  <u>Percentage Limitations</u>.  The percentage of the land in Region I which may be devoted to Residential Areas shall be a minimum of twenty percent and a maximum of fifty percent.  The percentage of the land in Region II which may be devoted to Residential Areas shall be a minimum of thirty-five percent and a maximum of sixty-five percent.

-16-

D.  Open Space.

Land shall be reserved for public open space,
parks and recreation uses in accordance with the provisions
of Subsection B.19. of Section IV hereof.

E.  School Sites.

Land shall be reserved for school sites in
accordance with the provisions of Subsection B.19. of
Section IV hereof.

F.  Existing and Temporary Uses in the District.

Any lawfully established use of a building or
land in the District, including farm and agricultural uses,
which is established or being carried on on the approval
date, may be continued pending the commencement of con-
struction in accordance with approved Final Plans for the
land on which such building is located or on which such
use is established or being carried on.  Subject to the
provisions of Subsection A.9. of Section III hereof,
temporary uses of a building or land in the District may
be permitted pending the commencement of construction
in accordance with approved Final Plans for the land on
which such building is located or on which such temporary
use is permitted.  Any such temporary use shall be com-
patible with existing uses in the area where such temporary