(a)   An equitable portion of the
tax revenues attributable to the land in
the Region which shall have been or shall
thereafter be received by the City or by
such other public body during the period
commencing with the date of annexation of
the District to the City and ending three
years after the date of approval of a Final
Plan for the last development phase of the
Region, pursuant to levies made by the
City or by such other public body for open
space, park or recreational purposes, shall
be expended for the installation, purchase,
maintenance or operation of improvements
to or recreational programs conducted in
such dedicated land or other land in the
Region theretofore or thereafter dedicated
pursuant to the provisions of this Sub-
section B.19.a.; provided, that the impro-
vements referred to in this Subsection B.19.a.
shall not include the improvements to be
provided by the developer pursuant to the
provisions of Subsection B.19.c.(1) hereof,
but shall include the purchase and mainten-
ance of landscaping, recreational equipment,
tennis courts, ball fields, and similar park
and recreation facilities (hereinafter called
"recreational improvements"); and provided

further, that in determining an equitable portion of such tax revenues, the following factors shall be given consideration: (i) the need and desirability of adequate open space, park and recreational improvement expenditures during the development period of the Region; (ii) expenditures by the City or such other public body for the installation, purchase, maintenance or operation of improvements to or recreational programs conducted in areas in such Region which improvements and programs are reasonably available to persons residing outside such Region; and (iii) the general administrative costs of the City or such other public body related to open space, park or recreational purposes; and

(b)  The City or such other public body which is to make the purchase of or payment for recreational improvements to be purchased with or paid for from tax revenues pursuant to the terms of such agreement shall, prior to the determination of the type of recreational improvements which are to be so purchased or paid for, consult with the developer and give consideration to the developer's views as to the type of recreational improvements which would be appropriate for the area in which they are to be installed or constructed; and

(c)  Agreed upon recreational improvements may be made or paid for by the developer in advance of the time when tax revenues are available for their purchase, subject to arrangements for subsequent re-payment to the developer, out of future tax revenues, of the agreed upon cost thereof to the developer plus agreed upon interest charges; and

(d)  The City or such other public body agrees to accept such dedicated land and to assume responsibility for the main-tenance thereof; and

(e)  The land to be so dedicated will at all times after such dedication be maintained in a manner adequate to prevent such land from being a detraction to the value and use of other property in the Dis-trict; provided, that the cost of such maintenance shall, for the purpose of Sub-section B.19.a.(1)(a) above, be treated as a cost of maintaining a recreational improvement as such term is defined in such Subsection; and

(f)  The City or such other public body will use its best efforts to obtain federal or state funds or grants which may be available for the purchase and maintenance of recreational improvements to the land so

dedicated and will utilize any such funds or grants which are obtained for such purchase and maintenance; and

(g)  The City or such other public body will, in the planning for any public open space, park or recreation area adjacent to a reserved school site, cooperate with the school district for which such school site has been reserved so as to maximize the utility of the public open space, park or recreation area for the needs of the educational facilities for which the reserved school site is to be used.

(2)  If the developer and the City or the developer and such other public body to which land is to be dedicated are unable to agree upon the terms of such an agreement, the City, such other public body or the developer may at any time request that the areas of disagreement be submitted to arbitration in accordance with the rules then obtaining of the American Arbitration Association, and the arbitrators shall be selected as follows:  on ten days' written notice by either party to the other, each of them shall designate an arbitrator, and a third arbitrator shall be selected within twenty days thereafter by the two arbitrators so designated.  The award under such arbitration shall, if accepted by the City or such other public body, be binding upon the

developer.  If the City or such other public body
does not accept such award, within thirty days
after its determination, the developer shall be
relieved from the land dedication obligation to
which the agreement was a condition, and if the
City or such other public body to which the land
was to be dedicated does not, within ninety days
from the date of the determination of such award,
acquire such land by purchase or commence pro-
ceedings to acquire such land by condemnation,
the developer shall be relieved from any reserva-
tion obligation with respect to such land.  Such
land may then be developed and used in any manner
permitted by Subsections A., B. and C. of
Section II hereof.

    (3)  Land devoted to private open space,
park and recreation areas (including swimming clubs,
tennis clubs and golf courses) may be deducted from
the land reservation and dedication obligation for
public open space, park and recreation areas;
provided, that:

    (a)  Subject to Subsection (b)
below, such deductions may not, without the
approval of the City Council, exceed twenty
percent of such public open space, park and
recreation area, land reservation and dedi-
cation obligation;

    (b)  Such deductions may, without
approval of the City Council, exceed twenty

but not forty percent of such obligation to
the extent that such excess percentage of
land is devoted to private open space, park
and recreational uses, such as swimming clubs,
tennis clubs and golf courses which are designed
to serve and open to membership from or avail-
able for use by all residents of the City;

(c)  Plans for such private open
space, park and recreation areas, including
specifications of facilities to be in-
stalled, must be approved by the City;

(d)  Appropriate arrangements
shall be required to provide for the
continuing protection and maintenance of
such private open space, park and recrea-
tion areas;

(e)  Private open space, park and
recreation areas shall be areas devoted
exclusively to the scenic, landscaping,
recreational or leisure uses of the occupants
of dwelling units for whose use the private
open space areas are intended and shall be
accessible and available to all such occu-
pants.  Private open space areas shall not
include public rights-of-way or areas covered
by buildings, parking structures or accessory
structures excepting where such buildings or
structures are used solely for the purposes

of recreational and leisure activities.
Well-designed decks or plazas which are
used for recreational or leisure purposes
and which are located upon buildings, park-
ing structures or accessory buildings not
solely used for recreational purposes may,
subject to the approval of the City Coun-
cil, be included as private open space;

(f)  Any areas of private open
space to be credited against public open
space requirements shall be not less than
twenty-four hundred square feet in area
excepting for corridors of not less than
twenty feet in width created to connect
lots or buildings with larger private or
public open space areas, in which case
areas less than twenty-four hundred square
feet shall be credited.  Such private open
space shall also be in addition to zoning
lot land area requirements as contained in
this Plan Description unless otherwise
approved by the City Council; and

(g)  Any approvals by the City
Council provided for in this Subsec-
tion B.19.a.(3) may be given as part of the
approval of a Preliminary or Final Plan.

(4)  Prior to the preparation of
Preliminary Plans for successive development

phases of the Region, the developer will consult
with appropriate representatives of the City, or
other public body for which land for public open
space, park and recreation areas is to be
reserved or dedicated, with respect to the loca-
tion of such areas.  The proposed location of
such public open space, park and recreation areas
shall be in accordance with the open space, park
and recreation land development plans as shown
on the developer's General Development Plans and
Preliminary Plans for successive development
phases of the Region submitted for approval in
accordance with Subsection 14.7 of the Zoning
Ordinance.  Plans for public open space, park
and recreation areas shall reasonably conform to
the Goals and Standards for Parks and Open Space
included in the Comprehensive Plan for Parks and
Recreation of the Fox River Valley Pleasure Drive-
way and Park District, Southern Kane County
Sector dated December, 1972 (hereinafter called
the "Park District Plan").  Whenever reasonably
possible, a park site of at least four acres in
size shall be located adjacent to each elemen-
tary school site.

(5)  Subject to the requirements of
Subsection B.19.c.(1) below, the areas used for
the storm water retention and runoff facilities
described in Subsection C. of Section V hereof

and areas zoned as flood plain by the City may
be included as land reserved to meet the public
open space, park and recreation area land
reservation obligations of this Plan Descrip-
tion, and it shall be a condition to all of a
developer's obligations under this Subsec-
tion B.19.a. that at the developer's request,
the City or another public body approved by the
developer and by the City Council shall accept
the conveyance or dedication of such land and
shall assume responsibility for the maintenance
thereof; provided, that it may not be made a
condition of a developer's obligations under
this Subsection B.19.a. that responsibility for
the cost of constructing such storm water
retention and runoff facilities be assumed by
the City or such other public body.  Such storm
water retention facilities shall be designed and
constructed in a manner which shall have utilized
generally accepted and economically feasible
engineering methods to minimize the silting of
such storm water retention facilities.

     (6)  The developers of each Region
will make land available for purchase by the
City or other public body for which land for
public open space, park and recreation areas
is to be reserved or dedicated, subject to the
following limitations:

(a)  Such purchased land must be used for the enlargement, by the addition of contiguous purchased land, of a site already reserved or dedicated for a tot lot, neighborhood park, neighborhood playground, or community playfield, as such terms are defined on pages 11 and 12 of the Park District Plan, and the purpose of such enlargement must be to conform such site to the size standards set forth on said pages 11 and 12.

(b)  The purchase price for any such purchased land shall be computed at $15,000 per acre plus a sum equal to the interest that would have been earned on the amount of the purchase price between July 1, 1973 and the date when any such purchase of land is closed if such interest were computed at the rate of one percent above the prime rate from time to time being charged by The First National Bank of Chicago to its large corporate borrowers.

(c)  The maximum amount of land in each Region of the District which shall be subject to purchase pursuant to this Subsection a.(6) shall be fifteen percent of the amount of land required to be

reserved and dedicated in such Region for
public open space, park and recreation
areas.

(d)  It shall be a condition to
the obligation of the developers to make
land available for purchase pursuant to
this Subsection a.(6) that the location
of such land is consistent and compatible
with the developer's Land Use Plan, General
Development Plans and Preliminary Plans,
if any, for the area in which the land to
be purchased is located.

(e)  No land need be made avail-
able for purchase pursuant to these pro-
visions if such land is covered by an
approved Preliminary Plan.

(f)  No land need be made available
for purchase pursuant to these provisions if
such land shall have been conveyed pursuant
to Subsection V L. of this Plan Description,
and no provision for such purchase shall have
been made in the deed or other document
deposited with the Department of City Planning;
provided, that prior to any such conveyance of
land located in a Residental Area of the
District, the developers shall have consulted
with the City or other public body for which

land for public open space, park and recreation areas is to be reserved or dedicated as to the intended use of such conveyed land and shall have given good faith consideration to any request by the City or such other public body that a provision for such purchase be made in such deed or other document.

b.    <u>School Sites</u>.

(1)    Land shall be reserved in Region I of the District for school sites for elementary schools and junior high schools to serve such Region, the number of elementary and junior high schools to be determined by the school classification criteria set forth in Subsection (B)(1) of Section 43-48 of the Subdivision Control Ordinance (hereinafter called the "Site Size Criteria") and by the Table of Estimated Population.  No reservation of land for a high school site shall be required in Region I.

(2)    Land shall be reserved in Region II of the District for school sites for elementary schools and junior high schools to serve such Region, the number of elementary and junior high schools to be determined by the Table of Estimated Population and the Site Size Criteria.  Land shall be reserved in Region II for school sites for high

schools to serve the District, the number of high
schools to be determined by the Table of Estimated
Population and the Site Size Criteria.

(3)  In any case where the Table of
Estimated Population requires the dedication of
a fractional school site which is fifty percent
or more of a required school site in accordance
with the Site Size Criteria, the developers shall
reserve additional land at such fractional site
as required to meet the Site Size Criteria.  Such
additional land shall be subject to the purchase
requirements provided for in Subsection B.19.b.(5)
below.

(4)  As a condition to the approval by
the City Council of any Final Plan for a develop-
ment phase of a Region of the District pursuant
to Subsection 14.7 of the Zoning Ordinance, which
Final Plan includes land reserved for one or more
school sites, the City Council shall require (i) a
dedication to the appropriate school district
of all or that part of the reserved land which is
required to be dedicated in accordance with the
Table of Estimated Population and the Site Size
Criteria, or (ii) a contractual commitment from
the developer obligating the developer to dedi-
cate all or such part of the reserved land to
the appropriate school district within such time
period as may be specified by the City Council,

which time period shall not, without the developer's approval, be longer than one year commencing with the date of such Final Plan approval; provided, that such dedication obligation shall, at the request of the developer, be conditioned upon the receipt by the developer, prior to such dedication, of legally binding contractual undertakings from such school district to the effect that (a) such school district will co-operate with the City or other public body to which any land adjacent to the reserved school site is to be dedicated for public open space, park and recreational areas, so as to maximize the utility of the public open space, park or recreational land for the needs of the educational facilities for which the reserved school site is to be used, and (b) the land to be dedicated will, within a reasonably prompt period of time, be improved with a building or buildings and other educa-tional facilities adequate, in accordance with generally accepted standards, to meet the edu-cational needs of the residents of the District which such dedicated land is intended to serve. The contractual undertakings which may be re-quired from a school district as a condition to a land dedication obligation shall take into consideration the financial resources of such

school district and the legal requirements that
such district must meet in order to provide
buildings and other educational facilities on
the reserved land to which such dedication
obligation is applicable.

(5)  If, in accordance with the Table of
Estimated Population and the Site Size Criteria,
a fraction of a reserved school site is required
to be dedicated, the developer may be required to
sell and, in such event the school district shall
be required to purchase, at the time of or prior
to the dedication of such fractional site, the
additional land reserved in order that such site
comply with the Site Size Criteria.  The purchase
price of such additional land shall be $12,000
per acre.  In the alternative, such school district
may elect to substitute a cash contribution for
the developer's dedicated obligation with respect
to such fractional site, in which event the cash
contribution provisions of Subsection B.19.b.(6)
below shall be applicable, and the developer
shall be relieved from any reservation or dedication
obligation with respect to such fractional site and
any reservation obligation with respect to such
additional land.

(6)  If a school district chooses the
cash contribution election provided for in Sub-
section B.19.b.(5) above in lieu of land dedi-
cation with respect to a fractional school site,

the City Council shall, as a condition to the
approval of the Final Plan for the development
phase of the Region which includes the reserved
site with respect to which the cash contribution
election shall have been made, require the devel-
oper to make a cash contribution or a cash contri-
bution contractual commitment in lieu of a land
dedication or a land dedication contractual com-
mitment.  The City Council shall also require
from the developer of Region I, as a condition to
the approval of any Final Plan for a development
phase of that Region which would require land
dedications or land dedication contractual com-
mitments for a high school site, a cash contri-
bution or cash contribution contractual commitment
in lieu of such land dedication or land dedication
contractual commitment.  All cash contributions
and cash contribution commitments shall be com-
puted by multiplying $12,000 by the number of
acres or fraction thereof that would have
been required to be dedicated pursuant to the
dedication requirement for which the cash con-
tribution is a substitute.  A developer's obli-
gation to make any cash contribution shall, at the
request of the developer, be conditioned upon the
receipt by the developer, prior to the time when
such cash contribution is required to be made,
of legally binding contractual undertakings from

the school district which has the responsibility
for providing the education facilities for which
such cash contribution is intended, to provide,
within a reasonably prompt period of time, educa-
tional facilities adequate, in accordance with
generally accepted standards, to meet the educa-
tion needs of the residents of the development
phase for which such cash contribution is made.
All cash contributions shall be held in trust by
the City, or another public body, person, firm or
corporation approved by the City and the developer,
solely for use in the acquisition of land for
a school site to serve the immediate or future
needs of children from the development phase with
respect to which such cash contribution shall
have been made or for the improvement to an
existing school site or buildings which already
serve such needs.  If any portion of such cash
contribution is not expended for the purposes set
forth herein during such time period as may be
specified in any contractual undertaking of an
affected school district made pursuant to the
provisions hereof, or, in the absence of a speci-
fied time period in a contractual undertaking,
within seven years from the date of receipt, it
shall be refunded to the developer.

    (7)  If the developer and any school
district are unable to agree upon the contrac-
tual undertakings which may be requested by the

developer pursuant to Subsections B.19.b.(4) or
B.19.b.(6) above, such school district or the
developer may at any time request that the areas
of disagreement be submitted to arbitration in
accordance with the rules then obtaining of the
American Arbitration Association, and the arbitra-
tors shall be selected as follows:  on ten days'
written notice by either party to the other, each
of them shall designate an arbitrator, and a third
arbitrator shall be selected within twenty days
thereafter by the two arbitrators so designated.
The award under such arbitration shall, if accepted
by such school district, be binding upon the
developer.  If the school district does not accept
such award within thirty days after its deter-
mination, the developer shall be relieved from
the land dedication or cash contribution obliga-
tion to which the contractual undertakings were
a condition.  In the case of an arbitration con-
cerning a contractual undertaking which is a
condition to a land dedication obligation of the
developer, if the award in such arbitration
is not accepted by the school district and the
school district does not, within ninety days from
the date of determination of such award, acquire
the land which is the subject of the developer's
dedication obligation by purchase or commence
proceedings to acquire such land by condemnation,
the developer shall be relieved from any reserva-
tion obligation with respect to such land.  Such

land may then be developed and used in any manner permitted by Subsections A., B. and C. of Section II hereof.

(8)  Prior to the preparation of Preliminary Plans for successive development phases of the Region, the developer will consult with appropriate representatives of the affected school district with respect to the location of school sites.  The proposed location of such school sites shall be in accordance with the school site land development plans as shown on the developer's Preliminary Plans for successive development phases of a Region submitted for approval in accordance with Subsection 14.7 of the Zoning Ordinance.

c.  <u>General Matters</u>.

(1)  All land dedicated for school sites, public open space, park or recreation areas pursuant to the provisions of this Subsection B.19. shall be suitable for its intended use and for the construction and maintenance of the educational facilities or recreational improvements for which such land is planned.  With respect to all such dedicated land, the developer shall have the obligation to make provision for electrical, water and sewer services adjacent to the site which shall be appropriate to the land to be dedicated and the intended use thereof.  The developer shall construct or have the obligation to make provision for the construction

of public street improvements (including storm
water drainage facilities and required curb
and gutter improvement) adjacent to such
dedicated land.  Such provision for electrical,
water and sewer services and public street
improvements for a site shall be completed
prior to the scheduled time for commencement
of construction of the school or park facilities
for which such site is to be used.

       (2)  Nothing in this Subsection B.19.
shall obligate a developer to reserve or dedicate
land for school sites or for public open space,
park or recreation areas in any particular develop-
ment phase of a Region of the District, and Final
Plans for development phases of a Region which do
not provide for such land reservation or dedica-
tions may be approved in accordance with the pro-
visions of this Plan Description and Subsection 14.7
of the Zoning Ordinance; provided that to the
degree that any such Final Plan does not provide
for such land reservations or dedications which
are requirements of the development phase covered
by such Final Plan and which have not been pro-
vided for in other Final Plans for property in
the Region theretofore approved by the City
Council, such reservation or dedication require-
ments remain a requirement to the development
of the property in the Region as to which Final
Plans shall not have been approved; and, provided
further, that if land reservation or dedication

requirements attributable to any Final Plan for
a development phase of a Region of the District
are not provided for in such Final Plan or in
other Final Plans for property in the Region
theretofore approved by the City Council, the
City Council may require, as a condition to the
approval of such Final Plan, that the developer
designate the location or locations in those
areas of the Region for which Final Plans have
not been submitted for approval, where land will
be reserved to meet the developer's land reserva-
tion or dedication obligations attributable to
such Final Plan.  Approval by the City Council
of the location or locations of such land reser-
vations in areas for which Final Plans have not
been submitted for approval shall constitute
prior approval of such location or locations for
the purpose of Preliminary Plans or Final Plans
covering such location or locations which may be
submitted in the future.

(3)  Nothing in this Subsection B.19.
shall create any right of any kind in any school
district or other public body other than the City;
and any provision of this Plan Description which
may be included for the benefit of a school
district or other public body may be deleted or
modified by the City and the developer (in
accordance with the provisions of Subsection 14.7
of the Zoning Ordinance) without the approval

of such school district or other public body; provided, that any school site land reservation or dedication obligation or any cash contribution obligation provided for in this Subsection B.19. may at any time or from time to time be modified by agreement between the developer and the affected school district; and, provided further, that any public open space, park or recreation land reservation or dedication obligation which requires dedication to a public body other than the City may at any time and from time to time be modified by agreement between the developer and such other public body.  Any such agreement between the developer and an affected school district or between the developer and such other public body shall be binding upon the City as an effective modification of this Plan Description but shall not require the approval of the City Council.  A copy of each such agreement shall be deposited with the Department of City Planning promptly after its execution.

(4)  With respect to all land dedicated for school sites or for public open space, park or recreation areas pursuant to the provisions of this Subsection B.19., the deed, plat or other instrument by which such land is dedicated shall contain appropriate provisions restricting the use of such land to the use or uses contemplated in this Subsection B.19. or to the use or uses

contemplated in any agreement between the develop-
er and the City, school district or other public
body to which such land is to be dedicated.

(5)  The developer may at any time and
from time to time file an objection to the
applicability of the Table of Estimated Popula-
tion to all or any part of the District, and be
entitled to a determination of such applica-
bility in accordance with the provisions of
Subsection D of Section 43-48 of the Subdivision
Control Ordinance.

20.  Subsection (d) of Section 43-59 shall be
modified to read as follows:

"(d)  Where a subdivision abuts or contains an
existing or proposed primary highway and where
it may be necessary for the adequate protection
of residential properties or to afford separa-
tion of through and local traffic, the pre-
liminary plats and final plats shall provide for
(1) marginal access streets, (2) reverse frontage
lots with a screen planting easement of at
least ten feet in width located along the rear
property line and across which there shall be
no right of vehicular access, (3) deep lots
with rear service access, or (4) such other
treatment as the developer may propose which
will adequately provide the necessary protection
of residential property or traffic separation."

21.  Subsection (e) of Section 43-59 shall be modified to read as follows:

"(e)  Where a subdivision borders on or contains a railroad or an expressway right-of-way consideration shall be given to the location of a street approximately parallel to and on each side of such railroad or expressway right-of-way at a distance suitable for the appropriate use of the intervening land.  Such distance shall be determined with due regard for the requirements of approach grades and future grade separations."

22.  Subsection (l) of Section 43-59 shall be modified to read as follows:

"(l)  Where the City Engineer determines that the geometrics at street intersections are such as to require property line cut offs, roundings or chords at such intersections, they shall be provided."

23.  Subsection (m) of Section 43-59 shall be modified to read as follows:

"(m)  Street right-of-way widths shall be as specified in the table of minimum standards as modified by this Plan Description."

24.  Subsection (o) of Section 43-59 shall be modified to read as follows:

"(o)  Dead-end streets (cul-de-sac) may have a maximum length of six hundred feet measured

from the right-of-way line at the open end to
the center of the turn-around circle, shall be
provided with a paved surface of twenty-seven
feet back to back of curb and a turn-around at
the closed end having an outside pavement dia-
meter back to back of curb of at least eighty
feet and a street property line diameter of at
least one hundred and twenty feet.  The right-
of-way for dead-end streets shall be at least
fifty feet.  The paved surface and right-of-way
requirements for dead-end streets shall also be
applicable to residential loop streets not over
twelve hundred feet in length measured from the
right-of-way line at each end.  Such dead-end
and loop streets shall originate and, in the
case of loop streets, terminate at residential
or collector streets."

25.  The table of minimum standards for street
design contained in Subsection (p) of Section 43-59 shall
be modified to read as follows:

MINIMUM STANDARDS FOR STREET DESIGN.

|  | Residential | Collector | Secondary | Primary |
|---|---|---|---|---|
| Right-of-way | 60' | 66' | 80' | 80' to 100' |
| Radius of horizontal curve of street center line | 200' | 300' | 400' | 500' |
| Length of vertical curve | 30 times algebraic difference of grade, but not less than 50 feet. (Not required when algebraic difference of grade is less than 1.5%). | | | |

MINIMUM STANDARDS FOR STREET DESIGN.
(Con't.)

|  | Residential | Collector | Secondary | Primary |
|---|---|---|---|---|
| Length of tangents between reverse curves | 50' | 50' | 100' | 100' |
| Maximum grade | 6% | 6% | 5% | 5% |
| Minimum grade | 0.35 | 0.35 | 0.40 | 0.40 |
| Non-passing sight distance | 200' | 200' | 300' | 400' |
| Width of paving, back-to-back of curbs | 31' | 37' | 41' | 45' |

26.  Section 43-62 shall be modified to read as follows:

"Sec. 43-62.  EASEMENTS.

(a)  Easements shall be provided for utilities, ingress and egress.  Easements for utilities provided by private public utility companies shall be approved by such companies; easements for sanitary sewers shall be approved by the City Sewer Department; easements for drainage, ingress and egress shall be approved by the City Engineer; and water utility easements shall be approved by the City Water Department.

(b)  Where a subdivision is traversed by a watercourse, drainage way, channel or stream, there shall be provided a storm water easement or drainage right-of-way conforming substantially with the line of such watercourse, drainage way, channel or stream of a width which will provide adequate access for future construction and maintenance as recommended by the City Engineer."

27.   Section 43-63 shall be modified to read
as follows:

"Sec. 43-63.  BLOCKS.

(a)   Except as provided in Subsections (b),
(c) and (d) below, no specific rule is made
concerning the length, width or shape of blocks,
but blocks shall be designed with due regard to:

    (1)   provision for adequate building sites
    suitable to the special needs of the type
    of use contemplated;

    (2)   the limitations and opportunities of
    topography; and

    (3)   the desirability of convenient access,
    and of street traffic circulation, control
    and safety.

(b)   In Residential Areas where a pattern of
residential and collector streets is planned, the
City Engineer may, for the purpose of minimizing
traffic congestion, recommend that the distance
between cross streets not exceed eighteen hundred
feet.

(c)   Pedestrian cross walks not less than five
feet wide shall be provided where deemed neces-
sary to provide for pedestrian circulation or
access to schools, playgrounds, shopping centers,
transportation, and other community facilities;
provided, that where recommended by the City
Engineer, such cross walks shall have a greater
width up to and including ten feet.

(d)   Blocks or portions thereof intended for

commercial or industrial use shall be desig-
nated as such, and the plat shall show adequate
off-street areas to provide for parking, loading
docks, and other such facilities."

28.  Subsection (a) of Section 43-64 shall be
inapplicable.

29.  Subsection (b) of Section 43-64 shall be
modified to read as follows:

"(b)  A 'subdivided lot' is herein defined
to mean a portion of a subdivision intended
for transfer of ownership, building develop-
ment, other uses consistent with this Plan
Description or any combination of the foregoing.
A subdivided lot shall be appropriate for the
type of development and use contemplated by
this Plan Description.  A subdivided lot may
be a zoning lot, as such term is defined in
this Plan Description, or it may be a portion
of a zoning lot.  The term lot used alone in
this Plan Description or in the Subdivision
Control Ordinance shall be deemed to be a
subdivided lot as such term is defined herein.
If a subdivided lot on which dwelling units
are or may be located is a portion of a zoning
lot, appropriate arrangements shall be required
to provide for the continuing protection and
maintenance of the open areas, parking facili-
ties and other common elements of such zoning

lot required by the development standards and other terms of this Plan Description, or of any Preliminary Plan or Final Plan for the area of the District in which such zoning lot is located. Such arrangements may provide for the conveyance of all or part of such open areas, parking facilities and other common elements to a property owners association consisting of all the owners, present and future, of subdivided lots within such zoning lot; or such continuing protection and maintenance may be provided by other types of conveyances and agreements. The following provisions shall be applicable to lots or to zoning lots as indicated:

(1) Zoning lot dimensions and areas shall conform to the requirements of this Plan Description.

(2) Zoning lots abutting a watercourse, drainage way, channel, or stream shall have a minimum width and depth as may be required to provide adequate building sites and to afford the minimum usable area required by the provisions of this Plan Description.

(3) The depth and width of lots in the Business and Manufacturing Areas of the District shall be adequate to provide for the off-street parking and loading facilities required by the Zoning Ordinance as modified by this Plan Description."

-105-

30.  Subsection (d) of Section 43-64 shall be modified to read as follows:

"(d)  All lots shall have access to or abut on a public dedicated street, court or cul-de-sac, or a private street, court or cul-de-sac."

31.  Subsection (e) of Section 43-64 shall be modified to read as follows:

"(e)  In the case of a subdivided lot which is a zoning lot, as such term is defined in this Plan Description, and which contains not more than one one-family detached dwelling, a double frontage or reverse-frontage lot shall be avoided except where essential to provide separation of residential development from highways or primary thoroughfares or to overcome specific disadvantages of topography and orientation.  A planting screen easement of at least ten feet and across which there shall be no right of vehicular access shall be provided along the lot line of such a lot abutting such a highway or primary thoroughfare."

32.  Subsection (f) of Section 43-64 shall be inapplicable.

33.  Section 43-65 shall be modified to read as follows:

"Sec. 43-65.  BUILDING SETBACK LINES.
Building setback lines shall conform to the provisions and requirements of this Plan Description."

-106-