34.   Subsection (a) of Section 43-66 shall be inapplicable.

35.   Section 43-67 shall be inapplicable.

36.   Section 43-78 shall be modified to read as follows:

"Sec. 43-78.   COMPLIANCE REQUIRED; CERTIFICATION.

No subdivision of land shall be approved without the subdivider submitting a statement signed by the City Engineer certifying that the improvements described in the subdivider's plans and specifications, together with agreements, meet the minimum requirements of this Plan Description, of all ordinances of the City as modified by this Plan Description and of Article V of the Subdivision Control Ordinance as modified by this Plan Description."

37.   Subsection (e) of Section 43-79 shall be modified to read as follows:

"(e)   When required by the City Engineer storm sewers shall be constructed throughout the entire subdivision, which shall be separate and independent of the sanitary sewer system and which shall provide an adequate outlet or connection with the storm sewer system of the City or a stream or drainage course. The storm sewer system shall be designed by the rational method, to accept the runoff from a storm with

a five-year return frequency on the fully developed
site.  Storm water inlets shall be constructed in
the pavement curbs and gutters to drain the pave-
ment at intervals not to exceed six hundred feet;
provided, that where standard engineering prac-
tices, as recommended by the City Engineer, would
require a shorter interval between storm water
inlets, such inlets shall be constructed at such
shorter intervals which shall not be less than
three hundred feet except at intersections.  The
total storm system may be a combination of open
and closed conduits or channels.  No storm
sewer shall be connected to any sanitary sewer
of the Aurora Sanitary District.  When storm
sewers are not installed, adequate facilities,
as recommended by the City Engineer, for the
removal of surface water shall be provided
throughout the entire subdivision."

38.  Section 43-80 shall be modified to read
as follows:
"Sec. 43-80.  WATER SUPPLY.

Water mains to furnish City water to each
and every lot within the subdivision shall be
constructed in accordance with the applicable
ordinances of the City."

39.  Subsection (a) of Section 43-81 shall be
modified to read as follows:
"(a)  Roadways of collector and residential
streets shall have a surface consisting of
one of the following materials as selected

-108-

by the subdivider's design engineers: non-
reinforced Portland cement concrete pavement
having a minimum thickness of six inches or
a gravel or crushed stone base course Type B
having a minimum compacted thickness of eight
inches on residential streets and ten inches
on collector streets, or structurally equiva-
lent base material of appropriate thickness
with a two inch Bituminous Concrete surface
course, Sub-class B-5."

40.  Subsection (d) of Section 43-81 shall be
modified to read as follows:
"(d)  All streets shall be improved with roadways
bounded by non-reinforced Portland cement concrete
curbs and gutters in accordance with specifications
established by the City and approved by the City
Engineer.  Eighteen-inch wide roll type curbs
and gutters shall be permitted on collector and
residential streets.  Where non-reinforced
Portland cement concrete pavement is constructed,
curbs may be constructed monolithic with the
pavement."

41.  Subsection (f) of Section 43-81 shall be
modified to read as follows:
"(f)  Street improvements shall be in accordance
with the Table of Minimum Standards in Section
43-59 as modified by this Plan Description."

42.  Section 43-84 shall be modified to read
as follows:

"Sec. 43-84.  SIDEWALKS.

Public sidewalks shall be constructed to
a width of not less than five feet and shall
be installed on both sides of publicly dedi-
cated streets; provided, that with the approval
of the City Council, public sidewalks may be
installed on only one side of a publicly dedi-
cated street if (1) adequate public pedestrian
walkways are located on the property on the
other side of such street, or (2) sidewalks
on the other side of such street are inappropriate
or unnecessary on both sides of such street be-
cause of the nature of the land use planned for
the affected area.  The construction of sidewalks
may be deferred until such time as the develop-
ment of the property adjacent to such sidewalks
has been completed, and acceptance and dedication
of other improvements may take place prior to
the construction of such sidewalks; provided,
that for reasons of public safety the City
Engineer may in such cases require the sub-
divider to provide temporary walkways pending
the construction of sidewalks.  The specifica-
tions for such temporary walkways shall be
subject to the approval of the City Engineer.
Public sidewalks shall be constructed of

Portland cement concrete having a minimum
thickness of four inches or equivalent
material approved by the City Engineer.
Unless otherwise approved by the City
Council, all public sidewalks shall be
located within the street right-of-way, one
foot inside the right-of-way line.  All City
Council approvals provided for in this
Section 43-84 may be given as part of the
approval of a Preliminary or Final Plan."

43.  Section 43-87 shall be modified to read as
follows:

"Sec. 43-87.  INSPECTION OF IMPROVEMENTS.

The subdivider shall be obligated to pay the
City for the City's actual costs incurred in
connection with the review of plans and specifi-
cations for all public improvements installed
pursuant to Subsections (a)(1), (a)(2) or (a)(3)
of Section 43-47 of the Subdivision Control
Ordinance, as modified by this Plan Description.
All such public improvements shall, at the
subdivider's expense, be layed-out in the field
prior to the commencement of construction
and shall be inspected during the course of
construction by a professional engineering
firm retained by the subdivider, and copies of
reports of such firm shall be made available

to the City Engineer without cost to the City.
Routine inspections of such public improvements
by the City during the course of and upon com-
pletion of construction will be made without
cost to the subdivider, but the subdivider shall
be obligated to pay the City for the City's
actual costs of special inspections of such
public improvements occasioned by defective
work or work practices. Upon completion of
construction of such public improvements, the
subdivider shall supply the City with 'as
built' drawings of such public improvements,
which drawings shall, at the subdivider's
expense, be certified by the professional
engineering firm which performed the inspec-
tion services referred to above."

FOX VALLEY EAST PLANNED DEVELOPMENT DISTRICT

Plan Description

Part One

Section V

General Provisions Relating to the Proposed District


A.  Sanitary Sewer Service to the District.


        The developers of the District propose annexation
of the District to the Aurora Sanitary District.  The proposed
sewer service system described below has been planned jointly
by the developers of the District and the Aurora Sanitary
District.  By describing the proposed sewer service system in
this Plan Description the developers of the District do not
assume responsibility for financing the proposed system.  The
developers of the District and the Trustees of the Aurora
Sanitary District are jointly exploring methods by which such
financing may be accomplished.


        The sanitary outfall sewer systems serving
Regions I and II will consist of a gravity sewer running
south-westerly along the Waubansee Creek from the approximate
intersection of Farnsworth Avenue and Waubansee Creek to a
pumping station to be built in the south half of Section 9,
Oswego Township, Kendall County.  The pumping station will
be connected to the Aurora Sanitary District's treatment
plant on the Fox River in Montgomery, Illinois by a force
main sewer.

That portion of Regions I and II lying in general between Aurora Road and Oswego Road will be served by a trunk sewer connected to the above mentioned outfall sewer and running northeasterly along the Waubansee Creek to its intersection with the Elgin, Joliet & Eastern Railway Company right-of-way, thence northerly adjacent to and parallel with said right-of-way to the north line of Section 29, Naperville Township, DuPage County, thence easterly adjacent to and parallel with said line and said line extended east to its intersection with the east line of the west half of the west half of Section 21 in the Township and County aforesaid, thence northerly adjacent to and parallel with said line to its intersection with the southerly right-of-way line of Aurora Road.

Sanitary trunk sewers for the southern part of Region II will consist of a sewer connected to the proposed Aurora Sanitary District trunk sewer described above as following Waubansee Creek at a point in the southwest quarter of Section 36, Township 38 North, Range 8 East, and running generally southeasterly from that connection point to the right-of-way of 87th Street extended, thence easterly along the existing and extended 87th Street right-of-way to the approximate intersection of 87th Street and the north-south centerline of Section 31 in Naperville Township, DuPage County, thence northerly along the approximate centerline of Section 31 to the 83rd Street right-of-way, thence easterly along the 83rd Street right-of-way to its intersection with the centerline of Section 33, Naperville Township, DuPage County.

The sanitary trunk sewer system to serve the northern part of Region II will consist of a gravity trunk sewer connected at some point in the northeast quarter of Section 30 to the trunk sewer described earlier and which runs northeasterly adjacent to the Waubansee Creek.  This gravity trunk sewer to serve the northern part of Region II will be constructed in a northerly direction adjacent to or within the corridor of the proposed Fox Valley Freeway and will terminate at approximately the intersection of said corridor and Molitor Road.

Manholes will be located in accordance with the Aurora Sanitary District's design standards and at key connection points.  Trunk sewers will be sized to accommodate the estimated future sewer requirements of the area.

Any change in the above described sewer service system which receives the approval of the Aurora Sanitary District shall be deemed a reasonable variation from this Plan Description for the purpose of clause a. of Subsection 14.7-6 of the Zoning Ordinance, and shall not require the approval of the City Council.  The Department of City Planning shall be notified of any change in the above-described sewer service system.

B.    Water Service to the District.

The proposed water distribution facilities described below have been planned jointly by the developers

of the District and the City Water Department.  By describing the proposed water distribution facilities in this Plan Description the developers of the District do not assume complete responsibility for financing the proposed facilities.  The developers of the District and the City are jointly exploring methods by which such financing may be accomplished.

The primary water distribution facilities for Region I and the central part of Region II will consist of a water main, approximately twenty inches in diameter connecting to the existing City of Aurora water system at two points in the vicinity of Hill Avenue and Fifth Avenue. The twenty-inch water main will extend easterly along Fifth Avenue to Vaughn Road, thence easterly along the east-west centerline of Section 30, Naperville Township, DuPage County to its intersection with the Waubansee Creek; thence northeasterly adjacent to the Waubansee Creek alignment to the west side of the Commonwealth Edison Company right-of-way; thence northerly, approximately sixteen inches in diameter, adjacent to and parallel with said right-of-way line to the north line of Section 29, Naperville Township, DuPage County; thence easterly adjacent to and parallel with said north line and said north line extended east to its intersection with the east line of the west one-half of the west one-half of Section 21 in the Township and County aforesaid; thence southerly and generally paralleling said east line to its intersection with the northerly right-of-way line of Oswego (Illinois Route Number 34).

At the intersection of the Waubansee Creek and the westerly right-of-way line of the Commonwealth Edison Company right-of-way, a two-million-gallon ground storage facility and high pressure pumping station will be constructed. A deep well with a capacity of one thousand gallons per minute will be drilled at the location of the ground storage pumping facility, discharging to said facility with the necessary pumping and chlorination equipment located adjacent to the well.

Water mains designed to supply water to the High Pressure Zone will run from this pumping station northerly adjacent to and parallel with said right-of-way line to the north line of Section 29, Naperville Township, DuPage County; thence easterly adjacent to and parallel with said north line and said north line extended to its intersection with the east line of the west one-half of the west one-half of Section 21 in the Township and County aforesaid. The water main will be approximately twenty inches in diameter from the pumping station to the intersection of the proposed main with the approximate easterly right-of-way line of the Elgin, Joliet & Eastern Railway Company, from which point the easterly extension of said water main will be approximately twelve inches in diameter.

Water distribution facilities for the southeast part of Region II will consist of an extension south from the proposed water main located on the west side of the

Commonwealth Edison Company right-of-way, following that right-of-way line and terminating at a proposed elevated storage tank with a minimum capacity of seven hundred and fifty thousand gallons located in the vicinity of the Elgin, Joliet & Eastern Railway Company right-of-way and 83rd Street.  This tank will be further connected to the system through a trunk main running east along 83rd Street to the north-south centerline of Sections 33 and 28, thence north along said centerline across the 75th Street right-of-way and extending northerly to a connection with a previously described water main at the approximate inter-section of Oswego Road with the east line of the west one-half of the west one-half of Section 21, Naperville Township, DuPage County; and by a trunk main running west along 83rd Street to the DuPage-Kane County Line, thence north along said county line to the above mentioned trunk main to be extended along Fifth Avenue.

Water distribution facilities for the northern part of Region II will consist of a proposed water main connected to the existing City water system at Reckinger, east of Farnsworth, thence south on Felton Road to Shefler Avenue, thence eastward along Shefler Avenue and Shefler Avenue extended to Eola Road, thence south along Eola Road to State Route 65, thence east on the south side of State Route 65 to the east right-of-way of the Elgin, Joliet & Eastern Railway Company and then south adjacent to said right-of-way to the High Pressure Zone trunk water main

described as following the north line of Section 29,
Naperville Township, DuPage County.  Additionally, a water
transmission main approximately sixteen inches in diameter
will be constructed easterly on the south side of State
Route 65, from the east right-of-way of the Elgin, Joliet &
Eastern Railway Company to the intersection of State
Route 65 with the East line of the west one-half of the
west one-half of Section 21, Naperville Township, DuPage
County.

A further connection to the existing City water
system will be provided by a proposed water main from the
intersection of Molitor Road and Felton Road extended,
easterly on Molitor Road to Eola Road, thence south along
Eola Road to make a connection with the main described
above.

Any change in the above described water distri-
bution facilities which receives the approval of the City
Water Department shall be deemed a reasonable variation
from this Plan Description for the purposes of clause a.
of Subsection 14.7-6 of the Zoning Ordinance.

C.  District Storm Water Retention and Disposal Systems.

The proposed storm water retention and disposal
systems described below are being planned jointly by the

developers of the District and the City.  By describing the
proposed storm water retention and disposal systems in this
Plan Description the developers of the District do not
assume complete responsibility for financing the proposed
systems.  The developers of the District are exploring
methods by which such financing may be accomplished.

    1.  <u>Waubansee Creek Storm Retention and Disposal
Facilities</u>.  Storm water retention facilities will be
developed within the Waubansee Creek watershed.  The faci-
lities will have the capacity to retain storm runoff result-
ing from a storm with a twenty-five-year return frequency
from a fully developed site with a discharge restricted to
0.15 inches per hour per acre from the same contributing
area.  Additionally, the facilities will have the capacity
to retain storm runoff resulting from a storm with a one-
hundred-year return frequency from a fully developed site
with a discharge restricted to 0.2 inches per hour per
acre from the same contributing area.

    The allowable discharge from the upstream watershed
will bypass or be in addition to the discharge from the
proposed storm water retention facilities.

    Between storm water retention facilities a conduit
or improved channel with an adjacent floodway will be
provided with capacity to convey a maximum runoff equiva-
lent to 0.2 inches per hour per acre from the site and from
the upstream watershed.

2.  <u>Indian Creek Tributary Storm Retention and Disposal Facilities</u>.  Storm water retention facilities will be provided having a capacity to retain storm water runoff resulting from a storm with a twenty-five-year return frequency from the fully developed site with a discharge restricted to 0.15 inches per hour per acre from the same contributing area.  Additionally, the facilities will have the capacity to retain storm runoff resulting from a storm with a one-hundred-year return frequency from a fully developed site with a discharge restricted to 0.2 inches per hour per acre from the same contributing area.

The allowable discharge from the upstream watershed will bypass or be in addition to the discharge from the proposed storm retention facilities.

Between storm water retention facilities a conduit or improved channel with an adjacent floodway will be provided with capacity to convey a maximum runoff equivalent to 0.2 inches per hour per acre from the site and the upstream watershed.

3.  <u>Variations</u>.  Any change in the above described storm water disposal system which receives the approval of the City Engineer shall be deemed a reasonable variation from this Plan Description for the purpose of clause a. of Subsection 14.7-6 of the Zoning Ordinance.

D.  Highways and Roads.

    1.  General.  The following is an outline of the
structure and general configuration of the major roadway
network which will serve the District and the area surround-
ing it.  It has been planned by the developers of the Dis-
trict after consultation with the State and County Highway
Departments, the City Engineer and the Director of City
Planning.  The primary transportation system elements
described herein are intended to serve as the basis for
further detailed planning and design by the developers and
their traffic consultants, working in close coordination
with public transportation planning agencies at the City,
County, State, and Federal levels.  The portions of the
major roadway network described herein which are outside
the District are included only to illustrate what the
developers of the district believe to be desirable road
and highway planning, and it shall not be a condition to
the right of the developers of the District to develop
the District in accordance with this Plan Description
that such portions of the major roadway network are com-
pleted in the manner described herein.  By describing the
proposed major roadway network in this Plan Description
the developers of the District do not assume complete
responsibility for financing the proposed network.  The
developers of the District, representatives of the State and
County Highway Departments and the City are jointly explor-
ing methods by which such financing may be accomplished.

The primary objectives of the transportation system are:

    a.   To provide for sufficient system-wide traffic capacity moving to, from and through the two Regions of the District.

    b.   To provide sufficient internal roadway capacity to meet the access and circulation requirements of development-related traffic moving within the Regions.

    c.   To interconnect the Regions with primary regional major arterials and expressways.

    d.   To create a transportation facilities infrastructure which will support and serve proposed land uses within the two Regions and in the surrounding areas.

    e.   To form the basis for application of new transportation systems and technologies at a future time, as such new systems are developed and demonstrated to be feasible and desirable.

The staging of street and highway improvements within the two Regions will be coordinated so as to provide

roadway capacities to meet travel needs which will exist at future dates. Since development within the Regions will be scheduled over a relatively long (twenty-year) period, selected improvements may be accomplished in stages and be designed to both meet then-current needs and to complete linkages which will be required by new development and which will support the final transportation system.

Street and highway improvements are contemplated to fall within one or more of the following categories:

a. New construction of roads along existing or newly acquired rights-of-way, including arterial and collector streets as well as local access streets serving newly developed land uses.

b. Improvements of existing roads, including widening, resurfacing, providing controlled access, and realignment of some sections of roadway to complete required linkages.

c. Localized improvements, including installation of traffic control devices, intersection approach widening and channelization, and access control at critical points.

The major elements of the proposed transportation network are described in the following Subsections of this

Subsection D.  The proposed alignments will be fixed after completion of detailed traffic engineering studies and in coordination with appropriate transportation planning activities of City, County, State and Federal agencies.

2.  <u>Highway and Roads Network</u>.  The principal elements of the proposed District-Wide Transportation System are intended to form a grid network of primary and secondary arterial roads, which will link the District with adjacent regional arterials and expressways.  Specific elements are described below:

a.  <u>North-South Linkages</u>:

(1)  Illinois Route 59 is planned for improvement by the construction of additional traffic lanes and the improvement of major intersections to increase both their through-movement and turning-movement capacities.  These improvements should extend from 75th Street north to the East-West Tollway.

(2)  A new north-south arterial is planned for construction along an alignment west of Illinois Route 59 and east of the Elgin, Joliet & Eastern Railway Company right-of-way.  This new roadway should

extend from 87th Street north to Butter-
field Road.

(3)   The Fox Valley Freeway is
proposed to extend from an interchange
with the East-West Tollway, approximately
midway between the Farnsworth Avenue inter-
change and the Eola Road crossing, south
along an alignment generally parallel to
and west of the Elgin, Joliet & Eastern
Railway Company right-of-way, to a point
south of Region II at 95th Street, then
south and east to the Stevenson Expressway
(Interstate Route 55).

(4)   Kautz Road is planned for
major improvement to an arterial con-
structed along the DuPage-Kane County
line from 87th Street to Molitor Road.

(5)   Vaughn Road is planned for
improvement to an arterial road con-
structed from Molitor Road to 87th Street.

(6)   Eola Road is planned for
improvement to an arterial from Butter-
field Road to 87th Street.

b.  <u>East-West Linkages</u>:

(1)  North Aurora Road is planned for improvement to arterial standards and connected from the vicinity of its intersection with Ogden Avenue (U. S. Route 34) generally west along the alignment of North Aurora Road to an intersection with Indian Trail Road at Farnsworth Avenue in Aurora.

(2)  Liberty Road (Claim Street) is planned for improvement to arterial standards from Route 34 in Naperville to Farnsworth Avenue in Aurora.

(3)  Aurora Avenue is planned for improvement to arterial, or at-grade expressway standards, between Naperville and Farnsworth Avenue in Aurora.

(4)  A new east-west arterial is planned for construction through the District, approximately two thousand feet south of Aurora Avenue from U. S. Route 34 on the east to connect into the existing street system of the City of Aurora.

(5)  75th Street is planned for improvement to at-grade expressway standards between Naperville and its intersection with Route 34.

(6)  Route 34 is planned for improvement to arterial standards from 75th Street to by-pass Route 30.

(7)  83rd Street is planned for improvement to an arterial from Route 59 to Montgomery Road extended.

(8)  87th Street is planned for improvement and construction to arterial standards between Route 59 and Route 34.

3.  Variations.  Any change in the above described plans for highways and roads which receives the approval of the City Engineer shall be deemed a reasonable variation from this Plan Description for the purpose of clause a. of Subsection 14.7-6 of the Zoning Ordinance.

E.  Time Limitations for Submission of Preliminary
and Final Plans.

Within twelve months after the approval date
Preliminary Plans for not less than forty acres of the
District (hereinafter called the "Required First Prelimi-
nary Plans") shall be submitted for approval.  Final Plans
for not less than forty acres of the area covered by the
Required First Preliminary Plans (hereinafter called
"Required First Final Plans") shall be submitted for
approval within three years after approval by the City
Council of the Required First Preliminary Plans.  Pre-
liminary Plans for development phases of the District not
included in the Required First Preliminary Plans may be
submitted for approval from time to time after the
approval date within the fifteen-year period following
the approval date.  Final Plans for development phases of
the District not included in the Required First Final
Plans may be submitted for approval from time to time
after the approval date within the eighteen-year period
following the approval date.

The developer may, with respect to any area of
the District, without having obtained approval of a Pre-
liminary Plan covering such area, submit for approval,
in accordance with the procedures prescribed in Subsec-
tion 14.7-12 of the Zoning Ordinance and within the time

period prescribed for submission of a Preliminary Plan
for such area, one or more Final Plans for such area.

On the approval date the developers of the
District will have entered into certain agreements with
the City which will obligate the City to install and
construct certain water facilities in the District on or
before certain dates as specified in such agreements.
After the approval date the developers of the District
contemplate entering into an agreement with the Aurora
Sanitary District which will obligate the Aurora Sanitary
District to install and construct certain sewerage facili-
ties in the District on or before certain dates as
specified in such agreement.  By approving the applica-
tion for establishment of the District, the City agrees
that any delays in constructing and installing such
water facilities or sewerage facilities in accordance
with such specified dates will, to the extent of such
delays, be recognized as proper grounds for granting (in
accordance with the procedures prescribed in Subsec-
tions 14.7-8 and 17.7-11 of the Zoning Ordinance) exten-
sions to the time periods for submission of Preliminary
Plans and Final Plans covering all of the District.

F.    <u>Deletion of Land from the Proposed District</u>.

At any time prior to the approval date the
developers shall have the right to delete one or more

parcels of land from the District as proposed in the Plan
Description originally filed with the application for
establishment of the District and to amend the legal
description of the District and the maps showing boundaries
of the District to reflect such deletions; provided, that
(i) not more than ten percent of the acreage of the Dis-
trict as described in the Plan Description as originally
filed may be so deleted, and (ii) no such deletion may be
made which would affect the contiguity of the property in
the District as required by Subsection 14.7-2 of the
Zoning Ordinance.

G.  Consent of Owners.

The application for establishment of the District
has been made by Urban Investment and Development Co., a
Delaware corporation, acting as agent for the owners of all
of the land in the District.  Prior to the approval date,
this Plan Description shall be made part of an Annexation
Agreement executed by the owners of record of all of the
land in the District.  Such Annexation Agreement shall
contain a provision by which said owners of record consent
to the establishment of the District in accordance with the
terms of this Plan Description.

H.  Obligation to Develop.

With respect to each parcel of land in the
District included in a Final Plan approved by the City

Council pursuant to Subsection 14.7 of the Zoning Ordinance, the obligation to develop said parcel in accordance with the provisions of such approved Final Plan, and the obligation to make the improvements and land reservations and dedications with respect to such parcel provided for in such approved Final Plan shall be solely a requirement of the development of such parcel of land in accordance with the provisions of such Final Plan, and no obligation with respect thereto shall attach to other land in the District.

I.  Land Use Plans.

1.  Submission of Land Use Plan Included in Plan Description.  There is included in Part Three of this Plan Description as map number VI a land use plan for the District which sets forth the present plans of the developers of the District with respect to the future development of the District into the three types of land use Areas described in Subsections A., B. and C. of Section II hereof and the location of such land use Areas in the District.

2.  Submission of Updated Land Use Plans.

a.  Submission with Preliminary Plans.  At any time and from time to time when a Preliminary Plan for a development phase of a Region of the

District is submitted for approval, it shall be an
obligation of the developer of such development phase
to cause the developers of such Region to prepare and
submit to the City with such Preliminary Plan an
updated land use plan for those areas in the Region
for which Preliminary Plans shall not then have been
submitted for approval.

      b.  <u>Submission by Developers</u>.  At any time
and from time to time any one or more developers of
each Region of the District may prepare and submit
to the City an updated land use plan for any area in
such Region for which Preliminary Plans shall not
then have been submitted for approval which land
use plan shall meet the requirements of this
Subsection V I.

      c.  <u>Annual Submissions</u>.  When no updated
land use plan for the District shall have been pre-
pared for one year, the developers of each Region
of the District shall, unless the City waives such
obligation, prepare and submit to the City a land
use plan for those areas in such Region for which
Preliminary Plans shall not then have been submitted
for approval which land use plans shall meet the
requirements of this Subsection V I.

      3.  <u>Land Use Plans to Reflect Developers' Best
Intentions</u>.  The land use plan included in Part Three of

this Plan Description, and each updated land use plan sub-
sequently prepared and submitted in accordance with this
Subsection V I. shall, as of its date, reflect the best
intentions of the developers of the District with respect
to the future development of the District into land use
Areas and the location of such land use Areas in the
District.

      4.  Changes in Land Use Plans Requiring City
Council Approval.  Changes in the land use plan included
in Part Three of this Plan Description or in any updated
land use plan prepared and submitted in accordance with
this Subsection V I. which involve the relocation of a
land use Area in the District or the establishment of a
new land use Area in the District shall require the
approval of the City Council, which approval may be
obtained in accordance with the procedures set forth in
Subsection A.9. of Section III hereof; provided, that
the following changes in any such land use plan shall
not require the approval of the City Council:

      a.  The establishment or relocation of one
or more neighborhood shopping center Business Areas
each of which contains no more than fifteen acres
or the establishment or relocation of no more than
three Business Areas each of which contains no more
than twenty-five acres; and

      b.  The enlargement of a land use Area,
into property contiguous to such land use Area

-134-

prior to such enlargement, the contraction of a
land use Area, or the elimination of a land use
Area; provided that a neighborhood shopping center
Business Area or a Business Area containing no more
than twenty-five acres established or relocated pur-
suant to Subsection 4.a. of this Subsection V I. may
not, without the approval of the City Council, be
enlarged to a size greater than fifteen acres or
twenty-five acres respectively; and, provided fur-
ther, that properties separated by highways, streets,
public ways or railroad or public utility rights-of-
way shall be deemed contiguous for the purpose of
this Subsection V I.4.b.; and

c.   Any changes in any such land use plan
involving land designated for open space, park,
recreation or school site purposes; and

d.   Any changes in such land use plan
which are deemed necessary or desirable by the
developers of those areas of a Region of the Dis-
trict for which Preliminary Plans shall not have
been submitted for approval because of any of the
following events and which are reasonably attribu-
table to such event or events:

(1)   A change in the zoning
classification of property adjacent
to but outside the boundaries of
the District, unless such property is

owned or controlled by a developer of
the District and such change in zoning
shall have been made with such developer's
consent or approval; or

(2)   A change in the location
of the Fox Valley Freeway or other new
arterial roads described in Subsection D.
of this Section V as shown on the land use
plan included in Part Three of this Plan
Description or on any updated land use
plan prepared and submitted in accordance
with this Subsection V I., provided, that
a substantial change or substantial
changes in such land use plan occasioned
by the abandonment of plans for the Fox
Valley Freeway shall require approval of
the City Council unless such change or
changes are otherwise permitted to be
made without City Council approval pur-
suant to the provisions of this
Subsection I.; or

(3)   The future location or
elimination of major public transportation
facilities or routes designed, in whole
or in part, to serve the District; or

(4)   The enactment of any
municipal, state or federal ordinance