**ORIGINAL**

AURVENEX.TEN/TXT3/LAWORDRE.S
July 26, 1993

CITY OF AURORA, ILLINOIS
ORDINANCE NO. 093-59
DATE OF PASSAGE July 27, 1993

AN ORDINANCE AUTHORIZING AN EXTENSION OF THE
FOX VALLEY EAST PRINCIPAL ANNEXATION AGREEMENT

WHEREAS, the City of Aurora has a population of more than 25,000 persons and is, therefore, a home rule unit under subsection (a) of Section 6 of Article VII of the Illinois Constitution of 1970; and

WHEREAS, subject to said Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs for the protection of the public health, safety, morals and welfare; and

WHEREAS, in furtherance of its home rule powers, it is necessary and desirable for the City of Aurora to extend its Annexation Agreement as below described; and

WHEREAS, that certain Fox Valley East Principal Annexation Agreement by and between the City and certain parties which Aurora Venture has succeeded, dated July 27, 1973, expires by its terms August 1, 1993; and

WHEREAS, the City and Aurora Venture are currently in negotiation over an amendment and supplement of said Agreement, including modifications and additions to the planned description therein provided for; and

WHEREAS, the parties desire to extend the expiring Annexation Agreement on a temporary basis, to December 31, 1993, under the same terms and conditions therein specified and

without modification thereto, pursuant to the attached correspondence from Aurora Venture dated July 23, 1993;

NOW, THEREFORE, BE IT ORDAINED by the City Council of the City of Aurora, Kane and DuPage Counties, Illinois, as follows:

Section One: That the City Council does hereby authorize an extension to that certain Fox Valley East Principal Annexation Agreement, dated July 27, 1973, as hereinabove described.

Section Two: That this ordinance shall be in full force and effect, and shall be controlling, upon its passage and approval.

Section Three: That all ordinances or parts of ordinances thereof in conflict herewith are hereby repealed to the extent of any such conflict.

Section Four: That any Section or provision of this ordinance that is construed to be invalid or void shall not affect the remaining Sections or provisions which shall remain in full force and effect thereafter.

PASSED by the City Council of the City of Aurora, Illinois, on _July 27, 1993_ .

AYES  9  NAYES  0

APPROVED AND SIGNED by the Mayor of the City of Aurora, Illinois, on _July 27, 1993_ .

_____
Mayor

ATTEST:

_Cheryl M. Vanhoff_
City Clerk

City of Aurora Law Department
44 East Downer Place
Aurora, Illinois 60507-2067
(708) 844-3614

3600 THAYER COURT, SUITE 100  AURORA, ILLINOIS 60504-7202

A Subsidiary of CC Industries, Inc.,
A Henry Crown Company

708-851-5490

RECD JUL 2 6 1993
MAYOR'S OFFICE
AURORA, ILLINOIS

July 23, 1993

The Honorable David Pierce, Mayor
City of Aurora
44 East Downer Place
Aurora, Illinois 60507

RE:  Temporary Extension of Aurora Venture Annexation Agreement

Dear Mayor Pierce:

As you know, representatives of Aurora Venture and the City have
been meeting for a number of months concerning the continued
development in coming years of Region II of Fox Valley.  As a
result of those meetings, Aurora Venture has submitted to the City
a draft agreement amending and extending its Principal Annexation
Agreement and Plan Description which were originally dated
July 27, 1973 and which expire August 1, 1993.

To enable both the City and Aurora Venture to completely and fully
consider all the matters before them, and to thereafter conduct all
appropriate actions and hearings related to the proposed changes,
Aurora Venture is requesting that the City adopt, on or before
August 1, 1993, an interim resolution extending, without
modification, Aurora Venture's currently in-force Principal
Annexation Agreement and Plan Description through December 31,
1993.

Please contact me if you have any questions.  Thank you for your
consideration in this matter.

Sincerely,

AURORA VENTURE

Marvin L. Bailey
Vice President & General Manager

MLB/db
cc:  William Spaeth, Director of Planning

ORIGINAL

WKS/
11/23/93

PA400D14/TXT5/PLAN1

PETITIONER:

CITY OF AURORA, ILLINOIS
ORDINANCE NO. *O93-124*
DATE OF PASSAGE *December 7, 1993*

AN ORDINANCE APPROVING A PLAN DESCRIPTION MODIFICATION
FOR CERTAIN PORTIONS OF FOX VALLEY EAST REGION II

WHEREAS, the City of Aurora has a population of more than 25,000 persons and is, therefore, a home rule unit under Subsection (a) of Section 6 of Article VII of the Illinois Constitution of 1970; and

WHEREAS, subject to said Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs for the protection of the public health, safety, morals and welfare; and

WHEREAS, a Plan Description Modification in the form of Exhibit "A", attached hereto and included herein by reference as if fully set forth, has been duly submitted by Aurora Venture, an Illinois limited partnership, to the Corporate Authorities of the City of Aurora for review with a certain Amendment and Restatement of the Principal Annexation Agreement dated December 7, 1993, (said 'Agreement') for the property described therein; and

WHEREAS, all public hearings and other action required to be held or taken prior to the adoption and execution of said Agreement in order to make the same effective have been held or taken pursuant to notice as required by law and in accordance with all requirements of law; and

WHEREAS, a Plan Description Modification for the property described in said Agreement was duly referred by the Aurora City Clerk to the Aurora City Council, who, in turn, referred said document to the Aurora Planning Commission for study and recommendation, and to the Aurora City Council for final decision; and

WHEREAS, Exhibit "A", attached hereto and included herein by reference as if fully set forth, in its present form, has been on file with the City Clerk of the City of Aurora for public inspection for at least one week; and

WHEREAS, the City Council, after due investigation and consideration, has determined that the continuation of the Fox Valley East Planned Development District and the approval of the Plan Description Modification for the property described therein will promote the sound planning and development of the City, and therefore serve the best interests of the City of Aurora;

NOW, THEREFORE, BE IT ORDAINED by the City council of the City of Aurora, Kane and DuPage Counties, Illinois, as follows:

Section One: That said City Council finds as fact all of the preamble recitals of this Ordinance.

Section Two: That the Plan Description Modification in the form of Exhibit "A" attached hereto and included herein by reference as if fully set forth, and incorporated in and made a part of this Ordinance, is hereby approved.

Section Three: That all modifications and exceptions under the Aurora Zoning Ordinance (AZO) and all modifications and exceptions from the Aurora Subdivision Control Ordinance (ASCO), as set forth in the Plan Description Modification, are hereby granted and approved.

Section Four: That this Ordinance shall take effect and be in full force and effect upon and after its passage and approval.

Section Five: That all ordinances or part of ordinances in conflict herewith are hereby repealed insofar as any conflict exists.

Section Six: That any section, phrase or paragraph of this ordinance that is construed to be invalid, void or unconstitutional shall not affect the remaining sections, phrases or paragraphs of this ordinance which shall remain in full force and effect.

PRESENTED to the City Council of the City of Aurora, Illinois on

_December 7, 1993_ .

PASSED AND APPROVED by the City council of the City of Aurora, on _December 7, 1993_ .

AYES _10_      NAYS _0_      NOT VOTING _0_

SIGNED by the Mayor of the City of Aurora, Illinois, on

_December 7, 1993_ .

_[signature]_
Mayor David L. Pierce

ATTEST:

_Cheryl M. Vonhoff_
City Clerk Cheryl Vonhoff

This instrument prepared by:
Aurora Planning Division
44 E. Downer Place
Aurora, Illinois  60507

Case File Number: FVRII-93.400-Pa/R

EXHIBIT "A"

**ORIGINAL**

for PD-185

## Plan Description Modification

This Plan Description Modification (the "Modification") consists of the following Parts:

Part One. Plan Description Modification:

    I.   General description.

    II.  Permitted Uses and Percentage Limitations of Land Uses.

    III. Zoning Standards and Residential Density.

    IV.  Modifications and exceptions from the Subdivision Control Ordinance and other City Ordinances.

    V.   General provisions.

Part Two. Legal descriptions.

    I.   The Region.

    II.  Burlington Properties.

Part Three. The following maps and plans:

    I.   Map showing the boundaries of the Region.

    II.  Map showing the location of the Business Areas to which this Modification applies.

    III. Concept Plan for Burlington Properties Residential Areas

### Plan Description Modification

#### Part One

#### Section I

#### General Description

Pursuant to that certain Principal Annexation Agreement dated July 27, 1973, as amended (the "Principal Agreement"), the property initially included within the Fox Valley East Planned Development District (the "District"), was annexed to the City and so zoned on August 1, 1973.  The property now within the District has been subdivided and developed in accordance with the provisions of the Fox Valley East Planned Development District Plan Description which was attached as Exhibit "A" to the Principal Agreement (the "Plan Description") which provisions include modifications from certain City ordinances.  The City and the developer (the "Developer") of Region II of the District (as such Region is defined in the Principal Agreement) have agreed to amend, restate, extend and update the Principal Agreement with respect to the property within Region II and certain other parcels in the District (the "Region") and have agreed that the future development of the Region and the obligations owed by the Developer to the City and by the City to the Developer and the Region shall be governed by and subject to the terms and provisions of an Amendment and Restatement of the Principal Annexation Agreement dated as of December 7, 1993 (the "Agreement") which amends, restates, extends, updates, supersedes and replaces the Principal Agreement, and, where applicable, by

-2-

the Plan Description and by this Modification.  All terms defined
in the Agreement when used in this Modification shall have the
same meaning when used herein unless another definition is
expressly provided for herein.  The Agreement provides that,
except as otherwise specified therein, all portions of the
Region, which heretofore have been Preliminary Planned and
Preliminary Platted or Final Planned and Final Platted shall be
developed solely in accordance with the provisions of the Plan
Description and that all of the design standard modifications and
exceptions from the Zoning Ordinance and from the Subdivision
Control Ordinance set forth in Section IV of Part One of the Plan
Description shall continue to apply to and remain in force and
effect in such portions of the Region subject to the City's right
to modify the Plan Description with respect to portions of the
Region heretofore Final Planned and Final Platted as set forth in
Paragraph 4 of Section II of the Agreement.

The Agreement further provides that the provisions of this
Modification shall apply solely to:  those portions of the
Burlington Properties which are designated on the 1993 Plan as
"Residential Areas" and those portions of the Region which are
designated on the 1993 Plan as "Business Areas" and not already
Final Planned and Final Platted.  Those portions of the
Burlington Properties which are shown on the 1993 Plan as
"Manufacturing Areas" shall be developed solely in accordance
with the provisions of the Plan Description except that storm
water retention and detention facilities within those
"Manufacturing Areas" shall be constructed solely in accordance

with the provisions of Paragraph (1) of Section V of Part One of this Modification.  For purposes of determining and calculating the percentage limitations specified in Section II of Part One of this Modification, all of the property within the Region shall be taken into account.

<u>Plan Description Modification</u>

<u>Part One</u>

<u>Section II</u>

<u>Permitted Uses and</u>

<u>Percentage Limitation of Land Uses</u>

1.    Only the uses that are permitted uses on December 7, 1993 or which subsequently become permitted uses in a B-B Business Boulevard District of the Zoning Ordinance shall be permitted uses in the Business Areas of the Region to which this Modification applies, e.g. those Business Areas of the Region which have not yet been Final Planned and Final Platted; except that in the "Business Area" located at the southeast corner of the intersection of Montgomery Road and the Waubonsie Creek, only the uses that are permitted uses on December 7, 1993 or subsequently become permitted uses in an O-Office District of the Zoning Ordinance shall be the permitted uses in that "Business Area".

In the "Business Areas" located at:  the northeast corner of North Aurora Road and Relocated Eola Road; the southwest corner of East New York Street and Eola Road; and the southwest corner of Ridge Avenue and Route 34/Ogden Avenue, the development of a fast food restaurant thereon with a drive-up facility will only be considered as a "special use," if any part of the applicable restaurant building is to be located within 250 feet or less of a residential property line.

-5-

2.    The only uses that are permitted uses in "Residential Areas" of the Burlington Properties, as designated on the 1993 Plan, falling within Areas 1, 2 and 3 as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be the permitted uses for an R-1 District in the Zoning Ordinance on December 7, 1993.

3.    The only uses that are permitted uses in Area 4, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be:  either 95 single family lots or 248 townhouse units.

4.    The percentage of the land in the Region which may be devoted to Business Areas shall be a minimum of five percent and a maximum of ten percent.

5.    The percentage of the land in the Region which may be devoted to Manufacturing Areas shall be minimum of five percent and a maximum of ten percent.

6.    The percentage of the land in the Region which may be devoted to Residential Areas shall be a minimum of sixty percent and a maximum of seventy percent.

7.    Determination of Percentage Limitations.

The percentage limitations provided for in Subsections 4, 5 and 6 of this Section II shall be applied to the land area of the Region after deducting from such land area all land devoted to or reserved or dedicated for (a) above ground public utility buildings and structures required to service the Region and (b) rights-of-way for public streets, highways and alleys.  Land area

devoted to or reserved or dedicated for public and private open space, parks and recreation areas; schools; public building sites; and public parkways, walkways and drainage courses shall be included in the land area used for Open Space. In determining the percentage of land devoted to each land use Area, land devoted to parking and parking facilities shall be included.

### Plan Description Modification

#### Part One

#### Section III

#### Zoning Standards and Residential Density

The standards set forth in this Section III shall be applicable in lieu of comparable or similar standards or requirements of the Zoning Ordinance, and all standards and requirements of the Zoning Ordinance inconsistent with the standards set forth herein shall be inapplicable. Any uncertainty between the applicability of a standard or requirement of the Zoning Ordinance and the applicability of a standard set forth in this Modification shall be resolved in favor of the standard set forth herein.

1.    The standards applicable from time to time to lands in B-B Business Boulevard Districts shall apply in such "Business Areas" of the Region (as designated on the 1993 Plan) not yet Final Planned and Final Platted, as depicted on Section II of Part Three of this Modification.

2.    The standards applicable in "Residential Areas" of the Burlington Properties (as designated on the 1993 Plan) falling within Areas 1, 2 and 3, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be the standards for an R-1 District in the Zoning Ordinance on December 7, 1993, but with the following modifications:

a.    the front yard set back shall be 25 feet instead of 30 feet; and

-8-

b.    up to 10% of the subdivided lots can contain less than 8000 square feet but not less than 7750 square feet.

3.    Area 4, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be developed in accordance with the standards of the Plan Description.  Single family lots in Area 4 shall contain a minimum of 6,000 square feet.

4.    <u>Average Residential Density</u>.  In Residential and Business Areas, the average residential density shall not exceed five dwelling units per acre.  In computing such average density, all land in the Region devoted to Residential Areas and all land devoted to Open Space shall be included in the number of acres which is to be divided into the total dwelling units in the Region to produce average density in dwelling units per acre; provided, that there shall be deducted from such number of acres into which the dwelling units are to be divided all land devoted to or reserved or dedicated for above ground public utility buildings and structures required to service the Region.

## Plan Description Modification

### Part One

### Section IV

### Modifications and Exceptions from the

### Subdivision Control Ordinance and Other City Ordinances

1.    Subsection (d)(3) of Section 43-53 of the City's Subdivision Control Ordinance shall be modified to read as follows:

> "(3) Approval of the preliminary plat shall be effective until the first to occur of: the expiration of seven years period following such approval or December 7, 2000 unless upon application of the record owner, the City Council grants an extension.  The application for said extension shall not require an additional filing fee, or the submittal of additional copies of the plat of subdivision."

2.    Subsection (c) of Section 43-54 thereof shall be modified to read as follows:

> "(c)  A final plat for all or a portion of the area covered by any approved preliminary plat, prepared as specified in Article II, shall be submitted to the City Clerk for approval prior to the expiration of such approved preliminary plat unless, upon application of the record owner, the City Council grants an extension. Such an application shall not require an additional fee or filing of additional copies of the plat."

-10-

3.    Section 43-56 thereof shall govern and apply to the
dedication of park land and school sites, or payments in lieu
thereof, as a result of subdividing those portions of the
Burlington Properties designated on the 1993 Plan as "Residential
Areas" but with the following modifications:

a.    Park land sites required to be dedicated which
adjoin elementary school sites to be dedicated shall contain
a minimum of 4 acres of land excluding any retention and
detention facilities thereupon other than land needed for
emergency overland routing of water.

b.    The purchase price for any additional land
reserved for subsequent purchase by the City or other public
body designated by the City under Section 43-56(7) shall be
the "fair market value" for such land based on the land use
designation for such land on the then current Updated Land
Use Plan for the Region approved from time to time by the
City, as determined by an appraisal obtained by the City or
such other public body and presented to Developer for
acceptance within 45 days after the additional lands are
reserved by the approval of the Final Plat (the "Public
Appraisal").  In the event Developer does not accept the
value set forth in the Public Appraisal, Developer shall,
within 45 days after receipt of the Public Appraisal, obtain
a second appraisal and present such second appraisal to the
City or such other public body (the "Developer's
Appraisal").  If the difference between the values is less
than 10%, then the values in the Public Appraisal and in the

-11-

Developer's Appraisal shall be averaged and the averaged value shall be binding on all parties.  If the difference between the values is greater than 10%, the appraisers preparing the first two appraisals shall, within 15 days, select a third appraiser who shall prepare a third appraisal within 45 days after selection (the "Third Appraisal").  The value set forth in the Third Appraisal shall be binding on all parties and shall be the purchase price for the purchase of additional lands reserved for purchase.

4.    <u>Applicability of City Design Standards</u>.

    a.    Except to the extent specified below, the portions of the Burlington Properties designated on the 1993 Plan as "Residential Areas" shall be developed in accordance with all applicable then current city design standards.  The following design standard modifications shall apply to said "Residential Areas" in lieu of applicable then current city design standards:

        i.    <u>Roadways</u>

           (x)    <u>Cross Sections</u>:

               Residential Streets (except cul-de-sac's):  31 foot back to back

               Cul-de-sac's:  27 foot back to back

           (y)    <u>Curb Standards</u>:

               Residential Streets (including cul-de-sacs) shall be designed with roll curb utilizing the same detail as that used in the portions of the Region known as Oakhurst and Stonebridge.

(z)    <u>Pavement Thickness</u>:

The applicable city design standards
shall be utilized with Lime
Stabilization of the sub-base allowed
instead of Geo-textile fabric.

ii.    <u>Stormwater Management Requirements</u>:

Storm water retention and detention
facilities shall be constructed in accordance
with the requirements specified in Section V
of Part One of this Modification.

iii.    <u>Residential Inspection of Public
Improvements</u>:

Developer will provide residential inspection
in accordance with the provisions of the Plan
Description in the same manner as has been
provided in the portions of the Region known
as Oakhurst and Stonebridge.

b.    No oversize off-premises commercial signs under

City Code Section 12-17 (1901.4) shall be permitted within

those portions of the Region to which this Modification

applies.

-13-

## Plan Description Modification

### Part One

### Section V

### General Provisions

1.   Storm Water Retention and Detention Requirements.

a.   Storm water retention and detention facilities within all portions of the Burlington Properties shall be constructed in accordance with the following requirements. The amount of storm water retention to be provided shall be computed by using the Soil Conservation Service TR-20 method and a weighted runoff curve number established for the combined effects of Hydrologic Soil Group B and surface cover.  Facilities shall be of adequate size to accommodate runoff from rainfall intensities of 100 year frequency using either a SCS Type II or Huff Distribution.  The impoundment level corresponding to these rainfall intensities will be the basis of design for the outlet facility to have discharge capacity equivalent to 0.15 cubic feet per second ("cfs") per acre.  In addition to providing the impoundment level calculated above, at least 24 inches of freeboard will be provided to accommodate the additional storage required by using the rainfall intensities set forth in Illinois State Water Survey Bulletin 70.  Storm sewers shall be designed using a 5 year storm event.

b.   The criteria and standards set forth in Subparagraph (a) above are intended to supersede and modify

-14-

all City ordinances and regulations which are contrary to or inconsistent with the matters set forth in the foregoing paragraph. The criteria and standards are intended to supersede and replace all provisions in the Principal Agreement, Plan Description and that certain letter agreement between Developer and the City dated July 31, 1984 (the "1984 Agreement") which cover or address the matter of storm water retention with respect to the Burlington Properties.

      c. Storm water retention and detention facilities within the portions of the Region designated on the 1993 Plan as "Business Areas" to which this Modification applies shall be constructed in accordance with the provisions of the Plan Description as modified and supplemented by the 1984 Agreement.

2. Any change in the above described storm water retention and detention requirements described in Paragraph 1 above which receives the approval of the City Engineer shall be deemed a reasonable variation for the purpose of clause (a) of Subsection 14.7-6 of the Zoning Ordinance.

3. <u>Time Limitations for Submission of Preliminary and Final Plans</u>.

Preliminary Plans shall be submitted for approval prior to December 7, 2000. Final Plans for all portions of the Region shall be submitted for approval prior to December 7, 2003.

-15-

4. <u>Execution by City and Developer.</u>

This Modification shall be made a part of the Agreement, which restates and amends the Principal Agreement.

5. <u>Changes in Plan Description.</u>

After this Modification is approved by the City Council, in accordance with Section V, Subsection N of the Plan Description, ten (10) complete copies of this Modification plus all accompanying materials and data shall be deposited with the Division of City Planning.

6. <u>Developer.</u>

As used in this Modification and in the Plan Description the terms "Developer" and "Developers" of the Region shall mean Aurora Venture.  The Developer shall have the right to assign some or all of its rights, subject to some or all of the duties and obligations, which the Developer may have under the Modification.  The Developer, or its assignee, shall have the right to appoint an agent or representative to act for it with respect to the Modification.

*PD-185*

PD112293.185

## R E C O M M E N D A T I O N

TO:    THE COMMITTEE OF THE WHOLE

FROM:  THE PLANNING AND DEVELOPMENT COMMITTEE

The Planning and Development Committee at the meeting
of Monday, November 22, 1993  Recommended  Approval
of the Resolution Approving a Plan Description Modification for
Certain Portions of Fox Valley East Region II as amended.

The vote:  3 - 0

                    Submitted by

                    _____
                    Alderman Jim Meisch,  Chairman

                    _____
                    Alderman Mike Saville

                    _____
                    Alderman Judy Morrison

                    _____
                    Alderman Bob Fleege  , Alternate

Dated this    23rd          day of  November         1993.

**Dean Frieders**

| | |
|---|---|
| **From:** | Michelle Figuerola [villageclerkpg@yahoo.com] |
| **Sent:** | Thursday, March 27, 2008 11:04 AM |
| **To:** | Dean Frieders |
| **Cc:** | Wyman Carey |
| **Subject:** | Playground Equipment |
| **Attachments:** | 1318809345-REC AGREEMENT.doc |

I have attached copy of the rec agreement, in case you don't have yours.

Paragraph 15 & 16 seem to say that we are not responsible...???


Michelle Figuerola, Clerk
Village of Pingree Grove
14N042 Reinking Rd.
Pingree Grove, Illinois 60140
(847) 464-5533 phone
(847) 464-4036 fax
villlageclerkpg@yahoo.com
website: www.villageofpingreegrove.org

_____

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

1

**Dean Frieders**

| | |
|---|---|
| **From:** | Michelle Figuerola [villageclerkpg@yahoo.com] |
| **Sent:** | Thursday, March 27, 2008 10:52 AM |
| **To:** | Wyman Carey; Dean Frieders |
| **Subject:** | Fwd: RE: FW: Emailing: Broken Playground Equip. 001.jpg, Broken Playground Equip. 002.jpg, Broken Playground Equip. 003.jpg, Broken Playground Equip. 004.jpg, Broken Playground Equip. 005.jpg |

This is Ken's email regarding the park...

*Kenneth W Marabella <KWMarabella@drhorton.com>* wrote:
Subject: RE: FW: Emailing: Broken Playground Equip. 001.jpg, Broken Playground Equip. 002.jpg, Broken Playground Equip. 003.jpg, Broken Playground Equip. 004.jpg, Broken Playground Equip. 005.jpg
Date: Wed, 26 Mar 2008 16:35:54 -0500
From: "Kenneth W Marabella" <KWMarabella@drhorton.com>
To: "Michelle Figuerola" <villageclerkpg@yahoo.com>,
"Wyman Carey" <wyman_carey@hotmail.com>,
"Greg Marston" <egmarston@yahoo.com>
CC: "Jeremy Linn" <jlin@lintechengineering.com>

Hi Michelle, generally speaking, if the equipment is in a public park, they are the Village's responsibility.  If they are in one of our Neighborhood Parks, they belong to the HOA.  I can't tell from the pictures.  Perhaps you can ask Chandra.  KEN

---

**From:** Michelle Figuerola [mailto:villageclerkpg@yahoo.com]
**Sent:** Wednesday, March 26, 2008 3:07 PM
**To:** Wyman Carey; Greg Marston
**Cc:** Kenneth W Marabella; Jeremy Linn
**Subject:** Fwd: FW: Emailing: Broken Playground Equip. 001.jpg, Broken Playground Equip. 002.jpg, Broken Playground Equip. 003.jpg, Broken Playground Equip. 004.jpg, Broken Playground Equip. 005.jpg

Hi Everyone:

I am sorry..but who takes care of fixing the playground equipment?

Michelle :)

Note: forwarded message attached.

Michelle Figuerola, Clerk
Village of Pingree Grove
14N042 Reinking Rd.
Pingree Grove, Illinois 60140
(847) 464-5533 phone
(847) 464-4036 fax
villlageclerkpg@yahoo.com
website: www.villageofpingreegrove.org

---

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

Michelle Figuerola, Clerk
Village of Pingree Grove
14N042 Reinking Rd.
Pingree Grove, Illinois 60140
(847) 464-5533 phone
(847) 464-4036 fax
villlageclerkpg@yahoo.com
website: www.villageofpingreegrove.org

---

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

**AGREEMENT**
**FOR RECREATIONAL PROGRAMS BETWEEN**
**THE VILLAGE OF PINGREE GROVE AND THE NORTHERN KANE EDUCATIONAL CORP.**

This agreement, entered into this *19* day of November, 2007 by and between the Village of Pingree Grove ("Village") and the Northern Kane Educational Corp. ("NKEC")

       **Whereas,** the Village and NKEC seek to enhance the offerings to Village residents as to park and recreation program options and seek to enhance the use of Village facilities; and,

       **Whereas,** The NKEC has agreed to regularly conduct programs for the public benefit such as seasonal events and athletic programs including soccer, baseball, skating and others which involve the facilities of the Village; and,

       **Whereas,** it is the desire of the NKEC and the Village to enter into an agreement to coordinate use and responsibilities for said programs; and,

       **Whereas,** it is the goal of this agreement to provide for the combined use of Village facilities that can ensure the best tax dollar usage for all residents of the municipality; and,

       **Now, therefore,** in consideration of the mutual agreements, promises, and understandings of the parties, the parties agree as follows:

1.    **Term of Agreement:** This agreement shall remain in full force and effect until August 31, 2011or until canceled in accordance with the provisions of this agreement or suspended in accordance with paragraph 3 of this agreement. This agreement shall be automatically renewed for successive one year periods unless a notice of cancellation is sent sixty days before the expiration of the initial term or any renewal. The agreement, and extensions thereof, may also be canceled by the Village upon sixty (60) days notice for cause by sending, via certified mail to the individuals at the addresses specified in the notice provisions of this agreement, a notice signed by the President of the Village.

2.    **Properties Covered:** This agreement shall cover all Pingree Grove parks now existing, or later acquired.

3.    **Scheduling:** Notwithstanding the right of the Village to schedule the use of any park at any time when it does not create a conflict of use, NKEC shall prepare and publish a schedule of use which shall serve as the means of achieving efficient use of all facilities. The schedule shall include the use of facilities by Cambridge Lakes Charter School. The schedule shall be reviewed with the designated VILLAGE representative no less than quarterly during the months of July, October, January & April, two months in advance of the quarter in which the program shall be operational. The scheduling process shall include the determination of programs and fees.

4.    **Working Capital:** NKEC shall provide working capital to initiate and administer the plans and programs hereunder. Any capital investment approved by the Village prior to its expenditure in excess of $2,000.00 (cash or financing), shall be considered a capital improvement cost. In the event of termination, any unrecovered working capital or capital improvement costs shall be paid by the VILLAGE to NKEC.

5.    **Fees to Village:** NKEC shall prepare a budget for the year (September 1st-August 31st) covered by this Agreement which sets forth anticipated costs, revenues and margins based on the previously determination of user fees to be charged (3 above.) Upon receipt by NKEC of revenues sufficient to recover all advanced working capital and underwritten capital expenditures during the term of this agreement, all revenues thereafter shall be divided between the Village and NKEC. The VILLAGE shall receive twenty-five percent (25%) of the marginal revenue (Revenue minus program costs and recovered working capital and capital improvement costs.) and NKEC shall receive seventy-five percent (75%). NKEC shall provide unrestricted access to the books and records of NKEC to the Village to verify all said costs and revenues upon reasonable notice the final review and approval of said Budget shall be subject to the approval of the

1

Village.

6.   **Village Rights and Responsibilities:** The Village shall allow access and permit the use of its grounds delineated in section 2 by NKEC for the programs contemplated herein. The access granted herein shall be non-exclusive and the Village and its designees shall continue have full rights of access and usage of said parks for additional purposes at the sole discretion of the Village. Should a conflict as to the use of a park arise, the parties shall make a good faith effort to resolve any such conflicts (scheduling or otherwise). The Village hereby delegates to the Village President (or his designee) the right to be the principal contact of the VILLAGE with NKEC who shall review plans, documents and inquiries needed for efficient operation and to resolve any conflicts which may arise during the operation of the program and to make the approvals required herein.

7.   **NKEC Responsibilities:** NKEC shall plan and manage all maintenance of VILLAGE park sites. The NKEC shall create, develop, organize and coordinate the programs deemed necessary to serve the residents of Pingree Grove and the surrounding area. The NKEC shall develop schedules, site layouts, field dimensions and all other requirements for the operation of the program in question, and will provide these for review in accordance with paragraph 3 above. All literature, advertising, programs and marketing shall promote the programs, and in general, always identify the program as the Pingree Grove Parks and Recreation Programs. NKEC shall be permitted to use the subtitle Managed by Northern Kane Sports and Recreation.

8.   **Hampshire Little League:** NKEC acknowledges the existence of an existing program with the Hampshire Little League about which VILLAGE officials and NKEC officials have had direct communication. NKEC, upon execution of this agreement, will enter into direct discussions with Hampshire Little League to develop a written agreement which will perpetuate the current oral understandings and agrees not to terminate said program.

9.   **Representation:** NKEC agrees to seat one person (appointed by the Village President and serving for such time as designated by, and at, the sole discretion of the Village President) as a full voting member of its Council or Board. Reciprocally, the Commissioner of NKEC shall become an ex officio member of the VILLAGE Parks & Recreation Committee.

10.  **Joint Responsibilities:** The parties will jointly develop maintenance guidelines collectively agreed upon to facilitate the programs contemplated hereunder. The plan shall be submitted, discussed and mutually agreed upon as provided above.

11.  **Notice,** Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given when received (as established by written receipt) if sent by certified mail, return receipt requested, to a party at:

     | i. | To the Village: | | Village President |
     |---|---|---|---|
     | | | (i) | Village of Pingree Grove |
     | | | (ii) | 14N042 Reinking Road |
     | | | (iii) | Pingree Grove, IL 60140 |
     | | | | |
     | ii. | To NKEC: | | Commissioner |
     | | | (i) | Northern Kane Educational Corp. |
     | | | (ii) | 900 Wester Boulevard |
     | | | (iii) | Pingree Grove, IL 60140 |

     b.   Any party, by notice in accordance with this Section, may change the address or the persons to whom notices or copies thereof shall be directed.

12.  **Partial Invalidity; Separate Covenants:** In the event that any portion of this Agreement shall be declared

2

invalid by order, decree or judgment of a court, this Agreement shall be construed as if such portion had not been inserted herein, or such provision may be "blue-pencilled," except where such construction would result in an undue hardship upon a party hereto or constitute a substantial diversion from the general intent and purpose of the parties as reflected in this Agreement.

13.   **Entire Agreement; Amendment:**  This Agreement sets forth the entire agreement between the parties with respect to all matters herein contained and supersedes all prior and contemporaneous agreements, representations and understandings of the parties, if any.  This Agreement may not be amended or modified at any time, in whole or in part, except in writing, signed by both parties.

14.   **Indemnification and Insurance (NKEC):**  NKEC agrees to indemnify and hold harmless the Village against any cause of action, loss, liability, damage, cost of expense of any nature whatsoever including, without limitation, attorney's fees and costs arising out of a breach of this agreement or arising out of injuries, including but not limited to death, damages and losses sustained by participants, spectators, volunteers or other persons involved in the Pingree Grove Parks and Recreation programs as contemplated and operated hereunder by reason of any act or omission of NKEC and/or its personnel, employees, agents, contractors or subcontractors. This indemnification shall survive any suspension or termination of this agreement. NKEC agrees to add the Village as an additional insured on all policies of insurance covering the properties and activities hereunder. The NKEC shall further require all participants under the programs contemplated hereunder to sign liability waivers to sign liability waivers in a mutually acceptable form prior to participation in all programs.

15.   **Indemnification and Insurance (Village):**  The VILLAGE agrees to indemnify and hold harmless NKEC against any cause of action, loss, liability, damage, cost of expense of any nature whatsoever including, without limitation, attorney's fees and costs arising out of a breach of this agreement or arising out of injuries, including but not limited to death, damages and losses sustained by participants, spectators, volunteers or other persons involved in the Pingree Grove Parks and Recreation programs as contemplated and operated hereunder by reason of any act or omission of the VILLAGE and/or its personnel, employees, agents, contractors or subcontractors. This indemnification shall survive any suspension or termination of this agreement. The VILLAGE agrees to add NKEC as an additional insured on all policies of insurance covering the properties and activities hereunder.  The VILLAGE shall further require all participants under programs organized and operated separately by the Village to sign liability waivers in a mutually acceptable form prior to participation in all programs.

16.   **Facility Usage and Services:**  The parties recognize the need to address the initial planning for facility usage and services.   Within 30 days after execution of this agreement, the parties Or their designated representative shall hold the first meeting under paragraph 3 above as a means of initiating the program contemplated hereunder.

*The signatures follow on the next page . . .*

3

IN WITNESS THEREOF, the parties hereto have caused the execution of their duly authorized officer this
_19_ day of November 2007.

Village of Pingree Grove,                           Northern Kane Educational Corp.

_____                            _____  1-15-08
Wyman Carey, Village President                      Executive Director/CEO      By Board Approval

_____                            _____
Michelle Figuerola, Village Clerk                   Secretary                   01.15.08


EXPRESSLY SUBJECT TO FIELD MAINTENANCE COSTS, IN BUDGET,
BEING UNDERWRITTEN BY VILLAGE OF PINGREE GROVE.

                                        LF 1-15-08
                                        01.15.08


APPROVED BY VILLAGE OF PINGREE GROVE
BOARD OF TRUSTEES JANUARY 21, 2008

_____
PRESIDENT

_____
VILLAGE CLERK

4