ORIGINAL

WKS/
11/23/93

PA400D14/TXT5/PLAN1

PETITIONER:

CITY OF AURORA, ILLINOIS
ORDINANCE NO. O93-124
DATE OF PASSAGE December 7, 1993

AN ORDINANCE  APPROVING A PLAN DESCRIPTION MODIFICATION
FOR CERTAIN PORTIONS OF FOX VALLEY EAST REGION II

WHEREAS, the City of  Aurora has a population of more than 25,000
persons and is, therefore, a home rule unit under Subsection (a) of
Section 6 of Article VII of the Illinois Constitution of 1970; and

WHEREAS, subject to said Section, a home rule unit may exercise
any power and perform any function pertaining to its government and
affairs for the protection of the public health, safety, morals and
welfare; and

WHEREAS, a Plan Description Modification in the form of Exhibit
"A", attached hereto and included herein by reference as if fully set
forth, has been duly submitted by Aurora Venture, an Illinois limited
partnership, to the Corporate Authorities of the City of Aurora for
review with a certain Amendment and Restatement of the Principal
Annexation Agreement dated December 7, 1993, (said 'Agreement') for the
property described therein; and

WHEREAS, all public hearings and other action required to be held
or taken prior to the adoption and execution of said Agreement
in order to make the same effective have been held or taken pursuant
to notice as required by law and in accordance with all
requirements of law; and

WHEREAS, a Plan Description Modification for the property described
in said Agreement was duly referred by the Aurora City Clerk to the
Aurora City Council, who, in turn, referred said document to the Aurora
Planning Commission for study and recommendation, and to the Aurora City
Council for final decision; and

WHEREAS, Exhibit "A", attached hereto and included herein by
reference as if fully set forth, in its present form, has been on file
with the City Clerk of the City of Aurora for public inspection for at
least one week; and

WHEREAS, the City Council, after due investigation and
consideration, has determined that the continuation of the Fox Valley
East Planned Development District and the approval of the Plan
Description Modification for the property described therein will
promote the sound planning and development of the City, and therefore
serve the best interests of the City of Aurora;

NOW, THEREFORE, BE IT ORDAINED by the City council of the City of Aurora, Kane and DuPage Counties, Illinois, as follows:

Section One: That said City Council finds as fact all of the preamble recitals of this Ordinance.

Section Two: That the Plan Description Modification in the form of Exhibit "A" attached hereto and included herein by reference as if fully set forth, and incorporated in and made a part of this Ordinance, is hereby approved.

Section Three: That all modifications and exceptions under the Aurora Zoning Ordinance (AZO) and all modifications and exceptions from the Aurora Subdivision Control Ordinance (ASCO), as set forth in the Plan Description Modification, are hereby granted and approved.

Section Four: That this Ordinance shall take effect and be in full force and effect upon and after its passage and approval.

Section Five: That all ordinances or part of ordinances in conflict herewith are hereby repealed insofar as any conflict exists.

Section Six: That any section, phrase or paragraph of this ordinance that is construed to be invalid, void or unconstitutional shall not affect the remaining sections, phrases or paragraphs of this ordinance which shall remain in full force and effect.

PRESENTED to the City Council of the City of Aurora, Illinois on

December 7, 1993 .

PASSED AND APPROVED by the City council of the City of Aurora,

on December 7, 1993 .

AYES 10          NAYS 0          NOT VOTING 0

SIGNED by the Mayor of the City of Aurora, Illinois, on

December 7, 1993 .

_____
Mayor David L. Pierce

ATTEST:

_____
City Clerk Cheryl Vonhoff

This instrument prepared by:
Aurora Planning Division
44 E. Downer Place
Aurora, Illinois  60507

Case File Number: FVRII-93.400-Pa/R

ORIGINAL
for PD-185

**EXHIBIT "A"**

**Plan Description Modification**

This Plan Description Modification (the "Modification") consists of the following Parts:

Part One. Plan Description Modification:
    I.    General description.
    II.   Permitted Uses and Percentage Limitations of Land
         Uses.
    III.  Zoning Standards and Residential Density.
    IV.   Modifications and exceptions from the Subdivision
         Control Ordinance and other City Ordinances.
    V.    General provisions.

Part Two. Legal descriptions.
    I.    The Region.
    II.   Burlington Properties.

Part Three. The following maps and plans:
    I.    Map showing the boundaries of the Region.
    II.   Map showing the location of the Business Areas to
         which this Modification applies.
    III.  Concept Plan for Burlington Properties Residential
         Areas

G:\USERS\VMH\04400\101\PLANMOD.R11  11/29/93 15:03

<u>Plan Description Modification</u>

<u>Part One</u>

<u>Section I</u>

<u>General Description</u>

Pursuant to that certain Principal Annexation Agreement
dated July 27, 1973, as amended (the "Principal Agreement"), the
property initially included within the Fox Valley East Planned
Development District (the "District"), was annexed to the City
and so zoned on August 1, 1973.  The property now within the
District has been subdivided and developed in accordance with the
provisions of the Fox Valley East Planned Development District
Plan Description which was attached as Exhibit "A" to the
Principal Agreement (the "Plan Description") which provisions
include modifications from certain City ordinances.  The City and
the developer (the "Developer") of Region II of the District (as
such Region is defined in the Principal Agreement) have agreed to
amend, restate, extend and update the Principal Agreement with
respect to the property within Region II and certain other
parcels in the District (the "Region") and have agreed that the
future development of the Region and the obligations owed by the
Developer to the City and by the City to the Developer and the
Region shall be governed by and subject to the terms and
provisions of an Amendment and Restatement of the Principal
Annexation Agreement dated as of December 7, 1993 (the
"Agreement") which amends, restates, extends, updates, supersedes
and replaces the Principal Agreement, and, where applicable, by

-2-

the Plan Description and by this Modification. All terms defined in the Agreement when used in this Modification shall have the same meaning when used herein unless another definition is expressly provided for herein. The Agreement provides that, except as otherwise specified therein, all portions of the Region, which heretofore have been Preliminary Planned and Preliminary Platted or Final Planned and Final Platted shall be developed solely in accordance with the provisions of the Plan Description and that all of the design standard modifications and exceptions from the Zoning Ordinance and from the Subdivision Control Ordinance set forth in Section IV of Part One of the Plan Description shall continue to apply to and remain in force and effect in such portions of the Region subject to the City's right to modify the Plan Description with respect to portions of the Region heretofore Final Planned and Final Platted as set forth in Paragraph 4 of Section II of the Agreement.

The Agreement further provides that the provisions of this Modification shall apply solely to: those portions of the Burlington Properties which are designated on the 1993 Plan as "Residential Areas" and those portions of the Region which are designated on the 1993 Plan as "Business Areas" and not already Final Planned and Final Platted. Those portions of the Burlington Properties which are shown on the 1993 Plan as "Manufacturing Areas" shall be developed solely in accordance with the provisions of the Plan Description except that storm water retention and detention facilities within those "Manufacturing Areas" shall be constructed solely in accordance

-3-

with the provisions of Paragraph (1) of Section V of Part One of
this Modification.   For purposes of determining and calculating
the percentage limitations specified in Section II of Part One of
this Modification, all of the property within the Region shall be
taken into account.

Plan Description Modification

Part One

Section II

Permitted Uses and

Percentage Limitation of Land Uses

1.     Only the uses that are permitted uses on December 7, 1993 or which subsequently become permitted uses in a B-B Business Boulevard District of the Zoning Ordinance shall be permitted uses in the Business Areas of the Region to which this Modification applies, e.g. those Business Areas of the Region which have not yet been Final Planned and Final Platted; except that in the "Business Area" located at the southeast corner of the intersection of Montgomery Road and the Waubonsie Creek, only the uses that are permitted uses on December 7, 1993 or subsequently become permitted uses in an O-Office District of the Zoning Ordinance shall be the permitted uses in that "Business Area".

In the "Business Areas" located at:  the northeast corner of North Aurora Road and Relocated Eola Road; the southwest corner of East New York Street and Eola Road; and the southwest corner of Ridge Avenue and Route 34/Ogden Avenue, the development of a fast food restaurant thereon with a drive-up facility will only be considered as a "special use," if any part of the applicable restaurant building is to be located within 250 feet or less of a residential property line.

-5-

2.    The only uses that are permitted uses in "Residential Areas" of the Burlington Properties, as designated on the 1993 Plan, falling within Areas 1, 2 and 3 as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be the permitted uses for an R-1 District in the Zoning Ordinance on December 7, 1993.

3.    The only uses that are permitted uses in Area 4, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be:  either 95 single family lots or 248 townhouse units.

4.    The percentage of the land in the Region which may be devoted to Business Areas shall be a minimum of five percent and a maximum of ten percent.

5.    The percentage of the land in the Region which may be devoted to Manufacturing Areas shall be minimum of five percent and a maximum of ten percent.

6.    The percentage of the land in the Region which may be devoted to Residential Areas shall be a minimum of sixty percent and a maximum of seventy percent.

7.    Determination of Percentage Limitations.

The percentage limitations provided for in Subsections 4, 5 and 6 of this Section II shall be applied to the land area of the Region after deducting from such land area all land devoted to or reserved or dedicated for (a) above ground public utility buildings and structures required to service the Region and (b) rights-of-way for public streets, highways and alleys.  Land area

-6-

devoted to or reserved or dedicated for public and private open space, parks and recreation areas; schools; public building sites; and public parkways, walkways and drainage courses shall be included in the land area used for Open Space.  In determining the percentage of land devoted to each land use Area, land devoted to parking and parking facilities shall be included.

<u>Plan Description Modification</u>

<u>Part One</u>

<u>Section III</u>

<u>Zoning Standards and Residential Density</u>

The standards set forth in this Section III shall be applicable in lieu of comparable or similar standards or requirements of the Zoning Ordinance, and all standards and requirements of the Zoning Ordinance inconsistent with the standards set forth herein shall be inapplicable.  Any uncertainty between the applicability of a standard or requirement of the Zoning Ordinance and the applicability of a standard set forth in this Modification shall be resolved in favor of the standard set forth herein.

1.    The standards applicable from time to time to lands in B-B Business Boulevard Districts shall apply in such "Business Areas" of the Region (as designated on the 1993 Plan) not yet Final Planned and Final Platted, as depicted on Section II of Part Three of this Modification.

2.    The standards applicable in "Residential Areas" of the Burlington Properties (as designated on the 1993 Plan) falling within Areas 1, 2 and 3, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be the standards for an R-1 District in the Zoning Ordinance on December 7, 1993, but with the following modifications:

a.    the front yard set back shall be 25 feet instead of 30 feet; and

-8-

b.    up to 10% of the subdivided lots can contain less than 8000 square feet but not less than 7750 square feet.

3.    Area 4, as depicted on the Concept Plan for Burlington Properties Residential Areas (Section III of Part Three of this Modification) shall be developed in accordance with the standards of the Plan Description.  Single family lots in Area 4 shall contain a minimum of 6,000 square feet.

4.    <u>Average Residential Density</u>.  In Residential and Business Areas, the average residential density shall not exceed five dwelling units per acre.  In computing such average density, all land in the Region devoted to Residential Areas and all land devoted to Open Space shall be included in the number of acres which is to be divided into the total dwelling units in the Region to produce average density in dwelling units per acre; provided, that there shall be deducted from such number of acres into which the dwelling units are to be divided all land devoted to or reserved or dedicated for above ground public utility buildings and structures required to service the Region.

-9-

Plan Description Modification

Part One

Section IV

Modifications and Exceptions from the

Subdivision Control Ordinance and Other City Ordinances

1.    Subsection (d)(3) of Section 43-53 of the City's Subdivision Control Ordinance shall be modified to read as follows:

"(3) Approval of the preliminary plat shall be effective until the first to occur of: the expiration of seven years period following such approval or December 7, 2000 unless upon application of the record owner, the City Council grants an extension.  The application for said extension shall not require an additional filing fee, or the submittal of additional copies of the plat of subdivision."

2.    Subsection (c) of Section 43-54 thereof shall be modified to read as follows:

"(c)  A final plat for all or a portion of the area covered by any approved preliminary plat, prepared as specified in Article II, shall be submitted to the City Clerk for approval prior to the expiration of such approved preliminary plat unless, upon application of the record owner, the City Council grants an extension. Such an application shall not require an additional fee or filing of additional copies of the plat."

-10-

3.   Section 43-56 thereof shall govern and apply to the dedication of park land and school sites, or payments in lieu thereof, as a result of subdividing those portions of the Burlington Properties designated on the 1993 Plan as "Residential Areas" but with the following modifications:

a.   Park land sites required to be dedicated which adjoin elementary school sites to be dedicated shall contain a minimum of 4 acres of land excluding any retention and detention facilities thereupon other than land needed for emergency overland routing of water.

b.   The purchase price for any additional land reserved for subsequent purchase by the City or other public body designated by the City under Section 43-56(7) shall be the "fair market value" for such land based on the land use designation for such land on the then current Updated Land Use Plan for the Region approved from time to time by the City, as determined by an appraisal obtained by the City or such other public body and presented to Developer for acceptance within 45 days after the additional lands are reserved by the approval of the Final Plat (the "Public Appraisal").  In the event Developer does not accept the value set forth in the Public Appraisal, Developer shall, within 45 days after receipt of the Public Appraisal, obtain a second appraisal and present such second appraisal to the City or such other public body (the "Developer's Appraisal").  If the difference between the values is less than 10%, then the values in the Public Appraisal and in the

~11~

Developer's Appraisal shall be averaged and the averaged value shall be binding on all parties. If the difference between the values is greater than 10%, the appraisers preparing the first two appraisals shall, within 15 days, select a third appraiser who shall prepare a third appraisal within 45 days after selection (the "Third Appraisal"). The value set forth in the Third Appraisal shall be binding on all parties and shall be the purchase price for the purchase of additional lands reserved for purchase.

4.    Applicability of City Design Standards.

    a.    Except to the extent specified below, the portions of the Burlington Properties designated on the 1993 Plan as "Residential Areas" shall be developed in accordance with all applicable then current city design standards. The following design standard modifications shall apply to said "Residential Areas" in lieu of applicable then current city design standards:

        i.    Roadways

            (x)    Cross Sections:

                Residential Streets (except cul-de-sac's): 31 foot back to back

                Cul-de-sac's: 27 foot back to back

            (y)    Curb Standards:

                Residential Streets (including cul-de-sacs) shall be designed with roll curb utilizing the same detail as that used in the portions of the Region known as Oakhurst and Stonebridge.

(z)  <u>Pavement Thickness</u>:

The applicable city design standards
shall be utilized with Lime
Stabilization of the sub-base allowed
instead of Geo-textile fabric.

ii.  <u>Stormwater Management Requirements</u>:

Storm water retention and detention
facilities shall be constructed in accordance
with the requirements specified in Section V
of Part One of this Modification.

iii. <u>Residential Inspection of Public
Improvements</u>:

Developer will provide residential inspection
in accordance with the provisions of the Plan
Description in the same manner as has been
provided in the portions of the Region known
as Oakhurst and Stonebridge.

b.   No oversize off-premises commercial signs under
City Code Section 12-17 (1901.4) shall be permitted within
those portions of the Region to which this Modification
applies.

-13-

<u>Plan Description Modification</u>

<u>Part One</u>

<u>Section V</u>

<u>General Provisions</u>

1.    <u>Storm Water Retention and Detention Requirements</u>.

a.    Storm water retention and detention facilities
within all portions of the Burlington Properties shall be
constructed in accordance with the following requirements.
The amount of storm water retention to be provided shall be
computed by using the Soil Conservation Service TR-20 method
and a weighted runoff curve number established for the
combined effects of Hydrologic Soil Group B and surface
cover.  Facilities shall be of adequate size to accommodate
runoff from rainfall intensities of 100 year frequency using
either a SCS Type II or Huff Distribution.  The impoundment
level corresponding to these rainfall intensities will be
the basis of design for the outlet facility to have
discharge capacity equivalent to 0.15 cubic feet per second
("cfs") per acre.  In addition to providing the impoundment
level calculated above, at least 24 inches of freeboard will
be provided to accommodate the additional storage required
by using the rainfall intensities set forth in Illinois
State Water Survey Bulletin 70.  Storm sewers shall be
designed using a 5 year storm event.

b.    The criteria and standards set forth in
Subparagraph (a) above are intended to supersede and modify

-14-

all City ordinances and regulations which are contrary to or
inconsistent with the matters set forth in the foregoing
paragraph. The criteria and standards are intended to
supersede and replace all provisions in the Principal
Agreement, Plan Description and that certain letter
agreement between Developer and the City dated July 31, 1984
(the "1984 Agreement") which cover or address the matter of
storm water retention with respect to the Burlington
Properties.

     c. Storm water retention and detention facilities
within the portions of the Region designated on the 1993
Plan as "Business Areas" to which this Modification applies
shall be constructed in accordance with the provisions of
the Plan Description as modified and supplemented by the
1984 Agreement.

    2. Any change in the above described storm water retention
and detention requirements described in Paragraph 1 above which
receives the approval of the City Engineer shall be deemed a
reasonable variation for the purpose of clause (a) of Subsection
14.7-6 of the Zoning Ordinance.

    3. <u>Time Limitations for Submission of Preliminary and
Final Plans</u>.

    Preliminary Plans shall be submitted for approval prior to
December 7, 2000. Final Plans for all portions of the Region
shall be submitted for approval prior to December 7, 2003.

-15-

4.    <u>Execution by City and Developer.</u>

This Modification shall be made a part of the Agreement, which restates and amends the Principal Agreement.

5.    <u>Changes in Plan Description.</u>

After this Modification is approved by the City Council, in accordance with Section V, Subsection N of the Plan Description, ten (10) complete copies of this Modification plus all accompanying materials and data shall be deposited with the Division of City Planning.

6.    <u>Developer.</u>

As used in this Modification and in the Plan Description the terms "Developer" and "Developers" of the Region shall mean Aurora Venture.  The Developer shall have the right to assign some or all of its rights, subject to some or all of the duties and obligations, which the Developer may have under the Modification.  The Developer, or its assignee, shall have the right to appoint an agent or representative to act for it with respect to the Modification.

PD112293.185

R E C O M M E N D A T I O N

TO:     THE COMMITTEE OF THE WHOLE

FROM:   THE PLANNING AND DEVELOPMENT COMMITTEE

The Planning and Development Committee at the meeting

of Monday, November 22, 1993  Recommended  <u>Approval</u>

of the Resolution Approving a Plan Description Modification for

Certain Portions of Fox Valley East Region II as amended.


The vote:  3 - 0

                              Submitted by

                              _____
                              Alderman Jim Meisch,  Chairman

                              _____
                              Alderman Mike Saville

                              _____
                              Alderman Judy Morrison


                              _____
                              Alderman Bob Fleege  , Alternate

Dated this____23rd_____ day of__November_____ 1993.

ANNUAL  UPDATED  LAND  USE  PLAN
1993

AURORA VENTURE
MASTER DEVELOPER



LOCATION OF BUSINESS AREAS
TO WHICH PLAN DESCRIPTION
MODIFICATION APPLIES

AURORA VENTURE
MASTER DEVELOPER



BURLINGTON PROPERTIES
CONCEPT PLAN